SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Proposed Attorneys for the Chapter 11 Debtors and
Debtors In Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

In re

VERITY HEALTH SYSTEM OF
CALIFORNIA, INC., *et al.*,

      Debtors and Debtors In Possession.

⊠ Affects All Debtors

☐ Affects Verity Health System of
   California, Inc.
☐ Affects O'Connor
☐ Affects Saint Louise Regional Hospital
☐ Affects St. Francis Medical Center
☐ Affects St. Vincent Medical Center
☐ Affects Seton Medical Center
☐ Affects O'Connor Hospital Foundation
☐ Affects Saint Louise Regional Hospital
   Foundation
☐ Affects St. Francis Medical Center of
   Lynwood Foundation
☐ Affects St. Vincent Foundation
☐ Affects St. Vincent Dialysis Center, Inc.
☐ Affects Seton Medical Center Foundation
☐ Affects Verity Business Services
☐ Affects Verity Medical Foundation
☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose
   Dialysis, LLC

      Debtors and Debtors In Possession.

Lead Case No. 2:18-bk-20151-ER

Jointly Administered With:
CASE NO.: 2:18-bk-20162-ER
CASE NO.: 2:18-bk-20163-ER
CASE NO.: 2:18-bk-20164-ER
CASE NO.: 2:18-bk-20165-ER
CASE NO.: 2:18-bk-20167-ER
CASE NO.: 2:18-bk-20168-ER
CASE NO.: 2:18-bk-20169-ER
CASE NO.: 2:18-bk-20171-ER
CASE NO.: 2:18-bk-20172-ER
CASE NO.: 2:18-bk-20173-ER
CASE NO.: 2:18-bk-20175-ER
CASE NO.: 2:18-bk-20176-ER
CASE NO.: 2:18-bk-20178-ER
CASE NO.: 2:18-bk-20179-ER
CASE NO.: 2:18-bk-20180-ER
CASE NO.: 2:18-bk-20181-ER

Chapter 11 Cases

**DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER AUTHORIZING EMPLOYMENT
OF CAIN BROTHERS, A DIVISION OF
KEYBANC CAPITAL MARKETS INC., AS
INVESTMENT BANKER TO THE DEBTORS
*NUNC PRO TUNC* TO THE PETITION DATE;
DECLARATION OF JAMES MOLONEY IN
SUPPORT THEREOF**

[No Hearing Required Unless Requested Pursuant to
Local Bankruptcy Rule 2014-1]

      Verity Health System Of California, Inc. ("<u>VHS</u>") and the above-referenced affiliated

debtors, the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

(collectively, the "Debtors"), hereby file the *Debtors' Application for Entry of an Order Authorizing Employment of Cain Brothers, a division of KeyBanc Capital Markets Inc. as Investment Banker to the Debtors Nunc Pro Tunc to the Petition Date* (this "Application"), pursuant to section 327(a) of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"),[1] Rules 2014 and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014 and 2016(b) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "LBR"), with compensation approved under § 328(a).  As set forth in the notice concurrently filed herewith, any response or request for hearing must be filed and served on the Debtors' counsel at the address provided at the top of this page and on the Office of the United States Trustee (the "U.S. Trustee") not later than fourteen (14) days from the date of service of notice of this Application. LBR 2014-1(b)(3)(E).  In support of this Application, the Debtors further state as follows:

## I.    Jurisdiction and Venue

1.    This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## II.    General Background

2.    On August 31, 2018 ("Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by §§ 1107(a) and 1108.

3.    The Debtor VHS, a California nonprofit public benefit corporation, is the sole corporate member of the following five Debtor California nonprofit public benefit corporations that operate six acute care hospitals: O'Connor Hospital, Saint Louise Regional Hospital, St. Francis Medical Center, St. Vincent Medical Center, Seton Medical Center, and Seton Medical Center Coastside (collectively, the "Hospitals") and other facilities in the state of California.

---

[1] All references to "§" or "section" herein are to sections of the Bankruptcy Code.

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

4.     VHS, the Hospitals, and their affiliated entities operate as a nonprofit health care system, with approximately 1,680 inpatient beds, six active emergency rooms, a trauma center, eleven medical office buildings, and a host of medical specialties, including tertiary and quaternary care. *Declaration Of Richard G. Adcock In Support of Emergency First-Day Motions*, at 4, 12 (the "First Day Declaration") [Docket No. 8].  On the Petition Date, the Debtors had approximately 850 inpatients. *Id.*, at 6, 17.  The scope of the services provided by the Verity Health System exemplified by the fact that in 2017, the Hospitals provided medical services to over 50,000 inpatients and approximately 480,000 outpatients. *Id.*, at 4, 12.

5.     On August 31, 2018, this Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases (the "Cases") pursuant to Bankruptcy Rule 1015(b) and LBR 1015-1 and 9013-1(q).

6.     A detailed description of the Debtors' businesses, capital structure, and the events leading to the commencement of these Cases is contained in the First Day Declaration.

7.     On September 17, 2018, the U.S. Trustee appointed a statutory creditors' committee pursuant to § 1102 (the "Committee").

8.     No trustee or examiner has been appointed in these Cases.

### III.     Relief Requested

9.     Pursuant to this Application, the Debtors seek entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and LBR 2014-1, authorizing the employment and retention of Cain Brothers, a division of KeyBanc Capital Markets Inc. ("Cain Brothers"), as investment banker to the Debtors in connection with the commencement and prosecution of these Cases, *nunc pro tunc* to the Petition Date, as supported by the declaration of James Moloney (the "Moloney Declaration"), attached hereto, and in in accordance with the terms set forth in the Letter of Engagement, dated as of July 9, 2018, by and between the Debtors and Cain Brothers (the "Engagement Letter"), attached hereto as Exhibit A.

### IV.     Services to Be Rendered

10.     The employment of Cain Brothers is appropriate and necessary to enable the Debtors to execute their duties as debtors and debtors in possession and effect their reorganization

efforts.  Subject to further order of this Court, Cain Brothers is prepared to render the following

services in these Cases as investment banker to the Debtors:[2]

a.  M&A Transaction Services:  Provide advice and assistance to the Debtors
in connection with a possible sale, disposition, or other business transaction
or series of transactions involving all or a material portion of the equity or
assets of the Debtors, whether directly or indirectly, and through any form
of transaction, including, without limitation, merger, reverse merger,
liquidation, stock sale, asset sale, asset swap, recapitalization,
reorganization, consolidation, amalgamation, sale under § 363  (including
pursuant to any "credit bid" made under § 363(k) and including under a
prenegotiated or prepackaged chapter 11 plan or other chapter 11 plan),
spin-off, split-off, joint venture, strategic partnership, license, or other
similar transaction (any of the foregoing, an "M&A Transaction");

b.  Financing Services:  Provide advice and assistance to the Debtors in
connection with any of the following (each, a "Financing"):  (i) the
issuance, sale, and/or placement, whether in one or more public or private
transactions or series of transactions, of (1) common equity, preferred
equity, hybrid, and/or equity-linked securities of the Debtors (regardless of
when sold by the Debtors or their security holders), including, without
limitation, convertible debt securities, and/or (2) notes, bonds, debentures,
and/or other debt securities of the Debtors, including, without limitation,
mezzanine and asset-backed securities and debtor in possession financing
or exit financing associated with a bankruptcy case, if any, and/or (ii) the
arrangement and/or placement of any new bank debt and/or other credit
facility of the Debtors (i.e., any new bank debt and/or other credit facility
and not any existing indebtedness that is rolled or otherwise restructured in
connection with a Restructuring (as defined below)).  For the avoidance of
doubt, if a Financing is executed in more than one issuance or tranche, each
such issuance or tranche shall be deemed a Financing for purposes of the
Engagement Letter;

c.  Restructuring Services:  Provide advice and assistance to the Debtors in
connection with analyzing, structuring, negotiating, and effecting, any
restructuring, reorganization, recapitalization, or modification of all or a
portion of the Debtors' outstanding indebtedness, including, without
limitation, through any offer by the Debtors with respect to any outstanding
Debtors' indebtedness, a solicitation of votes, approvals, or consents giving
effect thereto, the execution of any agreement giving effect thereto, or an
offer by any party to convert, exchange, or acquire any outstanding
Debtors' indebtedness or any similar balance sheet restructuring involving
the Debtors (any of the foregoing, a "Restructuring");

d.  An M&A Transaction, a Financing and a Restructuring are each and
collectively hereinafter referred to as a "Transaction."  In connection with
any Transaction, Cain Brothers will also provide the following services to

---

[2] To the extent there is any inconsistency between the summary of the Fee Structure set forth in
this Application and the Fee Structure as set forth in the Engagement Letter, the terms of the
Engagement Letter, as modified by any order of this Court, shall control.  Capitalized terms used
but not otherwise defined herein shall have the meanings ascribed to such terms in the
Engagement Letter.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 4 -

108666050\V-6

the Debtors and the Debtors' Board of Directors (the "Board"), as deemed appropriate and necessary by the Debtors and Cain Brothers:

    i.    Assist the Debtors and the Board in establishing objectives for a Transaction;

    ii.    Identify and evaluate strategic alternatives consistent with the objectives and reflective of market conditions;

    iii.    Develop a strategy for conducting a Transaction process consistent with the objectives established by the Board;

    iv.    Develop a list of prospective strategic partners and buyers consistent with the objectives established by the Board;

    v.    Assist the Debtors and the Board in preparing marketing materials;

    vi.    Contact and solicit interest from prospective parties to a Transaction;

    vii.    Review and analyze all indications of interest and proposals that are received by the Debtors and assist the Debtors in negotiations with prospective parties to a Transaction; and

    viii.    Provide regular updates to the Debtors and the Board regarding the Transaction process.

11.    It is necessary for the Debtors to employ Cain Brothers to render the foregoing professional services.  Therefore, the Debtors have requested that Cain Brothers perform the services set forth herein and, subject to this Court's approval of this Application, Cain Brothers has stated its desire, willingness, and ability to act in these Cases and to render such professional services as investment banker to the Debtors.

12.    The Debtors are or will be seeking to employ Berkeley Research Group, LLC ("BRG") as Financial Advisors to the Debtors by a separate application.  The Debtors believe the services Cain Brothers will provide will be complementary rather than duplicative of the services to be performed by BRG.  The Debtors are very mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure there is minimal duplication of effort as a result of Cain Brothers' retention.

**V.     Qualifications and Selection of Cain Brothers**

13.    As noted above, Cain Brothers is a division of KeyBanc Capital Markets Inc. ("KBCM"), a wholly-owned broker/dealer subsidiary of KeyCorp and an affiliate of KeyBank National Association.  Cain Brothers was acquired in October 2017 by KBCM and prior to the KBCM acquisition was a privately-owned investment banking firm.  Cain Brothers was founded in 1982 and for thirty-six years has been focused exclusively on providing investment banking services to the health care industry.  Currently, the Cain Brothers division of KBCM has

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   approximately 100 investment banking professionals and is headquartered in New York, New

2   York with a major office in San Francisco and an additional office in Chicago, Illinois.

3       14.     Cain Brothers' primary banking focus is on mergers, acquisition and other change

4   of control transactions, having advised clients on more than 175 M&A transactions in the health

5   care sector since the beginning of 2012.   Cain Brothers has been an advisor in financial

6   restructurings, capital raising, mergers, acquisitions, divestitures, and other engagements.   Its

7   investment banking professionals apply expert technical, analytical, and negotiating skills to

8   structure transactions and resolve situations in which multiple stakeholders frequently have

9   conflicting interests and objectives.   Cain Brothers' senior bankers are actively involved in the

10  day-to-day activities throughout engagements from the initial planning of the sale strategy

11  through the negotiation and execution of each transaction.   Cain Brothers has developed

12  significant relevant experience and expertise regarding the sale and/or recapitalization of hospitals

13  and hospital systems, has extensive experience in the healthcare space, and has an excellent

14  reputation for investment banking services that it has rendered to various parties in interest in

15  large and complex healthcare-related bankruptcy proceedings, including the following

16  representative chapter 11 cases:   St. Vincent's, Hawaii Medical Center, Texarkana, Forum,

17  Doctor's Healthcare and California Proton Treatment Center.   Accordingly, Cain Brothers and the

18  professionals it employs are well-qualified to represent the Debtors in the matters for which Cain

19  Brothers is proposed to be employed.

20      15.     In July 2018, Cain Brothers was employed by the Debtors in connection with their

21  restructuring efforts.   During the course of their employment, Cain Brothers has become

22  thoroughly familiar with the Debtors' businesses, financial affairs, capital structure, and

23  restructuring alternatives.   Accordingly, Cain Brothers has the necessary background to deal

24  effectively with the issues and problems that may arise in the context of the Debtors' Cases and

25  reorganization efforts.

26      16.     Since its engagement, Cain Brothers has worked diligently on the matters for

27  which proposes to be retained in these Cases and, as a result, has become uniquely situated to

28  assist the Debtors. Cain Brothers has been working with the Debtors' counsel and other advisors

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

since July 2018 and is familiar with the Debtors' books, records, financial affairs, and personnel and is well-equipped to provide investment banking services to the Debtors. Cain Brothers is also familiar with the Debtors' capital structure and material agreements and many of the potential financial and legal issues that may arise in the context of selling assets in these Cases. Accordingly, retaining Cain Brothers is an efficient and cost effective manner in which the Debtors may obtain necessary investment banking services.

17.    An experienced investment banker, Cain Brothers fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. The Debtors desire to employ Cain Brothers to act as the Debtors' investment banker postpetition because, among other reasons, Cain Brothers focuses on the healthcare sector, has substantial expertise in the sale, merger and financing of troubled healthcare businesses, and prepetition experience with the Debtors' operations and issues. Absent the retention of Cain Brothers as of the Petition Date, the Debtors will suffer immediate and irreparable harm because the services provided by Cain Brothers are necessary to an effective and efficient resolution of these Cases.

## VI.    Cain Brothers' Compensation

18.    Pursuant to § 328(a), the Debtors may retain Cain Brothers on any reasonable terms and conditions. The Debtors therefore request that, pursuant to § 328(a), compensation be granted in accordance with the Engagement Letter and not subject to review or evaluated under § 330.

19.    As more fully described in the Engagement Letter, in consideration of the services provided, the Debtors have agreed to pay Cain Brothers as follows (the "Fee Structure"):[3]

>    (i)    Monthly Fee: A monthly fee of $150,000, payable for the remainder of the term of the Engagement Letter, due first business day of each month (the "Monthly Fee"). Any Monthly Fee paid to Cain Brothers shall be credited once toward all Transaction Fees (as defined below) payable under the Engagement Letter.

>    (ii)    M&A Fee: Promptly upon the consummation of an M&A Transaction, a non-refundable cash fee (an "M&A Fee") equal to 1.00% of the Aggregate

---

[3] To the extent there is any inconsistency between the summary of the Fee Structure set forth in this Application and the Fee Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Transaction Value of such an M&A Transaction or in the case of an M&A Transaction involving a VHS Related Party an M&A Fee equal to 0.50% of the Aggregate Transaction Consideration of such an M&A Transaction.

(iii)    Financing Fee:  Promptly upon the consummation of a Financing involving a solicitation process from third-party lenders, except a Financing provided by a VHS Related Party, a nonrefundable cash fee (a "Financing Fee") equal to 0.75% of the total gross proceeds provided for in such Financing from third-party lenders (including all amounts committed but not drawn down under credit lines, other indebtedness or other facilities).    If a Financing is provided by a VHS Related Party, the Financing Fee shall be equal to 0.375% of the total gross proceeds provided for in such Financing from the VHS Related Party.

(iv)    Restructuring Fee:    Promptly upon the consummation of each Restructuring of each of the following Verity Affiliates, a non-refundable fee (a "Restructuring Fee") equal to:

a.    $1,000,000 for St. Francis Medical Center;

b.    $400,000 for Seton Medical Center;

c.    $100,000 for Seton Medical Center Coastside;

d.    $400,000 for O'Connor Hospital;

e.    $100,000 for St. Louise Regional Hospital; and

f.    $500,000 for St. Vincent Medical Center.

(v)    Transaction Fee:  An M&A Fee, a Financing Fee and a Restructuring Fee are each and collectively hereinafter referred to as a "Transaction Fee." More than one Transaction Fee may come due under the Engagement Letter (including more than one M&A Fee and Financing Fee). Notwithstanding the foregoing or anything to the contrary in the Engagement Letter, (a) to the extent a Transaction qualifies as both an M&A Transaction and a Restructuring, Cain Brothers shall only be paid the higher of the M&A Fee and Restructuring Fee payable on account of such Transaction and (b) the minimum M&A Fees for each M&A Transaction shall be as follows:

a.    for transactions with less than $10 million in Aggregate Transaction Value the minimum Transaction Fee shall be $150,000;

b.    for transactions with Aggregate Transaction Value between $10 million and $24.999 million the minimum Transaction Fee shall be $350,000;

c.    for transactions with Aggregate Transaction Value between $25 million and $49.999 million, the minimum Transaction Fee shall be $500,000;

d.    for transactions with Aggregate Transaction Value between $50 million and $149.999 million, the minimum Transaction Fee shall be $1,000,000;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

e. for transactions with Aggregate Transaction Value between $150 million and $249.999 million, the minimum Transaction Fee shall be $1,500,000; and

f. for transactions with Aggregate Transaction Value in excess of $250 million, the minimum Transaction Fee shall be $2,000,000.

(vi) Out-of-Pocket Expenses: The Debtors agree to reimburse Cain Brothers for all reasonable and approved out-of-pocket expenses incurred by Cain Brothers, except (a) travel expenses, including airfare, mileage reimbursement, rental vehicles, hotels, meals and related expenses while traveling as part of this engagement, and (b) duplication or copying costs. Cain Brothers shall be responsible for the first $50,000 of such out-of-pocket expenses. Approved expenses shall be reimbursable whether or not a Transaction is consummated. If Cain Brothers is requested by the Debtors to engage legal counsel or third-party consultants or advisors, the Debtors agree to promptly reimburse Cain Brothers for such expenses.

20. The Fee Structure in the Engagement Letter and above is consistent with the typical arrangement Cain Brothers and other investment banking firms enter into when rendering similar services under similar circumstances and is the product of arm's-length negotiations. The Fee Structure is consistent with Cain Brothers' practices and no less favorable than the fee structure customarily employed by Cain Brothers and generally accepted by its clients. The Debtors believe the Fee Structure is reasonable, market-based, and designed to compensate Cain Brothers for its work in a fair and equitable manner. The Debtors believe the benefit of Cain Brothers' services cannot be measured by reference to number of hours to be expended by Cain Brothers' professionals.

21. In agreeing to seek Cain Brothers' retention under § 328(a), the Debtors acknowledge that they believe that Cain Brothers' general experience and expertise and its merger and acquisition capabilities will inure to the benefit of the Debtors in pursuing a Transaction, that the value to the Debtors of Cain Brothers' services derives in substantial part from that expertise and experience and that, accordingly, the Fee Structure is reasonable regardless of the number of hours to be expended by Cain Brothers' professionals in the performance of the services to be provided hereunder, and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

22. Accordingly, Cain Brothers and the Debtors have agreed to the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required, and

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

because (a) Cain Brothers' sizable commitment to the instant matters may foreclose other opportunities that would otherwise be available to Cain Brothers and (b) the actual time commitment required by Cain Brothers may vary considerably throughout the proceedings.  Cain Brothers will maintain records to support and document actual and necessary costs and expenses incurred in connection with its services in these Cases.  The Debtors respectfully request this Court excuse Cain Brothers from the requirement to maintain time records, provided that Cain Brothers will maintain a log of its activities with respect to potential sale transaction counterparties.

23.    The Debtors request─and Cain Brothers understands─that all advisory fees and related costs incurred by the Debtors on account of services rendered by Cain Brothers in these Cases will be paid as administrative expenses in accordance with the Bankruptcy Code and applicable Orders entered in these Cases.

24.    At the conclusion of these Cases, Cain Brothers will file an appropriate application seeking allowance of all fees and costs, regardless of whether interim compensation has been paid.

25.    The Engagement Letter contains terms for indemnification, contribution, and exculpation, as set forth in Annex A of the Engagement Letter.  The Debtors have agreed to indemnify Cain Brothers and each of its affiliates and the respective directors, officers, managers, members, partners, controlling persons, agents, counsel, and employees of Cain Brothers or any of its affiliates from or against any and all claims related to Cain Brothers' actions or omissions during the course of the engagement, unless finally judicially determined by a court of competent jurisdiction that the actions or omissions resulted from Cain Brothers' willful misconduct, gross negligence, or bad faith, as more fully set forth in Annex A of the Engagement Letter.  The description of the exculpation, indemnification, and contribution terms of Annex A set forth in this paragraph is only a general summary; parties wishing to know the full terms of Annex A are directed to read the Engagement Letter.

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# VII.   Cain Brothers' Disclosures

26.     As set forth above, Cain Brothers understands the provisions of §§ 327 and 328(a), Bankruptcy Rules 2014(a) and 2016, and LBR 2014-1(b) and 2016-1, which require, among other things, Court approval of the Debtors' employment of it as investment banker.

27.     Section 327(a) incorporates a general disinterestedness standard, and Bankruptcy Rule 2014 requires that an application for employment disclose all connections with the Debtors, their estates, the professionals, and the U.S. Trustee.  Cain Brothers has conducted an extensive conflict search within its database and has not identified any actual conflicts and/or connections with any of the parties which would disqualify it from serving as financial advisor to the Debtors.

28.     As described in detail in the Moloney Declaration, Cain Brothers has, among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtors' creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings, and all potential associations are listed in the Moloney Declaration.  Due to the size of Cain Brothers, its healthcare sector focus, and the healthcare aspects of these Cases, however, Cain Brothers may have represented certain of the Debtors' creditors or other parties in interest in matters wholly unrelated to these Cases.  Except as may be described in the Moloney Declaration, Cain Brothers does not, to its knowledge, represent any party with an interest materially adverse to the Debtors or the estate.

29.     Cain Brothers has not received and will not receive any lien or any other interest in property of the Debtors or of a third party to secure payment of its fees, but reserves the right to seek to surcharge collateral if appropriate.  Cain Brothers intends to apply to this Court in conformity with the Bankruptcy Code and applicable rules, the guidelines for compensation and reimbursement for fees incurred and costs advanced in this matter and any orders of the Court governing application and allowance of compensation in these Cases.

30.     Except as set forth in the Moloney Declaration, Cain Brothers:  (a) does not have any prior connection with the Debtors, any creditors of the Debtors or their estates, any equity security holders, or any other party in interest in these Cases, or their respective attorneys or accountants (other than professional connections and relationships), or these Cases; (b) does not

108666050\V-6

1   hold or represent an interest materially adverse to the estates or of any class of creditors or equity

2   secured holders, by reason of any direct or indirect relationship to, connection with, or interest in,

3   the Debtors or an investment banker for any security of the Debtors, or for any other reason;

4   (c) as of the Petition Date, Cain Brothers was not a creditor, equity holder or insider of the

5   Debtors or their estates; (d) Cain Brothers was not, within two (2) years before the Petition Date,

6   a director, officer or employee of the Debtors; (e) Cain Brothers has not shared or agreed to share

7   its compensation with any other person; (f) Cain Brothers has no prepetition claims against the

8   Debtors; (g) Cain Brothers has not received a retainer; (h) Cain Brothers is not related to any

9   judge of the United States Bankruptcy Court for the Central District of California, the United

10  States Trustee, or to any person employed by the Office of the United States Trustee.

11      31.    In view of the foregoing, the Debtors submit that Cain Brothers is a "a

12  disinterested person" as that term is defined in § 101(14), as modified by section 1107(b)  and as

13  required under § 327(a).

14      32.    During the 90-day period prior to the commencement of these cases, Cain Brothers

15  was paid in the ordinary course certain Monthly Fees under the Engagement Letter.  Specifically,

16  the Debtors paid the following amounts to Cain Brothers: (a) $150,000 on account of the July

17  Monthly Fee and related expense reimbursements on July 7, 2018; (b) $150,000 on account of the

18  August Monthly Fee and related expense reimbursements on August 14, 2018; (c) $150,000 on

19  account of the September Monthly Fee and related expense reimbursements on August 30, 2018.

20      33.    As set forth in the Moloney Declaration, if any new material facts or relationships

21  are discovered or arise, Cain Brothers will provide the Court with a supplemental declaration. The

22  Debtors believe that its employment of Cain Brothers upon the terms and conditions set forth

23  above is in the best interest of the Debtors' estates, its creditors, and other parties in interest.

## VIII.    Retroactive Relief

25      34.    The Debtors request that this Application be approved *nunc pro tunc* to the

26  Petition Date.  In proper circumstances, the equitable aspects of bankruptcy proceedings permit

27  the court to retroactively approve the employment of professionals.  *See, e.g.*, *Atkins v. Wain,*

28  *Samuel & Co.* (*In re Atkins*), 69 F.3d 970, 974-76 (9th Cir. 1995); *In re Mehdipour*, 202 BR 474,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

108666050\V-6

1  479 (9th Cir. B.A.P. 1996); *Gowan v. Lefkas Gen. Partners No. 1017* (*In re Lefkas Gen. Partners*

2  *No. 1017*), 153 B.R. 804, 808 (N.D. Ill. 1993).

3       35.    The Debtors submit that retroactive approval of Cain Brothers' retention is

4  appropriate under the circumstances because of:  (i) the short duration of time between the

5  retention of Cain Brothers and the filing of this Application; and (ii) the need for Cain Brothers'

6  services immediately after the Retention Date.

7  **IX.**   **Notice**

8       36.    Concurrent with the filing of this Application, the Debtors are providing notice of

9  the Application to:  (i) the U.S. Trustee; (ii) the Debtors' secured lenders; (iii) counsel to Ally

10  Bank, as administrative agent under the proposed debtor in possession financing; (iv) the

11  Committee and its counsel; (v) the United States of America, and the State of California; and

12  (vi) all parties that filed with the Court and served upon the Debtors requests for notice of all

13  matters in accordance with Bankruptcy Rule 2002(i) as of the date of this Application.  The

14  Debtors respectfully submit that, in light of the nature of the relief requested and the

15  circumstances, no other or further notice need be provided.

16  **X.**   **No Previous Relief**

17       37.    No prior request for the relief sought herein has been made to this or any other

18  court.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

108666050\V-6

# XI.    <u>Conclusion</u>

WHEREFORE, the Debtors respectfully request an order (i) approving the employment and retention of Cain Brothers as investment banker to the Debtors, on the terms set forth in the Engagement Letter, *nunc pro tunc* to the Petition Date, (ii) approving the compensation of Cain Brothers at the expense of the Debtors' estate on the terms set forth in the Engagement Letter, (iii) excusing Cain Brothers from maintaining time records with respect to the services to be rendered by Cain Brothers in these Cases, and (iv) granting such other and further relief as the Court deems just and proper.

Dated:  September 29, 2018

DENTONS US LLP
SAMUEL R. MAIZEL
JOHN A. MOE, II
TANIA M. MOYRON

By     /s/ *Tania M. Moyron*
        Tania M. Moyron

Proposed Attorneys for the
Chapter 11 Debtors and
Debtors In Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

108666050\V-6

## DECLARATION OF JAMES MOLONEY

I, James Moloney, hereby declare as follows:

1.    I am a Managing Director at Cain Brothers ("Cain Brothers"), a division of KeyBanc Capital Markets Inc. ("KBCM").  I submit this declaration in support of the *Debtors' Application for Entry of an Order Authorizing Employment of Cain Brothers, a division of KeyBanc Capital Markets Inc. as Investment Banker to the Debtors Nunc Pro Tunc to the Petition Date* (the "Application").[4]

2.    Except as otherwise noted, I have personal knowledge of the matters set forth herein, and, if called as a witness, I would testify thereto.  Certain of the disclosures herein, however, relate to matters within the personal knowledge of other professionals at KBCM and are based on information provided by such professionals.

## CAIN BROTHERS' QUALIFICATIONS

3.    I believe that Cain Brothers is uniquely qualified to advise the Debtors on the matters for which Cain Brothers is proposed to be employed in a cost-effective, efficient and expert manner.

4.    As noted above, Cain Brothers is a division of KBCM, which is a wholly-owned broker/dealer subsidiary of KeyCorp and an affiliate of KeyBank National Association.  KBCM reported total shareholders' equity of $568.7 million as of December 31, 2017, based on its Annual Audit Report filed with the Securities and Exchange Commission and reported total revenues of $377 million for the fiscal year ended December 31, 2017.  Cain Brothers was acquired in October 2017 by KBCM and prior to the KBCM acquisition was a privately owned investment banking firm. Cain Brothers was founded in 1982 and for thirty-six years has been focused exclusively on providing investment banking services to the health care industry. Currently, the Cain Brothers division of KBCM has approximately 100 investment banking professionals and is headquartered in New York, NY with a major office in San Francisco and additional office in Chicago, IL.

---

[4] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

5. Cain Brothers' primary banking focus is on mergers, acquisition and other change of control transactions having advised clients on more than 175 M&A transactions in the health care sector since the beginning of 2012. Cain Brothers has been involved as advisor with respect to financial restructurings, capital raising, mergers, acquisitions, divestitures, and other advisory assignments. Its investment banking professionals apply expert technical, analytical, and negotiating skills to structure transactions and resolve situations in which multiple stakeholders frequently have conflicting interests and objectives. Cain Brothers' senior bankers are actively involved in the day-to-day activities throughout engagements from the initial planning of the sale strategy through the negotiation and execution of each transaction. Cain Brothers has developed significant relevant experience and expertise regarding the sale and/or recapitalization of hospitals and hospital systems, has extensive experience in the healthcare space, and has an excellent reputation for investment banking services that it has rendered to various parties in interest in large and complex healthcare-related bankruptcy proceedings, including the following representative chapter 11 cases: St. Vincent's, Hawaii Medical Center, Texarkana, Forum, Doctor's Healthcare and California Proton Treatment Center. Moreover, Cain Brothers' extensive healthcare sector experience includes being involved as advisors with respect to the raising of capital, mergers, acquisitions, and divestitures for companies in this space. Accordingly, Cain Brothers and the professionals it employs are well qualified to represent the Debtors in the matters for which Cain Brothers is proposed to be employed.

6. Cain Brothers, moreover, has been engaged by the Debtors since June 2018 and, as a result, is familiar with the Debtors' corporate and capital structure, management and business operations.[5] In addition, Cain Brothers advised the Debtors prior to the Petition Date regarding, among other things, the identification of potential buyers of some or all of the Verity hospitals and related assets, and commenced discussions with those potential buyers. Cain Brothers assisted Verity in preparing a Confidential Information Memorandum and organized an online

---

[5] Also, Cain Brothers was previously engaged by Verity Health System and its affiliates for certain buy-side advisory services in 2016. The engagement ended in 2017 and is unrelated to these Cases.

data site to share information with potential buyers.  Beginning in July 2018, Cain Brothers contacted over 110 strategic and financial buyers to solicit their interest in exploring a transaction regarding the Debtors and has assisted in the Debtors in making significant progress toward completing sales.  Specifically, as of the time just prior to the Petition Date, as a result of its ongoing and broad marketing process, Cain Brothers had received 11 indications of interest and expects to receive additional proposals.  Shortly after the Petition Date, the Debtors, in consultation with Cain Brothers and their other advisors, anticipate selecting an offer from one or more stalking horse bidders to acquire some or substantially all of the Debtors' assets through a sale under § 363 of the Bankruptcy Code.  Cain Brothers thus is both well qualified and uniquely able to advise the Debtors in these Cases.

## CONNECTIONS WITH PARTIES IN INTEREST

7.    To check potential connections with the Debtors and other parties in interest in these Cases, Cain Brothers has searched to determine whether KBCM (of which Cain Brothers is a division) has any relationships with the entities identified by the Debtors and its representatives as potential parties in interest listed on Exhibit B hereto (the "Potential Parties in Interest"). Specifically, the names of the Potential Parties in Interest were entered into a database containing the names of KBCM's current and former investment banking clients.  To the extent that this inquiry has revealed that certain Potential Parties in Interest were current or former investment banking clients of KBCM within the past three years, these parties have been identified on a list annexed hereto as Exhibit C (the "Client Match List").  Through the information generated from the aforementioned inquiry and through follow-up inquiries to KBCM professionals responsible for certain clients listed on the Client Match List, Cain Brothers has determined that KBCM's representation of the clients on the Client Match List, concerned matters unrelated to the Debtors. As to the Potential Parties in Interest not identified on the Client Match List, KBCM has not been employed by or rendered advisory services to any such parties within the past three years. However, there are almost 8,000 vendors who do business with the Debtors.  If Cain Brothers uncovers any additional connections, make subsequent disclosures of those connections promptly.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

8.      As part of its diverse activities, KBCM is involved in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in these Cases. Further, KBCM has in the past, and may in the future, advise and/or be represented by several attorneys, law firms and other professionals, some of whom may be involved in these Cases. Finally, KBCM has in the past, and will likely in the future, be working with or against other professionals involved in these Cases in matters wholly unrelated to these Cases.  Based upon our current knowledge of the professionals involved in these Cases, and to the best of my knowledge, none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any class of creditors in matters upon which Cain Brothers is to be employed, and none are in connection with the Debtors.

9.      As noted above, KBCM is a national investment banking firm with broad activities covering, in addition to its investment banking and financial advisory practice, underwriting of equity and debt securities, as well as trading in equities and corporate bonds.  With thousands of customer accounts and relationships and transactions around the world, it is possible that one or more of KBCM's clients or a counterparty to a securities transaction may hold a claim or interest or otherwise be Potential Parties in Interest in these Cases and that KBCM and/or its affiliates may have other business relationships and/or connections with such Potential Parties in Interest.  Further, as a market maker in equity securities as well as a trader of corporate bonds, including those of creditors or parties in interest in these Cases, KBCM regularly enters into securities transactions with other registered broker-dealers as a part of its daily activities.   Some of the counterparties to these transactions may be creditors or other parties in interest in these cases.  Cain Brothers believes that none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any class of creditors in matters upon which Cain Brothers is to be employed, and none are in connection with these Cases.

10.      In addition, as of the date hereof, KBCM and its affiliates have thousands of employees across the country.  It is possible that certain of KBCM's and its affiliates' respective directors, officers and employees may have had in the past, may currently have, or may in the

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

future have connections to (i) the Debtors, (ii) the Potential Parties in Interest and/or (iii) funds or other investment vehicles that may own debt or securities of the Debtors or other Potential Parties in Interest. Furthermore, in addition to the parties listed on Exhibit "C," KBCM and/or Cain Brothers may also represent, or may have represented, affiliates, equity holders and/or sponsors of the Potential Parties in Interest.  Certain of the Potential Parities in Interest may also be vendors or insurers of KBCM and/or have other non-investment banking relationships with KBCM.  KBCM and/or Cain Brothers may also represent, or may have represented in the past, committees or groups of lenders or creditors in connection with certain restructuring or refinancing engagements, which committees or groups include, or included, entities that appear on the Potential Parties in Interest list.  Cain Brothers believes that none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any class of creditors in matters upon which Cain Brothers is to be employed, and none are in connection with these Cases.

11.    KeyBank National Association ("KBNA"), a national banking association and an affiliate of KBCM, accepts deposits and makes loans.  In addition to these customary banking services, KBNA offers an array of other financial services, including personal and corporate trust services, personal financial management, access to mutual funds, cash management services, and equipment leasing.  Cain Brothers believes that none of KBNA's business relationships with accountholders, borrowers or any other recipients of the financial services KBNA offers will constitute interests adverse to the interests of the Debtors' estates or of any class of creditors in matters upon which Cain Brothers is to be employed, and none are in connection with these Cases.

12.    Certain affiliates of KBCM provide discretionary investment management services through trusts and agency accounts for individuals, employee benefit plans and certain pooled funds referred to as common trust funds or collective trust funds (collectively, the "Trust Accounts").  The Trust Accounts are principally intended for third party owners or beneficiaries ("Beneficiaries") unrelated to KBCM.  However, such Beneficiaries may also include financial institutions (some of which may be parties in interest in these Cases), affiliates of KBCM, or their respective officers and employees (some of whom may be KBCM employees providing services in connection with

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 19 -

these Cases).   The employees working in connection with these Cases have no control over or involvement in investment decisions made for the Trust Accounts.   With respect to the Trust Accounts, Cain Brothers makes the following additional disclosures:

    (a)    Among other things, the Trust Accounts are (i) investors in the equity securities of both publicly traded and privately-held companies (the "Equity Investments") and (ii) investors in a variety of debt instruments (the "Income Investments" and, together with the Equity Investments, the "Portfolio Holdings"); and

    (b)    The KBCM affiliate responsible for providing investment management services to the Trust Accounts (the "Trustee") maintains sole or shared control over investment decisions with respect to the Portfolio Holdings in the Trust Accounts.   Many financial institutions and parties in interest who may be involved in these Cases may also be Beneficiaries of the Trust Accounts.   Moreover, the Trust Accounts may invest from time to time in Portfolio Holdings relating to the Debtors or parties in interest in these Cases.   In order to comply with securities laws and to avoid any appearance of impropriety, the employees of the Trustee are strictly separated from the employees of KBCM.   KBCM maintains a strict separation between its employees assigned to these Cases and employees involved in the management of KBCM's investment banking division, on the one hand, and other employees of KBCM (*e.g.*, sales and trading employees) and its affiliates (including the employees of the Trustee), on the other hand.   This separation is maintained through the use of information walls.   These information walls include physical and technological barriers, compliance, and surveillance mechanisms and policies and procedures designed to prevent confidential information from being shared improperly. Consequently, as no confidential information concerning the Debtors is permitted to be communicated to any persons working for the Trustee, Cain Brothers does not believe that the relationships outlined above constitute interests adverse to the estates or render Cain Brothers not disinterested in these Cases.

    13.    In addition, as part of its regular business operations, KBCM may trade securities and other instruments of the Potential Parties in Interest on behalf of third parties or itself and/or its affiliates.[6]   KBCM may also trade securities and other instruments of the Debtors on behalf of third parties (some of whom may be parties in interest in these Cases).   KBCM, however, will not trade securities of the Debtors on behalf of itself and/or its affiliates while Cain Brothers is employed by the Debtors.   All such trading operations are separated from KBCM's investment

---

[6] Also, Cain Brothers was previously engaged by Verity Health System and its affiliates for certain buy-side advisory services in 2016. The engagement ended in 2017 and is unrelated to these Cases.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

banking department, and its managing directors and employees (including the investment banking professionals working on these Cases) by an information barrier and no professionals providing services to the Debtors will be involved with such trading activities.

14.    KBCM also has a research department that publishes equity research (the "Equity Research Department").  Consistent with applicable legal and regulatory requirements, KBCM has adopted policies, procedures and information barriers to maintain the independence of the Equity Research Department's personnel.  During the course of these Cases, KBCM's research analysts may hold views, make statements or investment recommendations, or publish research reports with respect to the Debtors or other Potential Parties in Interest.  Such views may or may not differ from the views of Cain Brothers' professionals.

15.    The Debtors have numerous creditors and relationships with a large number of individuals and entities that may be parties in interest in these Cases.  Consequently, although every reasonable effort has been made to discover KBCM and Cain Brothers' connections with the Potential Parties in Interest, Cain Brothers is unable to state with certainty whether any of its clients or an affiliated entity of a client holds a claim or otherwise is a party in interest in these Cases.  If Cain Brothers discovers any information that is contrary or pertinent to the statements made herein, Cain Brothers will promptly disclose such information to the Court.  Additionally, as noted above, Cain Brothers is part of a national financial services firm and thus has several legally separate and distinct domestic affiliates.  Although employees of certain affiliates may sometimes assist Cain Brothers in connection with a restructuring engagement, as Cain Brothers is the only entity being retained in these cases, we have researched only the electronic client files and records of KBCM, not of all of KBCM's affiliates, to determine connections with any Potential Parties in Interest.

16.    As noted in the application, Cain Brothers is involved in the marketing and sale process of the assets of the Debtors.  Given Cain Brothers' extensive involvement in the healthcare sector, Cain Brothers may have various connections with many of the parties that have expressed interest in purchasing the assets of the Debtors.  A review of the connections is ongoing and a supplemental declaration will follow.

108666050\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

17.    Cain Brothers does not advise, has not advised and will not advise any entity other than the Debtors in matters related to these Cases.  Cain Brothers will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or parties in interest in these Cases, provided that such services do not relate to, or have any direct connection with, these Cases or the Debtors.

18.    Except as otherwise set forth herein, to the best of my knowledge, information, and belief, neither Cain Brothers nor any employee of Cain Brothers (i) is a creditor or an insider of the Debtors or (ii) is or was, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the professionals expected to assist the Debtors in these Cases are related or connected to any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

## PROFESSIONAL COMPENSATION

19.    During the 90-day period prior to the commencement of these cases, Cain Brothers was paid in the ordinary course certain Monthly Fees under the Engagement Letter, attached hereto as Exhibit A.  Specifically, the Debtors paid the following amounts to Cain Brothers: (a) $150,000 on account of the July Monthly Fee and related expense reimbursements on July 7, 2018; (b) $150,000 on account of the August Monthly Fee and related expense reimbursements on August 14, 2018; (c) $150,000 on account of the September Monthly Fee and related expense reimbursements on August 30, 2018.

20.    The Fee Structure and the indemnification obligations set forth in the Application are consistent with Cain Brothers' typical fee for work of this nature.  The fees are set at a level designed to compensate Cain Brothers fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses.  It is Cain Brothers' policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

21.    It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.

22.    The Fee Structure is comparable to those generally charged by investment banking firms of similar stature to Cain Brothers and for comparable engagements, both in and out of

1   court, and reflect a balance between a fixed monthly fee and contingency amounts which are tied

2   to the consummation and closing of a transaction as contemplated by the Engagement Letter.

3       23.    The Engagement Letter was negotiated at arm's length and in good faith and I

4   believe that the provisions contained therein are reasonable terms and conditions of Cain

5   Brothers' employment by the Debtors. With respect to the Engagement Letter's indemnification

6   provisions, unlike the market for other professionals that a debtor or committee may retain,

7   indemnification is a standard term of the market for investment bankers.  The indemnity,

8   moreover, is comparable to those generally obtained by investment banking firms of similar

9   stature to Cain Brothers and for comparable engagements, both in and out of court.

10      24.    Other than as set forth above and in the Engagement Letter, there is no proposed

11  arrangement between the Debtors and Cain Brothers for compensation to be paid in these cases.

12  Cain Brothers has no agreement with any other person or entity to share any compensation

13  received, nor will any such agreement be made, except as permitted under section 504(b)(1) of

14  the Bankruptcy Code.

15      25.    The foregoing constitutes the statement of Cain Brothers pursuant to section 504

16  of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 5002.

17      In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

18  is true and correct.

19

20  Dated: September 29, 2018          CAIN BROTHERS, a division of
                                       KeyBanc Capital Markets Inc.
21

22

23                                     James Moloney
                                       Managing Director
24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**ENGAGEMENT AGREEMENT**

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

# CAIN BROTHERS

A division of

**KeyBanc** Capital Markets 🔑

601 California Street, Suite 1505
San Francisco, CA 94108
Main   (415) 982 6536
Fax    (415) 982 3365
cainbrothers.com

July 9, 2018

Mr. Rich Adcock
Chief Executive Officer
VERITY HEALTH SYSTEM OF CALIFORNIA, INC.
2040 E Mariposa Avenue
El Segundo, CA 90245

Dear Mr. Adcock:

Pursuant to our recent conversations, we are pleased to set forth the arrangements (this "Agreement") under which Cain Brothers, a division of KeyBanc Capital Markets Inc. ("Cain Brothers") will provide advisory services to Verity Health System of California, Inc. and Verity Affiliates (collectively, "VHS") in connection with any Transaction (as defined below). "Verity Affiliate" means any entity that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, Verity Health System of California, Inc.

## 1. Scope of Services

During the term of this engagement, and as mutually agreed upon by Cain Brothers and VHS, Cain Brothers, acting as the exclusive investment banker to VHS, will perform the following investment banking services, among others:

M&A Transaction Services.  Provide advice and assistance to VHS in connection with a possible sale, disposition, or other business transaction or series of transactions involving all or a material portion of the equity or assets of VHS, whether directly or indirectly, and through any form of transaction, including, without limitation, merger, reverse merger, liquidation, stock sale, asset sale, asset swap, recapitalization, reorganization, consolidation, amalgamation, sale under section 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")(including pursuant to any "credit bid" made under section 363(k) of the Bankruptcy Code and including under a prenegotiated or prepackaged chapter 11 plan or other chapter 11 plan), spin-off, split-off, joint venture, strategic partnership, license, or other similar transaction (any of the foregoing, an "M&A Transaction");

Financing Services.  Provide advice and assistance to VHS in connection with any of the following (each, a "Financing"): (i) the issuance, sale, and/or placement, whether in one or more public or private transactions or series of transactions, of (1) common equity, preferred equity, hybrid, and/or equity-linked securities of VHS (regardless of when sold by VHS or its

{00307460 v1 CONFIDENT} 1

CAIN BROTHERS
A division of
**KeyBanc** Capital Markets

Verity Health System of California, Inc.
July 9, 2018
Page 2

securityholders), including, without limitation, convertible debt securities, and/or (2) notes, bonds, debentures, and/or other debt securities of VHS, including, without limitation, mezzanine and asset-backed securities and debtor-in-possession financing or exit financing associated with a bankruptcy case, if any, and/or (ii) the arrangement and/or placement of any new bank debt and/or other credit facility of VHS (i.e., any new bank debt and/or other credit facility and not any existing indebtedness that is rolled or otherwise restructured in connection with a Restructuring (as defined below)). For the avoidance of doubt, if a Financing is executed in more than one issuance or tranche, each such issuance or tranche shall be deemed a Financing for purposes of this Agreement.

Restructuring Services. Provide advice and assistance to VHS in connection with analyzing, structuring, negotiating, and effecting, any restructuring, reorganization, recapitalization, or modification of all or a portion of VHS's outstanding indebtedness, including, without limitation, through any offer by VHS with respect to any outstanding VHS indebtedness, a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan of reorganization or other plan pursuant to the Bankruptcy Code), the execution of any agreement giving effect thereto, or an offer by any party to convert, exchange, or acquire any outstanding VHS indebtedness or any similar balance sheet restructuring involving VHS (any of the foregoing, a "Restructuring").

An M&A Transaction, a Financing and a Restructuring are each and collectively hereinafter referred to as a "Transaction." In connection with any Transaction, Cain Brothers will also provide the following services to the VHS Board of Directors (the "Board") as deemed appropriate and necessary by VHS and Cain Brothers, along with other services reasonably requested by the Board and agreed to by Cain Brothers:

- Assisting the Board in establishing objectives for a Transaction;
- Identifying and evaluating strategic alternatives consistent with the objectives and reflective of market conditions;
- Developing a strategy for conducting a Transaction process consistent with the objectives established by the Board;
- Developing a list of prospective strategic partners and buyers consistent with the objectives established by the Board;
- Assisting the Board in preparing marketing materials (as amended and supplemented from time to time, the "Marketing Materials");
- Contacting and soliciting interest from prospective parties to a Transaction;
- Reviewing and analyzing all indications of interest and proposals that are received by VHS and assisting VHS in negotiations with prospective parties to a Transaction; and
- Providing regular updates to the Board regarding the Transaction process.

CAIN BROTHERS
A division of
**KeyBanc** Capital Markets ○▪

Verity Health System of California, Inc.
July 9, 2018
Page 3

In rendering its services to VHS under this Agreement, Cain Brothers shall not assume any responsibility for VHS's underlying business decision to effect any Transaction or for any economic, financial or other consequences that may arise out of a Transaction or Cain Brothers' engagement under this Agreement. VHS acknowledges that Cain Brothers' role is only advisory and that VHS will make the final determination as to the value, pricing and terms and conditions of any Transaction in which it engages. VHS further acknowledges and consents that in the event that Cain Brothers provides advice to VHS with respect to an outstanding issue of municipal securities on which VHS is an obligated person (*i.e.*, is responsible to pay or otherwise support the payment of debt service on such issue), and in the event that Cain Brothers is deemed to be a municipal advisor with respect to such activity, then any duties, responsibilities, or standards of conduct applicable to municipal advisors shall be limited to such activity and shall not otherwise apply to the other services provided by Cain Brothers pursuant to this Agreement.

## 2. Information to be Supplied, Covenants, Representations and Warranties

In connection with Cain Brothers' activities on VHS's behalf, VHS agrees to (a) cooperate with Cain Brothers, (b) furnish to Cain Brothers any and all information and data concerning VHS, any potential acquirers (if and to the extent made available in connection with a potential Transaction) and any Transaction (the "Information") that Cain Brothers deems appropriate and (c) provide Cain Brothers with reasonable access to VHS's Representatives (as defined below), at such times and such locations as is reasonably agreed upon by the parties.

"Representatives" shall mean each party's officers, directors, employees, appraisers, independent accountants, legal counsel and other consultants, independent contractors and advisors.

VHS represents and warrants that all Information (i) made available by VHS or its Representatives to Cain Brothers, its Representatives or any prospective party to a Transaction, (ii) contained in any Marketing Materials, or (iii) contained in any filing by VHS with any governmental or regulatory agency or commission (an "Agency") with respect to any Transaction will, at all times during the period of the engagement of Cain Brothers hereunder, be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. VHS further represents and warrants that any projections and other Information provided by VHS to Cain Brothers, its Representatives, any prospective party to a Transaction or any Agency with respect to any Transaction, or contained in any Marketing Materials, will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. In rendering its services hereunder, Cain Brothers will be using and relying on the Information (and information available from public sources and other sources deemed reliable by Cain Brothers) without any assumption by Cain Brothers of an obligation to independently verify the same or to independently appraise any of the assets or liabilities of VHS or any prospective party to a Transaction or advise or opine on any related solvency issues. Cain Brothers does not assume responsibility for the accuracy or completeness of the Information or any other information regarding VHS or any prospective party to a Transaction.

CAIN BROTHERS
A division of
**KeyBanc** Capital Markets ⚬🔑

Verity Health System of California, Inc.
July 9, 2018
Page 4

"Cain Brothers, a division of KeyBanc Capital Markets Inc." is a trade name of KeyBanc Capital Markets Inc. Member NYSE/FINRA/SIPC. KeyBanc Capital Markets Inc. and KeyBank National Association are affiliated companies of KeyCorp. VHS acknowledges that Cain Brothers (collectively with its affiliates, the "KeyCorp Group") is a full service securities firm and, together with its affiliates, is engaged in a wide range of investment banking and other activities. Members of the KeyCorp Group may from time to time effect transactions for their own accounts or the accounts of customers, and hold positions in securities or options on securities of companies which may be the subject of the engagement contemplated by the letter agreement. Members of the KeyCorp Group also may from time to time perform various investment banking, commercial banking and financial advisory services for other clients and customers who may have conflicting interests with respect to VHS or the Transaction. Information that is held elsewhere within the KeyCorp Group will not for any purpose be taken into account in determining Cain Brothers' responsibilities to VHS under this Agreement. Neither Cain Brothers nor any other part of the KeyCorp Group will have any duty to disclose to VHS or utilize for VHS's benefit any non-public information acquired (a) in the course of providing services to any other person, (b) from engaging in any transaction (for KeyCorp Group's own account) or (c) otherwise from carrying on KeyCorp Group's business; provided that, however, in the case of subsection (c) above, such non-public information also is kept confidential from all KeyCorp Group clients. Further, VHS acknowledges that from time to time the research department of KeyBanc Capital Markets Inc. may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Cain Brothers. Cain Brothers is managed separately from the research department of KeyBanc Capital Markets Inc. and does not have the ability to prevent such conflicts. VHS expressly waives, to the fullest extent permitted by applicable law, any rights to assert any claim that the activities referred to in this paragraph breach any duty owed to VHS hereunder or to assert that any such activities constitute a conflict of interest by Cain Brothers or the KeyCorp Group with respect to VHS.

So long as legally permissible, VHS agrees to provide Cain Brothers with any information that it may reasonably request from time to time to comply with any law, rule or regulation to which Cain Brothers may be subject, including anti-money laundering laws.

VHS understands and agrees that Cain Brothers will act under this Agreement as an independent contractor with duties solely to VHS and that nothing in this Agreement or the nature of Cain Brothers' services in connection with this engagement shall be deemed to create a fiduciary duty or fiduciary relationship between Cain Brothers and VHS or VHS's sponsor(s), Board, officers, employees, creditors or other stakeholders, and VHS further waives any claim against Cain Brothers relating to breach of fiduciary duty.

## 3. Coordination of Efforts

In order to coordinate efforts to effect a Transaction, during the period of the engagement of Cain Brothers hereunder, neither VHS nor any of its Representatives shall, directly or indirectly (except in coordination with Cain Brothers), propose or engage in discussions or negotiations with any party concerning the Transaction or solicit any offer from any party to enter into a Transaction. In the event that, during the period of the engagement of Cain Brothers hereunder, VHS or any of

# CAIN BROTHERS

A division of
**KeyBanc** Capital Markets

Verity Health System of California, Inc.
July 9, 2018
Page 5

its Representatives is contacted by or on behalf of any party concerning the possibility of a Transaction, VHS will promptly so inform Cain Brothers.

## 4. Compensation and Expenses

VHS shall pay the following fees to Cain Brothers pursuant to this Agreement:

(a) **Monthly Fee:** Commencing on July 1, 2018, VHS shall pay Cain Brothers in cash a monthly fee of $150,000, payable for the remainder of the term of this Agreement (but in no event for fewer than 4 months), in each case on the first business day of each month (the "Monthly Fee"). With the exception of the first Monthly Fee and 50% of the second Monthly Fee, any Monthly Fee paid to Cain Brothers shall be credited once toward all Transaction Fees (as defined below) payable under this Agreement.

(b) **M&A Fee:** Promptly upon the consummation of an M&A Transaction, a non-refundable cash fee (an "M&A Fee") equal to 1.00% of the Aggregate Transaction Value of such an M&A Transaction or in the case of an M&A Transaction involving a VHS Related Party an M&A Fee equal to 0.50% of the Aggregate Transaction Consideration of such an M&A Transaction. For purposes of this Agreement, a "VHS Related Party" shall mean any entity listed on Schedule I of this Agreement.

As used in this Agreement, the term "Aggregate Transaction Value" shall mean the total fair market value, at the time of closing, of all consideration paid or payable, or otherwise to be distributed, directly or indirectly, to VHS in connection with an M&A Transaction (including, without limitation, the amount of all cash, securities and other non-cash consideration paid, payable, issued or issuable by the purchaser and its affiliates). In addition, "Aggregate Transaction Value" shall include the fair market value of any indebtedness and pension liability assumed, refinanced or paid, directly or indirectly (but excluding any pension amounts that are restructured or otherwise reduced as part of a bankruptcy filing), by purchaser or other third party less any cash delivered with the entity in connection with the M&A Transaction. For purposes of computing any fees payable to Cain Brothers hereunder, non-cash consideration paid to VHS or for the benefit of VHS in the Transaction shall be valued as follows: (x) publicly-traded securities shall be valued at the average of their closing prices (as reported on Bloomberg) for the five trading days prior to the closing of the Transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof, as determined by VHS and Cain Brothers in good faith and in accordance with customary market practices. The value of "in-the-money" options and warrants shall be equal to the difference between the exercise price thereof and the value which would be received in the M&A Transaction by a holder of the number and kind of securities into which such options and warrants are exercisable. If an M&A Transaction involves the acquisition of less than 50% of the voting power of the Board of VHS or any affiliate of VHS, the fee payable to Cain Brothers shall be reasonably negotiated by the parties at the time.

CAIN BROTHERS
A division of
KeyBanc Capital Markets

Verity Health System of California, Inc.
July 9, 2018
Page 6

(c) **Financing Fee.** In the event a Financing is provided by a VHS Related Party and such
financing is consummated prior to a bankruptcy filing by VHS, no Financing Fee shall be
due. Promptly upon the consummation of a Financing involving a solicitation process
from third-party lenders, except a Financing provided by a VHS Related Party, a non-
refundable cash fee (a "Financing Fee") equal to 0.75% of the total gross proceeds provided
for in such Financing from third-party lenders (including all amounts committed but not
drawn down under credit lines, other indebtedness or other facilities). If a Financing is
provided by a VHS Related Party and is consummated after a bankruptcy filing, the
Financing Fee shall be equal to 0.375% of the total gross proceeds provided for in such
Financing from the VHS Related Party.

(d) **Restructuring Fee:** Promptly upon the consummation of each Restructuring of each of
the following Verity Affiliates, a non-refundable fee (a "Restructuring Fee") equal to:

(i)   $1,000,000 for St. Francis;

(ii)  $400,000 for Seton;

(iii) $100,000 for Seton Coastside;

(iv)  $400,000 for O'Connor;

(v)   $100,000 for St. Louise; and

(vi)  $500,000 for St. Vincent.

Each of the Verity Affiliates identified in Section 4(d)(i) – (vi) above is referred to herein as a
"Hospital" and, collectively, as the "Hospitals".

An M&A Fee, a Financing Fee and a Restructuring Fee are each and collectively hereinafter
referred to as a "Transaction Fee." VHS acknowledges that more than one Transaction Fee may
come due under the Agreement (including more than one M&A Fee and Financing Fee). Also,
notwithstanding the foregoing or anything to the contrary in this Agreement, (a) to the extent a
Transaction qualifies as both an M&A Transaction and a Restructuring, Cain Brothers shall only
be paid the higher of the M&A Fee and Restructuring Fee payable on account of such Transaction
and (b) the minimum M&A Fees for each M&A Transaction shall be as follows:

- for transactions with less than $10 million in Aggregate Transaction Value the minimum
  Transaction fee shall be $150,000;

- for transactions with Aggregate Transaction Value between $10 million and $24.999
  million the minimum Transaction fee shall be $350,000; and

- for transactions with Aggregate Transaction Value between $25 million and $49.999
  million, the minimum Transaction fee shall be $500,000; and

- for transactions with Aggregate Transaction Value between $50 million and $149.999
  million, the minimum Transaction Fee shall be $1,000,000.

CAIN BROTHERS
A division of
KeyBanc Capital Markets ✧ㅈ

Verity Health System of California, Inc.
July 9, 2018
Page 7

- for transactions with Aggregate Transaction Value between $150 million and $249.999 million, the minimum Transaction fee shall be $1,500,000; and

- for transactions with Aggregate Transaction Value in excess of $250 million, the minimum Transaction Fee shall be $2,000,000.

For any M&A Transaction(s) involving Verity Affiliates that are not Hospitals, such Verity Affiliates to include DePaul Ventures, LLC, Verity Holdings, LLC, the fundraising foundations and/or Verity Medical Foundation (collectively, "non-Hospital Verity Affiliates"), the parties agree that such M&A Transaction(s) will be considered a single M&A Transaction for purposes of calculating the minimum M&A Fee payable hereunder.

In addition to the fees described above in this Section 4, VHS agrees to promptly reimburse Cain Brothers, upon request made from time to time, for all reasonable and approved out-of-pocket expenses incurred by Cain Brothers, except (a) travel expenses, including airfare, mileage reimbursement, rental vehicles, hotels, meals and related expenses while traveling as part of this engagement, and (b) duplication or copying costs. Cain Brothers shall be responsible for the first $50,000 of such out-of-pocket expenses. Approved expenses shall be reimbursable whether or not a Transaction is consummated. If Cain Brothers is requested by VHS to engage legal counsel or third-party consultants or advisors, VHS agrees to promptly reimburse Cain Brothers for such expenses.

## 5. Term and Termination of Engagement

This Agreement shall be in effect from the date hereof until the time that this Agreement is terminated or a Transaction is completed.

VHS or Cain Brothers may terminate this Agreement at any time after four months of the date hereof upon written notice to the other party. Notwithstanding the foregoing, the provisions of Sections 4 (Compensation and Expenses), 5 (Term and Termination of Engagement), 6 (Confidentiality), 7 (Use of Opinions or Advice), 8 (Use of Company Logo), 9 (Indemnification), 10 (Binding Effect), 11 (Governing Law) and Annex A (Indemnification Provisions) will survive the completion of the Transaction and the termination of this Agreement for any reason.

In addition, in the event of any termination of this Agreement, Cain Brothers shall be entitled to the Transaction Fee set forth in Section 4, as applicable, if, on or prior to 12 months from the effective date of any termination of this Agreement, VHS consummates, or enters into an agreement which subsequently results in, the consummation of a Transaction. Any such Transaction Fee shall be payable upon the closing of any such Transaction. For the avoidance of doubt, more than one fee may be payable to Cain Brothers under the terms of this Section 5.

## 6. Confidentiality

Cain Brothers will maintain in confidence all Information provided to it and will not disclose any of the Information to any person or entity unless such information: (a) is in the public domain,

{00367460 v1 CONFIDENT }



CAIN BROTHERS
KeyBanc Capital Markets

Verity Health System of California, Inc.
July 9, 2018
Page 8

(b) is contained in materials available to the public or otherwise becomes public knowledge (other than through a disclosure by Cain Brothers or its Representatives), (c) is obtained by Cain Brothers from any source other than VHS or its Representatives, (d) has been independently developed by Cain Brothers or its Representatives, or (e) was in Cain Brothers' possession from a source that was not known by Cain Brothers to be under an obligation to maintain such Information as confidential prior to being furnished to Cain Brothers by VHS; *provided, however,* that Cain Brothers may disclose such Information as is authorized by VHS' Chief Executive Officer, Chief Financial Officer or General Counsel. Cain Brothers may disclose any portion of the Information that it determines is necessary to comply with legal, regulatory, judicial or administrative process in connection with any action, suit, proceeding, claim or request or otherwise by applicable law; provided, however, that, other than in connection with routine supervisory examinations by bank and/or securities regulators to whose jurisdiction Cain Brothers or any of its affiliates is subject, Cain Brothers shall, if legally permissible, promptly notify VHS of (and in no event give VHS less than 30 days notice of) such requested disclosure prior to the disclosure to allow VHS to seek a protective order for such Information. Upon termination or completion of Cain Brothers' engagement, Cain Brothers will return to VHS or destroy all materials provided to Cain Brothers by VHS regarding the engagement, provided, however, that, so long as Cain Brothers applies the terms of this Section 6 to the materials, Cain Brothers shall be permitted to retain such materials to the extent necessary to comply with applicable laws, rules or regulations. This Section 6 supersedes any prior agreement between VHS and Cain Brothers regarding confidentiality.

## 7. Use of Opinions or Advice

All opinions and advice (written or oral) given by Cain Brothers to VHS in connection with Cain Brothers' engagement are intended solely for the benefit and use of VHS. No such opinion or advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public references to Cain Brothers be made by VHS without the prior written consent of Cain Brothers.

## 8. Use of Company Logo

Following the consummation of the Transaction, Cain Brothers shall have the right, at its own expense, to place advertisements in financial and other newspapers and journals and to utilize within any marketing materials produced by Cain Brothers information describing the services to VHS hereunder and the name and corporate logo of VHS. Cain Brothers, however, shall obtain from VHS its written approval (not to be unreasonably withheld) prior to the first use of any such advertisement or marketing materials.

## 9. Indemnification

In connection with engagements such as this, it is Cain Brothers' policy to receive indemnification. VHS agrees to the provisions with respect to Cain Brothers' indemnity and other matters set forth in Annex A to this Agreement, which forms an integral part of this Agreement and has the same force and effect as if expressly set forth in the body of this Agreement. VHS understands that if Cain Brothers is asked to act for VHS in any other formal



**CAIN BROTHERS**
a division of
**KeyBanc** Capital Markets

Verity Health System of California, Inc.
July 9, 2018
Page 9

additional capacity relating to this engagement but not specifically addressed in this Agreement, such activities shall constitute separate engagements and the terms of any such separate engagements will be embodied in one or more separate written agreements as mutually agreed. The indemnity provisions in Annex A shall apply to any such separate engagements unless superseded by an indemnity provision set forth in a separate agreement applicable to any such additional engagement and shall remain in full force and effect regardless of any completion, modification or termination of Cain Brothers' engagement.

## 10. Binding Effect

This Agreement will be binding upon Cain Brothers, VHS and their respective successors. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party. In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby. Neither party may assign or transfer its rights or obligations under this Agreement without the prior written consent of the other party, except that Cain Brothers may without consent assign or transfer this Agreement to an affiliate or a successor to the business of Cain Brothers. This Agreement may be executed in one or more counterparts (including by facsimile or pdf), each of which shall constitute an original and all of which shall constitute one and the same agreement.

## 11. Governing Law & Venue

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be fully performed therein, without regard to conflicts of law principles. Except as otherwise provided herein, the parties agree that any dispute arising from or related to this Agreement shall be decided by binding arbitration in Los Angeles, California before a neutral arbitrator under the Commercial Arbitration Rules of the American Arbitration Association. The arbitrator shall decide the case by issuing a reasoned award. Notwithstanding anything to the contrary in the Commercial Arbitration Rules, the arbitrator shall not have the power to commit errors of law or legal reasoning or make factual findings without substantial evidence. Their award may be vacated, modified or corrected by a Superior Court of the State of California of competent jurisdiction for any such error. Any action to confirm, vacate, or modify the award shall be brought only in a Superior Court of the State of California pursuant to the California Arbitration Act. Notwithstanding the foregoing, in the event of a Bankruptcy Case (as defined below) in which VHS retains Cain Brothers, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement shall be resolved by the Bankruptcy Court.

## 12. Exclusivity

During the term of the Agreement, VHS will not, and will not permit any stockholder, affiliate, or advisor, or representative of VHS to engage any other person to perform any services or act in any capacity for which Cain Brothers has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Cain Brothers.

CAIN BROTHERS
A division of
**KeyBanc** Capital Markets

Verity Health System of California, Inc.
July 9, 2018
Page 10

## 13. Bankruptcy Matters

In the event that VHS files a voluntary petition under chapter 11 of the Bankruptcy Code (a "Bankruptcy Case"):

(a)    VHS shall use its reasonable best efforts to obtain an order of the Bankruptcy Court authorizing the employment of Cain Brothers as its exclusive investment banker pursuant to the terms of this Agreement (including, without limitation, the fee, expense, and indemnification provisions hereof) pursuant to, and subject to the standards of review set forth in, sections 327(a) and 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the commencement of such Bankruptcy Case. VHS agrees that the application to retain Cain Brothers pursuant to the terms hereof and the proposed order in connection therewith must be acceptable to Cain Brothers in its sole and absolute discretion. Prior to commencing a Bankruptcy Case, VHS shall pay to Cain Brothers all amounts then earned and payable pursuant to this Agreement in cash. In agreeing to seek Cain Brothers' retention under section 328(a) of the Bankruptcy Code, VHS acknowledges that it believes that Cain Brothers' investment banking capabilities will inure to the benefit of VHS, that the value to VHS of Cain Brothers' services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees set forth in Section 4 hereof are reasonable, regardless of the number of hours expended by Cain Brothers' professionals in the performance of the services to be provided hereunder.

(b)    VHS agrees that this Agreement (except for the obligations in Sections 4, 5, 9 and Annex A hereto) shall be null and void and Cain Brothers shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration, or petition for *certiorari*, which is acceptable to Cain Brothers in its sole and absolute discretion, is entered by the Bankruptcy Court. If such final and non-appealable order authorizing the employment of Cain Brothers is not obtained within a 60-day period following the filing of the Bankruptcy Case, or if such order is later reversed, vacated, stayed, or set aside for any reason, Cain Brothers may terminate this Agreement, and VHS shall be obligated to pay to Cain Brothers all fees earned and reimburse Cain Brothers for all expenses incurred prior to the effective date of such termination, after approval from the Bankruptcy Court and subject to the requirements of any applicable orders of the Bankruptcy Court, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the applicable local rules and guidelines.

(c)    Cain Brothers' post-petition compensation as set forth herein and payments made pursuant to the expense reimbursement and indemnification provisions of this agreement (including, without limitation, Annex A hereto) shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to any financing orders entered by the Bankruptcy Court. VHS also agrees to assist Cain Brothers in preparing, filing, and serving all required fee statements, interim fee applications, and final fee application. VHS also agrees to support Cain Brothers' fee applications during any Bankruptcy Court hearing on such fee applications, so long as the fees and expenses sought by Cain Brothers therein are consistent with this Agreement.



Verity Health System of California, Inc.
July 9, 2018
Page 11

The terms of this Section 13 are solely for the benefit of Cain Brothers, and may be waived, in whole or in part, only by Cain Brothers.

*[Remainder of page intentionally left blank]*



CAIN BROTHERS
A division of
**KeyBanc** Capital Markets ⚷

Verity Health System of California, Inc.
July 9, 2018
Page 12

If the terms of the engagement proposed herein are acceptable to VHS, please execute two original copies of this letter and return one of the copies to Cain Brothers. Again, we look forward to the next steps associated with this engagement.

Very truly yours,

CAIN BROTHERS, A DIVISION OF KEYBANC CAPITAL MARKETS INC.

By: _____

Name: James Moloney

Title: Managing Director

By: _____

Name: Carsten Beith

Title: Managing Director and Group Head

AGREED AND ACCEPTED AS OF THE DATE FIRST WRITTEN ABOVE:

Verity Health System of California, Inc.

By: _____

Name: Rich Adcock

Title: Chief Executive Officer

CAIN BROTHERS
A Division of
KeyBanc Capital Markets

Verity Health System of California, Inc.
July 9, 2018
Page 13

## ANNEX A

### INDEMNIFICATION PROVISIONS

This Annex A is an integral part of the Agreement, dated July 9, 2018, by and between Cain Brothers and VHS, who have indicated their acceptance of the terms set forth in this Annex A by execution of the Agreement.

VHS hereby agrees to indemnify and hold harmless Cain Brothers and its affiliates and the respective directors, officers, managers, members, partners, controlling persons (within the meaning of Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended), agents, counsel and employees of Cain Brothers or any of its affiliates (Cain Brothers and each such other person or entity being referred to individually as an "Indemnified Person" and, collectively, as "Indemnified Persons") from and against any and all claims, liabilities, losses, damages, penalties, judgments, awards and expenses incurred by any Indemnified Person (including fees and disbursements of counsel and including claims initiated by VHS ) which (A) are related to or arise out of (i) actions taken or omitted to be taken (including any untrue statements made or alleged to have been made or any statements omitted or alleged to have been omitted, whether in connection with the Information or any other oral or written statements) by VHS, its affiliates, directors/trustees, officers, employees or agents or (ii) actions taken or omitted to be taken by an Indemnified Person with VHS's consent or in conformity with its instructions or its actions or omissions or (B) are otherwise related to or arise out of Cain Brothers' activities on VHS's behalf in connection with the engagement and will reimburse any Indemnified Person for all costs and expenses, including counsel fees and disbursements, as they are incurred, in connection with investigating, preparing and defending any action, formal or informal claim, investigation, inquiry or other proceeding, whether or not in connection with pending or threatened litigation, caused by or arising out of or in connection with Cain Brothers acting pursuant to the engagement, whether or not any Indemnified Person is named as a party thereto and whether or not any liability results therefrom. VHS will not, however, be responsible for any claims, liabilities, losses, damages or expenses, which are finally judicially determined by a court of competent jurisdiction (not subject to further appeal) to have resulted from Cain Brothers' willful misconduct, gross negligence or bad faith.

VHS also agrees that neither Cain Brothers nor any other Indemnified Person shall have any liability to VHS for or in connection with Cain Brothers' engagement except that Cain Brothers shall have such liability for claims, liabilities, losses, damages or expenses incurred by VHS, which is finally judicially determined to have resulted from Cain Brothers' willful misconduct, gross negligence or bad faith. In no event, regardless of the legal theory advanced, shall the Company or any Indemnified Person be liable for any consequential, indirect or special damages of any nature in connection with claims between the parties (other than a claim by Cain Brothers or any Indemnified Person to enforce the indemnification provisions set forth herein).

If indemnification is to be sought hereunder by Cain Brothers or any other Indemnified Person, then such Indemnified Person shall notify the Company of the commencement of any action or proceeding in respect thereof; *provided, however,* that the failure so to notify the Company shall not relieve the Company from any liability that it may have to any Indemnified Person pursuant to the Agreement, except to the extent that the Company has been prejudiced in any material

CAIN BROTHERS
A division of
KeyBanc Capital Markets ♦

Verity Health System of California, Inc.
July 9, 2018
Page 14

respect by such failure. Notwithstanding the above, following such notification, the Company may elect in writing to assume the defense of such action or proceeding and, upon such election, the Company shall not be liable for any legal costs subsequently incurred by such Indemnified Person (other than reasonable costs of investigation and providing evidence) in connection therewith, unless (i) the Company has failed to provide counsel reasonably satisfactory to such Indemnified Person in a timely manner, (ii) such Indemnified Person reasonably determines that representation of such Indemnified Person by counsel provided by the Company would present such counsel with a conflict of interest or (iii) the Company authorizes such Indemnified Person in writing to employ separate counsel at the expense of the Company.

In order to provide for just and equitable contribution, if a claim for indemnification is made pursuant to these provisions but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification is not available for any reason even though the express provisions hereof provide for indemnification in such case, then VHS, on the one hand, and Cain Brothers, on the other hand, shall contribute to such claim, liability, loss, damage, penalty, judgment, award or expense for which such indemnification or reimbursement is held unavailable in such proportion as is appropriate to reflect the relative benefits to VHS, on the one hand, and Cain Brothers, on the other hand, in connection with the actions contemplated by the engagement, subject to the limitation that in any event all Indemnified Persons' aggregate contribution to all claims, liabilities, losses, damages, penalties, judgments, awards and expenses to which contribution is available hereunder shall not exceed the amount of fees actually received by Cain Brothers pursuant to the Agreement.

VHS agrees that, without Cain Brothers' prior written consent, VHS will not enter into any settlement or compromise of, or consent to any judgment in a proceeding arising out of the transactions contemplated by the Agreement and in which any Indemnified Person is a party, unless such settlement, compromise or judgment (i) includes an explicit and unconditional release of all Indemnified Persons from all liability arising therefrom and (ii) does not (x) acknowledge any liability of or wrongdoing by an Indemnified Person, (y) materially adversely affect the business of an Indemnified Person or (z) limit the future conduct of an Indemnified Person by injunction, decree or otherwise.

The foregoing rights to indemnity and contribution shall be in addition to any rights that any Indemnified Person may have at common law or otherwise; shall be binding on VHS's successors and assigns; shall apply to Cain Brothers' engagement under the Agreement, activities relating to such engagement occurring prior to the date hereof, and any subsequent modification of or amendment to the Agreement; and shall remain in full force and effect following the completion or any termination of Cain Brothers' engagement for any reason. To the fullest extent permitted by applicable law, VHS hereby agrees that any claim, action or proceeding by an Indemnified Person against VHS seeking any relief whatsoever based on, arising out of, or in connection with, this Agreement may be brought in the state or federal courts located in Los Angeles County, California, and in any other court in which any claim which is subject to this Agreement is brought against any Indemnified Person and hereby consents to personal jurisdiction and to service and venue in any such court. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING IN CONNECTION WITH OR AS A RESULT OF THE AGREEMENT IS HEREBY WAIVED.

CAIN BROTHERS
A division of
**KeyBanc** Capital Markets

Verity Health System of California, Inc.
July 9, 2018
Page 15

## SCHEDULE I

## VHS Related Parties

Blue Mountain Capital Management, LLC
Funds managed by Nuveen Asset Management, LLC that hold outstanding debt securities of VHS as of the date hereof
The "Hospitals" (as defined in the Agreement)
The "non-Hospital Verity Affiliates" (as defined in the Agreement)
NantWorks, LLC
Nant Capital, LLC
Patrick Soon Shiong
Funds managed by Rosemawr Management LLC or their affiliates (including Municipal Partners Fund LP, Rosemawr Capital II LP, and RMA Capital Partners LP)
RCB Equities

1

**EXHIBIT B**

2

**POTENTIAL PARTIES IN INTEREST**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**Schedule 1**

**Parties in Interest List**


UMB Bank, N,A.
Wells Fargo Bank, N.A.
U.S. Bank National Association
Nant Capital, LLC
Nant Works, LLC
Verity Health System
Daubhters of Charity Health System
O'Connor Hospital, San Jose
Saint Louise Regional hospital, Gilroy
Seton Medical Center, Daly City
Seton Medical Center-Coastside, Moss Beach
St. Francis Medical Center, Lynwood
St. Vincent Medical Center, Los Angeles
Blue Mountain Capital
NantWorks LLC
Dr. Patrick Soon-Shiong
Aetna
AllCare Medical Group
Allscripts
AltaMed
AppleCare
Boston Scientific Corp.
Cardinal Health
CDW Government Inc.
DHCS
DVA Renal Healthcare Inc.
DVA Renal Healthcare Inc.
Healthcare LS
Healthnow Administrative Services
Marillac Insurance Company, Ltd.
McKesson
Medline Industries, Inc.
Medtronic USA Inc.
Microsoft
Nant Capital, LLC
NFS
Premier
Rightsourcing Inc.
RPHE Plan
Sagewell Healthcare Benefits Trust

1

Seoul Medical Group
Shiftwise
Sodexo
Sunquest Information Systems, Inc.
TransAmerica
Workday
Zimmer-USA
Ernest Agatstein, M.D.
James Barber
Terry Belmont
Jack Krouskup
Charles B. Patton
James Pieri
Andrew Pines
Christobel Selecky
Verity Health System of California, Inc.
Heritage Provider Network
Regal Medical Group
Josefina Robles
Nuveen Asset Management LLC
The Vanguard Group, Inc.
Lord, Abbett & Co, LLC
Van Eck Associates Corporation
Waheed Wahidi, etal
Verity Health System Retirement Plan A
Retirement Plan For Hospital Employees
Department of Health Care Services (DHCS)
Aetna Life Insurance Company
Ivonne Engelman
Iris Lara, Tanya Lara, Jarmaine Jonhs
Josefina Robles
Diane Nguyen
Allscripts Healthcare LLC
Medline Industries, Inc.
Sodexo (Biomed Services)
Heritage Provider Network (Regal Medical Group)
Premier Healthcare Solutions, Inc.
McKesson Corporation
Centers for Medicare & Medicaid Services
Zimmer USA
Microsoft Licensing Gp
Medtronic USA Inc.
Anthem Blue Cross
Workday, Inc.
Boston Scientific
Stryker Corporation

Stationary Engineers Local 39 Trust-Defined Benefit Plan
Cardinal Health
St. Vincent Independent Physicians Association
Swinerton Builders
United Healthcare
Depuy Synthes
Applecare Medical Management, LLC
Los Angeles County Tax Collector
Blue Shield
CDW Government, Inc.
Stanford Hospital and Clinics
Care 1st Health Plan
Rightsourcing Inc.
Eos Healthcare
Smith Nephew Inc.
American Red Cross
Compspec
Sports, Orthopedic & Rehabilitation Associates
Ftg Builders Inc
Johnson & Johnson Health Care Systems, Inc.
Cochlear Americas
Mike Fayfel
Touchpoint Support Services
Abbott Laboratories Formerly St Jude
Baxter Healthcare
Uhs Universal Hospital Services Inc
Pension Benefit Guaranty Corporation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT C**

**CLIENT MATCH LIST**

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

## **Schedule 2**

## **Client Match List**[1]

Blue Shield of California

---

[1]    Although not a listed as a party in interest on Schedule 1, Cain Brothers has been engaged by NantHealth, Inc., a publicly traded company in which NantWorks, LLC holds a majority interest.  As noted in the Debtors' first day filings, NantWorks, LLC also holds a majority interest in Integrity Healthcare, LLC which manages the Debtors.  Dr. Patrick Soon-Schiong is also an officer and director of NantHealth, Inc.  The NantHealth, Inc. engagement is unrelated to the Debtors and these Cases.

Also, affiliates of KBCM have been engaged in certain transactions with Allscripts, DVA Renal, (UHS) Universal Hospital Services, Premier Healthcare Solutions and Medtronic, USA (who are listed on Schedule 1) in matters wholly unrelated to these Cases.