Jason D. Strabo (SBN 246426)
McDermott Will & Emery LLP
2049 Century Park East
38th Floor
Los Angeles, CA 90067-3218
Telephone: 310.788.4125
Facsimile: 310.277.4730
Email: jstrabo@mwe.com

Nathan F. Coco (admitted *pro hac vice*)
Megan Preusker (admitted *pro hac vice*)
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: 312.372.2000
Facsimile: 312.984.7700
Email: ncoco@mwe.com
mpreusker@mwe.com

Clark T. Whitmore (admitted *pro hac vice*)
Jason Reed (admitted *pro hac vice*)
Maslon LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: 612.672.8335
Facsimile: 612.642.8335
Email: Clark.Whitmore@maslon.com
Jason.Reed@maslon.com

*Attorneys for U.S. Bank National Association, not individually but as Series 2015 Note Trustee and Series 2017 Note Trustee, respectively*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>Debtors. | Case 2:18-bk-20151-ER<br>Jointly Administered<br>Chapter 11 Cases<br><br>**COMBINED LIMITED RESPONSE OF U.S. BANK NATIONAL ASSOCIATION, AS SERIES 2015 NOTE TRUSTEE AND SERIES 2017 NOTE TRUSTEE, TO MASTER TRUSTEE AND SERIES 2005 TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR FINAL ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN POST PETITION FINANCING (B) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND (C) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 105, 363, 364, 1107 AND 1108** |


# TABLE OF CONTENTS

I. BACKGROUND ................................................................................................................ 1

II. RESPONSE TO MASTER TRUSTEE'S REPLACEMENT LIEN POSITION ..................... 5

    A. The Master Trustee's Proposed Junior Replacement Liens Utterly Fail to Provide Adequate Protection to the Notes Trustee. ....................................... 5

    B. The Intercreditor Agreement is Binding on the Master Trustee. ................................. 5

    C. The Senior Replacement Liens Proposed By the Debtors Are Consistent With The Intercreditor Agreement ........................................................................ 6

    D. The Senior Replacement Liens Granted to the Notes Trustee in the Proposed Final Order are Necessary and Appropriate .................................................. 8

III. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Federal Cases**

*Blue Ridge Investors, II, LP v. Wachovia Bank, N.A.* (*In re Aerosol Packaging, LLC*),
    362 B.R. 43 (Bankr. N.D. Ga. 2006) .................................................................................. 5

*Desert Fire Protection, et al. v. Fountainebleau Las Vegas Holdings, LLC* (*In re Fountainebleu Las Vegas Holdings, LLC*),
    434 B.R. 716 (S.D. Fla. 2010) ......................................................................................... 11

*In re Allied Sys. Holdings, Inc.*,
    No. 12-11564 (CSS), 2012 WL 13033641 (Bankr. D. Del. July 12, 2012) ............................ 11

*In re Bailey Tool & Mfg. Co.*,
    No. 16-30503-BJH, 2018 WL 550581 (Bankr. N.D. Tex. Jan. 23, 2018 ............................. 11

*In re Bay Circle Props., LLC*,
    577 B.R. 587 (Bankr. N.D. Ga. 2017) ............................................................................... 9

*In re Carter*,
    No. BR 11-00759, 2012 WL 4737372 (Bankr. N.D. Iowa Oct. 3, 2012) ................................. 9

*In re Goody's, LLC*,
    No. 09-10124 CSS, 2009 WL 7698528 (Bankr. D. Del. Mar. 3, 2009) ............................... 12

*In re Graceway Pharm., LLC*,
    No. 11-13036, 2011 WL 6296789 (Bankr. D. Del. Sep. 30, 2011) ..................................... 12

*In re Lister-Petter Americas*, *Inc.*,
    No. 15-10502, 2017 WL 1511888 (Bankr. D. Kan. Apr. 26, 2017) ..................................... 8

*In re Mellor*,
    734 F.2d 1396 (9th Cir. 1984) ............................................................................................ 9

*In re O'Connor*,
    808 F.2d 1393 (10th Cir.1987) ............................................................................................ 9

*In re Plymouth House Health Care Ctr.*,
    No. 03-19135, 2005 WL 2589201 (Bankr. E.D. Pa. Mar. 15, 2005) ................................... 10

*In re Swedeland Dev. Grp.*, *Inc.*,
    16 F.3d 552 (3d Cir. 1994) ................................................................................................. 8

*In re True Temper Sports, Inc.*,
    No. 09-13446 PJW, 2009 WL 7226692 (Bankr. D. Del. Oct. 30, 2009) ........................... 12

*In re Vander Vegt*,
    499 B.R. 631 (Bankr. N.D. Iowa 2013) .............................................................................. 9

*Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd* (*In re Ion Media Networks*, *Inc.*),
    419 B.R. 585 (Bankr. S.D.N.Y. 2009) ................................................................................. 5

*Lend Lease v. Briggs Transp. Co.* (*In re Briggs Transp. Co.*),
    780 F.2d 1339 (8th Cir. 1985) .................................................................................................. 9

*Martin v. U.S.* (*In re Martin*), 761 F.2d 472, 476 (8th Cir. 1985),
    734 F.2d 426 (9th Cir.1984)) ............................................................................................... 4, 9

**Statutes**

11 U.S.C. § 361(1), (2) & (3) ................................................................................................................. 9

11 U.S.C. § 510(a) .................................................................................................................. 3, 4, 5, 11

11 U.S.C. §§ 105, 363, 364, 1107& 1108 ............................................................................................ 1

11 U.S.C. §§ 361, 363(e) & 364(d)(1) .................................................................................................. 8

U.S. Bank National Association, not individually but in its respective capacities as Series 2015 Note Trustee (the "**2015 Note Trustee**") and as Series 2017 Note Trustee (the "**2017 Note Trustee**" and, together with the 2015 Note Trustee, the "**Notes Trustee**"), hereby submits this limited response to the *Objection to Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to Obtain Post Petition Financing, (B) Authorizing the Debtors to Use Cash Collateral, and (C) Granting Adequate Protection to Prepetition Secured Creditors Pursuant to 11 U.S.C. §§ 105, 363, 364, 1107 and 1108* [Docket No. 292] (the "**Objection**") filed by UMB Bank, N.A., as successor master indenture trustee (the "**Master Trustee**"), and Wells Fargo Bank, National Association, as indenture trustee for the Series 2005 Bonds (the "**Series 2005 Trustee**").  This limited response is directed at the portion of the Objection that seeks to limit the adequate protection replacement liens being offered by the Debtors to the Notes Trustee in a manner contrary to a governing intercreditor agreement, as described below.  The Notes Trustee reserves its rights but does not in this limited response respond to other positions set forth in the Objection.

The Notes Trustee hereby incorporates by reference (i) its *Combined Reservation of Rights* filed on September 4, 2018 [Docket No. 67] (the "**Initial Reservation**"), (ii) its *Renewed Reservation of Rights* filed on September 19, 2018 [Docket No. 219] (the "**Renewed Reservation**"), and (iii) the *Declaration of Sandra Spivey* attached hereto as Appendix I (the "**Declaration**"), and respectfully states as follows:[1]

## I. BACKGROUND

1. In 2015 and 2017, in order to address the Debtors' acute illiquidity and working capital needs, the Debtors issued the 2015 Notes and the 2017 Notes, respectively, under the Master Indenture as part of an out-of-court debt restructuring. The Notes were issued as "last in, first out" short-term working capital notes that mature on June 10, 2019 and December 10, 2020, respectively. To induce investment in the Notes, in addition to offering security on a *pari passu* basis with the

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Initial Reservation, the Renewed Reservation or the DIP Motion, as applicable.

1

other Obligations under the Master Indenture, including the Series 2005 Bonds, the Obligated Group and the Master Trustee agreed that the Notes would also be secured by senior priority liens and security interests in the Debtors' best available collateral, including (i) all of the Accounts[2] of St. Francis Medical Center, St. Vincent Medical Center, O'Connor Hospital, Saint Louise Regional Hospital, and Seton Medical Center, including Seton Medical Center Coastside (each a "**Hospital**" and collectively, the "**Hospitals**") and (ii) the real property and certain personal property comprising St. Francis Medical Center and Saint Louise Regional Hospital (collectively, the "**Note Collateral**"). The 2017 Notes are additionally secured by the Moss Deed of Trust.

2.  As detailed in the Initial Reservation, the Notes Trustee's senior lien priority and collateral rights in the Note Collateral are memorialized and set forth in the Second Amended and Restated Intercreditor Agreement dated as of December 1, 2017 by and among the Notes Trustee, the Master Trustee, and the members of the Obligated Group (the "**Intercreditor Agreement**"). Pursuant to the Intercreditor Agreement, the Master Trustee (i) expressly subordinated its liens and security interests, including the Gross Revenue pledge, to the Notes Trustee with respect to all present and future Note Collateral, including, but not limited to, the assets described on Schedule C thereto, (ii) authorized the Notes Trustee, without the consent of the Master Trustee, to "accept additional or substituted security therefor," and (iii) covenanted and agreed that "until the principal of, interest on and premium, if any, on the Notes have been indefeasibly paid in full in cash any Liens and security interests of the Master Trustee in the Note Collateral . . . shall be and hereby are subordinated for all purposes, and in all respects to the Priority Liens and security interests of the

---

[2] "Accounts" includes, collectively, (a) any right to payment of a monetary obligation whether or not earned by performance, that relates to or arises out of any services provided or goods rendered by an Obligated Group Member (including, without limitation, payments made by or through a governmental authority to an individual patient assigned to such Member), (b) without duplication, any 'account' (as defined in the Uniform Commercial Code) ("*UCC*"), any accounts receivable, whether in the form of payments for services rendered or goods sold, rents, license fees or otherwise, any Health-Care-Insurance Receivables and any Payment Intangibles (each as defined in the UCC), (c) all General Intangibles, Intellectual Property (each as defined in the UCC), rights, remedies, guarantees, supporting obligations and letter of credit rights relating to or arising out of the foregoing assets described in clauses (a) and (b), (d) all information and data compiled or derived by any Member or to which any Member is entitled in respect of or related to the foregoing assets described in clauses (a) and (b) and (e) and all proceeds of any of the foregoing." *See* Amended and Restated Supplemental Master Indenture Number 20 dated as of January 1, 2016, between VHS and the prior Master Trustee.

Note Trustee in the Note Collateral" Intercreditor Agreement, §§ 2.1, 2.4 & 15.[3]  The Intercreditor Agreement remains enforceable in these Cases, both by its express terms and under Section 510(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.").

3.  In these Cases, the Debtors seek a DIP Loan in an aggregate principal amount of up to $185,000,000 to fund anticipated short term negative cash flow while they conduct an orderly series of sales of their assets pursuant to Section 363 of the Bankruptcy Code.  Although the Debtors hope that the sale proceeds will be sufficient to repay the DIP Loan, the Carve Out, and all of their Prepetition Secured Creditors, including both the Master Trustee and the Notes Trustee, there is nevertheless the risk that the sale proceeds of one or both of the two Hospitals subject to the Note Trustee's senior Lien (*i.e.*, St. Francis Medical Center and Saint Louise Regional Hospital), may be used in whole or in part to repay the DIP Facility, and that the Debtors' plan for full repayment might ultimately come up short.

4.  On September 5, 2018, the Court entered its Interim Order approving the DIP Loan and providing adequate protection including Prepetition Replacement Liens (as defined therein) [Docket No. 86], with the consent of both the Master Trustee and the Notes Trustee.  The Interim Order was acceptable to the Notes Trustee because, among other things, it protected the Notes Trustee against the obvious risk that its first priority Note Collateral, including proceeds of the sale of any Note Collateral, would be used to pay off the DIP Loan obligations of *all* the Debtors – not just St. Francis and Saint Louise – or would otherwise be dissipated.  The Debtors addressed this problem by granting the Notes Trustee senior replacement liens in certain of the Debtors' pre- and postpetition assets, which replacement liens were junior to the DIP Liens, Carve Out, and certain prepetition liens granted by Holdings, but ahead of other prepetition liens, including the prepetition liens granted to the Master Trustee.  The Master Trustee was also granted replacement liens ahead of

---

[3] A true and correct copy of the Intercreditor Agreement is attached as **Exhibit G** to the Declaration.

certain other prepetition liens, but agreed that any replacement liens granted to the Notes Trustee on account of the Diminution in Value of the priority Note Collateral would have priority over any replacement liens granted to the Master Trustee.[4] The Debtors now propose a Final Order that preserves the Notes Trustee's senior replacement lien priority in the same manner, which properly reflects and preserves the relative lien rights and subordination as between the Notes Trustee and the Master Trustee codified in the Intercreditor Agreement.

5. The Master Trustee, however, now objects to the Debtors' proposed replacement lien structure, claiming that its consent is required. In its Objection, the Master Trustee states that it is " . . . willing to consent to a Final Order approving the Financing Motion," but only if the Notes Trustee's adequate protection replacement liens are made the *junior* to all prepetition liens, including the prepetition liens of the Master Trustee.

6. The Notes Trustee respectfully submits that the replacement liens proposed by the Debtors are fair, necessary to provide adequate protection to the Notes Trustee, and consistent with and authorized by the Intercreditor Agreement and Bankruptcy Code Section 510(a). The Master Trustee's junior replacement lien proposal is advanced under the auspices of preserving "the Prepetition Secured Creditors' existing relative rights and bargained-for lending terms." Objection, ¶ 5. But the replacement lien provision proposed by the Master Trustee would have the opposite effect – *i.e*., expressly subordinating the Notes Trustee's senior liens and security interests to the Master Trustee's prepetition lien on the Note Collateral.

7. The Notes Trustee endorses the notion that, "a debtor, in structuring a proposal of adequate protection for a secured creditor, 'should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights.'" *Martin v. U.S*. (*In re Martin*), 761 F.2d 472, 476 (8th Cir. 1985) (quoting *Crocker Nat'l Bank v. Am. Mariner Indus.*, *Inc*. (*In re Am. Mariner Indus., Inc*.), 734 F.2d 426, 435 (9th Cir.1984)). However, the key detail omitted from the Objection is that the "existing relative rights" between the Notes Trustee and the Master

---

[4] The Interim Order contained certain other priority rules designed to preserve other priority rights that are outside the scope of this limited response.

4

Trustee are governed by an expansive prepetition subordination arrangement, which is the fundamental "bargained-for lending term" of the holders of the Notes. *See* Intercreditor Agreement, § 2.1 ("each Note Holder shall be deemed to have acquired its Notes in reliance upon the provisions contained in this Agreement").

## II. RESPONSE TO MASTER TRUSTEE'S REPLACEMENT LIEN POSITION

### A. The Master Trustee's Proposed Junior Replacement Liens Utterly Fail to Provide Adequate Protection to the Notes Trustee.

8. Under the Master Trustee's alternative proposed DIP Order, Prepetition Replacement Liens would be subordinated to "any perfected, unavoidable, prepetition liens on the DIP Collateral (including any unavoidable Prepetition Liens of such Prepetition Secured Creditor or any other Prepetition Secured Creditor)." *See* Objection, Ex. A, ¶ 5(a).

9. In effect, the Master Trustee's version of "adequate protection" would provide no protection at all to the Notes Trustee. The Debtors have already represented to the Court that they have no material unencumbered assets. Therefore, if the Notes Trustee suffers a Diminution in Value of its senior Note Collateral, a junior replacement lien behind the Master Trustee's prepetition lien (which the Notes Trustee already shares) would by definition have no economic value. The Master Trustee's proposed treatment of the Notes Trustee's senior liens simply does not satisfy the Debtors' obligation to provide "adequate protection," and the Notes Trustee does not consent to such treatment.

### B. The Intercreditor Agreement is Binding on the Master Trustee.

10. It is well established that intercreditor subordination arrangements are enforceable in bankruptcy. *See* 11 U.S.C. § 510(a); *Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd* (*In re Ion Media Networks*, *Inc*.), 419 B.R. 585, 595 (Bankr. S.D.N.Y. 2009) ("[t]he Intercreditor Agreement is an enforceable contract under section 510(a), and the Court will not disturb the bargained-for rights and restrictions governing the second lien debt currently held by [the junior lender]"); *Blue Ridge Investors, II, LP v. Wachovia Bank, N.A.* (*In re Aerosol Packaging, LLC*), 362 B.R. 43 (Bankr. N.D. Ga. 2006). And, indeed, the Intercreditor Agreement between the

5

Notes Trustee and Master Trustee, by its express terms, is enforceable in the event of bankruptcy.

Section 2.4 states that:

> [N]o obligations, liabilities, agreements, or duties of the Master Trustee under this Agreement shall be released, diminished, impaired, reduced, or affected by the occurrence of any of the following from time to time, even if occurring without notice to or *without the consent* of the Master Trustee: … (i) any Proceeding or any discharge, impairment, modification, release, or limitation of the liability of, or stay of actions or lien enforcement proceedings against, any properties of any Obligor, or the estate in bankruptcy of any Obligor in the course of or resulting from any such Proceedings; …

Intercreditor Agreement, § 2.4 (emphasis added).[5]

### C. The Senior Replacement Liens Proposed By the Debtors Are Consistent With The Intercreditor Agreement.

11.  Pursuant to the Intercreditor Agreement, the Master Trustee has subordinated its liens and security interests to the Note Trustee with respect to both "Priority Assets" and the broader category of present and future "Note Collateral" (each as defined under the Intercreditor Agreement), which includes Accounts and the Hospital Debtors' other cash collateral. Section 2.1 of the Intercreditor Agreement, entitled "Subordination of Master Trustee's Lien to Priority Lien," states that:

> Each Party covenants and agrees, and the Master Trustee covenants and agrees, notwithstanding anything to the contrary contained in the Master Indenture or any of the documents related to the Master Indenture or as a matter of law, that in or outside of any Proceeding any Lien of the Master Trustee with respect to the property constituting Priority Assets shall be and is hereby expressly made subordinate . . . to the Lien of the Note Trustee in such Priority Assets (whether or not such Lien of the Note Trustee is a perfected Lien).

Intercreditor Agreement, § 2.1.

12.  Section 2.1 further grants the Notes Trustee priority rights in all Note Collateral whenever granted:

---

[5] *See also* Intercreditor Agreement, § 15 ("[t]his Agreement is a continuing agreement of subordination pursuant to its terms and in accordance with Section 510(a) of the Bankruptcy Code . . . . Master Trustee hereby acknowledges that the provisions of this Agreement are intended to be enforceable at all times, whether before or after the commencement of a Proceeding, and hereby waives any right it may have under applicable law to revoke this Agreement or any provisions hereof.").

6

> [N]otwithstanding the date, time, manner or order of grant, attachment or perfection of any Liens and security interests of the Master Trustee in the Note Collateral, until the principal of, interest on and premium, if any, on the Notes have been indefeasibly paid in full in cash, *any Liens and security interests of the Master Trustee* in the Note Collateral which may exist from time to time (whether the same exist on the date hereof or otherwise) *shall be* and hereby are *subordinated for all purposes and in all respects to the Priority Liens and security interests of the Note Trustee in the Note Collateral*.

*Id.* (emphasis added).

13. Note Collateral is an all-encompassing term used in contrast to the more limited subset of Priority Assets, which are identified on Schedule C to the Intercreditor Agreement. The term Note Collateral refers to all of the collateral rights granted to the Notes Trustee under the relevant security documents. *See* Intercreditor Agreement, ¶¶ A & 1(b).

14. Under Section 2.1 of the Amended and Restated Security Agreements, each dated as of December 1, 2017, each of the Hospital Debtors granted liens in their Accounts and specified bank accounts to the Notes Trustee, together with all "products, Proceeds and replacements." *See* Declaration, Exs. A-F.

15. Under the terms of the Intercreditor Agreement, the Master Trustee authorized the Notes Trustee, in its sole discretion, to consent to a priming lien and/or accept any substitute collateral or lien. Section 2.4, entitled "Unconditional Subordination," states that:

> [T]he Master Trustee hereby expressly agrees that the Note Trustee may, from time to time, *without notice to or the consent of the Master Trustee* . . . (iii) accelerate, *change*, *rearrange*, extend, or renew *the time, terms, or manner for payment or performance* of any one or more of the obligations of the Obligors under the Note Documents or the MTI Note Obligations; . . . (v) take, *exchange*, *amend*, eliminate, surrender, release, *or subordinate any or all security* for any or all of the obligations of the Obligors under the Note Documents or the MTI Note Obligations, *accept additional or substituted security therefor*, or perfect or fail to perfect the Note Trustee's rights in any or all security; . . . .

Intercreditor Agreement, § 2.4 (emphasis added).

16. Pursuant to this Section, the Note Trustee has the right to accept the Debtors' offer of replacement liens as adequate protection in the final DIP Order without the Master Trustee's consent. The Master Trustee does not have the ability to block the Debtors from offering, or the

7

Notes Trustee from accepting, replacement collateral to protect the Notes Trustee from the Diminution in Value of its priority Note Collateral. The Master Trustee gave up that right in the earlier restructurings so that the Debtors could obtain additional financing through the issuance of the Notes. Accordingly, the proposed Replacement Liens that the Debtors have offered and must offer to the Notes Trustee as adequate protection are authorized by the Intercreditor Agreement and the Bankruptcy Code and should be approved.

17. Finally, the Master Trustee made a separate covenant in the Intercreditor Agreement not to challenge the Note Trustee's senior lien status or support any attempt to subordinate the Note Trustee's senior liens and security interests. *See* Intercreditor Agreement, § 2.3 ("The Master Trustee, on behalf of itself and the Holders of all outstanding Obligations under the Master Indenture, agrees that it will not, and will not cause or support any other Person to, at any time contest, seek to avoid or subordinate the validity, perfection, priority, extent or enforceability of the Notes, the Note Documents, this Agreement or any Liens and security interests of the Note Trustee in the Note Collateral securing the Notes.").[6] By attempting to expose the Notes Trustee to the risk that its senior collateral will be used and replaced with only a valueless junior lien, the Master Trustee would violate the spirit if not the letter of its commitment in the Intercreditor Agreement.

### D. The Senior Replacement Liens Granted to the Notes Trustee in the Proposed Final Order are Necessary and Appropriate.

18. No one disputes that the Notes Trustee is entitled to adequate protection as a matter of law in light of both the priming liens granted to the DIP Lender and the Debtors' use of the senior Note Collateral, including cash collateral. 11 U.S.C. §§ 361, 363(e) & 364(d)(1). "Adequate protection is a question of fact to be decided on a case-by-case basis under the totality of the circumstances." *In re Lister-Petter Americas*, *Inc*., No. 15-10502, 2017 WL 1511888, at *7 (Bankr. D. Kan. Apr. 26, 2017);[7] *see also In re Swedeland Dev. Grp*., *Inc*., 16 F.3d 552, 564 (3d Cir. 1994).

---

[6] *See also* Intercreditor Agreement, § 3.3 ("The Note Trustee is hereby authorized to demand specific performance of this Agreement at any time when the Master Trustee shall have failed to comply with any provision hereof. The Master Trustee hereby irrevocably waives any defenses based on the adequacy of a remedy at law which might be asserted as a bar to the action of the Note Trustee.").

[7] Attached hereto as Appendix II – A. In accordance with Local Rule 9013-2(c), unmarked, complete copies of all

8

The Court has broad discretion in determining the particular means and method of adequate protection in each case. *See Lend Lease v. Briggs Transp. Co.* (*In re Briggs Transp. Co.*), 780 F.2d 1339, 1347 (8th Cir. 1985) ("[T]he legislative history indicates that Congress has repeatedly expressed its desire to give bankruptcy courts broad discretion. By incorporating flexibility into the code, Congress plainly intended adequate protection issues to be resolved on a case-by-case basis and expected anomalous results.") (citations omitted); *In re Vander Vegt*, 499 B.R. 631, 637 (Bankr. N.D. Iowa 2013) ("[a]dequate protection was meant to be a "flexible concept 'to permit the courts to adapt to varying circumstances and changing modes of financing,' and that such matters 'are [to be] left to case-by-case interpretation and development'") (quoting *Martin*, 761 F.2d at 474), *aff'd sub nom.*, 511 B.R. 567 (N.D. Iowa 2014).

19. Bankruptcy Code Section 361 sets forth three non-exclusive examples of adequate protection: (1) a single cash payment or period cash payments; (2) an "additional or replacement lien"; and (3) "such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(1), (2) & (3). *See also In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) (holding that Section 361 is not an exclusive list of means of providing adequate protection). But, as an analytical framework, "[c]ourts have concluded that a proposal of adequate protection 'should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights.'" *In re Bay Circle Props., LLC*, 577 B.R. 587, 595 (Bankr. N.D. Ga. 2017) (quoting *Martin*, 761 F.2d at 476); *see also In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) ("[t]he whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained pre-bankruptcy"); *In re Carter,* No. BR 11-00759, 2012 WL 4737372, at *3 (Bankr. N.D. Iowa Oct. 3, 2012) ("[adequate protection] is a flexible concept designed to ensure that the creditor receives the value for which it bargained").[8]

20. Accordingly, in fashioning an appropriate form of adequate protection, courts must

---

decisions not available in approved reporters are attached hereto as Appendix II.

[8] Attached hereto as Appendix II – B.

9

address the circumstance of a subordination arrangement among constituent creditors. *See generally In re Plymouth House Health Care Ctr.*, No. 03-19135, 2005 WL 2589201, at *8 (Bankr. E.D. Pa. Mar. 15, 2005) (collecting cases addressing subordination arrangements in connection with adequate protection under section 362(d)(1)). Indeed, the failure to do so would run afoul of Bankruptcy Code section 510(a).[9]

21. The Notes Trustee's "bargained for" rights are embodied in the subordination arrangement set forth in the Intercreditor Agreement. Those rights include, *inter alia*, (i) a senior lien priority over the liens and security interests granted to the Master Trustee, including the Gross Revenue pledge, with respect to the Note Collateral, (ii) the authority to "surrender, release, or subordinate any or all security for any or all of the obligations of the Obligors under the Note Documents or the MTI Note Obligations" and/or "accept additional or substituted security therefor" without the consent of the Master Trustee, and (iii) the assurance that the Master Trustee's liens and security interests in the Note Collateral would be "subordinated for all purposes, and in all respects" to the priority liens granted the Notes Trustee "until the principal of, interest on and premium, if any, on the Notes have been indefeasibly paid in full in cash." Intercreditor Agreement, §§ 2.1, 2.4 & 15. The adequate protection regime set forth in the proposed Final Order preserves the Notes Trustee's senior lien priority and collateral rights vis-à-vis the Master Trustee with respect to replacement liens (*i.e.*, "additional or substituted security"), and ensures that the Notes Trustee's senior lien rights are adequately protected in the event that its Note Collateral suffers diminution or is used to repay the DIP Facility. (*See* Objection, ¶ 23 ("the Debtors must provide adequate protection that is crafted to preserve the *status quo* for affected secured creditors")).

22. In contrast, the replacement lien provision proposed by the Master Trustee would expressly subordinate the Notes Trustee's senior liens and security interests to the Master Trustee's junior prepetition lien on the Note Collateral, in contravention of the Intercreditor Agreement and Bankruptcy Code Section 510(a). Under the Master Trustee's suggested adequate protection

---

[9] Attached hereto as Appendix II – C.

10

scheme, the assets subject to the Notes Trustee's senior priority lien (*e.g.*, St. Francis Medical Center and Saint Louise Regional Hospital) could be sold and the proceeds used to repay the DIP Facility in whole or in part, and the Notes Trustee would be left with a mere junior replacement lien, subordinate to the Master Trustee's prepetition liens and security interests. No such result could occur outside of bankruptcy in light of the Master Trustee's subordination under the Intercreditor Agreement and, therefore, no such result is permissible in bankruptcy.

23. In addition, as noted above, the Notes Trustee already holds a *pari passu* interest in the collateral pledged to the Master Trustee. Purporting to grant the Notes Trustee a secondary subordinate lien on the same collateral is neither "adequate" nor is it "protection"; it is completely ephemeral and appears to accomplish nothing more than providing the Master Trustee a potential end-run around the subordination provisions set forth in the Intercreditor Agreement.

24. The Master Trustee and the Series 2005 Trustee argue in their Objection that the senior replacement liens granted to the Notes Trustee in the proposed Final Order are improper, citing *Desert Fire Protection, et al. v. Fountainebleau Las Vegas Holdings, LLC* (*In re Fountainebleu Las Vegas Holdings, LLC*), 434 B.R. 716 (S.D. Fla. 2010). The *Fountainebleau* case involved a lien priority dispute between certain prepetition term lenders and statutory lien claimants in connection with a failed casino construction project. Unlike the situation presented here, there was no prepetition intercreditor or subordination arrangement between the prepetition creditors, nor had the relative prepetition lien priorities been resolved at the time the disputed financing orders were entered. Because there was no intercreditor agreement, Bankruptcy Code Section 510(a) was not implicated.

25. The Master Trustee and Series 2005 Trustee's characterization of the senior replacement lien as "an extraordinary feature that is not supported by legal authority" is, likewise, unavailing. As a point of fact, the granting of senior replacement liens that mirror the prepetition priorities of secured creditors is a common feature in financing orders and decidedly proper. *See*, *e.g.*, *In re Bailey Tool & Mfg. Co.*, No. 16-30503-BJH, 2018 WL 550581, at *3 (Bankr. N.D. Tex. Jan. 23, 2018 ("As between Republic and Comerica, the Adequate Protection Liens and the

11

Superpriority Claims shall have the priority provided in the Subordination and Intercreditor Agreement dated February 25, 2015 between Republic, Comerica, the Debtors, John Buttles, and Buttolph Technology, LLC");[10] *In re Allied Sys. Holdings, Inc.*, No. 12-11564 (CSS), 2012 WL 13033641, at *16 (Bankr. D. Del. July 12, 2012) ("Pursuant to Bankruptcy Code section 510, the Prepetition Intercreditor Agreement shall remain in full force and effect in the Chapter 11 Cases and in any subsequent proceedings under the Bankruptcy Code, including, without limitation, a Successor Case. Notwithstanding anything to the contrary contained in this Final Order, the Prepetition Lender Liens, the Adequate Protection Liens and the Adequate Protection Priority Claims shall be subject to the terms of the Prepetition Intercreditor Agreement");[11] *In re Graceway Pharm., LLC*, No. 11-13036, 2011 WL 6296789 (Bankr. D. Del. Sep. 30, 2011) ("For the avoidance of doubt, the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Claimholders shall be subordinated to the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Claimholders on the same basis as the Second Priority Liens are subordinated to the First Priority Liens under the Intercreditor Agreement");[12] *In re True Temper Sports, Inc.*, No. 09-13446 PJW, 2009 WL 7226692, at *17 (Bankr. D. Del. Oct. 30, 2009) ("in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the Prepetition Secured Parties' Adequate Protections and the Adequate Protection Liens), (i) the Second Priority Adequate Protection Replacement Liens and the Second Priority Adequate Protection Super–Priority Claims shall be immediately junior in priority and subject to the First Priority Adequate Protection Replacement Liens and the First Priority Adequate Protection Replacement Liens, respectively, and (ii) all other such relative priorities and rights shall continue to be governed by the Prepetition Loan Documents and the

---

[10] Attached hereto as Appendix II – D.

[11] Attached hereto as Appendix II – E.

[12] Attached hereto as Appendix II – F.

Prepetition Intercreditor Agreement.");[13] *In re Goody's, LLC*, No. 09-10124 CSS, 2009 WL 7698528, at *5 (Bankr. D. Del. Mar. 3, 2009) ("the Adequate Protection Liens granted to the Prepetition Revolver Agent and Prepetition Revolver Lenders shall be senior to the Adequate Protection Liens and prepetition liens of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders in accordance with the Intercreditor Agreement (as defined herein) with respect to all types of Collateral as to which the liens of the Prepetition Revolver Agent and Prepetition Revolver Lenders had priority as of the Petition Date").[14]

## III.    CONCLUSION

26.    For the foregoing reasons, the Court should approve the final DIP Order as proposed by the Debtors and overrule the Objection as it relates to the priority of the Prepetition Replacement Liens proposed to be granted to the Notes Trustee.

---

[13] Attached hereto as Appendix II – G.

[14] Attached hereto as Appendix II – H.

13

Dated: October 1, 2018     **MCDERMOTT WILL & EMERY LLP**

By: /s/ Jason D. Strabo
    Jason D. Strabo

**MASLON LLP**

By: /s/ Clark T. Whitmore
    Clark T. Whitmore

*Attorneys for U.S. Bank National Association, not individually but as Series 2015 Note Trustee and Series 2017 Note Trustee, respectively*

14