# EXHIBIT B

# SECOND AMENDED AND RESTATED
# SECURITY AGREEMENT

This Second Amended and Restated Security Agreement (this "Agreement") is dated as of December 1, 2017, and amends and restates the Amended and Restated Security Agreement (the "Existing Agreement"), dated as of September 1, 2017 by and between SAINT LOUISE REGIONAL HOSPITAL, a California nonprofit public benefit corporation ("Grantor"), and U.S. BANK NATIONAL ASSOCIATION, as trustee ("Note Trustee"), as assignee under the Loan Agreements described on Schedule I annexed hereto and as may hereafter be amended, supplemented or otherwise modified from time to time, each between the California Public Finance Authority (the "Authority") and Verity Health System of California, Inc. (the "Corporation"), executed in connection with the issuance of notes by the Authority (collectively, the "Notes").

WITNESSETH:

WHEREAS, at the request of the Corporation, the Authority issued $160,000,000 aggregate principal amount of its Revenue Notes (Verity Health System), Series 2015 in four separate series (collectively, the "Series 2015 Notes").

WHEREAS, Grantor was a recipient and beneficiary of certain proceeds of the Series 2015 Notes, which were used for refinancing, working capital and other purposes.

WHEREAS, it was a condition precedent to the issuance of the Series 2015 Notes by the Authority and the making of loans under the Loan Agreements executed in connection with the Series 2015 Notes (the "2015 Loan Agreements") that Grantor shall have granted the security interests and undertaken the obligations contemplated by this Agreement.

WHEREAS, at the request of the Corporation, the Authority issued $21,000,000 aggregate principal amount of its Revenue Notes (Verity Health System), Series 2017 in a single series (the "Series 2017 Notes").

WHEREAS, Grantor was a recipient and beneficiary of certain proceeds of the Series 2017 Notes, which were used for working capital purposes.

WHEREAS, it was a condition precedent to the issuance of the Series 2017 Notes by the Authority and the making of loans under the Loan Agreement executed in connection with the Series 2017 Notes (the "2017 Loan Agreement") that Grantor shall have granted the security interests and undertaken the obligations contemplated by this Agreement.

WHEREAS, at the request of the Corporation, the Authority issued $21,000,000 aggregate principal amount of its Revenue Notes (Verity Health System), Series 2017B in a single series (the "Series 2017B Notes" and, together with the Series 2015 Notes, and the Series 2017 Notes, the "Notes").

WHEREAS, Grantor is a recipient and beneficiary of certain proceeds of the Series 2017B Notes, which will be used for working capital purposes.

WHEREAS, it was a condition precedent to the issuance of the Series 2017B Notes by the Authority and the making of a loan under the Loan Agreement between the Authority and the Grantor executed in connection with the Series 2017B Notes (the "2017B Loan Agreement" and, together with the 2015 Loan Agreements and the 2017 Loan Agreement, the "Loan Agreements") that Grantor amend the Existing Agreement so as to provide that the grant of the security interests and undertaking of obligations contemplated by the Existing Agreement extend to the loan under the 2017B Loan Agreement.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Grantor hereby agrees with Note Trustee as follows:

**1.    Definitions**

(a)    As used herein, capitalized terms shall have the meanings given to them in the Loan Agreements, except as otherwise defined herein or as the context otherwise requires. The term "Note Documents" shall have the meaning set forth in the Second Amended and Restated Intercreditor Agreement, dated of even date herewith among the Corporation, the other Obligors (as defined therein) including the Grantor, Note Trustee and U.S. Bank National Association, as Master Trustee ("Master Trustee") under the Master Indenture of Trust, dated as of December 1, 2001 (as amended, supplemented or otherwise modified from time to time, the "Master Indenture"), by and among the Corporation, the Initial Members (as defined therein) and Master Trustee. The term "Accounts" shall have the meaning set forth in the Indentures, dated as of December 1, 2015, as amended by the First Amendment to Indentures, dated as of February 1, 2016, the Indenture, dated as of September 1, 2017, and the Indenture, dated as of December 1, 2017 (collectively, the "Indentures"), each between the Authority and the Note Trustee (and for convenience, attached on Schedule V hereto). The terms "15% Cap", "Indebtedness" and "Reference Year" shall have the meanings set forth in the Amended and Restated Supplemental Master Indenture Number 20, dated as of January 1, 2016, between the Corporation and the Master Trustee.

(b)    Any term used in the Uniform Commercial Code as adopted in the State of California, as it may hereafter be amended ("UCC") and not defined in this Agreement has the meaning given to the term in the UCC.

**2.    Grant of Security**

Grantor hereby assigns to Note Trustee, and hereby grants to Note Trustee a continuing, first priority security interest in, all of Grantor's right, title, and interest in and to the following property of Grantor, in each case whether now or hereafter existing or in which Grantor now has or hereafter acquires an interest and wherever the same may be located (collectively, the "Collateral"):

(a)    All Accounts;

(b)    Certain bank accounts (the "Bank Accounts") and all amounts deposited therein that are subject to Deposit Account Control Agreements, including, without limitation, those Bank Accounts listed on Schedule II annexed hereto; and

(c)    All products, Proceeds and replacements thereof;

provided, however, that if, following the grant of the foregoing security interest, the amount of Indebtedness secured by the Collateral exceeds the 15% Cap, as it may be revised subsequent to the date hereof due to a change in the Reference Year, (x) the security interest in the Collateral granted herein (pursuant to clause (m) of the definition of "Permitted Liens" in the Master Indenture) shall, without further action by the Obligated Group or any party secured hereby, secure only an amount of the Notes that does not exceed the amount of such revised 15% Cap and (y) if separate liens on Accounts are in effect at such time under clause (m) of the definition of "Permitted Indebtedness" of the Master Indenture, any such automatic reduction in the amount of Indebtedness so secured shall occur pro rata in accordance with the principal amount of such Indebtedness.

3. **Security for Obligation**

This Agreement secures, and the Collateral is collateral security for, the prompt payment and performance in full when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (including the payment of amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a)), of all obligations and liabilities of every nature of all Obligors now or hereafter existing under or arising out of or in connection with the Loan Agreements and the other Note Documents and all extensions or renewals thereof, whether for principal, interest (including without limitation interest that, but for the filing of a petition in bankruptcy with respect to Grantor, would accrue on such obligations), fees, expenses, indemnities or otherwise, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owed with others, and whether or not from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such obligations or liabilities that are paid, to the extent all or any part of such payment is avoided or recovered directly or indirectly from Note Trustee as a preference, fraudulent transfer or otherwise (all such obligations and liabilities being the "Underlying Debt"), and all obligations of every nature of Grantor now or hereafter existing under this Agreement (all such obligations of Grantor, together with the Underlying Debt, being collectively referred to as the "Secured Obligations").

4. **Grantor Remains Liable**

Anything contained herein to the contrary notwithstanding, (a) Grantor shall remain liable under any contracts and agreements included in the Collateral, to the extent set forth therein, to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed, (b) the exercise by Note Trustee of any of its rights hereunder shall not release Grantor from any of its duties or obligations under the contracts and agreements included in the Collateral, and (c) Note Trustee shall not have any obligation or liability under any contracts and agreements included in the Collateral by reason of this Agreement, nor shall

3

Note Trustee be obligated to perform any of the obligations or duties of Grantor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

5. **Representations and Warranties**

Grantor represents and warrants as follows:

(a) **Ownership of Collateral**

Grantor has rights in or the power to transfer the Collateral and except for the Liens permitted under the Loan Agreements and the Master Indenture and the security interest created by this Agreement, Grantor owns the Collateral free and clear of any Lien. Except with respect to the interests and financing statements disclosed in Schedule III annexed hereto and such as may have been filed in favor of Note Trustee relating to this Agreement, no financing statement or other instrument similar in effect covering all or any part of the Collateral or listing Grantor as a debtor is on file in any filing or recording office.

(b) **State of Incorporation; Name of Grantor; Office Locations; Other Names**

The state of incorporation, the exact legal name of Grantor, the chief place of business, the chief executive office and the office where Grantor keeps its books and records is, and has been for the four month period preceding the date hereof, indicated on Schedule IV annexed hereto and Grantor has not in the past done, and does not now do, business under any other name (including any trade-name or fictitious business name) except as set forth on Schedule IV annexed hereto.

(c) **Other Information**

All information heretofore, herein or hereafter supplied to Note Trustee by or on behalf of Grantor with respect to the Collateral in connection with this Agreement, the Loan Agreements or the other Note Documents is accurate and complete in all respects.

6. **Further Assurances**

(a) Grantor agrees that from time to time, at the sole expense of Grantor, Grantor will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Note Trustee may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Note Trustee to exercise and enforce its rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, Grantor will: (i) execute and file such financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary or desirable, or as Note Trustee may reasonably request, in order to perfect and preserve the security interests granted or purported to be granted hereby, (ii) at any reasonable time, upon request by Note Trustee, exhibit the Collateral to and allow inspection of the Collateral by Note Trustee, or persons designated by Note Trustee, and (iii) at Note Trustee's reasonable request, appear in and defend any action or proceeding that may affect Grantor's title to or Note Trustee's security interest in all or any part of the Collateral.

(b)     Grantor hereby authorizes Note Trustee to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral without the signature of Grantor.  Grantor agrees that a carbon, photographic or other reproduction of this Agreement or of a financing statement signed by Grantor shall be sufficient as a financing statement and may be filed as a financing statement in any and all jurisdictions.

(c)     Grantor will furnish to Note Trustee from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as Note Trustee may reasonably request, all in reasonable detail.

**7.     Certain Covenants of Grantor**

Grantor shall:

(a)     Not use or permit any Collateral to be used unlawfully or in violation of any provision of this Agreement or any applicable statute, regulation or ordinance or any policy of insurance covering the Collateral;

(b)     Change the state of its incorporation;

(c)     Notify Note Trustee of any change in Grantor's name, identity or corporate structure at least 30 days prior to such change; and

(d)     Give Note Trustee 30 days' prior written notice of any change in Grantor's chief place of business, chief executive office or residence or the office where Grantor keeps its records.

**8.     Special Covenants With Respect to Accounts**

(a)     Grantor shall keep its chief place of business and chief executive office and the office where it keeps its records concerning the Accounts, and all originals of all chattel paper that evidence Accounts, at the location therefor specified in Section 5 or, upon 30 days' prior written notice to Note Trustee, at such other location in a jurisdiction where all action that may be necessary or desirable, or that Note Trustee may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby, or to enable Note Trustee to exercise and enforce its rights and remedies hereunder, with respect to such Accounts. Grantor will hold and preserve such records and chattel paper and will permit representatives of Note Trustee at any time during normal business hours upon reasonable advance notice to inspect and make abstracts from such records and chattel paper, and Grantor agrees to render to Note Trustee, at Grantor's cost and expense, such clerical and other assistance as may be reasonably requested with regard thereto.

(b)     Except as otherwise provided in this subsection (b), Grantor shall continue to collect, at its own expense, all amounts due or to become due to Grantor under the Accounts.  In connection with such collections, Grantor may take (and, at Note Trustee's direction following the occurrence and during the continuation of an Event of Default, shall take) such actions as Note Trustee may deem necessary or advisable to enforce collection of amounts due or to become due under the Accounts; provided, however, that Note Trustee shall have the right at any

5

time, upon the occurrence and during the continuation of an Event of Default, to notify the account debtors or obligors under any Accounts of the assignment of such Accounts to Note Trustee and to direct such account debtors or obligors to make payment of all amounts due or to become due to Grantor thereunder directly to an account maintained by Note Trustee or as otherwise directed by Note Trustee, to notify each Person maintaining a lockbox or similar arrangement to which account debtors or obligors under any Accounts have been directed to make payment to remit all amounts representing collections on checks and other payment items from time to time sent to or deposited in such lockbox or other arrangement directly to an account maintained by Note Trustee or as otherwise directed by Note Trustee and, upon such notification and at the sole expense of Grantor, to enforce collection of any such Accounts and to adjust, settle or compromise the amount or payment thereof, in the same manner and to the same extent as Grantor might have done.  Immediately upon receipt by Grantor of the notice from Note Trustee referred to in the proviso to the preceding sentence, (i) all amounts and proceeds (including checks and other instruments) received by Grantor in respect of the Accounts shall be received in trust for the benefit of Note Trustee hereunder, shall be segregated from other funds of Grantor and shall be forthwith paid over or delivered to Note Trustee in the same form as so received (with any necessary endorsement) to be held as cash Collateral and applied as provided by Section 14, and (ii) Grantor shall not adjust, settle or compromise the amount or payment of any Accounts, or release wholly or partly any account debtor or obligor thereof, or allow any credit or discount thereon, except as otherwise directed by Note Trustee.

(c) Grantor shall not change its instructions with respect to the Governmental Accounts identified on Schedule II such that the disposition of funds in these accounts is directed to be transferred to accounts other than (a) the Bank Accounts subject to Deposit Control Agreements identified on Schedule II or (b) to other bank accounts subject to deposit control agreements acceptable to Note Trustee and Master Trustee.

## 9. Transfers and Other Liens

Note Trustee does not authorize and Grantor agrees not to:

(a) (i) sell, assign (by operation of law or otherwise) or otherwise dispose of, or grant any option with respect to, any of the Collateral, except as expressly permitted by the Loan Agreements or (ii) create or suffer to exist any Lien upon or with respect to any of the Collateral, except for the security interest under this Agreement; or

(b) create or suffer to exist any Lien upon or with respect to any of the Collateral to secure the indebtedness or other obligations of any Person, except for the lien of the Master Trustee on Gross Revenues which includes the Receivables (which is subordinate in all respects to Note Trustee's Lien under this Agreement) and any other interests disclosed in Schedule III annexed hereto and the security interest created by this Agreement and Liens permitted under the Loan Agreements.

## 10. Default

The occurrence of any of the following events shall constitute an Event of Default hereunder:

(a) Covenants. Grantor shall fail to observe or perform any covenant or agreement contained herein.

(b) Other Defaults. An event of default occurs under any of the Note Documents.

(c) Cross- Defaults. An event of default occurs under the Master Indenture.

**11. Note Trustee Appointed Attorney-in-Fact**

Grantor hereby irrevocably appoints Note Trustee as Grantor's attorney-in-fact, with full authority in the place and stead of Grantor and in the name of Grantor, Note Trustee or otherwise, from time to time in Note Trustee's discretion to take any action and to execute any instrument that Note Trustee may deem necessary or advisable to accomplish the purposes of this Agreement, including without limitation:

(a) Upon the occurrence and during the continuation of an Event of Default, to ask for, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(b) To receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with clause (a) and, upon the occurrence and during the continuation of an Event of Default, (c) below;

(c) Upon the occurrence and during the continuation of an Event of Default, to file any claims or take any action or institute any proceedings that Note Trustee may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Note Trustee with respect to any of the Collateral;

(d) To pay or discharge taxes or Liens (other than Liens permitted under this Agreement, the Loan Agreements or the Master Indenture) levied or placed upon the Collateral, the legality or validity of such taxes or Liens and the amounts necessary to discharge the same to be determined by Note Trustee in its sole discretion, any such payments made by Note Trustee to become obligations of Grantor to Note Trustee, due and payable immediately without demand; and

(e) Upon the occurrence and during the continuation of an Event of Default, generally to sell, transfer, pledge, make any agreement with respect, to or otherwise deal with any of the Collateral as fully and completely as though Note Trustee were the absolute owner thereof for all purposes, and to do, at Note Trustee's option and Grantor's expense, at any time or from time to time, all acts and things that Note Trustee deems necessary to protect, preserve or realize upon the Collateral and Note Trustee's security interest therein in order to effect the intent of this Agreement, all as fully and effectively as Grantor might do.

**12. Note Trustee May Perform**

If Grantor fails to perform any agreement contained herein, Note Trustee may itself perform, or cause performance of, such agreement, and the reasonable expenses of Note Trustee incurred in connection therewith shall be payable by Grantor under Section 14.

### 13. Standard of Care

The powers conferred on Note Trustee hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except for the exercise of reasonable care in the custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Note Trustee shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral. Note Trustee shall be deemed to have exercised reasonable care in the custody and preservation of Collateral in its possession if such Collateral is accorded treatment substantially equal to that which Note Trustee accords its own property.

### 14. Remedies

If any Event of Default shall have occurred and be continuing, Note Trustee may exercise in respect of the Collateral, in addition to all other rights and remedies provided for herein or otherwise available to it (including, without limitation, sending a notice of activation under any Deposit Account Control Agreement), all the rights and remedies of a secured party in default under the UCC (whether or not the UCC applies to the affected Collateral), and also may (a) require Grantor to, and Grantor hereby agrees that it will at its expense and upon request of Note Trustee forthwith, assemble all or part of the Collateral as directed by Note Trustee and make it available to Note Trustee at a place to be designated by Note Trustee that is reasonably convenient to both parties, (b) prior to the disposition of the Collateral, store, process, repair or recondition the Collateral or otherwise prepare the Collateral for disposition in any manner to the extent Note Trustee deems appropriate, and (c) collect proceeds of Collateral. All costs and expenses of Note Trustee and any persons hired by Note Trustee in preserving, protecting or enforcing Note Trustee's rights under this Agreement or against the Collateral shall be reimbursed immediately by Grantor and added to and be part of the Secured Obligations.

### 15. Application of Proceeds

All proceeds received by Note Trustee shall be applied to the Secured Obligations on a pro rata basis.

### 16. Continuing Security Interest

(a) This Agreement shall create a continuing security interest in the Collateral and shall (i) remain in full force and effect until the indefeasible payment in full of the Secured Obligations and the cancellation or termination of the Notes, (ii) be binding upon Grantor, its successors and assigns, and shall bind all Persons who become bound as a debtor to this Agreement, and (iii) inure, together with the rights and remedies of Note Trustee hereunder, to the benefit of Note Trustee and its successors, transferees and assigns. Subject to subsection (b) below, upon the payment in full of all Secured Obligations, the security interest granted hereby shall terminate and all rights to the Collateral shall revert to Grantor. Upon any such termination Note Trustee will, at Grantor's sole expense, execute and deliver to Grantor such documents as Grantor shall reasonably request to evidence such termination.

(b) In the event that all or any portion of the Secured Obligations are paid, the obligations of Grantor hereunder shall continue and remain in full force and effect or be

8

reinstated, as the case may be, in the event that all or any part of such payment(s) are rescinded or recovered directly or indirectly from Note Trustee as a preference, fraudulent transfer or otherwise, and any such payments which are so rescinded or recovered shall constitute Secured Obligations for all purposes of this Agreement.

**17.     Amendments, Etc.**

(a)     No amendment or waiver of any provision of this Agreement, or consent to any departure by herefrom, shall in any event be effective unless the same shall be in writing and signed by the party against which it is sought to be enforced, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

**18.     Notices**

Any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telecopied, telexed or sent by United States mail or courier service and shall be deemed to have been given when a record has been delivered in person or by courier service, upon receipt of telecopy or telex, or four Business Days after depositing it in the United States mail, registered or certified, with postage prepaid and properly addressed.  For the purposes hereof, the address of each party hereto shall be as set forth under such party's name on the signature pages hereof or, as to either party, such other address as shall be designated by such party in a written notice delivered to the other party hereto.

**19.     Failure or Indulgence Not Waiver; Remedies Cumulative**

No failure or delay on the part of Note Trustee in the exercise of any power, right or privilege hereunder shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude any other or further exercise thereof or of any other power, right or privilege.  All rights and remedies existing under this Agreement are cumulative to, and not exclusive of, any rights or remedies otherwise available.

**20.     Severability**

In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

**21.     Headings**

Section and subsection headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

**22.     Governing Law; Terms**

9

THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES, EXCEPT TO THE EXTENT THAT THE UCC PROVIDES FOR THE APPLICATION OF THE LAW OF THE STATE OF GRANTOR'S INCORPORATION.

### 23. Consent to Jurisdiction and Service of Process

ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST GRANTOR ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF CALIFORNIA, AND BY EXECUTION AND DELIVERY OF THIS AGREEMENT GRANTOR ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE NONEXCLUSIVE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS AGREEMENT. Grantor hereby agrees that service of process sufficient for personal jurisdiction in any action against Grantor in the State of California may be made by registered or certified mail, return receipt requested, to Grantor pursuant to Section 18, and Grantor hereby acknowledges that such service shall be effective and binding in every respect. Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Grantor or Note Trustee to bring proceedings in the courts of any other jurisdiction, or object thereto.

### 24. Counterparts

This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

*[Remainder of page left intentionally blank]*

IN WITNESS WHEREOF, Grantor and Note Trustee have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**SAINT LOUISE REGIONAL HOSPITAL**, as Grantor

By: Verity Health System of California, Inc., a California nonprofit public benefit corporation, as sole member of Saint Louise Regional Hospital

By: _____
Name: Ty Conner
Title: Vice President and Treasurer

Notice Address:

Verity Health System of California, Inc.
203 Redwood Shores Parkway, Suite 800
Redwood City, CA 94065
Attn: Treasurer

with copies to:

Squire Patton Boggs
275 Battery Street, Suite 2600
San Francisco, CA 94111
Attn: Robyn Helmlinger

**U.S. BANK NATIONAL ASSOCIATION**, as Note Trustee

By _____
Julia Hommel, Vice President

Notice Address:

633 West Fifth. Street, 24th Floor
Los Angeles, CA 90071
Attn: Global Corporate Trust Services

with copies to:

Dorsey & Whitney LLP
600 Anton Boulevard
Suite 2000
Costa Mesa, CA 92626-7655
Attn: Dennis Wong

*(Signature Page to Amended and Restated Security Agreement)*

IN WITNESS WHEREOF, Grantor and Note Trustee have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**SAINT LOUISE REGIONAL HOSPITAL**, as Grantor

By: Verity Health System of California, Inc., a California nonprofit public benefit corporation, as sole member of Saint Louise Regional Hospital

By: _____
Name: Ty Conner
Title:  Vice President and Treasurer

Notice Address:

Verity Health System of California, Inc.
203 Redwood Shores Parkway, Suite 800
Redwood City, CA 94065
Attn: Treasurer

with copies to:

Squire Patton Boggs
275 Battery Street, Suite 2600
San Francisco, CA 94111
Attn: Robyn Helmlinger

**U.S. BANK NATIONAL ASSOCIATION**, as Note Trustee

By _____
Julia Hommel, Vice President

Notice Address:

633 West Fifth. Street, 24th Floor
Los Angeles, CA 90071
Attn: Global Corporate Trust Services

with copies to:

Dorsey & Whitney LLP
600 Anton Boulevard
Suite 2000
Costa Mesa, CA 92626-7655
Attn: Dennis Wong

*(Signature Page to Amended and Restated Security Agreement)*

# SCHEDULE I
## to Second Amended and Restated Security Agreement

### LOAN AGREEMENTS FOR SERIES 2015 NOTES

1.) Loan Agreement, dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $60,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015A, as amended by the Amendment to the Loan Agreement, dated as of March 2, 2016

2.) Loan Agreement, dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $45,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015B, as amended by the Amendment to the Loan Agreement, dated as of March 2, 2016

3.) Loan Agreement, dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $10,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015C (Federally Taxable), as amended by the Amendment to the Loan Agreement, dated as of March 2, 2016

4.) Loan Agreement, dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $45,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015D, as amended by the Amendment to the Loan Agreement, dated as of March 2, 2016

### LOAN AGREEMENT FOR SERIES 2017 NOTES

5.) Loan Agreement, dated as of September 1, 2017 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $21,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2017

### LOAN AGREEMENT FOR SERIES 2017B NOTES

6.) Loan Agreement, dated as of December 1, 2017 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $21,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2017B

# SCHEDULE II
## to Second Amended and Restated Security Agreement

## BANK ACCOUNTS

### DEPOSIT ACCOUNTS

| Hospital | Bank | Account Name And Number |
|---|---|---|
| Saint Louise Regional Hospital | Bank of America, N.A. | Deposit Account No. 1499783XXX |

### GOVERNMENT RECEIVABLES ACCOUNTS

| Hospital | Bank | Account Name And Number |
|---|---|---|
| Saint Louise Regional Hospital | Bank of America, N.A. | Deposit Account No. 14990-02XXX |

## SCHEDULE III
### to Second Amended and Restated Security Agreement

### LIENS AND ENCUMBRANCES OF GRANTOR

Lien on Gross Revenues Pledged to the Master Trustee pursuant to the Master Indenture.

See attached List of UCC Financing Statements.

# SCHEDULE IV
## to Second Amended and Restated Security Agreement

## STATE OF INCORPORATION; NAME OF GRANTOR; OFFICE LOCATIONS; OTHER NAMES

## SCHEDULE V

### Definition of "Accounts"

""Accounts" means collectively, (a) any right to payment of a monetary obligation whether or not earned by performance, that relates to or arises out of any services provided or goods rendered by an Obligated Group Member (including, without limitation, payments made by or through a governmental authority to an individual patient assigned to such Member), (b) without duplication, any 'account' (as defined in the UCC), any accounts receivable, whether in the form of payments for services rendered or goods sold, rents, license fees or otherwise), any Health-Care-Insurance Receivables (as defined in the UCC) and any Payment Intangibles (as defined in the UCC), (c) all General Intangibles (as defined in the UCC), Intellectual Property (as defined in the UCC), rights, remedies, guarantees, supporting obligations and letter of credit rights relating to or arising out of the foregoing assets described in clauses (a) and (b), (d) all information and data compiled or derived by any Member or to which any Member is entitled in respect of or related to the foregoing assets described in clauses (a) and (b) and (e) and all proceeds of any of the foregoing."