# EXHIBIT G



## This page is part of your document - DO NOT DISCARD



**20171518985**



**Pages:**
**0028**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/29/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 96.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 96.00 |



**L E A D S H E E T**



**201712290160005**

**00014728732**



**008819973**

**SEQ:**
**17**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**    T72

E438057

12/29/2017

*20171518985*

**RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:**

**CHICAGO TITLE COMPANY
COMMERCIAL DIVISION**

Attn: Catrina C. Cohn, Esq.
Squire Patton Boggs (US) LLP
275 Battery St., Suite 2600
San Francisco, CA 94111

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SECOND AMENDED AND RESTATED
# INTERCREDITOR AGREEMENT

## SECOND AMENDED AND RESTATED INTERCREDITOR AGREEMENT

THIS SECOND AMENDED AND RESTATED **INTERCREDITOR AGREEMENT** (this *"Agreement"*) entered into as of December 1, 2017 amends and restates the Amended and Restated Intercreditor Agreement, dated as of September 1, 2017, recorded in Los Angeles County as Instrument Number 20171060070 on September 18, 2017 at 8:00 a.m. (the "First Amended and Restated Intercreditor Agreement"), which amended and restated the Intercreditor Agreement, dated as of December 1, 2015 recorded in Los Angeles County as Instrument Number 20151573372 on December 15, 2015 at 8:00 a.m. and recorded in Santa Clara County as Instrument Number 23173258 on December 16, 2015 at 8:00 a.m., by and among Verity Health System of California, Inc., a nonprofit public benefit corporation incorporated under the laws of the State of California ("the *"Corporation"*), on behalf of itself and each Obligated Group Member listed on the attached **Schedule A** (each, an *"Obligor"* and collectively, the *"Obligors"*), U.S. Bank National Association, a national banking association organized and existing under the laws of the United States of America, as trustee (together with any successor thereto in any such capacity, the *"Note Trustee"*) under (i) the Indentures, dated as of December 1, 2015 (as they may be supplemented and amended in accordance with their terms, the *"2015 Indentures"*) with respect to the 2015 Notes (as defined below), (ii) the Indenture, dated as of September 1, 2017 (as it may be supplemented and amended in accordance with its terms, the *"2017 Indenture"*), with respect to the 2017 Notes (defined below), and (iii) the Indenture, dated as of December 1, 2017 (as it may be supplemented and amended in accordance with its terms, the *"2017B Indenture"* and, together with the 2015 Indentures and the 2017 Indenture, the *"Note Indentures"*) with respect to the 2017B Notes (as defined below), each between the Note Trustee and the California Public Finance Authority (the *"Authority"*), and U.S. Bank National Association, a national banking association organized and existing under the laws of the United States of America, as master trustee (together with its successors in such capacity, the *"Master Trustee"*) pursuant to the Master Indenture of Trust, dated as of December 1, 2001 (as supplemented and amended in accordance with its terms, the *"Master Indenture"*), between the Corporation, the Initial Members (as defined therein) and the Master Trustee.

## RECITALS

A.    The Authority and the Corporation have entered into four Loan Agreements as identified on the attached **Schedule B** (as the same may be amended, restated, supplemented, or otherwise modified from time to time as permitted hereunder, the *"2015 Loan Agreements"*) with respect to the Series 2015A Notes in the original principal amount of $60 Million (the *"2015A Notes"*), the Series 2015B Notes in the original principal amount of $45 Million (the *"2015B Notes"*), the Series 2015C Notes in the original principal amount of $10 Million (the *"2015C Notes"*), and the Series 2015D Notes in the original principal amount of $45 Million (the *"2015D Notes"*, and collectively, the *"2015 Notes"*) and one Loan Agreement as identified on the attached **Schedule B** (as the same may be amended, restated, supplemented, or otherwise modified from time to time as permitted hereunder, the *"2017 Loan Agreement"*) with respect to the Series 2017 Notes in the original principal amount of $21 Million (the *"2017 Notes"*) and are expected to enter into one Loan Agreement identified on the attached **Schedule B** (as the same may be amended, restated, supplemented, or otherwise modified from time to time as permitted hereunder, the *"2017B Loan Agreement"* and, together with the 2015 Loan Agreements and 2017 Loan Agreement, the *"Loan Agreements"*) with respect to the 2017B Notes in the original

principal amount of $21 Million (the **"2017B Notes"** and, together with the 2015 Notes and the 2017 Notes, the **"Notes"**), pursuant to which, among other things, the Authority has made or has agreed to make, subject to the terms and conditions set forth in the Loan Agreements, loans and financial accommodations to the Corporation to be used for refinancing, working capital and other purposes for each Obligor and certain affiliates. All of the Corporation's Obligations (as defined in the Loan Agreements) are secured by liens on and security interests in certain property of the Corporation and the Obligors (the **"Note Collateral"**) as set forth in **Schedule C**, and are further secured by certain obligations (the **"MTI Note Obligations"**) issued under the Master Indenture pursuant to the Supplemental Master Indentures for the MTI Note Obligations as set forth in **Schedule D**.

B.    The Obligors listed in **Schedule C** entered into Security Agreements with the Note Trustee, dated as of December 14, 2015 in connection with the 2015 Notes and amended and restated those Security Agreements, dated as of September 1, 2017 in connection with, and to include, the 2017 Notes, and amended and restated those Security Agreements, dated as of December 1, 2017 in connection with, and to include, the 2017B Notes (as the same may be amended, restated, supplemented or otherwise modified from time to time as permitted hereunder, the **"Security Agreements"**) as set forth in **Schedule E**. All of the Corporation's obligations pursuant to the Loan Agreements are secured by the accounts receivable of the Obligors listed on **Schedule C**.

C.    The Corporation, on behalf of each of St. Francis Medical Center and Saint Louise Regional Hospital have executed and delivered the St. Francis Deeds of Trust and the Saint Louise Deed of Trust, respectively, on certain of their respective real and personal property as set forth in **Schedule C** and have delivered to the Note Trustee Subordination Agreements executed by the Master Trustee relating to the Master Trustee's liens on such real and personal property. All of the Corporation's obligations pursuant to the Loan Agreements are secured by these Deeds of Trust on a senior lien basis in accordance with the related Subordination Agreements.

D.    The Note Collateral (as defined in **Schedule C**) was granted as an inducement to and as one of the conditions precedent to the agreement of the Corporation and the Authority to consummate the transactions contemplated by the 2015 Loan Agreements. The purchasers of the 2015 Notes (the **"2015 Holders"**) required the execution and delivery of the Original Agreement by the Master Trustee, the 2015 Trustee and the Obligors in order to set forth the relative rights and priorities of the Note Trustee and Master Trustee under the 2015 Note Documents (as defined below) and the Master Indenture.

E.    The Note Collateral (as defined in **Schedule C**) was granted as an inducement to and as one of the conditions precedent to the agreement of the Corporation and the Authority to consummate the transactions contemplated by the 2017 Loan Agreement. The purchasers of the 2017 Notes (the **"2017 Holders"**) required the execution and delivery of the First Amended and Restated Intercreditor Agreement by the Master Trustee, the Note Trustee and the Obligors in order to set forth the relative rights and priorities of the Note Trustee, as trustee for the holders of the 2015 Notes and the 2017 Notes, and Master Trustee under the Note Documents (as defined below) and the Master Indenture.

2

F.    The Note Collateral (as defined in **Schedule C**) is granted as an inducement to and as one of the conditions precedent to the agreement of the Corporation and the Authority to consummate the transactions contemplated by the 2017B Loan Agreement. The purchasers of the 2017B Notes (the *"2017B Holders"* and, together with the 2015 Holders and the 2017 Holders, the *"Note Holders"*) required the execution and delivery of this Agreement by the Master Trustee, the Note Trustee and the Obligors in order to set forth the relative rights and priorities of the Note Trustee, as trustees for the holders of the 2015 Notes, the 2017 Notes and the 2017B Notes, and Master Trustee under the Note Documents (as defined below) and the Master Indenture.

G.    The 2015 MTI Obligations have been executed by the Corporation, authenticated by the Master Trustee and delivered to the 2015 Trustee for the benefit of the 2015 Holders as additional security for the obligations of the Corporation under the 2015 Loan Agreements; the 2017 MTI Obligation has been executed by the Corporation, authenticated by the Master Trustee and delivered to the 2017 Trustee for the benefit of the 2017 Holders as additional security for the obligations of the Corporation under the 2017 Loan Agreement; and the 2017B MTI Obligation has been executed by the Corporation, authenticated by the Master Trustee and delivered to the 2017B Trustee for the benefit of the 2017B Holders as additional security for the obligations of the Corporation under the 2017B Loan Agreement. Pursuant to the MTI Note Obligations and the Master Indenture, the MTI Note Obligations are secured under the Master Indenture on equal rank without preference, priority or distinction of any Obligation issued under the Master Indenture over any other such Obligations (the *"MTI Collateral"*). The MTI Collateral includes a pledge of the Gross Revenues (as defined in the Master Indenture) of the Obligated Group which includes accounts receivable.

H.    Pursuant to Section 5.01(B) of each of the 2015 Indenture and the 2017 Indenture, the Authority has assigned to the 2015 Trustee or 2017 Trustee, as applicable, for the benefit of the Holders from time to time of the respective Notes, its security interest in the Note Collateral which has been pledged to the Authority to support the obligations of the Corporation in the 2015 Loan Agreements and the 2017 Loan Agreement, as applicable.

I.    As of the issuance of the 2017B Notes, the Obligations Outstanding under the Master Indenture secure the repayment of: (i) the 2005A Bonds in the outstanding principal amount of $246,345,000, the 2005G Bonds in the outstanding principal amount of $10,855,000, the 2005H Bonds in the outstanding principal amount of $8,985,000 (total outstanding principal amount of 2005 Bonds is $266,185,000) (collectively, the "2005 Bonds"), (ii) the 2015 Notes, (iii) the 2017 Notes, and (iv) the 2017B Notes.

J.    The 2005 Bonds are subject, under certain circumstances, to certain Remediation Requirements pursuant to the provisions of the Internal Revenue Code as indicated in the Tax Certificates for the 2005 Bonds. In the event of an action which results in the need for a remediation of certain outstanding 2005 Bonds, the Authority or the Corporation will seek an opinion of Nationally Recognized Bond Counsel as to what application of the amount of proceeds of any sale or disposition of the applicable property financed by the 2005 Bonds is required in connection with the applicable change in use of any bond financed property. The 2005 Bonds are callable at par as of July 1, 2015.

3

K.     The Master Indenture contains certain covenants as to Additional Indebtedness (Sec 3.05) and Against Encumbrances (Sec 3.04).

L.     The 2015 Notes and the 2017 Notes were, and the 2017B Notes are, issued as Additional Indebtedness in accordance with the provisions of Sec 3.05(d) of the Master Indenture as certified by the Chief Financial Officer of the Corporation.

M.     The liens supporting the 2015 Notes and the 2017 Notes were, and the liens supporting the 2017B Notes are, granted as Permitted Liens: 1) pursuant to subsection (m) of the defined term Permitted Liens as to the grant of liens on accounts receivable as certified by the Vice President and Treasurer of the Corporation; and 2) pursuant to subsection (q) of the defined term Permitted Liens as to the Deeds of Trust and the security interest in the Property related thereto as certified by the Vice President and Treasurer of the Corporation.

N.     Pursuant to Section 3.04(d) of the Master Indenture, the Master Trustee is directed to execute and deliver a reasonably requested subordination in connection with the grant of a Permitted Lien.

**NOW, THEREFORE**, in order to induce the 2017B Holders to purchase the 2017B Notes and the Note Trustee and the Authority to consummate the transactions contemplated by the 2017B Loan Agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

1.     **Definitions**.

(a)     As used herein, capitalized terms shall have the meanings given to them in the Loan Agreements, the Indentures, the Master Indenture, the Security Agreements, the Deeds of Trust and the Subordination Agreements executed in connection with the Deeds of Trust, except as otherwise defined herein or as the context otherwise requires.

(b)     Any term used in the Uniform Commercial Code as adopted in the State of California, as it may hereafter be amended (*"UCC"*) and not defined in this Agreement or in the documents set forth in subsection (a) above has the meaning given to the term in the UCC.

*"Bankruptcy Code"* means Title 11 of the United States Code, as amended from time to time, and any successor statute and all rules and regulations promulgated thereunder.

*"Deeds of Trust"* means, collectively, the St. Francis Deeds of Trust and the Saint Louise Deed of Trust.

*"Lien"* means any lien, security interest, pledge, bailment, mortgage, hypothecation, deed of trust, conditional sales and title retention agreement (including any lease in the nature thereof), charge, encumbrance or other similar arrangement or interest in real or personal property, now owned or hereafter acquired, whether such interest is based on common law, statute or contract.

4

*"Nationally Recognized Bond Counsel"* means Squire Patton Boggs (US) LLP or any other bond counsel firm with a national reputation for delivering opinions with respect to the tax-exemption of interest on municipal bonds for federal income tax purposes that is retained by the Corporation or the Authority for the purpose of rendering an opinion as to Remediation Requirements.

*"Note Documents"* means, collectively, the 2015 Note Documents, the 2017 Note Documents and the 2017B Note Documents, and all other agreements, documents and instruments executed from time to time in connection therewith, as the same may be amended, supplemented or otherwise modified from time to time.

*"Person"* means any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other entity, whether acting in an individual, fiduciary or other capacity.

*"Priority Assets"* means the assets constituting the Note Collateral identified on **Schedule C** hereto.

*"Priority Lien"* means the Lien on the Priority Assets.

*"Proceeding"* means any voluntary or involuntary insolvency, bankruptcy, receivership, custodianship, liquidation, dissolution, reorganization, assignment for the benefit of creditors, appointment of a custodian, receiver, trustee or other officer with similar powers or any other proceeding for the liquidation, dissolution or other winding up of a Person.

*"Remediation Requirements"* mean those certain requirements for remediation of the 2005 Bonds to the extent arising from the ownership or use of Priority Assets financed or refinanced with proceeds of the 2005 Bonds, as set forth in the Tax Certificates executed in connection with the 2005 Bonds and as to any specific instance addressed in the opinion of Nationally Recognized Bond Counsel.

*"St. Francis Deeds of Trust"* means (a) that certain Second Amended and Restated Deed of Trust With Fixture Filing and Security Agreement relating to 3630 East Imperial Highway, Lynwood, California, dated as of December 28, 2017, executed by the Corporation on behalf of St. Francis Medical Center, as trustor, in favor of Chicago Title Company, as trustee for the benefit of each trustee for the Notes, as trustee for the holders of the Notes, as beneficiaries, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof; (b) that certain Second Amended and Restated Deed of Trust With Fixture Filing and Security Agreement relating to 2700 E. Slauson Avenue, Huntington Park, California, dated as of December 28, 2017, executed by the Corporation, on behalf of St. Francis Medical Center, as trustor, in favor of Chicago Title Company, as trustee for the benefit of each trustee for the Notes, as trustee for the holders of the Notes, as beneficiaries, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof; and (c) that certain Second Amended and Restated Deed of Trust With Fixture Filing and Security Agreement relating to 5953 Atlantic Blvd. (also known as 5931 and 5957 Atlantic Blvd, including surface parking), Maywood, California, dated as of December 28, · 2017, executed by the Corporation, on behalf of St. Francis Medical Center, as trustor, in favor

5



of Chicago Title Company, as trustee for the benefit of each trustee for the Notes, as trustee for the holders of the Notes, as beneficiaries, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof.

*"Saint Louise Deed of Trust"* means that certain Amended and Restated Deed of Trust With Fixture Filing and Security Agreement relating to 9400 No Name Uno, Gilroy, California, dated as of December 28, 2017, executed by the Corporation on behalf of Saint Louise Regional Hospital, as trustor, in favor of Chicago Title Company, as trustee for the benefit of each trustee for the Notes, as trustee for the holders of the Notes, as beneficiaries, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof.

*"2015 Note Documents"* means the 2015 Notes, the 2015 Loan Agreements, the 2015 Indentures, the Security Agreements, the Deeds of Trust, the Subordination Agreements executed in connection with the Deeds of Trust, this Agreement, and all other agreements, documents and instruments executed from time to time in connection therewith, as the same may be amended, supplemented or otherwise modified from time to time.

*"2017 Note Documents"* means the 2017 Notes, the 2017 Loan Agreement, the 2017 Indenture, the Security Agreements, the Deeds of Trust, the Subordination Agreements executed in connection with the Deeds of Trust, this Agreement, and all other agreements, documents and instruments executed from time to time in connection therewith, as the same may be amended, supplemented or otherwise modified from time to time.

*"2017B Note Documents"* means the 2017B Notes, the 2017B Loan Agreement, the 2017B Indenture, the Security Agreements, the Deeds of Trust, the Subordination Agreements executed in connection with the Deeds of Trust, this Agreement, and all other agreements, documents and instruments executed from time to time in connection therewith, as the same may be amended, supplemented or otherwise modified from time to time.

2.    **Subordination**.

2.1    **Subordination of Master Trustee's Lien to Priority Lien**. Each Party covenants and agrees, and the Master Trustee covenants and agrees, notwithstanding anything to the contrary contained in the Master Indenture or any of the documents related to the Master Indenture or as a matter of law, that in or outside of any Proceeding any Lien of the Master Trustee with respect to the property constituting Priority Assets shall be and is hereby expressly made subordinate, to the extent and in the manner hereinafter set forth, to the Lien of the Note Trustee in such Priority Assets (whether or not such Lien of the Note Trustee is a perfected Lien). Irrespective of the timing of such acquisition, each Note Holder shall be deemed to have acquired its Notes in reliance upon the provisions contained in this Agreement. Each Party, including the Note Trustee, covenants and agrees that notwithstanding the Priority Lien in the Priority Assets granted to the Note Trustee, the application of amounts subject to such Priority Lien shall be subject to the Remediation Requirements as set forth herein, and each Party, including the Master Trustee, covenants and agrees that the existence of the Remediation Requirements and the provisions hereof with respect thereto shall not in any manner affect the existence of a first Priority Lien to the Note Trustee in the Priority Assets and that any proceeds

6

of the Priority Assets or the Note Collateral that, in accordance with the terms hereof, are applied to the Remediation Requirements shall not be deemed to have been applied to or reduce in any manner the payment obligations of the Corporation or the Obligors under the Note Documents or the MTI Note Obligations. Without limiting the foregoing, notwithstanding the date, time, manner or order of grant, attachment or perfection of any Liens and security interests of the Master Trustee in the Note Collateral, until the principal of, interest on and premium, if any, on the Notes have been indefeasibly paid in full in cash, any Liens and security interests of the Master Trustee in the Note Collateral which may exist from time to time (whether the same exist on the date hereof or otherwise) shall be and hereby are subordinated for all purposes and in all respects to the Priority Liens and security interests of the Note Trustee in the Note Collateral.

2.2  **Incorrect Payments**.  In the event that, notwithstanding the provisions of this Agreement, the Master Trustee receives any payment of any kind or character, whether in cash, property, or securities, in violation of the terms of this Agreement, such payment shall be delivered forthwith to the Note Trustee for application to the payment of the 2015 Notes, 2017 Notes or 2017B Notes, as applicable, to the extent necessary to pay or defease all 2015 Notes, 2017 Notes or 2017B Notes, as applicable, in full or otherwise held or applied pursuant to this Agreement. The Note Trustee is irrevocably authorized and appointed attorney-in-fact for the Master Trustee to supply any required endorsement or assignment. Until so delivered, any such payment or collateral shall be held by the Master Trustee in trust for the Note Trustee and shall not be commingled with other funds or property of the Master Trustee.

2.3  **No Contest of Priority Liens and Security Interests**.  The Master Trustee, on behalf of itself and the Holders of all outstanding Obligations under the Master Indenture, agrees that it will not, and will not cause or support any other Person to, at any time contest, seek to avoid or subordinate the validity, perfection, priority, extent or enforceability of the Notes, the Note Documents, this Agreement or any Liens and security interests of the Note Trustee in the Note Collateral securing the Notes.

2.4  **Unconditional Subordination**.  No action which the Note Trustee may take or omit to take in connection with any of the Note Documents or the MTI Note Obligations, any of the Notes, or any security therefor, and no course of dealing of the Note Trustee with any Obligor, the Master Trustee, or any other Person, shall release or diminish the Master Trustee's obligations, liabilities, agreements or duties hereunder, affect this Agreement in any way, or afford the Master Trustee any recourse against the Note Trustee, regardless of whether any such action or inaction may increase any risks to or liabilities of the Note Trustee, the Master Trustee or any Obligor or increase any risk to or diminish any safeguard of any security. Without limiting the foregoing, the Master Trustee hereby expressly agrees that the Note Trustee may, from time to time, without notice to or the consent of the Master Trustee:

i.  amend, change or modify, in whole or in part, any one or more of the Note Documents and give or refuse to give any waivers or other indulgences with respect thereto;

ii.  neglect, delay, fail, or refuse to take or prosecute any action for the collection or enforcement of any of the obligations of the Obligors under the Note Documents or the MTI Note Obligations, to (i) foreclose or take or prosecute any action in connection with the Note

7

Documents, (ii) bring suit against an Obligor or any other Person, or (iii) take any other action concerning the Notes, the Note Documents or the MTI Note Obligations;

      iii.    accelerate, change, rearrange, extend, or renew the time, terms, or manner for payment or performance of any one or more of the obligations of the Obligors under the Note Documents or the MTI Note Obligations;

      iv.    compromise or settle any unpaid or unperformed obligations of the Obligors under the Note Documents or the MTI Note Obligations;

      v.    take, exchange, amend, eliminate, surrender, release, or subordinate any or all security for any or all of the obligations of the Obligors under the Note Documents or the MTI Note Obligations, accept additional or substituted security therefor, or perfect or fail to perfect the Note Trustee's rights in any or all security;

      vi.    discharge, release, substitute or add obligors with respect to the obligations of the Obligors under the Note Documents or the MTI Note Obligations; and

      vii.    apply all monies received from the Authority, the Obligors or others, or from any security for any of the Note Documents, as the Note Trustee may determine to be in its best interest, without in any way being required to apply all or any part of such monies upon any particular Notes.

No change of law or circumstances shall release or diminish the Master Trustee's obligations, liabilities, agreements, or duties hereunder, affect this Agreement in any way, or afford the Master Trustee any recourse against the Note Trustee. Without limiting the foregoing, no obligations, liabilities, agreements, or duties of the Master Trustee under this Agreement shall be released, diminished, impaired, reduced, or affected by the occurrence of any of the following from time to time, even if occurring without notice to or without the consent of the Master Trustee:

      i.    any Proceeding or any discharge, impairment, modification, release, or limitation of the liability of, or stay of actions or lien enforcement proceedings against, any properties of any Obligor, or the estate in bankruptcy of any Obligor in the course of or resulting from any such Proceedings;

      ii.    the failure by the Note Trustee to file or enforce a claim in any Proceeding described in the immediately preceding clause (i) or to take any other action in any Proceeding to which any Obligor is a party;

      iii.    the release by operation of law of any Obligor from any of its obligations under the Note Documents or the MTI Note Obligations or any other obligations to the Note Trustee;

      iv.    the invalidity, deficiency, illegality, or unenforceability of any of the Note Documents or the obligations of the Obligors under the Note Documents or the MTI Note Obligations, in whole or in part, any bar by any statute of limitations or other law of recovery on any of the obligations of the Obligors under the Note Documents or the MTI Note Obligations,

8

or any defense or excuse for failure to perform on account of force majeure, act of God, casualty, impossibility, impracticability, or other defense or excuse whatsoever;

v.    the failure of the Note Trustee or any other Person to sign any instrument or agreement; and

vi.    without limiting any of the foregoing, any fact or event (whether or not similar to any of the foregoing) which in the absence of this provision would or might constitute or afford a legal or equitable discharge or release of or defense other than the actual payment of the obligations of the Obligors under the Note Documents or the MTI Note Obligations and the performance by the Master Trustee under this Agreement.

2.5    **Requirement of Notice**.  The Master Trustee agrees to notify the Note Trustee promptly upon obtaining knowledge of the happening of any of the following: (i) the occurrence of any default or event of default under the Master Indenture; (ii) the waiver by the Master Trustee of any default or event of default under the Master Indenture; or (iii) the exercise of any remedies under the Master Indenture. The Note Trustee agrees to notify the Master Trustee promptly upon obtaining knowledge of the happening of any of the following: (i) the occurrence of any event of default under any of the Note Documents; (ii) the waiver by the Note Trustee of any event of default under any of the Note Documents; or (iii) the exercise of any remedies under the Note Documents. Failure to provide any notice required hereby shall not affect the subordination of the Master Trustee's Lien in the Priority Assets effected hereby.

3.    **Intercreditor Provisions**.

3.1    **Marshaling and Similar Rights**.  In foreclosing or realizing on any Priority Assets, the Note Trustee may proceed in any manner and in any order which the Note Trustee, in its sole discretion, shall choose, even though a higher price might have been realized if the Note Trustee had proceeded to foreclose or realize on its security interests in another manner or order. The Note Trustee shall not be required to marshal its claims against one or more assets securing the Notes.

3.2    **Rights of Note Trustee under the MTI Note Obligations**.  The Note Trustee is the holder of MTI Note Obligations for all Notes and is entitled to enforce payment and performance of the MTI Note Obligations and to exercise all rights and powers given to it under any of the Note Documents.

3.3    **Specific Performance**.  The Note Trustee is hereby authorized to demand specific performance of this Agreement at any time when the Master Trustee shall have failed to comply with any provision hereof. The Master Trustee hereby irrevocably waives any defenses based on the adequacy of a remedy at law which might be asserted as a bar to the action of the Note Trustee.

3.4    **No Duties**.  The Master Trustee hereby agrees that (i) the Note Trustee shall not have any responsibility or duty to the Master Trustee with respect to any of the Priority Assets except for such duties as are imposed by law and which cannot be waived by agreement, and (ii) the Note Trustee shall be free to take or omit to take any and all such action with respect

9

to the Priority Assets as it may so choose, without consent by the Master Trustee and without regard to or consideration of the interests of the Master Trustee or the holders of the 2005 Bonds.

4.    **Representations and Warranties**.

4.1    **Representations and Warranties of Master Trustee**.    The Master Trustee hereby represents and warrants to the Note Trustee that (a) it is a duly formed and validly existing national bank; (b) it has the power and authority to enter into, execute, deliver and carry out the terms of this Agreement, all of which have been duly authorized by all proper and necessary action; (c) the execution of this Agreement by it will not violate or conflict with its organizational documents, the Master Indenture or any other material agreement binding upon it or any law, regulation or order or require any consent or approval which has not been obtained; and (d) this Agreement is the legal, valid and binding obligation of it, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by equitable principles.

4.2    **Representations and Warranties of the Note Trustee**.    The Note Trustee hereby represents and warrants to the Master Trustee that as of the date hereof: (a) it is a duly formed and validly existing national bank; (b) it has the power and authority to enter into, execute, deliver and carry out the terms of this Agreement, all of which have been duly authorized by all proper and necessary action; (c) the execution of this Agreement by it will not violate or conflict with its organizational documents, any material agreement binding upon it or any law, regulation or order or require any consent or approval which has not been obtained; and (d) this Agreement is the legal, valid and binding obligation of it, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally or by equitable principles.

5.    **Remediation Requirements**.    The Corporation and the Obligors hereby represent that (i) in the event of foreclosure, deed in lieu of foreclosure or other disposition or transfer of the St. Francis Medical Center property located at 3630 East Imperial Highway, Lynwood, CA to an entity that is not a non-federal governmental entity or an exempt entity under Section 501(c)(3) using the applicable property in a manner that does not constitute unrelated business use, or private use, the amount of proceeds that may be required to be applied pursuant to the Remediation Requirements for the principal amount of the 2005 Bonds shall not exceed $68,000,000 plus outstanding interest on such allocable 2005 Bonds as of the date of Remediation, (ii) in the event of foreclosure, deed in lieu of foreclosure or other disposition or transfer of the Saint Louise Regional Hospital property located at 9400 No Name Uno, Gilroy, CA to an entity that is not a non-federal governmental entity or an exempt entity under Section 501(c)(3), using the applicable property in a manner that does not constitute unrelated business use, or private use, the maximum amount of proceeds that may be required to be applied pursuant to the Remediation Requirements for the principal amount of the 2005 Bonds shall not exceed $5,500,000 plus outstanding interest on such allocable 2005 Bonds as of the date of Remediation, and (iii) there are no Remediation Requirements with respect to the properties located at 2700 E. Slauson Avenue, Huntington Park, CA and 5957 Atlantic Blvd., Maywood, CA. In the event of a foreclosure, deed in lieu of foreclosure or other disposition or transfer

10

described in clauses (i) or (ii) of the preceding sentence, the actual amount required to be applied to Remediation Requirements shall be as set forth in an opinion of Nationally Recognized Bond Counsel addressed to the Trustee for the 2005 Bonds (the "2005 Trustee") and the Note Trustee, but shall not exceed the maximum amounts set forth in the preceding sentence. Until the date of receipt by the 2005 Trustee and the Note Trustee of such an opinion setting forth the amount required to be applied to Remediation Requirements in the event the Note Trustee receives cash proceeds from such event or transaction, the Note Trustee agrees to segregate the lesser of such cash proceeds received under (i) or (ii), as applicable, or the amount referenced in clause (i) or (ii) above, as applicable (as applicable, the ***"Potential Remediation Amounts"***) and not to apply any Potential Remediation Amounts to the payment of the Notes or for any other purpose. Upon receipt of an opinion of Nationally Recognized Bond Counsel addressed to the 2005 Trustee and the Note Trustee stating that a specified amount of a Potential Remediation Amount must be applied to Remediation Requirements for the 2005 Bonds in order to preserve the tax-exemption of interest on the 2005 Bonds and when so applied will preserve the tax-exemption of interest on the 2005 Bonds, the Note Trustee shall transfer such specified amount of cash proceeds to the 2005 Trustee for application as required by such opinion of Nationally Recognized Bond Counsel, and the balance, if any, of such Potential Remediation Amounts thereafter may be applied by the Note Trustee without regard to the Remediation Requirements. The Note Trustee agrees that unless the Note Trustee and 2005 Trustee have received an opinion of Nationally Recognized Bond Counsel addressed to the Note Trustee and the 2005 Trustee stating that such action will not adversely affect the tax-exemption of interest on the 2015 Bonds, no foreclosure, deed in lieu of foreclosure or other disposition or transfer to an entity that is not a non-federal governmental entity or an exempt entity under Section 501(c)(3) using the applicable property in a manner that does not constitute unrelated business use, or private use shall be consummated by the Note Trustee other than in a transaction in which the consideration received is exclusively cash within the meaning of 26 CFR 1.141-12(d)(2). The Note Trustee agrees that no foreclosure, deed in lieu of foreclosure or other disposition or transfer to an entity that is a non-federal governmental entity or an exempt entity under Section 501(c)(3) shall be consummated by the Note Trustee unless the Note Trustee and the 2005 Trustee have received an opinion of Nationally Recognized Bond Counsel addressed to the Note Trustee and the 2005 Trustee stating that either (a) anticipatory remedial action within the meaning of 26 CFR 1.141-12(d)(3) has occurred with respect to the 2005 Bonds, or the 2005 Trustee has received cash and instructions as to the application thereof to the redemption of 2005 Bonds in a manner that will constitute anticipatory remedial action within the meaning of 26 CFR 1.141-12(d)(3), such that the applicable foreclosure, deed in lieu of foreclosure or other disposition or transfer will not adversely affect the tax-exemption of interest on the 2005 Bonds irrespective of the subsequent use or ownership of the transferred property or (b) the applicable transferee has delivered covenants, with respect to which the 2005 Trustee is a third party beneficiary, as to the use and ownership of such property by such transferee and any further transferee thereof in a manner consistent with the preservation of the tax-exemption of interest on the 2005 Bonds.

6. **Entire Agreement; Modification**.    This Agreement evidences the entire agreement of the parties regarding the ordering of interests set forth herein, and all prior oral discussions and writings are merged into this Agreement. Any modification or waiver of any provision of this Agreement, or any consent to any departure by any party from the terms hereof, shall not be effective in any event unless the same is in writing and signed by the Note Trustee, the Master Trustee and the Corporation, and then such modification, waiver or consent shall be

11

effective only in the specific instance and for the specific purpose given. Any notice to or demand on any party hereto in any event not specifically required hereunder shall not entitle the party receiving such notice or demand to any other or further notice or demand in the same, similar or other circumstances unless specifically required hereunder.

7.    **Further Assurances**.  Each party to this Agreement will promptly execute and deliver such further instruments and agreements and do such further acts and things as may be reasonably requested in writing by any other party hereto that may be necessary or desirable in order to effect fully the purposes of this Agreement.

8.    **Notices**.  Unless otherwise specifically provided herein, any notice delivered under this Agreement shall be in writing addressed to the respective party as set forth below and may be personally served, telecopied or sent by overnight courier service or certified or registered United States mail and shall be deemed to have been given (a) if delivered in person, when delivered; (b) if delivered by telecopy or electronic mail, on the date of transmission if transmitted on a Business Day before 12:00 p.m. (California time) or, if not, on the next succeeding Business Day; (c) if delivered by overnight courier, one Business Day after delivery to such courier properly addressed; or (d) if by United States mail, four Business Days after deposit in the United States mail, postage prepaid and properly addressed.

Notices shall be addressed as follows:

If to the Master Trustee:

> U.S. Bank National Association
> 633 West Fifth Street, 24th Floor
> Los Angeles, CA 90071
> Attn: Global Corporate Trust Services

with copies to (which shall not constitute notice):

> U.S. Bank National Association
> 2300 W. Sahara, Suite 200
> LM-NV-NFC2
> Las Vegas, NV 89102
> Attn: Global Corporate Trust Services

and to:

> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> One Financial Center
> Boston, MA 02111
> Attn: Len Weiser-Varon, Esq.

12

If to the Corporation or any Obligor:

> Verity Health System of California, Inc.
> 203 Redwood Shores Parkway, Suite 800
> Redwood City, CA 94065
> Attn: Chief Financial Officer

with copies to (which shall not constitute notice):

> Squire Patton Boggs
> 275 Battery Street, Suite 2600
> San Francisco, CA 94111
> Attn: Robyn Helmlinger

If to Note Trustee:

> U.S. Bank National Association
> 633 West Fifth Street, 24th Floor
> Los Angeles, CA 90071
> Attn: Global Corporate Trust Services

with copies to (which shall not constitute notice):

> Dorsey & Whitney LLP
> 600 Anton Boulevard
> Suite 2000
> Costa Mesa, CA 92626-7655
> Attn: Dennis Wong

or in any case, to such other address as the party addressed shall have previously designated by written notice to the serving party, given in accordance with this Section 8.

9.    **Successors and Assigns**. This Agreement shall inure to the benefit of, and shall be binding upon, the respective successors and assigns of the Note Trustee, the Master Trustee, the Corporation or any other Obligor. To the extent permitted under the Note Documents, the Note Holders may, from time to time, without notice to the Master Trustee, assign or transfer any or all of the Notes or any interest therein to any Person and, notwithstanding any such assignment or transfer, or any subsequent assignment or transfer, the Notes shall, subject to the terms hereof, be and remain Notes for purposes of this Agreement, and every permitted assignee or transferee of any of the Notes or of any interest therein shall, to the extent of the interest of such permitted assignee or transferee in the Notes, be entitled to rely upon and be the third party beneficiary of the subordination provided under this Agreement and shall be entitled to enforce the terms and provisions hereof to the same extent as if such assignee or transferee were initially a party hereto. The 2005 Trustee, on behalf of the holders of the 2005 Bonds, shall be a third party beneficiary of Section 5 hereof, and neither such Section 5 nor this sentence shall be amended, modified or waived without the consent of the 2005 Trustee.

010-8556-9233/4/AMERICAS

**10.    Relative Rights**.  This Agreement shall define the relative rights of the Note Trustee on the one hand and the Master Trustee on the other hand. Nothing in this Agreement shall (a) impair, as among the Corporation, the Master Trustee and the Note Trustee and as between the Corporation and the Master Trustee, the obligation of the Corporation or any other Obligor with respect to the payment of the Notes in accordance with their respective terms or (b) affect the relative rights of the Note Trustee or the Master Trustee with respect to any other creditors of the Corporation.

**11.    No Waiver**.  Notwithstanding any other provision of this Agreement, nothing in this Agreement shall constitute a waiver of any rights any Holder may have, or any duties the Master Trustee may have, to direct or take any action permitted or required by the Master Indenture, in the event that any amendment, change or modification to any one or more of the Note Documents or any calculation of the amount described in subsection (m) or (q) of the defined term Permitted Lien causes any portion of the Priority Lien not to be a Permitted Lien.

**12.    Headings**.  The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.

**13.    Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

**14.    Severability**.  In the event that any provision of this Agreement is deemed to be invalid, illegal or unenforceable by reason of the operation of any law or by reason of the interpretation placed thereon by any court or governmental authority, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby, and the affected provision shall be modified to the minimum extent permitted by law so as most fully to achieve the intention of this Agreement.

**15.    Continuation of Subordination; Termination of Agreement**.  This Agreement is a continuing agreement of subordination pursuant to its terms and in accordance with Section 510(a) of the Bankruptcy Code and shall remain in full force and effect until (i) the indefeasible payment in full in cash of the principal of, interest on and premium, if any, on the Notes, and (ii) the documents and instruments evidencing the Notes have been terminated or performed, in each case in accordance with their respective terms after which this Agreement shall terminate without further action on the part of the parties hereto. The liability and obligations of the Master Trustee hereunder shall be reinstated and revived and the Note Trustee's rights shall continue, with respect to any amount at any time paid on account of the Notes which shall thereafter be required to be restored or returned by the Note Trustee in any Proceeding (including, without limitation, any repayment made pursuant to any provision of Chapter 11 of the Bankruptcy Code, or with respect to any fraudulent transfer or conveyance law), all as though such amount had not been paid. Master Trustee hereby acknowledges that the provisions of this Agreement are intended to be enforceable at all times, whether before or after the commencement of a Proceeding, and hereby waives any right it may have under applicable law to revoke this Agreement or any provisions hereof.

14



**16.    Applicable Law.** This Agreement shall be governed by and shall be construed and enforced in accordance with the internal laws of the State of California, without regard to conflicts of law principle, but giving effect to federal laws applicable to national banks.

**17.    CONSENT TO JURISDICTION. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS HEREBY CONSENTS TO THE JURISDICTION OF THE STATE COURTS OF THE STATE OF CALIFORNIA AND OF THE FEDERAL COURTS LOCATED IN CALIFORNIA AND IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY BE LITIGATED IN SUCH COURTS. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS HEREBY WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREE THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON IT BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS AT THEIR RESPECTIVE ADDRESSES SET FORTH IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.**

**18.    WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY LAW, EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS HEREBY WAIVES ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THE NOTE DOCUMENTS AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN ITS RELATED FUTURE DEALINGS. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS WARRANTS AND REPRESENTS THAT EACH HAS HAD THE OPPORTUNITY OF REVIEWING THIS JURY WAIVER WITH LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS.

**19.    NO ORAL AGREEMENTS. THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS AMONG THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS AMONG THE PARTIES.**

*[The Remainder of this Page Intentionally Left Blank]*

010-8556-9233/4/AMERICAS

**IN WITNESS WHEREOF**, the Note Trustee, the Master Trustee, the Corporation and each other Obligor have caused this Agreement to be executed as of the date first above written.

NOTE TRUSTEE:

**U.S. BANK NATIONAL ASSOCIATION**
as Note Trustee

By: _____
      Vice President                Julia Hommel
                                    Vice President

*(Signature Page to Intercreditor Agreement)*

A notary public or other officer completing
this certificate verifies only the identity of the
individual who signed the document to which
this certificate is attached, and not the
truthfulness, accuracy, or validity of that
document.

STATE *of* CALIFORNIA                          )
                                               )  ss:
COUNTY *of* LOS ANGELES                        )

On December 21, 2017, before me, Reuel Espeleta Doce, Notary Public
personally appeared Julia Hommel, who proved to me on the basis of satisfactory evidence to be
the person whose name are subscribed to the within instrument and acknowledged to me that she
executed the same in her authorized capacity, and that by her signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

[Seal]

```
REUEL ESPELETA DOCE
Commission # 2072580
Notary Public - California
Los Angeles County
My Comm. Expires Jul 23, 2018
```

**MASTER TRUSTEE:**

**U.S. BANK NATIONAL ASSOCIATION**
as Master Trustee

By:  _____
Julia Hommel
Vice President

*(Signature Page to Intercreditor Agreement)*

A notary public or other officer completing
this certificate verifies only the identity of the
individual who signed the document to which
this certificate is attached, and not the
truthfulness, accuracy, or validity of that
document.

STATE *of* CALIFORNIA                    )
                                         )  ss:
COUNTY *of* LOS ANGELES                  )

On December 21, 2017, before me, Reuel Espeleta Doce, Notary Public
personally appeared Julia Hommel, who proved to me on the basis of satisfactory evidence to be
the person whose name are subscribed to the within instrument and acknowledged to me that she
executed the same in her authorized capacity, and that by her signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

[Seal]

REUEL ESPELETA DOCE
Commission # 2072580
Notary Public - California
Los Angeles County
My Comm. Expires Jul 23, 2018

**VERITY HEALTH SYSTEM OF
CALIFORNIA, INC.,** a nonprofit corporation, on
behalf of itself and each Obligor

By: _____
Ty Conner          *AKA TY H. CONNER*
Vice President and Treasurer

*(Signature Page to Intercreditor Agreement)*

> A notary public or other officer completing
> this certificate verifies only the identity of the
> individual who signed the document to which
> this certificate is attached, and not the
> truthfulness, accuracy, or validity of that
> document.

STATE *of* CALIFORNIA                    )
                                         ) ss:
COUNTY *of* ___San Mateo___              )

On __12/20/17__ , 2017, before me, __Matthew E. Hopper__, Notary Public
personally appeared __Ty H. Comes__ who proved to me on the basis of satisfactory evidence to
be the person whose name is subscribed to the within instrument and acknowledged to me that
/she executed the same in her authorized capacity, and that by his or her signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

[Seal]

MATTHEW E. HOPPER
COMM. #2169580
Notary Public - California
San Mateo County
My Comm. Expires Oct. 25, 2020

## SCHEDULE A

## <u>OBLIGORS</u>

Verity Health System of California, Inc. (the "Corporation")

O'Connor Hospital

Saint Louise Regional Hospital

Seton Medical Center

St. Francis Medical Center

St. Vincent Medical Center

## SCHEDULE B

## 2015 LOAN AGREEMENTS

1.)  Loan Agreement dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $60,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015A, as amended by the Amendment to the Loan Agreement dated as of March 2, 2016

2.)  Loan Agreement dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $45,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015B, as amended by the Amendment to the Loan Agreement dated as of March 2, 2016

3.)  Loan Agreement dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $10,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015C (FEDERALLY TAXABLE), as amended by the Amendment to the Loan Agreement dated as of March 2, 2016

4.)  Loan Agreement dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $45,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015D, as amended by the Amendment to the Loan Agreement dated as of March 2, 2016

## 2017 LOAN AGREEMENT

5.)  Loan Agreement dated as of September 1, 2017 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $21,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2017

## 2017B LOAN AGREEMENT

6.)  Loan Agreement dated as of December 1, 2017 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $21,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2017B

010-8556-9233/4/AMERICAS



## SCHEDULE C

## NOTE COLLATERAL

"Note Collateral" means:

(m)     Accounts of:

St. Francis Medical Center
St. Vincent Medical Center
O'Connor Hospital
Saint Louise Regional Hospital
Seton Medical Center including Seton Coastside

(q)     Real property located at, and personal property located at, used in connection with or otherwise described in the St. Francis Deeds of Trust and Saint Louise Deed of Trust, respectively, as to the following Property the aggregate Book Value of which Property secured by said Deeds of Trust and created or permitted to exist pursuant to clause (q) of the definition of Permitted Liens shall not exceed 20% of the aggregate Book Value of all Property of the Obligated Group:

St. Francis Medical Center
- 3630 East Imperial Highway, Lynwood, CA
- 2700 E. Slauson Avenue, Huntington Park, CA
- 5953 Atlantic Blvd., Maywood, CA (also known as 5931 and 5957 Atlantic Blvd., including surface parking)

Saint Louise Regional Hospital
- 9400 No Name Uno, Gilroy, CA

010-8556-9233/4/AMERICAS

## SCHEDULE D

## MASTER TRUST INDENTURE NOTE OBLIGATIONS

### 2015 MTI Obligations

Master Trust Indenture Obligation No. 16 in the amount of $60,000,000

Master Trust Indenture Obligation No. 17 in the amount of $45,000,000

Master Trust Indenture Obligation No. 18 in the amount of $10,000,000

Master Trust Indenture Obligation No. 19 in the amount of $45,000,000

### 2017 MTI Obligation

Master Trust Indenture Obligation No. 21 in the amount of $21,000,000

### 2017B MTI Obligation

Master Trust Indenture Obligation No. 22 in the amount of $21,000,000

010-8556-9233/4/AMERICAS

## SCHEDULE E

## SECURITY AGREEMENTS

1. Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of O'Connor Hospital, and U.S. Bank National Association, as Trustee, as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

2. Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of Saint Louise Regional Hospital, and U.S. Bank National Association, as Trustee, as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

3. Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of Seton Medical Center, and U.S. Bank National Association, as Trustee; as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

4. Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of Seton Coastside, a division of Seton Medical Center, and U.S. Bank National Association, as Trustee; as assignee under the Loan Agreement between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2017B Notes.

5. Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of St. Francis Medical Center, and U.S. Bank National Association, as Trustee, as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

6. Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of St. Vincent Medical Center, and U.S. Bank National Association, as Trustee, as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

E-1

**This document was electronically submitted
to Santa Clara County for recording**

## 23838073

**Regina Alcomendras**
Santa Clara County - Clerk-Recorder
12/28/2017 01:55 PM

Titles: 1     Pages: 28

Fees: $106.00

Tax: $0

Total: $106.00

**RECORDING REQUESTED BY:**
Chicago Title Company - C/I
**Order No.:** FWPS-TO17001505

**When Recorded Mail Document To:**

Attn: Catrina C. Cohn, Esq.
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SECOND AMENDED AND RESTATED INTERCREDITOR AGREEMENT

**THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
(Additional recording fee applies)

**RECORDING REQUESTED BY:**
Chicago Title Company - C/I
**Order No.:** FWPS-TO17001505

**When Recorded Mail Document To:**

Attn: Catrina C. Cohn, Esq.
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

THIS DOCUMENT HAS BEEN
ELECTRONICALLY RECORDED. SEE
THE ATTACHED COVER PAGE FOR
RECORDING INFORMATION

SECOND AMENDED AND RESTATED INTERCREDITOR AGREEMENT

**THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**(Additional recording fee applies)**

**RECORDING REQUESTED BY AND**
**WHEN RECORDED MAIL TO:**

Attn: Catrina C. Cohn, Esq.
Squire Patton Boggs (US) LLP
275 Battery St., Suite 2600
San Francisco, CA 94111

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SECOND AMENDED AND RESTATED
# INTERCREDITOR AGREEMENT

## SECOND AMENDED AND RESTATED INTERCREDITOR AGREEMENT

THIS SECOND AMENDED AND RESTATED **INTERCREDITOR AGREEMENT** (this *"Agreement"*) entered into as of December 1, 2017 amends and restates the Amended and Restated Intercreditor Agreement, dated as of September 1, 2017, recorded in Los Angeles County as Instrument Number 20171060070 on September 18, 2017 at 8:00 a.m. (the "First Amended and Restated Intercreditor Agreement"), which amended and restated the Intercreditor Agreement, dated as of December 1, 2015 recorded in Los Angeles County as Instrument Number 20151573372 on December 15, 2015 at 8:00 a.m. and recorded in Santa Clara County as Instrument Number 23173258 on December 16, 2015 at 8:00 a.m., by and among Verity Health System of California, Inc., a nonprofit public benefit corporation incorporated under the laws of the State of California ("the *"Corporation"*), on behalf of itself and each Obligated Group Member listed on the attached **Schedule A** (each, an *"Obligor"* and collectively, the *"Obligors"*), U.S. Bank National Association, a national banking association organized and existing under the laws of the United States of America, as trustee (together with any successor thereto in any such capacity, the *"Note Trustee"*) under (i) the Indentures, dated as of December 1, 2015 (as they may be supplemented and amended in accordance with their terms, the *"2015 Indentures"*) with respect to the 2015 Notes (as defined below), (ii) the Indenture, dated as of September 1, 2017 (as it may be supplemented and amended in accordance with its terms, the *"2017 Indenture"*), with respect to the 2017 Notes (defined below), and (iii) the Indenture, dated as of December 1, 2017 (as it may be supplemented and amended in accordance with its terms, the *"2017B Indenture"* and, together with the 2015 Indentures and the 2017 Indenture, the *"Note Indentures"*) with respect to the 2017B Notes (as defined below), each between the Note Trustee and the California Public Finance Authority (the *"Authority"*), and U.S. Bank National Association, a national banking association organized and existing under the laws of the United States of America, as master trustee (together with its successors in such capacity, the *"Master Trustee"*) pursuant to the Master Indenture of Trust, dated as of December 1, 2001 (as supplemented and amended in accordance with its terms, the *"Master Indenture"*), between the Corporation, the Initial Members (as defined therein) and the Master Trustee.

## RECITALS

A.    The Authority and the Corporation have entered into four Loan Agreements as identified on the attached **Schedule B** (as the same may be amended, restated, supplemented, or otherwise modified from time to time as permitted hereunder, the *"2015 Loan Agreements"*) with respect to the Series 2015A Notes in the original principal amount of $60 Million (the *"2015A Notes"*), the Series 2015B Notes in the original principal amount of $45 Million (the *"2015B Notes"*), the Series 2015C Notes in the original principal amount of $10 Million (the *"2015C Notes"*), and the Series 2015D Notes in the original principal amount of $45 Million (the *"2015D Notes"*, and collectively, the *"2015 Notes"*)) and one Loan Agreement as identified on the attached **Schedule B** (as the same may be amended, restated, supplemented, or otherwise modified from time to time as permitted hereunder, the *"2017 Loan Agreement"*) with respect to the Series 2017 Notes in the original principal amount of $21 Million (the *"2017 Notes"*) and are expected to enter into one Loan Agreement identified on the attached **Schedule B** (as the same may be amended, restated, supplemented, or otherwise modified from time to time as permitted hereunder, the *"2017B Loan Agreement"* and, together with the 2015 Loan Agreements and 2017 Loan Agreement, the *"Loan Agreements"*) with respect to the 2017B Notes in the original

principal amount of $21 Million (the *"2017B Notes"* and, together with the 2015 Notes and the 2017 Notes, the *"Notes"*), pursuant to which, among other things, the Authority has made or has agreed to make, subject to the terms and conditions set forth in the Loan Agreements, loans and financial accommodations to the Corporation to be used for refinancing, working capital and other purposes for each Obligor and certain affiliates. All of the Corporation's Obligations (as defined in the Loan Agreements) are secured by liens on and security interests in certain property of the Corporation and the Obligors (the *"Note Collateral"*) as set forth in **Schedule C**, and are further secured by certain obligations (the *"MTI Note Obligations"*) issued under the Master Indenture pursuant to the Supplemental Master Indentures for the MTI Note Obligations as set forth in **Schedule D**.

B.    The Obligors listed in **Schedule C** entered into Security Agreements with the Note Trustee, dated as of December 14, 2015 in connection with the 2015 Notes and amended and restated those Security Agreements, dated as of September 1, 2017 in connection with, and to include, the 2017 Notes, and amended and restated those Security Agreements, dated as of December 1, 2017 in connection with, and to include, the 2017B Notes (as the same may be amended, restated, supplemented or otherwise modified from time to time as permitted hereunder, the *"Security Agreements"*) as set forth in **Schedule E**. All of the Corporation's obligations pursuant to the Loan Agreements are secured by the accounts receivable of the Obligors listed on **Schedule C**.

C.    The Corporation, on behalf of each of St. Francis Medical Center and Saint Louise Regional Hospital have executed and delivered the St. Francis Deeds of Trust and the Saint Louise Deed of Trust, respectively, on certain of their respective real and personal property as set forth in **Schedule C** and have delivered to the Note Trustee Subordination Agreements executed by the Master Trustee relating to the Master Trustee's liens on such real and personal property. All of the Corporation's obligations pursuant to the Loan Agreements are secured by these Deeds of Trust on a senior lien basis in accordance with the related Subordination Agreements.

D.    The Note Collateral (as defined in **Schedule C**) was granted as an inducement to and as one of the conditions precedent to the agreement of the Corporation and the Authority to consummate the transactions contemplated by the 2015 Loan Agreements. The purchasers of the 2015 Notes (the *"2015 Holders"*) required the execution and delivery of the Original Agreement by the Master Trustee, the 2015 Trustee and the Obligors in order to set forth the relative rights and priorities of the Note Trustee and Master Trustee under the 2015 Note Documents (as defined below) and the Master Indenture.

E.    The Note Collateral (as defined in **Schedule C**) was granted as an inducement to and as one of the conditions precedent to the agreement of the Corporation and the Authority to consummate the transactions contemplated by the 2017 Loan Agreement. The purchasers of the 2017 Notes (the *"2017 Holders"*) required the execution and delivery of the First Amended and Restated Intercreditor Agreement by the Master Trustee, the Note Trustee and the Obligors in order to set forth the relative rights and priorities of the Note Trustee, as trustee for the holders of the 2015 Notes and the 2017 Notes, and Master Trustee under the Note Documents (as defined below) and the Master Indenture.

010-8556-9233/4/AMERICAS

F.    The Note Collateral (as defined in **Schedule C**) is granted as an inducement to and as one of the conditions precedent to the agreement of the Corporation and the Authority to consummate the transactions contemplated by the 2017B Loan Agreement. The purchasers of the 2017B Notes (the *"2017B Holders"* and, together with the 2015 Holders and the 2017 Holders, the *"Note Holders"*) required the execution and delivery of this Agreement by the Master Trustee, the Note Trustee and the Obligors in order to set forth the relative rights and priorities of the Note Trustee, as trustees for the holders of the 2015 Notes, the 2017 Notes and the 2017B Notes, and Master Trustee under the Note Documents (as defined below) and the Master Indenture.

G.    The 2015 MTI Obligations have been executed by the Corporation, authenticated by the Master Trustee and delivered to the 2015 Trustee for the benefit of the 2015 Holders as additional security for the obligations of the Corporation under the 2015 Loan Agreements; the 2017 MTI Obligation has been executed by the Corporation, authenticated by the Master Trustee and delivered to the 2017 Trustee for the benefit of the 2017 Holders as additional security for the obligations of the Corporation under the 2017 Loan Agreement; and the 2017B MTI Obligation has been executed by the Corporation, authenticated by the Master Trustee and delivered to the 2017B Trustee for the benefit of the 2017B Holders as additional security for the obligations of the Corporation under the 2017B Loan Agreement. Pursuant to the MTI Note Obligations and the Master Indenture, the MTI Note Obligations are secured under the Master Indenture on equal rank without preference, priority or distinction of any Obligation issued under the Master Indenture over any other such Obligations (the *"MTI Collateral"*). The MTI Collateral includes a pledge of the Gross Revenues (as defined in the Master Indenture) of the Obligated Group which includes accounts receivable.

H.    Pursuant to Section 5.01(B) of each of the 2015 Indenture and the 2017 Indenture, the Authority has assigned to the 2015 Trustee or 2017 Trustee, as applicable, for the benefit of the Holders from time to time of the respective Notes, its security interest in the Note Collateral which has been pledged to the Authority to support the obligations of the Corporation in the 2015 Loan Agreements and the 2017 Loan Agreement, as applicable.

I.    As of the issuance of the 2017B Notes, the Obligations Outstanding under the Master Indenture secure the repayment of: (i) the 2005A Bonds in the outstanding principal amount of $246,345,000, the 2005G Bonds in the outstanding principal amount of $10,855,000, the 2005H Bonds in the outstanding principal amount of $8,985,000 (total outstanding principal amount of 2005 Bonds is $266,185,000) (collectively, the "2005 Bonds"), (ii) the 2015 Notes, (iii) the 2017 Notes, and (iv) the 2017B Notes.

J.    The 2005 Bonds are subject, under certain circumstances, to certain Remediation Requirements pursuant to the provisions of the Internal Revenue Code as indicated in the Tax Certificates for the 2005 Bonds. In the event of an action which results in the need for a remediation of certain outstanding 2005 Bonds, the Authority or the Corporation will seek an opinion of Nationally Recognized Bond Counsel as to what application of the amount of proceeds of any sale or disposition of the applicable property financed by the 2005 Bonds is required in connection with the applicable change in use of any bond financed property. The 2005 Bonds are callable at par as of July 1, 2015.

3

K.    The Master Indenture contains certain covenants as to Additional Indebtedness (Sec 3.05) and Against Encumbrances (Sec 3.04).

L.    The 2015 Notes and the 2017 Notes were, and the 2017B Notes are, issued as Additional Indebtedness in accordance with the provisions of Sec 3.05(d) of the Master Indenture as certified by the Chief Financial Officer of the Corporation.

M.    The liens supporting the 2015 Notes and the 2017 Notes were, and the liens supporting the 2017B Notes are, granted as Permitted Liens: 1) pursuant to subsection (m) of the defined term Permitted Liens as to the grant of liens on accounts receivable as certified by the Vice President and Treasurer of the Corporation; and 2) pursuant to subsection (q) of the defined term Permitted Liens as to the Deeds of Trust and the security interest in the Property related thereto as certified by the Vice President and Treasurer of the Corporation.

N.    Pursuant to Section 3.04(d) of the Master Indenture, the Master Trustee is directed to execute and deliver a reasonably requested subordination in connection with the grant of a Permitted Lien.

**NOW, THEREFORE,** in order to induce the 2017B Holders to purchase the 2017B Notes and the Note Trustee and the Authority to consummate the transactions contemplated by the 2017B Loan Agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

1.    **Definitions**.

(a)    As used herein, capitalized terms shall have the meanings given to them in the Loan Agreements, the Indentures, the Master Indenture, the Security Agreements, the Deeds of Trust and the Subordination Agreements executed in connection with the Deeds of Trust, except as otherwise defined herein or as the context otherwise requires.

(b)    Any term used in the Uniform Commercial Code as adopted in the State of California, as it may hereafter be amended (*"UCC"*) and not defined in this Agreement or in the documents set forth in subsection (a) above has the meaning given to the term in the UCC.

*"Bankruptcy Code"* means Title 11 of the United States Code, as amended from time to time, and any successor statute and all rules and regulations promulgated thereunder.

*"Deeds of Trust"* means, collectively, the St. Francis Deeds of Trust and the Saint Louise Deed of Trust.

*"Lien"* means any lien, security interest, pledge, bailment, mortgage, hypothecation, deed of trust, conditional sales and title retention agreement (including any lease in the nature thereof), charge, encumbrance or other similar arrangement or interest in real or personal property, now owned or hereafter acquired, whether such interest is based on common law, statute or contract.

4

*"Nationally Recognized Bond Counsel"* means Squire Patton Boggs (US) LLP or any other bond counsel firm with a national reputation for delivering opinions with respect to the tax-exemption of interest on municipal bonds for federal income tax purposes that is retained by the Corporation or the Authority for the purpose of rendering an opinion as to Remediation Requirements.

*"Note Documents"* means, collectively, the 2015 Note Documents, the 2017 Note Documents and the 2017B Note Documents, and all other agreements, documents and instruments executed from time to time in connection therewith, as the same may be amended, supplemented or otherwise modified from time to time.

*"Person"* means any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other entity, whether acting in an individual, fiduciary or other capacity.

*"Priority Assets"* means the assets constituting the Note Collateral identified on **Schedule C** hereto.

*"Priority Lien"* means the Lien on the Priority Assets.

*"Proceeding"* means any voluntary or involuntary insolvency, bankruptcy, receivership, custodianship, liquidation, dissolution, reorganization, assignment for the benefit of creditors, appointment of a custodian, receiver, trustee or other officer with similar powers or any other proceeding for the liquidation, dissolution or other winding up of a Person.

*"Remediation Requirements"* mean those certain requirements for remediation of the 2005 Bonds to the extent arising from the ownership or use of Priority Assets financed or refinanced with proceeds of the 2005 Bonds, as set forth in the Tax Certificates executed in connection with the 2005 Bonds and as to any specific instance addressed in the opinion of Nationally Recognized Bond Counsel.

*"St. Francis Deeds of Trust"* means (a) that certain Second Amended and Restated Deed of Trust With Fixture Filing and Security Agreement relating to 3630 East Imperial Highway, Lynwood, California, dated as of December 28, 2017, executed by the Corporation on behalf of St. Francis Medical Center, as trustor, in favor of Chicago Title Company, as trustee for the benefit of each trustee for the Notes, as trustee for the holders of the Notes, as beneficiaries, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof; (b) that certain Second Amended and Restated Deed of Trust With Fixture Filing and Security Agreement relating to 2700 E. Slauson Avenue, Huntington Park, California, dated as of December 28, 2017, executed by the Corporation, on behalf of St. Francis Medical Center, as trustor, in favor of Chicago Title Company, as trustee for the benefit of each trustee for the Notes, as trustee for the holders of the Notes, as beneficiaries, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof; and (c) that certain Second Amended and Restated Deed of Trust With Fixture Filing and Security Agreement relating to 5953 Atlantic Blvd. (also known as 5931 and 5957 Atlantic Blvd, including surface parking), Maywood, California, dated as of December 28, 2017, executed by the Corporation, on behalf of St. Francis Medical Center, as trustor, in favor

010-8556-9233/4/AMERICAS

of Chicago Title Company, as trustee for the benefit of each trustee for the Notes, as trustee for the holders of the Notes, as beneficiaries, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof.

"*Saint Louise Deed of Trust*" means that certain Amended and Restated Deed of Trust With Fixture Filing and Security Agreement relating to 9400 No Name Uno, Gilroy, California, dated as of December 28, 2017, executed by the Corporation on behalf of Saint Louise Regional Hospital, as trustor, in favor of Chicago Title Company, as trustee for the benefit of each trustee for the Notes, as trustee for the holders of the Notes, as beneficiaries, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof.

"*2015 Note Documents*" means the 2015 Notes, the 2015 Loan Agreements, the 2015 Indentures, the Security Agreements, the Deeds of Trust, the Subordination Agreements executed in connection with the Deeds of Trust, this Agreement, and all other agreements, documents and instruments executed from time to time in connection therewith, as the same may be amended, supplemented or otherwise modified from time to time.

"*2017 Note Documents*" means the 2017 Notes, the 2017 Loan Agreement, the 2017 Indenture, the Security Agreements, the Deeds of Trust, the Subordination Agreements executed in connection with the Deeds of Trust, this Agreement, and all other agreements, documents and instruments executed from time to time in connection therewith, as the same may be amended, supplemented or otherwise modified from time to time.

"*2017B Note Documents*" means the 2017B Notes, the 2017B Loan Agreement, the 2017B Indenture, the Security Agreements, the Deeds of Trust, the Subordination Agreements executed in connection with the Deeds of Trust, this Agreement, and all other agreements, documents and instruments executed from time to time in connection therewith, as the same may be amended, supplemented or otherwise modified from time to time.

2.    **Subordination**.

2.1    **Subordination of Master Trustee's Lien to Priority Lien**.  Each Party covenants and agrees, and the Master Trustee covenants and agrees, notwithstanding anything to the contrary contained in the Master Indenture or any of the documents related to the Master Indenture or as a matter of law, that in or outside of any Proceeding any Lien of the Master Trustee with respect to the property constituting Priority Assets shall be and is hereby expressly made subordinate, to the extent and in the manner hereinafter set forth, to the Lien of the Note Trustee in such Priority Assets (whether or not such Lien of the Note Trustee is a perfected Lien). Irrespective of the timing of such acquisition, each Note Holder shall be deemed to have acquired its Notes in reliance upon the provisions contained in this Agreement. Each Party, including the Note Trustee, covenants and agrees that notwithstanding the Priority Lien in the Priority Assets granted to the Note Trustee, the application of amounts subject to such Priority Lien shall be subject to the Remediation Requirements as set forth herein, and each Party, including the Master Trustee, covenants and agrees that the existence of the Remediation Requirements and the provisions hereof with respect thereto shall not in any manner affect the existence of a first Priority Lien to the Note Trustee in the Priority Assets and that any proceeds

of the Priority Assets or the Note Collateral that, in accordance with the terms hereof, are applied to the Remediation Requirements shall not be deemed to have been applied to or reduce in any manner the payment obligations of the Corporation or the Obligors under the Note Documents or the MTI Note Obligations. Without limiting the foregoing, notwithstanding the date, time, manner or order of grant, attachment or perfection of any Liens and security interests of the Master Trustee in the Note Collateral, until the principal of, interest on and premium, if any, on the Notes have been indefeasibly paid in full in cash, any Liens and security interests of the Master Trustee in the Note Collateral which may exist from time to time (whether the same exist on the date hereof or otherwise) shall be and hereby are subordinated for all purposes and in all respects to the Priority Liens and security interests of the Note Trustee in the Note Collateral.

2.2 **Incorrect Payments**. In the event that, notwithstanding the provisions of this Agreement, the Master Trustee receives any payment of any kind or character, whether in cash, property, or securities, in violation of the terms of this Agreement, such payment shall be delivered forthwith to the Note Trustee for application to the payment of the 2015 Notes, 2017 Notes or 2017B Notes, as applicable, to the extent necessary to pay or defease all 2015 Notes, 2017 Notes or 2017B Notes, as applicable, in full or otherwise held or applied pursuant to this Agreement. The Note Trustee is irrevocably authorized and appointed attorney-in-fact for the Master Trustee to supply any required endorsement or assignment. Until so delivered, any such payment or collateral shall be held by the Master Trustee in trust for the Note Trustee and shall not be commingled with other funds or property of the Master Trustee.

2.3 **No Contest of Priority Liens and Security Interests**. The Master Trustee, on behalf of itself and the Holders of all outstanding Obligations under the Master Indenture, agrees that it will not, and will not cause or support any other Person to, at any time contest, seek to avoid or subordinate the validity, perfection, priority, extent or enforceability of the Notes, the Note Documents, this Agreement or any Liens and security interests of the Note Trustee in the Note Collateral securing the Notes.

2.4 **Unconditional Subordination**. No action which the Note Trustee may take or omit to take in connection with any of the Note Documents or the MTI Note Obligations, any of the Notes, or any security therefor, and no course of dealing of the Note Trustee with any Obligor, the Master Trustee, or any other Person, shall release or diminish the Master Trustee's obligations, liabilities, agreements or duties hereunder, affect this Agreement in any way, or afford the Master Trustee any recourse against the Note Trustee, regardless of whether any such action or inaction may increase any risks to or liabilities of the Note Trustee, the Master Trustee or any Obligor or increase any risk to or diminish any safeguard of any security. Without limiting the foregoing, the Master Trustee hereby expressly agrees that the Note Trustee may, from time to time, without notice to or the consent of the Master Trustee:

i.       amend, change or modify, in whole or in part, any one or more of the Note Documents and give or refuse to give any waivers or other indulgences with respect thereto;

ii.      neglect, delay, fail, or refuse to take or prosecute any action for the collection or enforcement of any of the obligations of the Obligors under the Note Documents or the MTI Note Obligations, to (i) foreclose or take or prosecute any action in connection with the Note

Documents, (ii) bring suit against an Obligor or any other Person, or (iii) take any other action concerning the Notes, the Note Documents or the MTI Note Obligations;

iii.    accelerate, change, rearrange, extend, or renew the time, terms, or manner for payment or performance of any one or more of the obligations of the Obligors under the Note Documents or the MTI Note Obligations;

iv.    compromise or settle any unpaid or unperformed obligations of the Obligors under the Note Documents or the MTI Note Obligations;

v.    take, exchange, amend, eliminate, surrender, release, or subordinate any or all security for any or all of the obligations of the Obligors under the Note Documents or the MTI Note Obligations, accept additional or substituted security therefor, or perfect or fail to perfect the Note Trustee's rights in any or all security;

vi.    discharge, release, substitute or add obligors with respect to the obligations of the Obligors under the Note Documents or the MTI Note Obligations; and

vii.    apply all monies received from the Authority, the Obligors or others, or from any security for any of the Note Documents, as the Note Trustee may determine to be in its best interest, without in any way being required to apply all or any part of such monies upon any particular Notes.

No change of law or circumstances shall release or diminish the Master Trustee's obligations, liabilities, agreements, or duties hereunder, affect this Agreement in any way, or afford the Master Trustee any recourse against the Note Trustee. Without limiting the foregoing, no obligations, liabilities, agreements, or duties of the Master Trustee under this Agreement shall be released, diminished, impaired, reduced, or affected by the occurrence of any of the following from time to time, even if occurring without notice to or without the consent of the Master Trustee:

i.    any Proceeding or any discharge, impairment, modification, release, or limitation of the liability of, or stay of actions or lien enforcement proceedings against, any properties of any Obligor, or the estate in bankruptcy of any Obligor in the course of or resulting from any such Proceedings;

ii.    the failure by the Note Trustee to file or enforce a claim in any Proceeding described in the immediately preceding clause (i) or to take any other action in any Proceeding to which any Obligor is a party;

iii.    the release by operation of law of any Obligor from any of its obligations under the Note Documents or the MTI Note Obligations or any other obligations to the Note Trustee;

iv.    the invalidity, deficiency, illegality, or unenforceability of any of the Note Documents or the obligations of the Obligors under the Note Documents or the MTI Note Obligations, in whole or in part, any bar by any statute of limitations or other law of recovery on any of the obligations of the Obligors under the Note Documents or the MTI Note Obligations,

8

or any defense or excuse for failure to perform on account of force majeure, act of God, casualty, impossibility, impracticability, or other defense or excuse whatsoever;

v.    the failure of the Note Trustee or any other Person to sign any instrument or agreement; and

vi.    without limiting any of the foregoing, any fact or event (whether or not similar to any of the foregoing) which in the absence of this provision would or might constitute or afford a legal or equitable discharge or release of or defense other than the actual payment of the obligations of the Obligors under the Note Documents or the MTI Note Obligations and the performance by the Master Trustee under this Agreement.

2.5    **Requirement of Notice**.  The Master Trustee agrees to notify the Note Trustee promptly upon obtaining knowledge of the happening of any of the following: (i) the occurrence of any default or event of default under the Master Indenture; (ii) the waiver by the Master Trustee of any default or event of default under the Master Indenture; or (iii) the exercise of any remedies under the Master Indenture. The Note Trustee agrees to notify the Master Trustee promptly upon obtaining knowledge of the happening of any of the following: (i) the occurrence of any event of default under any of the Note Documents; (ii) the waiver by the Note Trustee of any event of default under any of the Note Documents; or (iii) the exercise of any remedies under the Note Documents. Failure to provide any notice required hereby shall not affect the subordination of the Master Trustee's Lien in the Priority Assets effected hereby.

3.    **Intercreditor Provisions**.

3.1    **Marshaling and Similar Rights**.  In foreclosing or realizing on any Priority Assets, the Note Trustee may proceed in any manner and in any order which the Note Trustee, in its sole discretion, shall choose, even though a higher price might have been realized if the Note Trustee had proceeded to foreclose or realize on its security interests in another manner or order. The Note Trustee shall not be required to marshal its claims against one or more assets securing the Notes.

3.2    **Rights of Note Trustee under the MTI Note Obligations**.  The Note Trustee is the holder of MTI Note Obligations for all Notes and is entitled to enforce payment and performance of the MTI Note Obligations and to exercise all rights and powers given to it under any of the Note Documents.

3.3    **Specific Performance**.  The Note Trustee is hereby authorized to demand specific performance of this Agreement at any time when the Master Trustee shall have failed to comply with any provision hereof. The Master Trustee hereby irrevocably waives any defenses based on the adequacy of a remedy at law which might be asserted as a bar to the action of the Note Trustee.

3.4    **No Duties**.  The Master Trustee hereby agrees that (i) the Note Trustee shall not have any responsibility or duty to the Master Trustee with respect to any of the Priority Assets except for such duties as are imposed by law and which cannot be waived by agreement, and (ii) the Note Trustee shall be free to take or omit to take any and all such action with respect

9

to the Priority Assets as it may so choose, without consent by the Master Trustee and without regard to or consideration of the interests of the Master Trustee or the holders of the 2005 Bonds.

**4.**    **Representations and Warranties**.

4.1    **Representations and Warranties of Master Trustee**.    The Master Trustee hereby represents and warrants to the Note Trustee that (a) it is a duly formed and validly existing national bank; (b) it has the power and authority to enter into, execute, deliver and carry out the terms of this Agreement, all of which have been duly authorized by all proper and necessary action; (c) the execution of this Agreement by it will not violate or conflict with its organizational documents, the Master Indenture or any other material agreement binding upon it or any law, regulation or order or require any consent or approval which has not been obtained; and (d) this Agreement is the legal, valid and binding obligation of it, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by equitable principles.

4.2    **Representations and Warranties of the Note Trustee**.    The Note Trustee hereby represents and warrants to the Master Trustee that as of the date hereof: (a) it is a duly formed and validly existing national bank; (b) it has the power and authority to enter into, execute, deliver and carry out the terms of this Agreement, all of which have been duly authorized by all proper and necessary action; (c) the execution of this Agreement by it will not violate or conflict with its organizational documents, any material agreement binding upon it or any law, regulation or order or require any consent or approval which has not been obtained; and (d) this Agreement is the legal, valid and binding obligation of it, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally or by equitable principles.

**5.**    **Remediation Requirements**.    The Corporation and the Obligors hereby represent that (i) in the event of foreclosure, deed in lieu of foreclosure or other disposition or transfer of the St. Francis Medical Center property located at 3630 East Imperial Highway, Lynwood, CA to an entity that is not a non-federal governmental entity or an exempt entity under Section 501(c)(3) using the applicable property in a manner that does not constitute unrelated business use, or private use, the amount of proceeds that may be required to be applied pursuant to the Remediation Requirements for the principal amount of the 2005 Bonds shall not exceed $68,000,000 plus outstanding interest on such allocable 2005 Bonds as of the date of Remediation, (ii) in the event of foreclosure, deed in lieu of foreclosure or other disposition or transfer of the Saint Louise Regional Hospital property located at 9400 No Name Uno, Gilroy, CA to an entity that is not a non-federal governmental entity or an exempt entity under Section 501(c)(3), using the applicable property in a manner that does not constitute unrelated business use, or private use, the maximum amount of proceeds that may be required to be applied pursuant to the Remediation Requirements for the principal amount of the 2005 Bonds shall not exceed $5,500,000 plus outstanding interest on such allocable 2005 Bonds as of the date of Remediation, and (iii) there are no Remediation Requirements with respect to the properties located at 2700 E. Slauson Avenue, Huntington Park, CA and 5957 Atlantic Blvd., Maywood, CA. In the event of a foreclosure, deed in lieu of foreclosure or other disposition or transfer

010-8556-9233/4/AMERICAS

described in clauses (i) or (ii) of the preceding sentence, the actual amount required to be applied to Remediation Requirements shall be as set forth in an opinion of Nationally Recognized Bond Counsel addressed to the Trustee for the 2005 Bonds (the "2005 Trustee") and the Note Trustee, but shall not exceed the maximum amounts set forth in the preceding sentence. Until the date of receipt by the 2005 Trustee and the Note Trustee of such an opinion setting forth the amount required to be applied to Remediation Requirements in the event the Note Trustee receives cash proceeds from such event or transaction, the Note Trustee agrees to segregate the lesser of such cash proceeds received under (i) or (ii), as applicable, or the amount referenced in clause (i) or (ii) above, as applicable (as applicable, the "***Potential Remediation Amounts***") and not to apply any Potential Remediation Amounts to the payment of the Notes or for any other purpose. Upon receipt of an opinion of Nationally Recognized Bond Counsel addressed to the 2005 Trustee and the Note Trustee stating that a specified amount of a Potential Remediation Amount must be applied to Remediation Requirements for the 2005 Bonds in order to preserve the tax-exemption of interest on the 2005 Bonds and when so applied will preserve the tax-exemption of interest on the 2005 Bonds, the Note Trustee shall transfer such specified amount of cash proceeds to the 2005 Trustee for application as required by such opinion of Nationally Recognized Bond Counsel, and the balance, if any, of such Potential Remediation Amounts thereafter may be applied by the Note Trustee without regard to the Remediation Requirements. The Note Trustee agrees that unless the Note Trustee and 2005 Trustee have received an opinion of Nationally Recognized Bond Counsel addressed to the Note Trustee and the 2005 Trustee stating that such action will not adversely affect the tax-exemption of interest on the 2015 Bonds, no foreclosure, deed in lieu of foreclosure or other disposition or transfer to an entity that is not a non-federal governmental entity or an exempt entity under Section 501(c)(3) using the applicable property in a manner that does not constitute unrelated business use, or private use shall be consummated by the Note Trustee other than in a transaction in which the consideration received is exclusively cash within the meaning of 26 CFR 1.141-12(d)(2). The Note Trustee agrees that no foreclosure, deed in lieu of foreclosure or other disposition or transfer to an entity that is a non-federal governmental entity or an exempt entity under Section 501(c)(3) shall be consummated by the Note Trustee unless the Note Trustee and the 2005 Trustee have received an opinion of Nationally Recognized Bond Counsel addressed to the Note Trustee and the 2005 Trustee stating that either (a) anticipatory remedial action within the meaning of 26 CFR 1.141-12(d)(3) has occurred with respect to the 2005 Bonds, or the 2005 Trustee has received cash and instructions as to the application thereof to the redemption of 2005 Bonds in a manner that will constitute anticipatory remedial action within the meaning of 26 CFR 1.141-12(d)(3), such that the applicable foreclosure, deed in lieu of foreclosure or other disposition or transfer will not adversely affect the tax-exemption of interest on the 2005 Bonds irrespective of the subsequent use or ownership of the transferred property or (b) the applicable transferee has delivered covenants, with respect to which the 2005 Trustee is a third party beneficiary, as to the use and ownership of such property by such transferee and any further transferee thereof in a manner consistent with the preservation of the tax-exemption of interest on the 2005 Bonds.

      6.   **Entire Agreement; Modification.**   This Agreement evidences the entire agreement of the parties regarding the ordering of interests set forth herein, and all prior oral discussions and writings are merged into this Agreement. Any modification or waiver of any provision of this Agreement, or any consent to any departure by any party from the terms hereof, shall not be effective in any event unless the same is in writing and signed by the Note Trustee, the Master Trustee and the Corporation, and then such modification, waiver or consent shall be

010-8556-9233/4/AMERICAS

effective only in the specific instance and for the specific purpose given. Any notice to or demand on any party hereto in any event not specifically required hereunder shall not entitle the party receiving such notice or demand to any other or further notice or demand in the same, similar or other circumstances unless specifically required hereunder.

7.    **Further Assurances**.  Each party to this Agreement will promptly execute and deliver such further instruments and agreements and do such further acts and things as may be reasonably requested in writing by any other party hereto that may be necessary or desirable in order to effect fully the purposes of this Agreement.

8.    **Notices**.  Unless otherwise specifically provided herein, any notice delivered under this Agreement shall be in writing addressed to the respective party as set forth below and may be personally served, telecopied or sent by overnight courier service or certified or registered United States mail and shall be deemed to have been given (a) if delivered in person, when delivered; (b) if delivered by telecopy or electronic mail, on the date of transmission if transmitted on a Business Day before 12:00 p.m. (California time) or, if not, on the next succeeding Business Day; (c) if delivered by overnight courier, one Business Day after delivery to such courier properly addressed; or (d) if by United States mail, four Business Days after deposit in the United States mail, postage prepaid and properly addressed.

Notices shall be addressed as follows:

If to the Master Trustee:

> U.S. Bank National Association
> 633 West Fifth Street, 24th Floor
> Los Angeles, CA 90071
> Attn: Global Corporate Trust Services

with copies to (which shall not constitute notice):

> U.S. Bank National Association
> 2300 W. Sahara, Suite 200
> LM-NV-NFC2
> Las Vegas, NV 89102
> Attn: Global Corporate Trust Services

and to:

> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> One Financial Center
> Boston, MA 02111
> Attn: Len Weiser-Varon, Esq.

12

If to the Corporation or any Obligor:

> Verity Health System of California, Inc.
> 203 Redwood Shores Parkway, Suite 800
> Redwood City, CA 94065
> Attn: Chief Financial Officer

with copies to (which shall not constitute notice):

> Squire Patton Boggs
> 275 Battery Street, Suite 2600
> San Francisco, CA 94111
> Attn: Robyn Helmlinger

If to Note Trustee:

> U.S. Bank National Association
> 633 West Fifth Street, 24th Floor
> Los Angeles, CA 90071
> Attn: Global Corporate Trust Services

with copies to (which shall not constitute notice):

> Dorsey & Whitney LLP
> 600 Anton Boulevard
> Suite 2000
> Costa Mesa, CA 92626-7655
> Attn: Dennis Wong

or in any case, to such other address as the party addressed shall have previously designated by written notice to the serving party, given in accordance with this Section 8.

9.    **Successors and Assigns**.  This Agreement shall inure to the benefit of, and shall be binding upon, the respective successors and assigns of the Note Trustee, the Master Trustee, the Corporation or any other Obligor. To the extent permitted under the Note Documents, the Note Holders may, from time to time, without notice to the Master Trustee, assign or transfer any or all of the Notes or any interest therein to any Person and, notwithstanding any such assignment or transfer, or any subsequent assignment or transfer, the Notes shall, subject to the terms hereof, be and remain Notes for purposes of this Agreement, and every permitted assignee or transferee of any of the Notes or of any interest therein shall, to the extent of the interest of such permitted assignee or transferee in the Notes, be entitled to rely upon and be the third party beneficiary of the subordination provided under this Agreement and shall be entitled to enforce the terms and provisions hereof to the same extent as if such assignee or transferee were initially a party hereto. The 2005 Trustee, on behalf of the holders of the 2005 Bonds, shall be a third party beneficiary of Section 5 hereof, and neither such Section 5 nor this sentence shall be amended, modified or waived without the consent of the 2005 Trustee.

10.    **Relative Rights**.  This Agreement shall define the relative rights of the Note Trustee on the one hand and the Master Trustee on the other hand. Nothing in this Agreement shall (a) impair, as among the Corporation, the Master Trustee and the Note Trustee and as between the Corporation and the Master Trustee, the obligation of the Corporation or any other Obligor with respect to the payment of the Notes in accordance with their respective terms or (b) affect the relative rights of the Note Trustee or the Master Trustee with respect to any other creditors of the Corporation.

11.    **No Waiver**.  Notwithstanding any other provision of this Agreement, nothing in this Agreement shall constitute a waiver of any rights any Holder may have, or any duties the Master Trustee may have, to direct or take any action permitted or required by the Master Indenture, in the event that any amendment, change or modification to any one or more of the Note Documents or any calculation of the amount described in subsection (m) or (q) of the defined term Permitted Lien causes any portion of the Priority Lien not to be a Permitted Lien.

12.    **Headings**.  The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.

13.    **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

14.    **Severability**.  In the event that any provision of this Agreement is deemed to be invalid, illegal or unenforceable by reason of the operation of any law or by reason of the interpretation placed thereon by any court or governmental authority, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby, and the affected provision shall be modified to the minimum extent permitted by law so as most fully to achieve the intention of this Agreement.

15.    **Continuation of Subordination; Termination of Agreement**.  This Agreement is a continuing agreement of subordination pursuant to its terms and in accordance with Section 510(a) of the Bankruptcy Code and shall remain in full force and effect until (i) the indefeasible payment in full in cash of the principal of, interest on and premium, if any, on the Notes, and (ii) the documents and instruments evidencing the Notes have been terminated or performed, in each case in accordance with their respective terms after which this Agreement shall terminate without further action on the part of the parties hereto. The liability and obligations of the Master Trustee hereunder shall be reinstated and revived and the Note Trustee's rights shall continue, with respect to any amount at any time paid on account of the Notes which shall thereafter be required to be restored or returned by the Note Trustee in any Proceeding (including, without limitation, any repayment made pursuant to any provision of Chapter 11 of the Bankruptcy Code, or with respect to any fraudulent transfer or conveyance law), all as though such amount had not been paid. Master Trustee hereby acknowledges that the provisions of this Agreement are intended to be enforceable at all times, whether before or after the commencement of a Proceeding, and hereby waives any right it may have under applicable law to revoke this Agreement or any provisions hereof.

14

**16.**    <u>Applicable Law</u>.  This Agreement shall be governed by and shall be construed and enforced in accordance with the internal laws of the State of California, without regard to conflicts of law principle, but giving effect to federal laws applicable to national banks.

**17.**    <u>CONSENT TO JURISDICTION</u>.  EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS HEREBY CONSENTS TO THE JURISDICTION OF THE STATE COURTS OF THE STATE OF CALIFORNIA AND OF THE FEDERAL COURTS LOCATED IN CALIFORNIA AND IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY BE LITIGATED IN SUCH COURTS. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS HEREBY WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREE THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON IT BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS AT THEIR RESPECTIVE ADDRESSES SET FORTH IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.

**18.**    <u>WAIVER OF JURY TRIAL</u>.  TO THE EXTENT PERMITTED BY LAW, EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS HEREBY WAIVES ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THE NOTE DOCUMENTS AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN ITS RELATED FUTURE DEALINGS. EACH OF THE NOTE TRUSTEE, THE MASTER TRUSTEE, THE CORPORATION AND THE OBLIGORS WARRANTS AND REPRESENTS THAT EACH HAS HAD THE OPPORTUNITY OF REVIEWING THIS JURY WAIVER WITH LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS.

**19.**    <u>NO ORAL AGREEMENTS</u>.  THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS AMONG THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS AMONG THE PARTIES.

*[The Remainder of this Page Intentionally Left Blank]*

15

**VERITY HEALTH SYSTEM OF
CALIFORNIA, INC.,** a nonprofit corporation, on
behalf of itself and each Obligor

By: _____
Ty Conner
Vice President and Treasurer

**IN WITNESS WHEREOF,** the Note Trustee, the Master Trustee, the Corporation and each other Obligor have caused this Agreement to be executed as of the date first above written.

NOTE TRUSTEE:

**U.S. BANK NATIONAL ASSOCIATION**
as Note Trustee

By: _____ Julia Hommel
                                        Vice President
_____
Vice President

*(Signature Page to Intercreditor Agreement)*

**MASTER TRUSTEE:**

**U.S. BANK NATIONAL ASSOCIATION**
as Master Trustee

By: _____

Julia Hommel
Vice President

*(Signature Page to Intercreditor Agreement)*

A notary public or other officer completing
this certificate verifies only the identity of the
individual who signed the document to which
this certificate is attached, and not the
truthfulness, accuracy, or validity of that
document.

STATE *of* CALIFORNIA                        )
                                             ) ss:
COUNTY *of* _San Mateo_                      )

On _12/20/17_, 2017, before me, _Matthew E. Hopper_, Notary Public
personally appeared _Ty H. Comer_, who proved to me on the basis of satisfactory evidence to
be the person whose name is subscribed to the within instrument and acknowledged to me that
she executed the same in his authorized capacity, and that by his or her signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

[Seal]

MATTHEW E. HOPPER
COMM. #2169580
Notary Public - California
San Mateo County
My Comm. Expires Oct. 25, 2020

A notary public or other officer completing
this certificate verifies only the identity of the
individual who signed the document to which
this certificate is attached, and not the
truthfulness, accuracy, or validity of that
document.

STATE *of* CALIFORNIA                    )
                                         )   ss:
COUNTY *of* LOS ANGELES                  )

On December 21, 2017, before me, Reuel Espeleta Doce, Notary Public
personally appeared Julia Hommel, who proved to me on the basis of satisfactory evidence to be
the person whose name are subscribed to the within instrument and acknowledged to me that she
executed the same in her authorized capacity, and that by her signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

[Seal]

> REUEL ESPELETA DOCE
> Commission # 2072580
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jul 23, 2018

> A notary public or other officer completing
> this certificate verifies only the identity of the
> individual who signed the document to which
> this certificate is attached, and not the
> truthfulness, accuracy, or validity of that
> document.

STATE *of* CALIFORNIA                  )
                                       )  ss:
COUNTY *of* LOS ANGELES                )

On December 21, 2017, before me, Reuel Espeleta Doce, Notary Public
personally appeared Julia Hommel, who proved to me on the basis of satisfactory evidence to be
the person whose name are subscribed to the within instrument and acknowledged to me that she
executed the same in her authorized capacity, and that by her signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

[Seal]

> REUEL ESPELETA DOCE
> Commission # 2072580
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jul 23, 2018

099999\6648153v1

**SCHEDULE A**

**<u>OBLIGORS</u>**

Verity Health System of California, Inc. (the "Corporation")

O'Connor Hospital

Saint Louise Regional Hospital

Seton Medical Center

St. Francis Medical Center

St. Vincent Medical Center

## SCHEDULE B

## 2015 LOAN AGREEMENTS

1.)  Loan Agreement dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $60,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015A, as amended by the Amendment to the Loan Agreement dated as of March 2, 2016

2.)  Loan Agreement dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $45,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015B, as amended by the Amendment to the Loan Agreement dated as of March 2, 2016

3.)  Loan Agreement dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $10,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015C (FEDERALLY TAXABLE), as amended by the Amendment to the Loan Agreement dated as of March 2, 2016

4.)  Loan Agreement dated as of December 1, 2015 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $45,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2015D, as amended by the Amendment to the Loan Agreement dated as of March 2, 2016

## 2017 LOAN AGREEMENT

5.)  Loan Agreement dated as of September 1, 2017 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $21,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2017

## 2017B LOAN AGREEMENT

6.)  Loan Agreement dated as of December 1, 2017 between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the $21,000,000 California Public Finance Authority Revenue Notes (Verity Health System) Series 2017B

## SCHEDULE C

## NOTE COLLATERAL

"Note Collateral" means:

(m)     Accounts of:

     St. Francis Medical Center
     St. Vincent Medical Center
     O'Connor Hospital
     Saint Louise Regional Hospital
     Seton Medical Center including Seton Coastside

(q)     Real property located at, and personal property located at, used in connection with or otherwise described in the St. Francis Deeds of Trust and Saint Louise Deed of Trust, respectively, as to the following Property the aggregate Book Value of which Property secured by said Deeds of Trust and created or permitted to exist pursuant to clause (q) of the definition of Permitted Liens shall not exceed 20% of the aggregate Book Value of all Property of the Obligated Group:

St. Francis Medical Center
- 3630 East Imperial Highway, Lynwood, CA
- 2700 E. Slauson Avenue, Huntington Park, CA
- 5953 Atlantic Blvd., Maywood, CA (also known as 5931 and 5957 Atlantic Blvd., including surface parking)

Saint Louise Regional Hospital
- 9400 No Name Uno, Gilroy, CA

C-1

## SCHEDULE D

## MASTER TRUST INDENTURE NOTE OBLIGATIONS

### 2015 MTI Obligations

Master Trust Indenture Obligation No. 16 in the amount of $60,000,000

Master Trust Indenture Obligation No. 17 in the amount of $45,000,000

Master Trust Indenture Obligation No. 18 in the amount of $10,000,000

Master Trust Indenture Obligation No. 19 in the amount of $45,000,000

### 2017 MTI Obligation

Master Trust Indenture Obligation No. 21 in the amount of $21,000,000

### 2017B MTI Obligation

Master Trust Indenture Obligation No. 22 in the amount of $21,000,000

D-1

## SCHEDULE E

## <u>SECURITY AGREEMENTS</u>

1.  Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of O'Connor Hospital, and U.S. Bank National Association, as Trustee, as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

2.  Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of Saint Louise Regional Hospital, and U.S. Bank National Association, as Trustee, as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

3.  Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of Seton Medical Center, and U.S. Bank National Association, as Trustee; as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

4.  Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of Seton Coastside, a division of Seton Medical Center, and U.S. Bank National Association, as Trustee; as assignee under the Loan Agreement between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2017B Notes.

5.  Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of St. Francis Medical Center, and U.S. Bank National Association, as Trustee, as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

6.  Second Amended and Restated Security Agreement dated as of December 1, 2017 between the Corporation, on behalf of St. Vincent Medical Center, and U.S. Bank National Association, as Trustee, as assignee under the Loan Agreements between the California Public Finance Authority and Verity Health System of California, Inc. executed in connection with the Series 2015 Notes, Series 2017 Notes and Series 2017B Notes.

010-8556-9233/4/AMERICAS