# EXHIBIT K

**RECORDING REQUESTED BY:**
Chicago Title Company - C/I
**Order No.:** FWPS-TO17001505

**When Recorded Mail Document To:**

Attn: Robyn Helmlinger, Esq.
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

THIS DOCUMENT HAS BEEN
ELECTRONICALLY RECORDED. SEE
THE ATTACHED COVER PAGE FOR
RECORDING INFORMATION

SECOND AMENDED AND RESTATED DEED OF TRUST WITH FIXTURE FILING AND SECURITY AGREEMENT
AND ASSIGNMENT OF LEASES AND RENTS

**THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**(Additional recording fee applies)**

**RECORDING REQUESTED BY AND**
**WHEN RECORDED RETURN TO:**

Attn: Robyn Helmlinger, Esq.
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

This document is exempt from filing fees under California Government Code § 6103 and § 27383.
No documentary transfer tax per California Revenue and Taxation Code § 11921.

Property Address: 9400 No Name Uno, Gilroy, CA

APN: 835-05-031 and 835-05-032

## SECOND AMENDED AND RESTATED DEED OF TRUST WITH FIXTURE FILING AND SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

This SECOND AMENDED AND RESTATED DEED OF TRUST WITH FIXTURE FILING AND SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (the **"Deed of Trust"**) made as of December 14, 2015, recorded as Instrument Number 23173256 on December 16, 2015 at 8:00 a.m., amended and restated as of September 15, 2017, recorded as Instrument Number 23755466 on September 18, 2017 at 8:00am, and amended and restated as of December 28, 2017, by SAINT LOUISE REGIONAL HOSPITAL, a California nonprofit public benefit corporation (the **"Trustor"**), to CHICAGO TITLE INSURANCE COMPANY (the **"Trustee"**), as trustee hereunder for the benefit of U.S. BANK NATIONAL ASSOCIATION, a national banking association duly organized and existing under the laws of the United States of America (the **"Beneficiary"**), in the capacity as trustee under those four certain indentures by and between the California Public Finance Authority (the **"Authority"**) and the Beneficiary as such trustee dated as of December 1, 2015 (collectively, as amended, modified, and amended and restated from time to time, the **"2015 Indentures"**) relating to four separate note issuances in the respective amounts of $60,000,000 (the **"Series 2015A Notes"**); $45,000,000 (the **"Series 2015B Notes"**); $10,000,000 (the **"Series 2015C Notes"**); and $45,000,000 (the **"Series 2015D Notes"**); and that certain indenture by and between the Authority and the Beneficiary as such trustee, dated as of September 1, 2017 (the **"2017 Indenture"**), relating to the note issuance in the amount of $21,000,000 (as amended, modified, and amended and restated from time to time, the **"Series 2017 Notes"**); and that certain indenture by and between the Authority and the Beneficiary as such trustee, dated as of December 1, 2017 (as amended, modified, and amended and restated from time to time, the **"2017B Indenture"** and together with the 2017 Indenture and the 2015 Indentures, the **"Indentures"**), relating to a note issuance in the aggregate amount of $21,000,000 (the **"Series 2017B Notes"**). This Deed of Trust also secures the payment and other obligations of Verity

Health System of California, Inc. (the **"Corporation"**), the Trustor's sole member, the Trustor and the Trustor's affiliates that are members of the Obligated Group under the Master Indenture (defined below) under and with respect to the four Loan Agreements dated as of December 1, 2015 and the Loan Agreement dated as of December 1, 2017, each between the Authority and the Corporation pursuant to which the Authority has loaned to the Corporation the proceeds of the Notes (collectively, as amended, modified, and amended and restated from time to time, the **"Loan Agreements"**); the Authority's rights under the Loan Agreements have been assigned by the Authority to the Beneficiary in its capacity as trustee for the Notes.

## THIS DEED OF TRUST WITNESSETH:

Section 1.    **<u>Grant in Trust</u>**

Subject to the terms and conditions contained in that certain Amended and Restated Intercreditor Agreement dated as of December 1, 2017 (the "Intercreditor Agreement") by and among the Beneficiary, in its respective capacities as Master Trustee (as defined below) and as trustee under the Indentures, and the Corporation, the Trustor irrevocably grants, transfers and absolutely, unconditionally and irrevocably assigns to the Beneficiary, in trust, with power of sale and right of entry and possession, the entire right, title and interest of Trustor in and to that certain real property (**"Land"**) situated in Santa Clara County, State of California (the **"County"**), and more particularly described in **Exhibit A** attached hereto and made a part hereof, all right, title and interest that the Trustor otherwise now has or may hereafter acquire in the Land, together with all right, title and interest that the Trustor now has or may hereafter acquire in:

(i)    All buildings, structures, improvements, fixtures, equipment and appurtenances now and hereafter owned, constructed, located, erected, installed or affixed by or on behalf of the Trustor upon or appurtenant to the Land and all replacements and substitutions therefor (**"Facilities"**);

(ii)    All appurtenances, improvements, easements, pipes, transmission lines or wires and other rights used in connection with the Land or as a means of access thereto, whether now or hereafter owned or constructed or placed upon or in the Land or Facilities (**"Appurtenances"**);

(iii)    All equipment, machinery, goods and other personal property of the Trustor, whether movable or not, if the same is (a) now owned or hereafter acquired by the Trustor, (b) now or hereafter located at or used in connection with the Facilities, (c) financed with the proceeds of Obligations or (d) obtained in order to satisfy the obligations of the Corporation or any other obligor under or with respect to the Indentures or the Loan Agreements, and all improvements, restorations, replacements, repairs, additions, accessions or substitutions thereto or therefor, including, without limitation, all machinery, equipment, material, furnishings and appliances for generation or distribution of air, water, heat, electricity, light, fuel or refrigeration, for purposes of ventilation, sanitation or drainage, for exclusion of vermin or insects, for removal or disposal of dust, refuse or garbage; all elevators, awnings, window coverings, floor covering, laundry equipment, kitchen equipment, cabinets, furniture and furnishings; all fixed and

2

moveable equipment now or hereafter installed or placed upon or in the Land or Facilities for use in health care, treatment, diagnosis and services or for other health care uses; the products and proceeds from any and all such property; all the estate, interest, right, title, property or other claim or demand of every nature whatsoever, in and to such property, including specifically, but without limitation, all deposits made with or other security given to utility companies by the Trustor with respect to such property and claims or demands relating to insurance or condemnation awards which the Trustor now has or may hereafter acquire ("**Equipment**");

(iv)    All leases, subleases, licenses, occupancy agreements and tenancies of any kind with respect to the Land, Facilities, Appurtenances and Equipment (collectively, the "**Leases**");

(v)    All rentals or other payments which may now or hereafter accrue or otherwise become payable under the Leases to or for the benefit of the Trustor together with all other income, rents, revenues, issues, profits, lease guarantees, letters of credit, reserves and royalties produced by the Land, Facilities, Appurtenances and Equipment or by all management or service contracts or other contracts affecting the Property, including but not limited to security deposits (collectively, the "**Rents**");

(vi)    All earnings, products, damages, indemnifications, insurance proceeds and any other proceeds from any and all of such Land, Facilities, Appurtenances, Equipment, Inventory (defined below), Leases and Rents including specifically, but without limitation, all deposits made with or other security given to utility companies and claims or demands relating to insurance or condemnation awards which the Trustor now has or may hereafter acquire, including all advance payments of insurance premiums made by the Trustor with respect thereto ("**Proceeds**"); and

(vii)    All right, title and. interest of the Trustor in all the Trustor's inventory, raw materials, work in process, finished goods and goods held for sale or lease or furnished under contracts of service, and all returned and repossessed goods, and all goods covered by documents of title, including warehouse receipts, bills of lading and all other documents of every type covering all or any part of the Property, now owned or hereafter acquired, whether held by the Trustor or any third party, which is located on, appurtenant to, relating to, or used by or useful in connection with the Property ("**Inventory**").

All of the above referenced Land, Facilities, Appurtenances, Equipment, Leases, Rents, Proceeds and Inventory as hereby conveyed to the Trustee or made subject to the security interest herein described is collectively referred to herein as the "**Property**".

Pursuant to a master indenture of trust, dated as of December 1, 2001 (as may be amended, modified and supplemented, from time to time, the "**Master Indenture**"), between the Corporation, which is the sole corporate member of O'Connor Hospital, Saint Louise Regional Hospital, Seton Medical Center, St. Francis Medical Center and St. Vincent Medical Center, each a California nonprofit religious corporation, and U.S. Bank National Association, a national banking association duly organized and existing under the laws of the United States of America,

3

as master trustee (the **"Master Trustee"**), and supplemental master indentures for Obligation Nos. 16, 17, 18 and 19 dated as of December 1, 2015, a supplemental master indenture for Obligation No. 21, dated as of September 1, 2017, and a supplemental master indenture for Obligation No. 22, dated as of December 1, 2017, each between the Corporation, as Obligated Group Representative, and the Master Trustee, the Corporation has issued its Obligation Nos. 16, 17, 18, 19, 21, and 22 to evidence the obligation of the Members (each as defined in the Master Indenture) to make payments sufficient to pay the principal of and interest on, and mandatory purchase price (if applicable) with respect to, the Series 2015A Notes, the Series 2015B Notes, the Series 2015C Notes, the Series 2015D Notes, the Series 2017 Notes, and Series 2017B Notes.

At the time that this Deed of Trust is recorded in the County but subsequent thereto, a separate subordination agreement of even date herewith by and between the Master Trustee and the Trustor (the **"Subordination Agreement"**) will be recorded as well. It is the intent of the parties to the Subordination Agreement that this Deed of Trust, when recorded in the County, shall be deemed to be a lien that is prior in right and time of payment to any deed of trust lien or lien on personal property or fixtures that are currently held by the Master Trustee under the Master Indenture. The Subordination Agreement is intended to provide that the lien of this Deed of Trust and any security interests granted under a separate agreement, will be all that is required to effectuate the superiority of the lien hereof over and above the lien of the deed of trust held by the Master Trustee which currently is a first lien on the Property. It is the further intent of the parties hereto, as well as the Master Trustee, that the Subordination Agreement will be in full force and effect as to any the security that is to be given for all four series of the Notes regardless of the dates that any of the series are actually closed and funded.

The Subordination Agreement is and shall continue to be subject to the provisions of the Intercreditor Agreement.

### FOR THE PURPOSE OF SECURING:

Section 2.    **Obligations**

(a)    Payment of all Loan Repayments (as such term is defined in the Indentures) and other payments required under the Loan Agreements, including without limitation payment of the purchase price of Notes subject to mandatory purchase pursuant to the terms of the Indenture;

(b)    Performance of each and every obligation, covenant and agreement of the Corporation, Trustor, and the Trustor's affiliates that are members of the Obligated Group under the. Master Indenture, contained in the Loan Agreements and payment of all amounts due to the Trustee under the Indentures; and

(c)    Performance of each and every obligation, covenant and agreement of the Trustor contained in this Deed of Trust.

The foregoing obligations are hereinafter sometimes referred to as the **"Deed of Trust Obligations"**.

4

## THIS DEED OF TRUST FURTHER WITNESSETH:

Section 3.    **Security Agreement and Fixture Filing**

This Deed of Trust shall also constitute a security agreement and the Trustor hereby pledges and grants to the Beneficiary a security interest in and to all of the Property not constituting real property under the laws of the State of California (**"Personal Property"**), whether Trustor now or hereafter obtains an interest in such Personal Property and all the proceeds or products thereof, including but not limited to all of those items listed in **Exhibit B** attached hereto and made a part hereof. Upon any Event of Default of the Trustor hereunder, the Beneficiary shall be entitled to exercise with respect to all such collateral all of the rights and remedies set forth herein, in the Indentures or Loan. Agreements or otherwise afforded to a secured party in default under the terms of Division 9 of the California Uniform Commercial Code, any or all of which may be pursued and exercised concurrently, consecutively, alternatively or otherwise. The Trustor will execute one or more supplemental security agreements and cause to be completed and filed or the Beneficiary may cause to be completed and filed such financing statements as the Beneficiary may from time to time require, covering any property now or hereafter constituting a portion of the Property and otherwise the collateral securing the indebtedness secured hereunder and such financing statements and other and further assurances as the Beneficiary may request to perfect or evidence the security interest herein created (which shall cover all proceeds and products of collateral), including but not limited to, UCC-1 Financing Statements (which shall contain the description of collateral attached as **Exhibit B**) and UCC Continuation Statements.

The Trustor will pay all costs of filing any financing, continuation or termination statements with respect to the security interest created by this Deed of Trust; and the Beneficiary is hereby appointed the Trustor's attorney-in-fact to do, at the Beneficiary's option and at the Trustor's expense, all acts and things which the Beneficiary may deem necessary to perfect and continue perfected the security interest created by this Deed of Trust and to protect the Property. The Beneficiary may execute, sign, endorse, transfer or deliver, in the name of the Trustor, notes, checks, drafts or other instruments for the payment of money and receipts, certificates of origin, certificates of title, applications for certificates of title, or any other documents necessary to evidence, perfect or realize upon the security interests and secured indebtedness created or secured by this Deed of Trust, this authority shall be considered a power coupled with an interest and shall be irrevocable until all the indebtedness secured hereby shall have been paid in full.

This Deed of Trust constitutes a Financing Statement filed as a fixture filing in the Official Records of the County Recorder of the County in which the property is located with respect to any and all Fixtures (as defined by the Uniform Commercial Code), included within the term "Property" as used in this Deed of Trust and with respect to any goods or other Personal Property that may now be or hereafter become such Fixtures. The address of Beneficiary, from which information concerning the security interest granted hereunder may be obtained is:

U.S. Bank National Association
633 W 5th Street, 24th Floor
Los Angeles, CA 90071

All references in this Deed of Trust to Uniform Commercial Code shall be to the Uniform Commercial Code, as enacted in the State of California.

Section 4.    **Absolute Assignment; Assignment of Leases and Rents**

The Trustor hereby absolutely, unconditionally and irrevocably assigns to the Beneficiary the Leases and the absolute right to collect the Rents. The Beneficiary authorizes the Trustor, prior to any default in the payment of any indebtedness secured hereby or in the performance of any covenant or obligation hereunder without notice, to collect and use all such Rents as they become due and payable and to exercise all rights under the Leases if not otherwise restricted under the Indentures or Loan Agreements. The foregoing assignment shall not impose upon the Beneficiary any duty to produce Rents from the Property or cause the Beneficiary to be a "mortgagee in possession" for any purpose.

Except as otherwise permitted under the Indentures or Loan Agreements, the Trustor agrees that it will not amend, modify, change or waive, or consent to any amendment, modification, change or waiver of, any term or provision of the Leases without the prior written consent of the Beneficiary.

The Trustor agrees that it will take all steps and do all things necessary to keep and maintain the Leases in full force and effect and will enforce or cause to be enforced all and singular the provisions thereof, and bring and prosecute or cause to be prosecuted any and all suits, actions and proceedings necessary to enforce compliance with all of the terms, provisions and covenants thereof. If, in the reasonable opinion of the Beneficiary, the Trustor has failed, or is about to fail, to take suitable action to enforce the Leases or any guaranty thereof or to first preserve any rights or remedies thereunder, the Beneficiary, after giving five (5) days' written notice to the Trustor, may, but is not required to, take such action as it shall deem appropriate, in its own name or in the name of the Trustor for the use and benefit of the Beneficiary, to enforce the Leases and to preserve any rights or remedies thereunder, and all costs and expenses incurred by the Beneficiary in taking any such action, shall be payable on demand and shall constitute part of the secured indebtedness hereunder.

Section 5.    **Events of Default and Acceleration**

(a)    Event of Default. An "Event of Default" under this Deed of Trust shall mean (i) a default in the payment of any of the Deed of Trust Obligations as same becomes due and payable after any applicable notice and cure period, as set forth in the agreement creating the applicable obligation, (ii) failure to observe or perform any other terms, covenants or agreements under this Deed of Trust beyond any applicable notice and cure periods set forth elsewhere herein (and, if no specific cure period or time for performance is specified elsewhere herein, a notice and cure period of twenty (20) days shall apply), or the breach of any representation or warranty of Trustor hereunder, and (iii) the occurrence of an "Event of Default" under, and as defined in, the Indentures and the Loan Agreements including any amendments, modifications and supplements thereto, from time to time.

(b)    Acceleration. In the event of any Event of Default under this Deed of Trust or under any other agreements secured hereby, the Beneficiary shall have the option of

6

declaring the unpaid balance owing under the Indentures or Loan Agreements and any other sums secured hereby immediately due and payable as provided in the Indentures or Loan Agreements.

Section 6.    **Covenants of the Trustor**

For the purpose of protecting and preserving the security of this Deed of Trust, the Trustor promises and agrees to do the following:

(a)    (1)    to take all action necessary to keep the Property at all times entirely free of dry rot, fungus, termites, beetles and all other wood-boring, wood-eating, harmful or destructive insects, and in all respects properly to care for and keep all of the Property, including all such buildings, structures and other improvements, in good condition and repair, ordinary wear and tear excepted;

(2)    to complete promptly and in good and businesslike manner any building or other improvements which may be constructed on the Land, to promptly restore in like manner (to the extent permitted by law) any Facilities which may be damaged or destroyed thereon, and to pay when due all claims for labor performed and materials furnished therefor, provided that the Trustor shall not be required to pay any such claim if it shall in good faith contest the validity thereof and, if so contested, shall provide for the payment thereof in a manner reasonably satisfactory to the Trustee;

(3)    to comply with all laws, ordinances, regulations, conditions and restrictions now or hereafter affecting the Property or any part thereof or requiring any alterations or improvements to be made thereon, including without limitation any environmental law;

(4)    not to commit or permit (to the extent within its control) any waste, and not to permit any deterioration of, nor abandon, the Property;

(5)    not to commit, suffer or permit (to the extent within its control) any act to be done in or upon the Property in violation of any law or ordinance if such act might have consequences that would adversely affect the financial condition, assets, properties or operation of the Trustor;

(6)    not to cause nor permit (to the extent within its control) any building, structure or improvement or other property now or hereafter covered by the lien of this Deed of Trust and comprising part of the Property to be removed or demolished or structurally changed or altered, except as permitted hereunder or under the Indentures, the Loan Agreements, or any other agreements secured hereby (including any amendments, modifications and supplements thereto, from time to time), in whole or in part, or any fixture comprising part of the Property to be removed, severed or destroyed, without the prior written consent of the Beneficiary and the Trustee. Simultaneously with, or prior to, any such permitted removal, any such fixtures shall be replaced with other fixtures to perform the function of the fixtures removed and of a value at least equal to that of the fixtures replaced and free from any title retention or security agreement or other encumbrance. By such removal and replacement, the Trustor shall be deemed to have subjected such fixtures to the lien of this Deed of Trust;

7

(7)    except in the necessary and ordinary course of its business not, without the prior written consent of the Beneficiary and Trustee, to enter into any lease, license or tenancy of any kind for the whole or any material part of the Property. All such leases, licenses or tenancies entered into hereafter shall be subordinate to this Deed of Trust and shall, at the written request of Beneficiary, contain a covenant on the part of the tenant, enforceable by Beneficiary, obligating such tenant, upon an uncured Event of Default hereunder and notice by Beneficiary, to attorn to and become a tenant of Beneficiary or any purchaser from Trustee or through foreclosure of this Deed of Trust, for the unexpired term of, and subject to the terms and conditions of, such future lease agreements and shall require tenant to enter into agreements with Beneficiary to affirm such obligations of tenant.

(b)    to provide and maintain casualty and any other Insurance as required by the Loan Agreements and the Master Indenture, which insurance shall provide for the Trustee to be the loss payee;

(c)    to appear in and defend any action or proceeding affecting or purporting to affect the security or the first priority lien of this Deed of Trust, any additional or other security for any of the Deed of Trust Obligations secured hereby, or the interest, rights, powers, or duties of the Trustee or the Beneficiary hereunder, it being agreed, however, that in the case of an action or proceeding against the Trustee or the Beneficiary, said Trustee or Beneficiary, at its option, may appear in and defend any such action or proceeding and, in addition, it being agreed that the Trustee or Beneficiary may commence any action or proceeding deemed necessary by it to perfect, maintain or protect such interest, rights, powers or duties, all in such manner and to such extent as it may determine in its sole discretion to be appropriate, and the Trustee or Beneficiary is authorized to pay, purchase or compromise on behalf of the Trustor any encumbrance or claim which in its judgment appears or purports to affect the security hereof or to be superior hereto; to pay all costs and expenses, including costs of evidence of title and attorney's fees in a reasonable sum, in any above-described action or proceedings in which the Beneficiary or the Trustee may appear;

(d)    (1)    to pay, and submit to the Beneficiary, at least five (5) days before default or delinquency, a receipt or other evidence of payment, or certified copy thereof, evidencing payment of all taxes and assessments affecting the Property, and any accrued interest, cost or penalty thereon, provided that the Trustor shall not be required to pay any such tax or assessment if it shall in good faith contest the validity thereof and, if so contested, shall provide for the payment thereof in a manner reasonably satisfactory to the Beneficiary;

(2)    to pay when due all encumbrances (including any debt secured by deed of trust), ground rents, liens or charges, with interest, on the Property or any part thereof which appear to be prior or superior hereto, and to pay immediately and in full all such encumbrances, rents, liens or charges, if any, which may now be due or payable; provided that the Trustor shall not be required to pay any such encumbrances, rent, lien or charge if it shall in good faith contest the validity thereof and, if so contested, shall provide for the payment thereof in manner satisfactory to the Beneficiary;

(3)    to pay when due all costs, fees and expenses of these trusts, including costs of evidence of title and the Trustee's fees in connection with sale, whether

8

completed or not, which amounts shall become due upon delivery to the Trustee of declaration of default and demand for sale, as hereinafter provided;

       (e)    to pay immediately and without demand all reasonable and necessary sums expended or expense incurred by the Trustee or by the Beneficiary to enforce the terms of the Trust, including attorneys' fees, under any of the terms of this Deed of Trust, with interest from date of expenditure at the rate of ten percent (10%) per annum; and

       (f)    (1)    to ensure that the Property shall be and remain in full compliance with all Federal, State and local environmental, health, safety and welfare laws and regulations, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), Public Law No. 96-510, 94 Stat. 2767, and the Superfund Amendments and Reauthorization Act of 1986 (SARA), Public Law No. 99-499, 100 Stat, 1613 ("Environmental Laws");

       (2)    to operate, and use commercially reasonable efforts to cause any of its tenants or occupants to operate, the Property in compliance with all Environmental Laws and further will not generate, manufacture, refine, produce, store, handle, transfer, process, transport or dispose of hazardous substances (as defined by CERCLA), as now in effect or as hereafter from time to time may be amended), Hazardous Wastes (as defined by the Resource Conservation and Recovery Act (RCRA), 42 U.S.C.A. § 6903(5), as now in effect or as hereafter from time to time may be amended), oils, radioactive materials, asbestos in any form or condition, or any pollutant or contaminant or hazardous, dangerous or toxic chemicals, materials or substances within the meaning of any other Environmental Laws, regulation, ordinance or requirements relating to or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance or materials, all as now in effect or hereafter from time to time may be amended (all of which are hereafter collectively referred to as "Hazardous Substances"), except to the extent required for the usual and lawful operation of the Property, and then strictly in accordance with Environmental Laws.

Section 7.    **Acceptance Not Waiver**

       By accepting payment of any sum secured hereby after its due date, neither the Trustee nor the Beneficiary shall be deemed to have waived its right either to require prompt payment when due of all other sums so secured or to declare default as herein provided for failure so to pay.

Section 8.    **Conveyance, Easements, Subordination, Releases**

9

To the extent expressly permitted under the Indentures or the Loan Agreements, at any time, or from time to time, upon written request by the Beneficiary or Trustor, upon presentation of this Deed of Trust, and without affecting the liability of any Person for payment of the indebtedness secured hereby or the priority of lien created by this Deed of Trust upon the remainder of the Property, the Trustee shall reconvey any part of the Property, consent in writing to the making of any map or plat thereof, execute releases, join in granting any easement thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof.

Section 9.   **Right of Entry for Inspection**

The Trustee and the Beneficiary are each authorized, by themselves or their agents or workers, in a reasonable manner such as not to interfere with the Trustor's business in a materially adverse manner and, prior to an Event of Default, after giving notice to enter during reasonable business hours (or at any other time agreeable to the Trustor) to enter upon any part of the Property for the purpose of inspecting the same.

Section 10.   **Entry, Possession, Operation of Property**

(a)   Upon the occurrence of an Event of Default, the Trustee or the Beneficiary, in its sole discretion, and without releasing the Trustor from any obligation hereof, is authorized to do and may do any of the following:

(1)   make any such payment or do any such act in such manner and to such extent as it may deem necessary to protect the security hereof, the Trustee and the Beneficiary being authorized to enter upon the Property for such purposes;

(2)   pay, purchase, contest or compromise any claim, debt, lien, charge or encumbrance which in the judgment of the Trustee or the Beneficiary may affect or appear to affect the security of this Deed of Trust, the interest of the Beneficiary or the rights, powers or duties of the Trustee or the Beneficiary hereunder;

(3)   either by itself or by its agents, receiver, commissioner or other officer appointed by it for that purpose, enter into and upon and take and hold possession of any or all of the Property, exclude the Trustor and all other persons therefrom, and operate, store, use, maintain and manage the Property, and rent and lease the same and collect any and all rents, issues, income and profits therefrom, and from time to time apply the same or accumulate the same for application, in such order and manner as the Trustee or the Beneficiary in its sole discretion shall consider advisable, to the following: costs of collecting the same, including the Trustee's reasonable fees in so doing; the necessary and proper costs of upkeep, maintenance, repair, and operation of the Property; the repayment of any sums theretofore or thereafter advanced pursuant to the terms of this Deed of Trust; the interest and principal then due or next to become due upon any Deed of Trust Obligations; and the taxes and assessments upon the Property then due or next to become due.  In the event the Trustee or the Beneficiary demands or attempts to take possession of the Property in the exercise of any rights under any of this Deed of Trust, the Trustor promises and agrees to promptly turn over and deliver complete possession thereof to the Trustee and the Beneficiary;

10

010-8556-9261/3/AMERICAS

(4)    commence an action to foreclose this Deed of Trust (either judicially or non-judicially, in accordance with law), appoint a receiver, specifically enforce any of the covenants hereof, or sell the Property pursuant to the power of sale herein conferred either personally or by means of a court appointed receiver;

(5)    exercise any other rights or remedies which may now or hereafter be available to the Trustee or Beneficiary under this Deed of Trust, the Indentures, the Loan Agreements or any other document or instrument, or at law, in equity or by statute.

(b)    The collection or receipt of Rents from the Property by the Trustee or the Beneficiary after declaration of default and election to cause the Property to be sold under and pursuant to the terms of this Deed of Trust shall not affect or impair such default or declaration of default or election to cause the Property to be sold or any sale proceedings predicated thereon, but such proceedings may be conducted and sale effected notwithstanding the receipt or collection of any such Rents. Any such Rents in the possession of the Trustee or the Beneficiary at the time of sale and not theretofore applied as herein provided, shall be applied in the same manner and for the same purposes as the proceeds of the sale.

(c)    The Trustee and the Beneficiary shall not be under any obligation to make any of the payments or do any of the acts above mentioned, but, upon election so to do, employment of an attorney is authorized and payment of such attorney's fees and of all other necessary expenditures is hereby secured.

(d)    No remedy herein conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy given hereunder. Every power or remedy given by this Deed of Trust, the Indentures and the Loan Agreements to the Trustee and the Beneficiary, or to which the Trustee and the Beneficiary may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Trustee and the Beneficiary. No delay by Trustee or Beneficiary in exercising any such right or remedy shall operate as a waiver of any Event of Default or preclude the exercise of any such remedy during the continuance of that or any subsequent Event of Default.

Section 11.    **Power of Sale**

(a)    Should an Event of Default have occurred and be continuing, the Trustee, upon written request by the Beneficiary, shall declare all sums secured hereby immediately due and payable.

(b)    Having so declared, the Trustee shall provide and record such notices of default and of the election to cause the Property or any part of it to be sold as are required by law.

(c)    The Trustee, upon written request by the Beneficiary, from time to time before the Trustee's sale, may rescind any such notice of default and of election to cause to be sold the Property and may execute a written notice of such a rescission, which notice, when recorded, shall also constitute a cancellation of arty prior declaration of default and demand for sale. The exercise of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring or impair the right of the Beneficiary to execute

11

and deliver to the Trustee, as above provided, other requests for notices of default and of election to cause to be sold the Property to satisfy the Deed of Trust Obligations, nor otherwise affect any provision, covenant or condition of this Deed of Trust or any of the rights, obligations or remedies of the parties hereunder.

(d)     Not less than the time then required by law having elapsed after recordation of notice of default, without demand on the Trustor, the Trustee, having first given notice of sale as then required by law, shall sell the Property in the manner provided by law at the time and place of sale fixed by it in the notice of sale, provided that the Trustee may postpone sale of all or any portion of the Property in the manner provided by law,

(e)     The Trustee shall deliver to the purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied, and the recitals in such deed of any matters or facts affecting the regularity or validity of the sale shall be conclusive proof of the truthfulness thereof. Also, such deed shall be conclusive against all persons as to all matters or facts therein recited. Any person, including the Trustor, the Trustee and the Beneficiary, may purchase at such sale.

(f)     The Trustee shall apply the proceeds of any such sale to payment of (1) all costs, fees, charges and expenses of the Trustee and of these trusts, and fees of any attorneys employed by the Trustee or the Beneficiary pursuant to the provisions hereof; (2) the Trustee's fees in connection with the sale, and all expenses of sale, including the cost of procuring evidence of title in connection with the sale proceedings and revenue stamps on the Trustee's deed; and (3) all other sums secured hereby, including interest on each of the foregoing items, all in such manner and order of priority or preference as the Beneficiary may in its sole and absolute discretion direct. The remainder, if any, of such proceeds, shall be paid to the person or persons legally entitled thereto, upon proof satisfactory to the Trustee of such right.

(g)     Trustor waives, to the extent permitted by law, (i) the benefit of all present and future laws providing for any appraisement before sale of any portion of the Property, and (ii) all rights of redemption, valuation, stay of execution, notice of election to mature or declare due the Deed of Trust Obligations, and marshaling in the event of foreclosure of this Deed of Trust or exercise of the power of sale herein, including any rights under California Civil Code Sections 2899 and 3433.

Section 12.    **Satisfaction and Reconveyance**

Upon written request of the Beneficiary stating that all sums secured hereby have been paid, and upon surrender to the Trustee of this Deed of Trust and upon payment of its fees, the Trustee shall reconvey and release, without warranty, the Property, it being further agreed that the recitals in such reconveyance and release of any matters or facts shall be conclusive proof of the truthfulness thereof and that the grantee in any reconveyance may be described as "the person or persons legally entitled thereto."

Section 13.    **Additional Security**

The Trustee shall be entitled to enforce payment and performance of any indebtedness or Deed of Trust Obligations and to exercise all rights and powers under this Deed

12

of Trust or under any other agreement or any laws now or hereafter in force, notwithstanding that some or all of the indebtedness and obligations secured hereby are now or shall hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise; and neither the acceptance of this Deed of Trust nor its enforcement, whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect the Trustee's or the Beneficiary's right to realize upon or enforce any other security now or hereafter held by the Trustee or the Beneficiary, it being agreed either that the Trustee or the Beneficiary shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by the Beneficiary or the Trustee in such order and manner as it may in its uncontrolled discretion determine.

Section 14.    **Notice of Actions**

The Trustee shall be under no obligation to notify any party hereto of any action or proceeding of any kind in which the Trustor, the Beneficiary or the Trustee shall be a party, unless brought by the Trustee, or of any pending sale under any other deed of trust.

Section 15.    **Waiver of Statute of Limitations**

The right to plead any and all statutes of limitations as a defense to any demand secured by this Deed of Trust is hereby waived.

Section 16.    **Irrevocable by the Trustor**

The trust created hereby is irrevocable by the Trustor until the Deed of Trust Obligations are paid in full.

Section 17.    **Substitution of Trustee**

The Beneficiary may substitute a successor Trustee from time to time by recording at the places required by law an instrument stating the election by the Beneficiary to make such substitution and identifying this Deed of Trust.

Section 18.    **Notices**

All notices, requests or communications required or permitted to be given in this Deed of Trust, including any notice of default and any notice of sale to the Trustor under this Deed of Trust, shall be in writing and mailed or delivered to the respective party as follows:

Trustor:                    SAINT LOUISE REGIONAL HOSPITAL
                            c/o Verity Health System of California, Inc.
                            203 Redwood Shores Parkway, Suite 800
                            Redwood City, California 94065
                            Attention: Vice President and Treasurer

                            with a copy to:
                            Gary F. Torrell, Esq,
                            Valensi Rose, PLC

13

1888 Century Park East, Suite 1100
Los Angeles, California 90067

and with a copy to:
Robyn Helmlinger, Esq.
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Trustee:                CHICAGO TITLE INSURANCE COMPANY
                        725 S. Figueroa Street, Suite 200
                        Los Angeles, California 90017

Beneficiary:            U.S. Bank National Association
                        633 W 5th Street, 24th Floor
                        Los Angeles, CA 90071

                        with a copy to:
                        Len Weiser-Varon, Esq.
                        Mintz Levin Cohn Ferris Glovsky and Popeo PC
                        One Financial Center
                        Boston, MA 02111

The Trustor, the Trustee and the Beneficiary may, by notice given hereunder, designate any further or different address to which subsequent notices, notice of default, notice of sale, statements and other communications shall be sent.

Section 19.    **Successors Round**

This Deed of Trust shall be binding upon, and shall inure to, the respective parties hereto, the Beneficiary, and their legal representatives, successors in office or interest, and their permitted assigns.

Section 20.    **Severability of Invalid Provisions**

If any provision of this Deed of Trust should be held unenforceable or void, in whole or in part, then such unenforceable or void provision or part shall be deemed separable from the remaining provisions and shall in no way affect the validity of the remainder of this Deed of Trust.

Section 21.    **Releases or Reconveyances**

Without affecting the liability of any other person liable for the payment of any obligation herein mentioned, and without affecting the lien or charge of this Deed of Trust upon any property not then or theretofore released as security for the full amount of all unpaid Deed of Trust Obligations, the Trustee may, upon written request by the Beneficiary in accordance with the Indentures, from time to time, and without notice to the Trustor, release any person other than the Trustor so liable, extend the maturity or alter any of the terms of any such obligation, or

14

grant other indulgences, release or reconvey, or cause to be released or reconveyed, any portion or all of the Property, release any other or additional security for any obligation herein mentioned, or make compositions or other arrangements with debtors in relation thereto; and if the Trustee at any time holds any additional security for any Deed of Trust Obligations secured hereby, it may enforce the sale thereof or otherwise realize upon the same at its option, either before or concurrently herewith or after a sale is made hereunder.

Section 22.  **Further Acts**

Trustor will, at the cost of Trustor, and without expense to Trustee or Beneficiary, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Trustee and Beneficiary shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming the first priority lien, property and rights hereby deeded, mortgaged, given, granted, bargained, sold, alienated, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Trustor may be or may hereafter become bound to convey or assign to Beneficiary, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust.  Notwithstanding the foregoing, the Trustor shall not be required to execute or deliver any of the foregoing documents if any such documents has the effect of increasing the liabilities and/or obligations of the Trustor under this Deed of Trust and/or effectively causing an amendment to this Deed of Trust which increases the monetary obligations of the Trustor beyond those which are originally set forth herein.

Trustor agrees to pay all costs and expenses (including, without limitation, reasonable legal fees) of Trustee and Beneficiary in connection with any amendments or modifications of this Deed of Trust, or in connection with the confirmation, perfection and/or protection of the security interests granted hereby or thereby, as well as the costs and expenses (including, without limitation, the reasonable fees and out-of-pocket expenses of legal counsel) incurred by the Trustee and Beneficiary in connection with interpreting, preserving, enforcing or exercising any rights or remedies under this Deed of Trust, all whether or not legal action is instituted, which shall be payable on demand and shall constitute part of the secured indebtedness hereunder.

Section 23.  **Priority of Lien**

It is understood and agreed that the lien of this Deed of Trust is a first lien on the fee simple interest of the Property.  Trustor shall not grant nor permit any additional lien against the Property, except to the extent expressly permitted by the Master Indenture or the Indentures, or the Loan Agreements or any other agreements secured hereby (including any amendments, modifications and supplements thereto, from time to time), and in any event Trustor, shall ensure that no lien, right or interest shall be issued against the Property that is senior or of equal priority to the first priority lien set forth in this Deed of Trust.

15

Section 24.    **Readings and References**

      The headings or titles of the several sections, subsections and subdivisions hereof shall be solely for convenience of reference and shall not affect the meaning, construction or effect of this Deed of Trust.    All references herein to "sections," "subsections" and other subdivisions are to the corresponding sections, subsections or subdivisions of this Deed of Trust. The words "herein," "hereof," "hereby," "hereunder" and other words of similar import refer to this Deed of Trust as a whole and not to any particular section, subsection or subdivision hereof. Words of the masculine gender shall mean and include words of the feminine and neuter genders.

Section 25.    **Governing Law**

      The internal laws of the State of California shall govern this Deed of Trust, the interpretation thereof and any right or liability arising hereunder without regard to conflict of laws provisions.

Section 26.    **Attorney's Fees**

      In the event of any action at law or in equity between the parties hereto to interpret or enforce any of the provisions of this Deed of Trust, the nonprevailing party or parties to such litigation shall pay to the prevailing party or parties all costs and expenses, including actual attorney's fees incurred therein by such prevailing party or parties; and if such prevailing party or parties shall recover judgment in any such action or proceeding, such costs, expenses and attorney's fees may be included in and as part of such judgment. The prevailing party shall be the party who is entitled to recover its costs of suit, whether or not the suit proceeds to final judgment. A party not entitled to recover its costs of suit shall not recover attorney's fees.

[Signature on following page]

010-8556-9261/3/AMERICAS

**IN WITNESS WHEREOF**, Trustor has executed this Deed of Trust under seal on the day and year first above written above.

**SAINT LOUISE REGIONAL HOSPITAL,**
a California nonprofit public benefit corporation

By: Verity Health System of California, Inc., a California nonprofit public benefit corporation, as sole member of Saint Louise Regional Hospital

By: _____

Name: Ty Conner

Title:   Vice President and Treasurer

# CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California    )

County of *San Mateo*    )

On 12/20/17 before me, *Matthew E. Hopper, Notary Public*,

(here insert name and title of the officer)

personally appeared *Ty H. Conner*

_____ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

**MATTHEW E. HOPPER**
COMM. #2169580
Notary Public - California
San Mateo County
My Comm. Expires Oct. 25, 2020

(Seal)

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

### Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of _____

_____ ,

containing _____ pages, and dated _____ .

The signer(s) capacity or authority is/are as:

- [ ] Individual(s)
- [ ] Attorney-in-Fact
- [ ] Corporate Officer(s)

_____
Title(s)

- [ ] Guardian/Conservator
- [ ] Partner - Limited/General
- [ ] Trustee(s)
- [ ] Other: _____

representing: _____

Name(s) of Person(s) or Entity(ies) Signer is Representing

### Additional Information

**Method of Signer Identification**

Proved to me on the basis of satisfactory evidence:

○ form(s) of identification    ○ credible witness(es)

Notarial event is detailed in notary journal on:

Page # _____    Entry # _____

Notary contact: _____

**Other**

- [ ] Additional Signer(s)    [ ] Signer's Thumbprint(s)
- [ ] _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT A

Legal Description of Real Property

## For APN/Parcel ID(s): 835-05-031 and 835-05-032

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF GILROY, COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

### Parcel One: APN: 835-05-031

All of Parcel 1, as shown upon that certain Map entitled, "Parcel Map a subdivision of Parcel 1 of the Parcel Map recorded in Book 653 of Maps, pages 10 and 11 Records of Santa Clara County", which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California, on September 29, 1999 in Book 719 of Maps, at Pages 34 and 35.

### Parcel Two: APN: 835-05-032

All of Parcel Three, as shown upon that certain Parcel Map entitled, "Parcel Map in the Incorporated Territory of the City of Gilroy, California all of Lots 14 & 18 and portions of Lots 13 & 17 Henry Miller's Subdivision of Part of Las Animas Ranch Lot #34", which Map was filed for record on January 7, 1994 in the Office of the Recorder of the County of Santa Clara in Book 653 of Maps, at Pages 10 and 11.

### Parcel Three:

Easements for ingress and egress and parking as described in that certain "Reciprocal Easement Agreement", executed by South Valley Hospital, a California nonprofit public benefit corporation and Select Gilroy Investors, a California general partnership, recorded January 17, 1991 as Instrument No. 10781140, in Book L594 at Page 0899, Official Records and amended by document recorded March 19, 1991 as Instrument No. 10837347, in Book L646 at Page 338, of Official Records.

### Parcel Four:

Easements for ingress and egress and parking as described in that certain "Agreement of Easement", executed by South Valley Medical Building, Ltd., a California limited partnership and Good Samaritan Health Systems, Inc., a California non-profit public benefit corporation, recorded March 31, 1995 as Instrument No. 12847868, in Book N805 at Page 1526, of Official Records.

EXHIBIT B

Description of Collateral

All right, title and interest that SAINT LOUISE REGIONAL HOSPITAL, a California nonprofit public benefit corporation, which is defined as "Trustor" in that certain Deed of Trust and Assignment of Leases and Rents with Fixture Filing and Security Agreement dated as of December 14, 2015 and amended and restated as of December 1, 2017 now has or may hereafter acquire in:

(i)     All buildings, structures, improvements, fixtures, equipment and appurtenances now and hereafter owned, constructed, located, erected, installed or affixed by or on behalf of the Trustor upon or appurtenant to the Land and all replacements arid substitutions therefor (**"Facilities"**);

(ii)     All appurtenances, improvements, easements, pipes, transmission lines or wires and other rights used in connection with the Land or as a means of access thereto, whether now or hereafter owned or constructed or placed upon or in the Land or Facilities (**"Appurtenances"**);

(iii)     All equipment, machinery, goods and other personal property of the Trustor, whether movable or not, if the same is (a) now owned or hereafter acquired by the Trustor, (b) now or hereafter located at or used in connection with the Facilities, (c) financed with the proceeds of Obligations, or (d) obtained in order to satisfy the obligations of the Corporation or any other obligor under or with respect to the Indentures or the Loan Agreements, and all improvements, restorations, replacements, repairs, additions, accessions or substitutions thereto or therefor, including, without limitation, all machinery, equipment, material, furnishings and appliances for generation or distribution of air, water, heat, electricity, light, fuel or refrigeration, for purposes of ventilation, sanitation or drainage, for exclusion of vermin or insects, for removal or disposal of dust, refuse or garbage; all elevators, awnings, window coverings, floor covering, laundry equipment, kitchen equipment, cabinets, furniture and furnishings; all fixed and moveable equipment now or hereafter installed or placed upon or in the Land or Facilities for use in health care, treatment, diagnosis and services or for other health care uses; the products and proceeds from any and all such property; all the estate, interest, right, title, property or other claim or demand of every nature whatsoever, in and to such property, including specifically, but without limitation, all deposits made with or other security given to utility companies by the Trustor with respect to such property and claims or demands relating to insurance or condemnation awards which the Trustor now has or may hereafter acquire (**"Equipment"**);

(iv)     All leases, subleases, licenses, occupancy agreements and tenancies of any kind with respect to the Land, Facilities, Appurtenances and Equipment (collectively, the **"Leases"**);

(v)    All rentals or other payments which may now or hereafter accrue or otherwise become payable under the Leases to or for the benefit of the Trustor together with all other income, rents, revenues, issues, profits, lease guarantees, letters of credit, reserves and royalties produced by the Land, Facilities, Appurtenances and Equipment or by all management or service contracts or other contracts affecting the Property, including but not limited to security deposits (collectively, the **"Rents"**);

(vi)    All earnings, products, damages, indemnifications, insurance proceeds and any other proceeds from any and all of such Land, Facilities, Appurtenances, Equipment, Inventory (defined below), Leases and Rents including specifically, but without limitation, all deposits made with or other security given to utility companies and claims or demands relating to insurance or condemnation awards which the Trustor now has or may hereafter acquire, including all advance payments of insurance premiums made by the Trustor with respect thereto (**"Proceeds"**); and

(vii)    All right, title and interest of the Trustor in all the Trustor's inventory, raw materials, work in process, finished goods and goads held for sale or lease or furnished under contracts of service, and all returned and repossessed goods, and all goods covered by documents of title, including warehouse receipts, bills of lading and all other documents of every type covering all or any part of the Property, now owned or hereafter acquired, whether held by the Trustor or any third party, which is located on, appurtenant to, relating to, or used by or useful in connection with the Property (**"Inventory"**).

All of the above referenced Land, Facilities, Appurtenances, Equipment, Leases, Rents, Proceeds and Inventory as hereby conveyed to the Trustee or made subject to the security interest herein described is collectively referred to herein as the **"Property"**).