# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                   **Hearing Room    1568**

<u>10:00 AM</u>
**2:18-20151**    **Verity Health System of California, Inc.**                                **Chapter 11**

    **#3.00**   Hearing
RE: [31] Emergency motion Emergency Motion Of Debtors For Interim And Final Orders (A) Authorizing The Debtors To Obtain Post Petition Financing (B) Authorizing The Debtors To Use Cash Collateral And (C) Granting Adequate Protection To Prepetition Secured Creditors Pursuant To 11 U.S.C. §§ 105, 363, 364, 1107 And 1108

fr. 9-5-18

                          Docket    31

**Matter Notes:**

    10/3/2018

The tentative ruling will be the order. Subject to additional language as set forth on the record.

Party to lodge order: Movant

**POST PDF OF TENTATIVE RULING TO CIAO**

**Tentative Ruling:**

    10/3/2018

For the reasons set forth below, the Motion is GRANTED in its entirety. (Amended after hearing in RED to increase the Committee's budget to investigate the validity of secured creditors' liens from $100,000 to $250,000.)

**Pleadings Filed and Reviewed:**
1) Papers Filed and Orders Entered in Connection with Interim Hearing on Financing Motion:

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 3, 2018**                                                                 **Hearing Room**    **1568**

10:00 AM
**CONT...**     **Verity Health System of California, Inc.**                                                **Chapter 11**

    a) Emergency Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to Obtain Post-Petition Financing, (B) Authorizing the Debtors to Use Cash Collateral, and (C) Granting Adequate Protection to Prepetition Secured Creditors Pursuant to 11 U.S.C. §§105, 363, 364, 1107, and 1108 [Doc. No. 31] (the "Financing Motion")
        i) Declaration of Richard G. Adcock in Support of Emergency First-Day Motions [Doc. No. 8]
        ii) Declaration of Anita Chou, Chief Financial Officer, in Support of [Financing Motion] [Doc. No. 32]
        iii) Order Setting Hearing on First Day Motions [Doc. No. 18]
        iv) Amended Notice of Hearings on Emergency First-Day Motions Filed by Debtors [Doc. No. 34]
        v) Declaration of Patrick Coffey, Managing Director, in Support of Debtors' [Financing Motion] [Doc. No. 80]
    b) Attorney General's Initial Limited Objection to Debtor's Emergency First Day Motions [Doc. No. 60]
    c) Combined Reservation of Rights of U.S. Bank National Association, as Series 2015 Note Trustee and as Series 2017 Note Trustee, to [Financing Motion] [Doc. No. 67]
    d) Ruling Granting Financing Motion on an Interim Basis [Doc. No. 124]
    e) Interim Order (I) Authorizing Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief [Doc. No. 86] (the "Interim Financing Order")
2) Notice of Final Hearing on [Financing Motion] [Doc. No. 201]
3) Papers Filed in Opposition to Granting Financing Motion on a Final Basis:
    a) SEIU-UHW's Objection to [Prepetition Wages Motion and Financing Motion] [Doc. No. 213]
        i) Declaration of Caitlin Gray in Support of SEIU-UHW's Opposition to [Prepetition Wages Motion and Financing Motion] [Doc. No. 214]
        ii) Declaration of David Miller in Support of SEIU-UHW's Opposition to [Prepetition Wages Motion and Financing Motion] [Doc. No. 215]
    b) Objection of Retirement Plan for Hospital Employees to [Financing Motion] [Doc. No. 218]
    c) Renewed Reservation of Rights of U.S. Bank National Association, as Series

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 3, 2018**                                                                 **Hearing Room    1568**

10:00 AM
**CONT...**    **Verity Health System of California, Inc.**                                                            **Chapter 11**

          2015 Note Trustee and Series 2017 Note Trustee to [Financing Motion] [Doc. No. 219]
- d) Attorney General's Limited Objection to [Financing Motion] [Doc. No. 220]
    - i) Proof of Service Re Attorney General's Limited Objection to Debtors' [Financing Motion] [Doc. No. 222]
- e) Limited Objection of Swinerton Builders to [Financing Motion] [Doc. No. 269] (the "Swinerton Objection")
    - i) Declaration of Curtis Johnson in Support of Limited Objection of Swinerton Builders to [Financing Motion] [Doc. No. 270]
- f) McKesson Corporation's Opposition to [Financing Motion] [Doc. No. 279]
    - i) Notice of Resolution of Disputes and Withdrawal of McKesson Corporation's Opposition to [Financing Motion] [Doc. No. 308]
- g) Objection to [Financing Motion] [filed by UMB Bank, N.A.] [Doc. No. 292]
- h) The United Nurses Association of California/Union of Health Care Professionals' Limited Objection to [Prepetition Wages and Financing Motions] [Doc. No. 297]
- i) Official Committee of Unsecured Creditors' Limited Objection to [Financing Motion] [Doc. No. 316]
- j) Combined Limited Response of U.S. Bank National Association, as Series 2015 Note Trustee and Series 2017 Note Trustee, to Master Trustee and Series 2005 Trustee's Objection to [Financing Motion] [Doc. No. 367]
- k) Reservation of Rights of Verity MOB Financing LLC and Verity MOB Financing II LLC with Respect to Proposed Final DIP Order [Doc. No. 368]
- l) Supplemental Objection to [Financing Motion] [filed by UMB Bank, N.A.] [Doc. No. 380]

4) Reply Papers Filed in Support of Granting Financing Motion on a Final Basis:
- a) Omnibus Reply o Debtors to the Objections to the [Financing Motion] [Doc. No. 309]
- b) Omnibus Supplemental Reply of Debtors to the Objections to the [Financing Motion] [Doc. No. 355]

## I. Facts and Summary of Pleadings

    On August 31, 2018 (the "Petition Date"), Verity Health Systems of California ("VHS") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On August 31, 2018, the Court entered an order granting the Debtors' motion for joint administration of the

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                                 **Hearing Room    1568**

10:00 AM
**CONT...        Verity Health System of California, Inc.                                                          Chapter 11**
Debtors' Chapter 11 cases. Doc. No. 17.
   On September 6, 2018, the Court authorized the Debtors to borrow $30 million from Ally Financial, Inc. (the "DIP Lender") on an interim basis. *See* Doc. No. 86 (the "Interim Financing Order"). The Debtor now seeks authorization to borrow up to an additional $155 million from the DIP Lender on a final basis.

*A. General Background Information*
   Debtor VHS, a California nonprofit public benefit corporation, is the sole corporate member of the following five Debtor nonprofit public benefit corporations that operate acute care hospitals: O'Connor Hospital, Saint Louise Regional Hospital, St. Francis Medical Center, St. Vincent Medical Center, Seton Medical Center, and Seton Medical Center Coastside (collectively, the "Hospitals"). Adcock Decl. [Doc. No. 8] at ¶11. VHS, the Hospitals, and their affiliated entities (collectively, the "Verity Health System") operate a nonprofit health care system in the State of California, with approximately 1,680 in patient beds, six active emergency rooms, a trauma center, and various medical specialties. *Id.* at ¶12. In 2017, the Hospitals provided medical services to over 50,000 inpatients and approximately 480,000 outpatients. *Id.*
   Debtor Verity Medical Foundation ("VMF"), incorporated in 2011, is a medical foundation that contracts with physicians and other healthcare professionals to provide patient care throughout California. *Id.* at ¶14. VMF offers medical, surgical, and related healthcare services at community-based, multi-specialty clinics located in areas served by the Debtor Hospitals. *Id.*
   Verity Holdings LLC ("Holdings"), a direct subsidiary of its sole member VHS, was created in 2016 to hold and finance Verity's interests in six medical office buildings whose tenants are primarily physicians, medical groups, healthcare providers, and certain of the Hospitals. *Id.* at ¶15. Holdings' real estate portfolio includes over 30 properties. *Id.*
   Debtors Saint Louise Regional Hospital Foundation, St. Francis Medical Center Foundation, St. Vincent Medical Center Foundation, Seton Medical Center Foundation, and O'Connor Medical Center Foundation handle fundraising and grant-making programs for each of their respective Debtor Hospitals. *Id.* at ¶16.
   As of August 30, 2018, the Debtors' facilities had approximately 850 patients, and are currently at approximately 50% occupancy. *Id.* at ¶17. As of August 31, 2018, the Debtors have approximately 7,385 employees, of whom 4,733 are full-time employees. *Id.* at ¶18. Approximately 74% of these employees are represented by

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**  **Hearing Room  1568**

10:00 AM
**CONT...    Verity Health System of California, Inc.**    **Chapter 11**
collective bargaining units. *Id.*

VHS operates Debtor Verity Business Services ("VBS"), a nonprofit public benefit corporation. *Id.* at ¶30. VBS provides support services to the Verity Health System, including accounting, finance, patient financial services, supply chain management, and purchasing services. *Id.*

O'Connor Hospital operates a 358 bed, general acute care hospital that serves residents from the greater San Jose area, and contains an emergency department with 23 emergency treatment stations. *Id.* at ¶32. St. Vincent Medical Center operates a 366 bed, regional acute care facility located in Los Angeles, CA. *Id.* at ¶34. St. Vincent Medical Center is the sole corporate member of the St. Vincent Dialysis Center, located on the Hospital's campus. *Id.* at ¶36. St. Vincent Dialysis Center provides dialysis services for kidney disease patients. *Id.*

St. Francis Medical Center operates a 384 bed, general acute care hospital located in Lynwood, California. *Id.* at ¶37. Seton Medical Center operates a 357 bed hospital located in Daly City, California. *Id.* at ¶39. Seton Coastside is located in the City of Half Moon Bay, California, and contains 116 skilled nursing beds and five general, acute-care beds. *Id.* at ¶40. Saint Louise Hospital is located in Gilroy, California and operates a 93 bed, general acute care hospital. *Id.* at ¶42.

DePaul Ventures, LLC is a wholly-owned and operated holding company of the Debtors that was formed in August 2010 for the purpose of investing in a freestanding surgery center and other healthcare entities. *Id.* at ¶45. In April 2013, DePaul Ventures, LLC formed DePaul Ventures—San Jose Dialysis, LLC ("Dialysis"), a general and limited partner of Priday Dialysis, LLC ("Priday"). Priday—which is not a Debtor—is a healthcare center specializing in end-stage renal disease treatment. *Id.* at ¶46.

*B. The Debtors' Capital Structure*

VHS, VBS, and VHS' five acute care hospital subsidiaries (O'Connor Hospital, Saint Louise Regional Hospital, St. Francis Medical Center, St. Vincent Medical Center, Seton Medical Center, and Seton Medical Center Coastside) are jointly obligated parties on approximately $461.4 million in outstanding secured debt consisting of (a) $259.4 million in outstanding principal amount of tax exempt revenue bonds, Series 2005 A, G and H issued by the California Statewide Communities Development Authority (the "2005 Bonds") and (b) $202 million in outstanding principal amount of tax exempt revenue notes, Series 2015 A, B, C, and D and Series 2017 issued by the California Public Financing Authority (the "Working Capital Notes").

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 3, 2018**                                                                      Hearing Room    1568

10:00 AM
**CONT...    Verity Health System of California, Inc.                                                           Chapter 11**

   For the 2005 Bonds, Wells Fargo Bank, N.A. ("Wells Fargo") is the Bond Trustee and UMB Bank, N.A. ("UMB") is the successor Master Trustee. The 2005 Bonds were issued to provide funds for capital improvements and to refinancing certain tax exempt bonds that had been issued in 2001. For the Working Capital Notes, U.S. Bank, N.A. ("U.S. Bank") is the Note Trustee and Collateral Agent. (The Working Capital Notes, together with the 2005 Bonds, are collectively referred to as the "MTI Obligations" ("MTI" is an abbreviation for "Master Trustee Indenture").)

   Holdings, a direct subsidiary of its sole member VHS, was created in 2016 to hold and finance VHS' interests in six medical office buildings whose tenants are primarily physicians and medical groups affiliated with certain of the Hospitals operated by the Debtors. Holdings' real estate portfolio consists of over 30 properties, including, but not limited to, apartment buildings, parking lots, and condominiums. Holdings is the borrower on approximately $66 million on two series of non-recourse financing secured by separate deeds of trust and revenue and accounts pledges, including lease rents on medical buildings (the "MOB Financing"). The secured lenders for the MOB Financing are affiliates of NantWorks, LLC, which is an affiliate of the Debtors' prepetition manager, Integrity Healthcare, LLC ("Integrity"). (Integrity has not sought bankruptcy protection.)

   Debtor Seton Medical Center is liable for repayment of $20 million of limited obligation tax exempt bonds issued in September 2017 by the California Statewide Communities Development Authority (the "Clean Fund Bonds"). The Clean Fund Bonds were issued to assist with clean energy-related capital improvements to Seton Medical Center. No other Debtor is liable for repayment of the Clean Fund Bonds. Wilmington Trust National Association ("WTNA") is the Trustee holding the construction funds raised in connection with the Clean Fund Bonds.

   Debtor Seton Medical Center is also liable for repayment of $20 million in California 30-year tax exempt bonds, issued in September 2017 for the purpose of seismic improvements at Seton Medical Center (the "NR2 Petros Bonds"). No other Debtor is liable for repayment of the NR2 Petros Bonds. WTNA is the Trustee holding the construction funds raised in connection with the NR2 Petros Bonds.

   NantCapital, LLC has provided $40 million in unsecured debt financing for VHS, as reflected in two $20 million unsecured notes dated March 7, 2018 and March 29, 2018 (the "Unsecured Notes").

   All of the Debtors' income is subject to prepetition perfected pledges. The gross revenue of the Hospitals is pledged in favor of the 2005 Bonds. The prepetition accounts receivable and government receivables of the Hospitals are pledged in favor

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 3, 2018**                                                                    **Hearing Room    1568**

10:00 AM
**CONT...        Verity Health System of California, Inc.                                              Chapter 11**

of the Working Capital Notes. As of August 31, 2018 (the "Petition Date"), the Debtors had less than $40 million of cash on hand that is not subject to control accounts in favor of either the 2005 Bonds, the Working Capital Notes, or the MOB Financing (excluding cash held by WTNA on account of the Clean Fund Bonds and/or the NR2 Petros Bonds).

*C. Summary of Papers Filed in Connection with the Final Hearing on the Financing Motion*

The Debtors seek entry of a final order authorizing them to borrow an additional $155 million from the DIP Lender (such order, the "Final Financing Order"). Numerous parties object to the terms of the financing package. Those objections, as well as the Debtors' responses thereto, are summarized briefly below.

The Official Committee of Unsecured Creditors (the "Committee") contends that the terms of the financing package are unduly favorable to secured creditors and that unsecured creditors have been unfairly prejudiced. The Debtors maintain that the terms of the financing package are the best that could be negotiated under the circumstances and that the provisions to which the Committee objects were necessary to induce the DIP Lender to provide the financing.

The Attorney General asserts that the Debtor has failed to show that it has properly segregated charitable trust funds in its possession. The Debtors contend that they are in compliance with applicable law regarding the charitable trust assets, and that the Attorney General has failed to point to specific facts showing otherwise.

Various unions representing the Debtors' employees object to the proposed budget (the "Budget") on the grounds that the Budget does not provide for the full payments required under various collective bargaining agreements ("CBAs"). The Debtors assert that under applicable provisions of the Bankruptcy Code, they are not required at this time to make certain of the payments required under the CBAs.

Swinerton Builders ("Swinerton") asserts that it holds an inchoate mechanic's lien against the Seton Medical Center, and objects to the priming of its asserted lien. The Debtors do not concede the validity of the asserted lien, and argue that even if Swinerton does hold a mechanic's lien, it may be primed pursuant to §364(d).

Creditors holding subordinated debt (the "2005 Bond Parties") object to the priming of their liens. The Debtors contend that the holder of the senior secured debt is authorized to consent to the priming of the liens held by the 2005 Bond Parties pursuant to an intercreditor agreement. The Debtors contend that even if the senior secured creditor is not so authorized, the liens of the 2005 Bond Parties may be

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                                                      Hearing Room    1568

10:00 AM
**CONT...**         **Verity Health System of California, Inc.**                                                              **Chapter 11**
primed pursuant to §364(d).

## II. Findings and Conclusions

Based upon its review of the declarations of James Moloney and Anita Chou, the Court finds that the Debtor has submitted competent evidence establishing the need for the proposed financing from the DIP Lender. Specifically, as of the Petition Date, the book value of the Debtors' assets was approximately $857 million. Moloney Decl. [Doc. No. 309] at ¶8. After proper marketing, the aggregate realizable value of those same assets is in the range of $725 million to $800 million. *Id.* As of the Petition Date, aggregate secured claims against the Debtors totaled approximately $565 million. *Id.* at ¶9. The realizable value of the Debtors' assets, in excess of prepetition secured liabilities, is between $150–$225 million. *Id.*

During the first thirteen weeks of the case, the Debtors are projected to collect approximately $239 million in patient revenue, but spend approximately $405 million to maintain operations. Chou Decl. [Doc. No. 309], Ex. 1. The total cash shortfall during the first thirteen weeks is approximately $109 million. *Id.*

These figures establish that the Debtors are in dire need of post-petition financing. If the Debtors continue operations, they have a realistic opportunity to sell their assets for a price that will yield between $150–$225 million in excess of existing secured debt. A sale at that price would result in a meaningful recovery for unsecured creditors. However, simply to maintain operations over the first thirteen weeks of the case, the Debtors must plug a funding shortfall in excess of $100 million.

Against this backdrop, the Court finds it appropriate to approve the financing package that the Debtors have negotiated with the DIP Lender. In this respect, the Court notes that secured creditors holding a significant portion of the outstanding secured indebtedness also support the proposed financing. As addressed in greater detail below, the objections to the financing asserted by the Committee, the 2005 Bond Parties, Swinerton, the Attorney General, and various unions representing the Debtors' employees are OVERRULED.

*A. The Debtors Are Entitled to Borrow on a Superpriority Basis*
Section 364 provides in relevant part:
> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>> (1) with priority over any or all administrative expenses of the kind

Case 2:18-bk-20151-ER    Doc 392    Filed 10/03/18    Entered 10/03/18 15:52:15    Desc
             Ruling    Page 9 of 16

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**             **Hearing Room**    **1568**

<u>10:00 AM</u>
**CONT...**      **Verity Health System of California, Inc.**                                **Chapter 11**

      specified in section 503(b) or 507(b) of this title;
      (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
      (3) secured by a junior lien on property of the estate that is subject to a lien.
  (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
      (A) the trustee is unable to obtain such credit otherwise; and
      (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
  (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

      Having reviewed the declaration submitted by Anita Chou, the Chief Financial Officer of VHS (the "Chou Decl."), the Court finds that the Debtors were unable to obtain financing on more favorable terms than those proposed by the DIP Lender.
      The Court finds that the Secured Creditors whose liens are primed by the DIP Facility are adequately protected. The Maloney Decl. establishes that the aggregate secured debt on the Debtors' balance sheet as of the Petition Date was approximately $565 million. Maloney Decl. at ¶9. The approximate realizable value of the Debtors' assets, in excess of prepetition secured liabilities, is between $150 and $225 million. *Id.* That is, secured creditors are protected by an equity cushion of between 26% to 40%. It is well established that an equity cushion of 20% or more constitutes adequate protection. *See, e.g.*, *In re James River Associates*, 148 B.R. 790, 796 (E.D. Va. 1992) ("The amount of equity cushion sufficient to adequately protect the creditor is determined on a case-by-case basis. *Kost,* 102 B.R. at 831. However, the reported cases do provide some guidance: Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection.... Case law has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection.... Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection....").
      In addition to adequate protection through the equity cushion, the replacement liens and superpriority claims provide the secured creditors additional adequate protection. The financing provided by the DIP Lender will enable the Debtors to

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                                                       **Hearing Room    1568**

10:00 AM
**CONT...        Verity Health System of California, Inc.                                                                Chapter 11**

continue to operate and generate additional receivables. Those receivables will be subject to the replacement liens. *See In re Megan-Racine Associates, Inc.*, 202 B.R. 660, 663 (Bankr. S.D.N.Y. 1996) (concluding that "[a]s long as there was a continuous income stream being generated by the Debtor, the fact that the Debtor consumed a portion of those monies to operate and maintain the facility each month did not diminish the value of the [secured creditor's] interest in the [cash collateral]"). There is no evidence before the Court that the Debtors' assets are declining in value. However, the abrupt cessation of operations would almost certainly result in a decline in value.

*B. The Objections Asserted by the Committee are Overruled*

The gravamen of the Committee's opposition is that the financing package negotiated by the Debtors places too much risk upon unsecured creditors because the Debtors have granted liens on unencumbered assets. The Committee's opposition is overruled.

The Committee cites *In re Four Seasons Marine & Cycle, Inc.*, 263 B.R. 764, 771 (Bankr. E.D. Tex. 2001) for the proposition that the granting of replacement liens on unencumbered assets is fundamentally unfair to the Debtors' unsecured creditors. The Committee's reliance upon *Four Seasons* is misplaced, as the case is easily distinguishable. In *Four Seasons*, the secured lender sought a replacement lien on unencumbered assets after the debtor's case was converted to Chapter 7 as a result of the debtor's unauthorized use of cash collateral. Noting that the debtor was proceeding to liquidate, the *Four Seasons* court observed that granting the secured lender a replacement lien would punish unsecured parties, not the debtor who had engaged in the wrongdoing necessitating conversion to Chapter 7. The court explained that although the granting of replacement liens "would obviously restore certain funds to [the secured lender], it would do nothing to discourage debtors-in-possession from engaging in this type of misconduct, and it would impose the burden for such restitution upon parties who are wholly innocent of any wrongdoing." *Four Seasons*, 263 B.R. at 771.

In the present case, there is no indication that the Debtors have engaged in any type of wrongdoing. To the contrary, the record shows that the Debtors, under difficult circumstances, negotiated a financing package providing much-needed liquidity. The presence of this financing affords the Debtors critical breathing space, during which their assets can be exposed to the market. The facts of this case could not be more different from the facts of *Four Seasons*.

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                                 **Hearing Room**    **1568**

10:00 AM
**CONT...**      **Verity Health System of California, Inc.**                                            **Chapter 11**

   The premise underlying the Committee's objections is that the Debtors have prejudiced unsecured creditors by giving too much away to the secured creditors and the DIP Lender. Quite simply, that premise is incorrect. As discussed above, the Debtors are in a dire financial position. Under the circumstances, the Debtors were very fortunate to have negotiated a financing package containing such favorable terms.

   The Committee objects to the Debtors' proposal to grant a §506(c) waiver, arguing that the Debtors are giving away a potential recovery for unsecured creditors. The Committee is correct that certain courts have declined to grant §506(c) waivers. However, the Committee overlooks the case that many other courts have granted § 506(c) waivers upon a finding that the waiver was necessary to induce the lender to extend the necessary credit. *See, e.g., In re Real Mex Restaurants, Inc.*, Case No. 11-13122 (BLS) (Bankr. D. Del. Nov. 4, 2011); *In re Metaldyne Corp.*, 2009 WL 2883045 (Bankr. S.D.N.Y. 2009); *In re Antico Mfg. Co.*, 31 B.R. 103, 106 n.1 (Bankr. E.D.N.Y. 1983) (holding that the §506(c) waiver was "not so detrimental or improper as to jeopardize the loss of the entire financing package"). Here, the Court finds that the §506(c) was necessary to induce the DIP Lender to extend the financing. The Committee's objection to the §506(c) waiver is overruled.

   The Committee objects to the proposed §552(b) waiver, making arguments similar to those presented in opposition to the §506(c) waiver. Once again, the Court overrules the Committee's objections. Like §506(c) waivers, §552(b) waivers are routinely granted in large Chapter 11 cases as a means of adequately protecting the cash collateral of secured creditors. In view of the approximately $550 million in secured debt, the fact that the Debtors were able to obtain the assent of most of the secured creditor body with respect to the proposed financing package is significant. It was reasonable for the Debtors to grant the secured creditors a §552(b) waiver in order to obtain such consent.

   The Committee's request that its budget to investigate the validity of secured creditors' liens be increased from $100,000 to $250,000 is granted. The carve-out contains an allocation of $150,000 for persons or firms retained by the Committee. The Committee's request for an increase in its carve-out allocation is denied. ~~The Committee's request that its budget to investigate the validity of the secured creditors' liens (the "Investigation Budget") be increased, as well as its request that its allocation under the carve-out be increased, are denied. The Debtors and the DIP Lender have already agreed to increase the Investigation Budget from $50,000 to $100,000. In the Court's view, the Committee's request for a further increase to $250,000 is not~~

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                                                         **Hearing Room**    **1568**

10:00 AM
CONT...         Verity Health System of California, Inc.                                                                          Chapter 11

~~warranted.~~

~~Similarly, the Court finds that the currently budgeted amounts of $100,000 per month for the Committee's counsel and $50,000 per month for the Committee's financial advisors is sufficient, and that a further increase is not warranted.~~

The Committee objects to provisions of the financing package requiring that the Debtors commence a process to sell their assets within sixty days of the Petition Date. According to the Committee, these conditions improperly circumscribe the parameters of the sale process. The Court disagrees. As discussed, the Debtors' financial position is not strong. In fact, the Debtor is hemorrhaging money at an unsustainable rate In the Court's view, a rapid sale of the Debtors' assets would be an expeditious means of resolving this case.

*C. The Swinerton Objection is Overruled*

Swinerton Builders ("Swinerton") asserts that it holds a mechanic's lien against the Seton Medical Center property, and objects to any priming of its asserted lien. Swinerton states that it has not taken action to formalize the perfection of its lien, but asserts that it will do so in the coming weeks.

In the context of this hearing, the Court makes no determination as to whether Swinerton holds a mechanic's lien against the Seton Medical Center Property. Even if Swinerton does hold such a lien, there is nothing in the Bankruptcy Code preventing that lien from being primed where necessary to facilitate post-petition financing. The financing package negotiated by the Debtor primes the liens of all secured creditors, not just Swinerton's. There is no reason why Swinerton's lien should not be primed in the same manner as the liens of other secured creditors. Swinerton's objection is overruled.

*D. The Attorney General's Objection is Overruled*

The Attorney General of the State of California (the "Attorney General") objects to the Motion on the grounds that the Debtors may be seeking to use restricted charitable funds as cash collateral. The Attorney General and the Debtors do not dispute that to the extent that the Debtors hold restricted donor funds, such funds may not be encumbered or used for non-charitable purposes.

The Attorney General argues that the Debtors should be required to include the following language in the Final Financing Order:

> Nothing in this order shall create or validate liens on or allow the use of any temporarily or permanently restricted assets held by Debtors for any

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                                      Hearing Room    1568

10:00 AM
**CONT...**        **Verity Health System of California, Inc.**                                                            **Chapter 11**

purpose other than their restricted purpose. These temporarily and permanently restricted assets are not property of the bankruptcy estate.

Nothing in this order shall in any way diminish the obligation of any entity, including the debtors, to comply with applicable state law and conditions including, but not limited to, charitable trust laws and the conditions set forth in the California Attorney General's Decision dated December 3, 2015. Further, nothing in this order or the budget shall prevent the debtors from complying with any such obligations or conditions.

Having reviewed the Supplemental Chou Decl., the Court finds that the Debtors have adopted procedures to ensure that they remain compliant with their legal obligations with respect to the maintenance of restricted donor funds. Specifically, the Debtors have established procedures denominating funds as either "permanent donor restricted funds" or "temporarily restricted funds." Supplemental Chou Decl. at ¶6. As required by GAAP, the Debtors segregate permanent donor restricted funds from temporarily restricted funds. *Id.* The Court finds that the Debtors have established that they are in compliance with applicable charitable trust laws.

In its opposition, the Attorney General does not point to any specific conduct of the Debtors that violates applicable law. In view of the procedures implemented by the Debtors to ensure compliance with the law, and the absence of any showing by the Attorney General that the Debtors have not fulfilled their legal obligations, the Court declines to require the Debtors to insert into the Final Financing Order the provisions requested by the Attorney General. The DIP Credit Agreement, which is incorporated by reference into the proposed Final Financing Order, already contains language requiring the Debtors to "comply with the requirements of all Applicable Laws." DIP Credit Agreement, §5.5. Provisions in the Final Financing Order requiring compliance with applicable laws are unnecessary.

*E. The 2005 Bond Parties' Objection is Overruled*

The 2005 Bond Parties object to the priming of their liens, unless certain language is included in the Final Financing Order.

U.S. Bank, in its capacity as Note Trustee for the Working Capital Notes, has consented to the DIP Liens. Pursuant to an Intercreditor Agreement between U.S. Bank and the 2005 Bond Parties, U.S. Bank is authorized to subordinate the security interests held by the 2005 Bond Parties.

Based on the provisions set forth in the Intercreditor Agreement, the Court finds

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                                                          Hearing Room    1568

10:00 AM
**CONT...**     **Verity Health System of California, Inc.**                                                                                Chapter 11

that the consent of the 2005 Bond Parties to the priming of their liens is unnecessary. To the extent that consent is required, it has been provided by U.S. Bank. The 2005 Bond Parties are bound by the provisions of the Intercreditor Agreement, and cannot escape the effect of those provisions simply as a result of the Debtors' bankruptcy.

In addition, even assuming *arguendo* that U.S. Bank had not consented or that its consent was somehow not effective, the provisions of §365(d) authorize the Court to prime the liens of secured creditors where necessary to facilitate post-petition financing. Further, the Court finds that the liens of the 2005 Bond Parties are adequately protected by, among other things, the assets of the Debtors, the equity cushion, the proposed package of payments, and the Prepetition Replacement Liens.

The 2005 Bond Parties' objections are overruled.

*F. The Debtors are Not Required to Accord Superpriority Status to Postpetition Ordinary Course Transfers Between Debtors*

As set forth in the tentative ruling issued in connection with the Cash Management Motion, the Court finds that Committee's contention that the Debtors should be required to accord super-priority claim status to transfers made between Debtors in the ordinary course of business is more appropriately addressed in the context of the Financing Motion. As set forth below, the Court declines to require the Debtors to accord super-priority status to intercompany transfers.

The Debtors are seventeen separate legal entities, but operate those legal entities as a consolidated business enterprise. In the course of their business operations, it is common for one Debtor to purchase or sell goods and/or services to other Debtors.

The Committee's objection appears to be motivated by the concern that because these transfers are not at arms-length, the purchase price paid by one Debtor for goods and services purchased from another Debtor may not be commercially reasonable. The Court notes that it is conceivable that transfers from one Debtor to another on commercially unreasonable terms could function as a backdoor means of transferring funds from a financially stronger to a financially weaker Debtor.

There is no competent evidence before the Court showing that financially stronger Debtors are using intercompany transfers as an improper means of subsidizing financially weaker Debtors. Were such transfers to occur, the Committee would not be without legal remedies. The Committee's request that such ordinary transfers be accorded super-priority status would prove operationally burdensome. Absent concrete evidence of abuse, the Court declines to order the relief requested by the Committee.

# United States Bankruptcy Court
# Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 3, 2018**　　　　　　　　　　　　　　　　　　　　　　　　　**Hearing Room    1568**

<u>10:00 AM</u>
**CONT...**　　　**Verity Health System of California, Inc.**　　　　　　　　　　　　　　　　　**Chapter 11**

　　　*G. Objections Asserted by Unions Representing the Debtors' Employees Are*
*Addressed in the Prepetition Wages Motion*
　　　For the reasons set forth in the tentative ruling issued in connection with the Prepetition Wages Motion, the objections asserted by the unions representing the Debtors' employees are overruled.

　　　*H. Cash Collateral*
　　　Section 363(c)(2) requires court authorization for the use of cash collateral unless "each entity that has an interest in such cash collateral consents." Absent affirmative express consent, the Debtors "may not use" cash collateral absent the Court's determination that the use is "in accordance with the provisions" of Section 363—that is, that the secured creditor's interest in the cash collateral is adequately protected. Section 363(c)(2)(B); Section 363(e).
　　　As noted above, the vast majority of the creditors holding secured debt have consented to the terms of the financing package. The 2005 Bond Parties have objected to the priming of their liens; however, as stated above, U.S. Bank has the capacity to consent to the priming of the 2005 Bond Parties' liens as a result of the Intercreditor Agreement. Further, even assuming *arguendo* that U.S. Bank did not have such capacity, the liens of the 2005 Bond Parties are adequately protected by, among other things, the assets of the Debtors, the equity cushion, the proposed package of payments, and the Prepetition Replacement Liens.

## III. Conclusion
　　　Based upon the foregoing, the Motion is GRANTED in its entirety. The Court is prepared to enter the order that has already been submitted by the Debtors.

　　　No appearance is required if submitting on the court's tentative ruling. If you intend to submit on the tentative ruling, please contact Jessica Vogel or Daniel Koontz, the Judge's Law Clerks, at 213-894-1522. **If you intend to contest the tentative ruling and appear, please first contact opposing counsel to inform them of your intention to do so.** Should an opposing party file a late opposition or appear at the hearing, the court will determine whether further hearing is required. If you wish to make a telephonic appearance, contact Court Call at 888-882-6878, no later than one hour before the hearing.

**Party Information**

# United States Bankruptcy Court
# Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 3, 2018**                                                      **Hearing Room    1568**

<u>10:00 AM</u>

**CONT...**    **Verity Health System of California, Inc.**                                                 **Chapter 11**
    <u>**Debtor(s):**</u>

      Verity Health System of California,       Represented By
                                                   Samuel R Maizel
                                                   John A Moe
                                                   Tania M Moyron