SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Proposed Attorneys for the Chapter 11 Debtors and
Debtors In Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>Debtor and Debtor In Possession. | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER |
| ☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>Debtors and Debtors In Possession. | Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER<br>Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER<br>Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER<br><br>Chapter 11 Cases<br><br>Hon. Judge Ernest M. Robles<br><br>**DEBTORS' REPLY TO RESPONSE OF CALIFORNIA ATTORNEY GENERAL TO DEBTORS' BID PROCEDURES MOTION**<br><br>Hearing:<br>Date:    October 24, 2018<br>Time:   10:00 a.m.<br>Ctrm:   Courtroom 1568<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

- 1 -

109353776\V-2

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................... 5

II.  BACKGROUND ....................................................................................................... 5

III. THE SALE OF THE HOSPITALS IS NOT SUBJECT TO ATTORNEY
     GENERAL REVIEW ................................................................................................ 6

IV.  THE CONDITIONS IMPOSED IN 2015 CAN BE CUT OFF BY A SALE
     PURSUANT TO § 363 .............................................................................................. 7

V.   CONCLUSION ........................................................................................................ 14

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109353776\V-2

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re ARSN Liquidating Corp. Inc.*,
  2017 WL 279472 (Bankr. D.N.H. Jan. 20, 2017) ..................................................................8

*In re Aurora Gas, LLC*,
  2017 WL 4325560 (Bankr. D. Alaska Sep. 26, 2017) ........................................................12

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*,
  511 U.S. 383, 114 S. Ct. 1677, 128 L. Ed. 2d 399 (1994) ...................................................7

*In re Christ Hospital*,
  502 B.R. 158 (Bankr. D.N.J. 2013) ......................................................................................8

*In re Gardens Regional Hospital and Medical Center, Inc.*,
  567 B.R. 820 (Bankr. C.D. Cal. 2017) ........................................................................7, 8, 9

*Gorbach v. Reno*,
  219 F.3d 1087 (9th Cir. 2000) ............................................................................................11

*In re Grumman Olson Indus. Inc.*,
  467 B.R. 694 (S.D.N.Y 2012) ..............................................................................................9

*Int'l Shoe v. Pinkus*,
  278 U.S. 261 (1929) .............................................................................................................9

*In re La Paloma Generating, Co.*,
  2017 WL 5197116 (Bankr. D. Del. Nov. 9, 2017) ...............................................................8

*Lamie v. United States Tr.*,
  540 U.S. 526 (2004) .............................................................................................................7

*Myers v. United States*,
  297 B.R. 774 (S.D. Cal. 2003) .................................................................................9, 11, 13

*In re Old Carco LLC*,
  442 B.R. 196 (S.D.N.Y. 2010) .............................................................................................9

*PBBPC, Inc. v. OPK Biotech, LLC (In re PBBPC, Inc.)*,
  484 B.R. 860 (1st Cir. B.A.P. 2013) ...............................................................................8, 10

*In re PW, LLC*,
  391 B.R. 25 (B.A.P. 9th Cir. 2008) ....................................................................................10

*Toibb v. Radloff*,
  501 U.S. 157 (1991) ...........................................................................................................11

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 3 -

109353776\V-2

*In re Tougher Indus.*,
  2013 WL 1276501 (Bankr. N.D.N.Y. Mar. 27, 2013)........................................................9, 10

*In re Trans World Airlines, Inc.*,
  322 F.3d 282 (3d Cir. 2003)....................................................................................................10

*In re Trans World Airlines, Inc.*,
  322 F.3d 283 (3d Cir. 2001)....................................................................................................10

*United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*,
  99 F.3d 573 (4th Cir. 1996)...................................................................................................8, 9

*United Mine Workers of Am. Combined Benefit Fund v. Walter Energy, Inc.*,
  551 B.R. 631 (N.D. Ala. 2016) .......................................................................................8, 9, 11

*In re Universal Life Church, Inc.*,
  128 F.3d 1294 (9th Cir. 1997).................................................................................................12

*Vartinelli v. Stapleton*,
  2009 U.S. Dist. LEXIS 88553 ( E.D. Mich. Aug. 3, 2009) .......................................................7

*In re Vista Marketing Group Ltd.*,
  557 B.R. 630 (Bankr. N.D. Ill. 2016)........................................................................................8

*WBO P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBO P'ship)*,
  189 B.R. 97 (Bankr. E.D. Va. 1995) ........................................................................................9

**Statutes**

11 United States Code
  § 362........................................................................................................................................9, 11
  § 362(b)(4) ...............................................................................................................................12
  § 363(f)............................................................................................................................. *passim*

California Corporations Code
  § 5914......................................................................................................................................6, 7
  § 5914(a)(1)................................................................................................................................6

California Public Contract Code
  § 7200(a)(2)................................................................................................................................7
  § 7201(a)(2)................................................................................................................................7

## I. INTRODUCTION

The Debtors filed a motion (the "Motion") for approval of bid procedures and a potential sale of two of its hospitals, O'Connor Hospital and Saint Louise Regional Hospital (collectively, the "Hospitals"), to Santa Clara County (the "Buyer") [Docket No. 365]. On October 10, 2018, the California Attorney General (the "AG"), filed a "response" (the "Response") to the Motion [Docket No. 463], asserting that the transaction was subject to each and every one of the numerous conditions imposed in 2015 on the recapitalization of the Debtors by BlueMountain Capital Management LLC (the "Conditions").

In his Response, the AG argues that the Motion should not be granted unless the Debtors agree that the Conditions remain binding on any buyer, regardless of the impact of the Bankruptcy Code.[1] First, this issue is premature, because it is not clear, and will not be clear until after the auction, that the winning buyer will not voluntarily agree to abide by the Conditions. Therefore, it is premature to address this issue now. Second, the AG takes positions contrary to bankruptcy law, effectively arguing that it is simply not bound by federal law or subject to this Court's jurisdiction. Finally, the AG argues that the Conditions must remain binding on any buyers, and that it can compel specific performance of the Conditions, without explaining how the Debtors are to keep these hospitals open if no buyer is willing to take on the facilities subject to these Conditions. For all these reasons the AG's Response should be overruled.

## II. Background

In 2015 the AG conditionally consented to the terms of the System Restructuring and Supporting Agreement between the Daughters of Charity Health System and its sole member, Daughters of Charity Ministry Services Corporation, certain funds managed by BlueMountain Capital Management, LLC, and Integrity Healthcare, LLC. The Conditions were imposed for periods ranging from 5 to 15 years. Generally, the terms of the Conditions include (1) transfers of control, (2) maintenance of health services, (3) required participation in Medicare and Medi-Cal programs, (4) community benefit programs, (5) charity care levels, (6) county contracts, (7) local

---

[1] All references to "sections" or "§" are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101, et. seq., as amended.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case 2:18-bk-20151-ER    Doc 560    Filed 10/17/18    Entered 10/17/18 17:11:16    Desc
Main Document    Page 6 of 14


governing boards, (8) medical staff compliance, (9) ethical and religious directives, and (10) annual attestation of compliance with the AG conditions.  *See* Letter from Wendi A. Horwitz, Deputy Attorney General, to John O. Chesley, Ropes & Gray LLP, Re: Proposed Change in Governance and Control of Daughters of Charity Health System, dated Dec. 3, 2015 (the "<u>AG Conditions Letter</u>"), available at https://oag.ca.gov/sites/all/files/agweb/pdfs/charities/pdf/chs.pdf (last visited on Sept. 17, 2018) [Docket No. 60].

Each hospital has specific requirements as to services that had to be maintained or even expanded.  For example, O'Connor Medical Center is required to maintain an emergency room with 23 licensed stations, 22 intensive care/coronary care beds, 39 obstetrics beds, 24 sub-acute beds, and 14 pediatric beds, among other things.  It is also required to provide $15,295,925 of charity care annually and provide community benefit programs of at least $2,718,710 annually.  It is also required to maintain Medi-Cal contracts with, among other parties, Anthem Blue Cross of California, a commercial health plan, regardless of the financial terms offered.  Saint Louise Medical Center is required to maintain 8 licensed treatment stations for 10 years, provide no less than $1,822.623 in charitable care annually for five years, and provide no less than $873,145 in community benefits annually.  Each of the conditions are based on the historical care provided by Verity's predecessor through these hospitals.

### III.     The Sale of the Hospitals Is Not Subject to Attorney General Review

The Response implies that the proposed transaction is subject to AG review.  However, the proposed sale to Santa Clara County is not subject to AG review.  Section 5914 of the California Corporations Code ("<u>Section 5914</u>") provides that the sale of a not-for-profit ("<u>NFP</u>") healthcare facility is subject to AG review if the buyer is a (a) for-profit corporation or entity, (b) not-for-profit corporation or entity, or (c) mutual benefit corporation or entity.  Cal. Corp. Code § 5914(a)(1)  says, for example,  "Any [healthcare] nonprofit corporation … shall be required to provide written notice to, and to obtain the written consent of, the Attorney General prior to entering into any agreement or transaction to do either of the following: (A)  Sell, transfer, lease, … its assets to a for-profit corporation or entity or to a mutual benefit corporation or entity when a material amount of the assets of the nonprofit corporation are involved in the agreement or

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  transaction." A similar provision provides the same obligation vis-à-vis sales to not-for-profit

2  corporations or entities.

3        A county government is a public entity, not (i) a for-profit corporation or entity, (ii) a

4  mutual benefit corporation or entity, or (iii) a not-for-profit corporation or entity. "A public entity

5  is defined including "any State or local government." *Vartinelli v. Stapleton*, 2009 U.S. Dist.

6  LEXIS 88553 ( E.D. Mich. Aug. 3, 2009). The term "public entity" is used repeatedly in

7  California law. *See, e.g.,* Cal. Pub. Contract Code § 7200(a)(2) ("For purposes of this section,

8  'public entity' means … [a] county, …."); Cal. Pub. Contract Code § 7201(a)(2) ("For purposes

9  of this section, 'public entity' means … [a] county, …."). Based on the plain language of the

10  statute, *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is

11  plain, the sole function of the courts . . . is to enforce it according to its terms."), the proposed sale

12  to Santa Clara County is not subject to AG review because a county is not one of the types of

13  organizations listed in Section 5914. This is a substantive distinction, not a technical one. The

14  California legislature, through their conscience omission of public entities in Section 5914,

15  specifically allowed public entities (directly responsible to the hospitals' stakeholders) to

16  purchase hospitals and protect their own local public interest without interference from the more

17  remote AG. *See generally*, *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 421,

18  114 S. Ct. 1677, 1697, 128 L. Ed. 2d 399 (1994) (Souter, D., dissenting) ("The local government

19  itself occupies a [unique] market position, however, being the one entity that enters the market to

20  serve the public interest of local citizens. . .").

21  **IV.**    **The Conditions Imposed in 2015 Can Be Cut Off by a Sale Pursuant to § 363**

22        The AG argues that the Conditions will remain binding on any buyer of assets. However,

23  a sale under § 363(f) allows the debtor to sell assets "free and clear of any interest in such

24  property." This Court addressed a similar argument in *In re Gardens Regional Hospital and*

25  *Medical Center, Inc.*, 567 B.R. 820 (Bankr. C.D. Cal. 2017), where the AG asserted that

26  conditions imposed in a proposed sale would be binding on any subsequent buyer. This Court

27  stated that the Attorney General's authority to impose charitable care conditions on a buyer as

28  part of the Attorney General's review of the sale of a not-for-profit hospital is an "interest in

- 7 -

109353776\V-2

property" that can be stripped off the assets through a sale under § 363. *Id.* at 825-830. This ruling is consistent with rulings by many courts which have interpreted "any interest" expansively to include not only in rem interests in property, but also other obligations that are "connected to or arise from the property being sold" or that could "potentially travel with the property being sold." *In re La Paloma Generating, Co.*, 2017 WL 5197116, *4 (Bankr. D. Del. Nov. 9, 2017) (holding that emission surrender obligations created by California regulations and statutes and enforced by the California Air Resources Board are an interest in property which can be cut off by a § 363 sale) (quoting *In re Trans World Airlines, Inc.*, 322 F.3d 283, 285, 288 (3d Cir. 2001) (holding that plaintiff's interests in travel vouchers that were issued to settle employment discrimination are an interest under § 363 because they arise from the property being sold)); *see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 581-82 (4th Cir. 1996) (holding that coal mine operators could sell their assets free and clear of their obligations to a benefits plan and fund under the Coal Act); *PBBPC, Inc. v. OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860, 867-870 (1st Cir. B.A.P. 2013) (holding that debtor's assets could be sold free and clear of Commonwealth of Massachusetts's right to treat a purchaser of substantially all of the assets of chapter 11 debtor as a "successor employer" to which debtor's experience rating could be imputed to determine purchaser's unemployment insurance contribution); *In re ARSN Liquidating Corp. Inc.*, 2017 WL 279472, *5 (Bankr. D.N.H. Jan. 20, 2017) (Nat'l Council on Compensation Ins. violated sale order by imputing debtor's workers' compensation experience rating to buyer in setting buyer's workers' compensation experience rating); *In re Vista Marketing Group Ltd.*, 557 B.R. 630, 635-39 (Bankr. N.D. Ill. 2016) (free and clear language in sale order prevented a state sanitary district from asserting claim against asset purchaser for connection fee surcharge that was calculated based entirely on debtor's use of the district's sewer facilities); *United Mine Workers of Am. Combined Benefit Fund v. Walter Energy, Inc.*, 551 B.R. 631, 641 (N.D. Ala. 2016) (sale under § 363 cuts off Coal Act obligations despite language in Act imposing successor liability on buyer); *In re Christ Hospital*, 502 B.R. 158, 76-79 (Bankr. D.N.J. 2013) (section 363 sales cut off tort claims against purchaser of nonprofit hospital); *In re Tougher Indus.*, 2013 WL 1276501 at

**6-9 (Bankr. N.D.N.Y. Mar. 27, 2013) (holding that debtor's assets could be sold free and clear of New York State Department of Labor's right to use the debtor's experience rating to access the buyer's tax liability as successor to the debtor); *In re Grumman Olson Indus. Inc.*, 467 B.R. 694, 702–03 (S.D.N.Y 2012) ("Section 363(f) can be used to sell property free and clear of claims that could otherwise be assertable against the buyer of the assets under the common law doctrine of successor liability"); *WBO P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBO P'ship)*, 189 B.R. 97, 104–05 (Bankr. E.D. Va. 1995) (holding that Commonwealth of Virginia's right to recapture depreciation is an "interest" as that term is used in § 363(f)).

That the interests here are imposed by the AG under California law does not alter the impact of § 363. As shown above, "[c]ourts have held that interests in property include monetary obligations arising from the ownership of property, even when those obligations are imposed by statute" and are subject to the legal requirements of a sale under § 363. *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. at 825; *see also In re Tougher Indus.*, 2013 WL 1276501 at **6-9; *Walter Energy, Inc.*, 551 B.R. at 641; *In re Leckie Smokeless Coal Co.*, 99 F.3d 573. Courts have long recognized "[t]he exclusive authority of Congress and the federal courts to pass and enforce the bankruptcy laws." *In re Old Carco LLC,* 442 B.R. 196, 207 (S.D.N.Y. 2010) (citing *Int'l Shoe v. Pinkus,* 278 U.S. 261, 263-64 (1929) ("A state is without power to make or enforce any law governing bankruptcies that impairs the obligation of contracts or . . . conflicts with the national bankruptcy laws.")). There is little question that, broadly speaking, federal bankruptcy law preempts state law. *See Myers v. United States*, 297 B.R. 774, 783 (S.D. Cal. 2003). The Bankruptcy Code itself provides for an automatic stay of all state proceedings against the debtor, § 362, and federal preemption in the field of bankruptcy extends to orders of the bankruptcy courts, which are vested "with authority to implement the federal statutory scheme" by the Bankruptcy Code. *Old Carco,* 442 B.R. at 209 (holding that principles of preemption preclude application of state car dealership franchise laws that conflict with orders issued by court in bankruptcy proceedings).

The Conditions are an interest in property subject to § 363(f) because they are based on the historical experience of the prior operator and applied to provide a base line for future

operations of the hospital. An "interest" can refer to any claim or obligation that is connected to or arises from the property being sold in a § 363 sale. *In re Trans World Airlines, Inc.*, 322 F.3d at 289-90 (3d Cir. 2003) (followed by *In re PW, LLC*, 391 B.R. 25, 41 (B.A.P. 9th Cir. 2008) ("We believe that Congress intended 'interest' to have an expansive scope, as shown by [*Trans World*]"). Courts have held such conditions can be cut off by a sale under § 363. For example, Tougher Industries Enterprises, LLC and Tougher Mechanical Enterprises, LLC, bought substantially all of the assets of debtors in a sale under § 363. After the sale closed, the New York Department of Labor imposed on the buyers an elevated experience rating for the purposes of calculating their unemployment insurance premiums based on the high experience rate of the predecessor companies. The purchasers went back to court and argued that the assets they purchased were free and clear of any interests, including the debtors' not-so-favorable experience rating. The bankruptcy court agreed with the purchaser. *Tougher Indus.*, 2013 WL at **6-9. Similarly, the First Circuit Bankruptcy Appellate Panel has concluded that "the transfer of an employer's unemployment insurance contribution rate to a successor asset purchaser is really an attempt to recover the money that the predecessor employer would have paid if it had continued in business" and therefore is an "interest" from which the property can be sold free and clear under § 363. *PBBPC, Inc.,* 484 B.R. at 869. The imposition of the Conditions is much like the experience rating or the unemployment insurance ratings, and should be subject to § 363.

The Response argues in effect that there is something unique about the Conditions, asserting that the AG's review and the Conditions are all about the effect of a transaction on the "availability and accessibility of healthcare services to the affected community." Response, at 6, lines 1-3 ("The **most significant question** is whether the proposed transaction will adversely affect the availability and accessibility of healthcare services to the community."); at 6, lines 9-11 ("**the primary purpose** of the conditions is to ensure the availability and accessibility of healthcare services to the affected community.") (emphasis added). However, there is no evidence to support the "significance" or "primacy" of this factor in the statutes or regulations cited as support for these assertions. To the contrary, the California Corporations Code merely lists this as one of 10 factors and of equal importance with, for example, the effect of the

1 proposed transaction on the availability and accessibility of cultural interests in the facility. Cal.
2 Corp. Code § 5917(a)-(j). It fairs no better in the California Code of Regulations where it is one
3 of more than a dozen factors and subfactors to be considered, with no indication of relevance or
4 relative importance. Cal. Code. Regs. tit. 11, § 999.5(f)(1)-(13).

5   This argument also fails because it tramples on the supremacy of federal bankruptcy law.
6 The imposition of successor liability in this context would effectively defeat the possibility of
7 selling the Debtors' assets "free and clear" of the liabilities of the Debtors, which would
8 inevitably result in purchasers' being unwilling to pay as much for those assets. This would run
9 counter to one of the core policies of the Bankruptcy Code in general, and § 363 in particular, of
10 "maximizing the value of the bankruptcy estate." *See, e.g., Toibb v. Radloff*, 501 U.S. 157, 163
11 (1991); *United Mine Workers of Am. Combined Benefit Fund v. Walter Energy, Inc.*, 551
12 B.R. 631, 641 (N.D. Ala. 2016); *Myers*, 297 B.R. at 784 ("In Chapter 11 proceedings, the court is
13 trying to obtain and preserve as many assets as it can to protect secured and unsecured creditors.
14 To do so, it needs to approve sales of assets to third parties."). Additionally, the Conditions do
15 not, at least on their face, uniformly relate to the health or safety of the community, or serve to
16 further availability or accessibility of healthcare. For example, there is currently pending before
17 the Court a motion to allow the Debtors to reject an financially onerous management contract of
18 the Debtors. Nonetheless, continuation of that contract was a condition imposed by the AG.

19   The Response argues that the imposition of the Conditions is an exercise of the police or
20 regulatory powers of the AG. However, it is not clear that there is a "police powers" exception to
21 the powers granted a debtor by § 363. For example, § 362 has an express exception to the
22 automatic stay for a governmental act which is an exercise of its police or regulatory powers. The
23 absence of such an exception to the powers granted under § 363 should indicate that there is no
24 such exception to the rule. *Gorbach v. Reno*, 219 F.3d 1087, 1093 (9th Cir. 2000) ("A particular
25 statutory provision must be read in context with a view to its place in the statutory scheme, not in
26 isolation.").

27   Moreover, even if there were such an exception, presumably the tests applicable to
28 interpretation of the police or regulatory powers exception would provide useful guidance. One

- 11 -

109353776\V-2

of them, § 362(b)(4), often called the "government regulatory exemption," provides that the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power." *In re Universal Life Church, Inc.,* 128 F.3d 1294, 1297 (9th Cir. 1997) (internal citations omitted). Courts in the Ninth Circuit have applied two alternative tests when determining whether government action falls under the government regulatory exemption: the pecuniary purpose test and the public policy test. *Id.* Under the pecuniary purpose test, the court must determine "whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare." *Id.* By contrast, under the public policy test, the court must determine whether the government's action is intended to either "effectuate public policy" or to "adjudicate private rights." *Id*. If the court determines that the government's action is intended either to protect the government's pecuniary interest in the debtor's property or to adjudicate private rights, the government regulatory exemption will not apply and the automatic stay will be imposed. *Id*.

     First, the phrase 'police or regulatory power" is not as broad as the AG would suggest; and the Ninth Circuit holds that it "refers to the enforcement of laws affecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court." *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997), as amended on denial of reh'g (Dec. 30, 1997).  The bankruptcy court has wide discretion to ascertain whether public health and safety is truly at the heart of the relief sought - or is being conveniently and remotely clung to as a toehold to gain an advantage in the bankruptcy case, particularly to financially benefit third parties.  For instance, in *In re FirstEnergy Sols. Corp.*, 2018 WL 2315916 (Bankr. N.D. Ohio May 18, 2018), the Bankruptcy Court for the Northern District of Ohio found that the Federal Energy and Regulatory Commission (FERC) could not continue a proceeding under the public safety exception that - though it was "incidentally related to the core public policy" of FERC because it involved energy commerce - was principally concerned with obtaining  "a pecuniary advantage to those counterparties relative to other similarly situated creditors of the estate" by essentially seeking "to elevate. . .obligations

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

to counterparties [as] administrative expenses." *Id.* at **10-11.  The Court held: "when the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-a-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities." *Id.* at *9.

Second, courts have recognized that states that impose conditions on buyers that require the buyers to make good on obligations of the debtor violate the Bankruptcy Code.  *See, e.g., In re Aurora Gas, LLC,* 2017 WL 4325560 (Bankr. D. Alaska Sep. 26, 2017) (holding that state's condition to its approval of sale in bankruptcy was buyer paying unpaid obligations of debtor under state law violates the Bankruptcy Code and is unenforceable.).

Third, the Conditions do not relate to protecting the health of the community, but rather deal with the business operations of the Debtors.  It is telling that the AG has no general powers over hospitals in California and cannot generally impose such onerous conditions on hospitals to protect the "availability or accessibility" of California residents to hospital services. Rather, it is only in the context of the AG's authority over NFP assets that he gains any authority over hospitals in California.

Finally, the AG fails to explain how the Debtors, buyers or the Court are expected to deal with their assertions in the Response concerning their powers vis-à-vis the Conditions.  For example, the Response states that any buyer must agree to perform in accordance with the existing conditions and that the AG has the ability to obtain an order of specific performance to compel the Debtors and or a buyer to perform in accordance with the Conditions.  The extent of this argument is unclear: is the AG arguing that it can compel a buyer to accept the Conditions, even if it is unwilling to do so? That the AG could get an order of specific performance to force a prospective buyer to accept these Conditions?  Or, is the AG arguing that he can get an order of specific performance to compel the Debtors to only sell the hospitals to buyers who accept the Conditions? And if there are no buyers willing to accept the Conditions, is the AG arguing that it can get an order of specific performance compelling the Debtors to keep the hospitals open?  If so, where does the AG propose the money is coming from to sustain those operations (given that

1  the Debtors lose $175 million annually as an enterprise).  No, the most likely outcome of the AG

2  insisting on the continuing requirement of the existing Conditions is that no buyer will come

3  forward to acquire the assets and the hospitals will be closed.  *See Myers*, 297 B.R. at 784 ("Third

4  parties cannot assess 'worth' if the Bankruptcy Court orders that they take the assets free and

5  clear of any and all claims whatsoever, but nonetheless, unsecured creditors can 'lie in the weeds'

6  and wait until the bankruptcy court approves a sale before it sues the purchasers.").  If the AG is

7  *primarily* concerned with the continued availability and accessibility of healthcare to the

8  communities served by the hospitals, it is impossible to see how the AG's rigid insistence on the

9  continued application of these Conditions furthers that goal.

10 **V.    CONCLUSION**

11      For the reasons stated above, the AG's "Response", to the extent it is an objection, should

12 be overruled.

14 Dated:  October 17, 2018

                                                DENTONS US LLP
15                                              SAMUEL R. MAIZEL
                                                TANIA M. MOYRON

17                                              By  */s/ Samuel R. Maizel*
                                                    Samuel R. Maizel
18
                                                Proposed Attorneys for the Chapter 11
19                                              Debtors and Debtors In Possession

- 14 -

109353776\V-2