**FILED & ENTERED**

**OCT 22 2018**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY evangeli  DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: Verity Health System of California, Inc., *et al.*,<br><br>        Debtors and Debtors in Possession. | Lead Case No.:   2:18-bk-20151-ER<br>Chapter:              11 |
| ☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Medical Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>        Debtors and Debtors in Possession., | **MEMORANDUM OF DECISION (1) OVERRULING OBJECTIONS TO THE (A) PREPETITION WAGES MOTION AND (B) FINANCING MOTION AND (2) DENYING MOTION FOR RECONSIDERATION OF THE FINAL FINANCING ORDER**<br><br>Jointly Administered With:<br>Case No. 2:18-bk-20162-ER;<br>Case No. 2:18-bk-20163-ER;<br>Case No. 2:18-bk-20164-ER;<br>Case No. 2:18-bk-20165-ER;<br>Case No. 2:18-bk-20167-ER;<br>Case No. 2:18-bk-20168-ER;<br>Case No. 2:18-bk-20169-ER;<br>Case No. 2:18-bk-20171-ER;<br>Case No. 2:18-bk-20172-ER;<br>Case No. 2:18-bk-20173-ER;<br>Case No. 2:18-bk-20175-ER;<br>Case No. 2:18-bk-20176-ER;<br>Case No. 2:18-bk-20178-ER;<br>Case No. 2:18-bk-20179-ER;<br>Case No. 2:18-bk-20180-ER;<br>Case No. 2:18-bk-20181-ER;<br><br>Chapter 11 Cases.<br><br>Date:        October 3, 2018<br>Time:       10:00 a.m.<br>Location:  Ctrm. 1568<br>                 Roybal Federal Building<br>                 255 East Temple Street<br>                 Los Angeles, CA 90012 |

Before the Court are objections asserted by the Retirement Plan for Hospital Employees ("RPHE"), the Service Employees International Union, United Healthcare Workers-West ("SEIU-UHW"), the United Nurses Associations of California/Union of Health Care Professionals ("UNAC"), and the California Nurses Association ("CNA") (collectively, the "Objectors") to the Debtors' proposed treatment of certain defined benefit pension obligations. For the reasons set forth below, the Court finds that the Objectors' request for a determination that certain pension underfunding obligations constitute an administrative expense is not properly before the Court. Therefore, the Objectors' request that the pension underfunding obligations be accorded administrative claims treatment is denied without prejudice to the Objectors' ability to raise the issue by way of motion.

## I. Background

On August 31, 2018 (the "Petition Date"), Verity Health Systems of California, Inc. ("VHS") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[1] On August 31, 2018, the Court entered an order

---

[1] The Court has reviewed the following papers in adjudicating this matter:
1) Emergency Motion of Debtors for Order: (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages and Salaries, and (B) Pay and Honor Employee Benefits and Other Workforce Obligations; and (II) Authorizing and Directing the Applicable Bank to Pay All Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing [Doc. No. 22] (the "Prepetition Wages Motion")
    a) Declaration of Richard Adcock in Support of Emergency First-Day Motions [Doc. No. 8]
    b) Order Setting Hearing on First Day Motions [Doc. No. 18]
    c) Amended Notice of Hearings on Emergency First-Day Motions Filed by Debtors [Doc. No. 34]
    d) Declaration of Service by Kurtzman Carson Consultants, LLC re Emergency First-Day Motions, Exhibit B [Doc. No. 50]
    e) Order Granting Emergency Motion of Debtors for Order: (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages and Salaries, and (B) Pay and Honor Employee Benefits and Other Workforce Obligations; and (II) Authorizing and Directing the Applicable Bank to Pay All Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing [Doc. No. 75]
2) Emergency Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to Obtain Post-Petition Financing, (B) Authorizing the Debtors to Use Cash Collateral, and (C) Granting Adequate Protection to Prepetition Secured Creditors Pursuant to 11 U.S.C. §§105, 363, 364, 1107, and 1108 [Doc. No. 31] (the "Financing Motion")
3) Papers Filed in Opposition:
    a) SEIU-UHW's Objection to [Prepetition Wages Motion and Financing Motion] [Doc. No. 213]
        i) Declaration of Caitlin Gray in Support of SEIU-UHW's Opposition to [Prepetition Wages Motion and Financing Motion] [Doc. No. 214]
        ii) Declaration of David Miller in Support of SEIU-UHW's Opposition to [Prepetition Wages Motion and Financing Motion] [Doc. No. 215]
    b) Limited Objection of Retirement Plan for Hospital Employees to [Prepetition Wages Motion] [Doc. No. 229]
        i) Objection of Retirement Plan for Hospital Employees to [Financing Motion] [Doc. No. 218]
    c) Objection by Creditor California Nurses Association to [Prepetition Wages Motion] [Doc. No. 223]
    d) Limited Objection of UNAC to Debtors' Motion for Entry of Final Order to Pay Prepetition Employee Wages, Etc. [Doc. No. 296]
    e) Limited Objection of UNAC to Debtors' Motion for Entry of Final Orders (A) Authorizing the Debtors to Obtain Post-Petition Financing, Etc. [Doc. No. 297]
4) Omnibus Response to Objections to [Prepetition Wages Motion] [Doc. No. 310]
5) Retirement Plan for Hospital Employees' Notice of Motion and Motion to Alter or Amend Final Order (I) Authorizing Post Petition Financing, Etc. [Doc. No. 559]

granting the Debtors' motion for joint administration of the Debtors' Chapter 11 cases. Doc. No. 17.

On September 5, 2018, the Court entered an *Order Granting Emergency Motion of Debtors for Entry of Order: (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages and Salaries, and (B) Pay and Honor Employee Benefits and Other Workforce Obligations; and (II) Authorizing and Directing the Applicable Bank to Pay all Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing* [Doc. No. 75] (the "Prepetition Wages Order"). The Prepetition Wages Order authorized the Debtors to pay wages and employee benefits that had been accrued pre-petition, up to the priority amounts set forth in §507(a)(4) and (5).

The Prepetition Wages Order further authorized the Debtors to continue to pay, in the ordinary course of business, certain post-petition pension obligations. *See* Prepetition Wages Order at ¶23.

At the interim hearing on the Prepetition Wages Motion, the Service Employees International Union, United Healthcare Workers-West ("SEIU-UHW") requested that the Prepetition Wage Order be entered on an interim, rather than final, basis. SEIU-UHW requested that a final hearing be held so that it could have the opportunity to object to the Debtors' position regarding the payment of various pension obligations. The Debtors did not oppose entry of the Prepetition Wage Order on an interim basis. The Court set this final hearing on the Prepetition Wages Motion to allow the parties an opportunity to object to the Debtors' proposal with respect to the ongoing payment of defined benefit pension obligations. No parties object to the Debtors' payment to employees of prepetition wages and benefits; at issue is the Debtors' ongoing obligation to make postpetition payments in connection with various defined benefit pension obligations.

### A. Background Information on Defined Benefit Pension Plans

Defined benefit pension plans are employer-funded retirement plans created for the benefit of both active and inactive participating employees. Under a defined benefit pension plan, a pension fund is obligated to pay a specified benefit to employees covered by the plan upon their retirement and in accordance with the terms of the plan document. Thus, as employees earn their retirement benefits over time, the pension fund is accumulating fixed liabilities that will become due as employees retire and begin collecting their pensions. All defined benefit plans are funded through contributions made by employers that have employees participating in the plan.

Defined benefit pension plans apply the employers' contributions to satisfy three separate categories of costs. First, the contributions are used to pay for the expenses of administering the plan, including, for example, investment advisor and legal fees. Second, the contributions are used to pay for the value of the new benefits that accrue for participants each year. Although there can be some variation in how the value of those benefits is determined, actuaries refer to that value as the "normal cost" of the plan. If, after satisfying both administrative costs and the normal cost, there are any funds remaining from the contribution made by employer(s), those funds are used to satisfy underfunding or to create or increase a surplus.

Thus, at any given point in time, a defined benefit pension plan uses contributions made by an employer to satisfy one of three categories of costs: costs of administering the fund, the "normal cost," and the costs of underfunding. The percentage of contributions allocated to each category of costs varies by plan and depends on a variety of factors, including a plan's funding levels.

**B. Characteristics of the Debtors' Defined Benefit Pension Plans**

Debtor VHS maintains two single employer defined benefit pension plans—Verity Plan A and Verity Plan B. VHS participates in two multi-employer defined benefit pension plans—the Retirement Plan for Hospital Employees ("RPHE") and the Local 39 Stationary Engineers' Plan (the "Local 39 Plan"). Debtors VHS and Verity Medical Foundation ("VMF") also maintain several defined contribution retirement plans for employees, which are not at issue.

In 2012, the RPHE was amended to freeze all future benefit accruals, except that the freeze does not apply to members of the California Nurses Association ("CNA") employed at O'Connor Hospital, Saint Louise Regional Medical Center, or Seton Medical Center. Employee benefits under the RPHE are calculated under a formula that considers the employee's years of service and compensation. VHS contributions to the RPHE are based on actuarially determined amounts established by the RPHE Board of Trustees.

Verity Plan A has been frozen as to all future benefit accruals, except that CNA members may continue to accrue new benefits. Verity Plan B has been completely frozen, such that no employees are eligible to accrue ongoing benefits.

Verity Plan A and the RPHE are both underfunded, according to documents filed with the Department of Labor in 2016. Verity Plan A holds current assets worth approximately $259 million, but has current liabilities of approximately $423 million.[2] RPHE holds current assets worth approximately $1.06 billion, but has current liabilities of approximately $2.07 billion.[3]

A substantial percentage of VHS' liability under both Verity Plan A and the RPHE is attributable to underfunding costs. For the reasons more fully explained below, at this juncture it would be premature for the Court to make any findings regarding the exact amount of VHS' underfunding liabilities. However, to provide context, the Court notes that according to RPHE, VHS' underfunding liability in connection its pension plan is $2,494,941 for the period from September 1 through December 31, 2018; VHS' liability for the plan's normal costs and costs of administration for the same period is $1,756,757.

**C. The Debtors' Collective Bargaining Agreements**

Certain of the Debtors are parties to collective bargaining agreements ("CBAs") with SEIU-UHW, CNA, and UNAC. The Debtors have not sought authorization to reject any of the CBAs pursuant to §1113. The terms of the CBAs require the Debtors to continue to make contributions to Verity Plan A and the RPHE.

**D. The Postpetition Financing Order**

On October 4, 2018, the Court entered a *Final Order (I) Authorizing Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Doc. No. 409] (the "Final Financing Order"). Among other things, the Final Financing Order authorized the Debtors to obtain postpetition financing from Ally Financial, Inc. (the "DIP Lender") and to spend the proceeds of such financing in accordance with the *Debtor in Possession Budget* (the "DIP Budget"). Under the DIP Budget,

---

[2] *See* Schedule SB (Form 5500), Single-Employer Defined Benefit Plan Actuarial Information, at lines 2(a) and 3(d) [Doc. No. 214, Ex. A].
[3] *See* Schedule MB (Form 5500), Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information, at lines 2(a) and 2(b)(4) [Doc. No. 214, Ex. B].

the Debtors' payments to Verity Plan A and the RPHE do not include liabilities arising on account of underfunding.

### E. Objections to the Prepetition Wages and Financing Motions Asserted by RPHE, SEIU-UHW, CNA, and UNAC

RPHE, SEIU-UHW, CNA, and UNAC (the "Objectors") object to the exclusion of the Debtors' pension underfunding obligations from the DIP Budget and from the proposed postpetition wage payments. According to the Objectors, pension underfunding obligations constitute an administrative expense that must be provided for in the DIP Budget and that must be paid simultaneously with the Debtors' payment of wages and other operational costs. RPHE contends that if pension underfunding obligations are not paid on a weekly basis, the Debtors' employees will unfairly be forced to bear the risk that the Debtors will not have sufficient funds on hand to pay the obligations at plan confirmation. RPHE asserts that the Debtors' plan to quickly sell the Debtors' two most valuable hospitals heightens this risk. On October 17, 2018, RPHE filed a motion for reconsideration of the Final Financing Order (the "Motion to Reconsider"). The Motion to Reconsider reiterates and expands upon the arguments presented by RPHE in opposition to the Prepetition Wages and Financing Motions, but does not present new arguments or new evidence.

SEIU-UHW, CNA, and UNAC assert an additional, albeit related, objection. According to this subset of the Objectors, the Debtors are required to continue paying pension underfunding obligations unless and until the Court approves the rejection of the Debtors' CBAs pursuant to §1113(f). The Objector's theory is that the Debtors' non-payment of the pension funding obligations constitutes an impermissible breach of the unrejected CBAs.

## II. Findings and Conclusions
### A. The Objectors' Request for a Determination that the Debtors' Underfunding Obligations Constitute an Administrative Expense is Not Properly Before the Court

Section 503(a) provides that an "entity may timely file a request for payment of an administrative expense, or may tardily file such a request if permitted by the court for cause." Section 503(b) provides for the allowance of administrative expenses after notice and a hearing. Section 1129(a)(9) conditions confirmation of a plan upon payment, in cash, of all administrative expenses as of the effective date of the plan.

According to the leading treatise:

> [The Bankruptcy Code] neither expressly prohibits nor expressly authorizes paying administrative expenses earlier than upon the effective date of a plan …. Generally, courts have held that the timing for payment of administrative claims is a matter to be determined within the discretion of the bankruptcy court. Factors influencing the exercise of this discretion may include the status of the case, the ability of the debtor to pay present claims, the particular needs of administrative claimants and the possibility that future administrative claims may not be paid in full.

4 COLLIER ON BANKRUPTCY ¶ 503.03[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

In *Spartan Plastics v. Verco Indus. (In re Verco Indus.)*, 20 B.R. 664, 664–65 (B.A.P. 9th Cir. 1982), the court rejected a creditor's contention that it was entitled to immediate payment of an administrative claim, explaining that the "determination of when an administrative expense is to be paid is within the discretion of the trial court." *Verco Industry's* holding has been widely

adopted. *See, e.g.*, *In re LTV Steel Co.*, 288 B.R. 775, 779 (Bankr.N.D.Ohio 2002) (denying immediate payment of administrative expenses because the Bankruptcy Code does not require it and instead requires parity amongst administrative claims); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004) (stating that "distributions prior to confirmation of a plan are usually disallowed when the estate may not be able to pay all administrative expenses in full"); *Varsity Carpet Serv., Inc. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1384 (11th Cir.1994) (holding that due to the existence of higher priority claims, it was within the discretion of the court to delay payment of administrative expenses).

The objections filed to the Prepetition Wages and Financing Motion seek the following relief: first, a determination that the Debtors' pension underfunding obligations are an administrative expense; and second, a determination that the Debtors are required to immediately pay this alleged administrative expense. The Court declines to grant either form of relief at this time.

With respect to the first form of relief sought, the request for a determination that the pension funding obligations are an administrative expense is not properly before the Court. Instead of filing noticed motions seeking a determination as to the administrative expense status of the pension underfunding obligations, the Objectors requested the relief in objections to the Debtors' Prepetition Wages and Financing Motions, and in a motion for reconsideration of the Final Financing Order. As a result of the manner in which the Objectors presented their arguments, the issue has not been fully briefed and the record remains incomplete.

For an issue of this importance and complexity, a complete record is essential. To determine whether the pension underfunding obligations qualify as administrative expenses, the Court must determine whether such obligations qualify as an "actual" and "necessary" cost of preserving the estate. §507(b)(1)(A). Here the determination is both factually and legally intensive, and will most likely require the Court to (1) apply the Employee Retirement Income Security Act ("ERISA"), (2) examine and make findings regarding the actuarial assumptions applied by trustees of the pension plans, and (3) determine what effect, if any, such actuarial assumptions have upon the characterization of the underfunding obligations as a pre-petition or post-petition liability. Because the Objectors did not file separately-noticed motions seeking administrative treatment of the underfunding obligations, the record contains neither sufficient evidence or legal argument to enable the Court to properly decide the issue. Therefore Objectors' request that the pension underfunding obligations be accorded administrative claims treatment is denied without prejudice to the Objectors' ability to raise the issue by way of separately noticed motions.

With respect to the second form of relief sought, as discussed above, it is well established that the Court has broad discretion in determining when the Debtors are required to pay an administrative claim. Even if the Debtors' underfunding obligations do constitute an administrative claim (a finding the Court does not make), nothing in the Bankruptcy Code requires that the claim be immediately paid. Consequently, it is appropriate to require the Objectors to present their arguments regarding this issue by way of motion as contemplated by §503, so that this important issue can be decided based upon a complete record.

**B. Section 1113 Does Not Require the Debtors to Immediately Pay the Underfunding Obligations**

Certain of the Objectors assert that the Debtors are required to immediately make payments on account of the pension underfunding obligations because the Debtors have not obtained rejection of the CBAs which mandate such payments. In support of this contention, SEIU-UHW

cites *Adventure Resources, Inc. v. Holland (In re Adventure Resources)*, 137 F.3d 786 (4th Cir. 1998), in which the court held that where the debtor had not rejected a collective bargaining agreement under §1113 forty-three months after seeking bankruptcy protection, the debtor had assumed the collective bargaining agreement through inaction. The *Adventure Resources* court ruled that the debtor was required to make postpetition payments due under the collective bargaining agreement.

*Adventure Resources* is readily distinguishable. This case is approximately six weeks old. There is no indication that the Debtors are engaged in the type of unreasonable delay with respect to CBAs that was at issue in *Adventure Resources*.

SEIU-UHW's reliance upon *Teamsters Indus. Sec. Fund v. World Sales (In re World Sales, Inc.)*, 183 B.R. 872, 878 (B.A.P. 9th Cir. 1995) is likewise misplaced. *World Sales* held that claims based on the debtor's unperformed post-petition obligations under an unrejected CBA "must be given administrative status, even where the CBA is subsequently modified or rejected pursuant to §1113." *World Sales*, 183 B.R. 878.

*World Sales'* holding has been rejected by *In re Certified Air Techs., Inc.*, 300 B.R. 355, 369 (Bankr. C.D. Cal. 2003), which the Court finds to be the better-reasoned opinion. *Certified Air* provides in relevant part:

> Section 1113 was enacted to protect the existence of collective bargaining agreements in chapter 11 cases, not to re-order the priority scheme set by Congress in § 507. Had Congress intended for § 1113 to create a super-priority for pre-petition wage and benefit claims arising under a collective bargaining agreement, it would have either included language in § 1113 similar to that incorporated into § 1114 or amended § 507 to reflect the change it intended. Because Congress neither included explicit language in § 1113 to supersede § 507 nor amended § 507 to specifically create a super-priority status for such claims, the court concludes that pre-petition claims for wages and benefits due under a collective bargaining agreement are not entitled to treatment as administrative expenses but are to be accorded priority consistent with § 507.

*Certified Air*, 300 B.R. at 369.

The Court follows *Certified Air*, and finds that claims arising under an unrejected CBA are not entitled to administrative status solely on the grounds that the CBA has not been rejected. This finding does not rule out the possibility that such claims may be entitled to administrative status for other reasons. However, as discussed above, the Court declines to determine at this point whether the Debtors' pension underfunding obligations are entitled to administrative status.

## III. Conclusion

Based upon the foregoing, the objections of RPHE, SEIU-UHW, CNA, and UNAC to the Prepetition Wages and Financing Motions are OVERRULED. RPHE's motion seeking reconsideration of the Final Financing Order is DENIED.

###

Date: October 22, 2018

Ernest M. Robles
United States Bankruptcy Judge