# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**      **Hearing Room**    **1568**

**10:00 AM**
**2:18-20151**     **Verity Health System of California, Inc.**     **Chapter 11**

    **#9.00**    HearingRE: [365] Motion For Sale of Property of the Estate under Section 363(b) - No Fee Debtors Notice Of Motion And Motion For The Entry Of (I) An Order (1) Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For Prospective Overbidders To Use, (2) Approving Auction Sale Format, Bidding Procedures And Stalking Horse Bid Protections, (3) Approving Form Of Notice To Be Provided To Interested Parties, (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest Bidder And (5) Approving Procedures Related To The Assumption Of Certain Executory Contracts And Unexpired Leases; And (II) An Order (A) Authorizing The Sale Of Property Free And Clear Of All Claims, Liens And Encumbrances; Memorandum Of Points And Authorities In Support Thereof  (Moyron, Tania)

          Docket     365

**Matter Notes:**

    10/24/2018

    The tentative ruling will be the order.
    Party to lodge order: Movant

### POST PDF OF TENTATIVE RULING TO CIAO

**Tentative Ruling:**

10/23/2018 (amended after hearing)

For the reasons set forth below, the Bidding Procedures Motion is GRANTED with agreed to amendments as set forth on the record.

**Pleadings Filed and Reviewed:**
1) Debtors' Notice of Motion and Motion for the Entry of (I) An Order (1) Approving Form of Asset Purchase Agreement for Stalking Horse Bidder and for Prospective Overbidders to Use, (2) Approving Auction Sale Format, Bidding

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 24, 2018**                                                                                          **Hearing Room    1568**

10:00 AM
**CONT...**          **Verity Health System of California, Inc.**                                                                                          **Chapter 11**

        Procedures and Stalking Horse Bid Protections, (3) Approving Form of Notice to
        be Provided to Interested Parties, (4) Scheduling a Court Hearing to Consider
        Approval of the Sale to the Highest Bidder and (5) Approving Procedures Related
        to the Assumption of Certain Executory Contracts and Unexpired Leases; and (II)
        An Order (A) Authorizing the Sale of Property Free and Clear of All Claims,
        Liens and Encumbrances [Doc. No. 365] (the "Bidding Procedures Motion")
        a) Notice of Sale of Estate Property [Doc. No. 366]
        b) Declaration of Richard G. Adcock in Support of [Bidding Procedures Motion]
           [Doc. No. 393]
        c) Declaration of James Maloney in Support of [Bidding Procedures Motion]
           [Doc. No. 394]
    2) Opposition Papers:
        a) Limited Objection of the Federal Communications Commission to [Bidding
           Procedures Motion] [Doc. No. 437]
        b) Limited Objection of Pension Benefit Guaranty Corporation to [Bidding
           Procedures Motion] [Doc. No. 439]
        c) Reservation of Rights of Premier, Inc. and its Subsidiaries in Relation to
           [Bidding Procedures Motion] [Doc. No. 444]
        d) Objection of Cigna Entities to [Bidding Procedures Motion] [Doc. No. 445]
        e) Objection of the U.S. Department of Health and Human Services and Centers
           for Medicare and Medicaid Services to [Bidding Procedures Motion] [Doc.
           No. 447]
           i) Stipulation to Postpone Hearing on Objection of the U.S. Department of
               Health and Human Services and Centers for Medicare and Medicaid
               Services to Debtors' Sale Procedures Motion and Allow Further Briefing
               [Doc. No. 613]
        f) SEIU-UHW's Objection and Reservation of Rights to [Bidding Procedures
           Motion] [Doc. No. 450]
           i) Declaration of David Miller in Support of SEIU-UHW's Objection [Doc.
               No. 453]
        g) Conditional Opposition to [Bidding Procedures Motion] [filed by OCH Forest
           1] [Doc. No. 452]
           i) Declaration of Charles Toeniskoetter in Support of Conditional Opposition
               to [Bidding Procedures Motion] [Doc. No. 456]
        h) Local 39's Objection and Reservation of Rights to [Bidding Procedures
           Motion] [Doc. No. 458]

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 24, 2018**                                                                                       **Hearing Room    1568**

<u>10:00 AM</u>
**CONT...        Verity Health System of California, Inc.                                                                       Chapter 11**

- i) Limited Objection of Retirement Plan for Hospital Employees to Debtors' Motion for Entry of an Order Approving Bidding Procedures, Etc. [Doc. No. 460]
- j) Response to Debtors' [Bidding Procedures Motion] [filed by the California Attorney General] [Doc. No. 463]
    - i) Sur-Reply to Debtor's Reply to Response of California Attorney General to Bid Procedures Motion [Doc. No. 619]
- k) California Nurses Association Objection to Debtors' [Bidding Procedures Motion] [Doc. No. 465]
- l) Official Committee of Unsecured Creditors' Limited Objection to Debtor's Sale Motion [Doc. No. 490]
    - i) Declaration of Cynthia A. Nelson in Support of Official Committee of Unsecured Creditors' Limited Objection to Debtors' Sale Motion [Doc. No. 491]
- m) Limited Objection and Reservation of Rights of Verity MOB Financing LLC and Verity MOB Financing II LLC to [Bidding Procedures Motion] [Doc. No. 500]
- n) Objection of UMB Bank, N.A. as Master Trustee and Wells Fargo Bank, N.A. as Bond Trustee, to [Bidding Procedures Motion] [Doc. No. 557]
    - i) Declaration of Benjamin Ilhardt in Support of Objection of UMB Bank, N.A. as Master Trustee and Wells Fargo Bank, N.A. as Bond Trustee, to [Bidding Procedures Motion] [Doc. No. 557-1]
- o) Limited Objection and Reservation of Rights of U.S. Bank National Association, as Series 2017 Note Trustee, to [Bidding Procedures Motion] [Doc. No. 577]
- p) Reservation of Rights of INFOR (US), Inc. [Doc. No. 592]
- q) Engineers and Scientists of California Local 20, IFPTE, AFL-CIO/CLC's Objection and Reservation of Rights to [Bidding Procedures Motion] [Doc. No. 597]
    - i) Declaration of Danielle Lucido in Support of Engineers and Scientists of California Local 20, IFPTE, AFL-CIO/CLC's Objection and Reservation of Rights to [Bidding Procedures Motion] [Doc. No. 598]
3) Reply Papers:
    - a) Debtors' Reply to Response of California Attorney General to Debtors' Bid Procedures Motion [Doc. No. 560]
    - b) Omnibus Reply to Objections to [Bidding Procedures Motion] [Doc. No. 561]

# United States Bankruptcy Court
# Central District of California
Los Angeles
Judge Ernest Robles, Presiding
**Courtroom 1568 Calendar**

**Wednesday, October 24, 2018**                                                                 Hearing Room    1568

10:00 AM
**CONT...**        **Verity Health System of California, Inc.**                                                                 **Chapter 11**
    c) Debtors' Reply to Objection of U.S. Department of Health and Human Services and Centers for Medicare and Medicaid Services to Debtors Bid Procedures Motion [Doc. No. 562]
    d) Reply to Objections of UMB Bank and US Bank to [Bidding Procedures Motion] [Doc. No. 621]
        i) Objection to Declaration of Benjamin Ilhardt in Support of Objection of UMB Bank, N.A., as Master Trustee and Wells Fargo Bank, N.A., as Bond Trustee, to [Bidding Procedures Motion] [Doc. No. 622]
4) Papers filed in Connection with the California Attorney General's Motion to Continue the Hearing on the Bidding Procedures Motion:
    a) Notice of Motion and Motion to Continue the Hearing on Debtors' [Bidding Procedures Motion] [Doc. No. 599]
    b) Debtors' Opposition to Attorney General's Motion to Continue the Hearing on Debtors' [Bidding Procedures Motion] [Doc. No. 605]
    c) Official Committee of Unsecured Creditors' Objection to Motion to Continue Hearing on Debtors' [Bidding Procedures Motion] [Doc. No. 608]

## I. Facts and Summary of Pleadings

On August 31, 2018 (the "Petition Date"), Verity Health Systems of California ("VHS") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On August 31, 2018, the Court entered an order granting the Debtors' motion for joint administration of the Debtors' Chapter 11 cases. Doc. No. 17.

Debtors seek approval of procedures governing the sale of Saint Louise Regional Hospital ("St. Louise"), O'Connor Hospital ("O'Connor"), and related assets. Both hospitals are located in Santa Clara County. *See generally* Doc. No. 365 (the "Bidding Procedures Motion"). Pursuant to an Asset Purchase Agreement (the "APA") dated October 1, 2018, the assets to be sold (the "Assets") consist of:

    all assets, businesses, real property, personal property, equipment, supplies, software, contracts, leases, licenses/permits, books, records, offices, facilities, and all other tangible and intangible property (a) whatsoever and wherever located that is owned, leased, or used primarily in connection with the Businesses by a Hospital Seller, (b) located in Santa Clara County, California that is owned, leased, or used primarily in connection with the Businesses by Verity Holdings, and (c) whatsoever and wherever located that is owned, leased, or used by Verity primarily in connection with the Businesses, in each

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**       **Hearing Room**     **1568**

10:00 AM
**CONT...**       **Verity Health System of California, Inc.**      **Chapter 11**

case, except for the Excluded Assets. APA at ¶1.8.

Certain of the Debtors' liabilities are excluded from the sale. Most significant is the exclusion of all "Labor Obligations," defined in the APA to include all "collective bargaining agreements … that are in place with any labor unions …." APA at ¶8.13.

Under the APA, the County of Santa Clara is the stalking horse bidder (the "Stalking Horse Bidder"). The proposed Breakup Fee is $9.4 million, or 4.0% of the $235 million purchase price. The Stalking Horse Bidder is also entitled to reimbursement for its reasonable due diligence expenses (the "Expense Reimbursement"). The Stalking Horse Bidder has agreed to cap the sum of the Breakup Fee and the Expense Reimbursement at 5% of the purchase price (i.e., the Breakup Fee is 4% of the purchase price and therefore the Expense Reimbursement cannot exceed 1% of the purchase price, or $2.35 million).

Qualified overbidders (the "Overbidders") may participate in an auction to be held at the offices of the Debtors' counsel on December 10, 2018, at 10:00 a.m. To qualify to participate in the auction, Overbidders must provide a good-faith deposit in the amount of $23.5 million. The proposed minimum overbid amount is the Breakup Fee ($9.4 million) plus an additional bidding increment of $7.5 million. Overbids will be evaluated based upon several factors, including (1) the amount of such bid; (2) the risks and timing associated with consummating such bid; (3) any proposed revisions to the form of the APA; and (4) any other factors deemed relevant by the Debtors in their reasonable discretion, in consultation with the Official Committee of Unsecured Creditors (the "Committee"). If an auction is conducted, a hearing before the Court to approve the results of the auction (the "Sale Hearing") will take place on December 18, 2018.

The Debtors will seek to assume and assign certain contracts and leases to be identified in the Purchase Agreement (the "Assumed Executory Contracts"). Initially, the Assumed Executory Contracts will be those contracts and leases that the Debtors believe may be assumed and assigned as part of the orderly transfer of the Assets. The successful bidder may choose to exclude (or to add) certain contracts or leases to the list of Assumed Executory Contracts.

The Debtors will file with the Court and serve a Cure Notice upon each counterparty to the Assumed Executory Contracts. The Cure Notice will state the date, time, and place of the Sale Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts must be filed and served. The Cure Notice will also identify the amounts, if any, that the Debtors

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**                                                               Hearing Room    1568

10:00 AM
**CONT...**       **Verity Health System of California, Inc.**                                               **Chapter 11**

believe are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts"). To the extent that there is a contract added to the list of contracts to be assumed by the successful bidder selected at the auction, the Bidding Procedures Motion shall be deemed to constitute a separate motion to assume and assign that contract to the successful bidder pursuant to §365.

**A. Summary of the Objections Filed to the Bidding Procedures Motion and the Debtors' Replies in Support of the Motion**

The objections to the Bidding Procedures Motion, and the Debtors' reply to each objection, are summarized below. **[Note 1]**

1. Objection of the Federal Communications Commission [Doc. No. 437]

The Federal Communications Commission (the "FCC") states that certain of the Debtors hold wireless licenses, the transfer of which is subject to FCC approval. To preserve its rights, the FCC requests that any order approving the Bidding Procedures Motion (the "Bidding Procedures Order") contain the following language:

> Notwithstanding any other provision of this Order or any other Order of this Court, no sale, transfer or assignment of any rights and interests of a regulated entity in any federal license or authorization issued by the Federal Communications Commission ("FCC") shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder. The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

The Debtors assert that the FCC's objection is premature because any Licenses that may be subject to FCC regulation have not yet been designated for assumption and assignment.

2. Objection of the Pension Benefit Guaranty Corporation [Doc. No. 439]
The Pension Benefit Guaranty Corporation (the "PGBC") argues that the proposed

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**                                                                 Hearing Room    1568

10:00 AM
**CONT...        Verity Health System of California, Inc.                                                   Chapter 11**

Bidding Procedures should be modified to require that all bidders expressly state whether they intend to assume the Debtors' pension obligations. PBGC asserts that a bidder's assumption of pension liabilities would effectively eliminate or reduce PBGC's claims against each of the Debtors, thereby providing value to the Debtors' respective estates and increasing recoveries for other creditors. Accordingly, PBGC contends that when evaluating overbids, the Debtors should give credit for the value of the pension plans' liabilities that an Overbidder agrees to assume.

In reply, the Debtors assert that they have repeatedly stated that in assessing the highest and best offers, they will consider all forms of consideration, including the assumption of pension liabilities. The Debtors state that the inclusion of any particular language providing whether or not a bidder will assume particular liabilities is unnecessary, and that given the scope of pension liabilities, it would be remarkable if any Qualified Bidder's bid failed to indicate whether pension liabilities would be assumed.

3. Objection of Cigna Entities [Doc. Nos. 445 and 561]

The Debtors are parties to various agreements with Cigna Healthcare of California, Inc. ("Cigna CA") and Life Insurance Company of North America ("LINA," and together with Cigna CA, "Cigna"). The Cigna Provider Agreements provide covered healthcare services to eligible participants within the Cigna Provider Network who receive treatment at the Debtors' hospitals. The agreements with LINA provide group disability benefits for the Debtors' employee benefits program (the "LINA Contracts").

Cigna objects to the Bidding Procedures Motion on the following grounds:
1) The proposed Bidding Procedures do not provide Cigna sufficient time to object to the assignment and assumption of executory contracts. If the successful purchaser does not assume the Cigna Provider Agreements, patients receiving treatment at the hospitals will be severely prejudiced, because they will no longer be part of the Cigna Provider Network and therefore will no longer be eligible to receive healthcare at the hospitals. Cigna must receive at least sixty days' notice of any decision to assume or reject the Cigna Provider Agreements.
2) Similarly, the proposed Bidding Procedures do not provide Cigna with sufficient notice of the disposition of the LINA Contracts. The Bidding Procedures should be altered to provide that, absent consent from Cigna, unequivocal and irrevocable notice of the proposed assumption and

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 24, 2018**                                                                 **Hearing Room    1568**

10:00 AM
**CONT...**        **Verity Health System of California, Inc.**                                          **Chapter 11**

assignment of the LINA Contracts must be provided to Cigna and its counsel at least ten days prior to any hearing thereon.

In reply, the Debtors state that the notice demanded by Cigna is unreasonable, unduly burdensome to the estate, and could potentially delay the closing of the sale by up to two months. The Debtor states that the assumption and assignment procedures it has proposed are customary and reasonable, and that Cigna has failed to offer any support for the extraordinary divergence from customary practice that it requests.

4. Objection of the U.S. Department of Health and Human Services [Doc. Nos. 447, 562, and 613]

The United States Department of Health and Human Services and the Centers for Medicare and Medicaid Services (collectively, "HHS") objects to the APA's characterization of Medicare Provider Agreements held by St. Louise and O'Connor as licenses rather than as executory contracts. According to HHS, the Medicare Provider Agreements are executory contracts which may only be assumed and assigned in conformance with the requirements of §365.

The Debtors assert that HHS should be judicially estopped from arguing that the Medicare Provider Agreements are executory contracts, because HHS has argued before other federal courts that Medicare Provider Agreements are licenses.

On October 22, 2018, the Debtors and HHS entered into a stipulation, which provides that the issues raised by HHS' objection should be addressed in connection with the Sale Hearing rather than the Bidding Procedures Motion.

5. Objection of OCH Forest 1 [Doc. Nos. 452 and 561]

OCH Forest 1 ("OCH") entered into a Partnership Agreement with O'Connor, under which OCH is the General Partner and O'Connor is the Limited Partner. The purpose of the Partnership Agreement was to develop and invest in a medical office building located at 455 O'Connor Drive, San Jose, CA (the "455 Property"). Under the Partnership Agreement, OCH holds a right of first refusal with respect to the transfer of the 455 Property. OCH does not object to the proposed sale, but objects to any modification of the Partnership Agreement.

Debtors assert that nothing in the Bidding Procedures Motion impairs OCH's rights and that OCH's objection is premature and should be addressed in connection with the Sale Hearing.

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**                                                                 Hearing Room    1568

10:00 AM
**CONT...        Verity Health System of California, Inc.                                                          Chapter 11**

6. Objection of the California Attorney General and the Attorney General's Motion to Continue the Hearing on the Bidding Procedures Motion [Doc. Nos. 463, 599, 605, 608, and 619]

    In July 2015, the California Attorney General (the "Attorney General") reviewed a transaction between the Debtors' predecessor, Daughters of Charity Ministry Services Corporation ("Daughters") and BlueMountain Capital Management, LLC ("Blue Mountain"). In connection with the July 2015 transaction, the Attorney General imposed various conditions governing the operation of the Debtors' hospitals (the "2015 Conditions"). Among other things, the 2015 Conditions require the hospitals to furnish specified amounts of charitable care, to continue to provide certain types of health care services, and to continue to operate emergency departments in accordance with minimum requirements.

    The Attorney General asserts that any purchaser of the Assets remains bound by the 2015 Conditions. The Debtor disputes this contention, arguing that pursuant to § 363, the sale of the Assets may be free and clear of the 2015 Conditions. However, the Debtor further asserts that any disputes regarding the applicability of the 2015 Conditions are premature because it is possible that the winning purchaser will voluntarily agree to abide by the 2015 Conditions.

    On October 19, 2018, the Attorney General filed a motion seeking to continue the hearing on the Bidding Procedures Motion by at least three weeks. The Attorney General contends that he is unable to adequately review the APA because the schedules to the APA have not yet been supplied.

    The Debtors and the Official Committee of Unsecured Creditors (the "Committee") oppose any continuance of the Bidding Procedures Motion on the grounds that the Attorney General will have adequate time to review the APA schedules prior to the final Sale Hearing.

7. Objections of Entities Who Are Parties to or Benefit from Various Collective Bargaining Agreements with Certain of the Debtors [Doc. Nos. 450, 458, 460, 465, and 597]

    The International Union of Operating Engineers, Stationary Engineers Local 39 ("Local 39"), the Service Employees International Union, United Healthcare Workers-West ("SEIU-UHW"), the California Nurses Association (the "CNA"), and the Engineers and Scientists of California Local 20, IFPTE, AFL-CIO/CLC ("IFPTE Local 20") (collectively, the "Unions") are parties to collective bargaining agreements ("CBAs") with certain of the Debtors. The Debtors have filed a motion seeking to

# United States Bankruptcy Court
# Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 24, 2018**                                                              **Hearing Room    1568**

10:00 AM
**CONT...        Verity Health System of California, Inc.                                      Chapter 11**

enter into a new CBA with Local 39, which is currently set for hearing on November 6, 2018.

Debtor VHS participates in a multi-employer defined benefit pension plan, the Retirement Plan for Hospital Employees (the "RPHE"). Pursuant to CBAs with the Unions, the Debtors are obligated to make pension contributions to the RPHE.

RPHE asserts that the Bidding Procedures should be modified as suggested by the PBGC, in order to encourage Overbidders to assume obligations arising under the RPHE. The Unions object to the Stalking Horse Bidder's proposal to purchase the Assets free and clear of the Debtors' pension obligations and the obligations under the unrejected CBAs. According to the Unions, any attempt to sell the assets free and clear of the CBAs constitutes an impermissible end-run around the requirements of § 1113. CNA further asserts that any purchaser of the Assets should be required to assume all pension obligations under the RPHE, given that the assumption of such obligations would avoid the accrual of a large withdrawal liability claim against the Debtors under 29 U.S.C. §1384.

Debtors dispute the Union's contention that they must obtain relief under §1113 before proceeding with the sale. Debtors rely upon *Local 211 v. Family Snacks, Inc., Official Unsecured Creditors' Comm. (In re Family Snacks, Inc.)*, 257 B.R. 884, 897 (B.A.P. 8th Cir. 2001):

> When a debtor is selling on a going concern basis, the union urges, *Ionosphere* should not apply because the only meaningful time the court can make a decision on rejection is prior to the sale. We see no basis for such a distinction, unless it is to give the union veto power over a going concern sale which, as we know from experience, is often the best way to reap the greatest benefit for all creditors. Section 1113 was never intended to give unions such power. Its sole purpose is to keep a debtor from unilaterally rejecting a CBA and to plainly articulate the rules for going about rejection. If, as *Ionosphere* concluded, a debtor who is liquidating piecemeal should not be forced into Chapter 7 in order to preserve its assets for equitable distribution to all creditors, the same is true for a debtor who is selling its assets on a going concern basis.

*Family Snacks*, 257 B.R. at 897.

Debtors state that they will continue to work with the Unions to achieve a transfer of the hospitals in a manner that is in the best interest of all constituents. Debtors state that any bids that assume CBAs will be given appropriate weight and deference.

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**                                            Hearing Room    1568

10:00 AM
**CONT...        Verity Health System of California, Inc.                                Chapter 11**

8. Objection of the Official Committee of Unsecured Creditors [Doc. Nos. 490, 491, and 561]

The Official Committee of Unsecured Creditors (the "Committee") objects to the Bidding Procedures Motion on the following grounds:

1) The proposed Breakup Fee is too high and will chill bidding. The Breakup Fee should be reduced from 4% to 3%. A study conducted by Cynthia Nelson, a Senior Managing Director in the Corporate Finance & Restructuring group at FTI Consulting, Inc. (the "FTI Fee Study") shows that in bankruptcy sales of between $50 million to $250 million, breakup fees are generally set at 3% or less.
2) The minimum overbid increment should be reduced from $7.5 million to $5 million to encourage bidding.
3) The proposed sale includes more than just the assets necessary to operate the O'Connor and St. Louise hospitals. The APA also includes an urgent care facility containing medical office space located in Morgan Hill, CA (the "De Paul Property"). If the De Paul Property is not separately valued as part of the stalking horse bid, creditors will be unable to ascertain whether the highest price was obtained for this property. The Stalking Horse Bidder and all other Overbidders should be required to allocate with specificity the portion of the overall purchase price attributable to the De Paul Property.

In response to the Committee's objection, the Debtor asserts that the Breakup Fee and minimum overbid increment are consistent with relief granted by other Bankruptcy Courts, were negotiated between the Debtors and the Stalking Horse Bidder in good faith, and were agreed to in the exercise of the Debtors' reasonable business judgment. Regarding the allocation of the purchase price, the Debtors assert that the APA already contemplates that the Stalking Horse Bidder will provide schedules allocating the purchase price among the various Assets being sold.

9. Objections of UMB Bank, Wells Fargo, and U.S. Bank [Doc. Nos. 557, 621, and 622]

UMB Bank, N.A., in its capacity as successor master trustee for certain master trust indenture obligations ("UMB"), and Wells Fargo Bank, N.A., in its capacity as indenture trustee for the series 2005 revenue bonds ("Wells Fargo") object to the Bidding Procedures Motion on the following grounds:
1) Based upon a study prepared by Benjamin Ilhardt, the Senior Vice President of

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**                                          **Hearing Room    1568**

10:00 AM
**CONT...**     **Verity Health System of California, Inc.**                               **Chapter 11**

Houlihan Lokey Capital, Inc. (the "HL Fee Study"), the Breakup Fee is too high. The Houlihan Study shows that in comparable cases, breakup fees ranged from a minimum of 1.5% to a maximum of 3.8%, with a mean of 2.8% and a median of 3.0%. An appropriate break-up fee in this case would not exceed 3% of the stalking horse bid—that is, $7.05 million.

2) The HL Fee Study further demonstrates that the proposed Expense Reimbursement of $2.35 million is excessive. An appropriate expense reimbursement would be no more than $1.4 million.
3) The minimum overbid increment of $7.5 million should be reduced to $1 million.

Similar to UMB and Wells Fargo, U.S. Bank, N.A., in its capacity as Note Trustee for the Series 2017 Notes ("U.S. Bank"), asserts that the Bid Protections proposed by the Debtors are not reasonable and will chill competition.

Debtors reply to the objections of UMB, U.S. Bank, and Wells Fargo as follows:
1) The Bid Protections provided to Santa Clara County were necessary to induce it to serve as the stalking horse purchaser. Retaining Santa Clara as the stalking horse purchaser was essential given that a sale to Santa Clara can close rapidly, as it is not subject to review by the California Attorney General under Cal. Corp. Code §5914.
2) Santa Clara is not purchasing certain excluded assets, including accounts receivable, which should generate an additional $65 million in incremental proceeds to the estate. When the Breakup Fee is computed as a percentage of the sale price plus the $65 million in incremental proceeds, it is only 3.1%.
3) The testimony of Benjamin Ilhardt in support of the HL Fee Study is objectionable because Mr. Ilhardt is not qualified as an expert, and the types of sales cited in the HL Fee Study are not comparable as they do not involve health care or public entities.

10. Reservation of Rights of Premier and Infor [Doc. Nos. 444, 561, and 592]
Premier, Inc. and its subsidiaries (collectively, "Premier") provides information technology and related services to the Debtors. Infor (US), Inc. ("Infor") licenses copyrighted software to the Debtors and provides related maintenance and support services. Both Premier and Infor assert that the Debtors may not assume or assign any of their intellectual property absent consent.

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 24, 2018**                                                                                       **Hearing Room    1568**

10:00 AM
CONT...        **Verity Health System of California, Inc.**                                                                         **Chapter 11**

Debtors state that nothing in the Bidding Procedures Motion prevents Premier and Infor from presenting their objections in connection with the Sale Hearing.

11. Reservation of Rights of Verity MOB Financing II [Doc. No. 500]
Verity MOB Financing LLC and Verity MOB Financing II LLC (collectively, the "MOB Financing Entities") assert security interests in certain of the Debtors' assets. The MOB Financing Entities filed a Reservation of Rights, stating that they are in ongoing negotiations with the Debtors regarding their right to credit-bid and hope to resolve their issues prior to the October 24 hearing on the Bidding Procedures Motion.

## II. Findings and Conclusions

A. The Attorney General's Motion for a Continuance is Denied

The Attorney General's motion for a three week continuance of the Bidding Procedures Motion is DENIED. The hospitals that are the subject of the Bidding Procedures Motion are operating at a loss, meaning that every day that a future sale is postponed imposes significant costs upon the estate and upon creditors. The fact that APA schedules have not yet been provided does not constitute sufficient cause for a continuance.

On a related note, certain parties have suggested that the sale timeline proposed by the Debtors is too aggressive and that professionals require more time to review various matters pertaining to the sale. It is important for the Court to point out that sales on a rapid timeline are routine in bankruptcy, since delay almost always imposes additional costs upon creditors. The sale timeline proposed here affords professionals a sufficient opportunity to represent their client's interests.

B. Certain Objections Are Premature and Will Not be Decided in Connection with this Hearing

This hearing involves only the approval of the Bidding Procedures that will be used at the auction of the Assets. The Court finds that many of the objections are more appropriately considered at the final Sale Hearing, at which point the identity of the successful purchaser will be known. Many objections are based upon hypothetical future events and raise issues that may never ripen. For example, it is unknown whether the successful purchaser will assume the Debtors collective bargaining obligations; nor does the Court know which executory contracts or unexpired leases will be assumed.

For these reasons, the Court does not at this time rule upon the objections asserted

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**                                                                 Hearing Room    1568

10:00 AM
**CONT...        Verity Health System of California, Inc.                                                   Chapter 11**

by the Federal Communications Commission, the Pension Benefit Guaranty Corporation, the U.S. Department of Health and Human Services, the California Attorney General, the Unions who are parties to various CBAs (Local 39, SEIU-UHW, CNA, IFPTE Local 20), the Retirement Plan for Hospital Employees, OCH Forest 1, Premier, Infor, and the MOB Financing Entities. All such objections are preserved for the Sale Hearing and may be raised at that time.

The Court declines to require the Debtors to include the language proposed by the Federal Communications Commission (the "FCC") in the Bidding Procedures Order. The FCC's language pertains to the final transfer of assets, which is not at issue in the Bidding Procedures Motion. The FCC's ability to assert that such language should be included in a final order approving the sale is preserved.

C. Additional Language Regarding Overbidders' Intent with Respect to the Assumption or Rejection of Pension Obligations is Not Required

The PBGC argues that the Bidding Procedures Order must include additional intended to encourage potential Overbidders to assume the Debtors' pension obligations. The Court finds that the Debtors have made abundantly clear that they are soliciting offers that provide for the assumption of pension obligations. No additional language in the Bidding Procedures Order is required.

D. The Bidding Procedures Are Approved

The objections to the proposed Bidding Procedures are overruled. The Court finds that the Bidding Procedures are likely to maximize the proceeds received by the estate. *See Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288–89 (B.A.P. 9th Cir. 2005) ("The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances.").

The Committee and secured creditors UMB, Wells Fargo, and U.S. Bank (collectively, the "Secured Creditors") assert that the proposed Breakup Fee is too high. The objections to the Breakup Fee are overruled.

In evaluating the Breakup Fee, the Court first must rule upon the Debtors' evidentiary objections to the HL Fee Study. The Court finds that Benjamin Ilhardt, as a Senior Vice President in the Financial Restructuring Group of Houlihan Lokey Capital, Inc., is qualified to introduce expert testimony regarding the reasonableness of breakup fees. However, the Court affords the HL Fee Study only minimal weight. The sale transactions selected for the HL Fee Study are comparable in amount to the instant sale, but do not involve companies in the healthcare industry.

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**                                                                 **Hearing Room**    **1568**

10:00 AM
**CONT...**         **Verity Health System of California, Inc.**                                                    **Chapter 11**

This distinction is key in view of the significantly greater regulatory compliance obligations placed upon healthcare entities. More due diligence is required to adequately value entities that are subject to additional regulations. Regulations introduce additional complication in assessing an entity's future cash flow; this issue is of particular salience in the healthcare sector, where regulations are frequently subject to change. For instance, buyers of a healthcare entity are required to assess the possibility that the Affordable Care Act could be subject to significant revision, and to consider the impact of such possible revision on the viability of any healthcare entity's continuing operations. Against this backdrop, it is not surprising that the Debtors would be required to negotiate a higher than average Breakup Fee to induce Santa Clara County to become the Stalking Horse Bidder.

For similar reasons, the Court accords only minimal weight to the FTI Fee Study submitted by the Committee. Only three of the twenty sales examined in the FTI Fee Study are from the healthcare industry: Orixigen Therapeutics (a biopharmaceutical company), 4 West Holdings Inc. (an operator of skilled nursing facilities), and Angelica Corp. (a provider of medical laundry and linen management services). However, the due diligence required to value a biopharmaceutical company such as Orixgen Therapeutics or a provider of healthcare support services such as Angelica is very different from the due diligence required to value an operating hospital. Thus, the FTI Fee Study contains only one sale (that of 4 West Holdings) that is arguably comparable to the sale at issue here. As such, the probative value of the FTI Fee Study is limited.

~~For the same reasons, the Court accords only minimal weight to the FTI Fee Study submitted by the Committee. Like the HL Fee Study, the FTI Study does not involve any sales in the healthcare industry. The breakup fees for such sales do not afford a truly comparable yardstick for assessing the Breakup Fee at issue here.~~

The Committee and the Secured Creditors similarly contend that the proposed Expense Reimbursement is too high. These objections, which once again are premised upon comparing this healthcare sale to sales in other industries, are overruled. Where more due diligence is required, a higher Expense Reimbursement amount will be necessary.

The Committee and the Secured Creditors contend that the minimum overbid increment of $7.5 million should be reduced. The Court finds that the Debtors exercised reasonable business judgment in establishing the overbid increment, and declines the invitation of the parties to overrule the Debtors' business judgment. However, it may be prudent for the Debtor to allow itself the leeway to accept

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, October 24, 2018**                                                        Hearing Room    1568

#### 10:00 AM
**CONT...        Verity Health System of California, Inc.                                                Chapter 11**

incremental bids at less than $7.5 million should the bidding process become stalled.

E. Cigna's Objections are Overruled
   The Court finds that the procedures proposed by the Debtor regarding the assumption of executory contracts and unexpired leases are customary and reasonable for sales of this type. Cigna demands 60 days' notice regarding an assumption/rejection decision pertaining to the Cigna Provider Agreements. Such a lengthy notice period would unduly delay the closing of the sale, to the detriment of the estate and creditors. The ten day notice period demanded by Cigna with respect to the disposition of the LINA Contracts would likewise impose unreasonable delay.

## III. Conclusion
   Based upon the foregoing, the Bidding Procedures Motion is GRANTED. The hearing to approve the sale and authorize the assumption and assignment of Assumed Executory Contracts shall take place on **December 18, 2018, at 10:00 a.m.**
   The Court will sign enter the Bidding Procedures Order in the form proposed by the Debtors. Because bids must be solicited on a shortened timeframe, no objections to the form of the Bidding Procedures Order will be entertained subsequent to this hearing.

   No appearance is required if submitting on the court's tentative ruling. If you intend to submit on the tentative ruling, please contact Jessica Vogel or Daniel Koontz, the Judge's Law Clerks, at 213-894-1522. **If you intend to contest the tentative ruling and appear, please first contact opposing counsel to inform them of your intention to do so.** Should an opposing party file a late opposition or appear at the hearing, the court will determine whether further hearing is required. If you wish to make a telephonic appearance, contact Court Call at 888-882-6878, no later than one hour before the hearing.

Note 1
   Certain of the objections propounded by various parties have now been resolved. Only objections that remain unresolved are discussed herein.

| Party Information |
|---|

**Debtor(s):**

   Verity Health System of California,        Represented By
                                               Samuel R Maizel

# United States Bankruptcy Court
# Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, October 24, 2018**                                              **Hearing Room    1568**

10:00 AM
CONT...        **Verity Health System of California, Inc.**                                    **Chapter 11**
                                    John A Moe II
                                    Tania M Moyron
                                    Claude D Montgomery
                                    Sam J Alberts