FILED & ENTERED

DEC 26 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

In re: Verity Health System of California, Inc., *et al.*,

Debtors and Debtors in Possession.

☒ Affects All Debtors

☐ Affects Verity Health System of California, Inc.
☐ Affects O'Connor Hospital
☐ Affects Saint Louise Regional Hospital
☐ Affects St. Francis Medical Center
☐ Affects St. Vincent Medical Center
☐ Affects Seton Medical Center
☐ Affects O'Connor Hospital Foundation
☐ Affects Saint Louise Regional Hospital Foundation
☐ Affects St. Francis Medical Center of Lynwood Medical Foundation
☐ Affects St. Vincent Foundation
☐ Affects St. Vincent Dialysis Center, Inc.
☐ Affects Seton Medical Center Foundation
☐ Affects Verity Business Services
☐ Affects Verity Medical Foundation
☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose Dialysis, LLC

Debtors and Debtors in Possession.,

Lead Case No.: 2:18-bk-20151-ER
Chapter: 11

**MEMORANDUM OF DECISION OVERRULING OBJECTIONS OF THE CALIFORNIA ATTORNEY GENERAL TO THE DEBTORS' SALE MOTION**

Jointly Administered With:
Case No. 2:18-bk-20162-ER;
Case No. 2:18-bk-20163-ER;
Case No. 2:18-bk-20164-ER;
Case No. 2:18-bk-20165-ER;
Case No. 2:18-bk-20167-ER;
Case No. 2:18-bk-20168-ER;
Case No. 2:18-bk-20169-ER;
Case No. 2:18-bk-20171-ER;
Case No. 2:18-bk-20172-ER;
Case No. 2:18-bk-20173-ER;
Case No. 2:18-bk-20175-ER;
Case No. 2:18-bk-20176-ER;
Case No. 2:18-bk-20178-ER;
Case No. 2:18-bk-20179-ER;
Case No. 2:18-bk-20180-ER;
Case No. 2:18-bk-20181-ER;

Chapter 11 Cases.

Date: December 19, 2018

Time: 10:00 a.m.

Location: Ctrm. 1568
Roybal Federal Building
255 East Temple Street
Los Angeles, CA 90012

To adjudicate objections asserted by the California Attorney General (the "Attorney General") to the Debtors' motion for authorization to sell Saint Louise Regional Hospital ("St. Louise") and O'Connor Hospital ("O'Connor," and together with St. Louise, the "Hospitals") to the County of Santa Clara ("Santa Clara"), the Court ordered the Debtors, the Attorney General, Santa Clara, and the Official Committee of Unsecured Creditors (the "Committee") to respond to the Court's *Preliminary Findings and Conclusions* (the "Preliminary Findings").[1] In the Preliminary Findings, the Court stated that it intended to authorize the Debtors to sell the Hospitals to Santa Clara, free and clear of certain conditions imposed by the Attorney General in connection with a 2015 restructuring transaction, pursuant to §363(f)(1).[2] Having reviewed the briefing submitted in response to the Court's order,[3] the Court maintains its Preliminary Findings, and for the reasons set forth below will authorize the Debtors to sell the Hospitals free and clear of the conditions imposed by the Attorney General in connection with the 2015 restructuring transaction.

## I. Background

On August 31, 2018 (the "Petition Date"), Verity Health Systems of California ("VHS") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On August 31, 2018, the Court entered an order granting the Debtors' motion for joint administration of the Debtors' Chapter 11 cases.[4]

On October 31, 2018, the Court entered an order establishing auction procedures for the sale of the Hospitals (the "Bidding Procedures Order," and the motion for entry of the Bidding

---

[1] *See* Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1125] (the "Briefing Order").

[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

[3] The following papers were submitted in response to the Briefing Order:
1) County of Santa Clara's Response to Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1136];
2) Official Committee of Unsecured Creditors' Response to the Court's Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1137];
3) Debtors' Response to Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1139];
4) Attorney General Response to the Court's Preliminary Findings and Conclusions Re: Court's Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1140];
   a) Notice of Errata Re: Attorney General's Response Filed on December 24, 2018 [Doc. No. 1144];
5) Declaration of Douglas M. Press in Response to the Filing by the California Attorney General [Docket No. 1140] and in Support of Entry of the Order (1) Approving Sale of Certain Assets to Santa Clara County Free and Clear of All Encumbrances; (2) Approving of Debtors' Assumption and Assignment of Certain Unexpired Leases and Executory Contracts and Determining Cure Amounts and Approving of Debtors' Rejection of Those Unexpired Leases and Executory Contracts Which Are Not Assumed and Assigned; (3) Waiving the 14-day Stay Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d); and (4) Granting Related Relief [Doc. No. 1141] (the "Press Decl.").

[4] Doc. No. 17.

Procedures Order, the "Bidding Procedures Motion").[5] Pursuant to an Asset Purchase Agreement (the "APA")[6] dated October 1, 2018, Santa Clara was designated as the stalking horse bidder (the "Stalking Horse Bidder"). The Bidding Procedures Order set a hearing on December 19, 2018 to consider the Debtors' motion for entry of an order (the "Sale Order") approving the sale of the Hospitals (the "Sale Motion," and the hearing on the Sale Motion, the "Sale Hearing"). The Debtors expect that the sale will close no earlier than February 28, 2019.

The Hospitals were vigorously marketed by the Debtors' investment banker, Cain Brothers, a division of KeyBank Capital Markets, Inc. ("Cain"). Twenty-five parties executed non-disclosure agreements and were granted access to a data room containing information about the Hospitals.[7] Cain sent a direct e-mail communication to over 170 interested potential purchasers which contained key information about the Hospitals.[8] Cain actively followed up with two serious potential purchasers, assisting those parties with due diligence and making itself available to answer questions.[9] Notwithstanding these thorough marketing efforts, no party emerged willing to place a bid for the Hospitals.[10]

In 2015, the Debtors' predecessor, Daughters of Charity Ministry Services Corporation ("Daughters"), sought authorization from the Attorney General, pursuant to Cal. Corp. Code §5914, to implement a *System Restructuring and Support Agreement* (the "Restructuring Agreement"). The Attorney General approved the Restructuring Agreement, subject to various conditions (each, a "Condition," and collectively, the "Conditions").[11] O'Connor was subject to 21 Conditions; St. Louise was subject to 22 Conditions.

Among other things, the Conditions require the Hospitals to maintain specified levels of emergency services, intensive care services, cardiac services, and various other services. The Conditions purport to be binding upon "any and all current and future owners" of the Hospitals.[12]

On October 10, 2018, the Attorney General filed an objection to the Bidding Procedures Motion.[13] The Attorney General objected to the Debtors' proposal to sell the Hospitals free and clear of the Conditions, contending that the Conditions remained binding upon any purchaser of the Hospitals. The Court did not address the Attorney General's objection when adjudicating the

---

[5] *See* Doc. No. 724 (Bidding Procedures Order) and Doc. No. 365 (Bidding Procedures Motion).
[6] The APA [Doc. No. 365, Ex. A] defines the assets being sold as follows: "all assets, businesses, real property, personal property, equipment, supplies, software, contracts, leases, licenses/permits, books, records, offices, facilities, and all other tangible and intangible property (a) whatsoever and wherever located that is owned, leased, or used primarily in connection with the Businesses by a Hospital Seller, (b) located in Santa Clara County, California that is owned, leased, or used primarily in connection with the Businesses by Verity Holdings, and (c) whatsoever and wherever located that is owned, leased, or used by Verity primarily in connection with the Businesses, in each case, except for the Excluded Assets." APA at ¶1.8.
[7] Decl. of James M. Moloney [Doc. No. 1041] (the "Moloney Decl.") at ¶6.
[8] *Id.* at ¶7.
[9] *Id.* at ¶¶7–8.
[10] *Id.* at ¶9.
[11] The Conditions are memorialized in documents captioned *Conditions to Change in Control and Governance of O'Connor Hospital and Approval of the System Restructuring and Support Agreement by and among Daughters of Charity Ministry Services Corporation, Daughters of Charity Health System, Certain Funds Managed by BlueMountain Capital Management, LLC, and Integrity Healthcare, LLC* [Doc. No. 256, Ex. A, at 176–187] (the "O'Connor Conditions") and *Conditions to Change in Control and Governance of Saint Louise Regional Hospital and Approval of the System Restructuring and Support Agreement by and among Daughters of Charity Ministry Services Corporation, Daughters of Charity Health System, Certain Funds Managed by BlueMountain Capital Management, LLC, and Integrity Healthcare, LLC* [Doc. No. 256, Ex. A, at 261–273] (the "St. Louise Conditions").
[12] O'Connor Conditions at 176–77 and St. Louise Conditions at 261–62.
[13] Doc. No. 463.

Bidding Procedures Motion, finding the objection to be premature. The Bidding Procedures Order provided that the Attorney General's objection was "preserved for the Sale Hearing and may be raised at that time."[14]

On November 2, 2018, Santa Clara asked the Attorney General to provide clarification regarding his position as to the applicability of certain of the Conditions.[15] Santa Clara asserted that its status as a government entity made it impossible to comply with certain Conditions without violating its obligations under California law and the California Constitution. On November 9, 2018, the Attorney General responded, advising that five of the Conditions would not be enforced against Santa Clara.[16] Specifically, the Attorney General waived enforcement of Conditions requiring the Hospitals to furnish specified amounts of charity care and community benefits, Conditions pertaining to pension obligations, and Conditions pertaining to the composition of the Board of Trustees of each Hospital.

On December 14, 2018, the Attorney General filed a response to the Debtors' memorandum in support of the Sale Motion (the "Response").[17] The Response provided:

> The California Attorney General does not object to the sale to the County of Santa Clara, in light of the conditions as clarified in the Attorney General's November 9, 2018 letter to the County of Santa Clara and as may be subsequently further clarified or modified by the Attorney General. The Attorney General and the County are presently engaged in further discussions about the Conditions not addressed by the Attorney General's November 9, 2018 letter, and as such, the Attorney General will continue to consider any further requests for clarification or modification presented by the County.

Response at 2.

The APA provides that Santa Clara is not required to accept a Sale Order that does not provide for the sale of the Hospitals free and clear of all liens, claims, and interests (including the Conditions).[18] The Attorney General's Response did not state that the Attorney General objected to sale of the Hospitals free and clear of the Conditions.

At the Sale Hearing, the Attorney General stated that the Response was "inartfully drafted," and that the Attorney General did in fact object to sale of the Hospitals free and clear of the Conditions. The Debtors and Santa Clara asked the Court to approve the sale free and clear of the Conditions, asserting that the Attorney General had waived its objections and/or was estopped from asserting such objections. Santa Clara's counsel explained that in order for the County to be able to proceed with the closing—anticipated to occur at the end of February 2019—it was necessary for any uncertainty regarding the applicability of the Conditions to be immediately resolved. Santa Clara stated that if an order providing for a sale free and clear of the Conditions was not entered by the January 2, 2019 deadline set forth in the APA, it would be Santa Clara's position that a breach of the APA had occurred.

---

[14] Bidding Procedures Order [Doc. No. 724] at ¶3.
[15] Doc. No. 1066, Ex. 1.
[16] Doc. No. 1066, Ex. 2.
[17] Doc. No. 1066.
[18] APA at ¶6.2.6.

## II. Findings and Conclusions
### A. The Attorney General Has Waived His Ability to Contest a Sale Free and Clear of the Conditions

"Waiver is the voluntary relinquishment of a known right or conduct such as to warrant an inference to that effect. It implies knowledge of all material facts and of one's rights, together with a willingness to refrain from enforcing those rights." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1119 (9th Cir. 2009). Waiver also occurs when a "party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017).

The Response filed by the Attorney General on December 14, 2018 waived the Attorney General's right to object to a sale free and clear of the Conditions. The Response provided: "The California Attorney General *does not object* to the sale to the County of Santa Clara …." (emphasis added).[19] It contained no reservation of the Attorney General's right to object in the event that the contemplated "further requests for clarification or modification presented by the County"[20] did not yield results acceptable to the Attorney General. The Attorney General knew that the Debtors were seeking approval of a sale free and clear of the Conditions, because the APA contained unequivocal language to that effect. By filing the Response, the Attorney General voluntary relinquished his right to object to a sale free and clear.

In addition, the filing of the Response was so inconsistent with an intent to continue to enforce the Conditions against Santa Clara as to induce Santa Clara to reasonably believe that the Attorney General had abandoned his position as to the enforceability of the Conditions. *See Salyers*, 871 F.3d at 938.

In support of his contention that the Response did not waive his objections, the Attorney General points to conversations between the Attorney General's counsel and Santa Clara's counsel that took place contemporaneously with the filing of the Response. Angela Sierra, Chief Assistant Attorney General of the Public Rights Division at the California Department of Justice, testifies that she had a short conversation with Douglas M. Press, Santa Clara's Assistant County Counsel, on December 14, 2018.[21] According to Ms. Sierra:

> Shortly before the Attorney General Office's filing of the AG Response, my Office had proposed incorporating our previously lodged objections into [the] AG Response by way of a footnote. After further consideration of an issue raised by the County, I determined that such incorporation was not necessary, given that we had not withdrawn our objections. Approximately ten minutes before the noon filing deadline on December 14, 2018, I had a short conversation with Assistant County Counsel Doug Press, during which I explained that the language that my Office was poised to file meant that we did not object to the sale as long as the conditions as currently or subsequently clarified remained in place. Doug Press stated that he disagreed with that interpretation.
>
> I participated in several discussions with Assistant County Counsel Doug Press regarding the AG Conditions following the filing of the AG Response on December 14, 2018. These discussions continued through December 18, 2018. At no time during those

---

[19] Response at 2.
[20] *Id.*
[21] Declaration of Angela Sierra [Doc. No. 1144] (the "Sierra Decl.") at ¶6.

discussions did our Office communicate that we had waived the applicability of the AG Conditions.[22]

Mr. Press disputes Ms. Sierra's characterization of the December 14, 2018 conversation. Mr. Press' account of the conversation is as follows:

> On … December 14, 2018, the California Attorney General's Office proposed language to be inserted in a response that day that would have asserted that its approval of the sale was conditional, but we agreed to remove that conditional language. Instead, we agreed to the unconditional language that appears in the Attorney General's response … that … "[t]he California Attorney General does not object to the sale to the County of Santa Clara, *in light of* the conditions as clarified in the Attorney General's November 9, 2018 letter to the County of Santa Clara and as may be subsequently further clarified or modified by the Attorney General." [Emphasis Added.] The unconditional "in light of" language was meant, as the County understood it, to reflect that the California Attorney General would no longer object to the sale, although we also agreed to continue to discuss, post-sale, how to address the other conditions under a variety of approaches. But the message to the Court and the community was meant to be clear, that the California Attorney General, in its Response, … was expressing that it was not opposed to the sale even though ongoing discussions with the County about the other conditions were contemplated outside the Court process.[23]

The Court declines to consider the testimony of Ms. Sierra and Mr. Press in determining whether the filing of the Response effected a waiver of the Attorney General's objections. When litigating with a sophisticated party such as the Attorney General, the Debtors, Santa Clara, and other interested parties are entitled to presume that representations made by the Attorney General in papers filed with the Court accurately reflect his position. Allowing the Attorney General, or any other party, to qualify statements made in papers through the subsequent introduction of parol evidence would unduly hamper the Court's ability to adjudicate matters arising in this case. More than 63 separate papers have been filed in connection with the Bidding Procedures Motion and Sale Motion. The papers raise multiple discrete and complicated issues, including whether the sale could be free and clear of obligations imposed in connection with various collective bargaining agreements; whether the Debtors sufficiently marketed the Hospitals; whether the bidding procedures proposed by the Debtors would yield the maximum price for the estate; whether the Debtors had articulated sufficient business justification for the sale; whether the sales price is fair and reasonable; whether the APA was negotiated in good faith and at arms-length; whether the Debtors' Medicare and Medi-Cal Provider Agreements are properly characterized as an executory contract or a statutory entitlement; and whether the Debtors are entitled to assume and assign various unexpired leases and executory contracts.[24] Even if only a fraction of the parties who have filed papers were allowed to introduce supplemental evidence establishing what their papers really meant, the adjudicative process would grind to a halt.

Pursuant to FRE 403, the Court may exclude evidence if consideration thereof would result in undue delay. Exclusion of the declarations of Ms. Sierra and Mr. Press is warranted under

---

[22] Sierra Decl. at ¶¶6–7.
[23] Press Decl. [Doc. No. 1141] at ¶5.
[24] Adjudication of certain of these issues will take place on January 30, 2019.

FRE 403, particularly where, as here, the consideration of such evidence would require the Court to consider similar evidence submitted by other parties dissatisfied by the Court's rulings. In addition, the Court has the inherent power to "manage [its] own affairs so as to achieve the orderly and expeditious disposition" of matters coming before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991). Finally, in the same way that the parol evidence rule bars consideration of extrinsic evidence in connection with the interpretation of an integrated contract, *see Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1213 (9th Cir. 2016), the Court finds it appropriate to similarly decline to consider extrinsic evidence when interpreting papers submitted by a sophisticated litigant such as the Attorney General.

### B. The Attorney General is Equitably Estopped from Contesting a Sale Free and Clear of the Conditions

A party may be equitably estopped from asserting a position if the following conditions apply:

1) [T]he party to be estopped must know the facts;
2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;
3) the latter must be ignorant of the true facts; and
4) he must rely on the former's conduct to his injury.

*Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014).

Under the circumstances, the Attorney General is equitably estopped from contesting the Debtors' ability to sell the Hospitals free and clear of the Conditions. The Attorney General knew that the Debtors and Santa Clara would rely upon the Response's representation that he had no objection to the sale. The Debtors and Santa Clara had no way of knowing that when the Attorney General stated that he did "not object to the sale to the County of Santa Clara,"[25] what he really meant was that he did not object except to the extent that he did object. The Debtors and Santa Clara relied upon the Attorney General's representation to their detriment. Had they been aware of the Attorney General's true position, the Debtors and Santa Clara would have more vigorously contested the Attorney General's arguments regarding the binding effect of the Conditions.

Relying upon *Jordan v. California Dep't of Motor Vehicles*, 100 Cal. App. 4th 431, 453, 123 Cal. Rptr. 2d 122 (2002), *as modified on denial of reh'g* (Aug. 20, 2002), the Attorney General argues that equitable estoppel may not be invoked where, as here, "it would operate to defeat the effective operation of a policy adopted to protect the public." *Id.* at 453. This argument fails because, as discussed in Section II.C., below, the Attorney General has not identified a statutory basis for its assertion that the Conditions remain enforceable against Santa Clara. Consequently, the Attorney General has failed to show that continued enforcement of the Conditions is supported by California law.

---

[25] Response at 2.

**C. Even if the Doctrines of Waiver and Equitable Estoppel Did Not Apply, a Sale of the Hospitals Free and Clear of the Conditions is Authorized under §363(f)(1)**

Section 363(d)(1) authorizes non-profit entities, such as the Debtors, to sell estate assets only if the sale is "in accordance with nonbankruptcy law applicable to the transfer of property by" a non-profit entity. Section 363(b) permits the Debtors to sell estate property out of the ordinary course of business, subject to court approval. The Debtors must articulate a business justification for the sale. *In re Walter*, 83 B.R. 14, 19–20 (9th Cir. BAP 1988). Whether the articulated business justification is sufficient "depends on the case," in view of "all salient factors pertaining to the proceeding." *Id.* at 19–20. Section 363(f)(1) provides that a sale of estate property may be "free and clear of any interest in such property of an entity other than the estate, only if applicable nonbankruptcy law permits sale of such property free and clear of such interest …."

*1. The Conditions Are an Interest in Property Within the Meaning of §363*

As this Court has previously explained:

> The Bankruptcy Code does not define the phrase "interest in ... property" for purposes of § 363(f). The Third Circuit has held that the phrase "interest in ... property" is "intended to refer to obligations that are connected to, or arise from, the property being sold." *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 259 (3d Cir. 2000). That conclusion is echoed by *Collier on Bankruptcy*, which observes a trend in caselaw "in favor of a broader definition [of the phrase] that encompasses other obligations that may flow from ownership of the property." 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[1] (16th ed. 2017).
>
> Courts have held that interests in property include monetary obligations arising from the ownership of property, even when those obligations are imposed by statute. For example, in *Mass. Dep't of Unemployment Assistance v. OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860 (1st Cir. BAP 2013), the court held that taxes assessed by Massachusetts under its unemployment insurance statutes constituted an "interest in ... property." The taxes were computed based on the Debtor's "experience rating," which was determined by the number of employees it had terminated in the past. *Id.* at 862. Because the Debtor had terminated most of its employees prior to selling its assets, its experiencing rating, and corresponding unemployment insurance tax liabilities, were very high. *Id.* The *PBBPC* court held that the experience rating was an interest in property that could be cut off under § 363(f). *Id.* at 869–70. Similarly, in *United Mine Workers of Am. Combined Benefit Fund v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 581, the court held that monetary obligations imposed by the Coal Industry Retiree Health Benefit Act of 1992 constituted an "interest in ... property" within the meaning of § 363(f).

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. 820, 825–26 (Bankr. C.D. Cal. 2017), *appeal dismissed,* No. 2:16-BK-17463-ER, 2018 WL 1229989 (C.D. Cal. Jan. 19, 2018).

The Conditions are an "interest in property" within the meaning of §363(f). The Conditions provide that any owner of the Hospitals must furnish specified levels of emergency services, intensive care services, cardiac services, and various other services. The required service levels were derived based upon the historical experience of the prior operator. As such, the Conditions are monetary obligations arising from the ownership of property.

*2. The Debtors May Sell the Hospitals Free and Clear of the Conditions under Applicable Nonbankruptcy Law*

Under certain circumstances, the sale of a not-for-profit healthcare facility is subject to review by the Attorney General. Cal. Corp. Code §5914 provides in relevant part (emphasis added):

> Any nonprofit corporation that is defined in Section 5046 and operates or controls a health facility, as defined in Section 1250 of the Health and Safety Code, or operates or controls a facility that provides similar health care, regardless of whether it is currently operating or providing health care services or has a suspended license, shall be required to provide written notice to, and to obtain the written consent of, the Attorney General prior to entering into any agreement or transaction to do either of the following:
> > (A) Sell, transfer, lease, exchange, option, convey, or otherwise dispose of, its assets to a *for-profit corporation or entity or to a mutual benefit corporation or entity* when a material amount of the assets of the nonprofit corporation are involved in the agreement or transaction.
> > (B) Transfer control, responsibility, or governance of a material amount of the assets or operations of the nonprofit corporation to any *for-profit corporation or entity or to any mutual benefit corporation or entity*.

Here, the sale is not subject to Attorney General review because the Hospitals are being sold to Santa Clara, which is a public entity, not a for-profit corporation or mutual benefit corporation. Notwithstanding its inability to review the sale, the Attorney General contends that the Conditions—which were imposed in connection with the Attorney General's §5914 review authority—nonetheless remain binding upon any subsequent purchaser of the Hospitals. In support of this contention, the Attorney General cites Cal. Corp. Code §5926, which provides: "The Attorney General may enforce conditions imposed on the Attorney General's consent to an agreement or transaction pursuant to Section 5914 or 5920 to the fullest extent provided by law."

The Court finds that neither Cal. Corp. Code §5926 nor any of the other provisions set forth in Cal. Corp. Code §§ 5914–30 provide the Attorney General with authority to enforce the Conditions against Santa Clara if Santa Clara acquires the Hospitals. In reaching this conclusion, the Court construes the California Corporations Code consistent with California's rules of statutory construction. *See Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 510 (9th Cir. 1990) (applying California's rules of statutory construction to interpret Cal. Civ. Proc. Code § 877).

Under California law, the "ultimate task" in statutory interpretation "is to ascertain the Legislature's intent." *People v. Massie*, 19 Cal.4th 550, 569, 79 Cal.Rptr.2d 816, 967 P.2d 29 (1998). "Ordinarily, the words of the statute provide the most reliable indication of legislative intent." *Pac. Gas & Elec. Co. v. Cty. of Stanislaus*, 16 Cal.4th 1143, 1152, 69 Cal.Rptr.2d 329, 947 P.2d 291 (1997). Only where the statutory language is ambiguous may the Court consider "evidence of the Legislature's intent beyond the words of the statute," such as the "statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality …." *Hughes v. Bd. of Architectural Examiners*, 17 Cal.4th 763, 776, 952 P.2d 641 (1998). "When statutory language is … clear and unambiguous there is no need for construction, and *courts should not indulge in it*." *Delaney v.*

*Superior Court*, 50 Cal.3d 785, 800, 268 Cal.Rptr. 753, 789 P.2d 934 (1990) (emphasis in original). However, the "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." *Younger v. Superior Court*, 21 Cal.3d 102, 113, 145 Cal.Rptr. 674, 577 P.2d 1014 (1978).

The Legislature enacted Cal. Corp. Code § 5914 to ensure that the public was not deprived of the benefits of charitable health facilities as a result of the transfer of those facilities' assets to for-profit entities. In enacting § 5914, the Legislature found:

> Charitable, nonprofit health facilities have a substantial and beneficial effect on the provision of health care to the people of California, providing as part of their charitable mission uncompensated care to uninsured low-income families and under-compensated care to the poor, elderly, and disabled.
> Transfers of the assets of nonprofit, charitable health facilities to the for-profit sector, such as by sale, joint venture, or other sharing of assets, directly affect the charitable use of those assets and may affect the availability of community health care services....
> It is in the best interests of the public to ensure that the public interest is fully protected whenever the assets of a charitable nonprofit health facility are transferred out of the charitable trust and to a for-profit or mutual benefit entity.

1996 Cal. Legis. Serv. Ch. 1105 (A.B. 3101) (West).

As discussed, the sale of a nonprofit health facilities' assets to a public entity (such as Santa Clara) are not subject to Attorney General review. This exception is consistent with the statute's objective of ensuring that nonprofit health assets are operated consistent with a charitable mission and in the public interest, because public entities are required by law to furnish healthcare services to those in need. Cal. Welf. & Inst. Code §17000 requires public entities to provide support, including healthcare, to indigent members of the public:

> Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.

As one court has explained, "[s]ection 17000 imposes various obligations on counties with respect to their indigent residents. Among other obligations, courts have interpreted section 17000 as requiring counties to provide indigent residents with emergency and medically necessary care." *Fuchino v. Edwards-Buckley*, 196 Cal. App. 4th 1128, 1134, 126 Cal. Rptr. 3d 886, 890 (2011).

As set forth above, the Attorney General's position is that the Conditions remain binding upon Santa Clara, notwithstanding the Attorney General's inability to review the sale. The Attorney General's reliance upon Cal. Corp. Code §5926 in support of this position is unavailing. Section 5926 provides only that the Attorney General may enforce the Conditions to the fullest extent provided by law. However, the Attorney General has not identified the specific provisions of California law that permit the continued enforcement of the Conditions.[26] This

---

[26] The Attorney General asserts that Art. V, §13 of the California Constitution grants him authority to enforce the Conditions. Art. V, §13 is a general provision stating only that the Attorney General has the authority to "see that the laws of the State are uniformly and adequately enforced"; it contains nothing specifically addressing the situation

omission is particularly glaring in view of the Attorney General's lack of authority to review the sale.

In reaching this conclusion, the Court finds it significant that the Attorney General has failed to identify the statutory basis for its position even after being afforded an opportunity to respond to the Court's Preliminary Findings. The Preliminary Findings advised the Attorney General that because he had failed to identify the statutory authority for continued enforcement of the Conditions, the Court intended to authorize the Debtors to sell the Hospitals free and clear of the Conditions. In response to the Preliminary Findings, the Attorney General cited to provisions in the Conditions that purport to make the Conditions legally binding upon any entity acquiring the Hospitals. Notably, the Attorney General did not cite to any provision of California law entitling him to enforce successorship liability under the circumstances of this case.

The Attorney General's reliance upon provisions purporting to make the Conditions binding upon all successors, regardless of the circumstances under which such successors acquire the Hospitals, is an impermissible attempt to expand his regulatory authority over the Hospitals. Provisions within the Conditions are enforceable only to the extent that they are supported by California law.

Furthermore, the Attorney General's contention that the Conditions remain binding upon Santa Clara is inconsistent with the Cal. Corp. Code §5914 and its legislative history. The concern motivating enactment of the statute was to prevent charitable assets from falling into the hands of for-profit entities who would not continue to use those assets for charitable purposes. The concern has no applicability where the assets are transferred to a public entity, which has independent statutory obligations to maintain the assets' charitable character, as discussed above.

Because the Attorney General has no authority to review the sale of the Hospitals to Santa Clara, and because the Attorney General has identified no statutory provision permitting his continued enforcement of the Conditions under the circumstances, the Court finds that the Debtors may sell the Hospitals free and clear of the Conditions under applicable nonbankruptcy law.

**D. The Attorney General's Request for a 14-day Stay of the Sale Order is Denied**

Bankruptcy Rule 6004(h) provides that an "order authorizing the … sale … of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Attorney General requests that the stay imposed by Bankruptcy Rule 6004(h) remain in effect. According to the Attorney General, a 14-day stay is necessary because the "proposed sale will have a significant impact on the health and safety of the surrounding communities."[27] Debtors assert that the 14-day stay should not apply so that the sale may close as expeditiously as possible. The sale is currently projected to close at the end of February 2019.

The 1999 Advisory Committee Note to Bankruptcy Rule 6004 states that the rule is intended "to provide sufficient time for a party to request a stay pending appeal of an order authorizing the … sale … of property under §363(b) of the Code before the order is implemented."

To enable the sale to close expeditiously, the Sale Order shall be effective immediately upon entry, notwithstanding Bankruptcy Rule 6004(h). Because the sale will not close until the end of February 2019, in the Court's view, the Attorney General's appeal of the Sale Order will not

---

presented here. The Attorney General's reliance upon *D'Amico v. Board of Medical Examiners*, 11 Cal. 3d 1, 14, 520 P.2d 10 (1974) is similarly misplaced. *D'Amico* states that the Attorney General possesses extensive statutory powers to protect the public interest but does not specifically address any of the legal issues presented here.

[27] Doc. No. 1140 at 15.

likely be rendered moot by the Court's waiver of the 14-day stay.[28] Accordingly, the Attorney General will suffer no prejudice from waiver of the stay. On the other hand, waiving the stay will benefit the Debtors, Santa Clara, and the estate by enabling the parties to immediately begin performing the significant work that is a prerequisite to the closing.

### III. Conclusion

Based upon the foregoing, the Attorney General's objections to the Sale Motion are overruled, and the Debtors are authorized to sell the Hospitals free and clear of the Conditions, pursuant to §363(f)(1). The Court will enter the proposed Sale Order submitted by the Debtors.

###

Date: December 26, 2018

Ernest M. Robles
United States Bankruptcy Judge

---

[28] Of course, only the appellate court has the authority to determine whether any appeal of the Sale Order is moot.