SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Attorneys for the Chapter 11 Debtors and
Debtors In Possession

FILED & ENTERED

DEC 27 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

CHANGES MADE BY COURT

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>  Debtors and Debtors In Possession.<br><br>☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>  Debtors and Debtors In Possession. | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER<br>Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER<br>Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER<br>Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER<br><br>Hon. Judge Ernest M. Robles<br><br>**ORDER (A) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS TO SANTA CLARA COUNTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF AN UNEXPIRED LEASE RELATED THERETO; AND (C) GRANTING RELATED RELIEF**<br><br>**Hearing:**<br>**Date:**  **December 19, 2018**<br>**Time:**  **10:00 am**<br>**Location:** **Courtroom 1568**<br>     **255 E. Temple St., Los Angeles, CA** |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES , CALIFORNIA , 90017-5704
(213) 623-9300

1   This matter came before the Court on the *Motion For The Entry Of (I) An Order (1)*

2   *Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For Prospective*

3   *Overbidders To Use, (2) Approving Auction Sale Format, Bidding Procedures And Stalking*

4   *Horse Bid Protections, (3) Approving Form Of Notice To Be Provided To Interested Parties, (4)*

5   *Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest Bidder And (5)*

6   *Approving Procedures Related To The Assumption Of Certain Executory Contracts And*

7   *Unexpired Leases; And (II) An Order (A) Authorizing The Sale Of Property Free And Clear Of*

8   *All Claims, Liens And Encumbrances* (the "Motion") [Docket No. 365], filed by Verity Health

9   System of California, Inc. ("VHS"), and the above-referenced affiliated debtors and debtors in

10  possession in the above-captioned chapter 11 bankruptcy cases (the "Debtors"), for the entry of

11  an order, pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code (the

12  "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014, and LBR 6004-1.[1]

13  At the previous hearing on the Motion on October 31, 2018 (the "Bidding Procedures

14  Hearing"), the Court considered various objections (the "Premature Objections") filed by: (i) the

15  Federal Communications Commission ("FCC") [Docket No. 437]; (ii) the United States

16  Department of Health and Human Services ("HHS") [Docket No. 447, 562, and 613]; (iii) the

17  California Attorney General ("CAG") [Docket No. 463, 599, 605, 608, and 619]; (iv) entities who

18  are parties to or benefit from various collective bargaining agreements with the Debtors [Docket

19  No. 450, 458, 460, 465, and 597]; (v) the Pension Benefit Guaranty Corporation ("PBGC")

20  [Docket No. 439]; (vi) the Retirement Plan for Hospital Employees [Docket No. 460]; (vii) OCH

21  Forest 1 [Docket Nos. 452 and 561]; (viii) Premier and Infor [Doc. Nos. 444, 561, and 592]; and

22  (ix) the MOB Financing Entities [Docket No. 500].  The Debtors filed an omnibus reply to the

23  majority of the objections [Docket No. 561], and separate replies to the HHS [Docket No. 562],

24  and the CAG [Docket No. 560] objections.  The Court ruled that the Premature Objections were

25  premature and preserved for the Sale Hearing, as set forth in order granting the Motion (the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "LBR" references are to the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California.

"Bidding Procedures Order") [Docket No. 724].  Any additional objections that were filed and

overruled at the Bidding Procedures Hearing are not listed herein.

The Court, having reviewed the Memorandum [Docket No. 1041] and the notice of errata

related thereto [Docket No. 1050], the Declarations of Richard Adcock [Docket Nos. 8 and 393],

James Moloney [Docket Nos. 394 and 1041] and Jeffrey Smith [Docket No. 1044] in support of

the Motion, the *Notice to Counterparties to Executory Contracts and Unexpired Leases of the

Debtors That May Be Assumed and Assigned* [Docket No. 810], the *Supplement to Notice to

Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May be

Assumed and Assigned* [Docket No. 998], the *Notice That No Auction Shall Be Held* [Docket No.

1005], the response by the CAG [Docket No. 1066], the *Amended Notice of Contracts Designated

by Santa Clara County for Assumption and Assignment* [Docket No. 1110], the objections filed

by various counter-parties to certain contracts and leases [Docket Nos. 882, 889, 904-05, 913-14,

919, 920-21, 923, 928-29, 931, 933, 946, 970, 986, 1016, 1018, 1043, 1046, 1057-59, 1062,

1068-69, 1070-71,1080, 1085, 1088-89, 1091-96, 1120-21], as set forth on **Exhibit "A"** attached

to the *Notice Of Filing Listing Objections To Proposed Cure Amounts And Assumption And

Assignment Of Certain Unexpired Executory Contracts And Unexpired Leases* (the "Cure

Objections") [Docket No. 1145], the California Department of Health Care Services ("DHCS")

[Docket No. 906], and the California Nurses Association and Stationary Engineers Local 39

[Docket Nos. 1057-1062, 1067-1071], the Premature Objections and any withdrawals thereof

[Docket Nos. 1090 and 1100], the statements, arguments and representations of the parties made

at the Sale Hearing; and the entire record of these cases; and the Court, having determined that

the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors

and their shareholders, and that the legal and factual bases set forth in the Motion and presented at

the Sale Hearing establish just cause for the relief granted herein and for the reasons set forth in

the *Memorandum of Decision Overruling Objections of the California Attorney General to the

Debtor's Sale Motion* [Docket No. 1146]; Court's tentative ruling [Docket No. ____], the *Order

Providing Notice Of The Court's Intent To Authorize The Debtors To Sell Hospitals Free And*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  ~~Clear Of The 2015 Conditions Asserted By The California Attorney General~~ ~~[Docket No. 1125],~~

2  ~~and the responses thereto [Docket Nos. 1136- 37, 1139-41];~~ and all objections to the Motion, if

3  any, having been withdrawn or overruled; and after due deliberation and sufficient good cause

4  appearing therefor,

5  **THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]**

6        A.   <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to hear and determine the

7  Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the

8  Debtors' bankruptcy estates and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)

9  (2) (A), (M), (N) and (O).  Venue of these cases is proper in this District and in this Court

10  pursuant to 28 U.S.C. §§ 1408 and 1409.

11        B.   <u>Statutory Predicates</u>.  The statutory predicates for the relief requested in the

12  Motion are (i) §§ 105(a), 363(b), (f), (k), (l) and (m), and 365, (ii) Rules 2002(a)(2), 2002(c)(1)

13  and (d), 6004 (a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9006, 9007, 9013 and 9014, and

14  (iii) LBR 6004-1 and 9013-1.

15        C.   <u>Notice</u>.  As evidenced by the affidavits of service previously filed with the Court,

16  the Debtors have provided proper, timely, adequate and sufficient notice with respect to the

17  following: (i) the Motion and the relief sought therein, including the entry of this Sale Order and

18  the transfer and sale of the assets (the "<u>Purchased Assets</u>"), as set forth in the Asset Purchase

19  Agreement, dated October 1, 2018, a copy of which is attached as Exhibit "A" to Docket No. 365

20  (the "<u>APA</u>"); (ii) the Sale Hearing; (iii) the *Notice That No Auction Shall Be Held*; and (iv) the

21  assumption and assignment of the executory contracts and unexpired leases and proposed cure

22  amounts owing under such executory contracts and unexpired leases (the "<u>Cure Amounts</u>"); and

23  no further notice of the Motion, the relief requested therein or the Sale Hearing is required.  The

24  Debtors have also complied with all obligations to provide notice of the Auction, the Sale

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, made applicable to this proceeding pursuant to Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

109891071\V-2

Hearing, the proposed sale and otherwise, as required by the Bidding Procedures Order. A reasonable opportunity to object and to be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.    Arm's Length Transaction.  The APA and other documents and instruments (the "Transaction Documents") related to and connected with this transaction (the "Transaction") and the consummation thereof were negotiated and entered into by the Debtors and the County of Santa Clara, a political subdivision of the State of California ("SCC"), as Purchaser under the APA without collusion, in good faith and through an arm's length bargaining process. Neither SCC nor any of its affiliates or representatives is an "insider" of the Debtors, as that term is defined in § 101(31). None of the Debtors, SCC, or their respective representatives engaged in any conduct that would cause or permit the APA, any of the other Transaction Documents or the Transaction to be avoided under § 363(n), or have acted in any improper or collusive manner. The terms and conditions of the APA and the other Transaction Documents, including, without limitation, the consideration provided in respect thereof, are fair and reasonable, and are not avoidable and shall not be avoided, and no damages may be assessed against SCC or any other party, as set forth in § 363(n). The consideration provided by SCC is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States, including the State of California.

E.    Good Faith Purchaser.  SCC has proceeded in good faith and without collusion in all respects in connection with the sale process, in that: (i) SCC, in proposing and proceeding with the Transaction in accordance with the APA, recognized that the Debtors were free to deal with other interested parties; (ii) SCC agreed to provisions in the APA that would enable the Debtors to accept a higher and better offer; (iii) SCC complied with all of the provisions in the Bidding Procedures Order applicable to SCC; (iv) all payments to be made by SCC and other agreements entered into or to be entered into between SCC and the Debtors in connection with the Transaction have been disclosed; (v) the negotiation and execution of the APA and related Transaction Documents were conducted in good faith and constituted an arm's length transaction;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 5 -

109891071\V-2

(vi) SCC did not induce or cause the chapter 11 filings by the Debtors; and (vii) the APA was not entered into, and the Transaction being consummated pursuant to and in accordance with the APA is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors. SCC is therefore entitled to all of the benefits and protections provided to a good-faith purchaser under § 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction or SCC's status as a "good faith" purchaser.

F.    <u>Justification for Relief</u>.  Good and sufficient reasons for approval of the APA and the other Transaction Documents and the Transaction have been articulated to this Court in the Motion and at the Sale Hearing, and the relief requested in the Motion and set forth in this Sale Order is in the best interests of the Debtors, their estates, and their creditors. The Debtors have demonstrated through the Motion and other evidence submitted at the Sale Hearing both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the transfer and sale of the Purchased Assets as provided in the APA outside the ordinary course of business, and (iii) such transfer and sale is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.

G.    <u>Free and Clear</u>.  In accordance with §§ 363(b) and 363(f), the consummation of the Transaction pursuant to the Transaction Documents will be a legal, valid, and effective transfer and sale of the Purchased Assets and will vest in SCC, through the consummation of the Transaction, all of the Debtors' right, title, and interest in and to the Purchased Assets, free and clear of all liens, claims, interests, rights of setoff, netting and deductions, rights of first offer, first refusal and any other similar contractual property, legal or equitable rights, and any successor or successor-in-interest liability theories (collectively, the "<u>Encumbrances</u>"). The Debtors have demonstrated that one or more of the standards set forth in § 363(f)(1)-(5) have been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to § 363(f)(2). Those holders of Encumbrances who did object fall within one or more of the other subsections

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 6 -

of § 363(f). All holders of the Encumbrances in the Purchased Assets are adequately protected by having their respective Encumbrances attach to the Debtors' interests in the proceeds of the sale of the Purchased Assets under the APA (subject to any Challenge within the meaning of the Final DIP Order that has been, or may be, timely filed), and any related documents or instruments delivered in connection therewith, whenever and wherever received (the "Sale Proceeds") to the extent and manner herein provided.

H.    Prompt Consummation. The Debtors have demonstrated good and sufficient cause to waive the stay requirement under Rules 6004(h) and 6006(d). Time is of the essence in consummating the Transaction, and it is in the best interests of the Debtors and their estates to consummate the Transaction within the timeline set forth in the Motion and the APA. The Court finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth in this Order.

I.    Assumption of Executory Contracts and Unexpired Leases. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign to SCC the Currently Identified Designated Contracts (as defined and identified in paragraph 15 below) and to the extent subsequently identified by SCC pursuant to paragraph 16 below, the Subsequently Identified Designated Contracts (as defined in paragraph 16 below) (the Currently Identified Designated Contracts and the Subsequently Identified Contracts are collectively referred to herein as the "Designated Contracts") in connection with the consummation of the Transaction, and the assumption and assignment of the Designated Contracts is in the best interests of the Debtors and their estates.

J.    Cure/Adequate Assurance. In connection with the Closing, and pursuant to the APA, the Debtors (i.e., O'Connor Hospital ("OCH") and Saint Louise Regional Hospital ("SLRH")) will have cured, unless otherwise ordered, any and all defaults existing on or prior to the Closing under any of the Designated Contracts, within the meaning of § 365(b)(1)(A), by payment of the amounts and in the manner set forth below. SCC has provided or will provide adequate assurance of future performance of and under the Designated Contracts within the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 7 -

meaning of § 365(b)(1)(C) and § 365(f)(2)(B), and shall have no further obligation to provide assurance of performance to any counterparty to a Designated Contract.  Pursuant to § 365(f), the Designated Contracts to be assumed by the Debtors and assigned to SCC under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, SCC notwithstanding any provision in such Designated Contracts prohibiting their assignment or transfer.  The Debtors have demonstrated that no other parties to any of the Designated Contracts has incurred any actual pecuniary loss resulting from a default on or prior to the Closing under any of the Designated Contracts within the meaning of § 365(b)(1)(B).  Pursuant to § 365(f), the Designated Contracts to be assumed by the Debtors and assigned to SCC at the Closing shall be assigned and transferred to, and remain in full force and effect for the benefit of, SCC notwithstanding any provision in such contracts or other restrictions prohibiting their assignment or transfer.

K.    Rejection of Executory Contracts and Unexpired Leases. The Debtors have demonstrated that it is a reasonable and appropriate exercise of their sound business judgment for OCH and SLRH to reject all of their executory contracts and unexpired leases, excluding (i) Designated Contracts, (ii) any prepetition multiparty contract affecting more than one Debtor in addition to  OCH and/or SLRH, and  (iii) any collective bargaining agreement, pension plan or health and welfare plan providing collectively bargained benefits  to which OCH and/or  SLRH is a party  or sponsor, which matters shall be scheduled for determination as provided in paragraph 33 below.  Each such executory contract rejection is subject only to the conditions set forth in paragraphs 18, 31, and 32.  The Debtors shall file an appropriate motion to reject such contracts, covered by this paragraph K, prior to Closing and shall request therein that the rejection be effective as of the Closing or as otherwise appropriate.

L.    Highest or Otherwise Best Offer. The Debtors solicited offers and noticed the Auction in accordance with the provisions of the Bidding Procedures Order.  The Auction was duly noticed, the sale process was conducted in a non-collusive manner and the Debtors afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

better offer to purchase the Purchased Assets. No other Qualified Bid (as defined in the Bidding Procedures Order) was received by the Partial Bid Deadline or the Bid Deadline (as defined in the Bidding Procedures Order). Accordingly, on December 7, 2018, the Debtors filed the *Notice That No Auction Shall Be Held*. The transfer and sale of the Purchased Assets to SCC on the terms set forth in the APA constitutes the highest or otherwise best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination, in consultation with the Official Committee of Unsecured Creditors (the "Committee") and the Prepetition Secured Creditors (as defined in the Final DIP Order defined below), that the APA constitutes the highest or best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.    No *De Facto* or *Sub Rosa* Plan of Reorganization. The sale of the Purchased Assets does not constitute a *de facto* or *sub rosa* plan of reorganization or liquidation because it does not propose to (i) impair or restructure existing debt of, or equity or membership interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, including those set forth in §§ 1125 and 1129, or (iv) classify claims or equity or membership interests.

N.    Legal and Factual Bases. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The relief requested in the Motion is GRANTED and APPROVED in all respects to the extent provided herein.

2.    All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled, or provided for herein or in the Bidding Procedures Order, including any reservation of rights included in such objections, are overruled on the merits with prejudice. To the extent of any inconsistency between this Sale Order and the Bidding Procedures Order, the terms of this Sale Order shall prevail.

109891071\V-2

3.      Pursuant to §§ 105(a), 363(b), 363(f), and 365, the Transaction, including the transfer and sale of the Purchased Assets to SCC on the terms set forth in the APA, is approved in all respects, and the Debtors are authorized and directed to consummate the Transaction in accordance with the APA, including, without limitation, by executing all of the Transaction Documents (and any ancillary documents or instruments that may be reasonably necessary or desirable to implement the APA or the Transaction) and taking all actions necessary and appropriate to effectuate and consummate the Transaction (including the transfer and sale of the Purchased Assets) in consideration of the Purchase Price (as defined in Section 1.1 of the APA) upon the terms set forth in the APA, including, without limitation, assuming and assigning to SCC the Designated Contracts. The Debtors and SCC shall have the right to make any mutually agreeable, non-material changes to the APA, which shall be in writing signed by both parties, without further order of the Court provided, that after reasonable notice, the Committee, the DIP Agent (as defined in the Final DIP Order defined below), and the Prepetition Secured Creditors, do not object to such changes. Any timely objection by the aforementioned parties to any agreed non-material changes to the APA may be resolved by the Court on shortened notice.

4.      As of the Closing, (i) the Transaction set forth in the APA shall effect a legal, valid, enforceable and effective transfer and sale of the Purchased Assets to SCC free and clear of all Encumbrances, as further set forth in the APA and this Sale Order; and (ii) the APA, and the other Transaction Documents, and the Transaction, shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors, any successor thereto including a trustee or estate representative appointed in the Bankruptcy Cases, the Debtors' estates, all holders of any Claim(s) (as defined in the Bankruptcy Code) against the Debtors, whether known or unknown, any holders of Encumbrances on all or any portion of the Purchased Assets, all counterparties to the Designated Contracts and all other persons and entities.

5.      Encumbrances in and to Purchased Assets shall attach (subject to any Challenge within the meaning of the Final DIP Order that has been, or may be, timely filed) to the Sale Proceeds of such Purchased Assets with each such Encumbrance having the same force, extent,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

effect, validity and priority as such Encumbrance had on the Purchased Assets giving rise to the Sale Proceeds immediately prior to the Closing. For the avoidance of doubt, the foregoing force, extent, effect, validity and priority shall: (i) reflect the security interests, liens (including any Prepetition Replacement Liens arising for diminution of value, if any) and rights, powers and authorities that have been granted to the DIP Agent, the DIP Lender and to the Prepetition Secured Creditors, as applicable, pursuant to that certain *Final Order (I) Authorizing Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 409] (the "Final DIP Order"); and (ii) be subject to any Challenge within the meaning of the Final DIP Order that has been, or may be, timely filed. In addition, the Intercreditor Agreement (as defined in the Final DIP Order) shall apply with respect to the rights of the parties thereto in and to the Sale Proceeds and the Escrow Deposit Account, to the extent of and in accordance with its terms with all parties reserving all rights thereunder.

6.      Subject to the fulfillment of the terms and conditions of the APA, this Sale Order shall, as of the Closing, be considered and constitute for all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and/or a bill of sale transferring all of the Debtors' rights, title and interest in and to the Purchased Assets to SCC. Consistent with, but not in limitation of the foregoing, each and every federal, state, and local governmental agency or department, except as stated herein, is hereby authorized and directed to accept all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and approved in this Sale Order. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record.

7.      Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets is hereby directed to surrender possession of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 11 -

1    such Purchased Assets either to (a) the Debtors before the Closing or (b) to SCC or its designee

2    upon the Closing.

3           8.      The transfer of the Purchased Assets pursuant to the Transaction Documents shall

4    be a legal, valid, and effective transfer and shall, in accordance with §§ 105(a) and 363(f), and

5    upon consummation of the Transaction, including, without limitation, payment of the Purchase

6    Price to the Debtors, vest SCC with all right, title, and interest in the Purchased Assets, free and

7    clear of all Encumbrances.  Upon closing of the Transaction, SCC shall take title to and

8    possession of the Purchased Assets, subject only to the Assumed Obligations, as set forth in the

9    APA.  The transfer of the Purchased Assets from the Debtors to SCC constitutes a transfer for

10   reasonable equivalent value and fair consideration under the Bankruptcy Code and the laws of the

11   State of California.

12          9.      Following the Closing, no holder of any Encumbrance against the Debtors or upon

13   the Purchased Assets shall interfere with SCC's respective rights in, title to or use and enjoyment

14   of the Purchased Assets. All persons and entities are hereby forever prohibited and enjoined from

15   taking any action that would adversely affect or interfere with the ability of the Debtors to sell

16   and transfer the Purchased Assets to SCC, including the assumption and assignment of the

17   Designated Contracts.

18         10.     SCC shall not be deemed, as a result of any action taken in connection with, or as a

19   result of the Transaction (including the transfer and sale of the Purchased Assets), to: (i) be a

20   successor, continuation or alter ego (or other such similarly situated party) to the Debtors or their

21   estates by reason of any theory of law or equity, including, without limitation, any bulk sales law,

22   doctrine or theory of successor liability, or any theory or basis of liability regardless of source of

23   origin; or (ii) have, *de facto* or otherwise, merged with or into the Debtors; or (iii) be a mere

24   continuation, *alter ego*, or substantial continuation of the Debtors. Other than the Assumed

25   Liabilities, SCC is not assuming any of the Debtors' debts.

26         11.     This Sale Order (i) shall be effective as a determination that, on Closing, all

27   Encumbrances existing against the Purchased Assets before the Closing have been

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1 unconditionally released, discharged and terminated, and that the transfers and conveyances

2 described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all

3 persons and entities.  If, following a reasonable written request made by the Debtors, any person

4 or entity that has filed financing statements or other documents or agreements evidencing any

5 Encumbrances against the Purchased Assets shall not have delivered to the Debtors for use at or

6 in connection with Closing, in proper form for filing and executed by the appropriate parties,

7 termination statements, instruments of satisfaction, releases of all Encumbrances which the

8 person or entity has with respect to the Purchased Assets, then SCC and/or the Debtors are hereby

9 authorized to execute and file such statements, instruments, releases and other documents on

10 behalf of the person or entity with respect to such Purchased Assets.  For the avoidance of doubt,

11 such statements, instruments, releases and other documents shall not impair Encumbrances that

12 attach (subject to any Challenge within the meaning of the Final DIP Order that has been, or may

13 be, timely filed) to the Sale Proceeds or the terms of this Order, including, but not limited to

14 paragraphs 5 and 13 hereof.

15     12.    In accordance with the APA, concurrently with the Closing, SCC shall pay that

16 portion of the Purchase Price due at Closing, by wire transfer of immediately available funds, to

17 Debtors' Escrow Deposit Accounts (defined below), subject to the adjustments set forth in

18 Section 1.1.1 of the APA.  Any direct expenses of the Sale shall be disclosed by Debtors to the

19 DIP Agent, the Prepetition Secured Creditors, and the Committee in advance of the Closing.

20     13.    The terms and conditions of the Final DIP Order shall apply with respect to the

21 Sale Proceeds and Escrow Deposit Accounts (defined herein). Without limiting the foregoing, the

22 Debtors shall comply with paragraph 4 of the Final DIP Order in the following manner:

23     (a)  the Debtors shall direct SCC and any post-closing escrow agent appointed pursuant to

24 the terms of the APA to remit all Sale Proceeds to be received by the Debtors at Closing or

25 thereafter in cash, to deposit such Sale Proceeds in separate accounts labeled "Santa Clara Sale

26 Proceeds Account," in the name of each Debtor that is a Seller within the meaning of  the APA

27 (each such hereafter referred to as "Escrow Deposit Account");

28

- 13 -

109891071\V-2

(b) in giving direction to SCC pursuant to sub-paragraph (a), above, the Debtors shall exercise their reasonable business judgment, in good faith, and allocate the Sale Proceeds among the Escrow Deposit Accounts on the basis of the value of each Debtor's Purchased Assets as of the Closing (which allocation, for the avoidance of doubt, shall be subject to the reservations of rights in paragraph 4 of the Final DIP Order and footnote 5 of Exhibit 1 of the Bidding Procedures Order); provided further that nothing in this paragraph shall waive or limit any rights the Committee may have in connection with the confirmation of a proposed chapter 11 plan for any of the Debtors' cases (including the right to seek to reallocate estate values);

(c) without limitation of the rights of the DIP Agent and DIP Lender under the DIP Financing Agreements and the Final DIP Order, no funds held in any Escrow Deposit Account shall be (i) commingled with any other funds of the applicable Debtor or any of the other Debtors or (ii) used by the Debtors for any purpose, except as provided in this Order, the DIP Credit Agreements or Final DIP Order without further order of this Court, after reasonable notice under the circumstances to the DIP Agent, the Prepetition Secured Creditors and the Committee;

(d) each Escrow Deposit Account shall be subject to a deposit account control agreement in favor of the DIP Agent and DIP Lender, and subject to, without limitation of the rights of the DIP Agent and DIP Lender under the DIP Financing Agreements and the Final DIP Order with respect to the Sale Proceeds and Escrow Deposit Account, including, without limitation, following the occurrence of an Event of Default or the Revolving Loan Termination Date (as defined in the DIP Credit Agreement), the Debtors shall not be permitted to use the funds held in any Escrow Deposit Account for any purpose, except as provided in paragraph 14, 15, 16, and 17 of this Order, and to fund any Purchase Price adjustment in favor of the Purchaser, without first obtaining the consent of the DIP Agent, DIP Lender and the Prepetition Secured Creditors or obtaining an order of the Court pursuant to §§ 363 or 1129 after reasonable notice under the circumstances to the DIP Agent, the DIP Lender, the Prepetition Secured Creditors and the Committee and, if necessary, a hearing thereon.

109891071\V-2

14.    Concurrently with the Closing or as soon thereafter as is possible, and in accordance with the APA, the Debtors (i.e., the Hospital Debtors defined in the APA) shall pay out of the Sale Proceeds to the counter-parties to the Designated Contracts the cure amounts set forth in the *Debtors' Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned* [Docket No. 810], the *Supplement to Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May be Assumed and Assigned* [Docket No. 998], the *Amended Notice of Contracts Designated by Santa Clara County for Assumption and Assignment* [Docket No. 1110] (collectively, the "Cure Notices"), or as otherwise agreed to by the Debtors, SCC and the applicable counter-parties thereto or ordered by this Court after a continued hearing on the Cure Objections (the "Designated Cure Amounts").

15.    To the extent that any of the contracts and/or leases, which give rise to the Designated Cure Amounts and are set forth in the *Amended Notice of Contracts Designated by Santa Clara County for Assumption and Assignment* [Docket No. 1110] (the "Currently Identified Designated Contracts") are executory contracts or unexpired leases (over which the Court is not making any such determination at this time), then in connection with the Closing, the Debtors shall be deemed to have assumed all such Currently Identified Designated Contracts (so that they are deemed part of the Designated Contracts) and to have assigned them to SCC, and SCC shall have assumed all obligations owing under all such Currently Identified Designated Contracts arising after and following the Closing.  In the event that the Court ultimately determines that any such counter-parties to the Currently Identified Designated Contracts (the "Currently Identified Designated Contract Counter-Parties") have an allowed claim against the Debtors which exceeds the Designated Cure Amounts, the difference will be paid by the Debtors out of the Sale Proceeds and shall not be the responsibility of SCC. The Court shall resolve any and all disputes which may arise between the Debtors, SCC and any of the Currently Identified Designated Contract Counter-Parties over whether the Currently Identified Designated Contracts are executory contracts or unexpired leases and whether any of the Currently Identified Designated Contract

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA, 90017-5704
(213) 623-9300

- 15 -

109891071\V-2

Counter-Parties are entitled to an allowed claim against the Debtors which exceeds the Designated Cure Amounts.

16.    All of the Currently Identified Designated Contracts, to the extent they are executory contracts or unexpired leases, shall be part of the Designated Contracts that will be assumed by the Debtors and assigned to SCC at the Closing. In the event that SCC elects to add any other of the Debtors' executory contracts or unexpired leases to the list of Designated Contracts (the "Subsequently Identified Designated Contracts"), the Debtors shall (i) file a notice with the Court, by January 23, 2019, identifying all such Subsequently Identified Designated Contracts and their respective cure amounts, and (ii) serve such notice by over-night mail on all counter-parties to the Subsequently Identified Designated Contracts (the "Subsequently Identified Designated Contract Counter-Parties").   All Subsequently Identified Designated Contracts shall be assumed by the Debtors and assigned to SCC at the Closing, with the Debtors to be obligated to pay all cure amounts owing to such Subsequently Identified Designated Contract Counter-Parties concurrently with the Closing, as set forth in the Debtors' notice, or as otherwise agreed to by the Debtors, SCC and the applicable counter-parties thereto, or ordered by the Court in accordance with paragraph 36 below (the "Additional Cure Amounts").

17.    Upon the Closing, the Debtors are authorized and directed to assume, assign and/or transfer each of the Designated Contracts to SCC, including the Currently Identified Designated Contracts and any Subsequently Identified Designated Contracts (all counterparties to the Currently Identified Designated Contracts and any Subsequently Identified Designated Contracts collectively, the "Contract Counter-Parties"). At the Closing, the Debtors shall pay out of the Sale Proceeds (i) to the Designated Cure Amounts identified in paragraph 14 above, and (ii) the Additional Cure Amounts. Payment by the Debtors of such Designated Cure Amounts and Additional Cure Amounts are deemed the necessary and sufficient amounts to "cure" all "defaults" with respect to all such Currently Identified Designated Contracts and Subsequently Identified Designated Contracts under § 365(b). The payment by the Debtors shall (i) effect a cure of all defaults existing under all such Currently Identified Designated Contracts, and (ii) compensate all such Contract Counter-Parties for any actual

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

pecuniary loss resulting from any such default.  The Debtors shall then have assumed and assigned to SCC, effective as of the Closing, all of the Designated Contracts (comprised of both all Currently Identified Designated Contracts and all Subsequently Identified Designated Contracts, if any), and, pursuant to § 365(f), the assignment by the Debtors of all such Designated Contracts to SCC shall not be a default thereunder. After the payment of the Designated Cure Amounts and the Additional Cure Amounts by the Debtors, neither the Debtors nor SCC shall have any further liabilities to any Contract Counter-Parties, other than SCC's obligations under the Designated Contracts that accrue and become due and payable after the Closing Date.  In addition, adequate assurance of future performance has been demonstrated by or on behalf of SCC with respect to all of the Designated Contracts within the meaning of §§ 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B). For the avoidance of doubt, the Debtors shall be liable for the payment of all cure costs with respect to the Designated Contracts as may be required under § 365(b)(1).  SCC shall not be liable for the payment of any cure costs with respect to the Designated Contracts as may be required under § 365(b)(1) or for the payment of any liabilities or obligations arising from or related to (a) such Designated Contracts on or prior to the Closing of the Transaction, (b) any executory contracts which the Debtors intend to reject by appropriate motion at a later date and which are not being assumed and assigned to SCC as part of the Transaction, (c) any prepetition multiparty contract affecting more than one Debtor in addition to OCH and/or SLRH, or (d) any collective bargaining agreement, pension plan, or health and welfare plan providing collectively bargained benefits to which OCH and/or SLRH is a party or sponsor.

18.    The Debtors intend to reject, pursuant to § 365(a), all executory contracts to which OCH and SLRH are a party, excluding (i)  Designated Contracts, (ii) any prepetition multiparty contract affecting more than one Debtor in addition to  OCH and/or SLRH, and (iii) any collective bargaining agreement, pension plan or health and welfare plan providing collectively bargained benefits  to which OCH and/or  SLRH is a party  or sponsor.  The Debtors shall file an appropriate motion to reject such contracts prior to Closing.  Notwithstanding the prior statement, Closing is conditioned upon the rejection, termination and/or modification of all applicable CBAs

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 17 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

related to OCH and SLRH, pursuant to § 1113 or as otherwise agreed to between the Debtors, the respective unions, and as approved by the Court.

19.    All of the Contract Counter-Parties are forever barred, estopped, and permanently enjoined from (i) raising or asserting against the Debtors or SCC, or any of their property, any assignment fee, acceleration, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Designated Contracts, existing as of the Closing, or arising by reason of the consummation of the Transaction contemplated by the APA, including, without limitation, the Transaction and the assumption and assignment of the Designated Contracts, including any asserted breach relating to or arising out of the change-in-control provisions in such Designated Contracts, or any purported written or oral modification to the Designated Contracts and (ii) asserting against SCC any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing or arising by reason of the transfer of the Purchased Assets, except for the Assumed Obligations.

20.    Any provisions in any Designated Contracts that prohibit or condition the assignment of such Designated Contract or allow the counterparty to such Designated Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Designated Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Designated Contract to SCC in accordance with the APA, pursuant to § 363(f). Notwithstanding the foregoing, the rights of Contract Counter-Parties to assert that a Designated Contract may not be assumed and assigned absent consent, on the ground that such Designated Contract pertains to the licensing of intellectual property, are preserved, and any such objections may be asserted in accordance with the procedures set forth in paragraphs 34, 35, and 36; provided, however, that any Contract Counter-Party that has failed to object within the deadlines set forth in the applicable Cure Notice is now forever barred from asserting its objection.

21.    The terms and provisions of this Sale Order, as well as the rights granted under the Transaction Documents, shall continue in full force and effect and are binding upon any successor,

109891071\V-2

reorganized Debtors, or chapter 7 or chapter 11 trustee applicable to the Debtors, notwithstanding any such conversion, dismissal or order entry. Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or in any order confirming such a plan, nor any order dismissing the cases or converting the cases to a case under chapter 7, shall conflict with or derogate from the provisions of the APA, any documents or instruments executed in connection therewith, or the terms of this Sale Order, provided however, that in the event of a conflict between this Sale Order and an express or implied provision of the APA, this Sale Order shall govern. The provisions of this Sale Order and any actions taken pursuant hereto shall survive any conversion or dismissal of the cases and the entry of any other order that may be entered in the cases, including any order (i) confirming any plan of reorganization; (ii) converting the cases from chapter 11 to chapter 7; (iii) appointing a trustee or examiner in the cases; or (iv) dismissing the cases.

22.    The Transaction contemplated by the APA and other Transaction Documents are undertaken without collusion and in "good faith," as that term is defined in § 363(m) of the Bankruptcy Code. SCC is a good faith purchaser within the meaning of § 363(m) and, as such, is entitled to the full protections of § 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Order to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to SCC. The APA and the Transactions contemplated thereby cannot be avoided under § 363(n).

23.    The failure to specifically include any particular provision of the APA or the other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Bankruptcy Court that the Transaction, the APA and the other Transaction Documents be authorized and approved in their entirety. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

24.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rules 6004(h), 6006(d), 7062, or 9014, if applicable, or any other LBR or otherwise, this Sale Order shall not be stayed for 14-days after the entry hereof, but shall be effective

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 19 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

and enforceable immediately upon entry pursuant to Rule 6004(h) and 6006(d). Time is of the essence in approving the Transaction (including the transfer and the sale of the Purchased Assets).

25. The automatic stay in effect pursuant to § 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to (i) allow SCC to deliver any notice provided for in the APA and Transaction Documents and (ii) allow SCC to take any and all actions permitted under the APA and Transaction Documents in accordance with the terms and conditions thereof.

26. Unless otherwise provided in this Sale Order, to the extent any inconsistency exists between the provisions of the APA and this Sale Order, the provisions contained in this Sale Order shall govern.

27. This Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the APA and this Sale Order in all respects, and further, including, without limitation, to (i) hear and determine all disputes between the Debtors and/or SCC, as the case may be, and any other non-Debtor party to, among other things, the Designated Contracts concerning, among other things, assignment thereof by the Debtors to SCC and any dispute between SCC and the Debtors as to their respective obligations with respect to any asset, liability, or claim arising hereunder; (ii) compel delivery of the Purchased Assets to SCC free and clear of Encumbrances; (iii) compel the delivery of the Purchase Price or performance of other obligations owed to the Debtors; (iv) interpret, implement, and enforce the provisions of this Sale Order; and (v) protect SCC against (A) claims made related to any of the Excluded Liabilities (as defined in the APA), (B) any claims of successor or vicarious liability (or similar claims or theories) related to the Purchased Assets or the Designated Contracts, or (C) any Encumbrances asserted on or against SCC or the Purchased Assets.

28. Following the date of entry of this Sale Order, the Debtors and SCC are authorized to make changes to the APA without the need for any further order of the Court provided that all such changes have been approved in writing by the Debtors, SCC, the Committee, the DIP Agent, and Prepetition Secured Creditors. Any other changes to the APA or this Sale Order require a further order of the Court, after reasonable notice under the circumstances and a hearing.

- 20 -

109891071\V-2

29.    Notwithstanding any other provision of this Sale Order or any other Order of this Court, no sale, transfer or assignment of any rights and interests of a regulated entity in any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder. The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent not inconsistent with the applicable provisions of the Bankruptcy Code.

30.    To the extent the Purchased Assets contain records of the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B (collectively, the "Pension Plans") or employment records of participants of the Pension Plans, the SCC shall store, and preserve any such records until the PBGC has completed its investigation regarding the Pension Plans and shall make such documents available to the PBGC for inspection and copying.  Such records include, but are not limited to, any Pension Plan governing documents, actuarial documents, and employment records (collectively, the "Pension Plan Documents").  The Debtors shall retain and not abandon any Pension Plan Documents that are not Purchased Assets for not less than twelve (12) months after Closing and shall make such documents available to the PBGC for inspection and copying.

31.    No later than January 18, 2019, either (i) the Debtors will file a notice of a resolution of the issues regarding the transfer and/or proposed assumption and assignment or rejection of the Medi-Cal Provider Agreements or (b) DHCS will file a supplemental objection to the proposed transfer of the Medi-Cal Provider Agreements.  If necessary, the Debtors will file any reply to the supplemental objection no later than 4:00 p.m. (Pacific Time), on January 25, 2019, and a hearing will be held on the issues raised regarding the transfer and/or proposed assumption and assignment or rejection of the Medi-Cal Provider Agreements on January 30, 2019, at 10:00 a.m. (Pacific Time); and all parties' rights, claims, and defenses are preserved until that hearing.  Nothing in this Sale Order shall apply to

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

Medi-Cal Provider Agreements until and unless there is a Court order approving a settlement between the Debtors and the DHCS or a Court order resolving the DHCS's objections.

32.     No later than January 18, 2019, either (i) the Debtors will file a notice of a resolution of the issues regarding the transfer and/or proposed assumption and assignment or rejection of the Medicare Provider Agreements or (b) HHS will file a supplemental objection to the proposed transfer of the Medicare Provider Agreements.  If necessary, the Debtors will file any reply to the supplemental objection no later than 4:00 p.m. (Pacific Time), on January 25, 2019, and a hearing will be held on the issues raised regarding the transfer and/or proposed assumption and assignment or rejection of the Medicare Provider Agreements on January 30, 2019, at 10:00 a.m. (Pacific Time); and all parties' rights, claims, and defenses are preserved until that hearing.  Nothing in this Sale Order shall apply to Medicare Provider Agreements until and unless there is a Court order approving a settlement between the Debtors and the HHS or a Court order resolving the HHS's objections.

33.     The Debtors must have resolution of the collective bargaining agreements (the "CBAs") that cover employees at Saint Louise Regional Hospital and O'Connor Hospital prior to SCC closing on the proposed Sale pursuant to the APA.  The hearing on the Debtors' motion(s) with respect to the rejection and/or modification of such CBAs (the "CBA Motions") will occur on January 30, 2019, at 10:00 a.m. (Pacific Time).  Debtors shall file the CBA Motions by no later than January 2, 2019. Any objection to the CBA Motions shall be filed on January 16, 2019, and any reply shall be filed on January 23, 2019.

34.     A continued hearing on the Cure Objections shall be held on January 30, 2019, at 10:00 a.m. (Pacific Time).  As to the Currently Identified Designated Contracts, by no later than Friday, January 18, 2019, the Debtors shall file a notice containing a list of (a) the Cure Objections that have been resolved, and (b) the Cure Objections as to which Court intervention is required. As to the Cure Objections for which Court intervention is required, the following briefing schedule shall apply:  (2) (1) the Debtors' opposition to each outstanding Cure Objection shall be submitted by no later than Friday, January 18, 2019; and (3) (2) the counterparties' reply in support of its Cure Objections shall be submitted by no later than Friday, January 25, 2019.  Nothing in this Sale Order constitutes a finding or

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 22 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

determination on any Cure Objection.  All Cure Objections are preserved until resolved either by agreement between the Debtors and the contract counterparty or further order of the Court.

35.    As to any executory contracts or unexpired leases that were listed on the Initial Designated Contract List, but not listed on any prior Cure Notices, any counterparty thereto may file an objection to the cure amount or assumption thereof by January 11, 2019, and all other provisions in paragraph 34 shall apply to resolution thereof.

36.    As to Subsequently Identified Designated Contracts, (i) the Debtors shall file a notice with the Court, by January 23, 2019, identifying all Subsequently Identified Designated Contracts and provide service thereof in accordance with paragraph 16, and (ii) to the extent that any Subsequently Identified Designated Contracts were not listed on any of the prior Cure Notices, counterparties subject to contracts who object to assumption and/or the proposed cure amounts must file an objection no later than January 30, 2019, and any reply shall be filed on February 6, 2019. The request by Medical Office Building of California LLC for an extension of the January 30, 2019 objection deadline in the event that its lease is designated as a Subsequently Identified Designated Contract is overruled. To the extent that a negotiated resolution cannot be achieved, any objections filed in connection with the Subsequently Identified Designated Contracts shall be adjudicated on February 13, 2018, at 10:00 a.m. (Pacific Time), where the Court shall resolve any and all disputed issues related to the objection.

37.    The Committee's and the Prepetition Secured Creditors' rights, and their ability to participate and be heard at the hearings described in paragraphs 31-36 of this Sale Order, are hereby reserved.  To the extent that the DIP Agent, DIP Lender, Prepetition Secured Creditors or the Committee desire to file pleadings related to such hearings, their respective times for filing an objection or response to any of the requests for relief described in paragraphs 31-36 herein shall be the same as granted to the Debtors pursuant to the notice in each such instance.

- 23 -

109891071\V-2

1    **IT IS SO ORDERED.**

2                                        ###

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: December 27, 2018

                                   Ernest M. Robles
25                                 United States Bankruptcy Judge

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2