SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
SAM J. ALBERTS (pro hac vice)
sam.alberts@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924
Attorneys for the Chapter 11 Debtors and
Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>    Debtors and Debtors In Possession.<br><br>☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>    Debtors and Debtors In Possession. | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER<br>Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER<br>Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER<br>Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER<br><br>Hon. Judge Ernest M. Robles<br><br>**DEBTORS' REQUEST TO STRIKE OR, IN THE ALTERNATIVE, OVERRULE CALIFORNIA NURSES ASSOCIATION UNAUTHORIZED "SUR-REPLY" TO DEBTORS' OMNIBUS REPLY IN SUPPORT OF MOTIONS UNDER § 1113 OF THE BANKRUPTCY CODE**<br><br>[Relates to Docket Nos. 1182, 1269, 1332 and 1386]<br>**Hearing:**<br>**Date:    January 30, 2019**<br>**Time:    10:00 am**<br>**Location: Courtroom 1568**<br>    **255 E. Temple St., Los Angeles, CA** |

110091889\V-2

Verity Health System of California, Inc., a California nonprofit public benefit corporation and the Debtor herein ("Verity"), and the above-referenced affiliated debtors, the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Debtors"), hereby file this response to the unauthorized "Sur-reply" filed by the California Nurses Association ("CNA"), on January 28, 2019 [Docket Nos. 1386] (the "Surreply"), and, in response, state as follows:

The Surreply is a last-minute, unauthorized and unpersuasive attempt to relitigate issues and facts that were already raised (or could have raised previously) by CNA and are otherwise irrelevant to the § 1113 Motions pending before this Court. The fact that it is last-minute (filed less than 48 hours before the hearing) is self-evident, and it is unauthorized because the Court has not granted leave to file a surreply and "the Bankruptcy Rules [do not] provide for a [party to file a] surreply." *See* Fed. R. Bankr. P. 9014 & 6006; *see In re Whitaker*, 2011 WL 4790755, at \*2 (Bankr. N.D. Ga. Sept. 30, 2011) (noting party should have sought to "obtain permission," if it wished to file a surreply). The Rules do not so provide because "[c]ourts generally view motions for leave to file a sur-reply with disfavor," *Hill v. England*, 2005 WL 3031136, at \* 1 (E.D. Cal. Nov. 8, 2005), because "they usually are a strategic effort by the nonmovant to have the last word on a matter" after briefing has closed. *Avery v. Barsky*, 2013 WL 1663612, at \*2 (D. Nev. Apr. 17, 2013) (citing *Lacher v. W.*, 147 F.Supp.2d 538, 539 (N.D. Tex. 2001)). Here, especially, when the Court entered an order [Docket No. 1153] establishing briefing deadlines for § 1113 matters and conspicuously did not include any date for the filing of surreplies, the Court should strike the Surreply in its entirety or, in the alternative, overrule it and give it no weight. *See In re Mark Twain Marine Indus., Inc.*, 115 B.R. 948, 954–55 (Bankr. N.D. Ill. 1990) (striking surreply filed without leave after briefing deadline established in court order).

Regardless, the Surreply is unpersuasive as a matter of fact and law. The first and central contention by CNA is that it recently received copies of indications of interest ("IOIs") from parties who initially expressed an interest in either the entirety of Verity's assets and/or indicate they may wish to assume collective bargaining agreements and pensions. CNA then attempts to

- 1 -

110091889\V-2

assert that this information establishes "bad faith" by the Debtors to justify denial of their request to modify the CNA CBA under § 1113. This argument fails for several reasons.

First and foremost, CNA's assertion is without merit because none of these parties ever submitted a bid. This fact alone is fatal to CNA's argument because these parties never put forward a bid and the only bidder was Santa Clara County ("SCC"), which indisputably cannot take CNA's CBA.

Second, similarly fatal to CNA's assertion of "bad faith" is that the existence of the indications of interest were disclosed months ago in papers filed with the Court, including in connection with Debtors' 1113 Motions. *See Moloney Declaration [in support of the Bidding Procedures Motion]* [Docket No. 394, Oct. 3, 2018] ("Some of the potential buyers that evaluated acquiring the Santa Clara County assets were interested in acquiring the entire Verity Health System [. . .]"); *see also James Moloney Declaration in Support of 1113 Motions* [Docket No. 1194, at ¶ 5]. In the Moloney Declaration attached to the Sale memorandum, [Docket No. 1041, Dec. 12, 2018], Mr. Moloney testified, at ¶ 6, that:

> Seven parties submitted proposals to purchase, in the aggregate or in full, the Assets (the "Proposal Parties"). These proposals included proposals to (i) acquire the real estate assets of one campus; (ii) acquire only O'Connor Hospital, Saint Louise Regional Medical Center and the DePaul Campus and related assets ("Santa Clara Assets"); and (iii) acquire Santa Clara Assets in conjunctions with all other hospital and related assets of Verity Health. Cain has stayed in contact with the Proposal Parties regarding the Bidding Procedure Order throughout these cases, including after the APA was signed and after the Bidding Procedures Order was entered. The APA was the result of extensive negotiations and documentation between the Debtors and the County.

In the *James Moloney Declaration in Support of 1113 Motions* [Docket No. 1194], Mr. Moloney states (at ¶¶ 2, 13, respectively):

> Verity, with the assistance of Cain and its other advisors, evaluated the proposals for whole system purchases and the proposals for only certain assets, and determined that the expected net proceeds would be higher if the Verity assets were sold separately as opposed to the entire Verity Health System to a single buyer.

> Throughout the [bankruptcy] sale process, Verity's preference was that its collective bargaining agreements for employees of the

- 2 -

110091889\V-2

> Hospitals be assumed, in whole or in part and this preference was expressed in the CIM used to communicate with interested parties. However, no party, including Alternate Bidder A or Alternate Bidder B, expressed interest in assuming the collective bargaining agreements. No party submitted a bid whereby it sought to assume any of these collective bargaining agreements.

Moreover, CNA's objections filed in connection with the sale to SCC [Docket Nos. 465; 1061] demonstrate it was fully aware of the Sale process and the existence of other interested parties. Also, as early as October 17, 2018, the Debtors stated that they would "provide potential bidders with any information the Union Objectors wish to provide and invited all unions to engage with and provide information to any and all potential buyers. [Docket No. 561 at 10-11.] Therefore, for CNA to assert surprise as to the existence of such interested parties who did not bid is unjustified and does not merit denial of the § 1113 Motion.

Third, as demonstrated by the papers filed in connection with the *Debtor's Omnibus Reply* [Docket No. 1332], the Debtors repeatedly sought to engage with and enter into a confidentiality agreement (a "CA") with CNA, to which it refused to respond. Notwithstanding CNA's failure to provide any specific requests for information or to enter into a CA, the Debtors *voluntarily* provided copies of the IOIs to CNA when the Debtors had reached agreement with SEIU that permitted production of the IOIs (with the names of the parties redacted). As such, CNA's assertion that it "acquired additional information from the Debtor since filing its Objection," plays fast and loose with the facts. More importantly, it does not justify the filing of the Surreply or change the essential facts that show that there was no other bidder for the Santa Clara assets, that the only bidder (SCC) would not and could not take any CBAs and that, upon Closing of the Sale, the Debtors will no longer own these assets or have need for employees at those facilities or the CBAs that cover them.

Although not relevant to the pending § 1113 Motions and plainly an attempt to collaterally attack the approved Sale, it should be noted that CNA misinforms the Court as to what is actually contained in the IOIs. For example, CNA asserts that "Entity B stated it would pay $265 million for the Purchased Assets, honor the existing CBAs with modifications regarding the pension plans, and would grant the former Verity employees it hired vesting credit in its pension plan

- 3 -

110091889\V-2

based on their credited service in Verity's plans." [Docket No. 1385, at 2]. This assertion is misleading in that the referenced IOI is actually more equivocal, because it only states that "[Buyer party would] (a) recognize existing unions and negotiate in good faith to develop new CBAs consistent with the terms (wages, benefits, etc.) of other [Buyer hospitals'] CBAs with these same unions; or (b) accept assignment of existing CBAs, provided certain limited modifications can be made to those CBAs as a condition of assignment." [Docket No. 1386-6 at 15]. Regardless, it is irrelevant what Entity B might have said or done because when it came time to actually submit a bid, it did not do so.[1] For the same reason, it is irrelevant whether Entity A suggested a willingness to assume pension liabilities (as CNA asserts in Section C) because Entity A never bid.

CNA's contention that it (and SEIU) attempted to negotiate a settlement with the Debtors and provided "counteroffers" is misleading. Although SEIU has recently provided the Debtors with a counteroffer (to which the Debtors have responded), CNA has not submitted a counteroffer and it has failed to provide any evidence of one. Indeed, the facts demonstrate that CNA has not provided the Debtors with a counterproposal notwithstanding the Debtors repeated invitations to CNA. [Docket 1386-1]. With respect to negotiations, the written record shows that CNA has paid casual lip service to the Debtors' repeated offers to negotiate. [Docket Nos. 1386-1; 1386-2]

Finally, CNA's last argument, contained in Section D, is a transparent attempt relitigate the meaning of cases that CNA previously argued in its Objection. As such, this arguments is improperly raised and, as previously demonstrated, without merit.

///

///

///

---

[1] Similarly baseless is CNA's assertion that "[e]ven more troubling is that Entity B would have paid more money for the Purchased Assets ($265 million compared to the County's bid of $235 million) and given Verity's employees vesting credits in it pension plan based upon their prior credited service as Verity employees." Surreply, at 5. It is, however, without dispute that Entity B never submitted a bid on these or any other terms.

- 4 -

110091889\V-2

WHEREFORE, the Debtors request that the Court (i) strike or otherwise overrule the Surreply, (ii) grant the § 1113 Motion and, (iii) grant all further relief as warranted by law and equity to the Debtors.

Dated: January 28, 2019

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON
SAM J. ALBERTS

By  */s/ Tania M. Moyron*
       *Tania M. Moyron*

Attorneys for the Chapter 11 Debtors and Debtors In Possession

- 5 -

110091889\V-2