1  Craig G. Margulies (State Bar No. 185925)
   *Craig@MarguliesFaithLaw.com*
2  MARGULIES FAITH LLP
   16030 Ventura Blvd., Suite 470
3  Encino, CA  91436
   Telephone: (818) 705-2777
4  Facsimile:  (818) 705-3777

5  Counsel for Hooper Healthcare Consulting LLC

6              UNITED STATES BANKRUPTCY COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8                 LOS ANGELES DIVISION

   In re:                              | LEAD CASE NO.: 2:18-bk-20151-ER
9
   VERITY HEALTH SYSTEM OF             | CHAPTER: 11
10
   CALIFORNIA, INC., *et al.*,         | JOINTLY ADMINISTERED WITH:
11                                      | CASE NO.: 2:18-bk-20162-ER
            Debtors and Debtors In Possession. | CASE NO.: 2:18-bk-20163-ER
12                                      | CASE NO.: 2:18-bk-20164-ER
                                        | CASE NO.: 2:18-bk-20165-ER
13  _____    | CASE NO.: 2:18-bk-20167-ER
                                        | CASE NO.: 2:18-bk-20168-ER
14  ☒ Affects All Debtors               | CASE NO.: 2:18-bk-20169-ER
   ☐ Affects Verity Health System of California, Inc. | CASE NO.: 2:18-bk-20171-ER
   ☐ Affects O'Connor Hospital          | CASE NO.: 2:18-bk-20172-ER
15 ☐ Affects Saint Louise Regional Hospital | CASE NO.: 2:18-bk-20173-ER
   ☐ Affects St. Francis Medical Center | CASE NO.: 2:18-bk-20175-ER
16 ☐ Affects St. Vincent Medical Center | CASE NO.: 2:18-bk-20176-ER
   ☐ Affects Seton Medical Center       | CASE NO.: 2:18-bk-20178-ER
17 ☐ Affects O'Connor Hospital Foundation | CASE NO.: 2:18-bk-20179-ER
   ☐ Affects Saint Louise Regional Hospital | CASE NO.: 2:18-bk-20180-ER
18 Foundation                           | CASE NO.: 2:18-bk-20181-ER
   ☐ Affects St. Francis Medical Center of Lynwood |
19 Foundation                           | OPPOSITION TO THE DEBTORS' MOTION
   ☐ Affects St. Vincent Foundation     | FOR THE ENTRY OF (I) AN ORDER (1)
20 ☐ Affects St. Vincent Dialysis Center, Inc. | APPROVING FORM OF ASSET PURCHASE
   ☐ Affects Seton Medical Center Foundation | AGREEMENT…[DKT. NO. 1279], AND
21 ☐ Affects Verity Business Services   | RESERVATION OF RIGHTS;
   ☐ Affects Verity Medical Foundation  | DECLARATION OF BRYAN HOOPER
22 ☐ Affects Verity Holdings, LLC       |
   ☐ Affects De Paul Ventures, LLC      | Hearing:
23 ☐ Affects De Paul Ventures – San Jose ASC, LLC | Date:   February 6, 2019
                                        | Time:   10:00 a.m.
24          Debtors and Debtors In Possession. | Place:  Courtroom 1568
25                                      |          255 East Temple Street
                                        |          Los Angeles, CA 90012
26
27
28

Hooper Healthcare Consulting LLC ("Hooper") hereby submits its opposition to the *Motion for the Entry of (I) an Order (1) Approving Form of Asset Purchase Agreement for Stalking Horse Bidder and for Prospective Overbidders; (2) Approving Auction Sale Format, Bidding Procedures and Stalking Horse Bid Protections; (3) Approving Form of Notice To Be Provided To Interested Parties; (4) Scheduling a Court Hearing To Consider Approval of the Sale To the Highest Bidder; and (5) Approving Procedures Related To the Assumption of Certain Executory Contracts and Unexpired Leases; and (II) an Order (A) Authorizing the Sale of Property Free and Clear of all Claims, Liens and Encumbrances* (Dkt. 1279, the "Motion") filed by Debtor Verity Health System of California, Inc. ("Verity") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Bankruptcy Cases"), and states the following:

## I.

## BACKGROUND FACTS

A.  The Executory Contract Between Verity and Hooper

California established a Medi-Cal Hospital Quality Assurance Fee ("QAF") Program in 2008 wherein private acute care hospitals are assessed fees that collectively are used to draw down matching federal Medicaid funds.  After a 24% rake-off of the net benefit by the State of California (the "State"), the balance is paid out to hospitals as supplemental Medi-Cal funds.  For the most recently completed 2017-18 State fiscal year, total net funding to hospitals will equal $4.5 billion dollars.  Verity is slated to collect $102.3 million of that total.

Verity originally engaged Hooper in 2010 with the dual tasks of (1) monitoring the development and implementation of each year's QAF program to ensure accurate and complete implementation of fees collected and payments made for Verity and (2) identifying and implementing strategies to secure enhanced net funding for Verity.  The engagement has been extended to cover the QAF V program through June 30, 2019 pursuant to that certain Consulting Agreement dated December 1, 2015 (as amended on July 26, 2018, the "Hooper Contract").

During the current QAF V program extension, the implementation of action plans proposed by Hooper and approved by Verity resulted in a net Verity funding gain (solely due to the Hooper

consulting services) of $16.4 million for the two and a half year program extension.   In addition, the scope of the Hooper Contract was expanded through amendment to include specific support for the implementation of the Directed Payment process under QAF, which is detailed below.

At the fundamental level, the specific services provided by Hooper include a detailed and thorough review of the data upon which fee assessment will be made to determine accuracy with respect to the imposition of fees based upon that data.  The data reviewed is derived, in large part, from hospital submitted financial reports that previously have not been reviewed.  Hooper also evaluates a number of other factors that determine how hospital fees are assessed related to the categorization of each Verity hospital based upon location and type of services offered.  The Hooper Contract also specifies the tasks Hooper will undertake to assess the accuracy of the data upon which the State calculates the ten different supplemental payment streams of funding encompassed in the QAF fee modeling.  The QAF program relies on numerous distinct data sources, each of which are critical to ensuring an accurate and equitable distribution of funds for Verity hospitals.

Hooper's engagement also involves the periodic review of systems and reports to identify adjustments that could be implemented to enhance net funding levels for Verity.  Among the most recent successful efforts by Hooper have been the correction of State data to include a more accurate identification of newborn patient days payable under the program and an improved methodology to pay for mental health services for Medi-Cal beneficiaries enrolled in Medi-Cal health plans.  This effort on the part of Hooper resulted in **an additional $16.4 million** in payments for Verity hospitals over the current 2.5 year QAF V program, which expires in June 2019.

Further, a recent amendment to the Hooper Contract expanded Hooper's services to include leading the Verity hospitals' reconciliation and validation of the patient days reported by the State vis-à-vis the health plans for making a new category of payments, called "Directed Payments," for beneficiaries enrolled in health plans.  Statewide, the Directed Payments are valued at $2 billion annually.  Initial models suggest that the Verity hospitals should expect $85 million in funding annually, however the payments are subject to the data verification process, which is currently coordinated and led by Hooper on a monthly basis.  Initial data from the State has shown significant

deficiencies, which are actively being addressed by Hooper, in coordination with Verity.  This is a very fast-moving process that requires immediate attention to avoid losing significant QAF revenue. While still in the midst of the review and correction process, it is estimated that failure to employ a comprehensive review process could have resulted in underpayments of approximately $10-15 million per year to Verity hospitals.

Hooper is uniquely positioned to provide QAF support for State hospitals like Verity due to its extensive experience in the design and implementation of the QAF program.  As advisors to the major organization representing the interests of private safety net hospitals that participate in the QAF, Hooper participates in all statewide workgroups overseeing the administration of the program, thereby enabling Hooper to not only provide invaluable analysis, modeling and forecasting but also precise support for individual hospital participation.   Given the amount of funding at stake, the unique services and expertise provided by Hooper are and have been critical for Verity.

Pursuant to the Hooper Contract, Hooper is compensated for its on-going services with respect to the QAF V program by (i) a monthly consulting fee of $9,400 per month, plus (ii) compensation equal to 3% of Verity's net benefit from the QAF V program, up to a fiscal year maximum of $500,000 (the "Net Benefit Compensation"), upon completion of the QAF V period (in or about June 2019). Thus, as a result of Hooper's continued post-petition services and the estimated monetary net benefit to be received by Verity under the QAF V program in 2019, Hooper and Verity agree that Hooper is entitled to the Net Benefit Compensation payment at the time the QAF V payment(s) is(are) received by Verity.[1]

B.  The Proposed Sale

On January 1, 2019, the Debtors filed the Motion, seeking orders approving bidding procedures and the sale (the "Sale") of substantially all of the assets of St. Francis Medical Center, St. Vincent Medical Center, St. Vincent Dialysis Center and Seton Medical Center to Strategic Global Management, Inc. (the "Buyer"), pursuant to an Asset Purchase Agreement (the "APA") dated January 8, 2019 (the "Signing Date").  The APA provides that the Sale will close within 10 business days of

---

[1] QAF VI services are not yet contracted for by and between Hooper and Verity.

satisfaction or waiver of certain conditions precedent, including obtaining approval for the Sale from

the California Attorney General's office (the "Closing Date," see APA, § 1.3).

## II.

## OPPOSITION

The Motion and the Debtors' proposed sale procedures leave questions unanswered and raise

certain issues with respect to the treatment of the Hooper Contract and the payment of the Net Benefit

Compensation that will become due and owing to Hooper upon receipt of the Debtors' QAF V program

payment.

A.  Treatment of the Net Benefit Compensation Payment

The APA does not specifically describe the Net Benefit Compensation due to Hooper under the

QAF V program or identify it as a "fee" to be paid, either by the Debtors or by the Buyer.  Specifically,

the APA states that the Debtors shall be entitled to keep all QAF IV and QAF V payments received

prior to the Closing Date (APA § 1.1(d)) and shall timely pay any "fees" that are or become due and

payable under QAF VI and V prior to the Closing Date (APA §§ 1.1(d) and 4.6(i)).  This obligation to

pay the "fees" owing under QAF is subject to the Debtors' authorization to use cash collateral pursuant

to its budget beginning February 21, 2019 (APA § 4.6(i)).[2] If, on the Closing Date, it is calculated that

the Debtors received more QAF IV and V payments than fees due and payable under such programs,

the Buyer will receive a credit for the excess amount the Debtors received at Closing.  If the Debtors

paid more fees under QAF IV and QAF V than payments received, the Buyer will add the difference to

the cash price and reimburse the Debtors. (APA § 1.1(d)).

If, on the other hand, the QAF V program payment is received after the Closing Date, the funds

go to the Buyer (APA § 1.7(z)), and the Buyer is obligated to pay, as an assumed obligation,  "any

liabilities or obligations associated with Sellers' Medicare and Medi-Cal provider agreements, but only

to the extent assumed by [Buyer], and any Medi-Cal liabilities or obligations needed to support ongoing

Hospital Quality Assurance Fee Program payments" (APA § 1.9(j)).

---

[2] Hooper has not seen a copy of the 2/21/19 budget and has request that the Debtors provide a copy for review.

Under any circumstances, the Debtor is receiving the benefit of the QAF IV and V funds (either through the actual funds being received by the Debtor, or alternatively, a higher purchase price to be paid by the Buyer if Buyer receives the funds), and, in particular, due to the continued consulting services provided by Hooper to assure the funding.

The question is, what are the Debtors considering a "fee" owing under the QAF V program, and, more specifically, is it the Debtors' position that such fees include the Net Benefit Compensation owing to Hooper under its contract?  Similarly, it is not clear from the APA if the Debtors and/or the Buyer consider Hooper's 3% Net Benefit Compensation and/or ongoing fees for services under the Hooper Contract to be a "liabilit[y] or obligation[] needed to support ongoing [QAF] program payments" and, thus, an assumed obligation of the Buyer under § 1.9(j) of the APA.

Hooper contends that its fees are necessary and payable fees under the Debtors' QAF V program upon receipt of the QAF V payment, either as a fee due by the Debtors or as an assumed obligation of the Buyer (if after the Closing Date).  Hooper requires assurance that the Debtors are bound to pay Hooper its Net Benefit Compensation if the QAF V payment is received before the Closing Date.  Alternatively, if the QAF V program payment is received after the Closing Date, Hooper requires assurance that the Buyer acknowledges Hooper's Net Benefit Compensation as an assumed obligation, or that the Buyer intends to assume Hooper's contract in its entirety (including the Net Benefit Compensation obligation).  Absent the assurance that the Debtors and Buyer are accounting for Hooper's Net Benefit Compensation as a QAF V fee to be treated as part of the Sale, the Debtors will receive a huge benefit – millions of dollars in QAF V payments – as a direct result of the ongoing and substantial services provided by Hooper post-petition (at the Debtors' request and in reliance on the Debtors' representations regarding payment) without honoring their administrative expense obligations to Hooper under the Hooper Contract.

B.  The Assumption or Rejection of the Hooper Contract

In addition to the unclear treatment in the Motion of Hooper's Net Benefit Compensation due under the QAF V program, the Motion and the APA lack specificity regarding the timing of the notice of any assumption or rejection of executory contracts and leases and the ability to object.

The APA states that the Buyer shall have until seven (7) days prior to the auction to identify the contracts and leases it intends to assume (APA § 1.11(a)). The Motion states that the Debtors propose to conduct the auction on April 8-9, 2019, making the deadline for the Buyer to identify the contracts and leases it intends to assume as April 1-2. With a proposed Sale hearing date of April 17, 2019, and corresponding opposition date under the Local Rules of April 3, parties potentially will be left with only 1 or 2 days' notice to timely file an opposition to the Sale and the assumption and assignment (or rejection) of contracts. This timing is prejudicial to interested parties, including to Hooper.

The Motion references an Exhibit 4 to the proposed order on the bid procedures that will set forth the date of the cure notice and assumption objection deadline, but the Debtors have not filed a copy of the bid procedures order or its Exhibit 4. Further, the Motion does not explain how the Debtors' proposed cure notice and assumption objection timing – even if well-before April 1 – would play out on a practical basis, given the Buyer's April 1 deadline to identify those contracts it intends to assume. Thus, the Motion currently appears to provide an inadequate notice and objection period with respect to assumption or rejection of executory contracts and leases in connection with the Sale.

**III.**

**CONCLUSION**

Verity has acknowledged the extremely beneficial services performed by Hooper and expressly requested that Hooper continue to provide its services under the Hooper Contract post-petition. Verity also has committed, in writing, to make all post-petition payments due to Hooper under the Hooper Contract, upon which commitment Hooper has relied in continuing to provide its valuable post-petition services. Despite these facts, however, Verity has refused to assure Hooper that the Hooper Contract would be assumed and assigned to the Buyer under the APA or that the Net Benefit Compensation for the QAF V program is an obligation to be paid by Verity prior to the closing of the Sale or assumed and paid by the Buyer post-closing.

For the foregoing reasons, Hooper opposes the Motion, absent further clarification and commitment by the Debtors (and the Buyer) with respect to Hooper's Net Benefit Compensation and the assumption or rejection of executory contracts under the APA. In addition, Hooper reserves all

rights, claims and objections it may have with respect to (a) the proposed Sale, (b) its executory

contracts with the Debtors and (c) the prepetition and post-petition administrative claim held against the

Debtors' estates.

Dated: January 28, 2019                    MARGULIES FAITH LLP

                                           By:    */s/ Craig G. Margulies*
                                                  Craig G. Margulies
                                           Counsel for Hooper Healthcare Consulting LLC

### DECLARATION OF BRYAN HOOPER

I, Bryan Hooper, declare as follows:

1.    I am an individual and the Managing Member of Hooper Healthcare Consulting LLC ("Hooper"), a creditor in the jointly-administered chapter 11 cases of Verity Health System of California, Inc. ("Verity") and related debtors.  Each of the facts contained in this declaration is based upon my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.    I make this declaration in support of the Opposition to the *Motion for the Entry of (I) an Order (1) Approving Form of Asset Purchase Agreement for Stalking Horse Bidder and for Prospective Overbidders; (2) Approving Auction Sale Format, Bidding Procedures and Stalking Horse Bid Protections; (3) Approving Form of Notice To Be Provided To Interested Parties; (4) Scheduling a Court Hearing To Consider Approval of the Sale To the Highest Bidder; and (5) Approving Procedures Related To the Assumption of Certain Executory Contracts and Unexpired Leases; and (II) an Order (A) Authorizing the Sale of Property Free and Clear of all Claims, Liens and Encumbrances* (the "Motion"). Capitalized terms used in this Declaration, but not defined, shall have the same meanings stated in the Opposition.

The Executory Contract Between Verity and Hooper

3.    California established a Medi-Cal Hospital Quality Assurance Fee ("QAF") Program in 2008 wherein private acute care hospitals are assessed fees that collectively are used to draw down matching federal Medicaid funds.  After a 24% rake-off of the net benefit by the State of California (the "State"), the balance is paid out to hospitals as supplemental Medi-Cal funds.  For the most recently completed 2017-18 State fiscal year, total net funding to hospitals will equal $4.5 billion dollars. Verity is slated to collect $102.3 million of that total.

4.    Verity originally engaged Hooper in 2010 with the dual tasks of (1) monitoring the development and implementation of each year's QAF program to ensure accurate and complete implementation of fees collected and payments made for Verity and (2) identifying and implementing strategies to secure enhanced net funding for Verity.  The engagement has been extended to cover the QAF V program through June 30, 2019 pursuant to that certain Consulting Agreement dated December

1, 2015 (as amended on July 26, 2018, the "Hooper Contract").  Attached hereto as **Exhibit A** is a true and correct copy of the Hooper Contract, as amended.

5.    During the current QAF V program extension, the implementation of action plans proposed by Hooper and approved by Verity resulted in a net Verity funding gain (solely due to the Hooper consulting services) of $16.4 million for the two and a half year program extension.

6.    The scope of the Hooper Contract was expanded through amendment to include specific support for the implementation of the Directed Payment process under QAF V.

7.    At the fundamental level, the specific services provided by Hooper include a detailed and thorough review of the data upon which fee assessment will be made to determine accuracy with respect to the imposition of fees based upon that data.  The data reviewed is derived, in large part, from hospital submitted financial reports that previously have not been reviewed.  Hooper also evaluates a number of other factors that determine how hospital fees are assessed related to the categorization of each Verity hospital based upon location and type of services offered.

8.    The Hooper Contract also specifies the tasks Hooper will undertake to assess the accuracy of the date upon which the State calculates the ten different supplemental payment streams of funding encompassed in the QAF fee modeling.  The QAF program relies on numerous distinct data sources, each of which are critical to ensuring an accurate and equitable distribution of funds for Verity hospitals.

9.    Hooper's engagement also involves the periodic review of systems and reports to identify adjustments that could be implemented to enhance net funding levels for Verity.  Among the most recent successful efforts by Hooper have been the correction of State data to include a more accurate identification of newborn patient days payable under the program and an improved methodology to pay for mental health services for Medi-Cal beneficiaries enrolled in Medi-Cal health plans.  This effort on the part of Hooper resulted in an additional $16.4 million in payments for Verity hospitals over the current 2.5 year QAF V program, which expires in June 2019.

10.    Further, a recent amendment to the Hooper Contract expanded Hooper's services to include leading the Verity hospitals' reconciliation and validation of the patient days reported by the

State vis-à-vis the health plans for making a new category of payments, called "Directed Payments", for beneficiaries enrolled in health plans. Statewide, the Directed Payments are valued at $2 billion annually. Initial models suggest that the Verity hospitals should expect $85 million in funding annually, however the payments are subject to the data verification process, which is currently coordinated and led by Hooper on a monthly basis.

11.    Initial data from the State with respect to the Directed Payments has shown significant deficiencies, which are actively being addressed by Hooper, in coordination with Verity. This is a very fast-moving process that requires immediate attention to avoid losing significant QAF revenue. While still in the midst of the review and correction process, it is estimated that failure to employ a comprehensive review process could have resulted in underpayments of approximately $10-15 million per year to Verity hospitals.

12.    Hooper is uniquely positioned to provide QAF support for State hospitals like Verity due to its extensive experience in the design and implementation of the QAF program. As advisors to the major organization representing the interests of private safety net hospitals that participate in the QAF, Hooper participates in all statewide workgroups overseeing the administration of the program, thereby enabling Hooper to not only provide invaluable analysis, modeling and forecasting but also precise support for individual hospital participation.

13.    Given the amount of funding at stake, and based on my extensive experience in the industry, I believe that the unique services and expertise provided by Hooper are and have been critical for Verity.

14.    Pursuant to the Hooper Contract, Hooper is compensated for its ongoing services by (i) a monthly consulting fee of $9,400 per month, plus (ii) compensation equal to 3% of Verity's net benefit from the QAF V program, up to a maximum fiscal year benefit of $500,000 (the "Net Benefit Compensation"), upon completion of the QAF V period (in or about June 2019), for ongoing services provided by Hooper.

15.    As of August 31, 2018 (the "Petition Date"), Hooper was owed $9,400 for its monthly compensation under the Hooper Contract.

16.     Additionally, as a result of Hooper's continued post-petition services and the estimated monetary net benefit to be received by Verity under the QAF V program, Hooper and Verity agree that Hooper is entitled to the Net Benefit Compensation payment(s) at the time the QAF V payment(s) is (are) received by Verity.

17.     QAF VI services are not yet contracted for by and between Hooper and Verity.

18.     Post-petition, I have been in communication with Anita Chou, the CFO of Verity, who has acknowledged the extremely beneficial services performed by Hooper and expressly has requested that Hooper continue to provide its services under the Hooper Contract post-petition. Ms. Chou, on behalf of Verity, also committed, in writing, to make all post-petition payments due to Hooper under the Hooper Contract.

19.     Despite Hooper's request, however, Verity has refused to assure Hooper that the Hooper Contract would be assumed and assigned to the Buyer under the APA or that the Net Benefit Compensation for the QAF V program is an obligation to be paid by Verity prior to the closing of the Sale or assumed and paid by the Buyer post-closing.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of January, 2019, at Yorba Linda, California.

_____
Bryan Hooper

# EXHIBIT A

## AMENDMENT NO. 1 TO
## CONSULTING AGREEMENT

This Amendment No. 1 (this "**Amendment**") to the Consulting Agreement dated December 1, 2015 between Verity Health System of California, Inc. and Hooper Healthcare Consulting LLC (the "**Agreement**") is made and entered into effective as of July 26, 2018 (the "**Amendment Effective Date**") by and between Verity Health System of California, Inc., a California nonprofit public benefit corporation ("**Verity**"), and Hooper Healthcare Consulting LLC, a limited liability company ("**Consultant**").

WHEREAS, the Consultant and Verity entered into the Agreement for certain services related to QAF V Program to be provided to Verity by Consultant, and into a Business Associate Subcontractor Agreement ("BAA") dated December 1, 2015; and

WHEREAS, the Agreement provided for a one-year term which could be renewed upon mutual agreement of Consultant and Verity.

WHEREAS, Consultant and Verity have continued to act in reliance on, and in accordance with their respective duties and obligations under, the Agreement and the BAA after the initial term; and

WHEREAS, the California Department of Health Care Services (the "Department") made the QAF V Model applicable to each of the Verity Hospitals (defined below) available;

WHEREAS, Verity and Consultant desire to amend, modify and extend the terms of the Agreement for the Consultant to provide an additional scope of consulting services related to QAF V as directed by Verity upon the terms and conditions as set forth in this Amendment. QAF V dates are January 1, 2017 to June 30, 2019 (Year 1: January 1, 2017 – June 30, 2017; Year 2: July 1, 2017 – June 30, 2018; Year 3: July 1, 2018 – June 30, 2019).

NOW, THEREFORE, Verity and Consultant hereby agree as follows:

1.    Extension of Expiration Date of Term. Section 6 of the Agreement is hereby amended to extend the term of the Agreement through July 25, 2020.

2.    Consultant's Services. Section 1 of the Agreement is hereby amended to include the Additional QAF V Services set forth in Exhibit A-1 attached hereto

3.    Compensation. Section 2 of the Agreement is hereby amended to include the following:

As of the Amendment Effective Date, Consultant compensation for the Additional QAF V Services is Nine Thousand Four Hundred Dollars ($9,400) per month.

4.    Daughters of Charity Health System Name. All references to Daughters of Charity Health System are hereby replaced with references to Verity Health System of California, Inc.

5.    Corporate Form of Verity. All references to Verity as a California nonprofit religious corporation are hereby replaced with references to California nonprofit public benefit corporation.

6.    Defined Terms. Capitalized terms used in this Amendment but not defined herein shall have the meanings set forth in the Agreement. All references in the Agreement to the Agreement shall mean the Agreement, as amended by this Amendment.

{00009245; 1 }December 2015 Version
24909488_2

**EXHIBIT A**          **Page 12**

7.   Headings.  The headings in this Amendment have been included solely for reference and are to have no force or effect in interpreting its provisions.

8.   Original Signature.  This Amendment and any facsimile signatures thereon shall be construed as an original document, and shall constitute the required signature to bind the parties herein.

9.   Counterparts.  This Amendment may be executed in counterparts, any of which need not contain the signature of more than one party, but all of which taken together shall be one and the same agreement.

10.  Miscellaneous.  Except to the extent specifically amended hereby, the provisions of the Agreement shall remain unmodified and the Agreement as amended hereby is confirmed as being in full force and effect.

**EXHIBIT A**                              **Page 13**

IN WITNESS WHEREOF, Verity and Consultant have caused this Amendment to be executed by their respective duly authorized representatives effective as of the Amendment Effective Date.

**Verity:**
**VERITY HEALTH SYSTEM OF CALIFORNIA, INC.**

By: _____    Date: _8/6/18_

Its:    SVP  Hospital  Finance

**Consultant:**
**HOOPER HEALTHCARE CONSULTING LLC**

By: _____    Date: _8/14/18_

Its:    [Title of person authorized to sign on behalf of Consultant]

{00009245; 1 }24909488_2

**EXHIBIT A**                    **Page 14**

**EXHIBIT A-1**

**SERVICES**

Consultant shall provide the following Services related to QAF V for each Verity Hospital relevant to participation in the HQAF program ("Additional QAF V Services"):

**Medi-Cal HQAF Directed Payment Implementation and Support:**

1) Establish a valid and reliable hospital dataset that matches the parameters set forth by the Directed Payment (DP) process for State Fiscal Year 17-18 and 18-19.
2) Provide readiness assessment of hospital DP dataset and identify any opportunities for improvement or areas of concern including providing recommendations and assisting in process to correct areas of concern/opportunities for improvement within the timeframes set forth by Department of Health Care Services ("DHCS").
3) Work with client to assess what a 'network' constitutes and potential loses/gains of revenue related to network status
    a. Provide an assessment of 'network' volume and identify areas for additional attention, including identifying potential strategic partnerships where possible
4) Identify how outstanding accounts receivable from health plan denials, partial pays and/or slow payments impacts DP funding
5) Provide comparative analysis of DP data provided by state via the health plans.
6) Use comparative analysis in item #5 to provide ongoing support of hospital's efforts to reconcile any discrepancies between the hospital DP dataset and the data provided by the health plans during each of the successive data releases
    a. This will include identification of all missing encounters, partial encounters, or encounters excluded based on network status
7) Provide financial modeling and analysis based on data provided by California DHCS, including updated projected payments by hospital based on statewide utilization
8) Provide strategic guidance for future directed payment years
9) Timeline of Deliverables – in accordance with attached DHCS Implementation Timeline
    Phase 1: no later than September 15, 2018
    Phase 2: March 15, 2019

{00009245; 1 }24909488_2

**EXHIBIT A**                                          **Page 15**

DHCS

# Implementation Timeline

| | ACTIVITY | Q4 CY2018 | Q1 CY2019 | Q2 CY2019 | Q3 CY2019 | Q4 CY2019 | Q1 CY2020 |
|---|---|---|---|---|---|---|---|
| Phase 1 | Deadline for Encounter Data Submission to Health Plans | Exact Due Dates are Plan Specific | | | | | |
| | Deadline for Encounter Data Submission to DHCS | December 31, 2018 | | | | | |
| | Final Contract Data Submission | | February 2019 | | | | |
| | Final Encounter Data Pull for Payment Calculation | | March 2019 | | | | |
| | Development of Rate Adjustments | | | Q2 CY2019 | | | |
| | Finalization of Rate Adjustments | | | | July 1, 2019 | | |
| | Notice of Final Payment Amounts | | | | August 2019 | | |
| | Projected Payment to Plans | | | | September 2019 | | |
| Phase 2 | Deadline for Encounter Data Submission to Health Plans | | | Exact Due Dates are Plan Specific | | | |
| | Deadline for Encounter Data Submission to DHCS | | | June 30, 2019 | | | |
| | Final Contract Data Submission | | | | August 2019 | | |
| | Final Encounter Data Pull for Payment Calculation | | | | September 2019 | | |
| | Development of Rate Adjustments | | | | | Q4 CY2019 | |
| | Finalization of Rate Adjustments | | | | | | January 1, 2020 |
| | Notice of Final Payment Amounts | | | | | | February 2020 |
| | Projected Payments to Plans | | | | | | March 2020 |

{00009245; 1 }24909488_2

## CONSULTING AGREEMENT

This Consulting Agreement (the "Agreement") is entered into this December ___ /___, 2015 (the "Effective Date") by and between Hooper Healthcare Consulting LLC, a limited liability company ("Consultant") and Daughters of Charity Health System ("DCHS").

## RECITALS

WHEREAS, through SB239 the State of California has established and implemented a Provider Fee Program, also commonly referred to as a Quality Assurance Fee ("QAF") Program ("Program") whereby each hospital is assessed a monetary contribution fee ("Fee") which is then contributed to a statewide fund, matched by federal funds, and redistributed back to managed care payors participating in the Medi-Cal managed care program ("Managed Care Payor") or directly to participating hospitals ( "Payment"); and

WHEREAS, the California Hospital Association ("CHA") has led the Program development and implementation;

WHEREAS, the Program is a dynamic program which is continuously evolving;

WHEREAS, DCHS is comprised of St. Francis Medical Center, Seton Medical Center, St. Vincent Medical Center, O'Connor Hospital and St. Louise Medical Center (each a "DCHS Hospital", and collectively "DCHS Hospitals"). Each DCHS Hospital is a participant in the Program and seeks specialized assistance in managing its participation in the Program;

WHEREAS, Consultant has agreed to provide support and consulting services as directed by DCHS.

NOW, THEREFORE, the parties hereby agree as follows:

**1. Consultant's Services.** Consultant shall be available and shall provide to DCHS professional consulting services in the management of each DCHS Hospital's participation in the Program as set forth in Attachment A and in this Section 1 ("Services"). Such Services shall include but not be limited to the following relevant to each DCHS Hospital's participation in the Program:

- Provide DCHS with regular updates as to the status of the Program, including extensions and any changes in the mechanics of the Program.

- Assess the impact to DCHS Hospitals of different financing and distribution models that may evolve during the extension process.

- Develop alternative models or modifications to existing models and submit them to CHA, the California Department of Health Care Services (the "Department"), and/or the associated workgroups for consideration.

- Review all data used in calculating each DCHS Hospital's Fees and Payments related to the Program.

1

**EXHIBIT A**                                   **Page 17**

– Review DCHS applicable Office of Statewide Health Planning and Development ("OSHPD") Annual Financial Disclosure Report ("AFDR") data and other relevant data sources (i.e., Medi-Cal paid claims data), (collectively "Program Data") which is likely to be used in calculating each DCHS Hospital's Fees and Payments under the Program.

– Where possible, work proactively to identify Program Data revisions, and ensure changes approved by DCHS in writing are accepted by the Department and integrated as final Program Data into the Department's final Program Fee and Payment calculations for each DCHS Hospital.

– Provide DCHS with Program Fee and Payment schedules for each DCHS Hospital, including an estimate of timing and amounts of Payments to be paid and received throughout the Program.

2. Compensation.

a. **Compensation.** DCHS agrees to pay Consultant Compensation in the amount of three percent (3%) of DCHS's Net Benefit (as defined in Attachment A) from the Program as a result of Consultant's Services defined in the Action Plan for each Program Funding Cycle covered by this Agreement (as set forth in Attachment A). Notwithstanding the foregoing, each of Consultant and DCHS acknowledge that in no event will Compensation payable by DCHS under this Agreement exceed **Five Hundred Thousand ($500,000) Dollars** in any Program Funding Cycle, or **One Million Two Hundred-Fifty Thousand ($1,250,000)** in the aggregate for all Services provided during the Term of the Agreement. The consideration set forth in this Section 2.a. shall be the sole consideration due Consultant for the Services.

b. **Payment.** It is the understanding of the Parties that Consultant's Compensation attributable to a particular Program Funding Cycle will be paid by DCHS only after DCHS has received the applicable Program Funding Cycle Payment from a Managed Care Payor or directly from the Department. In no event will DCHS be obligated to pay Compensation related to a particular quarterly Program Funding Cycle until (i) DCHS has received the applicable Program Funding Cycle Payment from a payor, and (ii) Consultant has provided a Net Benefit related to such Program Funding Cycle.

c. **Divestment of Hospitals.** In the event that one or more of the DCHS Hospitals are sold, transferred or otherwise divested from DCHS to a new owner (each a "Divested Hospital", and collectively "Divested Hospitals"), the portion of Compensation attributable to such DCHS Hospital or DCHS Hospitals, shall become the exclusive responsibility of the new owner pursuant to a partial assignment of the contract to that party. Upon such partial assignment of the Agreement to a new owner of a Divested Hospital, Consultant agrees that it shall no longer look to DCHS for the portion of Compensation attributable to such Divested Hospital or Divested Hospitals or payment of any fees attributable to a Divested Hospital or the Divested Hospitals no longer owned or operated by DCHS.

3. **Independent Contractor.** Nothing herein shall be construed to create an employer-employee

**EXHIBIT A**                                                      **Page 18**

relationship between DCHS and Consultant. Consultant is an independent contractor and no other relationship between the parties is intended, including any partnership, agency, employer/employee or other special relationship. Consultant will not take any action that expresses or implies any relationship other than that of independent contractor, and will not take any action that is binding upon DCHS. Consultant shall neither be, or deemed to be, an employee of DCHS nor have a claim against DCHS under this Agreement or otherwise for Social Security benefits, Worker's Compensation benefits, vacation pay, sick leave, retirement benefits, disability or unemployment benefits or employee benefits of any kind, including any health care benefits that will satisfy the Consultant's obligations to enroll in minimum essential coverage for purposes of satisfying its obligations under the Affordable Care Act to enroll in such coverage or pay a penalty. DCHS shall not withhold on behalf of Consultant any sums for income tax, unemployment insurance, Social Security or any other purpose, and such withholding shall be the sole responsibility of the Consultant. Unless otherwise expressly provided in this Agreement, each party is responsible for its own costs and expenses in performing under this Agreement. The consideration set forth in Section 2 shall be the sole consideration due Consultant for the services rendered hereunder. It is understood that DCHS will not withhold any amounts for payment of taxes from the compensation of Consultant hereunder. Consultant will not represent or hold out itself, or any of its principals or employees as an employee of DCHS.

**4. Confidentiality.** Consultant agrees to hold all information concerning DCHS confidential in trust and agrees that such confidential information shall be used exclusively for the provision of services under this Agreement. Information shall not be deemed confidential if such information: (a) is or has become generally known or available to the general public other than by any act or omission of either party; (b) was rightfully known by the other prior to the time of first disclosure; (c) is independently developed without the use of confidential information; or (d) is rightfully obtained without restriction from a third party who has the right to make such disclosure and without breach of any duty of confidentiality to DCHS.

**5. HIPAA.** If, by performing its obligations under this Agreement, Consultant is a business associate of DCHS, as that term is defined by the Health Insurance Portability and Accountability Act of 1996, 45 C.F.R. Parts 160 through 164 and its implementing regulations, Consultant agrees to enter into a Business Associate Agreement with DCHS.

**6. Term and Termination.** This Agreement shall commence on November _____, 2015, and the initial period shall continue through July 31, 2019. This Agreement shall automatically renew for one-year periods unless notified by either party no less than 90 days prior to expiration. In the event that the Program is eliminated or not renewed, either party may terminate this Agreement upon thirty (30) days prior written notice. Such termination shall not eliminate or otherwise limit the Compensation due to Consultant under Section 2.a. above for implemented Program Funding Cycles. In the event the parties continue to abide by the terms of the Agreement after the expiration of the Initial Term or any renewal term without having agreed in writing to renew this Agreement, the term of this Agreement shall continue on a month to month basis thereafter and may be terminated by either party on thirty (30) days' written notice to the other party.

    **a. Termination.** The Agreement can be terminated as follows:

        i.    **Termination Without Cause.** DCHS may terminate the Agreement in

<div align="center">3</div>

whole or in part at any time without cause upon **Thirty (30)** days' written notice. If such notice is given by DCHS, DCHS may at any time prior to the effective date of such termination, relieve Consultant or Consultant's duties hereunder as long as DCHS continues to perform its obligations under the Agreement until the effective date of such termination.

A. Notwithstanding the foregoing, if the parties fail to agree to QAF Baseline Templates as set forth in Appendix A Section 3.b., either party may terminate the Agreement upon ten (10) days' notice. In the event of a termination pursuant to this Section 6.i.A., DCHS will in no event owe Consultant any fees or compensation for any QAF V Services.

ii.    **Termination based on Consultant Conduct.** Notwithstanding anything else contained in the Agreement, DCHS may terminate the Agreement immediately upon written notice to Consultant in the event any of the following occur, as determined by DCHS: (A) Conviction of Consultant of any criminal offense related to the provision of quality health care or Consultant or Consultant staff's is listed by a federal agency as being debarred, excluded, or otherwise ineligible for participation in a federal or state health insurance program. If possible, Consultant may cure such breach by immediately terminating the employment of any involved staff or terminating any Consultant-based professional and business relationships with such Consultant staff for services related to the Agreement and providing DCHS with documentation of such termination.

iii.    **Termination Related to Independent Consultant Status.** Either party may terminate the Agreement upon ten (10) days' prior written notice to the non-terminating party if the Internal Revenue Service ("IRS") issues a final determination concluding that Consultant, its employees or agents as to DCHS do not have independent contractor status. Consultant agrees to assume any increased costs to DCHS for meeting the obligations of Consultant, its employees or agents pursuant to the Agreement effective as of the date of issuance of the final determination from the IRS.

b.    **Modification or Termination upon Advice of Counsel.** If at any time either party reasonably believes in good faith, based upon the advice of reputable legal counsel, that the Agreement or the performance by that party of any of its obligations under the Agreement violates any material law or regulation, State or Federal, presents a substantial risk of the loss or restriction of that party's license, tax exemption, or right to participate in Medicare, Medicaid (Medi-Cal), Tricare, or any other governmental program, or presents a substantial risk of causing debt issued by that party that was tax-exempt when originally issued to become subject to federal or state income tax, each as applicable, then that party may, upon written notice, require the other party to enter into good faith negotiations to renegotiate the terms of the Agreement, in a manner that

4

attempts to retain as much as possible of the economic arrangements originally contemplated by the parties without violating any applicable legal, tax, or reimbursement requirements. If the parties are unable to reach an agreement concerning the modification of the Agreement within thirty (30) days after the date of the notice seeking renegotiations (or sooner if required by law), then either party may immediately terminate the Agreement in whole or in part by written notice to the other party. The rights of the parties under this paragraph are in addition to any other termination rights the parties may have under the Agreement.

**7. No Representations and Warranties.** IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT DCHS IS MAKING NO REPRESENTATION OR WARRANTY WITH RESPECT TO THE MATTERS COVERED BY THE AGREEMENT. Consultant expressly acknowledges that it is not relying upon any representation, warranty, statement or other assertion made by DCHS or any of its representatives, agents or employees with respect to the matters covered by the Agreement and enters into the Agreement under the express understanding that there are no express or implied warranties made by DCHS with respect to same. Consultant declares that it is experienced in the business contemplated by the Agreement and therefore represents and acknowledges that it has relied solely on its own investigation and examination of the matters covered by the Agreement, which it is qualified to make, and not on any information provided or to be provided by DCHS.

**8. Corporate Responsibility Program.** Consultant expressly agrees and shall cause each of its employees, contractors and agents providing services to Corporation to expressly agree that DCHS's Corporate Responsibility Program, as adopted and amended from time to time (the "Compliance Program"), shall be incorporated herein and made a part of the Agreement. Consultant shall and shall cause each of its employees, contractors and agents providing services to DCHS to comply with Compliance Program at Consultant's sole cost and expense. Without limiting the foregoing commitment to comply with DCHS's Compliance Program, Consultant agrees that:

    a. Consultant shall and shall cause each of its employees, contractors and agents providing services to DCHS to comply with all applicable federal and state laws and regulations;

    b. Consultant shall and shall cause each of its employees, contractors and agents providing services to DCHS to cooperate with DCHS corporate compliance audits, reviews and investigations which relate to Consultant and/or any of the Services provided under the Agreement (including, without limitation, providing any and all Consultant documents and/or information with respect to Consultant activities under the Agreement);

    c. If requested by DCHS, Consultant shall and shall cause each of its employees, contractors and agents providing services to DCHS to participate in corporate compliance-related seminars and educational programs sponsored by DCHS; and

**EXHIBIT A**                                    **Page 21**

d. Consultant shall and shall cause each of its employees, contractors and agents providing services to DCHS to comply with and not do or cause to be done any act or omission which in any way conflicts with or violates the standards of conduct (the "Standards of Conduct") which are part of DCHS's Compliance Program.

e. Consultant hereby acknowledges that (a) he/she has received a description of the Compliance Program titled "Essential Characteristics of the Daughters of Charity Health System Corporate Responsibility Program," and the Standards of Conduct, both attached hereto as Exhibit A, and (b) Consultant and each of its employees, contractors and agents providing services to DCHS have been given ample opportunity to read and review these copies.

9. **Standards.** In addition to any other performance standards set forth herein or in the Agreement, Consultant will ensure that its performance under the Agreement will be provided in accordance with: (i) all applicable federal, State, county and city laws, ordinances, codes, regulations, and rules; and (ii) the policies and procedures of DCHS, all as may be amended from time to time.

10. **Access to Books, Documents and Records.** Until the expiration of four years after the furnishing of services under the Agreement, Consultant agrees to make available to the Secretary of Health and Human Services, the U.S. Comptroller General, and their representatives the Agreement and all books, documents, and records necessary to certify the nature and extent of the costs of those services. If Consultant carries out the duties of the contract through a subcontract worth $10,000 or more over a twelve-month period with a related organization, the subcontract will also contain an access clause to permit access by the Secretary, Comptroller General, and their representatives to the related organization's books and records.

11. **Notice.** Any notice or communication permitted or required by this Agreement shall be deemed effective when personally delivered or deposited, postage prepaid, in the first class mail of the United States properly addressed to the appropriate party at the address set forth below:

Notices to Consultant:

      Hooper Healthcare Consulting LLC
      Attn: Bryan Hooper
      P.O. Box 8997
      Brea, CA 92822

Notices to DCHS:

      Daughters of Charity Health System
      203 Redwood Shores Parkway, #800
      Redwood Shores, California 94065
      Attn: CFO

**EXHIBIT A**                                              **Page 22**

12. **Miscellaneous.**

    **a. Entire Agreement and Amendments.** This Agreement constitutes the entire agreement of the parties with regard to the subject matter hereof, and replaces and supersedes all other agreements or understandings, whether written or oral. No amendment or extension of the Agreement shall be binding unless in writing and signed by both parties.

    **b. Binding Effect, Assignment.** This Agreement shall be binding upon and shall inure to the benefit of Consultant and DCHS and to DCHS's successors and assigns. Nothing in this Agreement shall be construed to permit the assignment by Consultant of any of its rights or obligations hereunder, and such assignment is expressly prohibited without the prior written consent of DCHS.

    **c. Governing Law, Severability.** This Agreement shall be governed by the laws of the State of California. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision.

WHEREFORE, the parties have executed this Agreement as of the date first written above.

Daughters of Charity Health System

By: _Annie Melikian_

Date: _12 | 8 | 15_

Hooper Healthcare Consulting LLC

By: _Bryan Hooper_

Date: _12/8/15_

7

**EXHIBIT A**                                **Page 23**

ATTACHMENT A
Consulting Agreement Action Plan

Program Funding Cycle: January 1, 2017 – June 30, 2019* (QAF V)

1.  **OSHPD Data Analysis**

    a.  Consultant will: Complete a detailed analysis of each DCHS Hospital's FY13 and
        FY14 OSHPD AFDR. This analysis will specifically focus on the AFDR data that
        will be potentially used in the Fee and Payment distribution model for the QAF V
        program. Prepare corrections for each DCHS Hospital to submit to OSHPD and
        facilitate inclusion of all such corrections in the final QAF V data. Successful
        efforts must be submitted to and approved by the Department and OSHPD and
        will result in reduced Fees through the proper assignment of patient day statistics
        in the OSHPD report.

2.  **MUR Data Analysis**

    a.  Consultant will: Complete a detailed analysis of each DCHS Hospital's CY13 and
        CY14 discharge data used for the state's Medi-Cal Utilization Rate ("MUR")
        calculation. Identify days not included in tentative Department data files or days
        not properly categorized and prepare corrections for submission to the
        Department and/or OSHPD. Facilitate the inclusion of such corrections for each
        DCHS Hospital in the final MUR data and ensure it is integrated into the final
        QAF V program data used by the Department to calculate each Hospital's final
        QAF V Fees and final QAF V Payments. Successful efforts must be submitted to
        and approved by the Department and OSHPD and will result in increased
        payments through the proper identification of patient days in the final MUR data.

3.  **Calculation of Net Benefit Resulting for QAF V from Action Items 1a and 2a
    above**

    The determination of the Net Benefit resulting from Action Items 1a and 2a above for
    purposes of calculating Compensation under Paragraph 2a of the Agreement shall
    be as follows:

    a.  **Baseline Fees and Payments.** If the Department determines that QAF V Fee
        and QAF V Payment models will be calculated based upon data sources from FY
        & CY 2013 data on file with the Department and OSHPD as of 9/1/15, then the
        method for determining the QAF V Baseline Fees and QAF V Baseline Payments
        will be substantially similar to the model set forth in Attachment C-1 (QAF V
        Baseline Fees which have been generated using FY2013 OSHPD AFDR days as
        of 9/1/15) and Attachment C-2 (QAF V Baseline Payments which have been
        generated using FY2013 and CY 2013 data on file with the Department and
        OSHPD as of 9/1/15). For purposes of clarification, the parties intend that the
        QAF V Baseline Fee and QAF V Baseline Payment reflect the QAF V Fees and
        QAF V Payments that the Department would calculate in the absence of
        implementation of Consultant Services and/or work product set forth in Action
        Items 1a and 2a above. For purposes of calculating Net Benefit under this

8

**EXHIBIT A**                                **Page 24**

Section 3, "Aggregate" shall mean the sum of all DCHS Hospitals.

    i.  If the QAF V fee and payment model published by the Department incorporates data from 2014 rather than FY & CY 2013 as the data source for the QAF V Program, prior to Consultant providing QAF V related Services, the parties will agree in writing to a QAF V Baseline Payments model and a QAF V Baseline Fee model (collectively, the "QAF V Baseline Templates") based on 2014 data. If Consultant and DCHS cannot agree in writing to QAF V Baseline Templates, then either party may terminate the Agreement pursuant to Section 7.a.i.A, and DCHS will neither owe nor be liable to Consultant for any Compensation or any other fees related to Consultant's QAF V Services.

b.  **Impact Fees and Payments.** The QAF V Impact Fee is defined as the QAF V Fee actually imposed by the Department on a DCHS Hospital where the data used by the Department to calculate such QAF V Fee has been impacted in a manner attributable to Consultant's Services set forth in Action Items 1a and 2a above, and will be calculated using a model substantially similar to the "Impact" Template set forth in Attachment D-1 hereto. The QAF V Impact Payment is defined as a QAF V Payment payable by the Department to a DCHS Hospital which has been impacted in a manner attributable to Consultant's Services set forth in Action Items 1a and 2a above, and will be calculated using a model substantially similar to the "Impact" Template set forth in Attachment D-2 hereto. For purposes of clarification, the parties intend that the QAF V Impact Fee and QAF V Impact Payment (collectively, the QAF V Impact Models) reflect the QAF V Fee and QAF V Payment that the Department actually imposed on or distributed to a DCHS Hospital pursuant to the final QAF V Program model and reflect Consultant's Services and work product to effectuate Action Items 1a and 2a above.

c.  **Net Benefit Calculation**

    i.  **Increase in Payment/Reduction in Fee.** If Consultant's Services result in an increase in the amount of QAF V Impacts Payments over QAF V Baseline Payments **and** a reduction in the amount of QAF V Impact Fees over the QAF V Baseline Fees, then the calculation of the Net Benefit amount pursuant to Section 2 of the Agreement will be as follows:

Difference between Aggregate QAF V Impact Payments *less* Aggregate QAF V Baseline Payments
               PLUS
Difference of Aggregate QAF V Baseline Fees *less* Aggregate QAF V Impact Fees

    ii.  **Increase in Payment/Increase in Fee.** If Consultant's Services

9

**EXHIBIT A**                     **Page 25**

result in an increase in the aggregate amount of QAF V Impact Payments over aggregate QAF V Baseline Payments and an increase in the amount of QAF V Impact Fees over the QAF V Baseline Fees, then the calculation of the Net Benefit amount pursuant to Section 2 of the Agreement will be as follows:

Difference between Aggregate QAF V Impact Payments *less* Aggregate QAF V Baseline Payments

LESS

Difference between Aggregate QAF V Impact Fees *less* Aggregate QAF V Baseline Fees

iii. **Increase in Payment or Reduction in Fee.** If Consultant's Services result in an increase in the aggregate amount of QAF V Impact Payments over aggregate QAF V Baseline Payments or a reduction in the amount of QAF V Impact Fees from the QAF V Baseline Fees (but not both), then the calculation of the Net Benefit amount pursuant to Section 2 of the Agreement will be, as applicable, either:

1. Difference between Aggregate QAF V Impact Payments *less* Aggregate QAF V Baseline Payments

OR

2. Difference between Aggregate QAF V Baseline Fees *less* the Aggregate QAF V Impact Fees

iv. Notwithstanding the foregoing, each of Consultant and DCHS acknowledge that in no event will Compensation payable by DCHS under this Agreement exceed **Five Hundred Thousand ($500,000) Dollars** in any Program Funding Cycle, or **One Million Two Hundred-Fifty Thousand ($1,250,000)** in the aggregate for all Services provided during the Term of the Agreement.

\* QAF V period identified in SB239; subject to change

**EXHIBIT A**                    **Page 26**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO THE DEBTORS' MOTION FOR THE ENTRY OF (I) AN ORDER (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT…[DKT. NO. 1279], AND RESERVATION OF RIGHTS; DECLARATION OF BRYAN HOOPER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **January 28, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

NONE.

☐ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **January 28, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED VIA OVERNIGHT MAIL:**
**JUDGE**: Honorable Ernest M. Robles, U.S. Bankruptcy Court, 255 E. Temple Street, Suite 1560, Los Angeles, CA 90012
**DEBTOR**: Verity Health System of California, Inc., 2040 E. Mariposa Avenue, El Segundo, Ca 90245

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 28, 2019 | Victoria Castrellon | /s/ Victoria Castrellon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

# ADDITIONAL SERVICE INFORMATION

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

**Robert N Amkraut on behalf of Creditor Swinerton Builders**
ramkraut@foxrothschild.com

**Kyra E Andrassy on behalf of Creditor MGH Painting, Inc.**
kandrassy@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

**Kyra E Andrassy on behalf of Interested Party Courtesy NEF**
kandrassy@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

**Simon Aron on behalf of Interested Party RCB Equities #1, LLC**
saron@wrslawyers.com

**Lauren T Attard on behalf of Creditor SpecialtyCare Cardiovascular Resources, LLC**
lattard@bakerlaw.com, abalian@bakerlaw.com

**Keith Patrick Banner on behalf of Creditor Abbott Laboratories Inc.**
kbanner@greenbergglusker.com, sharper@greenbergglusker.com;calendar@greenbergglusker.com

**Keith Patrick Banner on behalf of Interested Party CO Architects**
kbanner@greenbergglusker.com, sharper@greenbergglusker.com;calendar@greenbergglusker.com

**Cristina E Bautista on behalf of Creditor Health Net of California, Inc.**
cristina.bautista@kattenlaw.com, ecf.lax.docket@kattenlaw.com

**James Cornell Behrens on behalf of Creditor Committee Official Committee of Unsecured Creditors of Verity Health System of California, Inc., et al.**
jbehrens@milbank.com, gbray@milbank.com; mshinderman@milbank.com;
hmaghakian@milbank.com;dodonnell@milbank.com;jbrewster@milbank.com;JWeber@milbank.com

**Ron Bender on behalf of Health Care Ombudsman J. Nathan Ruben**
rb@lnbyb.com

**Ron Bender on behalf of Health Care Ombudsman Jacob Nathan Rubin**
rb@lnbyb.com

**Bruce Bennett on behalf of Creditor Nantworks, LLC**
bbennett@jonesday.com

**Bruce Bennett on behalf of Creditor Verity MOB Financing II LLC**
bbennett@jonesday.com

**Bruce Bennett on behalf of Creditor Verity MOB Financing LLC**
bbennett@jonesday.com

**Peter J Benvenutti on behalf of Creditor County of San Mateo**
pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com

**Elizabeth Berke-Dreyfuss on behalf of Creditor Center for Dermatology, Cosmetic and Laser Surgery**
edreyfuss@wendel.com

**Steven M Berman on behalf of Creditor KForce, Inc.**
sberman@slk-law.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**Alicia K Berry on behalf of Attorney Alicia Berry**
Alicia.Berry@doj.ca.gov

**Alicia K Berry on behalf of Interested Party Attorney General For The State Of Ca**
Alicia.Berry@doj.ca.gov

**Stephen F Biegenzahn on behalf of Creditor Josefina Robles**
efile@sfblaw.com

**Stephen F Biegenzahn on behalf of Interested Party Courtesy NEF**
efile@sfblaw.com

**Karl E Block on behalf of Interested Party Courtesy NEF**
kblock@loeb.com, jvazquez@loeb.com;ladocket@loeb.com

**Dustin P Branch on behalf of Interested Party Wells Fargo Bank, National Association, as indenture trustee**
branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com;Pollack@ballardspahr.com

**Michael D Breslauer on behalf of Creditor Hunt Spine Institute, Inc.**
mbreslauer@swsslaw.com, wyones@swsslaw.com;mbreslauer@ecf.courtdrive.com;wyones@ecf.courtdrive.com

**Chane Buck on behalf of Interested Party Courtesy NEF**
cbuck@jonesday.com

**Damarr M Butler on behalf of Creditor Pension Benefit Guaranty Corporation**
butler.damarr@pbgc.gov, efile@pbgc.gov

**Lori A Butler on behalf of Creditor Pension Benefit Guaranty Corporation**
butler.lori@pbgc.gov, efile@pbgc.gov

**Howard Camhi on behalf of Creditor The Huntington National Bank**
hcamhi@ecjlaw.com, tcastelli@ecjlaw.com;amatsuoka@ecjlaw.com

**Shirley Cho on behalf of Attorney Pachulski Stang Ziehl & Jones LLP**
scho@pszjlaw.com

**Shirley Cho on behalf of Debtor Verity Health System of California, Inc.**
scho@pszjlaw.com

**Shawn M Christianson on behalf of Creditor Oracle America, Inc.**
cmcintire@buchalter.com, schristianson@buchalter.com

**Shawn M Christianson on behalf of Interested Party Courtesy NEF**
cmcintire@buchalter.com, schristianson@buchalter.com

**Kevin Collins on behalf of Creditor Roche Diagnostics Corporation**
kevin.collins@btlaw.com, Kathleen.lytle@btlaw.com

**David N Crapo on behalf of Creditor Sharp Electronics Corporation**
dcrapo@gibbonslaw.com, elrosen@gibbonslaw.com

**Mariam Danielyan on behalf of Creditor Aida Iniguez**
md@danielyanlawoffice.com, danielyan.mar@gmail.com

**Mariam Danielyan on behalf of Creditor Francisco Iniguez**
md@danielyanlawoffice.com, danielyan.mar@gmail.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                              **F 9013-3.1.PROOF.SERVICE**

**Brian L Davidoff on behalf of Creditor Abbott Laboratories Inc.**
bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com

**Brian L Davidoff on behalf of Interested Party CO Architects**
bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com

**Aaron Davis on behalf of Creditor US Foods, Inc.**
aaron.davis@bryancave.com, kat.flaherty@bryancave.com

**Kevin M Eckhardt on behalf of Creditor C. R. Bard, Inc.**
keckhardt@huntonak.com, keckhardt@hunton.com

**Kevin M Eckhardt on behalf of Creditor Smith & Nephew, Inc.**
keckhardt@huntonak.com, keckhardt@hunton.com

**Andy J Epstein on behalf of Interested Party Courtesy NEF**
taxcpaesq@gmail.com

**Christine R Etheridge on behalf of Creditor Fka GE Capital Wells Fargo Vendor Financial Services, LLC**
christine.etheridge@ikonfin.com

**M Douglas Flahaut on behalf of Creditor Medline Industries, Inc.**
flahaut.douglas@arentfox.com

**Michael G Fletcher on behalf of Interested Party Courtesy NEF**
mfletcher@frandzel.com, sking@frandzel.com

**Joseph D Frank on behalf of Creditor Experian Health fka Passport Health Communications Inc**
jfrank@fgllp.com, mmatlock@fgllp.com;csmith@fgllp.com;jkleinman@fgllp.com;csucic@fgllp.com

**Joseph D Frank on behalf of Creditor Experian Health, Inc**
jfrank@fgllp.com, mmatlock@fgllp.com;csmith@fgllp.com;jkleinman@fgllp.com;csucic@fgllp.com

**William B Freeman on behalf of Creditor Health Net of California, Inc.**
william.freeman@kattenlaw.com, nicole.jones@kattenlaw.com,ecf.lax.docket@kattenlaw.com

**Eric J Fromme on behalf of Creditor CHHP Holdings II, LLC**
efromme@tocounsel.com, lchapman@tocounsel.com;sschuster@tocounsel.com

**Eric J Fromme on behalf of Creditor CPH Hospital Management, LLC**
efromme@tocounsel.com, lchapman@tocounsel.com;sschuster@tocounsel.com

**Eric J Fromme on behalf of Creditor Eladh, L.P.**
efromme@tocounsel.com, lchapman@tocounsel.com;sschuster@tocounsel.com

**Eric J Fromme on behalf of Creditor Gardena Hospital L.P.**
efromme@tocounsel.com, lchapman@tocounsel.com;sschuster@tocounsel.com

**Jeffrey K Garfinkle on behalf of Creditor McKesson Corporation**
jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com

**Jeffrey K Garfinkle on behalf of Interested Party Courtesy NEF**
jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com

**Lawrence B Gill on behalf of Interested Party Courtesy NEF**
lgill@nelsonhardiman.com, rrange@nelsonhardiman.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

**Paul R. Glassman on behalf of Creditor Long Beach Memorial Medical Center**
pglassman@sycr.com

**Eric D Goldberg on behalf of Creditor Otsuka Pharmaceutical Development & Commercialization, Inc.**
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

**Mary H Haas on behalf of Creditor American National Red Cross**
maryhaas@dwt.com, melissastrobel@dwt.com;laxdocket@dwt.com;yunialubega@dwt.com

**James A Hayes, Jr on behalf of Creditor Royal West Development, Inc.**
jhayes@jamesahayesaplc.com

**Michael S Held on behalf of Creditor Medecision, Inc.**
mheld@jw.com

**Lawrence J Hilton on behalf of Creditor Cerner Corporation**
lhilton@onellp.com, lthomas@onellp.com;info@onellp.com;
evescance@onellp.com;nlichtenberger@onellp.com;rgolder@onellp.com

**Robert M Hirsh on behalf of Creditor Medline Industries, Inc.**
Robert.Hirsh@arentfox.com

**Florice Hoffman on behalf of Creditor National Union of Healthcare Workers**
fhoffman@socal.rr.com, floricehoffman@gmail.com

**Michael Hogue on behalf of Creditor Workday, Inc.**
hoguem@gtlaw.com, fernandezc@gtlaw.com;SFOLitDock@gtlaw.com

**Marsha A Houston on behalf of Creditor Healthcare Transformation Inc.**
mhouston@reedsmith.com

**Brian D Huben on behalf of Creditor Southeast Medical Center, LLC and Slauson Associates of Huntington Park, LLC**
hubenb@ballardspahr.com, carolod@ballardspahr.com

**John Mark Jennings on behalf of Creditor GE HFS, LLC**
johnmark.jennings@kutakrock.com

**Monique D Jewett-Brewster on behalf of Creditor Paragon Mechanical, Inc.**
mjb@hopkinscarley.com, jkeehnen@hopkinscarley.com

**Gregory R Jones on behalf of Interested Party County of Santa Clara**
gjones@mwe.com, rnhunter@mwe.com

**Lance N Jurich on behalf of Creditor ALLY BANK**
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

**Steven J Kahn on behalf of Plaintiff ST. FRANCIS MEDICAL CENTER, a California nonprofit public benefit corporation**
skahn@pszyjw.com

**Steven J Kahn on behalf of Plaintiff ST. VINCENT MEDICAL CENTER, a California nonprofit public benefit corporation**
skahn@pszyjw.com

**Ivan L Kallick on behalf of Interested Party Ivan Kallick**
ikallick@manatt.com, ihernandez@manatt.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

**Jane Kim on behalf of Creditor County of San Mateo**
jkim@kellerbenvenutti.com

**Monica Y Kim on behalf of Health Care Ombudsman Jacob Nathan Rubin**
myk@lnbrb.com, myk@ecf.inforuptcy.com

**Gary E Klausner on behalf of Interested Party Courtesy NEF**
gek@lnbyb.com

**Joseph A Kohanski on behalf of Creditor United Nurses Associations of CA/Union of Health Care Professionals**
jkohanski@bushgottlieb.com, kprestegard@bushgottlieb.com

**Jeffrey C Krause on behalf of Creditor Aetna Life Insurance Company**
jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com

**Chris D. Kuhner on behalf of Creditor OCH Forest 1, General Partner of O'Connor Health Center 1, a limited partnership**
c.kuhner@kornfieldlaw.com

**Darryl S Laddin on behalf of Creditor c/o Darryl S. Laddin Sysco Los Angeles, Inc.**
bkrfilings@agg.com

**Robert S Lampl on behalf of Creditor Surgical Information Systems, LLC**
advocate45@aol.com, rlisarobinsonr@aol.com

**Richard A Lapping on behalf of Creditor Retirement Plan for Hospital Employees**
richard@lappinglegal.com

**Paul J Laurin on behalf of Creditor Roche Diagnostics Corporation**
plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com

**David E Lemke on behalf of Creditor ALLY BANK**
david.lemke@wallerlaw.com, chris.cronk@wallerlaw.com;Melissa.jones@wallerlaw.com;cathy.thomas@wallerlaw.com

**Elan S Levey on behalf of Creditor Centers for Medicare and Medicaid Services**
elan.levey@usdoj.gov, louisa.lin@usdoj.gov

**Elan S Levey on behalf of Creditor Federal Communications Commission**
elan.levey@usdoj.gov, louisa.lin@usdoj.gov

**Elan S Levey on behalf of Creditor Pension Benefit Guaranty Corporation**
elan.levey@usdoj.gov, louisa.lin@usdoj.gov

**Elan S Levey on behalf of Creditor United States Department of Health and Human Services**
elan.levey@usdoj.gov, louisa.lin@usdoj.gov

**Elan S Levey on behalf of Creditor United States of America, on behalf of the Federal Communications Commission**
elan.levey@usdoj.gov, louisa.lin@usdoj.gov

**Tracy L Mainguy on behalf of Creditor Stationary Engineers Local 39**
bankruptcycourtnotices@unioncounsel.net, tmainguy@unioncounsel.net

**Tracy L Mainguy on behalf of Creditor Stationary Engineers Local 39 Health and Welfare Trust Fund**
bankruptcycourtnotices@unioncounsel.net, tmainguy@unioncounsel.net

**Tracy L Mainguy on behalf of Creditor Stationary Engineers Local 39 Pension Trust Fund**
bankruptcycourtnotices@unioncounsel.net, tmainguy@unioncounsel.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                        **F 9013-3.1.PROOF.SERVICE**

**Samuel R Maizel on behalf of Debtor De Paul Ventures - San Jose Dialysis, LLC**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Debtor De Paul Ventures, LLC**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Debtor O'Connor Hospital Foundation**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Debtor St. Francis Medical Center of Lynwood Foundation**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Debtor St. Vincent Foundation**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Debtor Verity Business Services**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Debtor Verity Health System of California, Inc.**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Debtor Verity Holdings, LLC**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Debtor Verity Medical Foundation**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Samuel R Maizel on behalf of Plaintiff Verity Health System of California, Inc.**
samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;
tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com

**Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)**
alvin.mar@usdoj.gov

**Craig G Margulies on behalf of Interested Party Courtesy NEF**
Craig@MarguliesFaithlaw.com, Victoria@MarguliesFaithlaw.com;
David@MarguliesFaithLaw.com;Helen@MarguliesFaithlaw.com

**Hutchison B Meltzer on behalf of Interested Party Attorney General For The State Of Ca**
hutchison.meltzer@doj.ca.gov, Alicia.Berry@doj.ca.gov

**Christopher Minier on behalf of Creditor Belfor USA Group, Inc.**
becky@ringstadlaw.com, arlene@ringstadlaw.com

**John A Moe, II on behalf of Debtor O'Connor Hospital**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

**John A Moe, II on behalf of Debtor O'Connor Hospital Foundation**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Debtor Seton Medical Center**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Debtor St. Francis Medical Center**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Debtor St. Francis Medical Center of Lynwood Foundation**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Debtor St. Louise Regional Hospital**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Debtor St. Vincent Dialysis Center, Inc.**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Debtor St. Vincent Foundation**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Debtor Verity Health System of California, Inc.**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Debtor Verity Medical Foundation**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Defendant St. Francis Medical Center**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**John A Moe, II on behalf of Defendant Verity Health System of California Inc**
john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,andy.jinnah@dentons.com

**Monserrat Morales on behalf of Interested Party Courtesy NEF**
mmorales@marguliesfaithlaw.com, Victoria@marguliesfaithlaw.com;
David@MarguliesFaithLaw.com;Helen@marguliesfaithlaw.com

**Kevin H Morse on behalf of Creditor Shared Imaging, LLC**
kevin.morse@saul.com, rmarcus@AttorneyMM.com;sean.williams@saul.com

**Kevin H Morse on behalf of Interested Party Courtesy NEF**
kevin.morse@saul.com, rmarcus@AttorneyMM.com;sean.williams@saul.com

**Marianne S Mortimer on behalf of Creditor Premier, Inc.**
mmortimer@sycr.com, jrothstein@sycr.com

**Tania M Moyron on behalf of Debtor De Paul Ventures - San Jose Dialysis, LLC**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor De Paul Ventures, LLC**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor O'Connor Hospital**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor O'Connor Hospital Foundation**
tania.moyron@dentons.com, chris.omeara@dentons.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

**Tania M Moyron on behalf of Debtor Saint Louise Regional Hospital Foundation**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor Seton Medical Center**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor Seton Medical Center Foundation**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor St. Francis Medical Center**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor St. Francis Medical Center of Lynwood Foundation**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor St. Louise Regional Hospital**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor St. Vincent Dialysis Center, Inc.**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor St. Vincent Foundation**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor St. Vincent Medical Center**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor Verity Business Services**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor Verity Health System of California, Inc.**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor Verity Holdings, LLC**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Debtor Verity Medical Foundation**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Tania M Moyron on behalf of Plaintiff Verity Health System of California, Inc.**
tania.moyron@dentons.com, chris.omeara@dentons.com

**Alan I Nahmias on behalf of Creditor Experian Health, Inc**
anahmias@mbnlawyers.com, jdale@mbnlawyers.com

**Alan I Nahmias on behalf of Interested Party Courtesy NEF**
anahmias@mbnlawyers.com, jdale@mbnlawyers.com

**Alan I Nahmias on behalf of Interested Party Alan I Nahmias**
anahmias@mbnlawyers.com, jdale@mbnlawyers.com

**Jennifer L Nassiri on behalf of Creditor Old Republic Insurance Company, et al**
jennifernassiri@quinnemanuel.com

**Charles E Nelson on behalf of Interested Party Wells Fargo Bank, National Association, as indenture trustee**
nelsonc@ballardspahr.com, wassweilerw@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**Sheila Gropper Nelson on behalf of Creditor Golden GatePerfusion Inc**
shedoesbklaw@aol.com

**Mark A Neubauer on behalf of Creditor Angeles IPA A Medical Corporation**
mneubauer@carltonfields.com, mlrodriguez@carltonfields.com;smcloughlin@carltonfields.com;
schau@carltonfields.com;NDunn@carltonfields.com;ecfla@carltonfields.com

**Mark A Neubauer on behalf of Creditor St. Vincent IPA Medical Corporation**
mneubauer@carltonfields.com, mlrodriguez@carltonfields.com;
smcloughlin@carltonfields.com;schau@carltonfields.com;NDunn@carltonfields.com;ecfla@carltonfields.com

**Mark A Neubauer on behalf of Interested Party Courtesy NEF**
mneubauer@carltonfields.com, mlrodriguez@carltonfields.com;
smcloughlin@carltonfields.com;schau@carltonfields.com;NDunn@carltonfields.com;ecfla@carltonfields.com

**Nancy Newman on behalf of Creditor SmithGroup, Inc.**
nnewman@hansonbridgett.com, ajackson@hansonbridgett.com;calendarclerk@hansonbridgett.com

**Bryan L Ngo on behalf of Interested Party All Care Medical Group, Inc**
bngo@fortislaw.com, BNgo@bluecapitallaw.com;
SPicariello@fortislaw.com;JNguyen@fortislaw.com;JNguyen@bluecapitallaw.com

**Bryan L Ngo on behalf of Interested Party All Care Medical Group, Inc.**
bngo@fortislaw.com, BNgo@bluecapitallaw.com;
SPicariello@fortislaw.com;JNguyen@fortislaw.com;JNguyen@bluecapitallaw.com

Melissa T Ngo on behalf of Creditor Pension Benefit Guaranty Corporation
ngo.melissa@pbgc.gov, efile@pbgc.gov

**Abigail V O'Brient on behalf of Creditor UMB Bank, N.A., as master indenture trustee and Wells Fargo Bank, National Association, as indenture trustee**
avobrient@mintz.com, docketing@mintz.com;DEHashimoto@mintz.com;nleali@mintz.com;ABLevin@mintz.com

**Abigail V O'Brient on behalf of Interested Party Courtesy NEF**
avobrient@mintz.com, docketing@mintz.com;DEHashimoto@mintz.com;nleali@mintz.com;ABLevin@mintz.com

**John R OKeefe, Jr on behalf of Creditor The Huntington National Bank**
jokeefe@metzlewis.com, slohr@metzlewis.com

**Paul J Pascuzzi on behalf of Creditor Toyon Associates, Inc.**
ppascuzzi@ffwplaw.com, lnlasley@ffwplaw.com

**Lisa M Peters on behalf of Creditor GE HFS, LLC**
lisa.peters@kutakrock.com, marybeth.brukner@kutakrock.com

**Christopher J Petersen on behalf of Creditor Infor (US), Inc.**
cjpetersen@blankrome.com, gsolis@blankrome.com

**Mark D Plevin on behalf of Interested Party Courtesy NEF**
mplevin@crowell.com, cromo@crowell.com

**David M Poitras on behalf of Interested Party Courtesy NEF**
dpoitras@wedgewood-inc.com, dpoitras@jmbm.com;dmarcus@wedgewood-inc.com;aguisinger@wedgewood-inc.com

**Steven G. Polard on behalf of Creditor Schwalb Consulting, Inc.**
spolard@ch-law.com, cborrayo@ch-law.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

**David M Powlen on behalf of Creditor Roche Diagnostics Corporation**
david.powlen@btlaw.com, pgroff@btlaw.com

**Christopher E Prince on behalf of Creditor Kaiser Foundation Hospitals**
cprince@lesnickprince.com, jmack@lesnickprince.com;mlampton@lesnickprince.com;cprince@ecf.courtdrive.com

**Lori L Purkey on behalf of Creditor Stryker Corporation**
bareham@purkeyandassociates.com

**William M Rathbone on behalf of Interested Party Cigna Healthcare of California, Inc., and Llife Insurance Company of North America**
wrathbone@grsm.com, jmydlandevans@grsm.com

**Jason M Reed on behalf of Interested Party Courtesy NEF**
Jason.Reed@Maslon.com

**Michael B Reynolds on behalf of Creditor California Physicians' Service dba Blue Shield of California**
mreynolds@swlaw.com, kcollins@swlaw.com

**Michael B Reynolds on behalf of Creditor Care 1st Health Plan**
mreynolds@swlaw.com, kcollins@swlaw.com

**Michael B Reynolds on behalf of Interested Party Courtesy NEF**
mreynolds@swlaw.com, kcollins@swlaw.com

**J. Alexandra Rhim on behalf of Creditor University of Southern California**
arhim@hrhlaw.com

**Emily P Rich on behalf of Creditor SEIU United Healthcare Workers - West**
erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net

**Emily P Rich on behalf of Creditor Stationary Engineers Local 39**
erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net

**Emily P Rich on behalf of Creditor Stationary Engineers Local 39 Health and Welfare Trust Fund**
erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net

**Emily P Rich on behalf of Creditor Stationary Engineers Local 39 Pension Trust Fund**
erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net

**Lesley A Riis on behalf of Creditor Lesley c/o Riis**
lriis@dpmclaw.com

**Debra Riley on behalf of Creditor California Statewide Communities Development Authority**
driley@allenmatkins.com

**Julie H Rome-Banks on behalf of Creditor Bay Area Surgical Management, LLC**
julie@bindermalter.com

**Mary H Rose on behalf of Interested Party Courtesy NEF**
mrose@buchalter.com, salarcon@buchalter.com

**Megan A Rowe on behalf of Interested Party Courtesy NEF**
mrowe@dsrhealthlaw.com, lwestoby@dsrhealthlaw.com

**Nathan A Schultz on behalf of Creditor Swinerton Builders**
nschultz@foxrothschild.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**William Schumacher on behalf of Creditor Verity MOB Financing II LLC**
wschumacher@jonesday.com

**William Schumacher on behalf of Creditor Verity MOB Financing LLC**
wschumacher@jonesday.com

**Mark A Serlin on behalf of Creditor RightSourcing, Inc.**
ms@swllplaw.com, mor@swllplaw.com

**Seth B Shapiro on behalf of Creditor United States Department of Health and Human Services**
seth.shapiro@usdoj.gov

**Joseph Shickich on behalf of Interested Party Microsoft Corporation**
jshickich@riddellwilliams.com

**Rosa A Shirley on behalf of Interested Party Courtesy NEF**
rshirley@nelsonhardiman.com,
ksherry@nelsonhardiman.com;lgill@nelsonhardiman.com;jwilson@nelsonhardiman.com;rrange@nelsonhardiman.com

**Rosa A Shirley on behalf of Special Counsel Nelson Hardiman LLP**
rshirley@nelsonhardiman.com,
ksherry@nelsonhardiman.com;lgill@nelsonhardiman.com;jwilson@nelsonhardiman.com;rrange@nelsonhardiman.com

**Kyrsten Skogstad on behalf of Creditor California Nurses Association**
kskogstad@calnurses.org, rcraven@calnurses.org

**Michael St James on behalf of Interested Party Medical Staff of Seton Medical Center**
ecf@stjames-law.com

**Andrew Still on behalf of Creditor California Physicians' Service dba Blue Shield of California**
astill@swlaw.com, kcollins@swlaw.com

**Andrew Still on behalf of Interested Party Courtesy NEF**
astill@swlaw.com, kcollins@swlaw.com

**Jason D Strabo on behalf of Creditor U.S. Bank National Association, not individually, but as Indenture Trustee**
jstrabo@mwe.com, ahoneycutt@mwe.com

**Sabrina L Streusand on behalf of Creditor NTT DATA Services Holding Corporation**
Streusand@slollp.com

**Ralph J Swanson on behalf of Creditor O'Connor Building LLC**
ralph.swanson@berliner.com, sabina.hall@berliner.com

**Gary F Torrell on behalf of Interested Party Courtesy NEF**
gft@vrmlaw.com

**United States Trustee (LA)**
ustpregion16.la.ecf@usdoj.gov

**Matthew S Walker on behalf of Creditor Packard Children's Health Alliance**
matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

**Matthew S Walker on behalf of Creditor Stanford Blood Center, LLC**
matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**Matthew S Walker on behalf of Creditor Stanford Health Care**
matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

**Matthew S Walker on behalf of Creditor Stanford Health Care Advantage**
matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

**Matthew S Walker on behalf of Creditor The Board of Trustees of the Leland Stanford Junior University**
matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

**Matthew S Walker on behalf of Creditor University Healthcare Alliance**
matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

**Matthew S Walker on behalf of Interested Party Matthew S Walker**
matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

**Jason Wallach on behalf of Interested Party Courtesy NEF**
jwallach@ghplaw.com, g33404@notify.cincompass.com

**Kenneth K Wang on behalf of Creditor California Department of Health Care Services**
kenneth.wang@doj.ca.gov, Jennifer.Kim@doj.ca.gov;Stacy.McKellar@doj.ca.gov;yesenia.caro@doj.ca.gov

**Phillip K Wang on behalf of Creditor Delta Dental of California**
phillip.wang@rimonlaw.com, david.kline@rimonlaw.com

**Gerrick Warrington on behalf of Interested Party Courtesy NEF**
gwarrington@frandzel.com, sking@frandzel.com

**Adam G Wentland on behalf of Creditor CHHP Holdings II, LLC**
awentland@tocounsel.com, lkwon@tocounsel.com

**Adam G Wentland on behalf of Creditor CPH Hospital Management, LLC**
awentland@tocounsel.com, lkwon@tocounsel.com

**Adam G Wentland on behalf of Creditor Eladh, L.P.**
awentland@tocounsel.com, lkwon@tocounsel.com

**Adam G Wentland on behalf of Creditor Gardena Hospital L.P.**
awentland@tocounsel.com, lkwon@tocounsel.com

**Latonia Williams on behalf of Creditor AppleCare Medical Group**
lwilliams@goodwin.com, bankruptcy@goodwin.com

**Latonia Williams on behalf of Creditor AppleCare Medical Group, Inc.**
lwilliams@goodwin.com, bankruptcy@goodwin.com

**Latonia Williams on behalf of Creditor AppleCare Medical Management, LLC**
lwilliams@goodwin.com, bankruptcy@goodwin.com

**Latonia Williams on behalf of Creditor St. Francis Inc.**
lwilliams@goodwin.com, bankruptcy@goodwin.com

**Michael S Winsten on behalf of Interested Party Courtesy NEF**
mike@winsten.com

**Jeffrey C Wisler on behalf of Interested Party Cigna Healthcare of California, Inc., and Llife Insurance Company of North America**
jwisler@connollygallagher.com, dperkins@connollygallagher.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

**Neal L Wolf on behalf of Creditor San Jose Medical Group, Inc.**
nwolf@hansonbridgett.com, calendarclerk@hansonbridgett.com,lchappell@hansonbridgett.com

**Neal L Wolf on behalf of Creditor Sports, Orthopedic and Rehabilitation Associates**
nwolf@hansonbridgett.com, calendarclerk@hansonbridgett.com,lchappell@hansonbridgett.com

**Neal L Wolf on behalf of Defendant LOCAL INITIATIVE HEALTH AUTHORITY FOR LOS ANGELES COUNTY DBA L.A. CARE HEALTH PLAN, an independent local public agency**
nwolf@hansonbridgett.com, calendarclerk@hansonbridgett.com,lchappell@hansonbridgett.com

**Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA)**
hatty.yip@usdoj.gov

**Andrew J Ziaja on behalf of Interested Party Engineers and Scientists of California Local 20, IFPTE**
aziaja@leonardcarder.com, sgroff@leonardcarder.com;msimons@leonardcarder.com;lbadar@leonardcarder.com

**Rose Zimmerman on behalf of Interested Party City of Daly City**
rzimmerman@dalycity.org

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                  **F 9013-3.1.PROOF.SERVICE**