1  James A. Hayes, Jr. (State Bar No. 162860)
   A Professional Law Corporation
2  P.O. Box 12902
3  Newport Beach, CA 92658
   Tel: (949) 566-8505
4  Fax:(949) 209-0315
5  jhayes@jamesahayesaplc.com

6  Counsel for Secured Creditor Royal West Development, Inc.

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                   LOS ANGELES DIVISION

10

| | |
|---|---|
| **In re** | **Lead Case No. 2:18-bk-20151-ER** |
| **VERITY HEALTH SYSTEM OF CALIFORNIA, INC.,** *et al.*, | **Jointly Administered With:**<br>**Case No. 2:18-bk-20162-ER;**<br>**Case No. 2:18-bk-20163-ER;**<br>**Case No. 2:18-bk-20164-ER;** |
| **Debtors and Debtors In Possession.** | **Case No. 2:18-bk-20165-ER;**<br>**Case No. 2:18-bk-20167-ER;**<br>**Case No. 2:18-bk-20168-ER;** |
| □ **Affects All Debtors** | **Case No. 2:18-bk-20169-ER;**<br>**Case No. 2:18-bk-20171-ER** |
| □ **Affects Verity Health System of California, Inc.** | **Case No. 2:18-bk-20172-ER;**<br>**Case No. 2:18-bk-20173-ER;** |
| □ **Affects O'Connor Hospital** | **Case No. 2:18-bk-20175-ER;** |
| □ **Affects Saint Louise Regional Hospital** | **Case No. 2:18-bk-20176-ER**<br>**Case No. 2:18-bk-20178-ER;** |
| □ **Affects St. Francis Medical Center** | **Case No. 2:18-bk-20179-ER;** |
| ⊠ **Affects St. Vincent Medical Center** | **Case No. 2:18-bk-20180-ER;** |
| □ **Affects Seton Medical Center** | **Case No. 2:18-bk-20181-ER** |
| □ **Affects O'Connor Hospital Foundation** | |
| □ **Affects Saint Louise Regional Hospital Foundation** | **Hon. Ernest M. Robles** |
| □ **Affects St. Francis Medical Center of Lynwood Foundation** | **NOTICE OF INTENT TO ENFORCE MECHANIC'S LIEN PURSUANT TO 11 U.S.C. § 546(b) AGAINST REAL PROPERTY OWNED BY ST. VINCENT MEDICAL CENTER LOCATED AT 2131 WEST 3RD ST., LOS ANGELES, CA 90057** |
| □ **Affects St. Vincent Foundation** | |
| □ **Affects St. Vincent Dialysis Center, Inc.** | **[No hearing required]** |
| □ **Affects Seton Medical Center Foundation** | |

□ **Affects Verity Business Services**
□ **Affects Verity Medical Foundation**
□ **Affects Verity Holdings, LLC**
□ **Affects De Paul Ventures, LLC**
□ **Affects De Paul Ventures - San Jose ASC, LLC**

**Debtors and Debtors In Possession.**

**TO ST. VINCENT MEDICAL CENTER AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Royal West Development, Inc. ("Royal West"), by its undersigned counsel, hereby files notice of its claim of lien on the real property and improvements thereon owned by St. Vincent Medical Center ("St. Vincent") and located at 2131 West 3rd Street, Los Angeles, California 90057 (the "Property").

1.     On April 20, 2018, Royal West executed an agreement with St. Vincent to provide labor and materials to paint the exterior of St. Vincent's facility on the Property ("Agreement").  A true and correct copy of the Agreement is attached hereto as Exhibit "1."

2.     Royal West provided these painting services until August 22, 2018, when Royal West's subcontractor, MGH Painting, pulled off the project.  Royal West is owed $367,297.00 for the labor and materials it provided at the Property for the benefit of St. Vincent pursuant to the Agreement.

3.     Royal West closed its on-site office at the Property on September 17, 2018.

4.     Royal West is informed that St. Vincent filed the above-captioned chapter 11 bankruptcy petition on August 31, 2018. Royal West was not listed as a creditor in St. Vincent's bankruptcy case.

5.     Pursuant to 11 U.S.C. § 362(a)(3), Royal West caused a mechanic's lien to be recorded with the Los Angeles County Recorder's office on September 20, 2018, as Document No. 20180967571.  As a direct contractor with the owner of the

Property, St. Vincent, Royal was not required to record and serve a Preliminary

Notice on St. Vincent, pursuant to Cal. Civ. Code § 8200(e)(2).

5.    Pursuant to 11 U.S.C. § 546(b) and consistent with *Village Nurseries v.*

*Gould (In re Baldwin Builders)*, 232 B.R. 406 (9th Cir. BAP 1999), Royal West

hereby gives notice of its intention to enforce its lien rights against the Property.


DATED: January 28, 2019                    Respectfully submitted,

                                           JAMES A. HAYES, JR.,
                                           A Professional Law Corporation

                              By:    /s/James A. Hayes, Jr._____
                                     James A. Hayes, Jr.
                                     Counsel for Creditor Royal West
                                     Development, Inc.

**EXHIBIT 1**

# GENERAL TERMS AND CONDITIONS OF
# CONTRACT FOR
# CONSTRUCTION SERVICES

## Saint Vincent's Health Center

("Owner")

And

## Royal West Development

("Contractor")

1

Rev. 03.20.2018

## GENERAL TERMS AND CONDITIONS OF
## CONTRACT FOR
## CONSTRUCTION SERVICES

THIS AGREEMENT OF GENERAL TERMS AND CONDITIONS OF CONTRACT FOR CONSTRUCTION SERVICES is made and effective as of **April 20. 2018** ("Effective Date"), by and between **Saint Vincent's Medical Center** a California not-for-profit corporation ("Owner"), and **Royal West Development** ("Contractor").

## R E C I T A L S

A.      Owner may desire to engage Contractor for the performance of construction services.

B.      In order to engage the professional services of Contractor as defined herein (the "Services"), Owner shall issue a letter substantially in the form of Exhibit A, which is attached and incorporated by reference (the "Project Letter"). The Project Letter shall set forth the scope of the Services, the consideration to be paid and other project-specific matters. The provisions of the Project Letter shall be controlling to the extent they are inconsistent or conflict with any of the provisions of these General Terms and Conditions.

C.      The parties understand and agree that this Agreement sets forth the general terms and conditions of the contract which is formed upon the issuance and acceptance of a Project Letter together these documents are hereafter referred to as the "Agreement."

D.      This Agreement shall constitute the controlling general terms and conditions upon the acceptance of a Project Letter. Separate and distinct Project Letters may be issued by Owner during the term of this Agreement. Each such Project Letter together with the general terms and conditions contained in this Agreement shall constitute a separate and distinct Agreement.

THEREFORE, IN CONSIDERATION of the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Owner and Contractor agree as follows:

## 1.      CONTRACTOR'S SERVICES

A.      Contractor shall perform the Services that are described in the applicable Project Letter. Contractor shall furnish all professional services, labor, materials, tools, equipment and supervision necessary and appropriate to fully perform the described Services.

B.      In performing the Services, Contractor shall comply with, and shall cause its sub-consultants, subcontractors, suppliers, agents, employees and representatives to comply with, all applicable federal, state and local laws, regulations, rules, ordinances, orders and decrees in effect as of the date of the applicable Project Letter (collectively, "Laws"). If Contractor should discover any discrepancy or inconsistency between the requirements of any Laws and the scope or nature of the Services, Contractor shall immediately notify Owner in writing of any discrepancy or inconsistency, recommend a course of action to remedy the situation and shall conform the Services to any orders or instructions issued by Owner.

2

C.    Contractor shall notify Owner in writing if:  (i) Contractor is served with a notice of violation of any Laws that relate to the performance of the Services; (ii) proceedings are commenced that could lead to revocation of any registrations, certifications, permits, licenses or any other authorizations or approvals from any governmental entity or professional organizations or associations that relate to the performance of the Services (collectively, "Certifications"); (iii) any Certifications are revoked; or (iv) litigation is commenced against Contractor that could affect the performance of the Services, and/or arise from or are related to the Services provided by Contractor under this Agreement.

D.    Contractor shall use qualified and experienced personnel and suitable equipment and materials to perform the Services in accordance with this Agreement.  To the extent required by any Laws, each person assigned to perform any part of Contractor's obligations shall be licensed or certified.

**2.    COMPENSATION**

Subject to the other requirements of this Agreement, Owner shall compensate Contractor for the Services that are properly and fully performed and for allowable expenses incurred as stated in the applicable Project Letter.  Contractor shall not invoice Owner for any mark-up, including on the cost of any materials or disbursement.  Reimbursement for travel expenses will be in accordance with the requirements of Owner's policy on expense reimbursement, a copy of which will be made available to Contractor.  Without limiting the general applicability of such policy, such policy requires detailed receipts prior to reimbursement for travel expenses, and provides that certain expenses are not reimbursable, e.g., alcoholic beverages, excess baggage charges, and hotel rates above established limits.

**3.    INVOICES AND PAYMENT**

A.    Except to the extent otherwise provided in the applicable Project Letter, Contractor shall invoice Owner monthly for its fees, expenses and costs incurred during the prior month or for such amounts for which Contractor seeks compensation in accordance with any schedule of payments that may be set forth in the Project Letter.  Each invoice shall include: (i) a detailed statement of the Services performed during the month; (ii) a comparison of the Services scheduled to be performed with those actually performed; (iii) a list of all sub-consultants, subcontractors and suppliers who provided services, including an itemized and detailed list of the cost of their services, if applicable; (iv) such backup documentation as Owner may reasonably request to substantiate the amounts properly owing to Contractor; and (v) Contractor's certification that the Services for which payment is sought have been completed in accordance with this Agreement.

B.    Provided that an invoice with all required supporting documentation has been received by Owner not later than the 10th day of the month, Owner shall pay all amounts properly owing to Contractor within thirty (30) days.  However, if Owner objects to all or any portion of any invoice, then Owner shall so notify Contractor within fifteen (15) days from receipt of such invoice, giving Contractor reasons for the objection.  Owner shall not pay that portion of the invoice that has been objected to, but shall pay any portion of the invoice not objected to within thirty (30) days.

3

C.      If requested by Owner, Contractor also shall submit with any application for payment, in a form reasonably satisfactory to Owner, a sworn statement setting forth a list of all sub-consultants, subcontractors and material suppliers retained by Contractor in connection with the performance of the Services, the amount of each such subcontract, the amount paid to date and the amount remaining to be paid.  Final payment shall not be due until Contractor has delivered to Owner: (i) an affidavit that all the Services have been fully and satisfactorily performed; and (ii) a final sworn statement from Contractor.

D.      Contractor shall promptly pay its subcontractors, suppliers, agents, employees and materialmen for all work done or performed for Owner hereunder, so as to prevent the assertion or imposition of liens upon or against any of Owner's real property, and shall, upon request, provide Owner with lien waivers.  Should any lien on Owner's real property or the Project be asserted or filed in connection with work done by or for Contractor, Contractor shall bond against or discharge the same within ten (10) days after written request by Owner.  Owner may require Contractor to provide demolition and/or lien and completion bonds in form and amount satisfactory to Owner.  In the event Contractor fails to remove said lien within ten (10) days, Owner may, at its sole option, elect to satisfy and remove the lien by paying the full amount claimed or otherwise settling said lien, without investigating the validity thereof, and Contractor shall pay Owner upon demand the amount paid by Owner to satisfy said lien, including Owner's costs and expenses including attorney's fees, or Contractor shall be in default hereunder.  Owner's election to discharge liens as provided hereunder shall not be construed to be a waiver or cure of Contractor's default hereunder.

## 4.      NO PAYMENT FOR DEFICIENCIES IN WORK

No compensation shall be paid to or claimed to be owed by Contractor for professional services required to correct deficiencies attributable to errors or omissions of Contractor or its sub-consultants, subcontractors or suppliers, and all such errors or omissions shall be corrected at Contractor's sole cost and expense.  Any dispute between the parties as to whether certain deficiencies are attributable to errors and omissions shall be resolved pursuant to Section 21.

## 5.      WITHHOLDING PAYMENTS TO CONTRACTOR

In addition to any retainage as defined in the Project Letter, Owner shall have the right to withhold from payment due Contractor such sums as are reasonably necessary to protect Owner from any loss or damage that may result from: (i) the negligence or unsatisfactory work of Contractor or its sub-consultants, subcontractors, affiliates, agents or employees; (ii) the failure by Contractor or any sub-consultant, subcontractor, supplier, agent or employee to perform the Services; (iii) claims filed against the Owner relating to Contractor's Services; (iv) failure of Contractor to pay any subcontractor, supplier, agent or employee; or (v) liens filed against the Project that are not fully covered by a bond, or otherwise bonded off in favor of the Owner.

4

Rev. 03.20.2018

6.      **REPRESENTATIONS AND AGREEMENTS OF CONTRACTOR**

Contractor represents to Owner and agrees that:

A.      Contractor has visited the property and the building or buildings involved with this Agreement and is reasonably familiar with site conditions that may affect the Services.

B.      Contractor, and each sub-consultant, subcontractor, supplier, agent or employee, has the training, capability, experience, expertise, and approvals necessary to perform the Services in accordance with this Agreement.  If requested by Owner, Contractor shall submit copies of any certifications, registrations, permits, licenses or other authorizations prior to the commencement of the Services;

C.      Contractor shall perform the Services promptly, diligently and continuously with an adequate number of qualified personnel to ensure completion by the scheduled completion date;

D.      Contractor possesses and shall keep in force all required licenses, permits and accreditation necessary to perform the Services;

E.      Contractor shall perform the Services in compliance with all Laws, including all applicable federal, state and local laws and regulations in effect at the date of the applicable Project Letter;

F.      The subconsultants, subcontractors, employees and agents of Contractor are fully qualified, licensed and certified, as may be required, and skilled to perform the Services;

G.      All information previously provided by Contractor regarding Contractor's qualifications was complete and accurate at the time it was submitted, and shall be updated by the Contractor if said qualifications change after submission;

H.      No prior or present services provided by Contractor to third parties or interests of Contractor conflict with the interests of Owner except as shall have been expressly disclosed in writing by Contractor to Owner and consented to in writing by Owner;

I.      Contractor has the full power to execute, deliver and perform this Agreement and has taken all necessary action to authorize such execution, delivery and performance; the individual(s) executing this Agreement are duly authorized to sign the same on Contractor's behalf and to bind Contractor; and

J.      Contractor is financially solvent, able to pay debts as they mature and is possessed of sufficient working capital to complete the services and obligations required under this Agreement.

K.      Contractor represents that Contractor and/or any of its subconsultants, suppliers, and their agents or employees are not presently debarred, suspended, or proposed for debarment by the Federal government. Contractor shall provide immediate written notice to Owner if Contractor learns that this representation was erroneous when submitted or if Contractor and/or

any of its subcontractors, suppliers, and their agents or employees hereafter becomes debarred, suspended, or proposed for debarment by the Federal government or by any Federal agency.

## 7. INDEPENDENT CONTRACTOR STATUS OF CONTRACTOR AND SUBCONTRACTORS

A.      Contractor is engaged by Owner only for the purpose, and to the extent, set forth in this Agreement.  Contractor understands and agrees that Contractor is an independent contractor and no conduct by any party will, at any time, be construed to create the relationship of employer and employee, principal and agent, partners, or joint venturers between Owner and Contractor, or between the respective officers, directors, partners, managers, employees or agents of Owner, on the one hand and Contractor on the other hand.  Contractor shall be solely responsible for the compensation, benefits, contributions and taxes, if any, of its employees, sub-consultants, subcontractors and agents.  Contractor shall not be an employee or agent of Owner, nor claim to be acting as such, and shall have no authority whatsoever to bind Owner, waive any contractual requirements or make any statements or representations on behalf of Owner.

B.      Contractor shall, at its own expense, comply with all applicable workers' compensation, unemployment insurance, employer's liability, tax withholding, minimum wage and hour, and other federal, state, county and municipal laws, ordinances, rules, regulations and orders.  Contractor shall abide by the Occupational Safety and Health Act of 1970, as the same may be amended from time to time (OSHA), applicable federal, state and local environmental, safety, health and other applicable laws and regulations.

C.      Unless otherwise specifically requested by Owner in writing, Contractor shall cause its employees, agents, and invitees to observe the working hours, rules and security regulations of Owner and to perform their respective duties in a manner that does not unreasonably interfere with the business and operations of Owner.  Contractor shall take all necessary precautions to assure the safety of its employees, all equipment and supplies, and all property of Owner or other parties that may be affected by the performance of the Services.  If so requested by Owner, Contractor shall promptly replace any employee or agent performing the Services if, in the sole opinion of the Owner, such performance is unsatisfactory.

D.      Contractor shall not subcontract the performance of any of the Services under this Agreement without first securing Owner's approval of the sub-consultant or subcontractor and of the subcontract as to the price and other terms and conditions.  Each subcontract shall:  (i) require such services to be performed in accordance with this Agreement, including without limitation all applicable Laws, and (ii) require the sub-consultants or subcontractors to agree to be bound by all the terms and conditions of this Agreement.

## 8. STANDARD OF CARE OWED BY CONTRACTOR

A.      The Services shall be performed by Contractor in accordance with the care, diligence and professional standards commensurate with the standards of highly qualified firms in the locality in which the Services are performed, engaged in providing services of similar scope and magnitude and under similar conditions and circumstances.  The Services provided by the Contractor shall be performed timely and as expeditiously as is consistent with the aforesaid

6

standard and the orderly progress of the work in accordance with a schedule approved by Owner. Contractor shall exercise the same degree of care as that of highly qualified firms in the locality in which the Services are performed when performing hazardous or dangerous activities. Whenever on any property owned or controlled by Owner, Contractor will conduct its activities in a manner that shall, to the greatest extent practicable, avoid any risk of injury to persons and damage to property.

B.    The Contractor agrees that in the event the Services include the provision of materials and equipment to the Owner under this Agreement said materials and equipment will be of good quality and new unless otherwise required or permitted by this Agreement, that the Services, provided by the Contractor will be free from defects not inherent in the quality required or permitted, and that the Services, materials, and equipment will conform to the requirements of this Agreement.  Services, materials, and equipment not conforming to these requirements, including substitutions not properly approved and authorized, may, in the Owner's discretion, be considered defective.  The Contractor shall furnish to Owner satisfactory evidence as to the kind and quality of materials and equipment.

C.    In addition to the Contractor's obligations under Section 8.A. and 8.B., above, if, within one year after the date of completion of the Project, any of the Services, material and/or equipment provided by Contractor are found to be not in accordance with the requirements of this Agreement, the Contractor shall correct it within thirty (30) days after receipt of written notice from the Owner to do so.  If the Contractor fails to correct said nonconforming Services, material and/or equipment within such thirty (30) day time period after receipt of notice from the Owner, the Owner may correct the deficiencies, and the Contractor shall promptly reimburse the Owner for all expenses associated with correcting the deficiency(ies) or, if applicable, the Owner may deduct the amount from any payments to the Contractor.

D.    The one-year period for correction of Services, material and/or equipment shall be extended by corrective action performed by the Contractor pursuant to this Section 8.

## 9.    INDEMNIFICATION

To the fullest extent permitted by law, each party (the "Indemnifying Party") agrees to defend, pay on behalf of, indemnify, and hold harmless the other party, its subsidiaries and their agents, directors, officers, trustees, employees and volunteers (collectively referred to as "Indemnitees") from and against any and all claims, demands, suits, damages, losses, and expenses, including, but not limited to, reasonable attorney's fees and costs, which may be alleged, claimed, or recovered against lndemnitees arising out of, resulting from, or in any way caused by the wrongful conduct of the Indemnifying Party in the performance or nonperformance of the Services under this Agreement, whether as a result of breach of contract, tort or otherwise, including but not limited to any such claim, demand, suit, damage, loss or expense attributed to personal injury, sickness, disease, death, or injury to or destruction of property, including loss of use, caused in whole or in part by the negligent acts or omissions of the Indemnifying Party, any subcontractor, agent, or anyone directly or indirectly employed by the Indemnifying Party or anyone for whose acts the Indemnifying Party is, or may be, liable or any other person or persons, their agents and employees.  The foregoing obligations of indemnification shall exclude only those matters in which (but only to the extent to which) the

claim, demand, suit, damage, loss or expense arises out of allegations of the negligence of the Indemnitees.

## 10.    INSURANCE

A.    Contractor shall provide insurance as set forth in Exhibit B, which is attached to this Agreement and incorporated by reference.

B.    Owner and Contractor waive all rights against each other and any of their subcontractors, suppliers, and the agents and employees of any of them for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Section or other insurance applicable to the Services, except such rights as they have to proceeds of such insurance held by Owner as fiduciary. Owner and Contractor shall require their subcontractors, sub-consultants, suppliers, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property.

C.    Neither party nor their respective subcontractors, sub-consultants, suppliers, agents, employees or representatives shall be deemed an employee of the other party, and each party shall indemnify, hold harmless, and defend the other party and its subcontractors, sub-consultants, agents, employees and representatives from and against any liability of the indemnifying party for compensation under any applicable state or Federal workers' compensation law, including workers' compensation and/or employer's liability claims of employees.

## 11.    CONFIDENTIALITY

All drawings, specifications, studies, analyses, opinions, recommendations and technical documents of any nature, whether original or reproduced, prepared pursuant to this Agreement, and any other documents or information relating to Owner's operations, are the property of Owner and are to be treated as confidential; provided, however, Contractor may retain one or more sets of such documents solely for archival purposes. All confidential information shall be: (i) maintained in confidence; (ii) not disclosed to others without Owner's prior written approval; and (iii) delivered to Owner on request. Contractor shall advise all its sub-consultants, subcontractors, agents, employees and representatives having access to said confidential information of this obligation of confidentiality and bind such parties to this same obligation. No articles, papers or treatises related to or in any way associated with the Services performed pursuant to this Agreement shall be submitted for publication without Owner's prior written consent.

## 12.    RETENTION OF RECORDS

Contractor's records relating to the Services shall be kept in accordance with generally accepted accounting principles, consistently applied, shall be retained by Contractor for a period

8

of not less than six (6) years from the completion of its services, and shall be available to Owner, or any authorized representative of Owner, upon reasonable prior notice, for audit and review during normal business hours, at the following location: Royal West Development.

## 13.    STOP WORK ORDER

Owner may at any time, by delivering written notice to Contractor (hereinafter a "Stop Work Order"), require Contractor to stop all or any part of the performance required by this Agreement for a period of up to ninety (90) days after Contractor receives the Stop Work Order. Upon receipt of the Stop Work Order, Contractor shall comply with its terms and take all reasonable steps to minimize the costs applicable to the Services covered by the Stop Work Order during the period of work stoppage. Within a period of ninety (90) days after Contractor's receipt of a Stop Work Order, or within any extension of that period to which Contractor and Owner have agreed in writing, Owner shall either cancel the Stop Work Order, or terminate this Agreement. Provided this Agreement has not been terminated, Contractor shall resume work upon cancellation or expiration of any Stop Work Order. An equitable adjustment shall be made in any time schedule if the Stop Work Order causes a demonstrable increase in the time required for performance of the Services.

## 14.    TERM AND TERMINATION OF AGREEMENT

This Agreement shall remain in full force and effect from the date of its execution until: (i) Contractor's completion of the Services; or (ii) termination of this Agreement pursuant to Section A or B of this Section. Termination of this Agreement shall discharge only those obligations that are executory by either party on and after the effective date of termination. Any right or duty of a party based on either performance or a breach of this Agreement prior to the effective date of termination shall survive any such termination.

A.    Owner shall have the right to terminate this Agreement at any time upon written notice to Contractor, even though Contractor is not in default. Such termination shall be effective upon receipt of such notice by Contractor or upon the date, if any, specified in such notice. In the event of any such termination, Owner shall compensate Contractor for all actual expenses and charges outstanding at the time of termination, whether billed or not; provided, however, that Contractor shall have no right to any amounts attributable to defective Services or Services not otherwise fully performed in accordance with this Agreement.

B.    Contractor shall have the right to terminate this Agreement if Owner shall fail to make any payment of an undisputed amount properly owing to Contractor and such failure has not been remedied or cured within forty-five (45) days of Owner's receipt of written notice of such nonpayment. Upon any such termination, Owner shall pay all actual expenses and charges, whether previously billed or not, as of the date of termination less costs that have been or will be incurred by Owner due to the termination provided, however, that Contractor shall have no right to any amounts attributable to defective Services or Services not otherwise performed in accordance with this Agreement.

C.    All provisions of this Agreement shall survive completion of the Services or termination of this Agreement.

Rev. 03.20.2018

15.    **HIPPA COMPLIANCE**

Both Owner and Contractor acknowledge and recognize that access to or use of protected health information ("PHI"), as such term is defined under the Health Information Portability and Accountability Act of 1996 ("HIPAA") and the regulations thereunder, is not necessary for Contractor to meet its obligations under the Agreement. Contractor agrees that if its employees, agents, or contractors have incidental exposure to PHI during the term of this Agreement, Contractor and its employees, agents and contractors shall comply with all applicable law regarding the confidentiality of patient information including but not limited to HIPAA and California privacy laws and regulations. Additionally, Contractor shall provide immediate written notice to Owner about such incidental exposure and the parties shall then confer about the applicability of a Business Associate Agreement at that time.

16.    **WAIVER**

A waiver on the part of Owner or Contractor of any term, provision, or condition of this Agreement shall not constitute a precedent or bind either party to a waiver of any succeeding breach of the same or any other term, provision or condition of this Agreement.

17.    **ENTIRE AGREEMENT**

This Agreement, including all Exhibits, Schedules and any addenda, constitutes the entire agreement between Contractor and Owner. It supersedes all prior or contemporaneous communications, representations, or agreements, whether oral or written. This Agreement may be amended only by a written instrument signed by both parties. The captions in this Agreement are for the convenience of the parties in identification of the several provisions and shall not constitute a part of this Agreement.

18.    **ASSIGNMENT**

Contractor shall not assign this Agreement without the written consent of the Owner. The Contractor acknowledges and agrees that (i) the Owner may assign this Agreement to any affiliate of Owner; (ii) the Owner and/or its successors or assigns may collaterally assign this Agreement to a lender in connection with the financing of the Project; and (iii) the Contractor shall perform its obligations under this Agreement for the benefit of such assignee and/or lender provided that the assignee and/or lender, as the case may be, fulfills those obligations of the Owner under this Agreement that accrue from and after the date on which the assignee and/or lender begins to avail itself of the benefits of the subject assignment.

19.    **SEVERABILITY**

Every paragraph, part, term, or provision of this Agreement is severable from the others. If any paragraph, part, term, or provision of this Agreement is construed or held to be void, invalid, or unenforceable by order, decree, or judgment of a court of competent jurisdiction, the

Rev. 03.20.2018

remaining paragraphs, parts, terms, and provisions of this Agreement shall not be affected but shall remain in full force and effect.

## 20.    NOTICES

Every notice, demand or other document or instrument required or permitted to be given under this Agreement may be given by either party by depositing the same in the US Mail, first class, addressed to the other as follows:

| | |
|---|---|
| To Owner: | Saint Vincent's Medical Center |
| | 2131 West 3rd Street |
| | Los Angeles, CA 90057 |
| | Attn.: Arman Keshishian / Margaret Pfeifer |
| | |
| To Contractor: | Royal West Development |
| | 543 Pine Street |
| | Hermosa beach, CA 90254 |
| | Attn.:  Kirk Feldkamp |

The foregoing shall not be deemed to preclude the use of other means of notification other than oral or to invalidate any notice properly given by any such other means than oral.

## 21.    GOVERNING LAW

This Agreement shall be governed by the law and construed in accordance with internal laws of the State of California exclusive of its conflict and choice of laws rules.

## 22.    DISPUTE RESOLUTION

A.    Special Meeting.  Except as set forth in Paragraph (f) below, in the event of any dispute or disagreement between the parties with respect to this Agreement, either party may request in writing a special meeting for the resolution of the dispute (a "Special Meeting").  The Special Meeting shall be held at a mutually agreeable location within ten (10) days of a written request for the meeting, which request shall specify the nature of the dispute to be resolved.  The Special Meeting shall be attended by representatives of both parties (who may or may not be accompanied by legal counsel, in their respective discretion), who shall attempt in good faith to resolve the dispute and shall have reasonable authority to do so.

B.    Mediation.  If a dispute has not been resolved within thirty (30) days after the date of the Special Meeting or within forty-five (45) days of the written request for the Special Meeting, either party may initiate mediation of the dispute by sending a written request for mediation to the other party.  The parties shall jointly select an independent and neutral person qualified to act as a mediator.  The mediation proceeding shall commence not more than thirty (30) days after the written request for mediation.  The mediation shall be attended by representatives of both parties (who may or may not be accompanied by legal counsel, in their respective discretion), who shall attempt in good faith to resolve the dispute and shall have

11

reasonable authority to do so.  Unless the parties otherwise agree, all fees and expenses of the mediation shall be borne equally by the parties.

C.      Arbitration.  If the parties are unable to reach a mutually acceptable resolution to the dispute within fifteen (15) days following an initial mediation conference or within forty-five (45) days following the written request for mediation, the matter shall be submitted to binding arbitration.  Either party may commence arbitration by giving a written notice to the other party demanding arbitration.  There shall be one (1) impartial arbitrator, who shall be experienced in arbitration and knowledgeable regarding the health care/health related services industry.  The parties shall jointly select a single arbitrator.  If the parties cannot reach agreement as to a mutually acceptable arbitrator within ten (10) days after the demand to arbitrate is made, they shall request that an arbitrator be chosen by JAMS/Endispute, Inc.

D.      Hearing.  The arbitration process shall consist of an adversary hearing and each party shall have the right to call and cross-examine witnesses under oath and to introduce oral and documentary evidence.  The arbitration hearing shall take place in San Francisco, California, and shall be governed by the rules of Section 1280 et. Seq. of the California Code of Civil Procedure. The decision of the arbitrator shall be final and binding.

The arbitration shall commence within one hundred and eighty (180) days after the appointment of the arbitrator, unless the arbitrator is unavailable during that period, and in that event, it shall commence as soon as possible thereafter.  In the event the arbitration does not commence within this time period, the party demanding arbitration shall be able to pursue all legal remedies, including without limitation bringing an action regarding the dispute in a court of law.

E.      Good Faith Finding.  The arbitrator, in addition to resolving the dispute, shall make a finding whether the parties to the arbitration acted in good faith.  If the parties are found by the arbitrator to have acted in good faith, both parties shall equally share in the expenses and fees of the arbitration.  However, if one party is found not to have acted in good faith, that party alone will bear the expenses and fees of the arbitration, including attorneys' fees for both parties.

F.      Injunctive Relief.  Notwithstanding the provisions of this Section 22, each of the parties hereto shall have the right to apply for and obtain a temporary restraining order or other temporary, interim or permanent injunctive or equitable relief from a court of competent jurisdiction in order to enforce the provisions of any part of this Agreement as may be necessary to protect its rights under those provisions.

G.      Costs.  In the event a court action is brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover as an element of its costs of suit, reasonable attorneys' fees, as determined by the court.

## 23.    DESIGNATION OF DUTIES

Contractor expressly acknowledges and agrees that Owner may, from time to time designate a third party, for example but not in limitation, an architect, engineer or construction manager, to perform any of its duties or obligations under this Agreement.  In the event of any such designation, Owner shall provide written notice to Contractor.

Rev. 03.20.2018

24.     **FEDERAL ACCESS TO BOOKS AND RECORDS**

In the event, and only in the event, that Section 952 of P.L. 96-499, 42 U.S.C. Section 1395x(v)(1)(I), is applicable to any services provided by Contractor pursuant to this Agreement, Contractor agrees as follows:

a.      Until the expiration of four (4) years after the furnishing of such services pursuant to this Agreement, Contractor shall make available, upon written request to the Secretary of the Federal Department of Health and Human Services or upon request to the Comptroller General of the United States, or any of their duly authorized representatives, this Agreement, and books, documents and records of Contractor that are necessary to certify the nature and extent of the cost of such services provided pursuant to this Agreement; and

b.      If Contractor carries out any of the duties of this Agreement through a contract, with a value or cost of $10,000 or more over a twelve-month period, with a related organization, such contract shall contain a clause to the effect that, until the expiration of four (4) years after the furnishing of such services pursuant to such contract, the related organization shall make available, upon written request to the Secretary of the Federal Department of Health and Human Services or upon request to the Comptroller General of the United States, or any of their duly authorized representatives, the contract, and books, documents and records of such organization that are necessary to verify the nature and extent of the cost of such services provided pursuant to said contract.

25.     **COMPLIANCE WITH LAWS**

Contractor warrants that it complies with applicable federal, state and local statutes and regulations, including employment, wage and hour, and immigration laws. The Contractor agrees, in connection with the performance of work under this Agreement, not to discriminate against any employee or applicant for employment because of race, gender, religion, color, national origin, age, disability, or veteran status. The parties hereby agree to comply with Executive Orders 11246 and 13496, and hereby incorporate herein the requirements of 41 C.F.R. §§60-1.4(a)(1)-(7); 41 C.F.R. § 60-741.5; 29 C.F.R. part 471, Appendix A to Subpart A; and all other federal acquisitions regulations governing this Agreement, if applicable.

Rev. 03.20.2018

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives, as follows:

OWNER:

**SAINT VINCENT'S MEDICAL CENTER**

Signature:_____

Printed Name: Margaret Pfeifer _____

Title: CEO _____

CONTRACTOR:

**ROYAL WEST DEVELOPMENT**

Signature:_____   April 24, 2018

Printed Name: Kirk Feldkamp_____

Title: Principal_____President_____

14

**EXHIBIT A**

**PROJECT ENGAGEMENT LETTER FOR
CONSTRUCTION SERVICES**

**Saint Vincent's Medical Center**

("Owner")

And

**Royal West Development**

("Contractor")



Dear Mr. Feldkamp

   **Saint Vincent's Medical Center,** a California not-for-profit corporation, (the "Owner"), desires to retain your firm to provide the professional services as set forth in this Project Letter and in the General Terms and Conditions of Contract for Construction Services between Owner and Contractor dated **April 20th, 2018**(the "Agreement"), the terms and conditions of which are incorporated by reference herein.  This Project Letter, if accepted, the Agreement and any attached Schedules, Exhibits, or other addenda, form the contract between you and the Owner and together are hereafter referred to as the "Project Letter."  This Project Letter may only be modified or amended as provided in the Agreement.

Name of Project: Exterior Wall Elastomeric Application/Paint (the "Project")

Property Location(s): 2131 West 3rd Street  Los Angeles, CA 90057

Description of Property:Hospital

Owner Contact:Arman Keshishian

   We request that your firm provide construction services for the Project in accordance with this Project Letter.  Attachment A contains a description of the services you will provide in connection with the Project (the "Services").  The performance of the Services will not exceed the period of one year.  In the event your performance requires more than one year, this Project Letter is not valid unless you have received written approval of the Owner.  The Services, investigation and activities shall be personally conducted or supervised by Kirk Feldkamp of your office.  Any change in responsibility of such person must be pre-approved by the Owner.

   Your fee for the services will be paid on a % complete basis in accordance with the rate schedule attached, but the total amount paid for the Services shall not exceed $495,537.00 unless you have received prior written approval of the Owner.  Invoices are required for payment pursuant to section 3(A) and 3(B) of the Agreement, unless otherwise indicated herein, with retainage of 5%. The Services you provide shall commence no later than May 1st, 2018, and shall be completed by July 1st, 2018. You shall be responsible for paying all of your out-of-pocket costs and expenses, unless otherwise provided for in this Project Letter.

   Arman Keshishian will serve as the Owner's contact person (the "Contact Person") for purposes of this Project.  Please feel free to call the Contact Person to discuss any aspect of this engagement.  All reports or communications regarding the Project should be addressed to the Contact Person, and any others identified in the Agreement.

   All terms and conditions of this Project Letter apply to the Services.  Any requested deviations from this Project Letter shall be discussed with the Contact Person and must be approved in writing by the Owner before taking effect.

If you are in agreement with the terms and conditions of this letter and wish to accept this Project Letter, then please sign and return one copy.

Sincerely,

OWNER:

**SAINT VINCENTS MEDICAL CENTER**

Signature:_____

Printed Name: Margaret Pfeifer

Title:CEO

WE ACCEPT AND AGREE TO THE TERMS OF THIS PROJECT LETTER:

CONTRACTOR:

**ROYAL WEST DEVELOPMENT**

Signature:_____ April 24, 2018

Printed Name: Kirk Feldkamp

Title: Principal

**Attachment A**

Services to be performed by

**ROYAL WEST DEVELOPMENT**



**SEE ATTACHED PROPOSAL ATTACHED PROPOSAL DATE 03-30-18 FOR SCOPE OF                                                                                          WORK.**

# EXHIBIT B

Contractor's Minimum Insurance Requirements

Compliance by the Contractor with the insurance requirement set forth herein shall not relieve the Contractor from liability for amounts in excess of the required limits of insurance.

The types of insurance and minimum limits required hereunder are:

a)    Workers' Compensation Insurance with statutory limits, as required by the State of California.

b)    Employer's Liability Insurance with limits of not less than $500,000 to any one person. Contractor may be allowed to satisfy its obligation under this requirement through umbrella liability insurance.

c)    Commercial General Liability Insurance, written on an occurrence form including explosion, collapse, and underground:

$1,000,000    Each Occurrence (BI & PD Combined Single Limit)

$2,000,000    General Aggregate (Per Project)*

$1,000,000    Personal Injury and Advertising Liability

$1,000,000    Products & Completed Operations

$1,000,000    Contractual Liability to cover all Liabilities assumed under this Agreement.

*If the Contractor cannot provide the aggregate limit per project, an Owners Contractors Protective Liability must be secured by the Contractor at Contractor's cost in the name of the **Saint Vincent's Medical Center** (Owner) for a minimum limit of:

$1,000,000    Each Occurrence and

$2,000,000    Annual Aggregate.

d)    Automobile Liability Insurance covering all owned, non-owned, and hired automobiles used in connection with the Services provided by Contractor's with combined single limits for Bodily Injury and Property Damage of not less than $1,000,000 per accident.

e)    Professional Liability Insurance with limits of $1,000,000 per occurrence/$2 million annual aggregate.

f)    Pollution Liability Insurance (i.e., asbestos, lead abatement, etc.), if applicable, for at least $5,000,000 each occurrence.

g)    Umbrella Liability Insurance excess of all the above required coverage's except professional liability and pollution liability (for which umbrella insurance cannot be obtained) with limits of $2,000,000 per occurrence/$3,000,000 million annual aggregate.

**Saint Vincent's Medical Center** (Owner) shall be included as an additional insured under all coverages (except workers' compensation, employers liability and professional liability) as required by this Agreement and such additional insured status shall be specifically identified on the certificate of insurance.

All policies are required to be endorsed to indicate that policies provide primary coverage without right of contribution by any insurance carried or self-insured by Owner.  A waiver of subrogation in favor of Owner shall also be endorsed to the policies.

Prior to commencement of the performance of the Services, the Contractor shall deliver to Owner's Agent, insurance certificates evidencing that the required insurance is in force with insurance companies satisfactory to Owner (Minimum A.M. Best A-VIl).  All certificates of insurance required hereunder shall specifically state that there shall be no material change in, or cancellation of, the policy or policies evidenced except upon 30 days prior written notice via certified mail to Owner's Agent and that 30 days prior to the renewal date.  The Contractor shall furnish Owner's Agent with updated or replacement certificates of insurance that clearly evidence continuation of coverages in the same manner, limits and protections as required by Owner and Owner's Agent.

Such insurance as required shall be kept in force by the Contractor continuously during the life of this Agreement and for a period of not less than 90 days after the date of final completion; additionally, the Completed Operations insurance required herein shall be kept in force by the Contractor for a period of not less than three (3) years after the date of final completion.

B-2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

P.O. Box 12902, Newport Beach, CA 92658

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF INTENT TO ENFORCE MECHANIC'S LIEN PURSUANT TO 11 U.S.C. § 546(b) AGAINST REAL PROPERTY OWNED BY ST. VINCENT MEDICAL CENTER LOCATED AT 2131 WEST 3RD ST., LOS ANGELES, CA 90057** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 1/28,2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 1/29/2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Hon. Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.
January 28, 2019        Joan Thompson

_____        /s/Joan Thompson
_____
_Date_              _Printed Name_                  _Signature_

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**
•Robert N Amkraut ramkraut@foxrothschild.com
•Kyra E Andrassy kandrassy@swelawfirm.com,
csheets@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
•Simon Aron saron@wrslawyers.com
•Cristina E Bautista cristina.bautista@kattenlaw.com,
ecf.lax.docket@kattenlaw.com,nicole.jones@kattenlaw.com
•James Cornell Behrens jbehrens@milbank.com,
gbray@milbank.com;mshinderman@milbank.com;hmaghakian@milbank.com;dodo
nnell@milbank.com;jbrewster@milbank.com;JWeber@milbank.com
•Ron Bender rb@lnbyb.com
•Bruce Bennett bbennett@jonesday.com
•Peter J Benvenutti pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
•Elizabeth Berke-Dreyfuss edreyfuss@wendel.com
•Steven M Berman sberman@slk-law.com
•Alicia K Berry Alicia.Berry@doj.ca.gov
•Stephen F Biegenzahn efile@sfblaw.com
•Scott E Blakeley seb@blakeleyllp.com, ecf@blakeleyllp.com
•Dustin P Branch branchd@ballardspahr.com,
carolod@ballardspahr.com;hubenb@ballardspahr.com;Pollack@ballardspahr.com
•Michael D Breslauer mbreslauer@swsslaw.com,
wyones@swsslaw.com;mbreslauer@ecf.courtdrive.com;wyones@ecf.courtdrive.com
•Damarr M Butler butler.damarr@pbgc.gov, efile@pbgc.gov
•Lori A Butler butler.lori@pbgc.gov, efile@pbgc.gov
•Sara Chenetz schenetz@perkinscoie.com,
dlax@perkinscoie.com;cmallahi@perkinscoie.com;mduncan@perkinscoie.com
•David N Crapo dcrapo@gibbonslaw.com, elrosen@gibbonslaw.com
•Aaron Davis aaron.davis@bryancave.com, kat.flaherty@bryancave.com
•Kevin M Eckhardt keckhardt@huntonak.com, keckhardt@hunton.com
•Andy J Epstein taxcpaesq@gmail.com
•Christine R Etheridge christine.etheridge@ikonfin.com
•M Douglas Flahaut flahaut.douglas@arentfox.com
•Michael G Fletcher mfletcher@frandzel.com, sking@frandzel.com
•Jeffrey K Garfinkle jgarfinkle@buchalter.com,
docket@buchalter.com;dcyrankowski@buchalter.com
•Lawrence B Gill lgill@nelsonhardiman.com, rrange@nelsonhardiman.com
•Paul R. Glassman pglassman@sycr.com
•Mary H Haas maryhaas@dwt.com, melissastrobel@dwt.com;
laxdocket@dwt.com;yunialubega@dwt.com

1

- Robert M Hirsh Robert.Hirsh@arentfox.com
- Marsha A Houston mhouston@reedsmith.com
- Monique D Jewett-Brewster mjb@hopkinscarley.com, jkeehnen@hopkinscarley.com
- Lance N Jurich ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Ivan L Kallick ikallick@manatt.com, ihernandez@manatt.com
- Jane Kim jkim@kellerbenvenutti.com
- Monica Y Kim myk@lnbrb.com, myk@ecf.inforuptcy.com
- Gary E Klausner gek@lnbyb.com
- Joseph A Kohanski jkohanski@bushgottlieb.com, kireland@bushgottlieb.com
- Chris D. Kuhner c.kuhner@kornfieldlaw.com
- Darryl S Laddin bkrfilings@agg.com
- Richard A Lapping richard@lappinglegal.com
- David E Lemke david.lemke@wallerlaw.com, chris.cronk@wallerlaw.com;Melissa.jones@wallerlaw.com;cathy.thomas@wallerlaw.com
- Elan S Levey elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- Samuel R Maizel samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com
- Alvin Mar alvin.mar@usdoj.gov
- Craig G Margulies Craig@MarguliesFaithlaw.com, Victoria@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com
- Hutchison B Meltzer hutchison.meltzer@doj.ca.gov, Alicia.Berry@doj.ca.gov
- John A Moe john.moe@dentons.com, glenda.spratt@dentons.com,derry.kalve@dentons.com,jennifer.wall@dentons.com,andy.jinnah@dentons.com,bryan.bates@dentons.com
- Monserrat Morales mmorales@marguliesfaithlaw.com, Victoria@marguliesfaithlaw.com;Helen@marguliesfaithlaw.com
- Kevin H Morse kevin.morse@saul.com, rmarcus@AttorneyMM.com;sean.williams@saul.com
- Marianne S Mortimer mmortimer@sycr.com, jrothstein@sycr.com
- Tania M Moyron tania.moyron@dentons.com, chris.omeara@dentons.com
- Alan I Nahmias anahmias@mbnlawyers.com, jdale@mbnlawyers.com
- Jennifer L Nassiri jennifernassiri@quinnemanuel.com
- Mark A Neubauer mneubauer@carltonfields.com, mlrodriguez@carltonfields.com;smcloughlin@carltonfields.com;schau@carltonfields.com
- Bryan L Ngo bngo@fortislaw.com, BNgo@bluecapitallaw.com;SPicariello@fortislaw.com;JNguyen@fortislaw.com;JNguyen@bluecapitallaw.com

- Melissa T Ngo ngo.melissa@pbgc.gov, efile@pbgc.gov
- Abigail V O'Brient avobrient@mintz.com,
docketing@mintz.com;DEHashimoto@mintz.com;nleali@mintz.com
- Aram Ordubegian ordubegian.aram@arentfox.com
- Paul J Pascuzzi ppascuzzi@ffwplaw.com, lnlasley@ffwplaw.com
- Mark D Plevin mplevin@crowell.com, cromo@crowell.com
- David M Poitras dpoitras@wedgewood-inc.com,
dpoitras@jmbm.com;dmarcus@wedgewoodinc.
com;aguisinger@wedgewood-inc.com
- Lori L Purkey bareham@purkeyandassociates.com
- William M Rathbone wrathbone@gordonrees.com,
jmydlandevans@gordonrees.com;sdurazo@gordonrees.com
- Michael B Reynolds mreynolds@swlaw.com, kcollins@swlaw.com
- Emily P Rich erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net
- Debra Riley driley@allenmatkins.com, jbatiste@allenmatkins.com
- Julie H Rome-Banks julie@bindermalter.com
- Mary H Rose mrose@buchalter.com, salarcon@buchalter.com
- Megan A Rowe mrowe@dsrhealthlaw.com, lwestoby@dsrhealthlaw.com
- Nathan A Schultz nschultz@foxrothschild.com
- Mark A Serlin ms@swllplaw.com, mor@swllplaw.com
- Rosa A Shirley rshirley@nelsonhardiman.com,
rrange@nelsonhardiman.com;lgill@nelsonhardiman.com
- Kyrsten Skogstad kskogstad@calnurses.org, rcraven@calnurses.org
- Michael St James ecf@stjames-law.com
- Jason D Strabo jstrabo@mwe.com, ahoneycutt@mwe.com
- Sabrina L Streusand Streusand@slollp.com
- Ralph J Swanson ralph.swanson@berliner.com, sabina.hall@berliner.com
- Gary F Torrell gft@vrmlaw.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Matthew S Walker matthew.walker@pillsburylaw.com,
candy.kleiner@pillsburylaw.com
- Jason Wallach jwallach@ghplaw.com, g33404@notify.cincompass.com
- Kenneth K Wang kenneth.wang@doj.ca.gov,
Jennifer.Kim@doj.ca.gov;susan.lincoln@doj.ca.gov;yesenia.caro@doj.ca.gov
- Phillip K Wang phillip.wang@rimonlaw.com, david.kline@rimonlaw.com
- Gerrick Warrington gwarrington@frandzel.com, dwise@frandzel.com
- Latonia Williams lwilliams@goodwin.com, bankruptcy@goodwin.com
- Neal L Wolf nwolf@hansonbridgett.com,
calendarclerk@hansonbridgett.com;lchappell@hansonbridgett.com
- Hatty K Yip hatty.yip@usdoj.gov