GREGORY A. BRAY (Bar No. 115367)
gbray@milbank.com
MARK SHINDERMAN (Bar No. 136644)
mshinderman@milbank.com
JAMES C. BEHRENS (Bar No. 280365)
jbehrens@milbank.com
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000/Facsimile: (213) 629-5063

*Counsel for the Official Committee of
Unsecured Creditors of Verity Health System of
California, Inc., et al.*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>Debtors and Debtors In Possession. | Lead Case No. 18-20151<br>Jointly Administered With:<br>CASE NO.: 2:18-bk-20162-ER<br>CASE NO.: 2:18-bk-20163-ER<br>CASE NO.: 2:18-bk-20164-ER<br>CASE NO.: 2:18-bk-20165-ER<br>CASE NO.: 2:18-bk-20167-ER<br>CASE NO.: 2:18-bk-20168-ER<br>CASE NO.: 2:18-bk-20169-ER<br>CASE NO.: 2:18-bk-20171-ER<br>CASE NO.: 2:18-bk-20172-ER<br>CASE NO.: 2:18-bk-20173-ER<br>CASE NO.: 2:18-bk-20175-ER<br>CASE NO.: 2:18-bk-20176-ER<br>CASE NO.: 2:18-bk-20178-ER<br>CASE NO.: 2:18-bk-20179-ER<br>CASE NO.: 2:18-bk-20180-ER<br>CASE NO.: 2:18-bk-20181-ER |
| Affects:<br><br>☑ All Debtors<br>☐ Verity Health System of California, Inc.<br>☐ Saint Louise Regional Hospital<br>☐ St. Francis Medical Center<br>☐ St. Vincent Medical Center<br>☐ Seton Medical Center<br>☐ O'Connor Hospital Foundation<br>☐ Saint Louise Regional Hospital Foundation<br>☐ St. Francis Medical Center of Lynwood Foundation<br>☐ St. Vincent Foundation<br>☐ St. Vincent Dialysis Center, Inc.<br>☐ Seton Medical Center Foundation<br>☐ Verity Business Services<br>☐ Verity Medical Foundation<br>☐ Verity Holdings, LLC<br>☐ De Paul Ventures, LLC<br>☐ De Paul Ventures - San Jose Dialysis, LLC<br><br>Debtors and Debtors In Possession. | Chapter 11 Cases<br><br>Hon. Ernest M. Robles<br><br>**REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH COMMITTEE OBJECTION TO SGM SALE MOTION [DOCKET NO. 1279]** |

The Official Committee of Unsecured Creditors of Verity Health System of California, Inc., *et al*. (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession, hereby respectfully requests that the Court, in considering the limited objection filed by the Committee to the *Motion for the Entry of (I) an Order (1) Approving Form of Asset Purchase Agreement for Stalking Horse Bidder and for Prospective Overbidders; (2) Approving Auction Sale Format, Bidding Procedures and Stalking Horse Bid Protections; (3) Approving Form of Notice to Be Provided to Interested Parties, (4) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest Bidder; and (5) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; and (II) an Order Authorizing the Sale of Property Free and Clear of all Claims, Liens and Encumbrances* [Docket No. 1279], take judicial notice of the Declaration of Cynthia A. Nelson, (i) the original of which was filed with the Court on October 15, 2018 [Docket No. 491]; and (ii) a true and correct copy of which is annexed hereto as Exhibit A.

DATED: January 28, 2019                MILBANK, TWEED, HADLEY & McCLOY LLP

                                                                   */s/ Gregory A. Bray*
                                                                  GREGORY A. BRAY
                                                                  MARK SHINDERMAN
                                                                  JAMES C. BEHRENS

                                                          Counsel for the Official Committee of
                                                          Unsecured Creditors of Verity Health System of
                                                          California, Inc., et al.

1
2
3
4
5
6
7
8
9
10                              **EXHIBIT A**
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREGORY A. BRAY (Bar No. 115367)
gbray@milbank.com
MARK SHINDERMAN (Bar No. 136644)
mshinderman@milbank.com
JAMES C. BEHRENS (Bar No. 280365)
jbehrens@milbank.com
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000/Facsimile: (213) 629-5063

*Proposed Counsel for the Official Committee of
Unsecured Creditors of Verity Health System of
California, Inc.*, *et* *al.*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al*.,<br><br>       Debtors and Debtors In Possession.<br><br>Affects:<br><br>☑ All Debtors<br>☐ Verity Health System of California, Inc.<br>☐ Saint Louise Regional Hospital<br>☐ St. Francis Medical Center<br>☐ St. Vincent Medical Center<br>☐ Seton Medical Center<br>☐ O'Connor Hospital Foundation<br>☐ Saint Louise Regional Hospital Foundation<br>☐ St. Francis Medical Center of Lynwood Foundation<br>☐ St. Vincent Foundation<br>☐ St. Vincent Dialysis Center, Inc.<br>☐ Seton Medical Center Foundation<br>☐ Verity Business Services<br>☐ Verity Medical Foundation<br>☐ Verity Holdings, LLC<br>☐ De Paul Ventures, LLC<br>☐ De Paul Ventures - San Jose Dialysis, LLC<br><br>       Debtors and Debtors In Possession. | Lead Case No. 18-20151<br>Jointly Administered With:<br>CASE NO.: 2:18-bk-20162-ER<br>CASE NO.: 2:18-bk-20163-ER<br>CASE NO.: 2:18-bk-20164-ER<br>CASE NO.: 2:18-bk-20165-ER<br>CASE NO.: 2:18-bk-20167-ER<br>CASE NO.: 2:18-bk-20168-ER<br>CASE NO.: 2:18-bk-20169-ER<br>CASE NO.: 2:18-bk-20171-ER<br>CASE NO.: 2:18-bk-20172-ER<br>CASE NO.: 2:18-bk-20173-ER<br>CASE NO.: 2:18-bk-20175-ER<br>CASE NO.: 2:18-bk-20176-ER<br>CASE NO.: 2:18-bk-20178-ER<br>CASE NO.: 2:18-bk-20179-ER<br>CASE NO.: 2:18-bk-20180-ER<br>CASE NO.: 2:18-bk-20181-ER<br><br>Chapter 11 Cases<br><br>Hon. Ernest M. Robles<br><br>**DECLARATION OF CYNTHIA A. NELSON IN SUPPORT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OBJECTION TO DEBTORS' SALE MOTION [DKT. 365]** |



1820151181012000000000037

**DECLARATION OF CYNTHIA A. NELSON**

I, Cynthia A. Nelson, declare:

1.   I am over 18 years of age.  I have personal knowledge of the facts stated below or have gained knowledge of them from documents typically obtained by financial advisors in my capacity or from the professionals assisting me in my capacity as a financial advisor, and, if called as a witness, I could and would testify competently thereto.

2.   I am a Senior Managing Director in the Corporate Finance & Restructuring group at FTI Consulting, Inc. ("FTI"), the proposed financial advisor to the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (the "Debtors").  I am based in Los Angeles where I lead FTI's Los Angeles Corporate Finance Practice.  Prior to joining FTI I was a partner in the Business Recovery Services practice of PricewaterhouseCoopers.

3.   I have over 25 years of experience in the restructuring and turnaround industry, and assist stakeholders in developing, evaluating, and implementing turnaround plans and restructurings in both judicial and non-judicial circumstances.  These efforts routinely involve either managing the disposition of enterprises and assets or advising creditors and other stakeholders in connection with such sales, including Chapter 11 bankruptcy auctions.  I have extensive experience with real estate, health care, retail, land, and other types of enterprises and assets and am familiar with customary practices in connection with the disposition of such assets.

**Break-Up Fee Levels**

4.   In my experience, the general benchmark for break-up fees in transactions like the one at issue in the Verity case is approximately 3% (*i.e*., $7,050,000 in this instance).  Here, it could be argued that a lower fee, including no fee, might be in order because, unlike an unaffiliated strategic or financial purchaser bidding from afar, Santa Clara County, a local governmental

2

authority, is already on the scene, well-acquainted with the St. Louise and O'Connor assets, and highly motivated to keep the lights on at both hospitals. In addition, for-profit purchasers routinely evaluate potential acquisitions and require break-up fees to cover the opportunity costs of not spending their time and resources on considering other deals.

5. Attached hereto as <u>Exhibit A</u> is a break-up fee study created by FTI (the "<u>FTI Fee Study</u>"). In preparing the FTI Fee Study, I, or professionals under my supervision, obtained 363 sale data from *The Deal*, a website that provides data on restructuring transactions, for approximately the past two years (2017 - present), with deal size parameters of $50 million to $250 million. Then I, or professionals under my supervision, obtained the sale motions and compiled the data for each case that met the criteria. I, or professionals under my supervision, also reviewed the Debtors' APA and related motion, and identified the cases referenced in their motion to support their proposed breakup fee of 4%.

6. Next, I, or professionals under my supervision created a summary of the Minimum/Maximum/Median/Average of FTI's comparable breakup fees, with credit bids and without credit bids, and then calculated the statistics for the breakup fees referenced by the Debtors with a summary of their Minimum/Maximum/Median/Average, as indicated in the FTI Fee Study.

7. Based upon the foregoing analysis and data compiled in the FTI Fee Study, a break-up fee of 3% or less would be consistent with the market for comparable sales in the past two years.

**Lack of Support for Break-Up Fee Level**

8. In addition, as a result of reviewing the data compiled in the FTI Fee Study, I concluded that the transactions cited by the Debtors are distinguishable for several reasons. As a threshold matter, the cited precedent does not represent the current state of the market. The most recent case referenced by the Debtors was filed nine years ago, in 2009, with others going back to

the 1980s and 1990s.  I, or professionals under my supervision, also determined that many of the cases cited by the Debtors had no docket information available on PACER, as they were too old, making it impossible for FTI to ascertain whether, or for the Debtors to contend that, these cases provide the claimed support for a larger break-up fee.

9. Also, most of the cases referenced by the Debtors were materially smaller in size than the Verity transaction.  The two highest breakup fees that the Debtors reference were approved in transactions that were much smaller than the currently proposed Verity deal: both the *Dan River* and *Lake Burton* sales were in the $10 million range, making them outliers for purposes of the current analysis.

**Expense Reimbursement Caps**

10. With regard to expense reimbursement, there is a clear market preference and a significant amount of precedent to cap expense reimbursements.  Indeed, as the FTI Fee Study shows, and taking into account the fact that adequate data are not available in all cases to reach conclusions, FTI has not been able to identify a recent, similarly sized transaction where the expense reimbursement was not capped.  The minimum expense cap is $0 and the maximum is $2 million; the median is $500,000.  In my opinion, an appropriate expense reimbursement cap for this particular stalking horse bid would be $500,000.

11. In addition, as this Sale Motion is the first of several asset sale motions that are anticipated to be filed in these cases, subsequent bidders will be governed by the Court's ruling with regard to the break-up fee and expense reimbursements.

**Satisfaction of Conditions Precedent**

12. In my experience, there is no reason for a break-up fee or expense reimbursement to be available until all conditions precedent relevant to a stalking horse purchaser's commitment to its bid have been satisfied or waived.  Making a break-up fee or expense

reimbursement available before both the Debtors' diligence condition in Section 8.19 of the APA and the condition in section 8.15 of the APA requiring approval from the Board of Supervisors of the County of Santa Clara are satisfied or waived would be unusual and would not be consistent with the current market for comparable transactions.

**Bid Increment Levels**

13. Large bid increments can serve to protect stalking horse bidders from competition, but in doing so they can chill bidding and, as a result, reduce recoveries to the bankruptcy estate.

14. Under the Bidding Procedures, in order simply to make an opening overbid, a Qualified Bidder would be required to submit a bid that is greater than (i) the $235 million Stalking Horse Purchaser's price, plus (ii) the $9.4 million break-up fee, plus (iii) the $7.5 million bid increment—i.e., a bid in the materially much higher amount of $251.9 million. The Debtors' estates could potentially miss out on millions of dollars of value if a bid increment of $7.5 million is mandated.

15. For example, a bidder that had just $5 million of bidding authority left at its disposal would be barred from a further and potentially topping bid by the $7.5 million minimum increment; and, if no topping bid were made as result, the Debtors would have left on the table that Qualified Bidder's otherwise available $5 million. Reducing the bid increments to $5 million, and/or allowing the Debtors, in consultation with the Committee, to adjust the amount of the bidding increment during the course of the auction, up or down, could materially increase the Debtors' recovery.

**Value of De Paul Property**

16. Having reviewed the descriptions of the assets being sold, I understand that the proposed sale includes more than just the assets necessary to run the O'Connor and St. Louise

hospitals. The APA also includes the De Paul property located in Morgan Hill, California, at which an urgent care facility and medical office space are operated. The operations at this facility are completely separate from the two hospitals. This property has independent value, and it is currently unclear what value, if any, is being attributed to it by the Stalking Horse Purchaser. The De Paul property should not be arbitrarily bundled with the sale of the O'Connor and St. Louise hospitals. The Debtors should be required to run a process that achieves the best price for the assets. If the De Paul property is not separately valued as part of the stalking horse bid, creditors will have no ability to ascertain whether the highest or otherwise best price was indeed obtained for this property.

17. The Stalking Horse Bidder and other Qualified Bidders should be required to allocate with specificity the portion of the overall purchase price that they attribute to the De Paul property to maximize the sale value of the De Paul property. The lack of such an allocation in the current APA will only serve to chill bidding by potential bidders, including real estate bidders, who will have no incentive to bid as they will be required to either top the current $251.9 million+ threshold  ($235 million + break-up fee + bid increment + expenses) and bid for the entire property (which none will be willing to do, presumably) or find a party with which  it can team to present a combined bid for the entirety of the portfolio. A much more efficient approach, which will help attract more parties to participate in the auction, and thus help ensure a robust sales process to maximize value to the estate, is to allocate the price. This way, potential purchasers of the hospitals and the De Paul property will be able to bid on the property each values the most, and the best bid, which might be a combination of bids, can then be determined by the Debtors using their business judgement.  In the alternative, the De Paul property could be excluded from the sale and sold separately, as a way of ascertaining and maximizing its sale value.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of October 2018, at Los Angeles, California.

_____
Cynthia A. Nelson

# EXHIBIT A

**FTI Fee Study**

Verity Health System of California, Inc., et al.
Exhibit A
Breakup Fee Study
10/12/2018
($ in M)

| | Filing Date | Debtor | District | Stalking Horse Purchase Price ($) | Break-up Fee ($) | Break-up Fee (%) | Expense Reimbursement ($) | Initial Minimum Overbid ($) | Initial Minimum Overbid (%) |
|---|---|---|---|---|---|---|---|---|---|
| | 8/31/2018 | Verity Health Systems | Central CA | $235.0 | $9.4 | 4.0% | (Uncapped) | $7.5 | 3.2% |
| **FTI Comparables** | | | | | | | | | |
| 1 | 8/2/18 | Brookstone Holdings Corp. | DE | 50.8 (1) | 0.90 (1) | 1.8% (1) | 0.30 (1) | 0.10 (1) | 0.2% (1) |
| 2 | 8/2/18 | Brookstone Holdings Corp. | DE | 56.4 (2) | 0.90 | 1.6% | 0.30 | 0.10 | 0.2% (3) |
| 3 | 7/10/18 | Tintri, Inc | DE | 52.5 (4) | 1.20 | 2.3% | 0.40 | 0.10 | 0.2% |
| 4 | 5/29/18 | Color Spot Holdings Inc. | DE | 22.0 (5) | 0.66 (5) | 3.0% (5) | 0.35 | 0.25 | 1.1% |
| 5 | 5/23/18 | EBH Topco | DE | 65.0 (6) | 0.00 | 0.0% | 0.33 | 0.10 | 0.2% |
| 6 | 5/14/18 | Rockport Co. LLC | DE | 150.0 (7) | 4.50 | 3.0% | 2.00 | 0.50 (8) | 0.3% (8) |
| 7 | 5/11/18 | Enduro Resource Partners LLC | DE | 77.5 (9) | 2.28 (9) | 2.9% (9) | 0.80 (9) | 1.60 (9) | 2.1% (9) |
| 8 | 5/10/18 | Videology | DE | 45.0 | 1.35 | 3.0% (10) | 0.50 | 0.10 | 0.2% |
| 9 | 3/31/18 | FirstEnergy Solutions Corp. | North OH | 140.0 | 4.20 | 3.0% | 1.40 | 1.00 | 0.7% |
| 10 | 3/12/18 | Orexigen Therapeutics Inc. | DE | 75.0 | 3.50 | 4.7% | 2.00 | 0.50 (11) | 0.7% |
| 11 | 3/6/18 | 4 West Holdings Inc. | North TX | 225.0 (12) | 4.00 | 1.8% | 0.50 | 1.00 (13) | 0.4% (13) |
| 12 | 11/7/17 | ExGen Texas Power | DE | 60.0 | 0.75 | 1.3% (14) | 0.30 | 2.00 (15) | 3.3% |
| 13 | 10/3/17 | GST AutoLeather Inc. | DE | 151.3 | 4.54 (16) | 3.0% (16) | incl. breakup (16) | 0.50 | 0.3% |
| 14 | 6/6/17 | Ignite Restaurant Group, Inc. | South TX | 50.0 | 1.50 | 3.0% | 0.00 (17) | 0.50 | 1.0% |
| 15 | 4/9/17 | Ciber, Inc. | DE | 50.0 | 1.50 | 3.0% | 0.50 | 3.00 (18) | 6.0% (18) |
| 16 | 4/3/17 | Angelica Corp. | South NY | 125.0 (19) | 0.00 (20) | 0.0% (20) | 0.75 | 1.00 | 0.8% |
| 17 | 3/13/17 | Sungevity Inc. | DE | 50.0 | 1.25 | 2.5% | 1.25 | 0.25 | 0.5% |
| 18 | 1/30/17 | Azure Midstream Partners | South TX | 151.1 | 4.53 | 3.0% | 1.00 | 1.00 (21) | 0.7% (21) |
| 19 | 1/19/17 | Avaya, Inc. | South NY | 100.0 | 3.00 | 3.0% | 0.75 | 1.00 | 1.0% |
| 20 | 6/2/16 | CS Mining LLC | UT | N/A (22) | 0.00 | 0.0% | 0.25 | 0.10 | N/A |
| **Debtor Motion Examples** | | | | | | | | | |
| 1 | 7/10/09 | Lake Burton Dev., LLC | ND GA | 10.5 | 0.50 | 4.8% (23) | N/A | 0.25 | 2.4% |
| 2 | 4/29/04 | Women First Healthcare, Inc. | DE | 25.0 (24) | 0.75 | 3.0% (24) | 0.25 | 1.25 | 5.0% |
| 3 | 3/31/04 | Dan River, Inc. | ND GA | 9.3 | 0.50 | 5.4% (25) | N/A | 0.10 | 1.1% |
| 4 | 7/3/03 | CXM, Inc. | ND IL | N/A | 0.20 | 3.0% | N/A | N/A | N/A |
| 5 | 7/11/90 | Twenver, Inc. | CO | N/A | N/A | 2.0% | N/A | N/A | N/A |
| 6 | 2/13/90 | Integrated Res. Inc. | SDNY | N/A | N/A | 3.3% | N/A | N/A | N/A |
| 7 | 12/9/88 | Crowthers McCall Pattern, Inc. | SDNY | 45.0 | 0.50 | 1.1% | N/A | N/A | N/A |
| 8 | N/A | Cottle v. Storer Commc'n, Inc. | 11th Cir. | N/A | 18.00 | 1.2% | N/A | N/A | N/A |
| 9 | N/A | Samjens Partners I v. Burlington Indus. | SDNY | N/A | N/A | 2.0% | N/A | N/A | N/A |
| 10 | N/A | Beebe v. Pacific Realty Trust | OR | N/A | N/A | 1.0% | N/A | N/A | N/A |

*Note: FTI Consulting obtained 363 sale data from The Deal, for the past two years (2017 - present), with deal size parameters of $50M to $250M. FTI then obtained the sale motions and compiled the data for each case that met the criteria. The Debtor Motion Examples are per the Debtors' Bidding Procedures Motion filed October 1, 2018 (Docket No. 365). FTI was able to locate some, but not all, of the referenced cases. Lake Burton, Women First, and Dan River were located.*

*Verity Health System of California, Inc.*
**Breakup Fee Study**
10/12/2018
($ in M)

|  | Break-up Fee ($) | Break-up Fee (%) | Expense Reimbursement ($) | Initial Minimum Overbid ($) | Initial Minimum Overbid (%) |
|---|---|---|---|---|---|
| **FTI Comparables (20)** | | | | | |
| Min | $ 0.00 | 0.0% | $ 0.00 | $ 0.10 | 0.2% |
| Median | $ 1.43 | 3.0% | $ 0.50 | $ 0.50 | 0.7% |
| Average | $ 2.03 | 2.3% | $ 0.72 | $ 0.74 | 1.0% |
| Max | $ 4.54 | 4.7% | $ 2.00 | $ 3.00 | 6.0% |
| **FTI Comparables Excluding Credit Bids (17)** | | | | | |
| Min | $ 0.00 | 0.0% | $ 0.00 | $ 0.10 | 0.2% |
| Median | $ 1.50 | 3.0% | $ 0.50 | $ 0.50 | 0.7% |
| Average | $ 2.15 | 2.6% | $ 0.76 | $ 0.74 | 1.2% |
| Max | $ 4.54 | 4.7% | $ 2.00 | $ 3.00 | 6.0% |
| **Debtor Motion Examples (10)** | | | | | |
| Min | $ 0.20 | 1.0% | N/A | $ 0.10 | 1.1% |
| Median | $ 0.50 | 2.5% | N/A | $ 0.25 | 2.4% |
| Average | $ 3.41 | 2.7% | N/A | $ 0.53 | 2.8% |
| Max | $ 18.00 | 5.4% | N/A | $ 1.25 | 5.0% |

**Footnotes**

| | |
|---|---|
| N/A | Not applicable (information not referenced in the motion or unavailable in docket) |
| 1 | Reflects the Stalking Horse APA for the "Sellers' intellectual property and related assets". There were additional asset sales conducted by Brookstone during the same bankruptcy not reflected in these numbers. |
| 2 | $50.45M of the purchase price consists of cash, the remaining $5.9M is in the form of salable inventory. |
| 3 | This LOI was filed in relation to the purchase of US and foreign IP assets. |
| 4 | Tintri Bid consists of $25 million in cash and $27.5 million in assumption of secured debt. |
| 5 | Stalking Horse purchase price is the cash portion of the bid. The full offer includes a credit bid of $52.0M (for a total of $74M). The breakup fee is based on the cash contribution of $22M. |
| 6 | EBH Topco stalking horse bid is a credit bid by Pre-petition/DIP Lender. |
| 7 | Includes a warrant for 5% of equity and assumption of liabilities. |
| 8 | The initial minimum overbid is $0.50M; subsequent overbids are in increments of $0.25M. |
| 9 | The numbers for Enduro reflect a scenario in which all the assets listed for sale in the bid procedures motion are purchased as an aggregate. |
| 10 | Videlogy break up is 3% of cash consideration which is a maximum amount of $45 million. |
| 11 | Initial overbid is $1.0M. Subsequent bids are in increments of $0.5M. |
| 12 | Includes a credit bid of $30.0M. |
| 13 | Except for stalking horse, no other bid is entitled to bid protections. |
| 14 | Relates only to cash consideration. |
| 15 | Initial overbid is $2.0M. Subsequent bids are in increments of $0.25M. |
| 16 | Breakup Fee and Expense reimbursement totals 3.0% of Purchase Price. |
| 17 | If APA is terminated, related costs/expenses to the agreement/transaction shall be paid by the party incurring such cost/expense. |
| 18 | The initial minimum overbid is $3.00M; subsequent overbids are in increments of $0.50M. |
| 19 | Includes a credit bid of $17.4M. |
| 20 | States that the APA does not contemplate a break-up fee. |
| 21 | The initial minimum overbid is $1.00M; subsequent overbids are in increments of $0.50M. |
| 22 | There was no initial stalking horse, $35M sales price is based on the auction value. |
| 23 | Lake Burton Dev (2010): breakup fee of $0.5M (4.75%) approved. (Purchase price of $10.5M). |
| 24 | re Women First Healthcare Inc.: Breakup fee and expense reimbursement combined is 4.0%. The docket filing indicates a sale value of $25M. |
| 25 | re Dan River, Inc.: Breakup fee of $0.5M (5.3%) approved. (Purchase price of $9.3M). |

Sources: Comparable Transactions: *The Deal Pipeline*, Docket Filings: PACER and Debtwire

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**2029 Century Park E, 33rd Floor, Los Angeles, CA 90067.**

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF CYNTHIA A. NELSON IN SUPPORT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OBJECTION TO DEBTORS'  SALE MOTION [DKT. 365]**_____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 12, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) October 12, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 12, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 12, 2018 | Ricky Windom | | /s/ Ricky Windom |
|---|---|---|---|
| *Date* | *Printed Name* | | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August  2010                         **F 9013-3.1.PROOF.SERVICE**

**SERVICE LIST**
(Via NEF)

alicia.berry@doj.ca.gov
ann.sandor@workday.com
bankruptcycourtnotices@unioncounsel.net
bbennett@jonesday.com
bflorence@local39.org
bngo@fortislaw.com
bphillips@cochlear.com
brad.hamman@sodexo.com
branchd@ballardspahr.com
Brian@brdcpas.com
c.kuhner@kornfieldlaw.com
ccameron@vaneck.com
cgray@unioncounsel.net
Charles.Kim@nantworks.com
clark.whitmore@maslon.com
Corbin.B.Connell@wellsfargo.com
crivas@reedsmith.com
dahdoot@bushgottlieb.com
darryl.laddin@agg.com
david.lemke@wallerlaw.com
dcrapo@gibbonslaw.com
DKirk@carltonfields.com
dmiller@seiu-uhw.org
dpoitras@jmbm.com
driley@allenmatkins.com
DSBleck@mintz.com
Ecf@stjames-law.com
edreyfuss@wendel.com
elevesque@rosemawr.com
ElrodJ@gtlaw.com
erich@unioncounsel.net
gbray@milbank.com
gek@lnbyb.com
grossn@ballardspahr.com
gshlionsky@rosemawr.com
gwarrington@frandzel.com
hatty.yip@usdoj.gov
ikallick@manatt.com
info@fortislaw.com
jbehrens@milbank.com
jdt@jdthompsonlaw.com
jkim@kellerbenvenutti.com
jkohanski@bushgottlieb.com
jmorrone@rosemawr.com
jrothstein@sycr.com
jstrabo@mwe.com
kandrassy@swelawfirm.com
keckhardt@huntonAK.com
kprestegard@bushgottlieb.com
kskogstad@calnurses.org

ljohnson@stvincentipa.com
ljurich@loeb.com
LWeiser-Varon@mintz.com
Mark.v.birkholz@wellsfargo.com
melissa.jones@wallerlaw.com
mfletcher@frandzel.com
mhouston@reedsmith.com
michael@stjames-law.com
mmortimer@sycr.com
mneubauer@carltonfields.com
mplevin@crowell.com
mpreusker@mwe.com
mrowe@dsrhealthlaw.com
ms@swllplaw.com
mshinderman@milbank.com
msweet@foxrothschild.com
MYK@LNBYB.COM
ncoco@mwe.com
ndaro@calnurses.org
nschultz@foxrothschild.com
NWolf@hansonbridgett.com
PDWELLER@AETNA.COM
pglassman@sycr.com
phillip.wang@rimonlaw.com
PJRicotta@mintz.com
ppascuzzi@ffwplaw.com
purkey@purkeyandassociates.com
pvermont@randicklaw.com
ramkraut@foxrothschild.com
RB@LNBYB.COM
rgerber@lordabbett.com
Rich@TrodellaLapping.com
Robert_f_auwaerter@vanguard.com
ryant@carltonfields.com
sandra.spivey@usbank.com
sberman@slk-law.com
SBSE.Insolvency.Balt@irs.gov
scarroll@perkinscoie.com
schenetz@perkinscoie.com
seb@blakeleyllp.com
SECBankruptcy-OGC-ADO@SEC.GOV
SReed@medline.com
streusand@slollp.com
strollo.michael@pbgc.gov
taxcpaesq@gmail.com
thomas.stanton@sodexo.com
tmainguy@unioncounsel.net
trisha.monesi@capstonelawyers.com
Varon@mintz.com
virginia.housum@umb.com
Wsmith@mwe.com

**SERVICE LIST**
(First Class Mail)

Verity Health System of California, Inc.
2040 E. Mariposa Avenue
El Segundo, CA 90245

Samuel R. Maizel
Dentons US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017

**SERVICE LIST**
(Overnight Mail)

The Honorable Ernest M. Robles
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560/Courtroom 1568
Los Angeles, CA 90012-3300

**SERVICE LIST**
(Via Email)

Attorneys for Chapter 11 Debtors and Debtors in Possession:

Samuel R. Maizel – samuel.maizel@dentons.com
John A. Moe, II – john.moe@dentons.com
Tania M. Moyron – tania.moyron@dentons.com