SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 66893)
john.moe@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, California  90017-5704
Telephone:    (213) 623-9300
Facsimile:    (213) 623-9924

Attorneys the Chapter 11 Debtors and
Debtors In Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>    Debtors and Debtors In Possession.<br><br>☐ Affects All Debtors<br><br>☒ Affects Verity Health System of California, Inc.<br>☒ Affects O'Connor Hospital<br>☒ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects DePaul Ventures, LLC<br>☐ Affects DePaul Ventures - San Jose Dialysis, LLC<br><br>    Debtors and Debtors In Possession. | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly Administered with:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER<br>Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER<br>Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER<br>Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER<br><br>Chapter 11 Cases<br><br>Judge: Hon. Ernest M. Robles<br><br>**STIPULATION AND SETTLEMENT AGREEMENT RESOLVING OBJECTION FILED BY THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES RE DEBTORS' MOTION FOR THE ENTRY OF (I) AN ORDER (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT FOR STALKING HORSE BIDDER AND FOR PROSPECTIVE OVERBIDDERS TO USE**<br><br>[RELATES TO DOCKET NOS. 365, 906] |

565212.1

# STIPULATION AND SETTLEMENT AGREEMENT

This Stipulation and Settlement Agreement (the "Agreement") is entered into by and among Verity Health System of California, Inc. ("Verity"), O'Connor Hospital ("O'Connor") and Saint Louise Regional Hospital ("Saint Louise," and collectively with O'Connor, the "Hospital Debtors," and both collectively with Verity, the "Debtors"), and the California Department of Health Care Services (the "Department," and collectively with the Debtors, the "Parties").

## RECITALS

Whereas, O'Connor owns and operates that certain general acute care hospital known as O'Connor Hospital and Saint Louise owns and operates that certain general acute care hospital known as Saint Louise Regional Hospital (collectively, the "Hospitals"). The Debtors have struggled financially for several years. Moreover, for many years the Debtors have laboriously sought either a merger or sale of their assets which would allow them to preserve their operations for their patients and the local community, and pay their creditors. After careful deliberation, the Debtors' Boards of Directors concluded that a sale of the Hospitals as going concerns is the path most likely to ensure that the Hospitals remain open for the communities while recognizing the Debtors' obligations to creditors, including the Department.

Whereas, Medicaid is a cooperative federal-state program that authorizes the United States Government to provide funds to participating states to administer medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services. The program operates by authorizing the federal Centers for Medicare and Medicaid Services ("CMS") to pay a percentage of the costs a state incurs for patient care. As a condition of receiving federal funds, the state complies with certain federal requirements. California participates in Medicaid through the California Medical Assistance Program ("Medi-Cal"), and has designated the Department as the agency responsible for its administration.

Whereas, the Hospitals have Medi-Cal provider agreements ("Provider Agreements") with the Department which enable them to receive Medi-Cal payments for services provided to Medi-Cal beneficiaries. The O'Connor Hospital Provider Agreement is assigned number ZZR 00153H

- 2 -

565212.1

(with O'Connor Hospital having additional Medi-Cal provider numbers HSC 00153H and LTC 55235G); the Saint Louise Regional Hospital Provider Agreement is assigned number HSP 30688H (with Saint Louise having an additional Medi-Cal provider number LTC 55428H).

Whereas, on August 31, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief, thereby commencing their bankruptcy cases (the "Bankruptcy Cases"), jointly administered under Bankruptcy Case No. 2:18-bk-20151-ER, under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court").

Whereas, the Debtors had commenced a process to sell substantially all of the assets of the Hospitals pursuant to section 363 of the Bankruptcy Code (the "Sale") to the County of Santa Clara, a political subdivision of the State of California (the "County"). The assets to be sold to the County do not include accounts receivable. Thus, even after the Sale closes, the Debtors desire to continue to receive Medi-Cal fee-for-service payments and managed care payments based on services provided by the Hospitals on or prior to the date the Hospitals are transferred to the County (the "Closing Date"), and any Hospital Quality Assurance Fee Program ("HQAF") related payments for periods on or prior to the Closing Date, pursuant to article 5.230 of chapter 7 of part 3 of division 9 of the Welfare and Insitutions Code. The County has expressed a desire that the Debtors transfer the Provider Agreements to the County as part of the Sale process.

Whereas, by the Debtors' own calculations, they currently have no outstanding financial obligations to the Department for overpayments related to the Provider Agreements or for the HQAF program in connection with the Hospitals (collectively, any outstanding financial obligations to the Department for overpayments related to the Provider Agreements or for the HQAF program in connection with the Hospitals are referred to as the "Medi-Cal Claim"). However, the Debtors will pay approximately $16 million in HQAF obligations (an amount subject to change based upon the actual closing date) upon closing of the sale of the Hospitals to the County through a wired payment of that amount to the Department to obtain the benefits of the HQAF Program in connection with the Hospitals for dates of service on or prior to the

- 3 -

565212.1

Closing Date and as required for the ongoing right of the Debtor Hospitals to receive Fee For Service and Medi-Cal Managed Care HQAF Payments for dates of service on or prior to the Closing Date, even if such payments are made after the actual date of the Sale of the Hospitals to the County.

Whereas, the Department has asserted that the Provider Agreements must be treated as an executory contract and can only be assumed by the Debtors and assigned to the County with joint and several successor liablitity.

Whereas, California Code of Regulations, title 22, section 51000.52 provides that if the County takes the Provider Agreements it may also be liable for unpaid obligations owed by the Hospital Debtors to the Department, but the County is unwilling to proceed with the Sale if the transfer includes successor liability.

Whereas, California Code of Regulations, title 22, section 51000.50, subdivision (a)(6), provides that transferees of the Provider Agreements must make provisions to pay all "debts due and owing, including overpayments and penalty assessments, to any . . . state . . . government entity that relates to . . . Medi-Cal, or any other federal and state health care program . . . [*unless the*] *debt has been excused by legal proceedings.*" (emphasis added).

Whereas, pursuant to title 42, Code of Federal Regulations, part 438.6(c)(1)(iii), the Centers for Medicare and Medicaid Services ("CMS") has authorized the Department to require each applicable Medi-Cal managed care plan to make Hospital directed payments to network providers that provide eligible hospital services for the periods covering July 1, 2017, through June 30, 2019.  Pursuant to that approval, based on an analysis of actual network utilization, the Department will determine a uniform dollar add-on increment for purposes of the Hospital directed payments to be made to network private hospitals for eligible services rendered during the approval period.  Once the Department has determined the uniform dollar add-on increment, it "will direct [Medi-Cal managed care plans] to make enhanced payments for contracted services utilized within the class of private hospitals."

Whereas, consistent with CMS' approval of the private hospital directed payment program

- 4 -

565212.1

and of Hospital pass-through payments pursuant to title 42, Code of Federal Regulations, part 438.6(d), the Department has agreed that the applicable Medi-Cal managed care plans serving Santa Clara County (including Santa Clara Family Health Plan and Anthem Blue Cross, collectively, the "Plans") should make the applicable Medi-Cal managed care supplemental payments associated with dates of service on or prior to the Closing Date to the Hospital Debtors, for which Hospital Debtors are eligible based on their status as the respective private hospital operators of the Hospitals for dates of service on or prior to the Closing Date.

Whereas, the Debtors and the County expect the Sale of the Hospitals to close on or about February 28, 2019 (with the actual date the Sale of the Hospitals closes referred to herein as the "Effective Date").

**NOW, THEREFORE,** pursuant to the agreements reached in connection therewith, and in consideration of the mutual covenants, agreements and promises set forth herein, and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound as provided for herein, hereby agree as follows.

**1.    The Agreement**

**1.1**    The Debtors agree that they will (a) transfer the Provider Agreements to the County pursuant to section 365 of the Bankruptcy Code; (b) escrow $600,000.00 (the "Escrow Amount") for 18 months following Bankruptcy Court approval of this settlement as a fund against which the Department may recover any monies owed by the Hospital Debtors or the Hospitals to the Department for any and all obligations arising from or under the Medi-Cal Provider Agreements, including but not limited to the Medi-Cal overpayments to the Hospital Debtors for periods during which the Hospital Debtors own and operate the Hospitals; (c) pay approximately $16 million in HQAF obligations (an amount subject to change based upon the actual closing date) upon closing of the sale of the Hospitals to the County (within three business days after closing) through a wired payment of that amount to the Department; and (d) pay to the Department at closing a total of $126,408.35 as additional debts by the Hospitals to the Department ($63,630.75 by Saint Louise and $178,112.12 by O'Connor)

- 5 -

565212.1

**1.2**    The Department agrees that the foregoing escrow of the Escrow Amount, in addition to the Hospital Debtors' payments of HQAF Fees for Phase V of the HQAF Program on or shortly after the Effective Date (within three business days after closing), shall constitute a "cure" under section 365 of the Bankruptcy Code, and any otherwise applicable law, statute or regulation, of all outstanding financial defaults arising under or in connection with the Provider Agreements and the services provided and requests for payment made thereunder and that the County shall succeed to the quality history associated with the relevant Provider Agreement assigned and shall be treated, for purposes of survey and certification issues, as if it is the relevant owner and no change of ownership occurred.  For the avoidance of doubt, once the Provider Agreements are assigned to the County, the Department is authorized to adjust all payments to the County to account for the liabilities and any overpayments and underpayments relating to services after the Effective Date.  Notwithstanding the foregoing, under no circumstances shall the Department adjust, offset, or recoup any payments owing to the County after the Provider Agreements are assumed by the Hospital Debtors and assigned to the County for any obligations related to periods on or before the Effective Date, including those related to services provided by the Hospital Debtors on or prior to the date of the assignment of the Provider Agreements to the County.  The Department further agrees that the County shall not be required to execute DHCS Form 6217 (Rev. 5.17) - the Successor Liability With Joint And Several Liability Agreement in conjunction with the completion of the Sale and to effectuate the assignment of the Provider Agreements to the County.

**1.3**    The Parties agree that Hospital Debtors shall continue to be eligible to submit claims and receive Medi-Cal reimbursement for all authorized services occurring on or before the Effective Date even if such claims are submitted and payments received following the Effective Date, subject to a cap of $4.7 million in total Medi-Cal reimbursement.  The Debtors reserve the right to pursue all such reimbursement and to appeal any claim denial without such actions being limited by or affecting the terms of this Agreement.

565212.1

**1.4** All Fee For Service payments made under the HQAF Program will be paid to the Hospital Debtors at a designated account when due, without regard to the status of the O'Connor or Saint Louise license at the time of the payment.

**1.5** The Department expects the applicable Medi-Cal managed care plans serving Santa Clara County, including, without limitation, the Plans, to make applicable Medi-Cal managed care supplemental payments, including Hospital directed payments and Hospital pass-through payments, to the Hospital Debtors for dates of service from January 1, 2017 to the Effective Date, even if such payments are made after the Effective Date.

**1.6** The Department further agrees that the payments to be made pursuant to section 1.1 above are in full satisfaction of any claims arising under or related to the Medi-Cal Program against the Hospitals and the Hospital Debtors, including, without limitation, the Medi-Cal Claim.

**1.7** During the Bankruptcy Cases, and on and prior to the Effective Date, the Department agrees to continue to pay the Hospitals for Medi-Cal services in accordance with federally approved State plan methodologies and in the ordinary course, and the Hospital Debtors agree to continue to provide care to Med-Cal beneficiaries in accordance with the Provider Agreements, applicable law, and regulations.

**1.8** All avoidance actions and other causes of action arising under Chapter 5 of the Bankruptcy Code, including, but not limited to, claims or causes of action pursuant to sections 547 and 548 of the Bankruptcy Code, that could be asserted by the Hospital Debtors are waived by the Debtors, their bankruptcy estates, any and all successors, chapter 7 trustees, and any post-confirmation creditor litigation trust.

**1.9** The Department shall continue to recoup (against amounts due to the Hospital Debtors and not against amounts due to the County) any remaining prepetition amounts, including but not limited to the HQAF Fees, owed to the Department by the Debtors arising from or related to the Provider Agreements or other arrangements entered into prior to the Petition Date.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

565212.1

**1.10**   Notwithstanding Section 1.7 above, if the Debtors or the Department are allegedly in breach of this Agreement, the respective party shall have the right to terminate this Agreement upon written notice to the alleged breaching party stating the breach and the alleged breaching party shall have the right to cure the alleged breach.

**1.11**   The Bankruptcy Court has jurisdiction over any dispute arising from or relating to this Agreement..

**1.12**   Pursuant to this Agreement, the Department hereby withdraws any and all of its objections to the Sale and hereby acknowledges that it has no objections to the assignment of the Provider Agreements to the County.

**1.13**   Nothing contained in this Agreement is intended or shall be deemed to release, waive or otherwise impair any claims of the Department or its successors or assigns, against: (1) any insurance carrier of the Debtors; and (2) any person or entity released by any of the Parties to the extent they are acting in any capacity other than in connection to their business dealings with the Debtors.  In addition, and for avoidance of doubt, nothing in this Agreement releases any person or entity not identified or described in this Agreement as being a person or entity receiving a release.

**2.**   **Definitions**

**2.1**   "Hospital Quality Assurance Fee" or "HQAF" program shall mean the program established by article 5.230 of chapter 7 of part 3 of division 9 of the Welfare and Institutions Code.

**2.2**   "Medi-Cal managed care supplemental payments" shall mean the payments made by Medi-Cal managed care plans pursuant to their contracts with the Department and in accordance with Welfare and Institutions Code section 14169.57.

**2.3**   "Hospital directed payments" means the Medi-Cal managed care supplemental payments approved by CMS pursuant to  title 42, Code of Federal Regulations, part section 438.6(c).

565212.1

**2.4** "Hospital pass-through payments" means the Medi-Cal managed care supplemental payments authorized pursuant to Code of Federal Regulations, title 42, section 438.6(d).

3. **Miscellaneous Provisions**

**3.1** The Parties executing this Agreement do so without admitting any fault or liability whatsoever. No term or condition of this Agreement is intended to be or shall be deemed or construed as an expression of fault or liability.

**3.2** This Agreement contains the entirety of the agreement reached among the Parties pertaining to the subject matter set forth herein. This Agreement supersedes all prior and contemporaneous oral and written agreements and discussions between or among the Parties except as set forth herein. This Agreement, or any provision hereof, may not be waived, amended or revoked, or the ongoing obligations of any Party terminated, except by a further writing signed by all such Parties and the County.

**3.3** This Agreement is the product of negotiation by and among the Parties, executed voluntarily and without duress or undue influence on the part of or on behalf of any Party hereto. Each of the Parties acknowledges that it has had the opportunity to be represented by its own independent counsel in connection with this Agreement and the transactions contemplated by or referred to in this Agreement. Hence, in any construction to be made of this thereof, the same shall not be construed against any Party.

**3.4** This Agreement may be executed in any number of counterparts, a complete set of which shall constitute a duly executed original, and fax or electronic signatures shall be treated as originals for all purposes irrespective of any jurisdiction's best evidence rule.

**3.5** The failure or delay on the part of any Party to enforce or exercise at any time any of the provisions, rights or remedies in this Agreement shall in no way be construed to be a waiver thereof, nor in any way to affect the validity of this Agreement or any part hereof, or the right of such Party to thereafter enforce each and every such provision, right or remedy. No

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach.

**3.6** Each Party shall pay its own attorneys' fees, costs and expenses in connection with the preparation, negotiation and execution of this Agreement.  However, in the event of any beach or default of any of the terms and provisions of this Agreement or any disputes regarding interpretation or enforcement of this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and costs, in addition to any other award.

**3.7** The Parties acknowledge and agree that the County is an intended third party beneficiary to Sections 1.2, 1.6, 1.9, 1.11, 1.13 and 3.2 of this Agreement (the "County-Related Sections").  In the event this Agreement is terminated for any reason, the County-Related Sections and the terms of this Section 3.7 shall nevertheless survive the termination of this Agreement for all purposes with respect to the County's rights under this Agreement.

**3.8** This Agreement shall be construed, performed, and enforced in accordance with, and governed by, the laws of the State of California (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law.

**3.9** Subject to obtaining approval from the Bankruptcy Court as set forth in Section 3.11, each Party hereto hereby represents and warrants to the other Parties that the undersigned representative of such Party has authority to execute this Agreement and to bind such Party to the terms hereof.

**3.10** Each of the Parties hereto acknowledges that no other Party, nor any agent nor any attorney of any other Party has made any promise, representation or warranty whatsoever, express or implied, not contained herein or therein concerning the subject matter hereof to induce said Party to execute or authorize the execution of this Agreement, and each of the Parties hereto further acknowledges that said Party has not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein or therein.

565212.1

3.11   The Parties hereby agree to the following process regarding approval and consummation of this Agreement:

    3.11.1   The Debtors shall submit this Agreement to the Bankruptcy Court for final approval in accordance with Federal Rule of Bankruptcy Procedure 9019 within five (5) days of the date of execution of the Agreement by all of the Parties (the "Execution Date").

    3.11.2   The Department shall support entry of an order approving the Agreement in good faith, including, among other things, by not objecting to or otherwise commencing any proceeding or taking any other action opposing the terms or implementation of this Agreement or any order approving this Agreement, except as may be consistent with the terms hereof.

    3.11.3   If the Bankruptcy Court declines to approve this Agreement despite the best efforts of the Parties to obtain such approval, then (1) this Agreement and its representations and statements shall be null and void and of no force or effect, and (2) the Parties' respective rights shall be fully reserved and the Parties shall be restored to their respective positions, *status quo ante*, as existing immediately prior to the Execution Date without prejudice to the passage of time.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates specified below.

Date: February 26, 2019

Verity Health System of California, Inc.

By: _____
Name: Rich Adcock
Title: CEO, VHS

Date: February 24, 2019

O'Connor Hospital

By: _____
Name: Rich Adcock
Title: CEO, VHS

565212.1

Date: February 26, 2019

Saint Louise Regional Hospital

By: /s/ Rich A Deark

Name: Rich A Deark

Title: CEO, VHS

Date: February ___, 2019

California Department of Health Care Services

By: SIGNATURE PAGE TO BE SUBMITTED

Name:

Title:

//

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 12 -

565212.1

APPROVED AS TO FORM AND CONTENT:

DENTONS US LLP
SAMUEL R. MAIZEL
JOHN A. MOE, II
TANIA MOYRON

By: _____

Counsel for the Debtors and Debtors In Possession


XAVIER BECERRA
Attorney General of California
JENNIFER M. KIM
Supervising Deputy Attorney General

By: _____

KENNETH K. WANG
Deputy Attorney General
*Attorneys for California Department of Health Care Services*


Dated: February 26, 2019

DENTONS US LLP

By: */s/ Samuel R. Maizel*
    SAMUEL R. MAIZEL

Attorneys for Debtors and Debtors In Possession

110376002\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 13 -

565212.1