SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Attorneys for the Chapter 11 Debtors and
Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>Debtors and Debtors In Possession. | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly Administered With:<br>CASE NO.: 2:18-bk-20162-ER<br>CASE NO.: 2:18-bk-20163-ER<br>CASE NO.: 2:18-bk-20164-ER<br>CASE NO.: 2:18-bk-20165-ER<br>CASE NO.: 2:18-bk-20167-ER<br>CASE NO.: 2:18-bk-20168-ER<br>CASE NO.: 2:18-bk-20169-ER<br>CASE NO.: 2:18-bk-20171-ER<br>CASE NO.: 2:18-bk-20172-ER<br>CASE NO.: 2:18-bk-20173-ER<br>CASE NO.: 2:18-bk-20175-ER<br>CASE NO.: 2:18-bk-20176-ER<br>CASE NO.: 2:18-bk-20178-ER<br>CASE NO.: 2:18-bk-20179-ER<br>CASE NO.: 2:18-bk-20180-ER<br>CASE NO.: 2:18-bk-20171-ER |
| ☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose ASC, LLC<br><br>Debtors and Debtors In Possession. | Chapter 11 Cases<br><br>Hon. Judge Ernest M. Robles<br><br>**DEBTORS' NOTICE AND MOTION SEEKING *NUNC PRO TUNC* (I) APPROVAL OF SETTLEMENT AMONG VERITY HEALTH SYSTEM OF CALIFORNIA, INC., SANTA CLARA COUNTY AND SURGICAL INFORMATION SYSTEMS, LLC, AND (II) AUTHORIZATION OF ASSUMPTION AND ASSIGNMENT OF NEW AGREEMENT TO SANTA CLARA COUNTY AND ASSUMPTION OF REMAINING PORTION BY THE DEBTORS; DECLARATION OF RICHARD G. ADCOCK IN SUPPORT THEREOF**<br><br>**[RE-FILED ONLY TO FILE UNDER THE CORRECT EVENT CODE]**<br><br>HEARING:<br>Date:      April 3, 2019<br>Time:      10:00 a.m.<br>Place:     Courtroom 1568<br>              255 E. Temple Street, Los Angeles, CA 90012 |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**PLEASE TAKE NOTICE** that, at **10:00 am (prevailing Pacific Time), on April 3, 2019**, before the Honorable Ernest M. Robles, in Courtroom 1568 of the United States Bankruptcy Court for the Central District of California, Roybal Federal Building, 255 E. Temple Street, Los Angeles, CA 90012, Verity Health System Of California, Inc. ("VHS") and the above-referenced affiliated debtors and debtors in possession in the above captioned chapter 11 bankruptcy cases (collectively, the "Debtors"), shall move for the entry of an order approving that certain settlement among the VHS, the County of Santa Clara, a political subdivision of the State of California ("SCC" or "Purchaser"), and Surgical Information Systems, LLC, a California limited liability company ("SIS"), in the form of the *Agreement Severing SIS Contract with Verity and Assuming and Assigning a Portion of such Contract to Santa Clara under Restated Terms and Conditions* (the "Settlement Agreement"), dated February 28, 2019 (the "Effective Date"), attached to the annexed Memorandum as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors file this Motion, pursuant to 11 U.S.C. §§ 105 and 365 and Rule 9019 of the Federal Rules of Bankruptcy Procedure, seeking an order (i) approving the Settlement Agreement, and (ii) authorizing the assumption and assignment to SCC of that portion of that certain Non-Exclusive End-User License Agreement, dated February 11, 2003, (the "SIS Agreement") relating to SIS services at Debtors O'Connor Hospital ("OCH") and Saint Louise Regional Hospital ("SLRH," and that new Master Software License and Services Agreement between SCC and SIS, the "New Agreement") with the balance of the SIS Agreement remaining with the Debtors. The Debtors seek such relief *nunc pro tunc* to the Effective Date.

The terms of this Settlement Agreement result from a series of meetings, discussions and evaluations among SIS, SCC and the Debtors and professional advisors. The Settlement Agreement and terms were assented to by the Official Committee of Unsecured Creditors ("UCC") and Ally Bank. The Settlement Agreement provides that the Debtors shall pay SIS $877,590.13 ($350,000 of which the Debtors shall receive from SCC) prior to closing as satisfaction of SIS' cure claim to cover all fees, support and maintenance through December 31, 2019. The Debtors believe that the transactions contemplated by the Settlement Agreement are in the ordinary course of their business and/or are authorized by previous orders of this Court, including but not limited to the order

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110475870\V-3

approving the Debtors' sale of OCH and SLRH to SCC; but in abundance of notice and caution, the Debtors move for express approval of the Settlement Agreement and authorization of the actions contemplated thereby, including assumption and assignment of the New Agreement.  The Debtors believe that this settlement is fair and reasonable and, therefore, is in the best interests of creditors.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion and Motion and the attached Memorandum of Points and Authorities, the *Declaration of Richard G. Adcock in Support of First-Day Motions*, filed August 31, 2018 (the "First-Day Declaration") [Docket No. 8] and the attached Declaration of Richard G. Adcock (the "Adcock Declaration").

**PLEASE TAKE FURTHER NOTICE** that any party opposing or responding to the Motion must file a response (the "Response") with the Bankruptcy Court and serve a copy of it upon the moving party and the United States Trustee not later than 14 days before the date designated for the hearing. A Response must be a complete written statement of all reasons in opposition to the Motion or in support, declarations and copies of all evidence on which the responding party intends to rely, and any responding memorandum of points and authorities.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the failure to file and serve a timely objection to the Motion may be deemed by the Court to be consent to the relief requested herein.

Dated:  March 13, 2019

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON


By____/s/ Tania M. Moyron_____
       Tania M. Moyron

Attorneys for the Chapter 11 Debtors and
Debtors In Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110475870\V-3

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................... 1

II. JURISDICTION AND VENUE ................................................................................. 1

III. BACKGROUND....................................................................................................... 2

    A.   General Background................................................................................. 2

    B.   The SCC Sale .......................................................................................... 2

    C.   SIS Agreement ........................................................................................ 4

    D.   Summary of Settlement Agreement ........................................................ 4

IV. ARGUMENT ........................................................................................................... 6

    A.   THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT UNDER RULE 9019................................................. 6

    B.   THE COURT SHOULD APPROVE THE ASSUMPTION AND ASSIGNMENT OF THE NEW AGREEMENT TO SCC AND ASSUMPTION OF MODIFIED AGREEMENT ........................................ 8

V. CONCLUSION .......................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AEG Acquisition Corp.*,
  127 B.R. 34 (Bankr. C.D. Cal. 1991), *aff'd*, 161 B.R. 50 (B.A.P. 9th Cir. 1993) .......................8

*Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*,
  476 F.3d 665 (9th Cir. 2007)..........................................................................................8

*In re Bowman*,
  194 B.R. 227 (Bankr. D. Ariz. 1995) ............................................................................8

*In re Chi-Feng Huang*,
  23 B.R. 798 (B.A.P. 9th Cir. 1982) ..............................................................................8

*Consumer Advocacy Group, Inc. v. Kintetsu Enters. of Amer.*,
  141 Cal. App. 4th 46 (Cal. 2006) ..................................................................................6

*In re Embers 86th Street. Inc.*,
  184 B.R. 892 (Bankr. S.D.N.Y. 1995) ..........................................................................9

*In re Energy Cooperative, Inc.*,
  886 F.2d 921 (7th Cir. 1989).........................................................................................6

*In re Hertz*,
  536 B.R. 434 (Bankr. C.D. Cal. 2015) ..........................................................................8

*Martin v. Kane (In re A & C Props.)*,
  784 F.2d 1377 (9th Cir. 1986), *cert. denied sub nom, Martin v. Robinson*, 479
  U.S. 854 (1986) ..............................................................................................................6

*In re Mickey Thompson Entm't Grp., Inc.*,
  292 B.R. 415 (B.A.P. 9th Cir. 2003) .............................................................................7

*United States v. McInnes*,
  556 F.2d 436 (9th Cir. 1977).........................................................................................6

*In re Walsh Constr., Inc.*,
  669 F.2d 1325 (9th Cir. 1992).......................................................................................6

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,
  839 F.2d 610 (9th Cir. 1988).....................................................................................6, 7

*In re Zarate*,
  2015 WL 8482887 (B.A.P. 9th Cir. Dec. 9, 2015).......................................................7

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**Statutes**

11 United States Code

§ 105................................................................................................................1
§ 365...........................................................................................................1, 8
§ 1107..............................................................................................................2
§ 1108..............................................................................................................2

28 United States Code

§ 157................................................................................................................1
§ 1334..............................................................................................................1
§ 1408..............................................................................................................1
§ 1409..............................................................................................................1

**Rules and Regulations**

Federal Rules of Bankruptcy Procedure

Rule 2002........................................................................................................1
Rule 9019...............................................................................................1, 6, 7, 9

110475870\V-3

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

The Debtors, by and through their undersigned counsel, hereby file this Memorandum of Points and Authorities in support of their motion (the "Motion"), pursuant to §§ 105 and 365[1] and Rule 9019, for the entry of an order (i) approving the *Agreement Severing SIS Contract with Verity and Assuming and Assigning a Portion of such Contract to Santa Clara under Restated Terms and Conditions* (the "Settlement Agreement"), dated February 28, 2019 (the "Effective Date"), between Verity Health System of California, Inc. ("VHS"), Surgical Information Systems, LLC, a California limited liability company ("SIS") and the County of Santa Clara, a political subdivision of the State of California ("SCC") (collectively, the "Parties"), a copy of which is attached hereto as **Exhibit 1**, and (ii) authorizing the assumption and assignment to SCC of that portion of that certain Non-Exclusive End-User License Agreement, dated February 11, 2003, (the "SIS Agreement") relating to services at Debtors O'Connor Hospital ("OCH") and Saint Louise Regional Hospital ("SLRH," and that new Master Software License and Services Agreement between SCC and SIS, the "New Agreement"), with the remaining portion assumed and retained by the Debtors.  For the reasons set forth below, the Debtors respectfully request that the Court grant the Motion *nunc pro tunc* to the Effective Date.

**II.**

**JURISDICTION AND VENUE**

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are §§ 105 and 365 of the Bankruptcy Code and Rules 2002 and 9019.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  All "LBR" references are to the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California.

110475870\V-3

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## III.

## BACKGROUND

### A.    General Background

1.    On August 31, 2018 ("Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the commencement of their cases, the Debtors have been operating their businesses as debtors in possession pursuant to §§ 1107 and 1108.

2.    Debtor VHS, a California nonprofit public benefit corporation, is the sole corporate member of the following five Debtor California nonprofit public benefit corporations that operate six acute care hospitals, OCH, SLRH, St. Francis Medical Center, St. Vincent Medical Center, Seton Medical Center, and Seton Medical Center Coastside (collectively, the "Hospitals") and other facilities in the state of California. Seton Medical Center and Seton Medical Center Coastside operate under one consolidated acute care license.  Declaration of Richard Adcock in Support of Emergency First Day Motions, at 4, ¶ 11.  [Docket No. 8.]

3.    VHS, the Hospitals, and their affiliated entities (collectively, "Verity Health System") operate as a nonprofit health care system, with approximately 1,680 inpatient beds, six active emergency rooms, a trauma center, eleven medical office buildings, and a host of medical specialties, including tertiary and quaternary care.  First-Day Decl., at 4, ¶ 12.

4.    Each of the Debtors is exempt from federal income taxation as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986 (the "IRC"), except for Verity Holdings, LLC, DePaul Ventures, LLC, and DePaul Ventures - San Jose Dialysis, LLC.  First-Day Decl., at 6, ¶ 21.

5.    On September 17, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases.  [Docket No. 197.]

### B.    The SCC Sale

6.    On October 1, 2018, the Debtors filed the Debtors' *Notice of Motion and Motion for the Entry of (I) an Order (1) Approving Form of Asset Purchase Agreement for Stalking Horse Bidder and For Prospective Overbidders to Use, (2) Approving Auction Sale Format, Bidding Procedures and Stalking Horse Bid Protections, (3) Approving Form of Notice to be Provided to*

2

1   *Interested Parties, (4) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest*

2   *Bidder and (5) Approving Procedures Related to the Assumption of Certain Executory Contracts*

3   *and Unexpired Leases; and (II) an Order (A) Authorizing the Sale of Property Free and Clear of*

4   *All Claims, Liens and Encumbrances* (the "<u>Sale and Bidding Procedures Motion</u>") [Docket No.

5   365].

6         7.    The Court held a hearing on the Sale and Bidding Procedures Motion and thereafter

7   entered an order on October 31, 2018, approving the Sale and Bidding Procedures Motion (the

8   "<u>Bidding Procedures Order</u>") [Docket No. 724].  SCC served as the Stalking Horse Bidder under

9   the terms of the Bidding Procedures Order. The Bidding Procedures Order also approved the Asset

10   Purchase Agreement (the "<u>APA</u>"), dated October 1, 2018, between VHS, Verity Holdings, LLC,

11   OCH and SLRH, on the one hand; and SCC, on the other hand, to be used by SCC as the stalking

12   horse purchaser of the Assets (as defined in the Sale and Bidding Procedures Motion).

13         8.    The Bidding Procedures Order established a deadline of November 30, 2018, at 4:00

14   p.m. (PST), for bidders to submit partial bids for the Assets and a deadline of December 5, 2018, at

15   4:00 p.m. (PST), to submit full bids for the Assets (each a "<u>Bid Deadline</u>").  An auction of the Assets

16   was also scheduled to take place on December 11, 2018 and December 12, 2018.

17         9.    Ultimately, no party emerged willing to place a bid for the Assets, whether partial or

18   aggregate, under the Bidding Procedures Order. *See* Memorandum in Support of Entry of Sale Order

19   [Docket No. 1041], ¶ 10.  Also, no party requested an extension of time to bid past the Bid Deadline.

20   *Id*.  Accordingly, under the terms of the APA and the Bidding Procedures Order, no auction was

21   held and the Debtors declared SCC as the prevailing purchaser of the Assets.  *Id*.

22        10.    On December 19, 2018, the Court held a hearing on the Sale and Bidding Procedures

23   Motion and, on December 27, 2018, the Court entered the SCC Sale Order.  [Docket No. 1153].

24        11.    The SCC Sale Order authorized the Debtors to assume and assign to SCC all of the

25   Debtors' executory contract and unexpired leases that SCC designates.  SCC Sale Order, ¶ 17.  On

26   December 19, 2018, the Debtors filed the *Amended Notice of Contracts Designated by Santa Clara*

27   *County for Assumption and Assignment* [Docket No. 1110], listing all contracts designated by SCC

28   for assumption and assignment (the "<u>Designated Contracts</u>").  Thereafter, the Debtors filed a

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

3

110475870\V-3

1  *Supplement to Amended Notice of Contracts Designated by Santa Clara County for Assumption and*

2  *Assignment* [Docket No. 1394], and a *Second Supplement to Amended Notice of Contracts*

3  *Designated By Santa Clara County for Assumption and Assignment* [Docket No. 1421], each

4  amending the list of Designated Contracts.

5        12.    The sale closed on February 28, 2019 (the "Closing Date").

6        **C.**    **SIS Agreement**

7        13.    Prior to the Petition Date, SIS entered into the SIS Agreement with Daughters of

8  Charity Health Systems ("Daughters").  Daughters subsequently assigned its rights under the SIS

9  Agreement to VHS.  Under the SIS Agreement and various authorized sub-licenses, SIS has been

10  licensing software (including surgery scheduling and nursing documentation software) and

11  providing related support and maintenance services to VHS at the remaining Hospitals. The

12  foregoing is critical to the operation of the Hospitals.

13        14.    The SIS Agreement was not a Designated Contract.  SCC had determined, however,

14  that it has a continuing need to utilize the SIS software and receive related support and maintenance

15  from SIS subsequent to the Closing Date.  However, SIS asserted that absent its consent the SIS

16  Agreement is non-severable and that the SIS Agreement does not permit VHS to host the SIS

17  software for any hospitals that it no longer owns.

18        **D.**    **Summary of Settlement Agreement**

19        15.    The Settlement Agreement effectuates a bifurcation and assumption of the SIS

20  Agreement, with a portion assigned to SCC as it relates to OCC and SLRH, and resolves all disputes

21  related to the same.  Specifically, SIS consents to the bifurcation of the SIS Agreement, with a

22  portion of it assigned to SIS as the New Agreement (*i.e.,* software licenses used by OCH and SLRH

23  and the maintenance and services related to those licenses) with the balance remaining with the

24  Debtors.

25        16.    For the avoidance of doubt, following assumption and assignment of the New

26  Agreement, the Debtors continue to retain any and all rights they have under the SIS Agreement as

27  it relates to the remaining Hospitals serviced thereunder (the "Modified Agreement"), and also gain

28  the express right to assign the Modified Agreement to any other party without additional

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

consideration or fees to SIS related to 2019.  If the term of the Modified Agreement is extended beyond December 31, 2019, the Debtors or any assignee of the Debtors will owe additional fees to SIS under the Modified Agreement (although SIS agrees to exercise best efforts to obtain third party consents).

17.    In consideration of SIS's consent to the assumption and assignment of the New Agreement, the Debtors wired to SIS the amount of $877,590.13 (the "Contract Payment") as cure claim and adequate assurance.  The Parties expressly recognize that $158,800 of the Contract Payment is for third party license fees.  The Parties also acknowledge that SCC is contributing $350,000 to the Debtors to be applied to the Contract Payment and that no further amount shall be due and owing under the New Agreement for 2019.  For avoidance of doubt, if the term of the New Agreement is extended beyond December 31, 2019, SCC will owe additional fees to SIS under the New Agreement.

18.    The Parties agree that the Contract Payment covers all fees, and support and maintenance under the New Agreement and the Modified Agreement through December 31, 2019, and shall be fully earned by SIS.

19.    The Debtors believe that the Settlement Agreement is fair and equitable and in the best interests of the estate.  Adcock Declaration ¶ 10.  Furthermore, contemporaneous with the execution of the Settlement Agreement, the Debtors provided SIS with written confirmation that an authorized representative of the DIP Lender and the UCC had reviewed the Settlement Agreement, and did not oppose the Settlement Agreement or the payment of the Contract Payment.  *See id.* ¶ 12.  The Settlement Agreement allows the Debtors to sever an agreement that has been argued to be otherwise non-severable, releasing licenses for hospitals it no longer owns while retaining licenses (and related support and maintenance) for the ones it does.  *Id.* ¶ 10. It further makes clear that the Debtors now have the unarguable ability to assign the licenses as relates to the remaining Hospitals if and when the time arrives.  *Id.*  The Debtors have been able to mitigate a potential cure claim with contribution from SCC.  *Id.* ¶ 11.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110475870\V-3

**IV.**

**ARGUMENT**

**A.    THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT UNDER RULE 9019**

Rule 9019 provides that the Court may approve a compromise or settlement.  Fed. R. Bankr. P. 9019(a).  In determining the fairness, reasonableness and adequacy of a proposed settlement, the Court must consider the following factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."  *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied sub nom, Martin v. Robinson*, 479 U.S. 854 (1986).  The purpose of a compromise agreement between a debtor and a creditor is to allow the parties to avoid the expenses and burdens associated with litigation.  *Id*.  This Court has great latitude in approving compromise agreements as long as it finds that the compromise is fair and equitable.  *Id*. at 1382; s*ee also Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).   Generally, the benchmark in determining the propriety of a settlement is whether the settlement is in the best interests of the estate and its creditors.  *In re Energy Cooperative, Inc*., 886 F.2d 921, 927 (7th Cir. 1989).  To be approved, the settlement need not represent the highest possible return to the estate, but merely must fall within the range of "reasonableness."  *In re Walsh Constr., Inc*., 669 F.2d 1325, 1328 (9th Cir. 1992).  In making this determination, the bankruptcy court need not conduct a trial or even a "mini-trial" on the merits.  *Id*.

The law strongly encourages compromise.  *Consumer Advocacy Group, Inc. v. Kintetsu Enters. of Amer*., 141 Cal. App. 4th 46, 62 (Cal. 2006); *United States v. McInnes*, 556 F.2d 436, 440 (9th Cir. 1977) ("We are committed to the rule that the law favors and encourages compromise settlements.").  Additionally, compromises are favored in bankruptcy so as to minimize litigation and expedite a bankruptcy estate's administration.  *See In re A & C Props*., 784 F.2d at 1381.  Bankruptcy courts therefore have "great latitude" to approve a debtor's compromises and

6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  settlements.  *Woodson*, 839 F.2d at 620; In *re Mickey Thompson Entm't Grp., Inc*., 292 B.R. 415

2  (B.A.P. 9th Cir. 2003).  An approved settlement will "be in the best interests of the estate" if it is

3  "reasonable, given the particular circumstances of the case."  *Mickey Thompson Entm't Grp*., 292

4  B.R. at 420.  Finally, "court[s] generally give[] deference to a [debtor's] business judgment in

5  deciding whether to settle a matter," although the debtor "has the burden of persuading the

6  bankruptcy court that the compromise is fair and equitable and should be approved."  *Id*.; *see also*

7  *In re Zarate*, 2015 WL 8482887, at *8 (B.A.P. 9th Cir. Dec. 9, 2015) ("[T]he [debtor] must be

8  permitted to use his business acumen and judgment in the best interest of the estate.").

9        Here, the Debtors exercised their reasonable business judgment in agreeing to the Settlement

10  Agreement, which is in the best interests of the estates.[2]  To begin with, the Settlement Agreement

11  ensured that the sale to Santa Clara County closed without disruption, which was critical to the

12  success of the Debtors' cases.  Moreover, the consummation of the Settlement Agreement eliminates

13  disputes arising under the SIS Agreement regarding whether it is severable.  Adcock Declaration ¶

14  10. But for the Settlement Agreement, the Debtors and SIS may have engaged in lengthy litigation

15  regarding that issue of severability and how the Debtors would be able to retain certain necessary

16  licenses for the remaining Debtor Hospitals, while releasing other licenses they would no longer

17  need on account of the sale of OCH and SLRH to SCC.  *Id*.  The Settlement further clears this

18  dispute for any future desired assignment of a portion of the Modified Agreement in relation to any

19  future transaction involving other serviced Hospitals.  *Id.*

20        In addition, the Debtors have been able to mitigate a potential cure claim they may have

21  faced if forced to reject the SIS Agreement, as well as future expense of attempting to obtain similar

22  licenses for the remaining serviced Hospitals.  *Id.* ¶ 11.  And they were able to do so with monetary

23  contribution from SCC and with uninterrupted licensing of any of the serviced Hospitals.  *Id.*  The

24  Agreement thus meets the requirements of  Rule 9019 and the applicable precedents in the Ninth

25  Circuit.

26

27  _____

[2] The Debtors believe that the transactions contemplated by the Settlement Agreement are in the ordinary course of their

28  business and/or are authorized by previous orders of this Court, including but not limited to the Bidding Procedures
Order; but in abundance of notice and caution, the Debtors move for express approval of the Settlement Agreement and
authorization of the actions contemplated thereby, including assumption and assignment of the New Agreement.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110475870\V-3

**B.**    **THE COURT SHOULD APPROVE THE ASSUMPTION AND ASSIGNMENT OF THE NEW AGREEMENT TO SCC AND ASSUMPTION OF MODIFIED AGREEMENT**

Barring exceptions not relevant here, § 365(a) authorizes a debtor in possession, "subject to the Court's approval, . . . [to] assume or reject any executory contract or unexpired lease of the debtor." A debtor in possession may assume or reject executory contracts and unexpired leases for the benefit of the estate. *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 671 (9th Cir. 2007); *In re Chi-Feng Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982) ("The primary issue is whether rejection would benefit the general unsecured creditors."). In reviewing a debtor in possession's decision to assume or reject an executory contract or unexpired lease, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. *See In re Hertz*, 536 B.R. 434, 442 (Bankr. C.D. Cal. 2015); *Pomona Valley Med. Grp.*, 476 F.3d at 670. The business judgment standard requires that the Court follow the business judgment of the debtor unless that judgment is the product of "bad faith, whim, or caprice." *Pomona Valley Med. Grp.*, 476 F.3d at 670 (quoting *Lubrizol Enters. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986)).

Pursuant to § 365(f)(2), a debtor may assign its executory contracts and unexpired leases, provided the debtor first assumes such executory contracts and unexpired leases in accordance with § 365(b)(1), and provides adequate assurance of future performance by the assignee.  Pursuant to § 365(b)(1), assumption of executory contracts and unexpired leases requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease.  11 U.S.C. § 365(b)(1); *see also In re Bowman*, 194 B.R. 227, 230 (Bankr. D. Ariz. 1995); *In re AEG Acquisition Corp.*, 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), *aff'd*, 161 B.R. 50 (B.A.P. 9th Cir. 1993).  Pursuant to § 365(f)(1), a debtor may assign an executory contract or unexpired lease pursuant to § 365(f)(2) notwithstanding any provision in such executory contract or unexpired lease that prohibits, restricts or conditions the assignment of such executory contract or unexpired lease.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

8

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    The assumption and assignment of executory contracts and unexpired leases furthers the

2    goals of chapter 11 of promoting reorganization by balancing the debtor's interest in maximizing

3    the value of its estate against the contracting party's interest in receiving the benefit of its bargain

4    and being protected against default by the debtor after assumption has occurred.  *In re Embers 86th*

5    *Street. Inc*., 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995).

6    Here, the Debtors seek the Court's authority, pursuant to the terms of the Settlement

7    Agreement *nunc pro tunc* to the Effective Date, to assume and assign the New Agreement to SCC

8    and assume and retain the Modified Agreement.  The Contract Payment covers all cure costs and

9    adequate assurance, and has already been paid to SIS.[3]  Adcock Declaration ¶ 8, 9.

10    The assignment of the New Agreement to SCC is necessary to effectuate the sale of OCH

11    and SLRH to SCC so that SCC can continue to operate the hospitals.  Adcock Declaration ¶ 5.

12    Thus, the Debtors have exercised their reasonable business judgment in assuming and assigning the

13    New Agreement to SCC.  *Id*. ¶ 10.

## V.

## CONCLUSION

16    For all the reasons set forth herein, the Debtors request the Court enter an order (i) approving

17    the Settlement Agreement pursuant to Rule 9019 and (ii) approving the assumption and assignment

18    of the New Agreement to SCC.

19    Dated:  March 13, 2019                    DENTONS US LLP
                                               SAMUEL R. MAIZEL
20                                             TANIA M. MOYRON

21

22                                             By____/s/ Tania M. Moyron_____
                                                    Tania M. Moyron
23
                                               Attorneys for the Chapter 11 Debtors and
24                                             Debtors In Possession

25

26

27

---

28    [3] The Parties understand and acknowledge that the Contract Payment has been made subject to approval of the Settlement Agreement and authorization of the assumption and assignment of the New Agreement by this Court, and is subject to disgorgement.

110475870\V-3

## DECLARATION OF RICHARD G. ADCOCK

I, Richard G. Adcock, declare, that if called as a witness, I would and could competently testify thereto, of my own personal knowledge, as follows:

1.    I am the Chief Executive Officer of Verity Health System of California, Inc. ("VHS"). I became the Debtors' Chief Executive Officer effective January 2018. Prior thereto, I served as VHS's Chief Operating Officer since August 2017.

2.    Except as otherwise indicated herein, this Declaration is based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or the Debtors' legal and financial advisors, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and the healthcare industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3.    This Declaration is in support of the *Debtors' Notice And Motion Seeking Nunc Pro Tunc (I) Approval of Settlement Among Verity Health System Of California, Inc., Santa Clara County And Surgical Information Systems, LLC, And (II) Authorization of Assumption And Assignment Of New Agreement To Santa Clara County And Assumption of Remaining Portion By The Debtors* ("Motion") and for all other purposes permitted by law.

4.    Since prior to the Petition Date, Surgical Information Systems, LLC, a California limited liability company ("SIS"), has been licensing software (including surgery scheduling and nursing documentation software) and providing related support and maintenance services to VHS at O'Connor Hospital ("OCH"), Saint Louise Regional Hospital ("SLRH"), St. Francis Medical Center, St. Vincent Medical Center and Seton Medical Center pursuant to the Non-Exclusive End-User License Agreement, dated February 11, 2003, (the "SIS Agreement") and various authorized sub-licenses.  The SIS Agreement was originally entered into between SIS and Daughters of Charity Health Systems ("Daughters"), but Daughters subsequently assigned its rights under the SIS Agreement to VHS.  Under the SIS Agreement,.

5.    The SIS Agreement was not designated among the list of contracts to be assumed and assigned in the sale of OCH and SLRH to the County of Santa Clara, a political subdivision of the State of California ("SCC").  SCC had determined, however, that it has a continuing need to

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110475870\V-3

1   utilize the SIS software and receive related support and maintenance from SIS subsequent to the

2   sale's closing date.  However, SIS asserted that absent its consent the SIS Agreement is non-

3   severable and that the SIS Agreement does not permit VHS to host the SIS software for any hospitals

4   that it no longer owns.  The assignment of the New Agreement to SCC was necessary to effectuate

5   the sale of OCH and SLRH to SCC so that SCC can continue to operate the hospitals.

6       6.    The *Agreement Severing SIS Contract with Verity and Assuming and Assigning a*

7   *Portion of such Contract to Santa Clara under Restated Terms and Conditions* (the "Settlement

8   Agreement"), dated February 28, 2019, effectuates a bifurcation and assumption of the SIS

9   Agreement, with a portion assigned to SCC as it relates to OCC and SLRH, and resolves all disputes

10  related to the same.  Specifically, SIS consents to the bifurcation of the SIS Agreement, with a

11  portion of it assigned to SIS as the "New Agreement" (*i.e.*, software licenses used by OCH and

12  SLRH and the maintenance and services related to those licenses) with the balance remaining with

13  the Debtors.

14      7.    Following assumption and assignment of the New Agreement, the Debtors continue

15  to retain any and all rights they have under the SIS Agreement as it relates to the remaining Hospitals

16  serviced thereunder (the "Modified Agreement"), and also gain the express right to assign the

17  Modified Agreement to any other party without additional consideration or fees to SIS related to

18  2019.  If the term of the Modified Agreement is extended beyond December 31, 2019, the Debtors

19  or any assignee of the Debtors will owe additional fees to SIS under the Modified Agreement

20  (although SIS agrees to exercise best efforts to obtain third party consents).

21      8.    In consideration of SIS's consent to the assumption and assignment of the New

22  Agreement, the Debtors wired to SIS the amount of $877,590.13 (the "Contract Payment") as cure

23  claim and adequate assurance.  The Parties expressly recognize that $158,800 of the Contract

24  Payment is for third party license fees.  The Parties also acknowledge that SCC is contributing

25  $350,000 to the Debtors to be applied to the Contract Payment and that no further amount shall be

26  due and owing under the New Agreement for 2019.  If the term of the New Agreement is extended

27  beyond December 31, 2019, SCC will owe additional fees to SIS under the New Agreement.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110475870\V-3

9.      The Parties agree that the Contract Payment covers all fees, and support and maintenance under the New Agreement and the Modified Agreement through December 31, 2019, and shall be fully earned by SIS.

10.     The Debtors believe that the Settlement Agreement is fair and equitable and in the best interests of the estate.  The Debtors exercised their reasonable business judgment in agreeing to the Settlement Agreement, including the assumption and assignment of the New Agreement to SIS.  The consummation of the Settlement Agreement eliminates disputes arising under the SIS Agreement regarding whether it is severable, and moreover allows the Debtors to sever that agreement.  But for the Settlement Agreement, the Debtors and SIS may have engaged in lengthy litigation regarding that issue of severability and how the Debtors would be able to retain certain necessary licenses for the remaining Debtor Hospitals while releasing other licenses they would no longer need on account of the sale of OCH and SLRH to SCC.  Now the Debtors have been able to release licenses for hospitals it no longer owns while retaining licenses (and related support and maintenance) for the ones it does.  The Settlement Agreement further clears this dispute for any future desired assignment of a portion of the Modified Agreement in relation to any future transaction involving other serviced Hospitals, as the Settlement Agreement makes clear that the Debtors now have the unarguable ability to assign the licenses as relates to the remaining Hospitals if and when the time arrives.

11.     In addition, the Debtors have been able to mitigate a potential cure claim they may have faced if forced to reject the SIS Agreement, as well as future expense of attempting to obtain similar licenses for the remaining serviced Hospitals.  And they were able to do so with monetary contribution from SCC and with uninterrupted licensing of any of the serviced Hospitals.

12.     Contemporaneous with the execution of the Settlement Agreement, the Debtors shared the Settlement Agreement with the Official Committee of Unsecured Creditors and Ally Bank, neither of which opposed the Settlement Agreement or the payment of the Contract Payment.

I declare under penalty of perjury and of the laws in the United States of America, the foregoing is true and correct.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110475870\V-3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Executed this 13th day of March, 2019, at Los Angeles, California.

_____
RICHARD G. ADCOCK

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110475870\V-3

# EXHIBIT 1

**Agreement Severing SIS Contract with Verity and Assuming and Assigning a
Portion of such Contract to Santa Clara under Restated Terms and Conditions**

This agreement (the "Agreement") is entered into as of February 28, 2019 (the "Effective Date") by and among Verity Health System of California, Inc. ("Verity") and certain of its affiliates (collectively with Verity, the "Debtors"), Surgical Information Systems, LLC ("SIS"), and the County of Santa Clara, a political subdivision of the State of California (the "Purchaser"; together with the Debtors and SIS, the "Parties" and each a "Party").

WHEREAS, on August 31, 2018 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California Los Angeles Division (the "Bankruptcy Court");

WHEREAS, prior to the Petition Date, SIS entered into a Non-Exclusive End-User License Agreement dated February 11, 2003 (as amended and modified from time to time) with Daughters of Charity Heath Systems ("Daughters"), pursuant to which SIS, among other things, licensed software (including surgery scheduling and nursing documentation software) and provided related support and maintenance services to Daughters (the "SIS Agreement");

WHEREAS, Daughters subsequently assigned its rights under the SIS Agreement to Verity, and SIS is currently licensing software and providing related services to Verity at five of the Debtors' hospital facilities, including St. Vincent Medical Center, Seton Medical Center, O'Connor Hospital ("O'Connor"), St. Francis Medical Center, and Saint Louise Regional Hospital ("Saint Louise" and collectively, the "Serviced Hospitals") through the SIS Agreement and various authorized sub-licenses;

WHEREAS, on December 27, 2018, the Bankruptcy Court entered an Order approving the Debtors' sale motion [Docket No. 1153] (the "Sale Order"), which, among other things, approved the sale of substantially all of the Debtors' assets associated with the O'Connor and the Saint Louise to Purchaser, including the assumption and assignment of the executory contracts and unexpired leases identified by Purchaser on the Designated Contracts List;

WHEREAS, prior to the date of this Agreement, Purchaser had not identified the SIS Agreement on the Designated Contracts List;

WHEREAS, the proposed sale of the Debtors' assets associated with the O'Connor and Saint Louise to Purchaser is currently scheduled to close on or about February 28, 2019 (the "Closing Date");

WHEREAS, the Purchaser has determined that it has a continuing need to utilize the SIS software and receive related support and maintenance from SIS subsequent to the Closing Date;

WHEREAS, SIS asserts that absent its consent the SIS Agreement is non-severable and that the SIS Agreement does not permit Verity to host the SIS software for any hospitals that it no longer owns;

1

13222011v5

EXECUTION VERSION

WHEREAS, the Debtors believe that the transactions contemplated by this Agreement are in the ordinary course of its business and/or are authorized by previous orders of the Bankruptcy Court, including but not limited to the Sale Order;

WHEREAS, the Parties now desire to effectuate a bifurcation and assumption of the SIS Agreement, with a portion assigned to Purchaser as it relates to O'Connor and Saint Louise, and resolve any disputes related to the same; and

NOW THEREFORE, in consideration of these recitals, each of which is true and an integral part of this Agreement, and the promises and mutual covenants contained in this Agreement and other valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1.      This Agreement is subject to Bankruptcy Court approval. Upon receipt of a fully executed Agreement, the Debtors shall within five (5) business days of the Effective Date, file a motion seeking Bankruptcy Court approval of this Agreement *nunc pro tunc* to the Effective Date of this Agreement. In the event that the Bankruptcy Court does not approve the Agreement, the Parties' rights shall be restored to the extent that they existed immediately prior to the Effective Date and SIS agrees it will immediately return all payments made to pursuant to this Agreement to the Debtors.

2.      SIS consents to the assumption and assignment of a portion of the SIS Agreement related to Verity's current software licenses used by O'Connor and Saint Louise (except for third party licenses with Oracle Processors; Capsule Tech SmartLinx MDIS Single-connect Connections that cannot be assigned, provided, however, that such licenses will be provided to the Purchaser pursuant to the New Agreement (defined below)) and the maintenance and services related to those licenses to Purchaser, and the Debtors agree to assume and assign such rights to Purchaser.

3.      In connection with the assumption and assignment of the portion of the SIS Agreement related to Verity's current software licenses used by O'Connor and Saint Louise (except for third party licenses with Oracle Processors; Capsule Tech SmartLinx MDIS Single-connect Connections that cannot be assigned, provided, however, that such licenses will be provided to the Purchaser pursuant to the New Agreement (defined below)) and the maintenance and services related to those licenses to Purchaser, Purchaser shall execute a Master Software License and Services Agreement with SIS consistent with the non-economic terms and conditions agreed to by counsel for the Purchaser and counsel for SIS the week of February 25, 2019 (collectively with assigned licenses, the "New Agreement").

4.      In connection with the assumption and assignment of the New Agreement SIS shall obtain necessary third party licenses to allow Purchaser to utilize SIS's software at O'Connor and Saint Louise. Failure of SIS to obtain such licenses within ten (10) business days of the Effective Date immediately voids this Agreement, restores the Parties to their respective positions prior to entry of this Agreement, and requires SIS to immediately return all amounts paid under this Agreement to Debtors.

2

13222011v5

EXECUTION VERSION

5.      Upon the assumption and assignment of the New Agreement to Purchaser, Verity shall continue to retain any and all rights that it had under the SIS Agreement related to the Serviced Hospitals other than O'Connor and Saint Louise (the "Modified Agreement"), and shall have the right to assign the Modified Agreement as modified by the assumption and partial assignment to any other party without additional consideration or fees to SIS related to 2019. For avoidance of doubt if the term of the Modified Agreement is extended beyond December 31, 2019 the Debtors or any assignee of the Debtors will owe additional fees to SIS under the Modified Agreement. Notwithstanding the foregoing, SIS will exercise best efforts to obtain consents to such assignment from its third party suppliers as required under the reseller agreements between SIS and such suppliers; however, the Debtors or their assignee may be required to pay additional third party license fees as a condition of any assignment of the Modified Agreement to such assignee.

6.      In consideration of SIS's consent to the action taken under this Agreement, on or before the Closing Date, the Debtors shall wire SIS the amount of $877,590.13 (the "Contract Payment") in accordance with wiring instructions to be provided to the Debtors by SIS as cure claim related to the assumption and as adequate assurance. The Parties expressly recognize that $158,800.00 of the Contract Payment is for license fees that SIS will be required to pay to various third parties in connection with the transactions contemplated by this Agreement. SIS acknowledges that Purchaser is paying $350,000 to Debtors to be applied to the Contract Payment and that no further amount shall be due and owing under the New Agreement for 2019. For avoidance of doubt if the term of the New Agreement is extended beyond December 31, 2019 Purchaser will owe additional fees to SIS under the New Agreement.

7.      The Parties agree that the Contract Payment shall cover all fees, and support and maintenance under the New Agreement and the Modified Agreement through December 31, 2019, and shall be fully earned by SIS.

8.      Contemporaneous with the execution of this Agreement, the Debtors shall provide SIS with written confirmation (which confirmation may be in the form of an email) that an authorized representative of the DIP Lender and the Official Committee of Unsecured Creditors has reviewed this Agreement and that the DIP Lender and the Official Committee of Unsecured Creditors do not have any opposition to the Agreement, including the payment of the Contract Amount.

9.      The individuals signing this Agreement represent and warrant that they are authorized to sign this Agreement on behalf of the entity or entities for which they have so signed and that all necessary corporate approvals have been obtained.

3

13222011v5

EXECUTION VERSION

    IN WITNESS WHEREOF, the Parties have signed, sealed, and delivered this Agreement on the date given above.

By: _____

Verity Health System of California, Inc.

Rich Adcock, CEO

-and-

By: _____

Surgical Information Systems, LLC

-and-

County of Santa Clara

By: _____

    Name:  Jeffrey V. Smith
    Title: County Executive

Approved as to Form and Legality

By: _____

    Name:  Theresa J. Fuentes
    Title: Lead Deputy County Counsel

4

13222011v5

EXECUTION VERSION

     IN WITNESS WHEREOF, the Parties have signed, sealed, and delivered this Agreement on the date given above.

By: _____
    Verity Health System of California, Inc.

-and-

By: _____
    Surgical Information Systems, LLC

-and-

County of Santa Clara

By: _____
    Name: Jeffrey V. Smith
    Title: County Executive

Approved as to Form and Legality

By: _____
    Name: Theresa J. Fuentes
    Title: Lead Deputy County Counsel

4

13222011v5

EXECUTION VERSION

IN WITNESS WHEREOF, the Parties have signed, sealed, and delivered this Agreement on the date given above.

By: _____

Verity Health System of California, Inc.

-and-

By: _____

Surgical Information Systems, LLC

-and-

County of Santa Clara

By: _____

Name:  Jeffrey V. Smith
Title: County Executive

Approved as to Form and Legality

By: _____

Name:  Theresa J. Fuentes
Title: Lead Deputy County Counsel

4

13222011v5