SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Attorneys for the Chapter 11 Debtors and
Debtors In Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>Debtors and Debtors In Possession.<br><br>☒ Affects All Debtors<br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>Debtors and Debtors In Possession. | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER<br>Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER<br>Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER<br>Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER<br><br>Chapter 11 Cases<br><br>Hon. Judge Ernest M. Robles<br><br>**DEBTORS' NOTICE OF MOTION AND SECOND MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE EXTENDING THE EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES; DECLARATION OF SAMUEL R. MAIZEL**<br><br>Hearing:<br>Date:     May 17, 2019<br>Time:    10:00 a.m.<br>Location: Courtroom 1568<br>             255 E. Temple St., Los Angeles, CA |

- 1 -

109710332\V-7

**PLEASE TAKE NOTICE** that at the above referenced date, time and location, Verity Health System of California, Inc., a California nonprofit benefit corporation and the Debtor herein ("VHS"), and the above-referenced affiliated debtors, the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Debtors"), will move (the "Motion") the Court for entry of an order, pursuant to § 1121 of title 11 of the United States Code (the "Bankruptcy Code"),[1] extending the exclusivity periods to file a chapter 11 plan and solicit acceptances thereof by an additional 120 days from April 28, 2019 (filing a plan) and June 27, 2019 (obtaining acceptances) to August 26, 2019 (filing a plan) and October 25, 2019 (obtaining acceptances).

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities and the Declaration of Samuel R. Maizel, the Declaration of Richard Adcock In Support Of Emergency First-Day Motions [Docket No. 8] (the "First-Day Declaration"), the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion, if any. In addition, the Debtors request that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE** that any party opposing or responding to the Motion must file and serve the response ("Response"), pursuant to LBR 9013-1(f), on the moving party and the United States Trustee not later than 14 days before the date designated for the hearing. A Response must be a complete written statement of all reasons in opposition thereto or in support, declarations and copies of all evidence on which the responding party intends to rely, and any responding memorandum of points and authorities.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the failure to file and serve a timely objection to the Motion may be deemed by the Court to be consent to the relief requested herein.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

- 2 -

109710332\V-7

1 | Dated: April 26, 2019

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON

By  */s/ Samuel R. Maizel*
SAMUEL R. MAIZEL

Attorneys for the Chapter 11 Debtors and Debtors In Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109710332\V-7

- 3 -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. RELIEF REQUESTED

Verity Health System of California, Inc., a California nonprofit benefit corporation and the Debtor herein ("VHS"), and the above-referenced affiliated debtors, the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 bankruptcy cases (the "Cases") respectfully request the entry of an order (i) extending the Debtors' exclusive right to file a plan of reorganization and gain acceptances of a plan of reorganization from April 28, 2019, and June 27, 2019, to August 26, 2019 and October 25, 2019, respectively, and (ii) granting the Debtors such other and further relief as is just.

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors consent to entry of final orders and judgments by the bankruptcy judge. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicate for the relief requested herein is 11 U.S.C. § 1121(d) of the Bankruptcy Code.

## III. BACKGROUND FACTS

**A. General Background.**

1. On August 31, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[2] Since the commencement of their Cases, the Debtors have been operating their businesses as debtors in possession pursuant to §§ 1107 and 1108.

2. VHS, the hospitals, and their affiliated entities (collectively, "Verity Health System") operate as a nonprofit health care system, with approximately 1,680 inpatient beds, six active emergency rooms, a trauma center, eleven medical office buildings, and a host of medical specialties, including tertiary and quaternary care. First-Day Declaration, at 4, ¶ 12. On the

---

[2] All references "§" or "sections" herein are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. as amended.

- 4 -

109710332\V-7

Petition Date, the Debtors had approximately 850 inpatients. *Id*. at 6, ¶ 17. The scope of the services provided by the Verity Health System is exemplified by the fact that in 2017, the hospitals provided medical services to over 50,000 inpatients and approximately 480,000 outpatients. *Id*., at 4, ¶ 12.

3. Verity Medical Foundation ("VMF"), incorporated in 2011, is a medical foundation, exempt from licensure under California Health & Safety Code § 1206(l). VMF contracts with physicians and other healthcare professionals to provide high quality, compassionate, patient-centered care to individuals and families throughout California. With more than 100 primary care and specialty physicians, VMF offers medical, surgical and related healthcare services for people of all ages at community-based, multi-specialty clinics conveniently located in areas served by the Debtor hospitals. VMF holds long-term professional services agreements with the following medical groups: (a) Verity Medical Group; (b) All Care Medical Group, Inc.; (c) CFL Children's Medical Associates, Inc.; (d) Hunt Spine Institute, Inc.; (e) San Jose Medical Clinic, Inc., D/B/A San Jose Medical Group; and (f) Sports, Orthopedic and Rehabilitation Associates.

4. Verity Holdings, LLC ("Holdings") is a direct subsidiary of its sole member VHS and was created in 2016 to hold and finance VHS' interests in four medical office buildings whose tenants are primarily physicians, medical groups, healthcare providers, and certain of the VHS hospitals. Holdings' real estate portfolio includes more than 15 properties. Holdings is the borrower on approximately $66.2 Million of non-recourse financing secured by separate deeds of trust and revenue and accounts pledges, including the rents on each medical office building.

5. O'Connor Hospital Foundation, Saint Louise Regional Hospital Foundation, St. Francis of Lynwood Medical Center Foundation, St. Vincent Medical Center Foundation, and Seton Medical Center Foundation handle fundraising and grant-making programs for each of their respective Debtor hospitals.

6. Additional background facts on the Debtors, including an overview of the Debtors' business, information on the Debtors' capital structure and additional events leading up to these

chapter 11 Cases, are contained in the *Declaration of Richard G. Adcock In Support of Emergency First-Day Motions*. [Docket No. 8].

7. On September 14, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these chapter 11 Cases. [Docket No. 197].

**B.    Facts Relevant To Motion.**

8. On December 28, 2018, the Court entered an order extending the exclusive period within which the Debtors can file and solicit votes on a plan of reorganization from December 29, 2018 and February 27, 2019, to April 28, 2019 and June 27, 2019, respectively. [Docket No. 899].

9. On December 27, 2018, the Court entered an order approving the sale of all assets (excluding cash, accounts receivables and causes of action) of O'Connor Hospital and Saint Louise Regional Hospital to the County of Santa Clara, a political subdivision of the State of California. [Docket No. 1153]. This sale closed on February 28, 2019.

10. On April 17, 2019, the Court held a hearing to approve the sale of substantially all assets of St. Francis Medical Center, St. Vincent Medical Center, St. Vincent Dialysis Center and Seton Medical Center to Strategic Global Management, Inc. ("SGM"). However, because this sale involves a buyer who is subject to review of the Attorney General under state law, this proposed sale cannot close before April 28, 2019, when the exclusivity period expires.

11. Although the Debtors anticipate filing a plan after, among other things, the SGM sale closes, the sale is not expected to close before the termination of the exclusivity period on April 28, 2019, and, thus, the Debtors seek an extension of the period in which they have exclusive rights to file a plan.

### IV.    ARGUMENT

Section 1121(d) of the Bankruptcy Code grants this Court authority to extend the exclusivity periods "for cause" after notice and hearing. Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95 95th Cong., 1st Sess. 232 (1997); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep.

1   No. 595, 95th Cong., 2d Sess. 231 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6190); *In re*
2   *Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative
3   intent. . . [is] to promote maximum flexibility.")).

4       To facilitate this legislative intent, a debtor should be given a reasonable opportunity to
5   negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial
6   information concerning the ramifications of any proposed plan for disclosure to creditors. *See,*
7   *e.g.*, *McLean Indus.,* 87 B.R. at 833-34; *In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y.
8   1987).

9       "A decision whether to extend or terminate exclusivity for cause is within the discretion of
10  the bankruptcy court and is fact-specific." *In re New Meatco Provisions, LLC*, No. 2:13-BK-
11  22155-PC, 2014 WL 917335, at *3 (Bankr. C.D. Cal. Mar. 10, 2014) (quoting *In re Adelphia*
12  *Communications Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006)). Courts examine a number
13  of factors to determine whether "cause" exists to extend an exclusivity period. These factors
14  include the following:

15      a.    the size and complexity of the case;
16      b.    the existence of good faith progress;
17      c.    the necessity of sufficient time to negotiate and prepare adequate information;
18      d.    whether the debtor is paying its debts as they become due;
19      e.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;
20      f.    whether the debtor has made progress negotiating with creditors;
21      g.    the length of time a case had been pending;
22      h.    whether the debtor is seeking an extension to pressure creditors; and
23      i.    whether or not unresolved contingencies exist.

24  *See In re New Meatco Provisions, LLC,* 2014 WL 917335, at *3 (citing *In re Dow Corning Corp.*,
25  208 B.R. 661, 664-665 (Bankr. E.D. Mich. 1997). A "transcendent consideration" in deciding
26  whether to extend exclusivity is "whether adjustment of exclusivity will facilitate moving the case
27  forward toward a fair and equitable resolution." *In re Henry Mayo Newhall Mem'l Hosp.*, 282
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

B.R. 444, 453 (9th Cir. B.A.P. 2002) (affirming extension of exclusivity in chapter 11 case of non-profit hospital) (citing *In re Dow Corning Corp.*, 208 B.R. at 670).

Here, the Debtors submit that sufficient "cause" exists pursuant to § 1121(d) to extend the exclusivity periods by an additional 120 days, as follows:

Size and Complexity of the Cases. These are "mega" chapter 11 Cases; the chapter 11 filings of the Verity Health System are almost certainly the second largest hospital bankruptcy case in American history (behind only the Allegheny Health, Education and Research Foundation bankruptcy). Moreover, these Cases are very complex. Selling six non-profit hospitals raises issues of healthcare regulatory law, labor law, mergers & acquisitions law, and bankruptcy law, among other fields. Moreover, the Debtors' corporate structure is complex and there also are many issues that arise in simply maintaining the Debtors' operations pending resolution of these bankruptcy Cases. Among other issues, there are existing labor contracts which are being negotiated, numerous pending medical malpractice cases which the Court has allowed to proceed through relief from the automatic stay, and vendors which are requiring substantial negotiations to maintain relationships.

Good Faith Progress. The Debtors have made significant progress in these Cases. The Debtors have closed a sale of the O'Connor Hospital and Saint Louise Regional Hospital assets. The Debtors have also obtained Court approval of the sale of the majority of the remaining assets to SGM.

Necessity of Sufficient Time to Negotiate and Prepare Adequate Information. Upon the closing of the remaining sales, the Debtors intend to file a plan of reorganization to resolve these Cases. At that time, the Debtors will be able to adequately formulate a plan of reorganization and determine the feasibility of any plan of reorganization. It is for these reasons primarily that the Debtors request the extension of its exclusivity period.

Paying its Debts As They Become Due. The Debtors are paying their ordinary course administrative expenses as they come due. Additionally, they have paid over $15 million in critical vendor payments to prepetition creditors. Moreover, they have more authorization providing postpetition borrowing ability of $185 million, which ensures that the Debtors have

sufficient liquidity to continue paying postpetition obligations when and as they come due. Creditors are, thus, not prejudiced by the requested extension because the Debtors have obtained debtor in possession financing and have sufficient financing to maintain operations through closing of the sales of hospital assets, and in the interim period they are maintaining their assets and operations, and paying their administrative expenses in the ordinary course of business as they come due.

Prospects for Filing a Viable Plan. The Debtors have demonstrated a clear path forward for the resolution of these Cases. The Debtors are already executing that plan through the pending sales and through their efforts to procure additional sales.

Progress Negotiating With Creditors. The Debtors have been working closely and in concert with the Official Committee of Unsecured Creditors and the representatives of the prepetition secured creditors. While no formal negotiations over a plan have begun, the Debtors have laid a solid foundation for future consensual negotiations over a plan.

Length of Time the Cases Have Been Pending. These Cases have only been pending for less than eight months.

Whether the Extension is Sought to Pressure Creditors. There is no evidence to suggest that the Debtors seek this extension for anything other than good faith purposes, and to allow these Cases to move forward to a successful conclusion.

Existence of Unresolved Contingencies. Obviously, unresolved contingencies do exist, not the least of which is the necessity to successfully sell the remaining assets of the Debtors. Moreover, even these sales present contingencies not present in the usual bankruptcy, in that they will involve negotiations with the federal government over the transfer of the Medicare Provider Agreement, with the State Department of Healthcare Services over the transfer of the Medi-Cal Provider Agreement and negotiations with the California Attorney General over the transfer of these non-profit assets.

Accordingly, the standards for an extension to be granted are satisfied, and by this Motion, the Debtors seek to extend the exclusivity periods for an additional 120 days, without prejudice to the Debtors' right to request further extensions. The Debtors submit that the extension is

reasonable and appropriate under the circumstances and should be granted as being in the best interests of the Debtors' estate and creditors.

## V. CONCLUSION

For the foregoing reasons, the Debtors respectfully request that this Court enter an order (i) granting the Motion and extending the Exclusivity Period for filing a plan and for obtaining acceptances of such plan by an additional 120 days through and including August 26, 2019 (filing a plan) and October 25, 2019 (obtaining acceptances), respectively, and (ii) granting such further relief as the Court deems appropriate.

Dated: April 26, 2019

DENTONS US LLP
SAMUEL R. MAIZEL
JOHN A. MOE, II
TANIA M. MOYRON


By  */s/ Samuel R. Maizel*
      SAMUEL R. MAIZEL

Attorneys for the Chapter 11 Debtors and Debtors In Possession

### DECLARATION OF SAMUEL R. MAIZEL

I, Samuel R. Maizel, declare that if called on as a witness, I would and could testify of my own personal knowledge as follows:

1.  I am a Partner at Dentons US LLP, at 601 South Figueroa Street, 25th Floor, Los Angeles, California 90017-5704, and am one of the attorneys primarily responsible for representing Verity Health System of California, Inc., a California nonprofit benefit corporation and the Debtor herein ("VHS"), and the above-referenced affiliated debtors, the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Debtors").

2.  On August 31, 2018 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Cases are currently being jointly administered before the Bankruptcy Court [Docket No. 17]. Since the commencement of their Cases, the Debtors have been operating their businesses as debtors in possession pursuant to §§1107 and 1108.

3.  On December 27, 2018, the Court entered an *Order (A) Authorizing the Sale of Certain of the Debtors' Assets to Santa Clara County Free and Clear of Liens, Clams, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of an Unexpired Lease Related Thereto; and (C) Granting Related Relief* [Dkt. No. 1153].

4.  On October 31, 2018, the Court entered the *Order (1) Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For Prospective Overbidders To Use, (2) Approving Auction Sale Format, Bidding Procedures And Stalking Horse Bid Protections, (3) Approving Form Of Notice To Be Provided To Interested Parties, (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest Bidder And (5) Approving Procedures Related To The Assumption Of Certain Executory Contracts And Unexpired Leases; And (II) An Order (A) Authorizing The Sale Of Property Free And Clear Of All Claims, Liens And Encumbrances* [Docket No. 724], approving the sale of all assets (excluding cash, accounts receivables and causes of action) of O'Connor Hospital and Saint Louise Regional Hospital to the County of Santa Clara, a political subdivision of the State of California (the "SCC Sale").

5. The SCC Sale closed on February 28, 2019.

6. On April 17, 2019, the Court held a hearing to approve the sale of substantially all assets of St. Francis Medical Center, St. Vincent Medical Center, St. Vincent Dialysis Center and Seton Medical Center to Strategic Global Management, Inc. ("SGM"). The Court approved the sale to SGM. However, because this sale involves a buyer who is subject to review of the Attorney General under state law, this proposed sale cannot close before April 28, 2019, when the exclusivity period expires.

7. Although the Debtors anticipate filing a plan after, among other things, the SGM sale closes, the sale is not expected to close before the termination of the exclusivity period on April 28, 2019.

8. The Debtors are paying their ordinary course administrative expenses as they come due. Additionally, they have paid over $15 million in critical vendor payments to prepetition creditors. Moreover, they have more authorization providing postpetition borrowing ability of $185 million, which ensures that the Debtors have sufficient liquidity to continue paying postpetition obligations when and as they come due.

9. The Debtors have been working closely and in concert with the Official Committee of Unsecured Creditors and the representatives of the prepetition secured creditors. While no formal negotiations over a plan have begun, the Debtors have laid a solid foundation for future consensual negotiations over a plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of April, 2018, in Los Angeles, California.

_____
SAMUEL R. MAIZEL