

FILED & ENTERED

JUN 11 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: Verity Health System of California, Inc., *et al.*, <br><br> Debtors and Debtors in Possession. | Lead Case No.: 2:18-bk-20151-ER <br> Chapter: 11 |

☒ Affects All Debtors

☐ Affects Verity Health System of California, Inc.
☐ Affects O'Connor Hospital
☐ Affects Saint Louise Regional Hospital
☐ Affects St. Francis Medical Center
☐ Affects St. Vincent Medical Center
☐ Affects Seton Medical Center
☐ Affects O'Connor Hospital Foundation
☐ Affects Saint Louise Regional Hospital Foundation
☐ Affects St. Francis Medical Center of Lynwood Medical Foundation
☐ Affects St. Vincent Foundation
☐ Affects St. Vincent Dialysis Center, Inc.
☐ Affects Seton Medical Center Foundation
☐ Affects Verity Business Services
☐ Affects Verity Medical Foundation
☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose Dialysis, LLC

Debtors and Debtors in Possession.,

Jointly Administered With:
Case No. 2:18-bk-20162-ER;
Case No. 2:18-bk-20163-ER;
Case No. 2:18-bk-20164-ER;
Case No. 2:18-bk-20165-ER;
Case No. 2:18-bk-20167-ER;
Case No. 2:18-bk-20168-ER;
Case No. 2:18-bk-20169-ER;
Case No. 2:18-bk-20171-ER;
Case No. 2:18-bk-20172-ER;
Case No. 2:18-bk-20173-ER;
Case No. 2:18-bk-20175-ER;
Case No. 2:18-bk-20176-ER;
Case No. 2:18-bk-20178-ER;
Case No. 2:18-bk-20179-ER;
Case No. 2:18-bk-20180-ER;
Case No. 2:18-bk-20181-ER;

Chapter 11 Cases.

**MEMORANDUM OF DECISION DENYING MOTION OF (1) WAHEED WAHIDI FOR AUTHORIZATION TO FILE A CLASS PROOF OF CLAIM AND (2) ERNESTO MADRIGAL FOR AUTHORIZATION TO FILE A CLASS REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE**

| | |
|---|---|
| Date: | May 21, 2019 |
| Time: | 10:00 a.m. |
| Location: | Ctrm. 1568 <br> Roybal Federal Building <br> 255 East Temple Street <br> Los Angeles, CA 90012 |

At the above-captioned date and time, the Court conducted a hearing on the *Motion of (1)
Waheed Wahidi for Authorization to File a Class Proof of Claim on Behalf of Claimants
Similarly Situated, and (2) Ernesto Madrigal for Authorization to File a Class Request for
Payment of Administrative Expense on Behalf of Claimants Similarly Situated* [Doc. No. 1914]
(the "Motion").[1] The Court took the Motion under submission at the conclusion of the hearing.
For the reasons set forth below, the Motion is DENIED.[2]

# I. Facts and Summary of Pleadings

On August 31, 2018 (the "Petition Date"), Verity Health Systems of California ("VHS") and
certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under
Chapter 11 of the Bankruptcy Code. On August 31, 2018, the Court entered an order granting the
Debtors' motion for joint administration of the Debtors' Chapter 11 cases. Doc. No. 17.

Waheed Wahidi ("Wahidi") moves for an order authorizing Wahidi to file a class prepetition
unsecured proof of claim on behalf of all creditors similarly situated as Wahidi. Ernesto
Madrigal ("Madrigal") moves for an order authorizing Madrigal to file a request for payment of
administrative expenses on behalf of all creditors similarly situated as Madrigal. The Debtors
oppose the Motion.

## A. The Prepetition State Court Complaint

On June 21, 2018, Wahidi, on behalf of himself and all other employees similarly situated,
filed a complaint against certain of the Debtors in the Superior Court of the State of California
for the County of San Mateo (the "State Court"), alleging *inter alia* violations of the California
Labor Code, California Business and Professions Code, and applicable Wage Orders issued by
the California Industrial Welfare Commission. Wahidi filed a First Amended Complaint (the
"State Court Complaint") on June 26, 2018.

The State Court Complaint alleges that the Debtors, as a matter of established and uniform
company policy, violated applicable California wage and hour law by:

1) Rounding down the recorded time of hourly employees;
2) Failing to provide workers meal breaks;
3) Failing to provide workers rest breaks;
4) Failing to provide itemized waged statements that were compliant with applicable law;
   and
5) Failing to pay workers all wages due as a result of the unlawful rounding, meal, and rest
   break policies.

*See generally* State Court Complaint [Doc. No. 1914, Ex. A].

---

[1] The Court considered the following papers in adjudicating the Motion:
1) Notice of Motion and Motion of (1) Waheed Wahidi for Authorization to File a Class Proof of Claim on
   Behalf of Claimants Similarly Situated, and (2) Ernesto Madrigal for Authorization to File a Class Request
   for Payment of Administrative Expense on Behalf of Claimants Similarly Situated [Doc. No. 1914] (the
   "Motion");
2) Debtors' Memorandum in Opposition to [Motion] [Doc. No. 2260] (the "Opposition");
3) Reply in Support of [Motion] [Doc. No. 2355] (the "Reply"); and
   a) Declaration of Emily P. Rich in Support of [Reply] [Doc. No. 2290].

[2] This disposition is not appropriate for publication.

The State Court Complaint seeks recovery of unpaid wages, prejudgment interest, attorneys' fees, injunctive relief, and penalties. The proposed class consists of "[a]ll California citizens employed by [Debtors] as hourly-paid employees" during the four years preceding the filing of the State Court Complaint. *See* State Court Complaint at ¶¶ 3, 25. The State Court did not certify the proposed class prior to the Petition Date.

## B. Summary of the Motion

Movants make the following arguments and representations in support of the Motion:

The State Court Complaint includes claims filed pursuant to the Private Attorneys General Act ("PAGA"), codified at Cal. Lab. Code §§ 2699 *et seq.* In filing a claim pursuant to the PAGA, an employee is acting as an agent of the State of California, *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 394 (2014), and so is not required to satisfy class action requirements, *Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009). For these reasons, Wahidi has an absolute right to file a class claim with respect to the PAGA claims. *In re Pac. Sunwear of Cal., Inc.*, 2016 Bankr. LEXIS 2579 *7-12 (Bankr. D. Del. June 22, 2016).

The factors supporting application of Bankruptcy Rule 7023 to the claims administration process are satisfied here. First, a class proof of claim will benefit the claims administration process. The proposed class consists of approximately 7,300 claimants. Collective resolution through a class proof of claim will be more efficient. Many of the claims are relatively small, making them economically infeasible for claimants to prosecute. Second, the Debtors provided notice of the claims bar date (the "Bar Date") to employees that were employed as of the Petition Date, but did not provide notice of the Bar Date to former employees. Absent class certification, employees who did not receive notice of the Bar Date will be unable to vindicate their rights.

The elements of numerosity, commonality, typicality, and adequacy set forth in Civil Rule 23(a) are satisfied. With respect to numerosity, joinder of approximately 7,300 current and former employees would be impractical. With respect to commonality, the claims are based on established company policies applicable to all employees. Courts have recognized that employee wage and rest break claims are amenable to class treatment when the claims are based on a uniform company policy. *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596, 600-01 (C.D. Cal. 2011); *Driver v. AppleIllinois*, LLC, 265 F.R.D. 293, 303 (N.D. Ill. 2010). With respect to typicality, Wahidi has been injured in the same manner as other proposed class members, because Wahidi was an hourly employee who was subjected to the Debtors' unlawful wage and hour policies. With respect to adequacy, Wahidi has no interests that diverge from those of the class, and his claims are typical of the claims of the class.

Civil Rule 23(b)(1)(B) is satisfied. Rule 23(b)(1)(B) provides that a class action may be maintained if prosecuting separate actions by individual class members would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Courts have found that Rule 23(b)(1)(B) is satisfied in "limited fund" cases—that is, "an action in which any recovery will come from a fixed pool of assets that is or may be insufficient to satisfy all claims against the fund." 5 Moore's Federal Practice—Civil § 23.42[2][a] (2019). This proceeding qualifies as a limited fund case because the Debtors intend to liquidate all their assets.

In the alternative, Civil Rule 23(b)(3) is satisfied because common questions of law or fact predominate over any individual questions and a class action is the superior method to adjudicate

the action fairly and efficiently. A class action is superior because it is not economically feasible for most claimants to individually prosecute their claims.

The unlawful conducted alleged in the State Court Complaint continued postpetition. The resulting monetary claims are administrative expenses under § 503(b). *Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.)*, 294 B.R. 306 (BAP 9th Cir. 2003). The cause for authority to file a prepetition class proof of claim is also cause for authority to file a postpetition class request for payment of an administrative expense. Wahidi cannot serve as the class representative because he was not a postpetition employee. Madrigal, who was a postpetition employee, should be authorized to file a class request for payment of an administrative expense.

If the Court does not permit Wahidi to file a class proof of claim, the Court should (1) extend the bar date for members of the class to file individual claims and (2) establish a practical process for collectively adjudicating the claims. The process should be similarly to that used in *In re Buffets LLC's*, No. 16-50557-RBK (Bankr. W.D. Tex.). In *Buffets*, a notice and consent form was mailed to all putative class members to participate in the bankruptcy proceedings. All consent forms had to be filed within 30 days. The procedures elicited over 1,600 unpaid wage claims.

## C. Summary of the Debtors' Opposition to the Motion

The Debtors make the following arguments and representations in Opposition to the Motion:

Wahidi and Madrigal cannot satisfy the elements of Civil Rule 23. The Motion relies on nothing more than the State Court Complaint, which is overwhelmingly conclusory in its allegations. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his [or her] compliance with the Rule—that is, he [or she] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Movants cannot satisfy Civil Rule 23's commonality requirement. Movants allege that as a matter of uniform company policy, the Debtors unlawfully rounded down the recorded time of hourly employees, failed to provide meal and rest breaks, and engaged in other violations of the California Labor Code.

Contrary to Movants' allegations, the Debtors lacked uniform policies with respect to rounding and meal and rest breaks. For example, within Seton, meal and rest break policies vary by department. At In-Patient Units, meal and rest breaks are typically assigned, with the first rest break typically being scheduled within two hours of the start of the shift, the first meal break occurring before the fifth hour of the shift, and the last rest break occurring before the seventh hour. Sharrer Decl. at ¶ 22. In the Emergency Department, meal and rest breaks start when the break nurse arrives at 11:00 a.m., and are assigned by the charge nurse based upon availability. *Id.* In the Gero-Psych Unit, employees choose the assignment they want and pre-assigned meal or rest break times are written on the assignment sheet. *Id.*

Policies at St. Francis also varied by department. *Id.* at ¶ 25. Depending upon the department in which an employee worked, rest breaks could be assigned by a supervisor or Charge Nurse; employees could be required to arrange coverage when taking a rest break; or employees were permitted to take breaks depending upon workflow. *Id.* at ¶ 26.

Movants have failed to present facts showing that their claims are typical of other class members. Movants do not provide any details as to their personal injuries or any indication that such injuries are common to other hourly employees. Debtors' preliminary investigation shows

that Movants do not have claims typical to the rest of the class because Movants were not harmed by the Debtors' policies. With respect to the alleged rounding down of employee hours, Wahidi was covered by a collective bargaining agreement (the "CBA") negotiated by the California Nurses Association (the "CNA") during his employment at Seton. *Id.* at ¶ 9. The CBA contained policies with respect to the rounding of employee time. At all times during his employment, Wahidi was paid in accordance with the rounding policies negotiated by the CNA. *Id.* at ¶ 13.

With respect to the alleged failure to provide meal and rest breaks, hourly employees such as Wahidi who missed meal or rest breaks could claim a penalty by filing the appropriate paperwork. *Id.* at ¶ 29. During the course of Wahidi's employment, he was paid $1,923.52 for missed meal or rest break penalties. *Id.* at ¶ 34. When Wahidi was terminated for policy violations, the CNA did not pursue a grievance over his final pay. *Id.* at ¶ 32. Therefore, Wahidi was not injured by the Debtors' meal and rest break policies. Nor was Wahidi injured by the alleged failure to provide compliant pay stubs, as Wahidi's paystubs included the nine categories of information required by Cal. Lab. Code § 226(a). *Id.* at ¶ 37. Similarly, Madrigal was paid $294.60 for missed meal or rest break penalties and Madrigal's union did not file a grievance over his final pay when Madrigal was terminated. *Id.* at ¶ 33 and 35. Like Wahidi, Madrigal was not injured by the Debtors' policies.

Movants have not shown that they can adequately represent the class. First, Wahidi and Madrigal are former employees. They cannot be class representatives on behalf of current employees. The proposed class proof of claim seeks injunctive relief on behalf of the Debtors' current employees. As former employees, Wahidi and Madrigal have no incentive or interest to pursue such relief. Second, Wahidi's employment terminated in October 2017. This means that Wahidi cannot personally assert a priority or administrative expense claim, and thus that Wahidi cannot effectively represent class members entitled to assert such claims. Third, Wahidi and Madrigal were members of nursing unions at specific locations during their employment. Other class members belong to other unions or are not represented by a union. The wage and employment requirements at issue vary depending on whether employees are union or non-union. Wahidi and Madrigal are not typical of non-union employees.

Movants have not satisfied the requirements of Rule 23(b). Wahidi's attempt to certify a class under Rule 23(b)(1) fails because there is no danger that declining to certify a class will expose class members to the risk of inconsistent individual adjudications. The putative class members' claims are extremely varied given that the Debtors lacked routine policies with respect to rounding, meal periods, and rest breaks.

Movants' alternative request for certification under Rule 23(b)(3) fails. Movants have not shown that questions of law or fact common to class members predominate over questions affecting only individual members, or that a class action is superior to other methods of adjudication. With respect to predominance, the Debtors' rounding, meal period, and rest break policies varied by department. Consequently, the claims of each individual class member vary widely; these individualized issues relative to causation and damages defeat predominance. Given these individualized issues, a class proof of claim is not superior to individual proofs of claim.

The Court should not permit class treatment of Wahidi and Madrigal's claims because there is no merit to the assertion that the Debtors violated applicable wage and hour law. Wahidi and Madrigal were both subject to CBAs which set forth terms for working conditions and provided for premium rates of pay for overtime hours. Cal. Lab. Code § 514 provides that an employee

subject to a CBA meeting certain requirements may not pursue an overtime claim. This CBA exemption to the Labor Code is intended to afford additional flexibility with regard to the terms of employment of employees whose interests are protected by a collective bargaining agreement. *Araquistain v. Pacific Gas & Electric Co.*, 229 Cal.App. 4th 227, 238 (Cal. 2014).

Wahidi and Madrigal's claims are also pre-empted by § 301 of the Labor Management Relations Act (the "LMRA"). Under the LMRA, "suits for violation of contracts between an employer and a labor organization" fall within the exclusive jurisdiction of the federal courts. 29 U.S.C. § 185. To ensure uniform interpretation of labor contracts, any state law claim that requires interpretation of a CBA or that is "inextricably intertwined" with a CBA is pre-empted. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). Wahidi and Madrigal's claims are really about an employer alleging failing to pay required overtime pay by rounding down hours worked and by depriving Wahidi and Madrigal of meal and rest breaks. Because adjudication of the claims would require interpretation of the CBAs which specify the terms of overtime pay, the claims are pre-empted.

When pre-emption applies, a plaintiff can bring a § 301 claim only if he or she has exhausted the CBA's grievance procedure. The unions representing Wahidi and Madrigal did not invoke the arbitration process with respect to the claims at issue, either individually or on a group basis. Sharrer Decl. at ¶ 32–33.

The Ninth Circuit recently held that where, as here, an employer qualifies for a CBA exemption to a labor code requirement, any class claim asserted by an employee is automatically pre-empted by the LMRA. *See Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146, 1153–55 (9th Cir. 2019). The *Curtis* court specifically rejected the idea that Cal. Lab. Code § 510 gave employees non-negotiable state rights to overtime, independent of any interpretation of the relevant CBA. Wahidi and Madrigal's claims are pre-empted, which not only dooms the claims, but makes Wahidi and Madrigal atypical of the putative class.

There is no merit to Wahidi's contention that he is not required to satisfy class action requirements because his claims are filed pursuant to PAGA. "[T]here have been numerous rulings in [the Central District of California] holding that PAGA claims must comply with Rule 23 guidelines and failure to move for class certification will result in dismissal." *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 2:15-CV-02862-ODW, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015); *see also Adams v. Luxottica U.S. Holdings Corp.*, No. SA CV 07-1465 AHS, 2009 WL 7401970, at *2 (C.D. Cal. July 24, 2009) ("California state law cannot alter federal procedural and jurisdictional requirements.").

Further, Wahidi's PAGA claim is legally insufficient. Wahidi's required pre-suit notice letter to the Labor and Workforce Development Agency (the "LWDA") was statutorily ineffective. The letter did not contain "facts and theories to support the alleged violation," *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1056 (9th Cir. 2015), but instead provided only "a string of legal conclusions with no factual allegations or theories of liability to support them." *Id.* at 1057. The letter was therefore "insufficient to allow the [LWDA] to intelligently assess the seriousness of the alleged violations." *Id.*

## **D. Summary of Wahidi and Madrigal's Reply in Support of the Motion**

Wahidi and Madrigal make the following arguments and representations in their reply in support of the Motion:

The Debtors' objection is substantively a premature summary judgment motion on the merits of the underlying claims. As the merits of the underlying claims are not at issue in connection with the Motion, Movants will not take the bait. The only issue before the Court is whether it makes sense for a class representative to be appointed to have standing to resolve the bankruptcy claims which arise from the violations of law alleged in the Complaint.

There is no dispute that the Debtors served notice of the Bar Date only upon employees who remained employed as of the Petition Date, and did not provide notice to former employees. The lack of notice of the Bar Date to former employees is a compelling reason for class treatment of the claim. Further, permitting a class claim will not adversely affect the administration of the estate because the Debtors have not yet filed a plan.

If the Court concludes that additional evidence is required for the Movants to satisfy Rule 23's requirements of numerosity, commonality, typicality, and adequacy, the Court must permit additional discovery. Movants concede that the Motion is not supported by detailed evidentiary support for certain factual allegations, but there is a very good reason—the Debtors sought bankruptcy protection two months after the State Court Complaint was filed and all discovery was stayed. If the Court concludes that there are unresolved factual issues that must be resolved for the Motion to be granted, then due process requires that Movants be afforded the opportunity to take formal discovery with respect to those unresolved factual issues. *See, e.g., Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1094 n.5 (9th Cir. 2011) (stating that "the propriety of a class action cannot be determined in some cases without discovery" and that "to deny discovery in such cases would be an abuse of discretion").

## II. Findings and Conclusions

Class certification is governed by Civil Rule 23.[3] Bankruptcy Rule 7023 provides that Civil Rule 23 "applies in adversary proceedings." Under Bankruptcy Rule 9014(c), the Court has discretion to apply Bankruptcy Rule 7023 to the claims administration process. Courts have developed a three-factor framework to guide the exercise of this discretion:

1) whether the class was certified pre-petition;
2) whether the members of the putative class received notice of the bar date; and
3) whether class certification will adversely affect the administration of the estate.

*In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017).

These factors were first articulated in *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007) and are commonly referred to as the "*Musicland* factors." "No one factor is dispositive; a factor may take on more or less importance in any given case." *Chaparral Energy,* 571 B.R. at 646.

Only if the Court determines that it is appropriate to apply Bankruptcy Rule 7023 to the claims administration process does the Court proceed to determine whether the requirements of Civil Rule 23 have been satisfied. As explained by the *Chapparal Energy* court:

---

[3] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

> Whether to permit a class action proof of claim is a matter of discretion. In exercising that discretion, a two-step analysis is performed. First, the court must decide whether it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process. Second, the court must determine whether the requirements of Federal Rule 23 have been satisfied, such that a class proof of claim may properly be filed.

*Id.* (internal citations omitted); *see also Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012) ("Civil Rule 23 factors do not become an issue until the bankruptcy court determines that Rule 7023 applies by granting a Rule 9014 motion. The issue on such a motion centers more directly on whether the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedures.").

Careful consideration of the *Musicland* factors is necessary because "class certification may be 'less desirable in bankruptcy than in ordinary civil litigation.'" *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005). Consequently, "[e]ven class actions that were certified prior to the filing for bankruptcy may … be disallowed." *Id.*

In *In re First Alliance Mortgage Co.*, the District Court for the Central District of California stated that "class action devices … are particularly appropriate" in bankruptcy proceedings, and that "the party opposing the use of class devices [bears] the burden." *First All. Mortg. Co.*, 269 B.R. 428, 445 (C.D. Cal. 2001). In the eighteen years since it was published, no decision—either published or unpublished—has cited *First Alliance* for this proposition.[4] More recent decisions within the Ninth Circuit have approached class proofs of claim in a manner inconsistent with the standard set forth in *First Alliance*.

For example, in *In re Aughney*, the court expunged a class proof of claim, reasoning that the "essential problem with a class proof of claim is that class action procedures often conflict with established bankruptcy procedures." *Aughney*, No. 10-12666, 2011 WL 479010, at *1 (Bankr. N.D. Cal. Feb. 4, 2011). The court held that "class claims can be allowed, especially where a class was certified before bankruptcy or principles of equity and simple justice militate in favor of a claim being pursued on behalf of a class," but emphasized that a "prerequisite for allowance … is that the proponent must seek and obtain a determination of the Bankruptcy Court that Rule 7023 of the Federal Rules of Bankruptcy Procedure be made applicable to the claims process." *Id.* In *Westfall v. MII Liquidation Inc.*, the District Court upheld the Bankruptcy Court's denial of class certification, explaining that "bankruptcy courts have broad discretion to allow or disallow such class claims." *Westfall*, No. 06-CV-02343-BENNLS, 2007 WL 2700951, at *4 (S.D. Cal. Sept. 11, 2007).

Courts outside the Ninth Circuit have also declined to follow *First Alliance*. Instead of placing the burden upon the party opposing class certification, the Fourth Circuit Court of Appeals held that it was appropriate for the Bankruptcy Court to weigh "the benefits and costs of class litigation against the efficiencies created by the bankruptcy claims resolution process." *Gentry v. Siegel*, 668 F.3d 83, 92 (4th Cir. 2012). The Fourth Circuit found that "[e]ach bankruptcy case must be assessed on a case-by-case basis to determine whether allowing a class action to proceed would be superior to using the bankruptcy claims process." *Gentry*, 668 F.3d at

---

[4] Five published and six unpublished decisions have cited *First Alliance*. None of these eleven decisions cite *First Alliance* for the proposition that class actions are particularly appropriate in bankruptcy proceedings or that the party opposing the a class proof of claim bears the burden of proof.

93. *First Alliance*'s burden standard is also fundamentally inconsistent with the *Musicland* factors, which have been widely adopted.

The Court declines to follow *First Alliance* for the propositions that class actions are particularly appropriate in bankruptcy and that the party opposing a class proof of claim bears the burden of proof. In determining whether application of Civil Rule 23 to the claims administration process is warranted, the Court will apply the *Musicland* factors, keeping in mind that "[w]hether to permit a class action proof of claim is a matter of discretion." *Chapparal Energy*, 571 B.R. at 646.

## A. The *Musicland* Factors Support Applying Civil Rule 23 to the Claims Administration Process

As set forth below, the Court finds that the *Musicland* factors weigh in favor of invoking Civil Rule 23.

### *1. Factor One: Whether the Class was Certified Prepetition*

The putative class was not certified prepetition, so the first *Musicland* factors weighs against applying Civil Rule 23 to the claims administration process. However, as noted above, no single factor is dispositive, and courts have exercised their discretion to apply Civil Rule 23 even where the class has not been certified prepetition. *See, e.g.*, *In re Kaiser Group Intern., Inc.*, 278 B.R. 58, 62–63 (Bankr. D. Del. 2002) *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir.2012); *In re MF Glob. Inc.,* 512 B.R. at 763–65; *In re Connaught Group, Ltd.,* 491 B.R. 88, 98–100 (Bankr. S.D.N.Y. 2013).

### *2. Factor Two: Whether Putative Class Members Received Notice of the Claims Bar Date*

Where putative class members have received actual notice of the claims bar date, the second factor weighs against applying Civil Rule 23 to the claims administration process. *Musicland*, 362 B.R. at 655. The reason is that such putative class members have an opportunity to share in the distribution from the debtors' estate by filing a proof of claim. *Id.* By contrast, putative class members who did not receive actual notice of the claims bar date lack the ability to file a proof of claim. The filing of a class proof of claim vindicates the ability of such putative class members to assert a claim against the estate.

Here, the proposed class consists of "[a]ll California citizens employed by [Debtors] as hourly-paid employees" during the four years preceding June 21, 2018, the date of the filing of the State Court Complaint. *See* State Court Complaint at ¶¶ 3, 25. The Debtors provided actual notice of the claims bar date to employees that were employed as of the Petition Date but not to former employees. Because not all members of the putative class received actual notice of the claims bar date, the second factor weighs in favor of applying Civil Rule 23 to the claims administration process.

The Debtors assert that they were not required to provide actual notice to all putative class members. The Debtors cite *In re Mirant*, 321 B.R. 189, 199 (Bankr. N.D. Tex. 2005), in which the Court declined to apply Civil Rule 23 to the claims administration process even though not all putative class members had received actual notice of the claims bar date. The *Mirant* court reasoned that actual notice was not required because "Mirant's chapter 11 case has been well-publicized, and Mirant is willing to rely on that publicity and its published notice to bar later claims by class members." *Mirant*, 321 B.R. at 199.

The Debtors' reliance upon *Mirant* is misplaced. *Mirant*'s holding that actual notice upon putative class members was not required was based on the fact that the interests of the putative class members were being pursued "by various arms of local and state governments and [the Federal Energy Regulatory Commission]." *Id.* Here, by contrast, there is nothing in the record indicating that any government entity is taking action to vindicate the rights of the Debtors' hourly employees.

Debtors also rely upon *In re Circuit City Stores, Inc.*, 439 B.R. 652, 658 (E.D. Va. 2010). Like *Mirant*, *Circuit City* involved a situation in which the Bankruptcy Court declined to apply Civil Rule 23 even though not all putative class members had received actual notice of the claims bar date. However, in reaching its decision, the Bankruptcy Court did not apply the *Musicland* factors. Instead, the court relied upon a different set of factors applicable in the Fourth Circuit. Thus, *Circuit City* is of limited utility in ascertaining whether the second *Musicland* factor has been satisfied.

### 3. Factor Three: Whether Class Certification Will Adversely Affect the Administration of the Estate

In applying the third factor, courts consider whether class certification would delay or interfere with the debtor's ability to make distributions under a plan. For example, in *Musicland*, the court found that the third factor weighed against invoking Civil Rule 23 where the class certification motion was filed after the court had begun the confirmation hearing. *Musicland*, 362 B.R. at 656. The court reasoned that the late introduction of a significant claim would delay the debtor's ability to confirm a plan by creating unforeseen issues as to plan feasibility. *Id.* Applying the same logic, the court in *Chapparal Energy* held that certification would not interfere with the plan, because the debtors intended to proceed with confirmation and consummation of the plan notwithstanding an outstanding objection to the class proof of claim. *Chapparal Energy*, 571 B.R. at 648–49.

Here, the Debtors have not yet filed a plan. On June 7, 2019, the Court entered an order extending the Debtors' exclusivity period for filing a plan to July 27, 2019. Doc. No. 2520 (the "Plan Exclusivity Order"). The Plan Exclusivity Order provides that the exclusivity period will be further extended to August 26, 2019, without further notice or hearing, unless the Official Committee of Unsecured Creditors files an objection by July 12, 2019.

Because a plan has not yet been filed, it is unlikely that class certification will adversely affect the administration of the estate. Factor three weighs in favor of applying Civil Rule 23 to the claims administration process.

Debtors argue that class certification would adversely affect administration of the estate because it would be more expensive than the normal claims process. Debtors' argument misapprehends the focus of the third factor, which is directed toward whether class certification will impair the Debtors' ability to prosecute a plan.

### 4. Conclusion Regarding Application of the Musicland Factors

Having considered the *Musicland* factors, the Court finds that it is beneficial to apply Civil Rule 23 (made applicable by Bankruptcy Rule 7023) to the claims administration process. While it is true that the putative class was not certified prepetition (factor one), the second and third factors weigh in favor of applying Civil Rule 23. Of particularly significance to the Court is that absent application of Civil Rule 23, former employees of the Debtors who lacked actual notice of the bar date would be prejudiced.

## B. Civil Rule 23(a)

A party seeking class certification must first demonstrate that:

1) the class is so numerous that joinder of all members is impracticable,
2) there are questions of law or fact common to the class,
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
4) the representative parties will fairly and adequately protect the interests of the class.

Civil Rule 23(a).

These requirements are generally referred to as "numerosity," "commonality," "typicality," and "adequacy."

With respect to the application of Civil Rule 23, the Supreme Court has held:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S., at 160, 102 S.Ct. 2364, and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.,* at 161, 102 S.Ct. 2364; see *id.,* at 160, 102 S.Ct. 2364 ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable"). Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. "'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Falcon, supra,* at 160, 102 S.Ct. 2364 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); some internal quotation marks omitted). Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.,* jurisdiction and venue, is a familiar feature of litigation. See *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676–677 (C.A.7 2001) (Easterbrook, J.).

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–52, 131 S. Ct. 2541, 2551–52, 180 L. Ed. 2d 374 (2011).

At the outset, the Court rejects Wahidi's contention that he has an absolute right to file a class proof of claim with respect to his claims under PAGA. The fact that Wahidi might be able to automatically obtain class certification for PAGA claims in state court does not mean that Wahidi is entitled to such certification in federal court, where the requirements for class certification are different. *See Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 2:15-CV-02862-ODW, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015) ("[T]here have been numerous rulings in [the Central District of California] holding that PAGA claims must comply with Rule 23 guidelines and failure to move for class certification will result in dismissal").

As set forth below, Movants have failed to satisfy the commonality, typicality, and adequacy requirements.

*1. Commonality*

Civil Rule 23(a)(2) requires a party seeking class certification to demonstrate that "there are questions of law or fact common to the class." The Supreme Court has stated:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
>
> What matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Wal-Mart*, 564 U.S. at 349–50 (internal citations and quotation marks omitted).

Movants have failed to prove that they have satisfied the commonality requirement. Movants allege that, as a matter of established and uniform company policy, the Debtors violated applicable California wage and hour laws by rounding down the recorded time of hourly employees, failing to provide meal and rest breaks, and failing to pay workers all wages due as a result of the rounding, meal, and rest break policies. Movants further allege that Debtors failed to furnish employees with wage statements compliant with the California Labor Code.

First, with respect to Movants' claims pertaining to the Debtors' meal and rest break policies, commonality is not established because Movants have submitted no evidence showing that the Debtors applied uniform policies to all members of the putative class. Having failed to show the presence of common policies, it follows that Movants have also failed to make the more difficult showing that "there was a common pattern and practice [of unlawful conduct] that could affect the class as a whole." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

The declaration of Steven C. Sharrer, VHS' Chief Human Resources Officer (the "Sharrer Decl."), shows that meal and rest break policies varied, both from hospital to hospital and also between departments in the same hospital. Sharrer Decl. at ¶ 21–22. Mr. Sharrer's testimony establishes the following variations:

1) At most In-Patient Units at Seton Medical Center ("Seton"), meal and rest breaks are typically assigned, with the first rest breaking being scheduled within two hours of the start of the shift, the first meal break being scheduled before the fifth hour of the shift, and the last rest break being scheduled before the seventh hour of the shift. *Id.* at ¶ 22.a.

2) In some In-Patient Units at Seton, meal and rest breaks are assigned by the charge nurse at the beginning of the shift. Generally, nurses are relieved by break nurses. There is often no set schedule for meal or rest breaks. If a nurse waives a particular meal or rest break, it is documented on the meal break log that it was offered and refused. *Id.* at ¶ 22.b.

3) In the Emergency Room at Seton, meal and rest breaks start when the break nurse arrives at 11:00 a.m. Meal and rest breaks are assigned by the charge nurse based upon availability. When necessary, the charge nurse will cover for employees taking breaks. There is no formal schedule. *Id.* at ¶ 22.c.

4) In the Gero-Psych Unit at Seton, employees choose the patient assignment they want. Pre-assigned meal or rest break times are written on the assignment sheet. *Id.* at ¶ 22.d.

5) In the Laboratory Services Unit at Seton, laboratory assistants are pre-assigned meal and rest breaks. Coworkers cover for employees taking breaks. *Id.* at ¶ 23.a.

6) In the Imaging Unit and Food Services Departments at Seton, meal and rest breaks are assigned based on employees' schedules. *Id.* at ¶ 23.b–c. In the Imaging Unit, employees receive a lunch break before working for five hours. *Id.* at ¶ 23.b.

7) In the Diabetes Clinic and Wound Clinic Units at Seton, employees take their meal break at the same time, during a one-hour period when the clinics are closed. *Id.* at ¶ 23.c.

8) In the Patient Access and Health Information Management Units at Seton, meal and rest breaks are pre-assigned based on anticipated workload and schedule. *Id.* at ¶ 24.a.

9) At St. Francis Medical Center, depending upon the department in which an employee worked, rest breaks are assigned by a supervisor or Charge Nurse; employees are required to arrange coverage when taking a rest break; or employees are permitted to take breaks depending upon workflow. *Id.* at ¶ 26.

In sum, members of the putative class are subject to a wide variety of policies regarding meal and rest breaks. As a result, classwide litigation would not produce common answers to the question of whether the Debtors' meal and rest break policies violated applicable law.

Second, with respect to Movants' claims pertaining to the Debtors' rounding policy, commonality is not satisfied because Movants have not shown that members of the putative class suffered a common injury. Movants allege that the rounding policy deprived putative class members of the full wages to which they were entitled. Specifically, Movants allege that Debtors "[r]ounded the actual time worked and recorded by [employees], usually down, so that during the course of their employment, [employees] were paid far less than they would have been paid had they been paid for actual recorded time rather than 'rounded' time." State Court Complaint at ¶ 40.b. Movants allege that the rounding policy was in effect during the four years preceding the filing of the State Court Complaint. *Id.* at ¶ 3.

There is no dispute that the Debtors employed a rounding policy which rounded employee time to the nearest quarter hour. Movants have not submitted any evidence showing that the net effect of the policy was to round total worktime down—as opposed to rounding worktime up or being neutral. In California, a rounding policy is lawful provided that it "is neutral, both facially and as applied, … because its net effect is to permit employers to efficiently calculate hours worked without imposing any burden on employees." *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 903, 148 Cal. Rptr. 3d 690, 701 (2012).

To establish commonality, it is not enough for Movants to show that members of the putative class were subject to the same rounding policy, since a rounding policy is not *per se* unlawful.

Instead, Movants must present at least some evidence that the rounding policy injured typical members of the putative class by rounding total working time down. "If there is no evidence that the entire class was subject to the same allegedly [unlawful] practice, there is no question common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

The Court acknowledges that the rounding issue overlaps with the merits of Movants' claims. *Wal-Mart* recognizes that the "rigorous analysis" necessary to determine whether the class certification requirements have been satisfied will "[f]requently … entail some overlap with the merits" of the underlying claims. *Wal-Mart*, 564 U.S. at 351. Satisfying commonality does not require Movants to prove their underlying claims. But it does require something more than mere allegations. As the Ninth Circuit has stated, "utterly threadbare allegations that a group is exposed to illegal policies and practices" are not enough to confer commonality. *Parsons v. Ryan*, 754 F.3d 657, 683 (9th Cir. 2014).

Movants have also failed to establish commonality with respect to their allegations that the Debtors failed to furnish employees with compliant wage statements. Movants cannot show commonality because they have not shown that any of the wage statements furnished by the Debtors violated applicable law.

At the hearing, Movants asserted that the wage statements appended to the Sharrer Declaration violated Cal. Lab. Code § 226(a)(2) because they did not contain an itemization of the total hours worked.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

A representative wage statement, with the relevant portions highlighted in yellow, is as follows:

| | CURRENT PAY PERIOD (PP) | | | | YEAR TO DATE | | |
| WEEK NUM-DESCRIPTION | HOURS | RATE | CURR. AMT | DESCRIPTION | YTD HRS. | YTD AMOUNT |
|---|---|---|---|---|---|---|
| BENE CREDIT | | | 229.70 | REGULAR | 671.53 | 48313.98 |
| GTL TXBL $ | | | 17.10 | LTD TXBL $ | | 151.60 |
| LTD TXBL $ | | | 16.16 | OVERTIME | 115.00 | 13417.42 |
| WK1-C-BCK GUARNT | 6.25 | 113.9915 | 712.45 | CALL BACK | 61.75 | 7656.43 |
| WK1-CALL BACK | 2.75 | 113.9915 | 313.48 | C-BCK GUARNT | 102.25 | 12528.54 |
| WK1-ON-CALL 50% | 15.00 | 35.9730 | 539.60 | PTO | 184.00 | 13238.08 |
| WK1-REGULAR | 35.43 | 71.9461 | 2549.05 | BENE CREDIT | | 229.70 |
| WK2-REGULAR | 38.25 | 71.9461 | 2751.94 | GTL TXBL $ | | 222.30 |
| | | | | ON-CALL 50% | 606.50 | 21817.62 |
| | | | | OC HOLIDAY | 20.60 | 1108.17 |
| TOTAL GROSS | 97.68 | | 7128.48 | | 1761.53 | 118680.84 |

Gross Wages Earned        6866.52
Other Taxable $            261.96

Other Non Taxable $
EE Expense Reimb - Non Taxable $

Recap Of Current Pay Period        7128.48

Cal. Lab. Code § 226(a) requires employers to furnish to employees "an accurate itemized statement in writing showing … total hours worked by the employee …." Even though the wage statement contains a summation of the total hours worked at the bottom of the "HOURS" column, Movants contend that the statement is not compliant because it contains the text "TOTAL GROSS" and omits the text "Total Hours Worked" next to the summation of hours worked.

To state a claim under § 226(a), an employee must show a "(1) a violation of Section 226(a); (2) that is 'knowing and intentional'; and (3) a resulting injury." *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1131 (E.D. Cal. 2015). An employee suffers injury "if the employer fails to provide accurate and complete information as required by ... subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone the information required to be provided pursuant to section 226(a)." *Id.* The purpose of the provision is to ensure "that workers can easily and adequately understand the breakdown and source of their pay…. An employee is 'deemed' injured so long as critical information is missing from the wage statement and that information cannot promptly and easily be determined." *Id.* at 1132.

The fact that the wage statement does not contain the text "Total Hours Work" does not make it non-compliant with § 226(a). For the current pay period, the "HOURS" column contains the number of on-call hours worked, the number of regular hours worked, the number of call back hours worked, and the number of guaranteed call back hours worked. The table entry at the bottom of the "HOURS" column contains a summation of all hours worked. Notwithstanding the absence of the text "Total Hours Worked" next to this table entry, an employee reviewing the wage statement could readily ascertain that the table entry referred to total hours worked. Nothing in Cal. Lab. Code § 226(a) requires that the wage statement contain the specific text "Total Hours Worked." The statute requires that an employee furnish "an accurate itemized statement in writing *showing* … total hours worked by the employee …." A column with the heading "HOURS" that sets forth subtotals for various categories of work and contains the sum of those totals at the bottom *shows* any employee who understands how to read a table the total hours they have worked.

### 2. Typicality

The Ninth Circuit has explained the typicality standard as follows:

> To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class. The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal citations and quotation marks omitted).

With respect to meal and rest breaks, Movants have failed to demonstrate typicality because the evidence shows that Wahidi and Madrigal were not injured by the challenged policies. Wahidi was paid $1,923.52 on account of missed meal and rest breaks; Madrigal was paid $294.60 on account of missed meal and rest breaks. Sharrer Decl. at ¶¶ 34–35. Neither of the unions representing Wahidi or Madrigal pursued grievances over their final pay. *Id.* at ¶¶ 32–33. The absence of injury to Wahidi and Madrigal is fatal to their ability to satisfy the typicality prong with respect to the meal and rest break claims.

With respect to their wage statement claims, Movants have failed to demonstrate typicality for the same reason. The wage statements provided to Movants contained all nine categories of information specified in Cal. Lab. Code § 226(a) and were thus compliant with applicable law. As discussed in Section II.B.1, above, there is no merit to Movants' assertion that the wage statements failed to contain the required itemization of total hours worked by employees.

With respect to rounding, Movants have failed to demonstrate typicality because Movants have presented no evidence showing that other members of the putative class were injured by the Debtors' rounding policy. As discussed above, a rounding policy is not unlawful if it is "neutral, both facially and as applied …." *See's Candy Shops*, 210 Cal. App. 4th at 903. Once again, satisfying typicality does not require Movants to prove their underlying claims, but it does require more than mere allegations that the rounding policy injured members of the putative class.

*3. Adequacy*

"Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members." *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010).

Movants will be unable to vigorously prosecution the action on behalf of the entire class because Movants' claims are not typical. The absence of typicality also creates a conflict of interest problem. *See Hesse*, 598 F.3d at 589 ("[A]s a result of not possessing the same type of claim as the Washington Plaintiffs, the Benney Class Plaintiff had an insurmountable conflict of interest with those members of the class. Conflicts of interest may arise when one group within a larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative."). Movants have failed to demonstrate adequacy.

*4. Numerosity*

A class must be "so numerous that joinder of all members is impracticable." Civil Rule 23(a)(1). Movants seek certification of a class containing 7,300 claimants. Joinder of all class members would be impracticable. Movants have satisfied the numerosity requirement.

## C. Civil Rule 23(b)

If the numerosity, commonality, typicality, and adequacy prongs imposed by Civil Rule 23(a) are satisfied, a class may be maintained only if one of the requirements set forth in Civil Rule 23(b) is also satisfied. Here, Movants assert that the class may be maintained pursuant to either Civil Rule 23(b)(1)(B) or Civil Rule 23(b)(3).

Under Civil Rule 23(b)(1)(B), a class may be maintained if "prosecuting separate actions by or against individual class members would create a risk of … adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Movants have not satisfied Civil Rule 23(b)(1)(B). Permitting employees to seek redress by filing individual proofs of claim creates no risk of inconsistent decisions that would impair the ability of individual employees to protect their interests. First, all proofs of claim will be adjudicated by this Court, so there is no risk of different courts issuing inconsistent decisions. Second, the evidence presently before the Court shows that the employees were subject to varied policies regarding the meal and rest break claims that are issue. As a result of this variation, employees filing individual proofs of claim will not be prejudiced by decisions rendered with respect to other proofs of claim involving different facts. The same is true for employees making claims based upon the Debtors' rounding policy. Although a uniform rounding policy was in place, the effect of that policy upon total pay will vary from employee to employee. The outcome of the adjudication of any single rounding proof of claim will therefore have no binding effect upon the adjudication of other rounding proofs of claim.

Civil Rule 23(b)(3) provides that a class may be maintained if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Civil Rule 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). A class action is superior to other methods of litigation if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

For the same reasons that Movants have failed to show commonality and typicality, Movants have also failed to satisfy the predominance test. As discussed in Section II.B.1., Movants have not presented evidence establishing that members of the putative class suffered a common injury. Absent evidence of a common injury, the putative class is not "sufficiently cohesive to warrant adjudication by representation," *Amchem Prod., Inc.*, 521 U.S. at 591. Without common injuries classwide adjudication will not serve judicial economy. *Zinser*, 253 F.3d at 1189.

Because claims of the putative class members can be addressed through the bankruptcy claims administration process, a class action is not superior to other methods of litigation. As explained by the court in *Gentry v. Siegel*, 668 F.3d 83 (4th Cir. 2012), the normal bankruptcy claims process allows all claims to be consolidated in one forum and permits claimants to file proofs of claim without counsel at virtually no cost to themselves. *Gentry*, 668 F.3d at 93. In contrast to these systemic advantages, classwide litigation is frequently expensive, time-consuming, and protracted. *Id.* The normal policy concerns that typically favor a class action process—the risk of inconsistent adjudications and the deterrence of improper defendant behavior—are not a concern in a bankruptcy proceeding involving a single court. *Id.*

The court in *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005) reached a similar conclusion:

> [The] superiority of the class action vanishes when the "other available method" is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost. In efficiency, bankruptcy is superior to a class action because in practice small claims are often "deemed allowed" under § 502(a) for want of objection, in which case discovery and fact-finding are avoided altogether. As for fairness, although the notice requirements of Rule 23 are superior for class members to the usual bankruptcy notice by publication, this shortcoming is easily remedied by a bankruptcy notice directed specifically at class members, either at the time of the original notice or thereafter by order extending the bar

date for class members.

*In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005).

Not all members of the putative class received notice of the claims bar date. To vindicate the ability of class members to receive a distribution from the estate, the Court will extend the bar date to **October 11, 2019**. The extension shall apply only to members of the putative class and not to other creditors. *See In re Connaught Grp., Ltd.*, 491 B.R. 88, 97 (Bankr. S.D.N.Y. 2013) (holding that where a court denies a class certification motion, "it should set a reasonable bar date to allow the members of the putative class to file individual claims").

The Debtors shall provide notice of the extended bar date (the "Notice") to all members of the putative class (the "Claimants"). The Claimants are entitled to receive the Notice by first-class mail rather than by publication.[5] The Notice shall include a copy of Official Form 410 (Proof of Claim) and shall:

1) Advise Claimants that they are receiving the Notice because they were employed by the Debtors and may have claims against the Debtors for violations of the California Labor Code, including wage and hour violations (a "Labor Code Claim").
2) Advise Claimants that unless they assert a claim for damages by returning the attached Proof of Claim form by no later than **October 11, 2019**, they will not be entitled to receive a distribution from the estate on account of any Labor Code Claims they may have.
3) Advise Claimants that they may contact the counsel for the Official Committee of Unsecured Creditors with any questions.[6]

The Debtors shall file a proposed form of Notice with the Court by no later than **June 21, 2019**. Any part in interest may file an opposition to the proposed Notice by no later than **July 5, 2019**. If an opposition is filed the Court will determine if a hearing is required and will set a hearing date, if appropriate. The Notice shall be mailed to Claimants by no later than **July 22, 2019**. The Notice shall also be published on the website of the Debtors' claims and balloting agent, Kurtzman Carson Consultants, LLC.

## C. Movants Are Not Entitled to Additional Discovery

As the parties seeking class certification, Movants have the burden of furnishing sufficient evidence showing that the requirements of Civil Rule 23 has been satisfied. LBR 9013-1(i) requires that "[f]actual contentions involved in any motion … must be presented, heard, and determined upon declarations and other written evidence."

Movants contend that due process requires that they be afforded the opportunity to take formal discovery in support of their attempts to show that Rule 23's certification requirements have been satisfied. Movants' argument incorrectly presupposes that they have been denied the

---

[5] Notice by publication has been held to be sufficient where it is not possible for the Debtors to ascertain the identity of the creditors. *See, e.g.*, *In re Circuit City Stores, Inc.*, 439 B.R. 652, 660 (E.D. Va. 2010), *aff'd in part on other grounds sub nom. Gentry v. Siegel*, 668 F.3d 83 (4th Cir. 2012) (holding that creditors whose identity cannot be reasonably ascertained are not entitled to actual notice of the bankruptcy filing or claims bar date). However, where a creditor is known, "actual notice of the bankruptcy filing and bar date is required." *Id.* Here, the Debtors are aware of the identity of all members of the putative class, who were all employed by the Debtors.
[6] The Debtors shall consult with the Official Committee of Unsecured Creditors to obtain the contact information the to be included in the Notice.

opportunity to take discovery. The Debtors sought bankruptcy protection on August 31, 2018. At any time after this date, Movants could have sought information from the Debtors in support of their class proof of claim under Bankruptcy Rule 2004. An examination under Rule 2004 may relate "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate …." In Chapter 11 cases, the examination "may also relate to … any … matter relevant to the case or to the formulation of a plan." "The scope of a Rule 2004 examination is exceptionally broad," and Rule 2004 examinations "have been compared to a 'fishing expedition.'" *In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999). Rule 2004 contains a mechanism for compelling the production of documents. *See* Bankruptcy Rule 2004(c).

In *In re Associated Cmty. Servs., Inc.*, the court declined to allow a claimant an additional opportunity to conduct discovery in support of a class certification motion. *Associated Cmty. Servs.*, 520 B.R. 650, 655–56 (Bankr. E.D. Mich. 2014). The court reasoned that the claimant could have conducted the necessary discovery under Bankruptcy Rule 2004:

> If Pepper [the claimant] needed to conduct discovery before filing a motion to apply Rule 7023, he had ample time to do so under Fed. R. Bankr. P. 2004. Rule 2004 examinations are routinely granted, and are one of the few instances where the Federal Rules of Civil Procedure permit discovery to be taken before filing a motion or commencing an action. Pepper offers no explanation as to why he has not taken a Rule 2004 examination or sought any other discovery to date that could assist him in assembling whatever facts he believes are necessary before filing a motion to apply Rule 7023.

*In re Associated Cmty. Servs., Inc.*, 520 B.R. 650, 655–56 (Bankr. E.D. Mich. 2014).

To determine whether Movants should be permitted additional time to conduct discovery, at the hearing the Court provided Movants an opportunity to present an offer of proof as to what facts the additional proposed discovery would likely yield. The Court advised Movants that it was obligated to construe and apply the Bankruptcy Rules, including the rules governing discovery, in a manner that secured "the just, speedy, and inexpensive determination" of the proceedings before it. *See* Bankruptcy Rule 1001. The Court further noted that in determining the appropriate scope of discovery, it was required to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Civil Rule 26(b)(1).

Movants requested that they be afforded the opportunity to conduct the following discovery over a six-month period:

1) To obtain evidence regarding the rounding claims, Movants would collect a random sample of employee time records. The sample size of 365 records would be analyzed to determine whether the rounding policy disadvantaged employees. Movants would also conduct a Rule 30(b)(6) deposition to verify that Verity had a single rounding policy covering all employees.

2) To obtain evidence regarding the meal break claims, Movants would analyze the same sample of 365 records. From the sample, Movants would determine the number of instances in which employees were not provided meal breaks, and calculate a percentage of violation rate.

The Court declines to provide Movants a further opportunity to conduct discovery. The information Movants seek could have been obtained through a Rule 2004 examination conducted prior to the filing of the Motion. As noted, Movants could have sought discovery under Rule 2004 at any time subsequent to August 31, 2018, the date of the filing of the petition. Yet it was not until they filed their reply papers that Movants asserted that additional discovery was necessary.

Movants state that they did not seek discovery under Rule 2004 because they were hoping that the Debtors would consent to the filing of a class proof of claim. The record indicates that Movants contacted the Debtors on February 6, 2019, "to see if an agreement could be reached that would permit Mr. Wahidi to file a class proof of claim …." Declaration of David B. Shemano [Doc. No. 1914] (the "Shemano Decl.") at ¶ 3. On March 8, 2019, the Debtors advised Movants that they did not consent to the filing of a class proof of claim. *Id.* and Motion at Ex. 3.

The Court encourages attempts to resolve issues consensually. However, the possibility of consensual resolution does not relieve Movants of their obligation to meet their evidentiary burden in support of the Motion in the event that consensual resolution should fail. Movants are represented by sophisticated counsel well aware of the obligation to prove compliance with Civil Rule 23's requirements of commonality, typicality, numerosity, and adequacy. It should not have come as a surprise to Movants that the Debtors were not willing to consent to certification of a putative class containing 7,300 claimants. Motions seeking class certification filed in Bankruptcy Court are routinely contested by debtors-in-possession. Given that Movants knew they were required to prove the class certification elements and had the ability to obtain such proof through Rule 2004, waiting until reply briefing to assert the need for discovery was too late. *Cf. Khachikyan v. Hahn (In re Khachikyan)*, 335 B.R. 121, 127 (B.A.P. 9th Cir. 2005) ("As a strategic matter, where one wants discovery in a contested matter, it is generally too late to wait to the day of the hearing on the merits to request to conduct discovery in the future…. Tactically, one desiring discovery needs to be in the position of being able to argue that discovery was timely propounded, is appropriate to the situation, and that the contested matter should not be resolved until the required responses are provided. The court has discretion to shorten response times or to continue the hearing to permit responses to appropriate discovery that has been timely requested.").

In addition, the Court finds that with respect to many of Movants' claims, additional discovery would not likely adduce evidence sufficient to enable Movants to overcome the evidentiary shortfalls discussed above. For example, further discovery could not enable Movants to show typicality with respect to their meal and rest break claims. As discussed in Section II.B.2, Movants are atypical of the putative class because they were paid for missed meal and rest breaks and therefore were not injured by the challenged policies. Even if discovery revealed that other putative class members were injured by the challenged policies, the issue of Movants' atypicality would remain. Movants face the same issue with respect to their wage statement claims, as the wage statements furnished to Movants complied with applicable law. *See* Section II.B.1.

## III. Conclusion

Based upon the foregoing, the Motion is DENIED. The Court will enter orders consistent with this Memorandum of Decision.

###

Date: June 11, 2019

Ernest M. Robles
United States Bankruptcy Judge