| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Jennifer M. Kim, SBN 178364<br>Kenneth K. Wang, SBN 201823<br>California Office of the Attorney General<br>300 S. Spring Street, No. 1702<br>Los Angeles, CA 90013<br>Jennifer.Kim@doj.ca.gov<br>Kenneth.Wang@doj.ca.gov<br>Telephone: 213-269-6217<br>Fax: 916-731-2125 | |

☐ *Individual appearing without attorney*
☒ *Attorney for:* California Dept. of Health Care Services

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>In re: Verity Health System of California, Inc., et al.,<br><br><br><br>Debtor(s). | CASE NO.:2:18-bk-20151-ER<br><br>ADVERSARY NO.:<br>(*if applicable*)<br><br>CHAPTER: 11 |
|---|---|
| <br><br><br>Plaintiff(s) (*if applicable*).<br><br>vs.<br><br><br><br>Defendant(s) (*if applicable*). | **NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

## Part 1: Identify the appellant(s)

1.  Name(s) of appellant(s):  Creditor California Department of Health Care Services

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (*describe*):

For appeals in a bankruptcy case and not in an adversary proceeding.
☐ Debtor
☒ Creditor
☐ Trustee
☐ Other (*describe*):

## Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from:
   Memorandum of Decison Authorizing Debtors to Sell Medi-Cal Provider Agreements, Free and Clear of
   Interests Asserted by the California Department of Health Care Services, Pursuant to Section 363(F)(5)
   (Attached).  Notice of Appeal is pursuant to Federal Rules of Bankruptcy Procedure, Rule 8002(a)(2).
2. The date the judgment, order, or decree was entered:  09/26/2019

## Part 3:  Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone
numbers of their attorneys (*attach additional pages if necessary*):

1. Party:  Debtors St. Francis Medical Center, Seton Medical Center, and St. Vincent Medical Center

   Attorney:

   Samuel R. Maizel
   Tania M. Moyron
   Dentons US LLP
   601 South Figueroa Street, Suite 2500
   Los Angeles, CA 90017-5704
   (213)892-2910 - Phone

2. Party: Official Committee of Unsecured Creditors of Verity Health System of California, Inc., et al.

   Attorney:

   Gregory A. Bray
   Mark Shinderman
   Milbank, LLP
   2029 Century Park East, 33rd Floor
   Los Angeles, CA 90067
   (424) 386-4000 - Phone

## Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal
unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If
an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not
check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy
   Appellate Panel.

## Part 5:  Sign below

/s/ Kenneth K. Wang                                                        Date: 10/08/2019
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in
§ 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[Note to inmate filers: If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P.
8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of
Appeal.]

## ADDITIONAL PARTY TO THE APPEAL

Gary E. Klausner, Esq. (counsel for Buyer, Strategic Global Management, Inc.)
Levene, Neale, Bender, Yoo & Brill, LLP
10250 Constellation Boulevard
Suite 1700
Los Angeles, CA 90067
gek@lnbyb.com
(310) 229-3360 - Phone
(310) 229-1244 - Fax

# FOR PUBLICATION

FILED & ENTERED

SEP 26 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: Verity Health System of California, Inc., *et al.*,<br><br>Debtors and Debtors in Possession. | Lead Case No.:     2:18-bk-20151-ER<br>Chapter:     11 |
| ☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Medical Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>Debtors and Debtors in Possession., | **MEMORANDUM OF DECISION AUTHORIZING DEBTORS TO SELL MEDI-CAL PROVIDER AGREEMENTS, FREE AND CLEAR OF INTERESTS ASSERTED BY THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, PURSUANT TO § 363(F)(5)**<br><br>Jointly Administered With:<br> Case No. 2:18-bk-20162-ER;<br> Case No. 2:18-bk-20163-ER;<br> Case No. 2:18-bk-20164-ER;<br> Case No. 2:18-bk-20165-ER;<br> Case No. 2:18-bk-20167-ER;<br> Case No. 2:18-bk-20168-ER;<br> Case No. 2:18-bk-20169-ER;<br> Case No. 2:18-bk-20171-ER;<br> Case No. 2:18-bk-20172-ER;<br> Case No. 2:18-bk-20173-ER;<br> Case No. 2:18-bk-20175-ER;<br> Case No. 2:18-bk-20176-ER;<br> Case No. 2:18-bk-20178-ER;<br> Case No. 2:18-bk-20179-ER;<br> Case No. 2:18-bk-20180-ER;<br> Case No. 2:18-bk-20181-ER;<br><br>Chapter 11 Cases.<br><br>Date:     September 25, 2019<br><br>Time:     10:00 a.m.<br><br>Location:     Ctrm. 1568<br>           Roybal Federal Building<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

At issue is whether Medi-Cal Provider Agreements (the "Provider Agreements") entered into between four hospitals (the "Hospitals") and the California Department of Health Care Services (the "DHCS") are executory contracts which must be transferred pursuant to § 365 of the Bankruptcy Code, or statutory entitlements that may be transferred free and clear of successor liability under § 363 of the Bankruptcy Code.[1] If the Provider Agreements are executory contracts, the DHCS may be entitled to receive payments potentially in excess of $50 million in connection with the transfer of the Provider Agreements to the purchaser of the Hospitals. By contrast, if the Provider Agreements are statutory entitlements, they can be transferred to the purchaser free and clear of claims and interests under § 363, meaning that the DHCS would receive no payments in connection with the transfer. For the reasons set forth below, the Court finds that the Provider Agreements are statutory entitlements.[2]

---

[1] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

[2] The Court considered the following papers in adjudicating this matter:
1) Debtors' Memorandum in Support of Entry of an Order: (A) Authorizing the Sale of Property Free and Clear of all Claims, Liens and Encumbrances; (B) Authorizing the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases; and (C) Granting Related Relief [Doc. No. 2115] (the "Sale Motion");
2) Creditor California Department of Health Care Services's Objection to Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors that May be Assumed and Assigned [Doc. No. 1879];
3) Creditor California Department of Health Care Services's Supplemental Objection to (1) Debtors' Motion for the Entry of an Order Authorizing the Sale of Property Free and Clear of All Claims, Liens, and Encumbrances; (2) Approving form of Asset Purchase Agreement [Doc. No. 3043];
4) Official Committee of Unsecured Creditors' Reply to Creditor California Department of Health Care Services's Supplemental Objection to Sale [Doc. No. 3093];
5) Debtors' Reply to California Department of Health Care Services Objection to Debtors' Sale of Assets to Strategic Global Management [Doc. No. 3095];
   a) Objection to Declaration of Hanh Vo in Support of Creditor California Department of Health Care Services's Supplemental Objection to (1) Debtors' Motion for the Entry of an Order Authorizing the Sale of Property Free and Clear of All Claims, Liens, and Encumbrances; (2) Approving form of Asset Purchase Agreement [Doc. No. 3115];
   b) Declaration of Anita Chou in Support of Debtors' Reply to the California Department of Health Care Services' Objection to Debtors' Sale of Assets to Strategic Global Management [Doc. No. 3112]; and
   c) Notice of Debtors' Request to Bifurcate Hearing Regarding California Department of Health Care Services' Objection to Debtors' Sale of Assets to Strategic Global Management [Doc. No. 3113].

## I. Facts

On August 31, 2018 (the "Petition Date"), Verity Health Systems of California ("VHS") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On August 31, 2018, the Court entered an order granting the Debtors' motion for joint administration of the Debtors' Chapter 11 cases.[3]

On May 2, 2019, the Court entered an order approving the sale of substantially all of the assets of four of the Debtors' hospitals—St. Francis Medical Center, St. Vincent Medical Center, St. Vincent Dialysis Center, and Seton Medical Center (collectively, the "Hospitals")—to Strategic Global Management, Inc. ("SGM").[4]

Each of the Hospitals has executed a Provider Agreement with DHCS. The Asset Purchase Agreement (the "APA") [Doc. No. 2305-1] which governs the sale of the Hospitals to SGM provides that the sale cannot close unless issues regarding alleged financial defaults existing under each Provider Agreement have been resolved.[5]

Pursuant to Cal. Welf. & Inst. Code § 14169.52(a), each of the Hospitals is required to pay a quarterly Hospital Quality Assurance Fee (an "HQA Fee") to the DHCS, which is assessed regardless of whether the hospital participates in the Medi-Cal Program. *See* Cal. Welf. & Inst. Code § 14169.52(a) (imposing the HQA Fee upon "each general acute care hospital that is not an exempt facility"). As this Court has previously explained, the "HQA Fee allows California to obtain more healthcare funds from the federal government, which generally matches state Medi-Cal contributions dollar-for-dollar." *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 569 B.R. 788, 791 (Bankr. C.D. Cal. 2017), *aff'd*, No. 2:16-BK-17463-ER, 2018 WL 1354334 (B.A.P. 9th Cir. Mar. 12, 2018) ("*Gardens II*").

According to the DHCS, the Debtors are liable for approximately $30 million in HQA Fees attributable to the Hospitals. DHCS asserts that the Provider Agreements associated with each Hospital cannot be transferred to SGM unless the Debtors first assume the Provider Agreements under § 365 of the Bankruptcy Code. In the process of assuming the Provider Agreements, the Debtors would be required to cure the unpaid HQA Fees, or provide adequate assurance that the unpaid HQA Fees would be promptly cured.

The Debtors receive Medi-Cal fee-for-service payments on account of medical services provided to Medi-Cal beneficiaries by the Hospitals. DHCS asserts that the Debtors are liable for approximately $25 million in Medi-Cal fee-for-service overpayments, and that such overpayments must also be cured in connection with the assumption of the Provider Agreements. The Debtors dispute the validity of the audit that resulted in the calculation of the overpayments.

The Debtors contend that the Provider Agreements are not contracts and that it is therefore unnecessary for the Debtors to assume the Provider Agreements under § 365 in order to transfer the agreements to SGM. According to the Debtors, the Provider Agreements are a statutory entitlement to participate in the Medi-Cal program and should be treated as licenses that can be sold, free and clear of claims, interests, and encumbrances, pursuant to § 363(f). In support of the contention that the Provider Agreements are not contracts, Debtors argue that the Provider Agreements do not impose any obligations upon the DHCS. Debtors maintain that the only obligations existing under the Provider Agreements are those that are already imposed under applicable law, and that an agreement to comply with applicable law "is a gratuitous promise

---

[3] Doc. No. 17.

[4] Doc. No. 2306 (the "SGM Sale Order").

[5] APA at ¶ 8.7.

which does not provide the consideration necessary to make a contract enforceable." *Gardens II*, 569 B.R. at 797.

The Official Committee of Unsecured Creditors (the "Committee") agrees with the Debtors that the Provider Agreements are not contracts. Like the Debtors, the Committee takes the position that the Provider Agreements are assets of the Debtors' respective estates that can be sold free and clear of all interests pursuant to § 363(f).

## II. Discussion

If the Provider Agreements are executory contracts, they can be transferred to SGM only if they are first assumed by the Debtors. To assume an executory contract, the Debtors must either cure all defaults under the contract, or provide adequate assurance that the defaults will be cured promptly. § 365(b).

An executory contract is "a contract that neither party has finished performing." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1657, 203 L. Ed. 2d 876 (2019). Of course, an agreement that is not a contract can never qualify as an executory contract.

Terms not defined in the Bankruptcy Code have the meaning accorded to such terms under nonbankruptcy law. *See Mission Prod. Holdings*, 139 S.Ct. at 1661 ("And 'breach' is neither a defined nor a specialized bankruptcy term. It means in the Code what it means in contract law outside bankruptcy."). The Bankruptcy Code does not define the term "contract," so the term has the same meaning under § 365 of the Bankruptcy Code as it does under non-bankruptcy law. As the Supreme Court has explained, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979).

### A. The Provider Agreements Are Not Contracts

The first issue the Court must confront, then, is whether the Provider Agreements are contracts. The Court finds that they are not.[6]

---

[6] In *Gardens II*, the Court found that under the principle of equitable recoupment, DHCS could withhold Medi-Cal and supplemental quality assurance payments owed to a debtor, for the purpose of recovering unpaid hospital quality assurance fees owed by the debtor. *Gardens II* did not decide whether a Medi-Cal Provider Agreement was a contract or a statutory entitlement akin to a license, as the issue did not affect the outcome of the decision:

> The Court finds that, regardless of whether the Provider Agreement is considered a license or contract, the Debtor's HQA Fee liability and entitlement to Medi-Cal Payments would still arise from the same transaction or occurrence.... As discussed previously, the Debtor's acknowledgment in the Provider Agreement that unpaid HQA Fees could be withheld from its Medi-Cal Payments establishes the necessary logical relationship between the Debtor's fee liabilities and its payment entitlements. That logical relationship exists whether the Provider Agreement is classified as a license or a contract.

*Gardens II*, 569 B.R. at 799.

The Court's determination of whether the Provider Agreements are contracts is informed by decisions involving Medicare Provider Agreements. For purposes of this issue, there are no meaningful differences between the Provider Agreements and a Medicare Provider Agreement. Both types of agreements allow hospitals to obtain reimbursement from the government for providing healthcare services. In both cases, the hospitals' reimbursement entitlement is dictated by the Medicare statute and the regulations promulgated thereunder.[7]

In *PAMC, Ltd. v. Sebelius*, 747 F.3d 1214, 1221 (9th Cir. 2014), the Ninth Circuit declined to apply the contract doctrine of "substantial compliance" to a Medicare Provider Agreement. In that case, PAMC, a hospital, appealed the decision of the Secretary of the Department of Health and Human Services to reduce the reimbursements for which PAMC was eligible. *Id.* at 1215–16. PAMC's reimbursements had been reduced because it had submitted certain required data 28 minutes late. *Id.* at 1216. In challenging the Secretary's decision to reduce its reimbursement eligibility, PAMC argued, among other things, that it had substantially complied with the terms of its Medicare Provider Agreement. *Id.* at 1220. The Ninth Circuit rejected PAMC's attempt to avail itself of the contract doctrine of "substantial compliance":

> [T]he whole notion of importing contract doctrines into an area that is a complex statutory and regulatory scheme is problematic. We have, on occasion, stated that providers and others have contracts with the government in this area, but our decisions have turned on the regulatory regime rather than on contract principles. *See, e.g., United States v. Bourseau,* 531 F.3d 1159, 1162, 1169–70 (9th Cir.2008); *Pac. Coast Med. Enters. v. Harris,* 633 F.2d 123, 125 n. 1, 133–35 (9th Cir.1980). As the Eleventh Circuit Court of Appeals held when hospitals complained of legislative impairment of their contract rights in this area because they had agreements with the Secretary: "Upon joining the Medicare program, however, the hospitals received a statutory entitlement, not a contractual right." *Mem'l Hosp. v. Heckler,* 706 F.2d 1130, 1136 (11th Cir.1983); *see also Bennett v. Ky. Dep't of Educ.,* 470 U.S. 656, 669, 105 S.Ct. 1544, 1552, 84 L.Ed.2d 590 (1985) (stating that while states had "grant agreements" with the federal government and those had a "contractual aspect," the program should not be viewed like a "bilateral contract" and should not "be construed most strongly against the drafter" (internal quotation marks omitted)); *cf. Sebelius v. Auburn Reg'l Med. Ctr.,* —— U.S. —— ——, ——, 133 S.Ct. 817, 828–29, 184 L.Ed.2d 627 (2013) (declining to apply equitable tolling principles to time set by Secretary for appealing to the Board); *Kaiser Found.*

---

In support of its argument that the Provider Agreements are executory contracts, DHCS cites the observation made in *Gardens II* that Medicare Provider Agreements "are similar in many respects to ... [a] Medi-Cal Provider Agreement." *Gardens II,* 569 B.R. at 799 n.12. DHCS then cites decisions holding that Medicare Provider Agreements are executory contracts. As discussed in greater detail below, the Court does not find the decisions cited by DHCS to be persuasive, because they reached the conclusion that Medicare Provider Agreements are executory contracts without meaningful analysis.

[7] Because the Medi-Cal program is funded in part by federal funds, reimbursement entitlements under Medi-Cal must be consistent with the provisions of the Medicare statute. *See generally* 42 U.S.C. §1396a (setting forth requirements applicable to state medical assistance plans such as Medi-Cal).

*Hosps.*, 649 F.3d at 1160 (declining to apply excusable neglect equitable analysis to Board's dismissal of case for "failure to timely submit a position paper").

*PAMC, Ltd. v. Sebelius*, 747 F.3d 1214, 1221 (9th Cir. 2014).

Other courts have been even more explicit in stating that a Medicare Provider Agreement is not a contract. In *Mem'l Hosp. v. Heckler*, cited with approval in *PAMC*, hospitals argued that new legislation reducing their Medicare reimbursement entitlements constituted "an unconstitutional taking of their property without just compensation in violation of the fifth amendment, because it would abrogate a vested contractual right to Medicare reimbursement." *Heckler*, 706 F.2d 1130, 1136 (11th Cir. 1983). The *Heckler* court squarely rejected the hospitals' contention that their Medicare Provider Agreements were contracts: "Upon joining the Medicare program, however, the hospitals received a statutory entitlement, not a contractual right." *Heckler*, 706 F.2d at 1136.

Significantly, the *Heckler* court observed that "[c]ourts have upheld retroactive adjustments in the Medicare reimbursement system." *Id.* It emphasized that such retroactive adjustments were permissible precisely because Medicare Provider Agreements were not contracts. *Id.* A similar result was reached in *Germantown Hosp. & Med. Ctr. v. Heckler*, 590 F. Supp. 24, 30–31 (E.D. Pa. 1983), *aff'd sub nom. Germantown Hosp. & Med. Ctr. v. Schweiker*, 738 F.2d 631 (3d Cir. 1984), in which the court held:

> There is no contractual obligation requiring [the Department of Health and Human Services] to provide Medicare reimbursement. Rather, upon joining the Medicare program, providers gain a statutory entitlement to reimbursement. Thus the amount of reimbursement is governed not by contract but by statute; specifically the Medicare Act's "reasonable cost" provisions.

*Germantown*, 590 F.Supp. at 30–31. *See also Greater Dallas Home Care All. v. United States*, 10 F. Supp. 2d 638, 647 (N.D. Tex. 1998) ("Plaintiffs argue that the Medicare participation agreements … are essentially contracts. The Court disagrees and finds that the participation agreements are not contracts, for the right to receive payments under the Medicare Act is a manifestation of Government policy and, as such, is a statutory rather than a contractual right.").

Similarly, in *Guzman v. Shewry*, the Ninth Circuit held that a Medi-Cal Provider Agreement was not a contract. 552 F.3d 941 (9th Cir. 2009). In *Guzman*, a physician sought a preliminary injunction to prevent the DHCS from temporarily suspending him from the Medi-Cal program. *Id.* at 946. Among other things, the physician argued that because his suspension deprived him of the ability to receive reimbursement for treating Medi-Cal patients, he had been deprived of his right to contract with the state. *Id.* at 954. Rejecting this argument, the court held that "[p]articipation in the Medi-Cal program entitles Guzman to reimbursement for treating patients who receive Medi-Cal benefits; it does not involve bidding on government contracts." *Id.*

In addition, the Provider Agreements lack a key feature found in all contracts—obligations imposed on both parties to the agreements. The Provider Agreements impose no obligations upon the DHCS. The only obligations spoken of in the Provider Agreements pertain to the Debtors. Even these obligations do not constitute consideration for contract purposes, since they

merely restate the Debtors' pre-existing legal obligations.[8] As this Court has previously held, "an agreement to comply with applicable law is a gratuitous promise which does not provide the consideration necessary to make a contract enforceable." *Gardens II*, 569 B.R. at 797.

DHCS cites a number of cases in which courts have held that Medicare Provider Agreements are executory contracts. These authorities are not persuasive, because the issue of whether the provider agreements were executory contracts versus statutory entitlements was not litigated. Instead, the courts simply assumed, without meaningful analysis, that the provider agreements were executory contracts.

For example, in *In re University Medical Center*, 973 F.2d 1065 (3d Cir. 1992), the Third Circuit assumed that a Medicare Provider Agreement was an executory contract, even though the Third Circuit had ruled eight years prior in *Germantown Hosp. & Med. Ctr. v. Schweiker*, 738 F.2d 631, 632 (3d Cir. 1984) that Medicare Provider Agreements are statutory entitlements, not contracts. In *Germantown*, the court rejected the argument that a reduction in Medicare reimbursement rates impaired the contract rights of the Medicare providers. *Id.* The *University Medical Center* decision contained no discussion of *Germantown* and made no attempt to reconcile *Germantown*'s holding that reductions to Medicare reimbursement rates did not amount to a breach of contract. Similarly, in *In re Heffernan Memorial Hospital District*, 192 B.R. 228, 231 n.4 (Bankr. S.D. Cal. 1996), the issue was not litigated and the debtor appeared to concede that the provider agreement was an executory contract. Likewise, in *In re St. Johns Home Health Agency, Inc.*, 173 B.R. 238 (Bankr. S.D. Fla. 1994), the debtor conceded that the provider agreement was an executory contract, and the Bankruptcy Court disregarded prior binding Eleventh Circuit precedent rejecting the contention that a provider agreement gave the provider "a vested contractual right to Medicare reimbursement." *Mem'l Hosp. v. Heckler*, 706 F.2d 1130, 1136 (11th Cir. 1983).

---

[8] DHCS cites a number of provisions within the Provider Agreement that it claims constitute consideration sufficient to render the Provider Agreements contractual in nature. But all of the following the provisions cited by DHCS are restatements of legal obligations imposed upon the Debtors by federal law, federal regulations, state law, or state regulations:

1) Debtors will be subject to the sanctions available to DHCS if they fail to comply with applicable law.

2) To submit a treatment authorization request, the Debtors must use a National Provider Identifier ("NPI") that is appropriately registered and is compliant with all NPI requirements.

3) Debtors cannot engage in conduct inimical to public health, morals, welfare, or safety.

4) Debtors cannot refuse healthcare services based upon race, color, ancestry, marital status, national origin, gender, age, economic status, or physical or mental disability.

5) Only qualified medical personnel may provide healthcare services.

6) Any overpayments must be repaid by the Debtors in accordance with applicable statutes and regulations.

7) Debtors are subject to certain automatic and permissive suspensions and mandatory and permissive exclusions.

## B. The Provider Agreements Can Be Sold Free and Clear of Liens, Claims, and Interests Pursuant to § 363(f)(5)

Having found that the Provider Agreements are not contracts and therefore are not subject to assumption and assignment under § 365, the Court must determine whether the Provider Agreements can be sold free and clear of liens, claims, and interests under § 363(f).

Courts have held that interests such as the Provider Agreements constitute "property of the estate" under § 541 that may be sold under § 363. In *Matter of Fugazy Exp., Inc.*, 124 B.R. 426, 430 (S.D.N.Y. 1991), the court held that a license issued by the Federal Communications Commission was property of the estate, notwithstanding a provision within the Federal Communications Act providing that the Act did not create ownership rights in licenses. The holding is consistent with Ninth Circuit precedent stating that "[g]overnment licenses, as a general rule, are considered to be 'general intangibles' under the Uniform Commercial Code, 'i.e., personal property interests in which security interests may be perfected.'" *MLQ Inv'rs, L.P. v. Pac. Quadracasting, Inc.*, 146 F.3d 746, 749 (9th Cir. 1998).

The Court finds that the Provider Agreements are akin to a license issued by a government agency, and therefore that the Provider Agreements may be sold under § 363. The Provider Agreements create a statutory entitlement to bill the Medi-Cal program for providing Medi-Cal services. *See Guzman*, 552 F.3d at 954 (stating that "[p]articipation in the Medi-Cal program entitles [physician] Guzman to reimbursement for treating patients who receive Medi-Cal benefits"). This right to receive reimbursement for providing healthcare services is a property interest.

DHCS contends that the Hospitals hold no property interest in the Provider Agreements and that as a result, the Provider Agreements cannot be sold under § 363. In support of its position, DHCS cites *Erickson v. U.S. ex rel. Dep't of Health & Human Servs.*, 67 F.3d 858, 862 (9th Cir. 1995), in which the court held that a physician convicted of submitting false claims to Medicare did "not possess a property interest in continued participation in Medicare, Medicaid, or the federally-funded state health care programs." *Id.*

DHCS ignores the difference between a property interest in the right to *continue* to participate in Medi-Cal and a property interest in the *existing* right to bill Medi-Cal for providing services. *Erickson* stands for the unremarkable proposition that a provider who engages in criminal conduct has no right to continue as a provider. No one disputes that if the Hospitals violated Medi-Cal statutes or regulations, their right to continue as Medi-Cal Providers could be suspended. But at present, the Provider Agreements are in good standing and the Hospitals have the right to receive reimbursements for providing services to Medi-Cal beneficiaries. It is this right that amounts to a property interest.

The Provider Agreements may be sold free and clear of the liabilities which DHCS contends attach to the Provider Agreements. This includes the alleged liabilities for approximately $30 million in unpaid HQA Fees and $25 million in Medi-Cal overpayments (collectively, the "Liabilities").[9]

---

[9] The Debtors object to declaration testimony submitted by Hanh Vo with respect to the amount of the Liabilities. As a result of its determination that the Provider Agreements may be sold free and clear of the Liabilities, it is not necessary for the Court to adjudicate the amount of the Liabilities at this time. Because the Court has not considered the Vo declaration in reaching its decision, the Court does not rule upon the Debtors' evidentiary objection. *See Operating Engineers' Pension Trust Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902, 907 (N.D.

Section 363(f)(1) provides that a sale of estate property may be "free and clear of any interest in such property of an entity other than the estate" if certain conditions are satisfied. As this Court has previously explained:

> The Bankruptcy Code does not define the phrase "interest in ... property" for purposes of § 363(f). The Third Circuit has held that the phrase "interest in ... property" is "intended to refer to obligations that are connected to, or arise from, the property being sold." *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 259 (3d Cir. 2000). That conclusion is echoed by *Collier on Bankruptcy*, which observes a trend in caselaw "in favor of a broader definition [of the phrase] that encompasses other obligations that may flow from ownership of the property." 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[1] (16th ed. 2017).
>
> Courts have held that interests in property include monetary obligations arising from the ownership of property, even when those obligations are imposed by statute. For example, in *Mass. Dep't of Unemployment Assistance v. OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860 (1st Cir. BAP 2013), the court held that taxes assessed by Massachusetts under its unemployment insurance statutes constituted an "interest in ... property." The taxes were computed based on the Debtor's "experience rating," which was determined by the number of employees it had terminated in the past. *Id.* at 862. Because the Debtor had terminated most of its employees prior to selling its assets, its experiencing rating, and corresponding unemployment insurance tax liabilities, were very high. *Id.* The *PBBPC* court held that the experience rating was an interest in property that could be cut off under § 363(f). *Id.* at 869–70. Similarly, in *United Mine Workers of Am. Combined Benefit Fund v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 581, the court held that monetary obligations imposed by the Coal Industry Retiree Health Benefit Act of 1992 constituted an "interest in ... property" within the meaning of § 363(f).

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. 820, 825–26 (Bankr. C.D. Cal. 2017), *appeal dismissed*, No. 2:16-BK-17463-ER, 2018 WL 1229989 (C.D. Cal. Jan. 19, 2018).

The Liabilities are an "interest in property" within the meaning of § 363(f). The Liabilities arise because the Hospitals have elected to exercise their statutory entitlement to provide medical services, and receive reimbursement for providing such services, under the Provider Agreements. As such, the Liabilities are a monetary obligation arising from the ownership of property (the property being the reimbursement rights associated with the Provider Agreements).

The Provider Agreements may be sold free and clear of the Liabilities only if one or more of the conditions specified in § 363(f)(1)–(5) is satisfied. Here, the Court finds that § 363(f)(5) is satisfied. Under § 363(f)(5), property may be sold free and clear of an interest, if the entity holding the interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

The interest that DHCS holds in the Provider Agreements is its right to receive payment of the Liabilities. DHCS could be compelled to accept a money satisfaction of its interest in a legal or equitable proceeding. In fact, receiving a money satisfaction is and has been DHCS' objective

---

Cal. 2010) ("Because the Court does not rely on the statements in this declaration, it is not necessary for the Court to rule on these objections.").

all along. Throughout these cases, DHCS has withheld funds payable to the Hospitals to recover the Liabilities.[10] That DHCS would accept a money satisfaction is apparent in its briefing. DHCS states that the Debtors must "pay the debt through the proceeds of the sale" or "within five days of the closing of the sale," and that the Debtors "must establish and maintain a trust account in the amount of $70 million for 36 months for potential reimbursement to [DHCS] of any Medi-Cal overpayment ...."[11]

The case of *In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90, 91 (Bankr. E.D. Va. 1995) is directly on point. In *In re PKR Convalescent Centers*, the court approved the sale of a nursing home, free and clear of the interest held by the Virginia Department of Medical Assistance Service (the "DMAS"), pursuant to § 363(f)(5). The interest in question was DMAS' right under Virginia law to recapture, upon the sale of the nursing home, depreciation payments it had previously made to the operators of the nursing home. The court held that DMAS' interest would be extinguished if it received the $1.7 million in depreciation recapture payments it was owed under the statute, and that accordingly, DMAS could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. *Id.* at 94.

As was the case in *PKR Convalescent Centers*, DHCS' interest in the Provider Agreements would be extinguished if it received the payments it contends it is owed on account of the Liabilities. Consequently, DHCS could be compelled to accept a money satisfaction of its interest. The Provider Agreements may be sold free and clear of DHCS' interest under § 363(f)(5).

The Debtors request that the order on the Motion state that DHCS' recoupment rights against SGM, if any, must be first exercised against payments due to the Debtors from Medi-Cal, then against funds held by the Debtors generated by past interim Medi-Cal payments, and then against any sale proceeds generated by the sale of the Provider Agreement. The issue of the applicability of recoupment subsequent to the sale of the Provider Agreements free and clear of claims and interests has not been sufficiently briefed. The Court declines to decide the issue at present, without prejudice to the ability of interested parties to raise the issue by way of motion.

DHCS requests that the order on the Motion be stayed for 14 days, pursuant to Bankruptcy Rule 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. The sale to SGM is not expected to close until mid-to-late October 2019. Because the Provider Agreements will not be transferred to SGM until the sale closes, the stay imposed by Bankruptcy Rule 6004(h) is not necessary to protect DHCS' right to appeal.

## III. Conclusion

Based upon the foregoing, the Debtors are authorized to sell the Provider Agreements to SGM, free and clear of claims, interests, and encumbrances, pursuant to § 363(f)(5). The Debtors shall submit an order consistent with this Memorandum of Decision.

---

[10] DHCS asserts that its withholdings are authorized under the equitable principle of recoupment. As the issue is not presently before it, the Court expresses no opinion on whether the withholdings were permissible under recoupment principles.

[11] Doc. No. 3043 at 10.

###

Date: September 26, 2019

Ernest M. Robles
United States Bankruptcy Judge

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: California Office of the Attorney General, 300 South Spring Street, Suite 1702, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled:

### NOTICE OF APPEAL AND STATEMENT OF ELECTION

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

## 1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:

Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 9, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Lance N Jurich ljurich@loeb.com
David E Lemke david.lemke@wallerlaw.com
Bryan L Ngo bngo@fortislaw.com
Mary H Haas maryhaas@dwt.com
Mark A Neubauer mneubauer@carltonfields.com
Latonia Williams lwilliams@goodwin.com
Latonia Williams lwilliams@goodwin.com
Alicia K Berry Alicia.Berry@doj.ca.gov
Hutchison B Meltzer hutchison.meltzer@doj.ca.gov
Julie H Rome-Banks julie@bindermalter.com
Eric J Fromme efromme@tocounsel.com
Adam G Wentland awentland@tocounsel.com
Keith Patrick Banner kbanner@greenbergglusker.com
Brian L Davidoff bdavidoff@greenbergglusker.com
Eric J Fromme efromme@tocounsel.com
Adam G Wentland awentland@tocounsel.com
Kyrsten Skogstad kskogstad@calnurses.org
Michael B Reynolds mreynolds@swlaw.com
Debra Riley driley@allenmatkins.com
Elizabeth Berke-Dreyfuss edreyfuss@wendel.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

William M Rathbone wrathbone@grsm.com
Jeffrey C Wisler jwisler@connollygallagher.com
Rose Zimmerman rzimmerman@dalycity.org
Peter J Benvenutti pbenvenutti@kellerbenvenutti.com
Jane Kim jkim@kellerbenvenutti.com
Gregory R Jones gjones@mwe.com
Kyra E Andrassy kandrassy@swelawfirm.com
Stephen F Biegenzahn efile@sfblaw.com
Karl E Block kblock@loeb.com
Shawn M Christianson cmcintire@buchalter.com
Andy J Epstein taxcpaesq@gmail.com
Michael G Fletcher mfletcher@frandzel.com
Jeffrey K Garfinkle jgarfinkle@buchalter.com
Lawrence B Gill lgill@nelsonhardiman.com
Gary E Klausner gek@lnbyb.com
Craig G Margulies Craig@MarguliesFaithlaw.com
Monserrat Morales mmorales@marguliesfaithlaw.com
Kevin H Morse kevin.morse@saul.com
Alan I Nahmias anahmias@mbnlawyers.com
Mark A Neubauer mneubauer@carltonfields.com
Abigail V O'Brient avobrient@mintz.com
Mark D Plevin mplevin@crowell.com
David M Poitras dpoitras@wedgewood-inc.com
Michael B Reynolds mreynolds@swlaw.com
Mary H Rose mrose@buchalter.com
Megan A Rowe mrowe@dsrhealthlaw.com
Rosa A Shirley rshirley@nelsonhardiman.com
Andrew Still astill@swlaw.com
Gary F Torrell gft@vrmlaw.com
Jason Wallach jwallach@ghplaw.com
Gerrick Warrington gwarrington@frandzel.com
Steven T Gubner sgubner@bg.law
Phillip K Wang phillip.wang@rimonlaw.com
Elan S Levey elan.levey@usdoj.gov
John Mark Jennings johnmark.jennings@kutakrock.com
Lisa M Peters lisa.peters@kutakrock.com
Marilyn Klinger MKlinger@smtdlaw.com
Cristina E Bautista cristina.bautista@kattenlaw.com
Marsha A Houston mhouston@reedsmith.com
Michael D Breslauer mbreslauer@swsslaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

Christopher J Petersen cjpetersen@blankrome.com
Mariam Danielyan md@danielyanlawoffice.com
Ivan L Kallick ikallick@manatt.com
Paul R. Glassman pglassman@sycr.com
Kyra E Andrassy kandrassy@swelawfirm.com
Jeffrey K Garfinkle jgarfinkle@buchalter.com
Michael S Held mheld@jw.com
Michael St James ecf@stjames-law.com
M Douglas Flahaut flahaut.douglas@arentfox.com
Robert M Hirsh Robert.Hirsh@arentfox.com
Aram Ordubegian ordubegian.aram@arentfox.com
Sabrina L Streusand Streusand@slollp.com
Alan I Nahmias anahmias@mbnlawyers.com
Florice Hoffman fhoffman@socal.rr.com
Rosa A Shirley rshirley@nelsonhardiman.com
Ralph J Swanson ralph.swanson@berliner.com
Chris D. Kuhner c.kuhner@kornfieldlaw.com
James Cornell Behrens jbehrens@milbank.com
Jennifer L Nassiri jennifernassiri@quinnemanuel.com
Eric D Goldberg eric.goldberg@dlapiper.com
Monique D Jewett-Brewster mjb@hopkinscarley.com
Damarr M Butler butler.damarr@pbgc.gov
Lori A Butler butler.lori@pbgc.gov
Melissa T Ngo ngo.melissa@pbgc.gov
Marianne S Mortimer mmortimer@sycr.com
Sara Chenetz schenetz@perkinscoie.com
Simon Aron saron@wrslawyers.com
Richard A Lapping richard@lappinglegal.com
Mark A Serlin ms@swllplaw.com
Stephen F Biegenzahn efile@sfblaw.com
Paul J Laurinplaurin@btlaw.com
Ron Bender rb@lnbyb.com
Monica Y Kim  myk@lnbrb.com
Emily P Rich erich@unioncounsel.net
Neal L Wolf nwolf@hansonbridgett.com
Steven G. Polard spolard@ch-law.com
David N Crapo dcrapo@gibbonslaw.com
Kevin M Eckhardt keckhardt@huntonak.com
Brian D Huben hubenb@ballardspahr.com
Latonia Williams lwilliams@goodwin.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    F 9013-3.1.PROOF.SERVICE

Mark A Neubauer mneubauer@carltonfields.com
Matthew S Walker matthew.walker@pillsburylaw.com
Lori L Purkey bareham@purkeyandassociates.com
Robert N Amkraut ramkraut@foxrothschild.com
Nathan A Schultz nschultz@foxrothschild.com
Darryl S Laddin bkrfilings@agg.com
Howard Camhi hcamhi@ecjlaw.com
John R OKeefe, Jr jokeefe@metzlewis.com
Paul J Pascuzzi ppascuzzi@ffwplaw.com
Jason D Strabo jstrabo@mwe.com
Aaron Davis aaron.davis@bryancave.com
Andrew J Ziaja aziaja@leonardcarder.com
Joseph A Kohanski jkohanski@bushgottlieb.com
Seth B Shapiro seth.shapiro@usdoj.gov
Alvin Mar alvin.mar@usdoj.gov
Hatty K Yip hatty.yip@usdoj.gov
Scott E Blakeley seb@blakeleyllp.com
Samuel R Maizel samuel.maizel@dentons.com
John A Moe, II john.moe@dentons.com
Tania M Moyron tania.moyron@dentons.com
Bruce Bennett bbennett@jonesday.com
Bruce Bennett bbennett@jonesday.com
Dustin P Branch branchd@ballardspahr.com
Matthew S Walker matthew.walker@pillsburylaw.com
Charles E Nelson nelsonc@ballardspahr.com
Michael Hogue hoguem@gtlaw.com
Thomas J Polis tom@polis-law.com
Lior Katz katzlawapc@gmail.com

## 2. **SERVED BY UNITED STATES MAIL**:

Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 9, 2019**, I served the following
persons and/or entities at the last known addresses in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States
mail, first class, postage prepaid, and addressed as follows.

Melissa W Jones
Waller Lansden Dortch & Davis, LLP
511 Union St., Suite 2700
Nashville, TN 37219

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Scott Schoeffel
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, CA 92626-7109

Shawn C Groff
1330 Broadway Suite 1450
Oakland, CA 94612

Mollie Simons
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612

Brent F Basilico
Sellar Hazard & Lucia
201 North Civic Dr., Ste. 145
Walnut Creek, CA 94596

Steven M Berman
101 E Kennedy Blvd., Ste. 2800
Tampa, FL 33602

Rachel C Quimby
Daglian Law Group APLC
701 N Brand Blvd Ste 610
Glendale, CA 91203

Phillip G Vermont
Randick O'Dea & Tooliatos LLP
5000 Hopyard Rd., Ste 225
Pleasanton, CA 94588

Margaret M Anderson
Fox Swibel Levin & Carroll LLP
200 West Madison St
Chicago, IL 60606

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

Ryan Schultz
Fox Swibel Levin & Carroll LLP
200 W. Madison Street
Suite 3000
Chicago, IL 60606

Schuyler Carroll
PERKINS COIE, LLP
30 ROCKEFELLER PLZ FL 22,
New York, New York 10111

Donald R Kirk
Carlton Fields
4221 W Boy Scout Blvd Ste 1000
Tampa, FL 33607

John Ryan Yant
Carlton Fields Jorden Burt, P.A.
4221 W Boy Scout Blvd, Ste. 1000
Tampa, FL 33607

John R O'Keefe, Jr.
Metz Lewis Brodman Must O'Keefe LLC
535 Smithfield St Ste 800
Pittsburgh, PA 15222
Nathan F Coco
McDermott Will & Emery
444 West Lake Street
Chicago, IL 60606-0029

Megan Preusker
McDermott Will & Emery
444 West Lake Street
Chicago, IL 60606-0029

Jason M Reed
Maslon LLP
90 S 7th St Ste 3300
Minneapolis, MN 55402

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

Clark Whitmore
Maslon LLP
3300 Wells Fargo Center
90 S 7th St
Minneapolis, MN 55402

Daniel S Bleck
Mintz, Levin, et al
One Financial Center
Boston, MA 02111

Ian A Hammel
Mintz Levin Cohn Ferris Glovsky & Popeo
One Financial Center
Boston, MA 02111

Paul J Ricotta
Mintz Levin Cohn Ferris Glovsky and Pope
Chrysler Center
666 Third Ave
New York, NY 10017

Sam J Alberts
DENTONS US LLP
1900 K Street NW
Washington, DC 20006

Benjamin Rosenblum
250 Vesey St
New York, NY 10281

William P Wassweiler
Ballard Spahr LLP
80 S Eighth St Ste 2000
Minneapolis, MN 55402

**3. SERVED BY OVERNIGHT MAIL AND ELECTRONIC MAIL**: Pursuant to F.R.Civ.P.
5 and/or controlling LBR, on **October 9, 2019**, I served the following persons and/or entities by
overnight mail and electronic mail as follows.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                            **F 9013-3.1.PROOF.SERVICE**

Samuel Maizel, Esq. (on ECF)
Dentons US LLP
601 S. Figueroa Street, Suite 2500
Los Angeles, CA 90017
Samuel.Maizel@dentons.com

Gregory A. Bray, Esq.
Milbank, Tweed, Hadley & McCloy, LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
gbray@milbank.com

Hatty Yip, Esq. (on ECF)
Office of the United States Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA 90017
Hatty.Yip@usdoj.gov

**4. SERVED BY PERSONAL DELIVERY**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR,
on **October 9, 2019**, I served the following persons and/or entities by personal delivery as
follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight
mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Ernest M. Robles
United States Bankruptcy Court
255 East Temple Street
Courtroom 1568
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States that the foregoing is true
and correct.


| October 9, 2019 | Stacy McKellar | |
|---|---|---|
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                          **F 9013-3.1.PROOF.SERVICE**