

FILED & ENTERED

NOV 18 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: Verity Health System of California, Inc., *et al.*,<br><br>    Debtors and Debtors in Possession.<br><br>☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Medical Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>    Debtors and Debtors in Possession., | Lead Case No.:    2:18-bk-20151-ER<br>Chapter:    11<br><br>Jointly Administered With:<br> Case No. 2:18-bk-20162-ER;<br> Case No. 2:18-bk-20163-ER;<br> Case No. 2:18-bk-20164-ER;<br> Case No. 2:18-bk-20165-ER;<br> Case No. 2:18-bk-20167-ER;<br> Case No. 2:18-bk-20168-ER;<br> Case No. 2:18-bk-20169-ER;<br> Case No. 2:18-bk-20171-ER;<br> Case No. 2:18-bk-20172-ER;<br> Case No. 2:18-bk-20173-ER;<br> Case No. 2:18-bk-20175-ER;<br> Case No. 2:18-bk-20176-ER;<br> Case No. 2:18-bk-20178-ER;<br> Case No. 2:18-bk-20179-ER;<br> Case No. 2:18-bk-20180-ER;<br> Case No. 2:18-bk-20181-ER;<br><br>Chapter 11 Cases.<br><br>**MEMORANDUM OF DECISION (1) FINDING THAT SGM IS OBLIGATED TO PROMPTLY CLOSE THE SGM SALE UNDER § 8.6 OF THE APA, PROVIDED THAT ALL OTHER CONDITIONS TO CLOSING HAVE BEEN SATISFIED AND (2) GRANTING DEBTORS' MOTION FOR A CONTINUANCE OF THE HEARING TO APPROVE THE DISCLOSURE STATEMENT**<br><br>**CONTINUED HEARING TO APPROVE DISCLOSURE STATEMENT:**<br><br>Date:    November 26, 2019<br>Time:    10:00 a.m.<br>Location:    Ctrm. 1568<br>    Roybal Federal Building<br>    255 East Temple Street<br>    Los Angeles, CA 90012 |

# I. Introduction

The Debtors have filed a motion seeking (a) to continue the November 20, 2019 hearing on the Disclosure Statement and (b) to use the November 20 hearing as a Status Conference (the "Continuance Motion").[1] The Debtors filed the Continuance Motion after being advised, on November 15, 2019, that Strategic Global Management, Inc. ("SGM") would be sending the Debtors formal correspondence material to SGM's agreement to purchase the Debtors' four remaining hospitals (the "Hospitals," and the sale transaction, the "SGM Sale"). As of the filing of the Continuance Motion, the Debtors had not received the SGM correspondence. The Continuance Motion did not specify the anticipated contents of the correspondence.

The Court will grant the Continuance Motion for the reasons set forth below. To facilitate an expeditious and successful resolution of these cases, the Court makes the findings and conclusions contained herein. The Court's primary finding is that the Debtors have complied with their obligation under the APA[2] to obtain a final, non-appealable Supplemental Sale Order, and that accordingly SGM is now obligated to promptly close the SGM Sale, provided that all other conditions to closing have been satisfied.

# II. Findings and Conclusions
## A. SGM is Obligated to Promptly Close the Sale Under § 8.6 of the APA, Provided that All Other Conditions to Closing Have Been Satisfied

Prompt closing of the SGM Sale is indispensable to the successful resolution of these bankruptcy cases. The Debtors are sustaining operational losses of approximately $450,000 per day. Operation of the Hospitals is being financed by a consensual cash stipulation executed between the Debtors and the principal secured creditors (the "Cash Collateral Stipulation"), which expires on December 31, 2019. The Debtors do not have the ability to borrow under any debtor-in-possession financing facility, and it is unclear whether the Debtors will be able to obtain alternative financing once the Cash Collateral Stipulation expires. In addition, the Debtors are facing very significant liquidity constraints. In late September 2019, the California Department of Health Care Services (the "DHCS") began withholding certain Medi-Cal fee-for-service payments owed to the Debtors, for the purposing of recovering alleged Medi-Cal overpayments. The DHCS withholdings have deprived the Debtors of a major source of funding that had previously been used to sustain operations.

On February 6, 2019, the Court conducted a hearing to determine whether to approve the Asset Purchase Agreement (the "APA") entered into between the Debtors and SGM, under which SGM had agreed to serve as the stalking-horse bidder for the auction of the Hospitals. The Court found that the termination rights granted to SGM in the APA were unduly broad. In response to the Court's concerns, the Debtors renegotiated the APA to limit SGM's termination rights. On February 19, 2019, the Court approved the renegotiated APA.[3]

The renegotiated provisions pertain to SGM's ability to terminate the transaction in the event that the California Attorney General (the "Attorney General") sought to impose conditions on the sale that were not substantially consistent with those conditions that SGM had agreed to accept (the "Purchaser Approved Conditions"). In the event that the Attorney General sought to impose conditions materially different from the Purchaser Approved Conditions (the "Additional

---

[1] Doc. No. 3621.
[2] Capitalized terms not defined in this section are defined below.
[3] Doc. No. 1572.

Conditions"), the APA provides the Debtors an opportunity to obtain a determination from the Court that the Hospitals can be sold free and clear of the Additional Conditions under § 363(f) of the Bankruptcy Code (an order granting such relief, the "Supplemental Sale Order").

The Court entered the Supplemental Sale Order on November 14, 2019.[4] The Attorney General has waived his right to appeal the Supplemental Sale Order.[5] All other parties with standing to appeal the Supplemental Sale Order have waived their right to appeal.

The APA provides that once the Supplemental Sale Order becomes final and non-appealable, SGM "shall consummate the Sale provided that all other conditions to closing have been satisfied." APA at ¶ 8.6. Because all parties with standing to appeal have waived their rights to do so, the Supplemental Sale Order is now final and non-appealable. Provided that all other conditions to closing have been satisfied, SGM is obligated to promptly close the sale.

The Court conducted a hearing to resolve SGM's objections to the form of the Supplemental Sale Order on November 13, 2019.[6] At the hearing, SGM argued that entry of the Supplemental Sale Order did not obligate it to close the sale. SGM asserted that under § 8.6 of the APA, it had 21 business days to evaluate, in the exercise of its reasonable business judgment, whether the Supplemental Sale Order was acceptable (the "Evaluation Period").

SGM's argument that it is entitled to the Evaluation Period is not well taken. Under the plain language of the APA, SGM is entitled to the Evaluation Period only if the Supplemental Sale Order is the subject of a pending appeal:

> If Sellers timely obtain such Supplemental Sale Order from the Bankruptcy Court or another court, Purchaser shall have a period of 21 business days from the entry of such order (the "Evaluation Period") to determine, in the exercise of the Purchaser's reasonable business judgment and in consultation with Purchaser's financing sources, whether to proceed to consummate the transactions contemplated by this Agreement; provided, however, (i) Purchaser shall not terminate or provide notice of termination of the Stalking Horse APA based on the Seller's failure to satisfy the condition set forth under this Section 8.6 until the expiration of the Evaluation Period as may be extended herein, and (ii) the Evaluation Period may be extended by the Debtors, in consultation with the Consultation Parties, by up to 90 days for any appeal properly perfected with respect to the Supplemental Sale Order (the "Extended Evaluation Periods"). For the avoidance of doubt, if the Debtors or any of the Consultation Parties dispute the reasonableness of the exercise of the Purchaser's business judgment, such dispute shall be determined by the Bankruptcy Court only in the context of an adversary proceeding. If, at the conclusion of the Extended Evaluation Periods, such Supplemental Sale Order has not become a final, non-appealable order and Purchaser determines not to proceed, Purchaser shall have the right within ten (10) business days after the conclusion of the Extended Evaluation Periods to terminate this Agreement and receive the return of its Good Faith Deposit. Sellers shall provide Purchaser with prompt written notice of the conclusion of the Extended Evaluation Periods and whether the Supplemental Sale Order has become a final, non-appealable order. For purposes of this Section 8.6, "a final, non-appealable order" shall include a Supplemental Sale Order (i) which has been affirmed or

---

[4] Doc. No. 3611.
[5] Doc. No. 3572.
[6] For a transcript of the hearing, see Doc. No. 3620.

the appeal of which has been dismissed by any appellate court and for which the relevant appeal period has expired (other than any right of appeal to the U.S. Supreme Court), or (ii) which has been withdrawn by the appellant. *If the Supplemental Sale Order becomes a final, non-appealable order prior to the expiration of the Evaluation Period or, if applicable, the Extended Evaluation Periods, Purchaser shall consummate the Sale provided that all other conditions to closing have been satisfied.*

APA at ¶ 8.6 (emphasis added).

At the February 6, 2019 hearing on approval of the APA, SGM made clear that the purpose of the Evaluation Period was to prevent it from being required to close the sale if there was a risk that the Supplemental Sale Order could be overturned on appeal. SGM further stated that it would be required to close the sale if the Supplemental Sale Order became final and non-appealable:

> So, what we have done now is negotiate something less in our discretion. And the way this will work is the following. In the event that the AG comes out with what we call, "Additional Conditions," meaning those that are not set forth on the schedule, and assuming that they are material, and we've defined what we mean by "material."
> The Debtor has an opportunity to come to court and attempt to get the Court to determine that those conditions don't have to be satisfied because they're "interests" and the sale can be free and clear.
> If the Court—if the Debtor decides not to seek that relief, or if the [Debtor] seeks it and doesn't get it, we have a right to terminate. We don't have to, but we at least would have a right at that point to terminate based upon the imposition of these Additional Conditions.
> If the Debtor is successful in obtaining that order, then we have to deal with the appeal risk, which is, again, very difficult to quantify. So what we've agreed on is that the Debtor is going to have a period of time to get us … a final non-appealable order.
> *If the Debtor can get us a final, non-appealable order, meaning that if there's an appeal, it gets resolved in the Debtor's favor or maybe gets dismissed, at that point we will be obligated to close the transaction, as long as all the other conditions to closing have been satisfied.*

Transcript of February 6, 2019 Hearing at 20:7–21:6 (emphasis added).[7]

SGM is judicially estopped from contending that it is entitled to the Evaluation Period and is not obligated to promptly close the sale.[8] As the Supreme Court has held:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."

---

[7] Doc. No. 1570.
[8] The Court's discussion assumes that all other conditions to closing have been satisfied.

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) (internal citations omitted).

The Court declined to approve the original form of the APA because it found that SGM's termination rights were too expansive. The Court approved the APA only after the inclusion of the provision requiring SGM to close the sale if the Debtors obtained a final, non-appealable Supplemental Sale Order. SGM received a number of benefits under the APA, including a breakup fee and consultation rights in the event an auction was conducted. Having received benefits under the APA, SGM is judicially estopped from contradicting its prior representations regarding its obligation to close the sale.

### B. The Continuance Motion is Granted

To the extent that the Continuance Motion was motivated by the dispute regarding SGM's obligations under § 8.6 of the APA, that dispute has been rendered moot by the findings set forth above. However, several objections to the Disclosure Statement Motion have been filed, and the Debtors have not yet had an opportunity to file a Reply to these objections. For that reason—and that reason alone—the Continuance Motion is granted.

The hearing on the Disclosure Statement Motion is **CONTINUED** from November 20, 2019, at 10:00 a.m. to **November 26, 2019, at 10:00 a.m.** The Debtors' Reply in support of the Disclosure Statement Motion shall be filed by no later than **November 21, 2019**.

The Court will enter an order consistent with this Memorandum of Decision.

###

Date: November 18, 2019

Ernest M. Robles
United States Bankruptcy Judge