

FILED & ENTERED

NOV 27 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: Verity Health System of California, Inc., *et al.*,<br>   Debtors and Debtors in Possession.<br>☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Medical Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>   Debtors and Debtors in Possession., | Lead Case No.: 2:18-bk-20151-ER<br>Chapter:    11<br><br>Jointly Administered With:<br>Case No. 2:18-bk-20162-ER;<br>Case No. 2:18-bk-20163-ER;<br>Case No. 2:18-bk-20164-ER;<br>Case No. 2:18-bk-20165-ER;<br>Case No. 2:18-bk-20167-ER;<br>Case No. 2:18-bk-20168-ER;<br>Case No. 2:18-bk-20169-ER;<br>Case No. 2:18-bk-20171-ER;<br>Case No. 2:18-bk-20172-ER;<br>Case No. 2:18-bk-20173-ER;<br>Case No. 2:18-bk-20175-ER;<br>Case No. 2:18-bk-20176-ER;<br>Case No. 2:18-bk-20178-ER;<br>Case No. 2:18-bk-20179-ER;<br>Case No. 2:18-bk-20180-ER;<br>Case No. 2:18-bk-20181-ER;<br><br>Chapter 11 Cases.<br><br>**MEMORANDUM OF DECISION FINDING THAT SGM IS OBLIGATED TO CLOSE THE SGM SALE BY NO LATER THAN DECEMBER 5, 2019**<br><br>Date:  November 26, 2019<br>Time:  10:00 a.m.<br>Location: Ctrm. 1568<br>     Roybal Federal Building<br>     255 East Temple Street<br>     Los Angeles, CA 90012 |

## I. Introduction

  At the above-captioned date and time, the Court conducted a Status Conference regarding the Asset Purchase Agreement (the "APA") under which Strategic Global Management ("SGM") agreed to purchase the Debtors' four remaining hospitals (the "Hospitals," and the sale transaction, the "SGM Sale"). For the reasons set forth below, the Court finds that as of November 19, 2019, all conditions precedent to SGM's obligation to close had been satisfied.

Accordingly, pursuant to § 1.3 of the APA, SGM is obligated to close the SGM Sale by no later than December 5, 2019.

## II. Findings and Conclusions
### A. Adjudication of SGM's Obligations Under the APA Does Not Require an Adversary Proceeding

At the outset, the Court rejects SGM's contention that the Court is required adjudicate issues pertaining to SGM's obligations under the APA within the context of an adversary proceeding. SGM asserts that not all conditions precedent to closing have been satisfied. Specifically, SGM maintains that the Debtors have failed to comply with certain of the conditions and obligations imposed upon them by the APA, and that these alleged failures to perform have resulted in a Material Adverse Effect under the APA, relieving SGM of its obligation to close.

SGM is not obligated to close unless all the conditions precedent set forth in Article 8 have been satisfied. Among the conditions precedent is Article 8.4, which provides:

> Sellers [the Debtors] shall have in all material respects performed or complied with each and all of the obligations, covenants, agreements and conditions required to be performed or complied with by Sellers on or prior to the Closing Date; provided, however, this condition will be deemed to be satisfied unless (a) Sellers were given written notice of such failure to perform or comply and did not or could not cure such failure to perform or comply within fifteen (15) business days after receipt of such notice and (b) the respects in which such obligations, covenants, agreements and conditions have not been performed have had or would have a Material Adverse Effect.

The APA provides that "any dispute between Purchaser [SGM] and Sellers [the Debtors] as to whether a Material Adverse Effect has occurred for any purpose under this Agreement shall be exclusively settled by a determination made by the Bankruptcy Court." APA at Art. 9.1(c). Nothing within Article 9.1(c) requires that the determination contemplated therein occur through an adversary proceeding. In contrast, Article 8.6 provides that any dispute pertaining to certain aspects of that article "shall be determined by the Bankruptcy Court only in the context of an adversary proceeding." The absence of comparable language in Article 9.1(c) undercuts SGM's contention that disputes under that article must be determined through an adversary proceeding.

Bankruptcy Rule 7001[1] provides that the following matters are adversary proceedings:

1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002;
2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d);

---

[1] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

3) a proceeding to obtain approval under §363(h) for the sale of both the interest of the estate and of a co-owner in property;
4) a proceeding to object to or revoke a discharge, other than an objection to discharge under §§727(a)(8), 1 (a)(9), or 1328(f);
5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;
6) a proceeding to determine the dischargeability of a debt;
7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;
8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;
9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or
10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. §1452.

SGM contends that a determination of whether a Material Adverse Effect has occurred is "a proceeding to recovery money or property," "a proceeding to obtain an injunction or other equitable relief," and/or "a proceeding to obtain a declaratory judgment relating" to any of the types of proceedings set forth in Bankruptcy Rule 7001(1)–(8). SGM is mistaken.

First, adjudication of whether a "Material Adverse Effect" has occurred is not "a proceeding to recover money or property." Instead, such adjudication involves interpretation of a contract (the APA). It is true that a determination that there has been no Material Adverse Effect and that SGM is obligated to close the sale would require SGM to perform under its agreement to purchase the Hospitals. The fact that performance would require SGM to transfer money to the Debtors (the purchase price for the Hospitals) does not transform the "Material Adverse Effect" issue into a "proceeding to recovery money or property" within the meaning of Bankruptcy Rule 7001(1). SGM voluntarily chose to execute the APA and serve as the stalking horse bidder for the Hospitals for a purchase price of $610 million, subject to various adjustments. A determination requiring SGM to follow through on its commitments is very different from the typical actions brought under Bankruptcy Rule 7001(1)—such as proceedings to avoid preferences under § 547, proceedings to avoid fraudulent transfers under § 548, or proceedings to set aside post-petition transfers under § 549.

Second, adjudication of the "Material Adverse Effect" issue is not "a proceeding to obtain an injunction or other equitable relief." A determination setting forth SGM's obligations under a contract which it executed (the APA) is not an injunction or a form of equitable relief.

Third, adjudication of the "Material Adverse Effect" issue is not "a proceeding to obtain a declaratory judgment" relating to any of the types of proceedings set forth in Bankruptcy Rule 7001(1)–(8). Interpretation of the APA does not fall within the scope of any of the types of proceedings set forth in Bankruptcy Rule 7001(1)–(8). Therefore, a declaration of SGM's obligations under the APA does not fall within the ambit of Bankruptcy Rule 7001(9).

**B. Adjudication of SGM's Obligations Under the APA Is Not Premature**

SGM asserts that the issue of whether it has performed its obligations under the APA is not yet properly before the Court, and that the Debtors' request for a determination as to this issue is premature. SGM states that it has not yet decided whether it will close the SGM Sale. According to SGM, a case or controversy will arise only after SGM makes a final determination that it will not close the SGM Sale.

SGM is incorrect. SGM has made representations to the Debtors that provide reasonable grounds for the Debtors to doubt that SGM will fulfill its obligations under the APA. (The contents of those representations are not discussed herein because they have been presented to the Court under seal.) In response to the Debtors' demand for written assurance that SGM would fulfill its obligations, SGM sent the Debtors two letters casting further doubt upon whether it would perform under the APA (the "Nov. 22 Letters").[2] SGM's actions have given rise to a case or controversy.

The Court further notes that although SGM presented its ripeness argument in a document captioned as a reservation of rights,[3] SGM's submission was in reality an opposition to the Debtor's assertion that all conditions precedent to SGM's obligation to close have been satisfied. The Nov. 22 Letters also qualify as an opposition to the Debtors' assertions regarding SGM's obligation to close. The Nov. 22 Letters contain 19 single-spaced pages of legal argument and 38 pages of supporting exhibits. SGM's arguments regarding its obligations under the APA have been fully presented to the Court.

Finally, and as further discussed in Section II.D., below, the Court finds that SGM's contention that it is not obligated to close is a cynical attempt to extract a better purchase price. A key component of SGM's negotiation strategy is its attempt to delay as long as possible the adjudication of its obligations under the APA. The Court will not facilitate SGM's dubious tactics.

### C. SGM Is Not Entitled to Appeal the Bankruptcy Court's Determination Regarding a Material Adverse Effect

SGM received substantial benefits under the APA, including the right to receive a breakup fee in the event that it was outbid and consultation rights in the event that an auction of the Hospitals occurred. In exchange for receiving those benefits, SGM waived certain rights, including its right to appeal any determination made by the Bankruptcy Court with respect to the occurrence of a Material Adverse Effect.

As noted, the APA provides that "any dispute between Purchaser [SGM] and Sellers [the Debtors] as to whether a Material Adverse Effect has occurred for any purpose under this Agreement *shall be exclusively settled* by a determination made by the Bankruptcy Court." APA at Art. 9.1(c). This provision means that only the Bankruptcy Court, and no other court (including any appellate court), is entitled to determine Material Adverse Effect issues.

### D. No Material Adverse Effect Has Occurred

As set forth above, SGM alleges that the Debtors have failed to comply with certain of the conditions and obligations imposed upon them by the APA, and that these alleged failures to perform have resulted in a Material Adverse Effect, relieving SGM of its obligation to close. This Memorandum of Decision does not discuss SGM's allegations in detail, as doing so would damage the estates by adversely affecting (1) the Debtors' efforts to close the SGM Sale and (2) the Debtors' ability to maximize the value of the Hospitals in the event the SGM Sale does not close.

---

[2] The Nov. 22 Letters have also been filed under seal.
[3] Doc. No. 3701.

Under Section 8.4 of the APA, SGM is excused from its obligation to close only if (1) the Debtors have failed to perform their obligations under the APA and if (2) such failure to perform has resulted in a Material Adverse Effect.

The APA's definition of "Material Adverse Effect" is very brief. Under the APA, a "Material Adverse Effect" is "a material adverse effect upon the Hospitals, taken as a whole …." APA at Art. 2, Preamble.

"Material Adverse Effect" is a term of art routinely used in asset purchase agreements of the type at issue here. The parties' use of a term of art, combined with their decision to define the term with only minimal detail, shows that the parties intended to rely upon the definition of the term contained in applicable caselaw.

The APA is governed by California law, except to the extent that California law is superseded by the Bankruptcy Code or other applicable federal law. APA at Art. 12.3. California law on the meaning of a material adverse effect clause—sometimes known as a material adverse change clause—is not well developed. The few cases which do address material adverse effect clauses view their enforcement with disfavor. For example, in *1601 McCarthy Blvd., LLC v. GMAC Comm'l Mortg. Corp.*, 2005 WL 4859147 (Cal. Super. Ct. June 1, 2005), the court held that a loan servicer's invocation of a material adverse effect clause to avoid its obligation to disburse funds to a borrower was an "unfair business practice or act," because the servicer "used the material adverse change clause as a lever against [the borrower] to retain control over the borrower's … funds." *McCarthy Blvd.*, 2005 WL 4859147 at *¶ 59. The court found:

> [L]enders rarely employ—and even less frequently invoke and enforce—this type of broad-based material adverse change clause in commercial real estate transactions…. And even when they are invoked, … lenders only use the clause as a tool to "bring the borrower to the table, use it as lever against the borrower, or ... a club against the borrower to modify the loan or change the loan." There is no evidence in the record that the material adverse change clause in the Deed of Trust benefits any side but the lender, or serves any other purpose than to threaten the borrower with dire consequences….
>
> The record supports Mr. Greenwald's opinion that broad-based material adverse change clauses are rarely used, and in those rare instances when they are, they are placed in deeds of trust purely for their in terrorem effect and not with any genuine intention to invoke them.

*Id.* at ¶¶ 59 and 68.

Although the APA is governed by California law, Delaware cases interpreting material adverse effect clauses are helpful persuasive authority. A significant amount of the litigation over the enforcement of asset purchase agreements occurs before Delaware courts, and the Delaware caselaw interpreting material adverse effect clauses is well developed.

In *In re IBP, Inc. Shareholders Litigation*, the court rejected purchaser Tyson Foods' claim that it was not required to consummate a merger because of a material adverse effect. The court held:

> [A] buyer ought to have to make a strong showing to invoke a Material Adverse Effect exception to its obligation to close. Merger contracts are heavily negotiated and cover a large number of specific risks explicitly. As a result, even where a Material Adverse Effect condition is as broadly written as the one in the Merger Agreement, that provision

> is best read as a backstop protecting the acquiror from the occurrence of unknown events that substantially threaten the overall earnings potential of the target in a durationally-significant manner. A short-term hiccup in earnings should not suffice; rather the Material Adverse Effect should be material when viewed from the longer-term perspective of a reasonable acquiror.

*In re IBP, Inc. Shareholders Litig. (IBP, Inc. v. Tyson Foods, Inc.)*, 789 A.2d 14, 68 (Del. Ch. 2001).

In *Hexion Specialty Chemicals, Inc. v. Huntsman Corp.*, 965 A.2d 715, 738 (Del. Ch. 2008), the court reiterated that a "buyer faces a heavy burden when it attempts to invoke a material adverse effect clause in order to avoid its obligation to close."

Assessment of the occurrence of a Material Adverse Effect must take into account the $610 million purchase price for the Hospitals. To prevail upon its assertion of a Material Adverse Effect, SGM would be required to show the occurrence of unexpected events which have substantially reduced the value of the Hospitals. Here, representative examples of a "Material Adverse Effect" under Article 8.4 of the APA would include the Debtors' failure to maintain the Hospitals' licensure, or the Debtors' operation of the Hospitals in a manner that caused regulatory authorities to close key departments within the Hospitals, such as the emergency department or pharmacy.

None of SGM's allegations come even close to showing a Material Adverse Effect. Even if all the allegations are true (a finding the Court does not make), SGM would not be excused from closing the sale under Article 8.4 of the APA.[4]

SGM's invocation of the APA's Material Adverse Effect provision is not well taken. The Court has previously made clear that the closing of the SGM Sale is the lynchpin of the Debtors' plan of liquidation; that if the SGM Sale does not promptly close, the most likely outcome will be the closure of three of the four Hospitals; and that the prompt closing of the sale is critical to the estates' liquidity position.[5] SGM is well aware that it was the only bidder for the Hospitals. By presenting non-meritorious arguments as to why it is not obligated to close, SGM is holding the estates, creditors, and patients of the Hospitals hostage in an attempt to extort a better purchase price. SGM's cynical tactics are especially offensive given the significant harm that closure of the Hospitals would impose upon patients. For example, two of the Hospitals that

---

[4] Had SGM presented its allegations by way of an adversary complaint, the Court would dismiss such a complaint under Civil Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

[5] *See* Memorandum of Decision Granting Debtors' Emergency Motion to Enforce the Sale Order (the "Sale Enforcement Memorandum") [Doc. No. 3446] at 3–4 and Memorandum of Decision (1) Finding that SGM is Obligated to Promptly Close the SGM Sale Under § 8.6 of the APA, Provided that All Other Conditions to Closing Have Been Satisfied and (2) Granting Debtors' Motion for a Continuance of the Hearing to Approve the Disclosure Statement [Doc. No. 3632]. The Sale Enforcement Memorandum was subsequently vacated pursuant to a stipulation between the Debtors and the California Attorney General (the "Attorney General"), under which the Attorney General agreed not to pursue an appeal in exchange for vacatur of the Sale Enforcement Memorandum. Doc. No. 3599. Notwithstanding such vacatur, the Sale Enforcement Memorandum's findings regarding the importance of consummation of the SGM Sale remain valid.

would likely close upon failure of the SGM Sale contain large populations of long-term patients suffering from severe illnesses, all of whom would have to be relocated to other facilities.

### E. All Conditions Precedent to Closing Have Been Satisfied

The Court has previously found that the condition precedent to closing set forth in Article 8.6 of the APA has been satisfied.[6] All other conditions precedent to closing were satisfied as of November 19, 2019. On that date, the Debtors obtained a settlement with the Centers for Medicare and Medicaid Services providing for the transfer of their Medicare Provider Agreements to SGM, thereby satisfying their remaining obligations under Article 8.7 of the APA.[7]

Article 1.3 obligates SGM to close the sale "promptly but no later than ten (10) business days following the satisfaction" of all conditions precedent. As all conditions precedent were satisfied on November 19, 2019, SGM is obligated to close the sale by no later than December 5, 2019.

## III. Conclusion

Based upon the foregoing, the Court finds that all conditions precedent to SGM's obligation to close the SGM Sale have been satisfied. Pursuant to Article 1.3 of the APA, SGM is obligated to close by no later than December 5, 2019. The Court will enter an order consistent with this Memorandum of Decision.

---

[6] Memorandum of Decision (1) Finding that SGM is Obligated to Promptly Close the SGM Sale Under § 8.6 of the APA, Provided that All Other Conditions to Closing Have Been Satisfied and (2) Granting Debtors' Motion for a Continuance of the Hearing to Approve the Disclosure Statement [Doc. No. 3632].

[7] Article 8.7 also obligates the Debtors to transfer their Medi-Cal Provider Agreements to SGM pursuant to a settlement agreement with the California Department of Health Care Services (the "DHCS"). The Debtors materially complied with Article 8.7 by obtaining an order authorizing the transfer of the Medi-Cal Provider Agreements free and clear of any interest asserted by the DHCS. See Order Authorizing Debtors to Sell Medi-Cal Provider Agreements, Free and Clear of Interest Asserted by the California Department of Health Care Services, Pursuant to §§ 363(b) and (f)(5) [Doc. No. 3372].

###

Date: November 27, 2019

Ernest M. Robles
United States Bankruptcy Judge