SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
NICHOLAS A. KOFFROTH (Bar No. 287854)
nicholas.koffroth@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Attorneys for the Chapter 11 Debtors and
Debtors In Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>　　　Debtors and Debtors In Possession.<br><br>- Affects All Debtors<br>- Affects Verity Health System of California, Inc.<br>- Affects O'Connor Hospital<br>- Affects Saint Louise Regional Hospital<br>- Affects St. Francis Medical Center<br>- Affects St. Vincent Medical Center<br>- Affects Seton Medical Center<br>- Affects O'Connor Hospital Foundation<br>- Affects Saint Louise Regional Hospital Foundation<br>- Affects St. Francis Medical Center of Lynwood Foundation<br>- Affects St. Vincent Foundation<br>- Affects St. Vincent Dialysis Center, Inc.<br>- Affects Seton Medical Center Foundation<br>- Affects Verity Business Services<br>- Affects Verity Medical Foundation<br>- Affects Verity Holdings, LLC<br>- Affects De Paul Ventures, LLC<br>- Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>　　　Debtors and Debtors In Possession. | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly Administered with:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER<br>Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER<br>Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER<br>Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER<br><br>Chapter 11 Cases<br>Hon. Judge Ernest M. Robles<br><br>**DEBTORS' NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE EXTENDING THE EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD G. ADCOCK**<br>Hearing:<br>Date:　　February 4, 2020<br>Time:　　10:00 a.m.<br>Location: Courtroom 1568<br>　　　　　255 East Temple Street<br>　　　　　Los Angeles, California 90012-3300 |

- 1 -

113926447\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**PLEASE TAKE NOTICE** that at the above referenced date, time and location, Verity Health System of California, Inc., a California nonprofit benefit corporation and the Debtor herein, and the above-referenced affiliated entities, the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Debtors"), will move (the "Motion") the Court for entry of an order, pursuant to § 1121 of title 11 of the United States Code, extending the exclusivity periods to March 2, 2020 (filing a plan) and April 30, 2020 (obtaining acceptances). The requested deadlines are subject to the limitations of § 1121(d)(2) as modified by Rule 9006(a)(1)(C).

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities and the Declaration of Richard G. Adcock, the *Declaration of Richard Adcock in Support of Emergency First-Day Motions* [Docket No. 8] (the "First-Day Declaration"), the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion, if any. In addition, the Debtors request that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE** that any party opposing or responding to the Motion must file and serve the response ("Response"), pursuant to LBR 9013-1(f), on the moving party and the United States Trustee not later than 14 days before the date designated for the hearing. A Response must be a complete written statement of all reasons in opposition thereto or in support, declarations and copies of all evidence on which the responding party intends to rely, and any responding memorandum of points and authorities.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the failure to file and serve a timely objection to the Motion may be deemed by the Court to be consent to the relief requested herein.

- 2 -

113926447\V-1

| | | |
|---|---|---|
| 1 | Dated: January 1, 2020 | DENTONS US LLP |
| 2 | | SAMUEL R. MAIZEL |
| 3 | | TANIA M. MOYRON<br>NICHOLAS A. KOFFROTH |
| 4 | | By  */s/ Tania M. Moyron* |
| 5 | |       Tania M. Moyron |
| 6 | | Attorneys for the Chapter 11 Debtors and Debtors In Possession |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 3 -

113926447\V-1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Verity Health System of California, Inc., a California nonprofit benefit corporation and the Debtor herein ("VHS"), and the above-referenced affiliated entities, the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 bankruptcy cases (the "Cases"), respectfully request the entry of an order (i) extending the Debtors' exclusive right to file a plan of reorganization and gain acceptances of a plan of reorganization from the current deadlines to new deadlines of March 2, 2020 (filing a plan) and April 30, 2020 (obtaining acceptances), pursuant to 11 U.S.C. § 1121(d),[1] and (ii) granting the Debtors such other and further relief as is just an proper. The requested deadlines are subject to the limitations of § 1121(d)(2) as modified by Rule 9006(a)(1)(C).[2]

## II. JURISDICTION, VENUE AND BASIS

The Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors consent to entry of final orders and judgments by the bankruptcy judge. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is § 1121(d).

## III. STATEMENT OF FACTS

**A. General Background.**

1. On August 31, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the commencement of their Cases, the Debtors have been operating their businesses as debtors in possession pursuant to §§ 1107 and 1108.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All references to "LBR" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

[2] The 18-month exclusivity limitation for the filing of a plan is Saturday, February 29, 2020. *See* § 1121(d)(2)(A). The period is extended to Monday, March 2, 2020 pursuant to Rule 9006(a)(1)(C).

- 4 -

113926447\V-1

2.      As of the Petition Date, VHS, the hospitals, and their affiliated entities (collectively, "Verity Health System") operated as a nonprofit health care system, with approximately 1,680 inpatient beds, six active emergency rooms, a trauma center, eleven medical office buildings, and a host of medical specialties, including tertiary and quaternary care. *Declaration of Richard G. Adcock in Support of Emergency First-Day Motions* [Docket No. 8] ("First-Day Declaration"), at 4, ¶ 12. Additional background facts on the Debtors, including an overview of the Debtors' business, information on the Debtors' capital structure and additional events leading up to these chapter 11 Cases, are contained in the First-Day Declaration.

3.      On September 14, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these chapter 11 Cases [Docket No. 197].

**B.    Sales of the Hospitals and Current Status**

4.      On December 27, 2018, the Court entered an order approving the sale of assets (excluding cash, accounts receivables and causes of action) of O'Connor Hospital and Saint Louise Regional Hospital to the County of Santa Clara, a political subdivision of the State of California [Docket No. 1153]. The sale closed on February 28, 2019.

5.      On May 2, 2019, the Court approved the sale of substantially all of the assets of St. Francis Medical Center, St. Vincent Medical Center, St. Vincent Dialysis Center and Seton Medical Center, including Seton Coastside, to Strategic Global Management, Inc. ("SGM" and the "SGM Sale," respectively). [Docket No. 2306] pursuant to that certain asset purchase agreement [Docket No. 2305-1] (the "SGM APA"). On November 27, 2019, the Court entered an order [Docket No. 3724] finding that SGM was obligated to close the SGM Sale not later than December 5, 2019. SGM did not close the SGM Sale on December 5, 2019.

6.      On November 24, 2019, the Debtors filed a status report [Docket No. 3692] addressing the status of the SGM Sale and the Debtors' proposed plan for an expeditious resolution of these Cases in the event the SGM Sale did not close ("Plan B"). The Debtors filed a detailed description of Plan B under seal [Docket No. 3704]. The Debtors are beginning to implement Plan B as a result of SGM not closing the SGM Sale.

- 5 -

113926447\V-1

**D.      Status of Debtors' Plan of Liquidation.**

7.      The Debtors currently have the exclusive right to file a plan and solicit acceptances under § 1121(d).  After entering similar orders [Docket Nos. 899, 2520, 3039], on December 6, 2019, the Court entered an order extending the exclusive period that the Debtors can file and solicit votes on a plan to December 31, 2019 and solicit acceptances to February 29, 2019.  Docket No. 3769.

8.      On September 3, 2019, the Debtors filed the *Debtors' Chapter 11 Plan of Liquidation (Dated September 3, 2019)* [Docket No. 2993] (the "Plan") and related *Disclosure Statement Describing Debtors' Chapter 11 Plan of Liquidation (Dated September 3, 2019)* [Docket No. 2994] (the "Disclosure Statement").  The closing of the SGM Sale is one of the conditions precedent to the "Effective Date" of the Plan.  *See* Plan §12.1 at 56.

9.      On September 4, 2019, the Debtors filed the *Motion of the Debtors for an Order Approving: (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Debtors' Plan; and (IV) Granting Related Relief* [Docket No. 2995] (the "Disclosure Statement Motion"), seeking approval of (i) the Disclosure Statement, (ii) proposed solicitation and voting procedures, (iii) proposed notice and objection procedures for confirmation of the Plan, and (iv) related relief.

10.     On September 18, 2019, certain parties in interest filed responses and oppositions to the Disclosure Statement Motion.  *See* Docket Nos. 3079, 3084, 3086, 3087, 3089, 3090, 3092, 3094.  On October 17, 2019, the Court approved a stipulation for other parties' response dates to allow continued negotiations regarding the Disclosure Statement Motion.  See Docket No. 3394.  The Debtors made significant progress in resolving a number of matters raised by stakeholders regarding the Disclosure Statement and the Plan.  Nevertheless, the Debtors sought and obtained continuances of the hearing on the Disclosure Statement Motion in light of the uncertainties surrounding whether SGM would close the SGM Sale.  *See* Docket Nos. 3120, 3260, 3389, 3506, 3594, 3633, 3724, 3791.

11.     On December 10, 2019, the Court entered an order continuing the deadline for the Debtors to file an omnibus reply in support of the Disclosure Statement Motion to December 23,

- 6 -

113926447\V-1

2019 and setting a hearing on December 30, 2019, at 10:00 a.m. (Pacific Time).  On December 23, 2019, the Debtors filed a notice [Docket No. 3853] providing that the Debtors would not file an omnibus reply in support of the Disclosure Statement Motion.  On December 26, 2019, the Court entered an order [Docket No. 3859] vacating the December 30, 2019 hearing date "[g]iven the likelihood that the Debtors will be filing an amended and restated plan of liquidation." *See* Docket No. 3859, at 2.

### IV.    ARGUMENT

Section 1121(d) grants this Court authority to extend the Debtors' exclusivity period "for cause" up to 18 months after the petition date for filing a plan and 20 months after the petition date for solicitation.  11 U.S.C. §§ 1121(d).  Although the term "cause" is not defined by the Bankruptcy Code, it invites flexibility "in order to allow the debtor to reach an agreement."  *In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6190).  This is because a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors.  *See, e.g.*, *Id.* at 833-34; *In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

"A decision whether to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court and is fact-specific."  *In re New Meatco Provisions, LLC*, 2014 WL 917335, at *3 (Bankr. C.D. Cal. Mar. 10, 2014) (citations omitted); *In re Pan Am. Hosp. Corp.*, 2006 WL 8434254, at *5 (S.D. Fla. Sept. 6, 2006).  Courts examine a number of factors to determine whether "cause" exists to extend an exclusivity period.  These factors include the following: the size and complexity of the cases; the existence of good faith progress; the necessity of sufficient time to negotiate and prepare adequate information; whether the debtor is paying its debts as they become due; whether the debtor has demonstrated reasonable prospects for filing a viable plan; whether the debtor has made progress negotiating with creditors; the length of time a case had been pending; whether the debtor is seeking an extension to pressure creditors; and whether or not unresolved contingencies exist.  *See id.*  A "transcendent consideration" in deciding whether to extend

- 7 -

exclusivity is "whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution." *In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002) (affirming extension of exclusivity in chapter 11 case of non-profit hospital).

Here, the Debtors submit that sufficient "cause" exists pursuant to § 1121(d) to extend the exclusivity periods as the Debtors focus on implementing value-maximizing alternatives pursuant to Plan B and preparing an amended and restated Plan and Disclosure Statement. Additionally, the Debtors submit sufficient "cause exists" to further extend the deadlines for the following reasons:

Size and Complexity of the Cases. These are complex, "mega" chapter 11 Cases, and are almost certainly the second largest hospital bankruptcy case in American history. Selling the Debtors' remaining non-profit hospitals following the termination of the SGM APA and implementation of Plan B raises issues of healthcare regulatory law, labor law, mergers and acquisitions law, and bankruptcy law, among other fields. Although many of these issues were addressed in the context of the SGM Sale, the Debtors may be required to revisit the prior resolutions in the context of any transactions under Plan B. Moreover, the Debtors' corporate structure is complex and maintaining the Debtors' operations during the transition to Plan B will require significant care and attention. Further, there are numerous pending medical malpractice, personal injury and employment law related cases which the Court has allowed to proceed through relief from the automatic stay, and vendors which require substantial negotiations to maintain relationships.

Good Faith Progress. The Debtors have made significant progress in these Cases. The Debtors continue to operate their Hospitals and also (i) negotiated and closed the SCC Sale, (ii) negotiated and obtained Court approval of the sale of the remaining four Debtor Hospitals to SGM, (iii) resolved many cure issues related to executory contracts and leases in connection with the SCC and SGM Sales, (iv) reached conditional written agreements with all applicable labor unions under §§ 1113 and 1114, (v) obtained a stipulated Court order finding that the assets subject to the SGM Sale could be sold free and clear of certain conditions imposed by the Attorney General, (vi) obtained stipulated resolutions concerning the proposed transfer of Medicare and Medi-Cal provider agreements, (vii) engaged in substantial motions practice (and now appellate practice)

with SGM concerning SGM's obligation to close the SGM Sale, (viii) sold other assets approved by various orders entered by the Court, (ix) filed the Plan and Disclosure Statement, and (x) attended to administrative compliance materials such as the Monthly Operating Reports.  In connection therewith, the Debtors have dedicated a substantial amount of time to preparing and filing motions, other pleadings, documents and orders.

Further, the Debtors have dedicated substantial resources to organizing Plan B since the SGM Sale did not close.  In connection with Plan B, the Debtors have sought and obtained from their prepetition secured creditors a stipulated extension of their access to cash collateral to continue operations as they implement Plan B.

Necessity of Sufficient Time to Negotiate and Prepare Adequate Information.  The Debtors drafted and filed their Plan and Disclosure Statement, and negotiated with major constitutes in these Cases concerning the Plan.  The Debtors made significant progress in resolving objections to the Plan and Disclosure statement.  However, the Debtors must prepare adequate information related to the recent termination of the SGM APA and the implementation of Plan B.  Both recent developments will require material modifications to the current Plan and Disclosure Statement. Consequently, the Debtors seek an extension to allow them to continue to address these issues while retaining exclusivity (including amendments to the Plan).

Paying Debts as They Become Due.  The Debtors are paying their ordinary course administrative expenses as they come due.  The Debtors have paid over $16 million in critical vendor payments to prepetition creditors, and they continue to pay postpetition obligations when and as they come due.  Further, the Debtors are current with respect to their reporting and payment requirements to the Office of the United States Trustee and other requirements of the Bankruptcy Code and Rules.

Prospects for Filing a Viable Plan and Progress Negotiating with Creditors.  The Debtors made significant progress in the negotiation of the Plan.

Length of Time the Cases Have Been Pending.  The Cases have been pending for approximately 16 months as of the date of this Motion.  However, the SGM Sale—which has been pending for nearly a year and upon which the Plan was premised—only recently did not close,

1  which has required the Debtors to shift to Plan B.  The Debtors propose to continue their exclusivity
2  deadlines to the 18 and 20 month exclusivity and solicitation deadlines set forth in § 1121(d)(2).

3  <u>Whether the Extension is Sought to Pressure Creditors</u>.  The Debtors seek this extension for
4  good faith purposes, and to allow these Cases to move forward to a successful conclusion.

5  <u>Existence of Unresolved Contingencies</u>.  Unresolved contingencies do exist, including the
6  necessity to pursue alternative, value-maximizing sale transactions under Plan B.

7  Accordingly, the standards for the requested extension are satisfied.  The "adjustment of
8  exclusivity will facilitate moving the [bankruptcy process] forward toward a fair and equitable
9  resolution" of the Plan and any amendments thereto.  *In re Henry Mayo Newhall Mem'l Hosp.*, 282
10 B.R. at 453; *see also* First-Day Declaration at 25, ¶ 96 (the goal of the Cases is a "bankruptcy court
11 supervised sale of some or all of the hospitals and related facilities, and the comprehensive
12 resolution of the Debtors financial obligations through a court approved plan of reorganization").

### V.    CONCLUSION

14 For the foregoing reasons, the Debtors respectfully request that this Court enter an order
15 (i) granting the Motion, (ii) extending the Debtors' exclusive right to file a plan of reorganization
16 and gain acceptances of a plan of reorganization to March 2, 2020 (filing a plan) and April 30, 2020
17 (obtaining acceptances) § 1121(d), and (iii) granting the Debtors such other and further relief as is
18 just an proper.

20 Dated:  January 1, 2020                    DENTONS US LLP

SAMUEL R. MAIZEL
TANIA M. MOYRON
NICHOLAS A. KOFFROTH

By   */s/ Tania M. Moyron*
           TANIA M. MOYRON

Attorneys for the Chapter 11 Debtors and
Debtors In Possession

- 10 -

113926447\V-1

## **DECLARATION OF RICHARD G. ADCOCK**

I, Richard G. Adcock, declare that if called on as a witness, I would and could testify of my own personal knowledge as follows:

1. I am the Chief Executive Officer ("CEO") of Verity Health System of California, Inc. ("VHS"). I became VHS' CEO effective January 2018. Prior thereto, I served as VHS' Chief Operating Officer ("COO") beginning in August 2017. In my roles as COO and CEO at VHS, I have become intimately familiar with all aspects of VHS and its above-captioned affiliates who have also filed for bankruptcy protection (collectively the "Debtors," and each a "Debtor") as well as those affiliated entities that are not in bankruptcy. I submit this Declaration in support of the *Debtors' Motion for Entry of an Order Pursuant to Section 1121 of the Bankruptcy Code Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* (the "Motion").[3]

2. I have worked for more than 14 years in the healthcare arena. During this period, I have accumulated extensive senior level experience in the areas of not-for-profit healthcare, especially in healthcare delivery, hospital acute care services, health plan management, product management, acquisitions, integrations, population health management, budgeting, disease management and medical devices. I also have meaningful experience in other related areas, including human resources and personnel management.

3. My background and familiarity with the Debtors' day-to-day operations, business and financial affairs, and the circumstances leading to the commencement of these chapter 11 bankruptcy cases are set forth more fully in my *Declaration filed in Support of Emergency First-Day Motions* [Docket No. 8] on August 31, 2018 (the "Petition Date"), and incorporated by reference into this Declaration.

4. The Debtors' corporate structure is complex, and there also are many issues that arise in simply maintaining the Debtors' operations pending resolution of these Cases. Among other issues, there are existing labor contracts which are being addressed, numerous pending medical malpractice, personal injury and employment law related cases which the Court has

---

[3] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Motion.

- 11 -

113926447\V-1

allowed to proceed through relief from the automatic stay, and vendors which require substantial negotiations to maintain relationships.

5. The Debtors have made significant progress in these Cases. The Debtors continue to operate their Hospitals and also (i) negotiated and closed the SCC Sale, (ii) negotiated and obtained Court approval of the sale of the remaining four Debtor Hospitals to SGM, (iii) resolved many cure issues related to executory contracts and leases in connection with the SCC and SGM Sales, (iv) reached conditional written agreements with all applicable labor unions under §§ 1113 and 1114, (v) obtained a stipulated Court order finding that the assets subject to the SGM Sale could be sold free and clear of certain conditions imposed by the Attorney General, (vi) obtained stipulated resolutions concerning the proposed transfer of Medicare and Medi-Cal provider agreements, (vii) engaged in substantial motions practice (and now appellate practice) with SGM concerning SGM's obligation to close the SGM Sale, (viii) sold other assets approved by various orders entered by the Court, (ix) filed the Plan and Disclosure Statement, and (x) attended to administrative compliance materials such as the Monthly Operating Reports. In connection therewith, the Debtors have dedicated a substantial amount of time to preparing and filing motions, other pleadings, documents and orders.

6. The Debtors drafted and filed their Plan and Disclosure Statement, and negotiated with major constitutes in these Cases concerning the Plan. The Debtors made significant progress in resolving objections to the Plan and Disclosure Statement. However, the recent events related to SGM will require modifications to the current Plan and Disclosure Statement. Consequently, the Debtors seek an extension to allow them to continue to address these issues while retaining exclusivity (including amendments to the Plan).

7. The Debtors are paying their ordinary course administrative expenses as they come due. The Debtors have paid over $16 million in critical vendor payments to prepetition creditors, and they continue to pay postpetition obligations when and as they come due. Further, the Debtors are current with respect to their reporting and payment requirements to the Office of the United States Trustee and other requirements of the Bankruptcy Code and Rules.

- 12 -

113926447\V-1

8. The Debtors seek an extension of exclusivity for filing a plan and obtaining acceptances to advance their Cases to a successful conclusion, including to allow the Debtors time to file an amended Disclosure Statement and Plan as necessary while retaining exclusivity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of December, 2019, in Los Angeles, California.

[TO BE SUBMITTED]
RICHARD G. ADCOCK