SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
NICHOLAS A. KOFFROTH (Bar No. 287854)
nick.koffroth@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Attorneys for the Chapter 11 Debtors and
Debtors In Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:18-bk-20151-ER |
| VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*, | Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER |
| Debtors and Debtors In Possession. | Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER<br>Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER |
| ☒ Affects All Debtors | Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER |
| ☐ Affects Verity Health System of California, Inc. | Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER |
| ☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☒ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center | Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER |
| ☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation | Chapter 11 Cases |
| ☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☒ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC | **DEBTORS' EMERGENCY MOTION FOR AUTHORIZATION TO CLOSE ST. VINCENT MEDICAL CENTER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF** |
| Debtors and Debtors In Possession. | **Date: TBD**<br>**Time: TBD**<br>**Place: Courtroom: 1568**<br>**U.S. Bankruptcy Court**<br>**255 East Temple Street**<br>**Los Angeles, CA 90012**<br>**Judge: Hon. Ernest M. Robles** |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# **TABLE OF CONTENTS**

EMERGENCY MOTION ........................................................................................................ 1

    I. BASIS FOR THE REQUESTED RELIEF ...................................................... 3

    II. RESPONSES ...................................................................................................... 3

    III. SERVICE OF MOTION ................................................................................. 4

    IV. RESERVATION OF RIGHTS ....................................................................... 4

    V. CONCLUSION .................................................................................................. 4

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

    I. INTRODUCTION ............................................................................................. 1

    II. JURISDICTION, VENUE, AND STATUTORY PREDICATES .................. 2

    III. STATEMENT OF FACTS ............................................................................. 3

        A.     General Background ......................................................... 3

        B.     Marketing and Sale Efforts ............................................ 6

        C.     Closure Plan ................................................................... 9

    IV. ARGUMENT .................................................................................................. 13

        A.     This Court Can Authorize the Closure of St. Vincent Pursuant to §105. .. 13

        B.     Section 363(b) Authorizes the Debtors to Use Their Property According to Their Business Judgment ................................................. 14

        C.     Section 1108 Authorizes the Debtors *Not* to Operate Their "Moribund" Businesses .......................................................... 17

        D.     Good Cause Exists for Granting the Relief .................................. 17

    V. REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY ......... 18

    VI. CONCLUSION ............................................................................................. 19

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AbitibiBowater*,
   418 B.R. 815 (Bankr. D. Del. 2009) ...................................................................................15

*Bessette v. Avco Fin. Servs. Inc.*,
   230 F.3d 439 (1st Cir. 2000) ...........................................................................................13

*In re Chaussee*,
   399 B.R. 225 (B.A.P. 9th Cir. 2008) ................................................................................13

*In re Dyer*,
   322 F.3d 1178 (9th Cir. 2003) .........................................................................................13

*In re Farmland Indus., Inc.*,
   294 B.R. 855 (Bankr. W.D. Mo. 2003) ............................................................................15

*In re Food Barn Stores, Inc.*,
   107 F.3d 558 (8th Cir. 1997) ...........................................................................................15

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
   Case No. 2:16-bk-17463-ER (Bankr. C.D. Cal. Jan. 20, 2017).............................15, 18

*In re Lahijani*,
   325 B.R. 282 (B.A.P. 9th Cir. 2005) ................................................................................15

*Law v. Siegel*,
   134 S. Ct. 1188 (2014) .....................................................................................................13

*In re Lionel Corp.*,
   722 F.2d 1063 (2d Cir. 1983) ...........................................................................................15

*In re Mastro*,
   585 B.R. 587 (B.A.P. 9th Cir. 2018) ................................................................................13

*In re R.H. Macy & Co., Inc.*,
   170 B.R. 69 (Bankr. S.D.N.Y. 1994) ................................................................................15

*In re Saint Vincents Catholic Med Ctr. of N.Y.*,
   Case No. 05-14945 (Bankr. S.D.N.Y. Sept. 20, 2005) .....................................................18

*In re Saint Vincents Catholic Med. Ctr. of N.Y.*,
   Case No. 10-11963 (Bankr. S.D.N.Y. May 14, 2010) ......................................................18

*In re Stokes*,
   Case No. 09-60265-7, 2013 WL 492477 (Bankr. D. Mont. Feb. 8, 2013) .......................14

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*In re Thrifty Liquors, Inc.*,
    26 B.R. 26 (Bankr. D. Mass. 1982).........................................................................17

*In re Thueson*,
    Case No. 4-08-BK-10121-JMM, 2009 WL 1076888 (Bankr. D. Ariz. Mar. 12,
    2009) ........................................................................................................................14

**Statutes and Rules**

11 U.S.C. § 105 ......................................................................................1, 3, 13, 14, 17

11 U.S.C. § 363 ............................................................................1, 3, 14, 15, 16, 17

11 U.S.C. § 1108 ...............................................................................................1, 3, 17

28 U.S.C. § 157 ............................................................................................................2

28 U.S.C. § 1334 ..........................................................................................................2

28 U.S.C. § 1408 ..........................................................................................................2

28 U.S.C. § 1409 ..........................................................................................................2

INTERNAL REVENUE CODE § 501 ..............................................................................5

FED. R. BANKR P. 6004 ........................................................................................3, 18

CAL. CODE REGS., tit. 22, § 70131 .............................................................................18

CAL. CODE REGS., tit. 22, § 70133 .............................................................................18

CAL. HEALTH & SAFETY CODE § 1300 ......................................................................18

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EMERGENCY MOTION**

Pursuant to §§ 105, 363, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"),[1] Verity Health System of California, Inc. ("VHS") and the above-referenced affiliated debtors, the debtors and debtors in possession (collectively, the "Debtors" or the "Verity Health System") in the above-captioned chapter 11 bankruptcy cases (the "Cases"), hereby move, on an emergency basis (the "Motion"), for the entry of an order authorizing the Debtors to: (1) take all actions necessary in the exercise of their business judgment to effectuate the orderly and expedited closure (the "Closure") of Debtor hospital St. Vincent Medical Center ("SVMC") and its dialysis center, St. Vincent Dialysis Center, Inc. (as a separate Debtor entity, "SVDC," and together with SVMC as an integrated medical center, "St. Vincent"), including the transfer of patient care to other health care providers,[2] the proper disposition of controlled substances and hazardous materials, notices to governmental entities, and ultimately, the cessation of operations at St. Vincent (the "Closure Plan");[3] and (2) granting such other relief as the Court deems just and proper in connection therewith.

The Debtors request that the relief sought be granted on an emergency basis to avoid immediate and irreparable harm given (i) St. Vincent's continuing economic losses, (ii) the Debtors' need to have sufficient cash on hand for the orderly closure of St. Vincent, (iii) the acceleration of staff turnover once this Motion is filed which will further increase short-term

---

[1] All references to "§" are to sections of the Bankruptcy Code.

[2] As part of the Closure Plan, St. Vincent intends to enter into an agreement with Good Samaritan Hospital ("GSH") whereby GSH agrees to accept transfers of St. Vincent's inpatients, subject to applicable legal requirements and patient consent. GSH is located approximately one mile from St. Vincent.

[3] Certain elements of the Closure Plan may require the Debtors to enter into new contracts and dispose of equipment and other property, which relief is incorporated in this Motion, and assume or reject current contracts and leases, which relief is not requested herein. To the extent the Debtors determine in their business judgment to assume or reject contracts and leases in connection with implementing the Closure Plan, such relief will be sought by separate motion(s).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

operational costs, (iv) the Debtors' need to begin the closure process as soon as possible given that it will take at a minimum one month to safely transfer all patient care, and (v) generally that VHS cannot continue to subsidize St. Vincent's operations without putting the continued existence of the entire Verity Health System at risk.  The sale of St. Vincent as documented in the Asset Purchase Agreement ("APA," and the sale documented thereby, the "SGM Sale") between the Debtors and Strategic Global Management, Inc. ("SGM") did not close as contemplated therein.  At this point, any delay in St. Vincent's closure will significantly impact these Cases because St. Vincent operates with cash losses that put the entire Verity Health System at peril under the current circumstances.  St. Vincent lost approximately $65 million in fiscal year 2019, which translates to daily cash losses of over $175,000.  Accordingly, there are limited cash resources available for continued operation and patient care, which cannot at this stage be mitigated by either additional external financing (which is no longer available to the Debtors beyond a short extension by their current prepetition secured creditors to help allow the Debtors to finance an orderly wind-down) or sale prospects (of which there were none for St. Vincent as an operating entity).  Moreover, once the relief sought in this Motion is made public, turnover of staff, especially nurses, is likely to accelerate, making maintenance of high quality patient care more difficult, and, to the extent that temporary nursing replacements are required, significantly more expensive.  Thus, reducing the period of time between filing of the Motion and a hearing on the Motion is essential to maintaining patient care.

Finally, key constituents, including secured creditors and the Unsecured Creditors Committee have been fully informed of the Debtors' intent to file this Motion and the basis for the relief sought herein.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Accordingly, the Debtors respectfully request that the Court grant the Motion for an emergency hearing because the proposed expedited hearing will not prejudice any parties and is in the best interests of the Debtors' estates and creditors.

## I.

## BASIS FOR THE REQUESTED RELIEF

The Debtors seek authority to close St. Vincent as expeditiously as possible because continued subsidy of its operations by VHS puts the continued existence of the entire Verity Health System at risk.  The Motion is based upon §§ 105, 363, and 1108, Bankruptcy Rule 6004, the attached Memorandum of Points and Authorities, the *Declaration of Richard Adcock in Support of Emergency First-Day Motions* [Docket No. 8] (the "First-Day Decl."), the *Declaration of James M. Moloney in Support of the Debtors' Memorandum. in Support of Entry of an Order: (A) Authorizing the Sale of Property Free and Clear of All Claims, Liens and Encumbrances; (B) Authorizing the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 2220] (the "Moloney Sale Decl."); the Declarations of Richard Adcock (the "Adcock Decl."), Peter C. Chadwick (the "Chadwick Decl."), and James M. Moloney (the "Moloney SVMC Decl.") filed concurrently herewith, the arguments and statements of counsel to be made at the hearing on the Motion, and any other admissible evidence properly brought before the Court.  The Debtors request that the Court take judicial notice of the record in the Debtors' Cases and any other judicially noticeable facts in support of the Motion, as appropriate, including all documents filed with the Court in these Cases that relate to the SGM Sale and the prior sale of hospitals to Santa Clara County.

## II.

## RESPONSES

Any party opposing or responding to the Motion may present such response (the "Response") at any time before or at the hearing on the Motion.  *See* LBR 9075-1(a)(8).  A Response must be a complete written or oral statement of all reasons in opposition to the Motion or in support, declarations and copies of all evidence on which the responding party intends to

1  rely, and any responding memorandum of points and authorities.  Pursuant to LBR 9013-1(h), the

2  failure to file and serve a timely objection to the Motion may be deemed by the Court to be

3  consent to the relief requested herein.

4  **III.**

5  **<u>SERVICE OF MOTION</u>**

6  Counsel to the Debtors will serve this Motion, the attached Memorandum of Points and

7  Authorities, the Adcock Decl., the Chadwick Decl., the Moloney SVMC Decl., and any notice

8  required by the Court on: (i) the California Attorney General; (ii) the Official Committee of

9  Unsecured Creditors; (iii) the Debtors' prepetition secured creditors; (iv) SGM; (iv) the Office of

10  the United States Trustee; and (v) any other parties on the Limited Service List set forth in the

11  *Order Granting Emergency Motion of Debtors for Order Limiting Scope of Notice* [Docket No.

12  132].  To the extent necessary, the Debtors request that the Court waive compliance with LBR

13  9075-1(a)(6) and approve service (in addition to the means of service set forth in such LBR) by

14  overnight delivery.

15  **IV.**

16  **<u>RESERVATION OF RIGHTS</u>**

17  Nothing contained herein is intended or shall be construed as: (i) an admission as to the

18  validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in

19  interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; or

20  (iii) a waiver of any claims or causes of action which may exist against any creditor or interest

21  holder.

22  **V.**

23  **<u>CONCLUSION</u>**

24  For all the foregoing reasons and such additional reasons as may be advanced at or prior

25  to the hearing regarding this Motion, the Debtors respectfully request that the Court hold a

26  hearing on an emergency basis to consider the Debtors request for an order (i) permitting the

27  Debtors to implement the Closure Plan and to take all actions which in their business judgment

28  they deem necessary and appropriate to effectuate the orderly Closure of St. Vincent; and (ii)

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   granting such other relief as the Court deems just and appropriate.

2   Dated:  January 6, 2020                    **DENTONS US LLP**

3                                              SAMUEL R. MAIZEL
                                               TANIA M. MOYRON
                                               NICHOLAS A. KOFFROTH

4
                                               By_____/s/ Tania M. Moyron_____
5
                                               *Attorneys for Verity Health System of*
6                                              *California, Inc., et. al.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

US_Active\113785270\V-10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

St. Vincent Medical Center (including its on-campus dialysis center, "St. Vincent") has always been a vital part of the Verity Health System.[1]  It is undeniable that everyone involved has done his and her utmost to promote St. Vincent's continued existence for the benefit of its patients, employees, and the communities it serves.  However, St. Vincent has been operating at significant financial losses (more than $65 million in fiscal year 2019 alone), which has become unsustainable for both St. Vincent, and for the other Debtors forced to subsidize its losses.  Additionally, as the Court is aware, the sale of St. Vincent as documented in the Asset Purchase Agreement ("APA," and the sale documented thereby, the "SGM Sale") between the Debtors and Strategic Global Management, Inc. ("SGM")—which would have provided for the sale of St. Vincent as a going concern—did not close.  During the extensive marketing and sale process leading up to the APA with SGM, there was no interest for St. Vincent as a going concern.  Currently, there is no buyer who has presented a feasible offer to purchase St. Vincent as a going concern.[2]

As responsible stewards of patient safety, the Debtors' foremost responsibility is delivery of high quality patient care, and, consequently, the Debtors must immediately begin the Closure Plan (as defined below) with sufficient cash on hand to orderly implement the plan and transfer of

---

[1] The "Verity Health System" comprises the following affiliated debtors and debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Cases"): Verity Health System of California, Inc. ("VHS"), O'Connor Hospital, Saint Louise Regional Hospital, St. Francis Medical Center, St. Vincent Medical Center ("SVMC"), Seton Medical Center, O'Connor Hospital Foundation, Saint Louise Regional Hospital Foundation, St. Francis Medical Center of Lynwood Foundation, St. Vincent Foundation (the "Foundation"), St. Vincent Dialysis Center ("SVDC"), Inc., Seton Medical Center Foundation, Verity Business Services, Verity Medical Foundation, Verity Holdings, LLC, De Paul Ventures, LLC, De Paul Ventures - San Jose Dialysis, LLC.

[2] Even if there were any material interest to purchase St. Vincent, St. Vincent and the estates could not sustain the losses that would be incurred during the regulatory review process, such as the losses borne during the Attorney General review process for the sale to SGM, which failed when SGM did not close the sale.

US_Active\113785270\V-10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    patients.  The Debtors anticipate that by mitigating St. Vincent's operational losses through

2    closure of its facilities as expediently as possible, the Debtors will have sufficient cash-on-hand

3    (*e.g.*, remaining proceeds from the hospital sales to Santa Clara County plus extended consensual

4    use of cash collateral) to fund the closure (the "Closure") in an orderly manner.  Continuing to

5    incur operating losses at St. Vincent outside the Closure Plan would only deplete cash resources

6    and place St. Vincent and the Debtors in a position that they would not have sufficient cash on

7    hand to conduct the orderly Closure.

8        The Debtors anticipate it will take 30 days to discharge acute care patients.  As part of the

9    closure plan (the "Closure Plan"), St. Vincent intends to enter into an agreement with Good

10   Samaritan Hospital ("GSH"), whereby GSH will accept transfers of St. Vincent's inpatients,

11   subject to applicable legal requirements.   GSH is located approximately one mile from St.

12   Vincent.  With respect to patients in St. Vincent's kidney/pancreas transplant program, it will take

13   (i) 30 days to transfer those currently receiving care to alternate providers, and (ii) 60 days to

14   coordinate care with other outpatient health care providers for those patients who are being

15   evaluated for the program or have already received a transplant and been discharged.  St. Joseph

16   Hospital ("St. Joseph") has agreed to assume care of the kidney transplant patients who are part of

17   the St. Vincent Transplant Program (defined below), subject to approval of the United Network

18   for Organ Sharing ("UNOS").   St. Joseph has its own UNOS-approved Kidney Transplant

19   Program.  The Debtors are in discussions with other area hospitals to coordinate the transfer of

20   care for the kidney/pancreas-only transplant patients (less than twenty patients).

21       Accordingly, the Debtors respectfully request that the Court grant the Motion to protect

22   patient care and to avoid immediate and irreparable harm to the Debtors, the Hospitals, and the

23   estates.  The Debtors respectfully submit the proposed relief is in the best interests of St. Vincent,

24   St. Vincent's patients, and the Debtors and their estates as a whole.

25                                           **II.**

26              **JURISDICTION, VENUE, AND STATUTORY PREDICATES**

27       The Bankruptcy Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This

28   matter is a core proceeding under 28 U.S.C. §§ 157(b)(2).  Venue is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.

The statutory predicates for the relief sought in the Motion are §§ 105, 363, and 1108.[3]

## III.

## STATEMENT OF FACTS

A.    **General Background**

1.    On August 31, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"). Since the commencement of their Cases, the Debtors have been operating their businesses as debtors in possession pursuant to §§ 1107 and 1108. On September 14, 2018, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors [Docket No. 197].

2.    Debtor VHS, a California nonprofit public benefit corporation, is the sole corporate member of five Debtor California nonprofit public benefit corporations that operated O'Connor Hospital and Saint Louise Regional Hospital, and currently operates St. Francis Medical Center, St. Vincent (the subject of this Motion), and Seton Medical Center, including Seton Medical Center Coastside Campus (collectively, the "Hospitals").

3.    As of the Petition Date, the Verity Health System operated as a nonprofit healthcare system in the State of California, with approximately 1,680 inpatient beds, six active emergency rooms, a trauma center, eleven medical office buildings, and a host of medical specialties, including tertiary and quaternary care. *See Declaration of Richard Adcock in Support of Emergency First-Day Motions* [Docket No. 8] (the "First-Day Decl."), at ¶ 12. The scope of the services provided by the Verity Health System is exemplified by the fact that in 2017, the Hospitals provided medical services to over 50,000 inpatients and approximately 480,000 outpatients. *Id.* The Verity Health System was originally established by the Daughters of Charity of St. Vincent de Paul, Province of the West, to support the mission of the Catholic Church through a commitment to the sick and poor.

---

[3] All references to "§" are to sections of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); all references to "LBR" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

4.      St. Vincent was founded as the first hospital in Los Angeles in 1856.  First-Day Decl., at ¶ 34.  In 1971, a new facility was constructed at the Hospital's current location at 2131 West Third Street, Los Angeles, CA 90057.  *Id.*  The Hospital has expanded to a 366 licensed bed, regional acute care, tertiary referral facility, specializing in cardiac care, cancer care, total joint and spine care, and multi-organ transplant services.  *Id.*  The Hospital serves both local residents and residents from Los Angeles, San Bernardino, Riverside, and Orange Counties.  *Id.* St. Vincent provides medical care for both inpatients (*i.e.*, patients who remain in the hospital for more than 24 hours) and outpatients (*i.e.*, patients who receive outpatient services, such as MRIs). Additionally, the Debtors operate a Kidney-Pancreas Transplant Program at St. Vincent (the "St. Vincent Transplant Program").[4]  The St. Vincent Transplant Program operates under UNOS approval.  As a provider of healthcare services for a high percentage of elderly patients, many of the Hospital's services and programs are focused on the treatment of various chronic diseases.  *Id.* In 2015, under a restructuring agreement, St. Vincent was converted from a religious corporation to a public benefit corporation.  *Id.* at ¶¶ 21, 92.  St. Vincent owns real property commonly known as: (i) 2131 W 3rd Street, Los Angeles, CA 90057, including the hospital and all of the facilities located thereon; and (ii) vacant land in Salton Sea, California.  *Id.* at ¶ 23.[5]

5.      St. Vincent has its own dialysis center (SVDC) on-campus, where St. Vincent's kidney disease patients receive dialysis services, including hemodialysis and isolated ultrafiltration treatments as part of St. Vincent's end-stage renal disease program.  *Id.* at ¶ 36. Although together they form St. Vincent, the Hospital, SVMC and SVDC have separate corporate

---

[4] There are approximately 300 patients on the waitlist in the St. Vincent Transplant Program and approximately 700 patients who have received transplants in the last five years.  Another one thousand individuals are currently being evaluated for a place on the transplant waitlist.

[5] The Foundation is governed by a Board of Trustees, and SVMC is the sole corporate member of the Foundation.  Because the Foundation exists to support St. Vincent, the Debtors ultimately will seek to wind it down as well; however, they do not seek to do so through this Motion.  Given its status as a medical foundation, the Foundation will be subject to a separate wind-down plan in coordination with the California Attorney General.  The Foundation holds donor restricted funds, and owns: (i) a fractional timeshare of a condominium commonly known as 2600 Avenida Del Presidente, San Clemente, CA 92672; and (ii) Lot 10 of Block 572 of Rio Grande Estates, Unit 25, Valencia, NM.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

identities, and SVMC is the sole corporate member of SVDC.  *Id.*  Both SVMC and SVDC are exempt from federal income taxation as an organization described in § 501(c)(3) of the Internal Revenue Code of 1986.  *Id.* at ¶ 21.

6.    St. Vincent as of the Petition date employed approximately 1,099 employees, of which 897 were full time, 42 were part time, and 160 were per diem.  *Id.* at ¶ 59(f).  St. Vincent employees are represented by two unions with the respective contractual obligations: (i) SEIU-UHW (Non-Nursing Service Employees); and (ii) California Nurses' Association ("CNA") (Nurses).  *Id.* at ¶ 60.

7.    St. Vincent is a jointly "obligated" party with its affiliates on approximately $461.4 million of outstanding secured debt consisting of: (a) $259.4 million outstanding tax exempt revenue bonds, Series 2005 A, G and H issued by the California Statewide Communities Development Authority (the "2005 Bonds"), which loaned the bond proceeds to certain Debtors to provide funds for capital improvements and to refinance certain tax exempt bonds previously issued in 2001 by the Daughters of Charity Health System, and (b) $202.0 million outstanding tax exempt revenue notes, Series 2015 A, B, C, and D and Series 2017 issued by the California Public Finance Authority.  *Id.* at ¶ 121.

8.    St. Vincent has consistently lost money for many years due to, among other things, unfavorable payor contracts, rising health care costs, high pension obligations and certain requirements imposed on St. Vincent by the State of California Attorney General, as more fully described below.  *See id.* at ¶¶ 95, 99.  St. Vincent is also dramatically under invested in structural improvements necessary to meet California's state mandated seismic and clean energy requirements.  *Id.*  The combined effect of these issues have been a consistent drag in operating cash balances absent additional financing.  *See* Chadwick Decl., at ¶ 5.

9.    While the Debtors collectively have a poor financial history, St. Vincent has been particularly troubled.  *Id.* at ¶ 6.  On the Petition Date, although St. Vincent accounted for approximately only 23% of the patient volume of the entire Verity Health System, the hospital accounted for approximately 60% of the operating losses.  *Id.*  The Debtors project continuing operating losses by St. Vincent.  The reported financial statements of St. Vincent reflect that, in

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   fiscal year 2019 (ended June 30, 2019), SVMC lost approximately $65 million which was an 18%

2   and 103% increase over the fiscal years 2018 and 2017, respectively.  *Id.* at ¶ 8.

3   **B.    Marketing and Sale Efforts**

4         *(1)    Prepetition Sale Efforts*

5         10.    Prior to the Petition Date, the Debtors engaged in substantial efforts to market and

6   solicit interest in their assets, including the five Hospitals and related assets (collectively, the

7   "Assets"). *See Declaration of James M. Moloney in Support of the Debtors' Memorandum. in*

8   *Support of Entry of an Order: (A) Authorizing the Sale of Property Free and Clear of All Claims,*

9   *Liens and Encumbrances; (B) Authorizing the Assumption and Assignment of Designated*

10  *Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 2220]

11  (the "Moloney Sale Decl."), at ¶ 4.  In June 2018, Debtors engaged Cain Brothers, a division of

12  KeyBanc Capital Markets ("Cain"), to assist in identifying potential buyers of some or all of the

13  Assets and commenced discussions with those potential Buyers.    *Id.*    Cain prepared a

14  Confidential Investment Memorandum and organized an online data site to share information

15  with potential buyers and contacted strategic and financial buyers beginning in July 2018.  *Id.*  In

16  this initial marketing process, Cain contacted more than 100 potential partners to evaluate their

17  interest in exploring a transaction involving some or all of the Assets.  *Id.*  By August 2018, as a

18  result of its ongoing and broad marketing process, Cain had received 11 "Indications of Interest"

19  from potential buyers of some or all of the Assets.  *Id.*

20        *(2)    DIP Facility*

21        11.    At the commencement of the Cases, the Debtors obtained court approval for a DIP

22  financing facility with up to $185 million of availability from Ally Bank subject to a borrowing

23  base (the "DIP Facility").  (*See* Docket No. 409).  The DIP Facility was secured by substantially

24  all of the Debtors' assets and also provided for super priority administrative priority status for all

25  obligations under the facility.  *Id.*  The DIP Facility enabled Debtors to operate the Hospitals

26  while they continued their efforts to find a purchaser for their assets and to reach agreements with

27  key constituents.  *See* Chadwick Decl., at ¶ 7.  On September 6, 2019, the Debtors received

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    authority to pay off the DIP Facility and continue funding operations through the consensual use

2    of cash collateral [Docket No. 3022].

3                    *(3)    Postpetition Sale Efforts*

4            12.    Postpetition, Cain continued to work with potential buyers for some or all of the

5    Assets.  Moloney Sale Decl., at ¶ 5.  Based on these discussions, the Debtors determined that

6    seeking a buyer for the Assets in Santa Clara and a separate buyer for the other Assets would

7    most likely yield higher net proceeds for the Debtors' estates.  *Id.*  As a result, the sale of the

8    Santa Clara Assets to Santa Clara County was approved by the Court on December 27, 2018

9    [Docket No. 1153].

10           13.    Thereafter, Cain focused on marketing the Debtors' remaining Assets, including

11   St. Vincent.  Moloney Sale Decl., at ¶ 6.  As a part of this process, Cain contacted more 189

12   potential parties to evaluate potential stalking horse bidders for some or all of the Debtors'

13   remaining Assets of which 92 had executed a NDA and 18 submitted written proposals.  *Id.*

14   Subsequent to receiving access to the virtual data room and being offered additional information

15   via conference calls and site visits, many of the potential purchasers indicated that they were not

16   interested in being the stalking horse bidder.  *Id.*  During November and December 2018, the

17   Debtors and their advisors had substantial discussions with those potential buyers remaining,

18   during which Prime Healthcare and SGM emerged as the leading potential candidates to be

19   selected as the stalking horse bidder for the Debtors' remaining Assets.  *Id.*

20                   *(4)    The SGM APA*

21           14.    After extensive negotiations with both parties and careful review of the proposed

22   transactions by the Debtor and its advisors, the Debtors selected SGM as the stalking horse bidder

23   (the "Stalking Horse Bidder") for the Debtors' remaining Assets.  *Id.* at ¶ 7.  On February 19,

24   2019, the Court held a hearing on the Sale and Bidding Procedures Motion and thereafter entered

25   an order approving the Sale and Bidding Procedures Motion (the "Bidding Procedures Order")

26   [Docket No. 1572].  SGM served as the Stalking Horse Bidder under the terms of the Bidding

27   Procedures Order.  The Bidding Procedures Order also approved that certain asset purchase

28   agreement [Docket No. 2305-1] (the "SGM APA") as modified therein.

US_Active\113785270\V-10

15.    Cain sent the approved bidding procedures to the 90 parties with whom the Debtor had previously executed NDAs and included the timetable for the sale of the Debtors' remaining Assets.  Moloney Sale Decl., at ¶ 8.  Cain also requested that each party confirm that each party continued access to the data room and were interested in continuing to evaluate the purchase of some or all of the Debtors' remaining assets.  *Id.*  Nineteen of those parties confirmed that were still evaluating the transaction and requested continued access to the data room.  *Id.*

16.    Cain facilitated due diligence by potential buyers, including arranging site visits, organizing calls with the Debtors' leadership team and facilitated follow-up from the Debtors and their advisors to address diligence requests.  *Id.* at ¶ 9.  Of these nineteen interested parties, certain parties evaluated acquiring all the Debtors' remaining Assets, others evaluated acquiring individual hospitals, and others were real estate companies that evaluated purchasing St. Vincent to convert its campus to non-hospital uses.  *Id.*

17.    At the end of the marketing period, two parties submitted Qualified Bids, one for St. Vincent and one for St. Francis Medical Center, one party submitted a non-Qualified Bid for St. Francis Medical Center and one party submitted a non-Qualified Bid for all of the assets.  *Id.* at ¶ 10.  No Qualified Full Bid was received.

18.    Accordingly, under the terms of the SGM APA and the Bidding Procedures Order, no auction was held and the Debtors declared SGM as the "winning bidder" of the Hospitals.  Docket No. 2053, at 2.

19.    On May 2, 2019, the Bankruptcy Court entered the *Order (A) Authorizing the Sale of Certain of the Debtors' Assets to Strategic Global Management, Inc. Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of an Unexpired Lease Related Thereto; and (C) Granting Related Relie*f [Docket No. 2306] (the "Sale Order"), approving the sale to SGM (the "SGM Sale").  Pursuant to the SGM APA, SGM agreed to continue to operate St. Vincent as well as the Debtors' other three Hospitals.

20.    The Debtors had expected the SGM Sale to close in the fourth quarter of 2019.  On November 27, 2019, the Court entered an order and accompanying memorandum decision

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

8

1  requiring SGM to close the sale by December 5, 2019 [Docket Nos. 3723-24].  SGM did not

2  close the sale by December 5, 2019.

3      21.    The previous marketing and sale process yielded no buyer interested in the

4  purchase of St. Vincent as a going concern, and no alternate buyer is anticipated.  Moloney

5  SVMC Decl., at ¶ 4.  St. Vincent's operating losses are significant and unsustainable.  Chadwick

6  Decl., at ¶ 8. Consequently, the Debtors must start expeditiously resolving these Cases through

7  alternative transactions, including the relief sought in this Motion, pursuant to the authority

8  granted by the Court's order and accompanying memorandum decision [Docket Nos. 3783-84],

9  and consistent with their fiduciary duty.

10     22.    The Debtors recently stipulated with their prepetition secured lenders to extend

11 their consensual use of cash collateral [Docket Nos. 3871-72] (the "Cash Collateral Agreement").

12 **C.    Closure Plan**

13        *(1)    Overview*

14     23.    The Debtors, in consultation with their professionals and healthcare advisors, have

15 developed a comprehensive Closure Plan, certain key elements of which are described herein.

16     24.    The Closure Plan provides for each of the following steps to conclude St.

17 Vincent's operations and services:

18  • Cessation of new inpatient admissions and closure of the emergency department;

19  • Transfer, discharge, and referral of patients;

20  • Communication to employees, patients, providers, government entities, area

21    hospitals, and the community at large;

22  • Transfer, storage, and, when permitted, disposal of medical records;

23  • Disposal of pharmaceuticals, including controlled substances;

24  • Disposal and handling of medical waste and other hazardous materials;

25  • Coordination with Emergency Medical Services ("EMS") and removal of St.

26    Vincent road signs; and

27  • Implementation of enhanced security measures.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

9

25.    Above all, the Closure Plan emphasizes patient safety.  The Debtors plan to work closely with the California Department of Public Health ("CDPH"), UNOS, EMS, the Center for Medicare and Medicaid Services ("CMS"), and other licensing and governmental authorities, and area providers to prevent disruption of patient care and ensure a smooth transition of the Debtors' patients to alternate health care providers.  As part of the Closure Plan, St. Vincent's medical personnel will, among other steps, evaluate patients for safe transport, assess whether a patient is stable, obtain patient consents, obtain health plan authorization if required, and arrange for continuing care.  In furtherance of this goal, by this Motion the Debtors also seek authority to enter into and perform under new contracts, as appropriate (*e.g.*, with such providers who accept transfer of patients), to the extent permitted by the terms of their Cash Collateral Agreement.

(2)    *Timeline*

26.    Although subject to modification based on patient needs and input from the CDPH and others, the Debtors' current general timeline for shut-down of operations is as follows (all dates are calculated with reference to entry of an order granting this Motion):[6]

- Order + 1 day:    Notify EMS and place St. Vincent on diversion protocol for all patients.  Begin process of transferring patients, along with their medical record information, to a hospital of their choice.  This process includes outreach to local outpatient dialysis providers to help facilitate scheduling for St. Vincent dialysis outpatients with future appointments.

- Order + 3 days:    Complete the emergency unit closure.

- Order + 5 days:    Cease scheduling all elective procedures.

- Order + 7 days:    Conclude and cease all elective surgeries and other procedures.

- Order + 21 days:    Complete the dialysis unit closure.

- Order + 30 days:    Complete the transplant unit closure.

---

[6] All dates are subject to discussions with the CDPH, UNOS, and others as appropriate.

US_Active\113785270\V-10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- Order + 30 days:    Complete closure and cease clinical operations (the "Closure Date").

27.    Subsequent to the Closure Date, the Debtors will continue to assist with the coordination of care for certain patients with future outpatient appointments, namely those who are in the process of being evaluated for kidney and/or pancreas transplants and patients undergoing outpatient dialysis treatment.  The Debtors expect it will take approximately another 30 days to complete the coordination of care with other outpatient health care providers.

*(3)    Transfer, Discharge, and Referral of Patients*

28.    The most critical aspect of the Closure Plan is ensuring continuity of care for the Debtors' patients.  The majority of currently-admitted patients will be discharged in the ordinary course, and, if necessary, provided with information and assistance to make follow-up appointments with alternate providers.  Inpatients will be notified of the anticipated Closure and will be transferred to other area hospitals (such as GSH) if they still require inpatient hospital services as of the Closure Date.[7]  Arrangements with an ambulance carrier will be in place to accommodate the orderly transfer of all inpatients needing ambulance transport.  Outpatients with future appointments and patients of the St. Vincent Transplant Program will similarly be notified of the anticipated Closure and the Debtors will assist with care coordination with other hospitals and outpatient health care providers as appropriate for each type of patient (*e.g.*, GSH, St. Joseph, etc.).  Such care transfer arrangements likely will require entry into one or more postpetition contracts (*e.g.*, with hospitals, ambulance companies, outpatient providers, etc.), authority for which the Debtors request as part of this Motion's relief to implement the Closure Plan.  The Debtors expect to complete the transfer and discharge of all inpatients by the Closure Date.

---

[7] Transfers arranged by St. Vincent will require, at minimum, that (i) the attending physician has determined the patient is stable for transfer, approved the mode of transportation for the transfer and approved the transfer, in accordance with the medical staff bylaws of St. Vincent, (ii) the patient or the patient's representative has consented to the transfer, and (iii) the patient's health plan, if any, has approved the transfer.

US_Active\113785270\V-10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*(4)     Medical and Business Records Safeguard, Storage, Transfer, and Disposal*

29.     The safeguard, storage, transfer, and disposal of medical and business records are also an important element of the Closure Plan.  As part of the Closure Plan, the Debtors intend to transfer custody of St. Vincent's records to St. Francis Medical Center ("SFMC").  St. Vincent's electronic records are currently stored on the same server as SFMC's records, so only St. Vincent's physical records require manual transfer.  In SFMC's custody, St. Vincent's records will be maintained and retained in accordance with this Court's previous orders regarding (a) patient records [Docket No. 3597] and (b) business and other non-patient records [Docket No. 3596], to the extent applicable; otherwise, the Debtors will seek further disposition through a separate motion.  A phone number and email address will be posted for patients to request copies of their medical records and this information will also be provided to CDPH as part of the closure notification process.

*(5)     Communications Regarding the Closure Plan*

30.     The Debtors are currently developing a comprehensive approach to keep patients, employees, government agencies, area hospitals, and the community at large informed of the Closure process.  In particular, the Debtors will contact area hospitals and certain outpatient providers to inform them of the Closure and to discuss procedures for the transfer of patients.  In addition, the Debtors will notify the fire department and the appropriate regulatory and governmental agencies of the Closure.

31.     With respect to employees, the Debtors intend to arrange for job fairs with the desire that St. Vincent personnel may be hired by transferee hospitals and other local health care providers.

*(6)     Disposal of Controlled Substances, Pharmaceuticals, Medical Waste, and Other Hazardous Materials*

32.     The Debtors will manage and dispose of controlled substances, pharmaceuticals, medical waste, and other hazardous materials in accordance with state and federal guidelines. Medications, including controlled substances, radioactive materials, chemicals, medical waste, infectious materials, and other hazardous materials will be identified, secured and inventoried,

12

1    then destroyed, disposed of, returned to vendors, or transferred to other providers, as appropriate.

2    St. Vincent will engage vendors, as needed, to manage the disposal of medical waste and

3    infectious materials.    Retention of such vendors likely will require entry into one or more

4    postpetition contracts, authority for which the Debtors request as part of this Motion's relief to

5    implement the Closure Plan.

6                                              **IV.**

7                                          **ARGUMENT**

8        Pursuant to §§ 105(a), 363, and 1108, given the failure of the SGM Sale to close, the

9    Court should authorize the orderly closure of St. Vincent in accordance with the Closure Plan

10    because Closure will then be in the best interests of St. Vincent's patients, creditors, and the

11    Debtors' estates.

12    **A.**    **This Court Can Authorize the Closure of St. Vincent Pursuant to §105.**

13        Section 105(a) of the Bankruptcy Code in conjunction with the other sections referenced

14    herein permits the requested relief.    Section 105(a) provides:

15            The court may issue any order, process, or judgment that is
        necessary or appropriate to carry out the provisions of this title.    No
16            provision of this title providing for the raising of an issue by a party
        in interest shall be construed to preclude the court from, *sua sponte*,
17            taking any action or making any determination necessary or
        appropriate to enforce or implement court orders or rules, or to
18            prevent an abuse of process.

19    11 U.S.C. § 105(a).

20        "Section 105(a) vests bankruptcy courts with broad residual powers".    *In re Mastro*, 585

21    B.R. 587 (B.A.P. 9th Cir. 2018).    Section 105(a) thus "confers authority to 'carry out' the

22    provisions of the Code . . .".    *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014).

23        The Bankruptcy Court may evoke § 105(a) if necessary to preserve a right provided

24    elsewhere in the Code.    *Bessette v. Avco Fin. Servs. Inc.*, 230 F.3d 439 (1st Cir. 2000), *cert*

25    *denied*, 532 U.S. 1048 (2001);    *Law v. Siegel*, 134 S. Ct. at 1194; *see also In re Chaussee*, 399

26    B.R. 225, 235 (B.A.P. 9th Cir. 2008) ("powers granted to the court under § 105(a) to implement

27    the Code and prevent an abuse of process"); *In re Dyer*, 322 F.3d 1178, 1193 (9th Cir. 2003)

28    (§ 105(a) provides bankruptcy courts the power to enforce the Bankruptcy Code).  .

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

1   "In enacting § 105, Congress also recognized bankruptcy courts' inherent authority to 'run

2   their courtrooms and to supervise the attorneys appearing before them.'"  *In re Thueson*, No. 4-

3   08-BK-10121-JMM, 2009 WL 1076888, at \*12 (Bankr. D. Ariz. Mar. 12, 2009) (*quoting In re*

4   *Brooks-Hamilton*, 2009 WL 226002, at \*5 (9th Cir. BAP January 21, 2009)).  Bankruptcy courts,

5   accordingly, also have the power under § 105(a) to enforce their prior orders.  *See In re Stokes*,

6   No. 09-60265-7, 2013 WL 492477, at \*8 (Bankr. D. Mont. Feb. 8, 2013), *vacated and remanded*,

7   No. ADV 12-00052-RBK, 2013 WL 5313412 (B.A.P. 9th Cir. Sept. 23, 2013) ("This Court has

8   broad powers to enforce its orders under § 105(a).").

9       As more fully described below, the requested relief under § 105(a) is needed to preserve

10  Debtors' rights under §§ 363(b) and 1108 to use their property in a manner that will enable them

11  to move quickly to stave off continued losses and to address the current situation facing St.

12  Vincent given no new purchaser is reasonably anticipated.  In this case, if the Court enters an

13  order permitting closure, the Debtors will be able to quickly move forward and implement the

14  plans and procedures necessary to close the hospital.

15  **B.**    **Section 363(b) Authorizes the Debtors to Use Their Property According to Their**
    **Business Judgment**

16

17      The Court has the authority to grant the requested relief under § 363(b), which permits a

18  debtor to use its property in a manner which will enhance value to the estate.  The Debtors must

19  be able to "use" their property in a manner that permits them to stop St. Vincent's mounting

20  losses and to retain value for the benefit of the remaining estates.  More importantly in this case,

21  as a hospital system, the Debtors must use their property in a manner that protects the patients in

22  their care, who are best served by the orderly implementation of the Closure Plan.

23      Section 363(b) provides, in relevant part, that a debtor "after notice and a hearing, may

24  **use**, sell or lease, other than in the ordinary course of business, property of the estate . . . ".  11

25  U.S.C. § 363(b) (emphasis added).  While there is no legislative history to explain why the term

26  "use" is part of § 363(b), courts have viewed § 363(b) as providing flexibility to debtors in the

27  exercise of their business judgment.  In reviewing a debtor's decision to use estate property

28  pursuant to § 363, courts have routinely held that if such use represents reasonable business

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    judgment on the part of the debtor, such use should be approved.  *See In re Gardens Reg'l Hosp.*

2    *& Med. Ctr., Inc.*, Case No. 2:16-bk-17463-ER (Bankr. C.D. Cal. Jan. 20, 2017) (Robles, J.)

3    ("The closing of the hospital constitutes use of estate property, outside the ordinary course of

4    business, within the meaning of Bankruptcy Code §363(b).  The Debtor's decision to close the

5    hospital is a proper exercise of the Debtor's business judgment."); *see also In re Lionel Corp.*,

6    722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a

7    transaction under § 363).   "Ordinarily, the position of the trustee is afforded deference,

8    particularly where business judgment is entailed in the analysis or where there is no objection."

9    *In re Lahijani*, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005).

10    While the closure of St. Vincent is far from an ideal solution—in fact, it is a last, tragic

11    resort—in the absence of other alternatives, it is the only viable solution that will grant the

12    greatest safeguards to the patients in St. Vincent's care, accomplish the goal of addressing St.

13    Vincent's cash losses, and retain some value for the Debtors' stakeholders.   Declaration of

14    Richard Adcock (the "Adcock Decl."), at ¶¶ 5-6.  The Debtors are aware of their fiduciary duty to

15    creditors as debtors in possession, and have determined that ceasing operations at St. Vincent in

16    the absence of another viable solution is in the best interests of St. Vincent's individual estate as

17    well as the Debtors' collective estates.  *Id.*; *see also In re R.H. Macy & Co., Inc.*, 170 B.R. 69, 74

18    (Bankr. S.D.N.Y. 1994) ("The debtor's duty to maximize estate assets may require the cessation

19    of operations at one location.").

20    Courts emphasize that the business judgment rule may be satisfied "as long as the

21    proposed transaction appears to enhance the debtor's estate." *In re Food Barn Stores, Inc.*, 107

22    F.3d 558, 566 n.16 (8th Cir. 1997); *accord In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D.

23    Del. 2009) (the business judgment standard is "not a difficult standard to satisfy").   Under the

24    business judgment rule, "management of a corporation's affairs is placed in the hands of its board

25    of directors and officers, and the Court should interfere with their decisions only if it is made

26    clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the

27    officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate

28    information or study, are made in bad faith, or are in violation of the Bankruptcy Code."  *In re*

15

1  *Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists*

2  *Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762

3  F.2d 1303, 1309 (5th Cir. 1985); *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th

4  Cir. 1992)).   Here, the Debtors have determined in their business judgment that it is prudent to

5  seek permission to cease operations at St. Vincent.   Adcock Decl., at ¶ 6.   The Debtors have

6  limited cash, cannot continue operations of St. Vincent, and have therefore determined that it is in

7  the best interests of their respective estates and creditors to effectuate a Closure of St. Vincent and

8  focus on a safe and orderly wind-down through implementation of the Closure Plan.  *Id.* at ¶¶ 5-8.

9      In  *Gardens Regional Hospital*,  this  Court  granted  similar  relief  under  similar

10  circumstances.   This Court recognized the following facts in that case:

11         The Debtor's existing operations do not generate sufficient cash flow to
12         keep the hospital open.  To maintain operations, the Debtor would be
         required to obtain additional debtor-in-possession ("DIP") financing.  No
13         lenders will extend credit to the Debtor unless the credit is secured by a
         lien senior in priority to the liens of the Debtor's pre-petition secured
14         creditors.  Under the circumstances, the Court lacks the statutory authority
         to authorize the Debtor to obtain additional credit priming the liens of the
15         secured creditors.

16  Case No. 2:16-bk-17463-ER, Docket No. 633 (Bankr. C.D. Cal. Jan. 20, 2017).   As a result, the

17  Bankruptcy Court concluded that "[t]he closing of the hospital constitutes use of estate property,

18  outside the ordinary course of business, within the meaning of Bankruptcy Code §363(b).   The

19  Debtor's decision to close the hospital is a proper exercise of the Debtor's business judgment."

20  *Id.*

21      Indeed, this Court in *Gardens Regional Hospital* further recognized that under these

22  circumstances, the Debtors' very duty is to close the Hospital:

23         In view of the lack of funds to continue operations, and the inability of the
         Debtor to obtain additional credit, the vote by the Debtor's Board of
24         Directors ("Board") to seek closure of the hospital was entirely consistent
         with the Board's fiduciary duties, imposed under state law, to uphold the
25         hospital's mission of sustaining public health and welfare. Public health
         and safety would be jeopardized if the Debtor continued to admit new
26         patients when it lacks funds to adequately sustain operations. In fact, the
         Board would be acting in violation of its fiduciary duties to the community
27         if it attempted to continue operating the hospital despite the lack of
         sufficient cash to sustain operations.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

16

1   *Id.*

2          For all the same reasons here, the Debtors request urgent approval to close St. Vincent.

3   Absent the SGM Sale, there are no viable offers for St. Vincent as a going concern, and any delay

4   in commencing a closure plan prejudices patients and estate stakeholders.  Adcock Decl., at ¶ 5;

5   Moloney SVMC Decl., at ¶ 4; *see also* Chadwick Decl., at ¶¶ 7, 9.  The Motion is being made at

6   this time because the orderly transfer of patients and wind-down of St. Vincent will take time,

7   including time to arrange patient transfers with alternate health care providers.  Adcock Decl., at

8   ¶ 6.  Beyond transfer of inpatients, St. Vincent provides longer-term care for certain outpatients

9   receiving dialysis or on the UNOS transplant waitlist, which patients require further advance

10  planning as part of any transition.  *Id.*  So timing is truly of the essence and St. Vincent is seeking

11  authority to initiate this process as soon as possible.

12  **C.**      **Section 1108 Authorizes the Debtors *Not* to Operate Their "Moribund" Businesses**

13         Section 1108 of the Bankruptcy Code grants a debtor in possession the *right* to operate its

14  businesses, providing that the trustee (or debtor in possession) "*may* operate the debtor's

15  business."  11 U.S.C. § 1108 (emphasis added).  With its use of the permissive term, "may," the

16  statute "clearly indicates that a trustee is not required to operate the debtor's business."  *In re*

17  *Thrifty Liquors, Inc.*, 26 B.R. 26, 28 (Bankr. D. Mass. 1982).  Indeed, § 1108 "necessarily implies

18  the lesser authority to modify the operation of the business on such grounds as he deems

19  appropriate under the circumstances."  *Id.*  Thus, a debtor is not required to operate its business

20  "if such operations will reduce the value of the debtor's assets or if the debtor's business is

21  moribund."  7 *Collier on Bankruptcy,* ¶ 1108.13 (Alan N. Resnick & Henry Sommer eds., 16th

22  ed.).  Indeed, in such circumstances, "continued operation of a business that ought to be closed

23  down and liquidated may be a breach of the fiduciary duties of a trustee or debtor in possession."

24  *Id.*  As discussed further herein, the Debtors have determined that there are compelling reasons to

25  cease operations at St. Vincent.

26  **D.**      **Good Cause Exists for Granting the Relief**

27         This Court has the authority to order the closure based on the facts and evidence

28  presented.  *See* 11 U.S.C. §§ 105(a), 363(b), and 1108.  The Debtors intend to conduct the closure

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    in coordination with regulatory authorities and with due care for the patients and with the

2    assistance of their medical personnel.  Adcock Decl., at ¶ 9.  St. Vincent will place its license in

3    suspense, consistent with applicable law and with the assistance of the Debtors' health care

4    experts.[8]  *Id.*

5        After the closure of St. Vincent, the Debtors will seek to sell the land and buildings and

6    otherwise dispose of their assets (*e.g.*, equipment), as may be approved by this Court in

7    subsequent orders.

8        Relief similar to that requested herein has been granted in previous chapter 11 cases.  *See*

9    *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, Case No. 2:16-bk-17463-ER, Docket No. 633

10   (Bankr. C.D. Cal. Jan. 20, 2017) (Robles, J.) (order authorizing closure of the debtor hospital); *In*

11   *re Saint Vincents Catholic Med. Ctrs. of N.Y.*, Case No. 10-11963, Docket No. 276 (Bankr.

12   S.D.N.Y. May 14, 2010) (order authorizing continued implementation of closure plan for the

13   debtors' Manhattan hospital and certain affiliated outpatient clinics and practices); *In re Saint*

14   *Vincents Catholic Med Ctr. of N.Y.*, Case No. 05-14945, Docket No. 394 (Bankr. S.D.N.Y. Sept.

15   20, 2005) (order authorizing closure of St. Mary's hospital).

16                                          **V.**

17              **REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY**

18       Pursuant to Bankruptcy Rule 6004(h), the Debtors seek a waiver of any stay of the

19   effectiveness of any order granting the relief sought herein.  Bankruptcy Rule 6004(h) provides

20   that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed

21   until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R.

22   Bankr. P. 6004(h).  Here, failure to grant immediate relief would risk immediate and irreparable

23   harm to the Debtors' patients and the estates.   Adcock Decl., at ¶ 5; Chadwick Decl., at ¶ 4.

24   Notwithstanding the skill and dedication of the Debtors' employees to maintain St. Vincent's

25   operations, given the Debtors' financial condition and available funding, the Debtors must be

26

27

---

[8] *See* Cal. Health & Safety Code § 1300(a); *see also* Cal. Code Regs., tit. 22, §§ 70131 and 70133.

28

18

1  permitted to move expeditiously to implement a closure plan for St. Vincent, in coordination with

2  applicable governmental authorities.  Adcock Decl., at ¶ 5.

3
**VI.**

4
**CONCLUSION**

5
For all of the reasons stated above, the Debtors request that the Court grant the requested

6  relief.

7
DENTONS US LLP
Dated:  January 6, 2020              SAMUEL R. MAIZEL

8                                    TANIA M. MOYRON
NICHOLAS A. KOFFROTH

9

10

11                                   By:   _/s/ Tania M. Moyron_____

12
Attorneys for the Chapter 11 Debtors and

13                                   Debtors In Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

**DECLARATION OF RICHARD ADCOCK**

I, Richard G. Adcock, hereby state and declare as follows:

1.    I submit this declaration (the "Declaration") in support of the *Debtors' Emergency Motion for Authorization to Close St. Vincent Medical Center* (the "Motion"),[1] which seeks entry of an order authorizing the Debtors to: (a) take all actions necessary in the exercise of their business judgment to effectuate the orderly closure (the "Closure") of St. Vincent Medical Center (including its on-campus dialysis center, "St. Vincent"), including the transfer of patient care to other health care providers, the proper disposition of controlled substances and hazardous materials, notices to governmental entities, and ultimately, the cessation of operations at St. Vincent (the "Closure Plan"); and (b) granting such other relief as the Court deems just and proper in connection therewith.

2.    I am the Chief Executive Officer ("CEO") of Verity Health System of California, Inc. ("VHS"). I became VHS' CEO effective January 2018. Prior thereto, I served as VHS' Chief Operating Officer ("COO") beginning in August 2017. In my roles as COO and CEO at VHS, I have become intimately familiar with all aspects of the Debtors as well as those affiliated entities that are not in bankruptcy.

3.    I have worked for more than 25 years in the healthcare arena, with 15 years in not for profit operations. During this period, I have accumulated extensive senior level experience in the areas of not-for-profit healthcare, especially in healthcare delivery, hospital acute care services, health plan management, product management, acquisitions, integrations, population health management, budgeting, disease management and medical devices. I also have meaningful experience in other related areas, including human resources and personnel management.

4.    My background and familiarity with the Debtors' day-to-day operations, business and financial affairs, and the circumstances leading to the commencement of these chapter 11 bankruptcy cases are set forth more fully in my *Declaration filed in Support of Emergency First-*

---

[1] Unless otherwise defined, capitalized terms used herein shall have the same meaning as in the Motion.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_Active\113785270\V-10

1  *Day Motions* [Docket No. 8] on the Petition Date, and is incorporated by reference into this

2  Declaration.

3      5.      For all of the reasons set forth in the Motion and the supporting declarations, I

4  believe failure to grant immediate relief would risk immediate and irreparable harm to the

5  Debtors' patients and the estates.   The Debtors must be permitted to move expeditiously to

6  implement a closure plan for St. Vincent because it is the only viable solution at this point in

7  these cases and grants the greatest safeguards to the patients in St. Vincent's care.   As set forth in

8  the declaration of Peter Chadwick, St. Vincent has been operating at significant financial losses

9  (more than $65 million in fiscal year 2019 alone), which has become unsustainable for both St.

10 Vincent, and for the other Debtors forced to subsidize its losses.   Further, as set forth in the

11 declaration of James Moloney, there is no buyer who has presented a feasible offer to purchase

12 St. Vincent as a going concern and the previous marketing and sale process yielded no bid for St.

13 Vincent as a stand-alone hospital.   Even if there were any material and viable interest to purchase

14 St. Vincent, St. Vincent and the estates could not sustain the losses that would be incurred during

15 the regulatory review process, such as the losses borne during the Attorney General review

16 process for the sale to Strategic Global Management, Inc. ("SGM"), which failed when SGM did

17 not close the sale.

18     6.      Given the foregoing, the Debtors have determined in their business judgment that

19 it is in the best interest of the Debtors and their estates to seek immediate closure of St. Vincent.

20 Any delay in commencing a closure plan prejudices patients and the estates' stakeholders.   The

21 Motion is being made at this time because the orderly transfer of patients and wind-down of St.

22 Vincent will take time, including time to arrange patient transfers with alternate health care

23 providers.   Beyond transfer of inpatients, St. Vincent provides longer-term care for certain

24 outpatients receiving dialysis or on the UNOS transplant waitlist, which patients require further

25 advance planning as part of any transition.

26     7.      Further, as responsible stewards of patient safety, the Debtors' foremost

27 responsibility is delivery of high quality patient care, and consequently the Debtors must begin

28 the Closure Plan with sufficient cash on hand to orderly implement the plan and transfer of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   patients.  Currently, through use of cash collateral, the Debtors have sufficient cash on hand to

2   conduct the Closure.  However, this assumes that the current daily loss rate does not increase

3   significantly and that the proposed Closure Plan is approved.  Continuing to incur operating

4   losses at St. Vincent outside the Closure Plan would only deplete cash resources and place St.

5   Vincent and the Debtors in a position that they would not have sufficient cash on hand to conduct

6   the orderly Closure.

7       8.      The Debtors anticipate it will take 30 days to discharge acute care patients.  As

8   part of the Closure Plan, St. Vincent intends to enter into an agreement with Good Samaritan

9   Hospital ("GSH") whereby GSH will accept transfers of St. Vincent's inpatients, subject to

10  applicable legal requirements.  GSH is located approximately one mile from St. Vincent.  With

11  respect to patients in St. Vincent's kidney/pancreas transplant program, it will take (i) 30 days to

12  transfer those currently receiving care to alternate providers, and (ii) 60 days to coordinate care

13  with other outpatient health care providers for those patients who are being evaluated for the

14  program or have already received a transplant and been discharged.  St. Joseph Hospital ("St.

15  Joseph") has agreed to assume care of the kidney transplant patients who are part of the St.

16  Vincent Transplant Program, subject to approval of the United Network for Organ Sharing

17  ("UNOS").  St. Joseph has its own UNOS-approved Kidney Transplant Program.  The Debtors

18  are in discussions with other area hospitals to coordinate the transfer of care for the pancreas-only

19  transplant patients (less than twenty patients).

20      9.      The Debtors intend to conduct the Closure in coordination with regulatory

21  authorities and with due care for the patients and with the assistance of their medical personnel.

22  St. Vincent will place its license in suspense, consistent with applicable law and with the

23  assistance of the Debtors' health care experts.

24      I declare under penalty of perjury that, to the best of my knowledge and after reasonable

25  inquiry, the foregoing is true and correct.

26      Executed this 6th day of January, 2020, at Los Angeles, California.

27

28      _____
                    RICHARD G. ADCOCK

3

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## DECLARATION OF PETER C. CHADWICK

I, Peter C. Chadwick, hereby state and declare as follows:

1.    I submit this declaration (the "Declaration") in support of the *Debtors' Emergency Motion for Authorization to Close St. Vincent Medical Center* (the "Motion"),[1] which seeks entry of an order authorizing the Debtors to: (a) take all actions necessary in the exercise of their business judgment to effectuate the orderly closure of St. Vincent Medical Center (including its on-campus dialysis center, "St. Vincent"), including the transfer of patient care to other health care providers, the proper disposition of controlled substances and hazardous materials, notices to governmental entities, and ultimately, the cessation of operations at St. Vincent; and (b) granting such other relief as the Court deems just and proper in connection therewith.

2.    I am a Managing Director of Berkeley Research Group, LLC ("BRG") and am duly authorized to make this declaration on behalf of BRG.  Except as otherwise noted, the facts set forth herein are personally known to me and, if called as a witness, I could and would testify thereto.[2]  In July 2018, BRG began its engagement serving as the financial advisor to the Debtors, which has continued since the Petition Date.  In this capacity, I have become intimately familiar with the Debtors' operations, business, books, records, financial affairs, material agreements, and sale processes, and, as a result, have become uniquely situated to assist the Debtors.

3.    As a result, pursuant to the Debtors' request, and as authorized by the Bankruptcy Court, I have agreed to serve in the role of Chief Financial Officer to the Debtors in these chapter 11 cases.    I have significant operating experience, including improving underperforming businesses and advising debtors and creditors in complex financial matters.  I have served as chief executive officer, chief operating officer, chief financial officer, and advisor to companies in a variety of industries.  My healthcare experience includes acting as the advisor or an officer to healthcare providers, including leading hospital systems and long-term care providers through

---

[1] Unless otherwise defined, capitalized terms used herein shall have the same meaning as in the Motion.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at BRG and are based on information provided to me by such other BRG professionals.

1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

operational turnarounds and financial restructurings.  As an officer or advisor, I prepared and implemented post-acquisition integration plans, viability plans, asset dissolution strategies, and liquidity enhancement plans.  My experience spans the spectrum from the largest U.S. companies to middle market proprietary companies.

4.    For all of the reasons set forth in the Motion and the supporting declarations, failure to grant immediate relief would risk immediate and irreparable harm to the Debtors' patients and the estates.

5.    When the Debtors filed their chapter 11 cases, they represented that St. Vincent had consistently lost money for many years due to, among other things, unfavorable payor contracts, rising health care costs, high pension obligations and certain requirements imposed on St. Vincent by the State of California Attorney General.  They also represented that St. Vincent was dramatically under invested in structural improvements necessary to meet California's state mandated seismic and clean energy requirements.  However, the combined effect of these issues have been a consistent drag in operating cash balances absent additional financing.

6.    While the Debtors collectively have a poor financial history, St. Vincent has been particularly troubled.  On the Petition Date, although St. Vincent accounted for approximately only 23% of the patient volume of the entire Verity Health System, the hospital accounted for approximately 60% of the operating losses.

7.    The DIP Facility enabled Debtors to operate the Hospitals while they continued their efforts to find a purchaser for their assets and to reach agreements with key constituents. The Debtors had expected the SGM Sale to close in the fourth quarter of 2019, but it did not.  At this point, even if there were any material interest (which there is not), St. Vincent and the estates could not sustain the losses that would be incurred during the regulatory review process, such as the losses borne during the Attorney General review process for the sale to Strategic Global Management, Inc. ("SGM"), which failed when SGM did not close the sale.

8.    St. Vincent's operating losses are significant and unsustainable.   The reported financial statements of St. Vincent reflect that, in fiscal year 2019 (ended June 30, 2019), SVMC

2

1   lost approximately $65 million which was an 18% and 103% increase over the fiscal years 2018

2   and 2017, respectively.

3       9.      Although the Debtors have continued operating St. Vincent by subsidizing its

4   losses in pursuit of selling the entire health system as a whole, the failure of SGM to close the

5   SGM Sale and the Debtors' liquidity constraints requires the immediate reduction of operating

6   losses to preserve the other hospitals' ability to continue to operate while alternative transactions

7   are pursued.

8       10.     The Debtors recently stipulated with their prepetition secured lenders to extend

9   their consensual use of cash collateral to help fund the resolution of these Bankruptcy Cases. The

10  Debtors anticipate that by mitigating St. Vincent's operational losses through closure of its

11  facilities as expediently as possible, the Debtors will have sufficient cash-on-hand (*e.g.*,

12  remaining proceeds from the hospital sales to Santa Clara County plus extended consensual use

13  of cash collateral) to fund the Closure in an orderly manner.

14      I declare under penalty of perjury that, to the best of my knowledge and after reasonable

15  inquiry, the foregoing is true and correct.

16      Executed this 6th day of January, 2020, at Los Angeles, California.

17

18                                          PETER C. CHADWICK

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

US_Active\113785270\V-10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    **DECLARATION OF JAMES M. MOLONEY**

2    I, James M. Moloney, hereby state and declare as follows:

3    1.    I submit this declaration (the "Declaration") in support of the *Debtors' Emergency*

4    *Motion for Authorization to Close St. Vincent Medical Center* (the "Motion"),[1] which seeks entry

5    of an order authorizing the Debtors to: (a) take all actions necessary in the exercise of their

6    business judgment to effectuate the orderly closure of St. Vincent Medical Center (including its

7    on-campus dialysis center, "St. Vincent"), including the transfer of patient care to other health

8    care providers, the proper disposition of controlled substances and hazardous materials, notices to

9    governmental entities, and ultimately, the cessation of operations at St. Vincent; and (b) granting

10    such other relief as the Court deems just and proper in connection therewith.

11    2.    I am a managing director of Cain Brothers ("Cain"), which is a division of

12    KeyBanc Capital Markets Inc., a wholly-owned broker/dealer subsidiary of KeyCorp and an

13    affiliate of KeyBank National Association.  I am located in Cain's San Francisco office which is

14    located at One California Street, Suite 2400, San Francisco, California.  Mr. Carsten Beith and I

15    are the co-heads of Cain's Health Systems Mergers & Acquisition group.  I am over the age of 18

16    and competent to testify as to the facts set forth herein and will do so if called upon.

17    3.    As set forth in my previous declarations, beginning in June 2018, Cain began

18    working with the Debtors to collect and review financial, operational and other information about

19    the historic, current and project future operations and financial performance of each of the

20    Debtors.  Cain also began searching for a buyer or buyers for the Debtors' assets and created a

21    potential list of buyers for the Verity Heath System as a whole or in parts.  Mr. Beith and I led the

22    marketing and sale efforts on behalf of Verity and advised Verity in connection with Verity's

23    selection of Strategic Global Management, Inc., as the Stalking Horse Buyer for the Debtors'

24    Hospitals and related assets.

25    4.    The previous marketing and sale process yielded no bid for St. Vincent as a stand-

26    alone hospital.  Further, in our most recent discussions and outreach to potential buyers of the

27

28

[1] Unless otherwise defined, capitalized terms used herein shall have the same meaning as in the Motion.

1

debtors' assets, no potential bidders have expressed an interest in purchasing St. Vincent to operate the hospital as a going concern.  Today, however, I did have a telephone conversation with a potential bidder that expressed an interest in acquiring St. Vincent with an unidentified partner with hospital operating experience.  This potential bidder indicated that their long-term interest for St. Vincent was as a real-estate investment if the hospital operating partner could not develop a viable plan to operate St. Vincent's profitably.  My discussion with this bidder indicated that limited due diligence had been conducted and that it may not have experience with the regulatory approval process required for such a transaction.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 6th day of January, 2020, at San Francisco, California.

_____
JAMES M. MOLONEY

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

2

US_Active\113785270\V-10