Mark A. Neubauer (73728)
mneubauer@carltonfields.com
CARLTON FIELDS, LLP
2000 Avenue of the Stars, Suite 530N
Los Angeles, CA 90067-4707
Telephone: (310) 843-6300
Facsimile: (310) 843-6301

Donald R. Kirk (*Admitted Pro Hac Vice*)
DKirk@carltonfields.com
John Ryan Yant (*Admitted Pro Hac Vice*
ryant@carltonfields.com
Carlton Fields, P.A.
4221 W. Boy Scout Blvd., Suite 1000
Tampa, FL 33607-5780
Telephone:  (813) 223-7000

Attorneys for Creditor St. Vincent IPA
Medical Corporation

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.:  2:18-bk-20151-ER |
| VERITY HEALTH SYSTEM OF CALIFORNIA, INC., et al., | Chapter 11; Assigned to Hon. Ernest M. Robles |
| Debtors and Debtors in Possession. | **ST. VINCENT IPA'S NOTICE OF MOTION, MOTION TO ENFORCE CRITICAL VENDOR AGREEMENT, MEMORANDUM OF POINTS AND AUTHORITIES, AND DECLARATION OF DR. JEFFREY HENDEL** |
| Affects St. Vincent Medical Center | |
| | Date:    March 18, 2020<br>Time:    10:00 a.m.<br>Place:    Courtroom 1568<br>        United States Bankruptcy Court<br>        Central District of California<br>        Roybal Courthouse<br>        255 E. Temple St.<br>        Los Angeles, CA 90012 |
| | Petition Filed:  August 31, 2018 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLEASE TAKE NOTICE** that, on March 18, 2020 at 10:00 a.m., in Courtroom 1568 of the United States Bankruptcy Court, Central District of California, Roybal Courthouse, 255 E. Temple St., Los Angeles, CA 90012, St. Vincent IPA Medical Corporation ("Group") will move this Court for entry of an order (the "Motion") to enforce Verity Health System of California, Inc.'s, and the above-captioned debtors' (collectively, the "Debtors") compliance with an April 3, 2019 settlement agreement between Group and Debtors (the "Critical Vendor Agreement"). This Court approved the Critical Vendor Agreement on May 14, 2019 (Doc. 2371). Under the Critical Vendor Agreement, Debtors are required to pay Group an interim settlement payment of $150,000.00 for each post-petition month Group provides services under the Critical Vendor Agreement. Group provided services to the Debtor under the Critical Vendor Agreement in January 2020. The Debtors have refused to pay the agreed upon interim settlement payment. Group seeks to enforce Debtors' compliance with this payment provision.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion, Motion to Enforce Critical Vendor Agreement, the accompanying Memorandum of Points and Authorities, and Declaration of Jeffrey Hendel, M.D. (the "Hendel Declaration"), the Critical Vendor Agreement, the order approving the Critical Vendor Agreement (Doc. 2371), the supporting statements, arguments and representations of counsel who will appear at the hearing on the Motion, the record in these bankruptcy cases, and any other evidence properly brought before the Bankruptcy Court in all other matters of which the court may properly take judicial notice.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(f)(1), any party opposing or responding to the Motion must file a response (the "Response") with the Bankruptcy Court and serve a copy of it upon the moving party and the United States Trustee not later than 14 days before the date designated for the hearing on the Motion. Any Response must be a complete written statement of all reasons in opposition or in support of the Motion, and include any declarations and copies of all evidence on which

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the responding party intends to rely, and any responding memorandum of points and authorities.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the failure to file and serve a timely objection to the Motion may be deemed by the Bankruptcy Court to be consent to the relief requested therein.

Dated:  February 24, 2020                    CARLTON FIELDS, LLP
                                             MARK A. NEUBAUER
                                             DONALD R. KIRK
                                             J. RYAN YANT

                                             By:___/s/ Mark A. Neubauer_____
                                                  Mark A. Neubauer
                                                  Attorneys for St. Vincent IPA
                                                  Medical Corporation

ST. VINCENT IPA'S NOTICE OF MOTION, MOTION TO ENFORCE CRITICAL VENDOR AGREEMENT,
MEMORANDUM AND POINTS OF AUTHORITY, AND DECLARATION OF DR. JEFFREY HENDEL
121009432.3

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.    INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................................... 1

   a)    Prepetition Background ................................................................................. 1

   b)    Post-Petition ................................................................................................... 3

III.    ARGUMENT ........................................................................................................ 6

The Court should enforce the Critical Vendor Agreement and require the Debtors to provide the Group with their contractually agreed upon compensation for services rendered in January 2020. ........................................................................................... 6

IV.    CONCLUSION ..................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Jeff D. v. Andrus*,
   899 F.2d 275 (9th Cir. 1989) .......................................................................................... 6

*Salimi v. MBW Fin. Serv. NA, LLC*,
   2017 WL 4570367 (N.D. Cal. Sept. 29, 2017) ............................................................. 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

St. Vincent IPA Medical Corporation ("Group") seeks to enforce the April 3, 2019 settlement agreement (the "Critical Vendor Agreement") entered into between the Group and Verity Health of California, Inc. and the above-captioned affiliated debtors (collectively, the "Debtors") and the related *Order Granting Debtors' and Official Committee of Unsecured Creditors' Joint Notice of Motion and Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 363 and 105 and Fed. R. Bankr. P. 9019 Authorizing Entry into Settlement Agreement with St. Vincent IPA* (Doc. 2371, the "Order") which approved the Critical Vendor Agreement.  Specifically, the Group seeks to enforce the Critical Vendor Agreement provision, paragraph d, that requires Debtors to pay the Group $150,000 for providing services rendered during January 2020.

The Critical Vendor Agreement settled pre and post-petition disputes between Group and St. Vincent Medical Center ("Hospital") relating to the Healthcare Services Risk Sharing Agreement, as amended (the "Risk Pool Agreement").[1]  The Risk Pool Agreement created a risk sharing pool between Hospital and Group for splitting revenue and expenses related to medical services and hospital patient care for member patients ("Member(s)") of certain prepaid capitated health care plans.  The Critical Vendor Agreement ensured that the Group would provide post-petition services under the Risk Pool Agreement. Under the Critical Vendor Agreement, a tradeoff for providing such services is the $150,000 monthly payment for each post-petition month the Group provided said services.  The Debtors have refused to pay for services the Group provided during January 2020.

**II.   STATEMENT OF FACTS**

**a)   Prepetition Background**

---

[1] Because of its size, the Risk Pool Agreement is not attached.  A true and correct copy of the Risk Pool Agreement was previously filed at Doc. 108-2, and Group respectfully asks the Court to take judicial notice thereof.

1

The Group is comprised of approximately 200 doctors who worked at the Hospital. The Group's patients accounted for approximately seven to ten percent of the patients treated at Hospital and generated significant revenue for Hospital as a result of the coordinated medical services administered and managed by Group pursuant to the Risk Pool Agreement. Declaration of Jeffrey Hendel, M.D. ("Hendel Decl."), ¶ 4.

The Risk Pool Agreement created a risk sharing pool for revenue and expenses related to medical services and hospital patient care for patients of certain prepaid capitated health care plans (the "Risk Pool").[2] Hendel Decl. ¶ 5. Essentially, the Risk Pool is comprised of moneys Hospital receives from the capitated healthcare plans as prepayments for all future care Member patients need. Hendel Decl. ¶ 5. Typically, the Risk Pool receives $1,450,000 monthly from the prepaid capitated health care plans to pay for all institutional charges associated with Member patient care, both those from Verity, as well as third-party charges from outside hospitals, ambulances, hemodialysis, and DME expenses. Hendel Decl. ¶ 5. Both Hospital and the Group have specific duties and rolls under the Risk Pool Agreement pertaining to the Risk Pool. Hendel Decl. ¶ 5.

Hospital is responsible for establishing and maintaining the Risk Pool, to which "Hospital Risk Revenues"[3] for a calendar year are credited and "Hospital Risk Expenses"[4] for a calendar year are debited. *See* Risk Pool Agreement ¶ 1.15.

Hospital Risk Revenues largely consist of the $1,450,000 in monthly prepaid capitated payments made by the capitated plans. Hendel Decl. ¶ 6. These capitated

---

[2] "Risk Pool" is defined in the Risk Pool Agreement (paragraph 1.15) as follows: "Risk Pool shall mean the risk pool established and administered by Hospital under the Critical Vendor Agreement to which Hospital Risk Revenues are credited and from which Hospital Risk Expenses are debited. Although such Risk Pool shall include an aggregation of all Hospital Risk Revenues and Hospital Risk Expenses related to all Plans, the Risk Pool shall be established so as to allow a separate accounting of an individual Plan's related Hospital Risk Revenues and Hospital Risk Expenses."

[3] As that term is defined in the Risk Pool Agreement at paragraph 1.07.

[4] As that term is defined in the Risk Pool Agreement at paragraph 1.06.

2

payments are predetermined and fixed; the capitated plans pay a set amount per Member, regardless of the actual amount of services ultimately provided or whether Hospital provides the care or the care is outsourced to a third party facility. Hendel Decl. ¶ 6. These fixed payments are not supplemented if the patient care is underfunded and are not refunded if patient care costs less than what was initially paid by the capitated plan. *See* Hendel Decl. ¶ 6; Risk Pool Agreement ¶ 2.01.

The Group manages Member patient care within the confines of the Risk Pool Funds. Hendel Decl. ¶ 7. The Group ensures that Member patients receive top quality medical care while staying at or under budget. Hendel Decl. ¶ 7. Through the Group's effective management, Member patients often receive the medical care they need for less than what was prepaid into the Risk Pool. Hendel Decl. ¶ 7. The extent of the capitated payments that are not ultimately used, utilized, or expensed create, in the aggregate, a surplus which is not returned or refunded to the capitated health care plans. Hendel Decl. ¶ 7. Group and Hospital split this surplus at the end of the year between the Group and Hospital, with the Group's share serving as its sole compensation for its services provided under the Risk Pool Agreement. *See* Risk Pool Agreement ¶ 4.04.

**b)** **Post-Petition**

On April 3, 2019, Group and Debtors entered into and executed the Critical Vendor Agreement, a copy of which is attached as **Exhibit A**. The Critical Vendor Agreement designated Group a "Critical Supplier" for Debtors, as Group was critical to patient care, and governed the terms by which Group provided continued services to the Hospital under the Risk Pool Agreement post-petition.

Debtors and Group agreed that "until a sale of St. Vincent Medical Center has closed, Verity shall make $150,000 of interim monthly payments" for services rendered post-petition (the "Interim Settlement Payment(s)"). Critical Vendor Agreement, Paragraph d. This mandatory monthly payment was a material inducement to Group; Group would not have entered into the Critical Vendor Agreement without it. Hendel Decl. ¶ 9. The "payments represent draws against what may be owed to [Group] for the

3

current, post-petition Risk Pool year, and are subject to a True Up as well using
Milliman's calculation for IBNR as agreed by both parties." Ex. A, paragraph d. This
True Up occurs only after the monthly Interim Settlement Payments are made and does
not relieve Debtors from making the monthly payments. Hendel Decl. ¶ 9. Instead, it is
designed to protect Debtors if those monthly payments ultimately result in an
overpayment. *See* Hendel Decl. ¶ 9. After a Risk Pool year closes, Debtors and Group
analyze the Hospital Risk Revenues and Hospital Risk Expenses for the Risk Pool year in
order to determine the final Risk Pool surplus. Hendel Decl. ¶ 9. This process is a
lengthy and time consuming endeavor. Hendel Decl. ¶ 9. The Interim Settlement
Payments are then applied to Group's share of the Risk Pool surplus, followed by a "true
up" of the Risk Pool surplus. Hendel Decl. ¶ 9. If there is a resulting underpayment, the
Debtors pay that difference. Hendel Decl. ¶ 9. If there is an overpayment (rare), the
Group pays that difference. Hendel Decl. ¶ 9.

On April 10, 2019, Verity filed the *Debtors' and Official Committee of Unsecured
Creditors' Joint Notice of Motion and Motion for Entry of an Order Pursuant to 11
U.S.C. §§363 and 105 and Fed. R. Bankr. P. 9019 Authorizing Entry into Settlement
Agreement with St. Vincent IPA; Memorandum of Points and Authorities; Declaration of
Richard G. Adcock* seeking approval of the Critical Vendor Agreement. Doc. 2112. The
Debtors stated that the "significance of the [Critical Vendor] Agreement is that it will
allow [Group] and the Debtors to continue to operate pursuant to Customary Trade Terms
until a sale of St. Vincent Medical Center has closed," without reference to any particular
sale, and that "the contractual relationship embodied in the [Critical Vendor] Agreement
provides stability, allows for risk sharing between [Group] and the Debtors, and will
enable the Debtors to offer continuity of care to patients at St. Vincent Medical Center."
Doc. 2112 at pp. 11 and 13.

On May 8, 2019, this Court issued its tentative ruling on the Motion and
acknowledged that Debtors' required monthly Interim Settlement Payments is a material
term of the Critical Vendor Agreement. Doc. 2350, the "Tentative Ruling", pp. 2-3. On

ST. VINCENT IPA'S NOTICE OF MOTION, MOTION TO ENFORCE CRITICAL VENDOR AGREEMENT,
MEMORANDUM AND POINTS OF AUTHORITY, AND DECLARATION OF DR. JEFFREY HENDEL
121009432.3

May 14, 2019, this Court entered its Order adopting the Tentative Ruling and approved the Agreement.  Doc. 2371.

The Group thereafter fully performed under the Critical Vendor Agreement and Risk Pool Agreement through January 2020.  Hendel Decl. ¶ 10.  There has been no closing of a sale of St. Vincent Medical Center.  Hendel Decl. ¶ 10.  Consequently, the Debtors are obligated to make the January 2020 $150,000 Interim Settlement Payment. Hendel Decl. ¶ 10.  The Debtors have stated that they will not make the January 2020 Interim Settlement Payment.  Hendel Decl. 10.

The parties' Critical Vendor Agreement obligations were designed to continue until the contractual relationship between Group and Hospital terminated, either when Hospital assigns the Risk Pool Agreement to a third party via a sale or when the Risk Pool Agreement is rejected or otherwise terminated.  Hendel Decl. ¶ 11.  Otherwise, Group would be in a position of having to provide post-petition services to the Debtors without any guarantee or other assurance of payment, particularly in a rapid closure scenario as here.  The Group fully performed under its agreements to provide health safety services to the Members.  Hendel Decl. ¶ 11.  The Debtors should not now be permitted to ignore their reciprocal and Court ordered obligations under that same agreement.

On January 6, 2020, the Debtors filed their *Emergency Motion for Authorization to Close St. Vincent Medical Center; Memorandum of Points and Authorities and Declarations in Support Thereof* (Doc. 3906. "Motion to Close"), seeking approval to expeditiously close the Hospital.  On January 9, 2020, the Court approved the Motion to Close (Doc. 3934), permitting a quick, staged cessation of all operations of the Hospital. The order did not extinguish Group's or Debtors' contractual duties under the Critical Vendor Agreement.

The Debtors seek to reject the Risk Pool Agreement as of January 31, 2020. *Debtors' Notice of Motion and Motion to Reject, Pursuant to 11 U.S.C. § 365(a), Risk-Sharing Agreement with SVIPA; Memorandum of Points and Authorities; Declaration of*

ST. VINCENT IPA'S NOTICE OF MOTION, MOTION TO ENFORCE CRITICAL VENDOR AGREEMENT, MEMORANDUM AND POINTS OF AUTHORITY, AND DECLARATION OF DR. JEFFREY HENDEL
121009432.3

*Richard G. Adcock* (Doc. 4051, "Motion to Reject"). The Debtors state that the Group will not "be entitled to further compensation under the Critical Vendor Agreement on or after February 1, 2020." Motion to Reject, p. 6.

The Group provided services under the terms of the Critical Vendor Agreement through January 31, 2020 despite the Hospital eliminating services on-site, outsourcing services traditionally provided to Member patients at the Hospital to third-party providers at a substantially increased expense and to the detriment of Group. Hendel Decl. ¶ 14.

## III.    **ARGUMENT**

**The Court should enforce the Critical Vendor Agreement and related Order and require the Debtors to timely provide the Group with its compensation for services rendered in January 2020.**

An agreement to settle a legal dispute is a contract that is enforceable like any other contract. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *Salimi v. BMW Fin. Serv. NA, LLC*, 2017 WL 4570367, at *7 (N.D. Cal. Sept. 29, 2017) ("A settlement agreement is a contract, and this Court interprets the settlement agreement under California law"). "Each party agrees to 'extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract.'" *Andrus*, 899 F.2d at 759. Courts construe orders and consent decrees as contracts. *Id*.

The Critical Vendor Agreement is a contract between the Debtors and the Group, approved and ratified by this Court. Pursuant to that contract, Debtors <u>shall</u> make monthly $150,000 Interim Settlement Payments to the Group for services rendered in any post-petition month. Payments are not discretionary; as long as the Group provides services, it is entitled to payment, subject of a later "true up." As this Court recognized in its Tentative Ruling, such payments were a material term for the Group to continue providing services post-petition under the Risk Pool Agreement.

Group was contractually required to provide services under the Critical Vendor Agreement until January 30, 2020, the date that the Debtors seek to terminate the Risk Pool Agreement. Failure to do so subjected Group to voidability of payments it received

ST. VINCENT IPA'S NOTICE OF MOTION, MOTION TO ENFORCE CRITICAL VENDOR AGREEMENT,
MEMORANDUM AND POINTS OF AUTHORITY, AND DECLARATION OF DR. JEFFREY HENDEL
121009432.3

pursuant to the Critical Vendor Agreement.  The fact that the KPC sale of the Hospital did not occur is of no consequence under the plain terms of the Critical Vendor Agreement and Order.

Equity also compels enforcing the Critical Vendor Agreement and requiring the Debtors to make the January Interim Settlement Payment.   Group provided services under the Critical Vendor Agreement – both before and after the Debtors filed the Motion to Close – in anticipation that Debtors would pay the Interim Settlement Payment. Further, the Critical Vendor Agreement protects the Debtors from overpayment to the Group if the January 2020 risk pool ultimately has a deficit, as it specifically provides for True Up provisions.  Consequently, there is no prejudice to the Debtors.

## IV.    **CONCLUSION**

Group provided services under the Court approved Critical Vendor Agreement during January 2020.  Under the Critical Vendor Agreement and related Court approval order, Group is entitled to a $150,000 Interim Settlement Payment for those services.

Dated:  February 24, 2020              CARLTON FIELDS, LLP
                                        MARK A. NEUBAUER
                                        DONALD R. KIRK
                                        RYAN YANT


                                        By:___/s/ Mark A. Neubauer_____
                                           Mark A. Neubauer
                                        Attorneys for St. Vincent IPA
                                        Medical Corporation

7

# DECLARATION OF DR. JEFFRY HENDEL

I, Jeffrey Hendel, M.D., declare as follows:

1. At all times herein mentioned, I am and have been the President of movant St. Vincent IPA Medical Corporation (the "Group"). As President of the Group, I am personally familiar with the Group's operations, its relationship and dealings with Debtor St. Vincent Medical Center ("Hospital"), Verity Health System of California, Inc. and the above-referenced affiliated Debtors (collectively, the "Debtors"), including the Healthcare Services Risk Sharing Agreement, as amended (collectively the "Risk Pool Agreement"), the Group's dealings with Hospital and Verity, and the Critical Vendor Agreement. All of the Group's dealings and transactions with St. Vincent have been and are all conducted either by me or under my supervision, direction and control.

2. Based on my position and activities with the Group, I have personal knowledge of all of the facts set forth in this Declaration and, if called and sworn as a witness at trial or at any other hearing before this Court, would and could testify as set forth in this Declaration.

3. I make this declaration in support of St. Vincent IPA's Notice of Motion, Motion to Enforce Critical Vendor Agreement, Memorandum and Points of Authority, and Declaration of Dr. Jeffrey Hendel.

4. The Group is comprised of approximately 200 doctors who worked at the Hospital. The Group's patients accounted for approximately seven to ten percent of the patients treated at Hospital and generated significant revenue for Hospital as a result of the coordinated medical services administered and managed by Group pursuant to the Risk Pool Agreement.

5. The Risk Pool Agreement created a risk sharing pool for revenue and expenses related to medical services and hospital patient care for patients of certain

ST. VINCENT IPA'S NOTICE OF MOTION, MOTION TO ENFORCE CRITICAL VENDOR AGREEMENT, MEMORANDUM AND POINTS OF AUTHORITY, AND DECLARATION OF DR. JEFFREY HENDEL
121009432.3

prepaid capitated health care plans (the "Risk Pool").[5]  Essentially, the Risk Pool is comprised of moneys Hospital receives from the capitated healthcare plans as prepayments for all future care Member patients need.  Typically, the Risk Pool receives $1,450,000 monthly from the prepaid capitated health care plans to pay for all institutional charges associated with Member patient care, both those from Verity, as well as third-party charges from outside hospitals, ambulances, hemodialysis, and DME expenses.  Both Hospital and the Group have specific duties and rolls under the Risk Pool Agreement pertaining to the Risk Pool.  Hospital is responsible for establishing and maintaining the Risk Pool, to which "Hospital Risk Revenues"[6] for a calendar year are credited and "Hospital Risk Expenses"[7] for a calendar year are debited.

6.      Hospital Risk Revenues largely consist of the $1,450,000 in monthly prepaid capitated payments made by the capitated plans.  These capitated payments are predetermined and fixed; the capitated plans pay a set amount per Member, regardless of the actual amount of services ultimately provided or whether Hospital provides the care or the care is outsourced to a third party facility.  These fixed payments are not supplemented if the patient care is underfunded and are not refunded if patient care costs less than what was initially paid by the capitated plan.

7.      The Group manages Member patient care within the confines of the Risk Pool Funds.  The Group ensures that Member patients receive top quality medical care while staying at or under budget.  Through the Group's effective management, Member

---

[5] "Risk Pool" is defined in the Risk Pool Agreement (paragraph 1.15) as follows:  "Risk Pool shall mean the risk pool established and administered by Hospital under the Critical Vendor Agreement to which Hospital Risk Revenues are credited and from which Hospital Risk Expenses are debited.  Although such Risk Pool shall include an aggregation of all Hospital Risk Revenues and Hospital Risk Expenses related to all Plans, the Risk Pool shall be established so as to allow a separate accounting of an individual Plan's related Hospital Risk Revenues and Hospital Risk Expenses."

[6] As that term is defined in the Risk Pool Agreement at paragraph 1.07.

[7] As that term is defined in the Risk Pool Agreement at paragraph 1.06.

9

patients often receive the medical care they need for less than what was prepaid into the Risk Pool. The extent of the capitated payments that are not ultimately used, utilized, or expensed create, in the aggregate, a surplus which is not returned or refunded to the capitated health care plans. Group and Hospital split this surplus at the end of the year between the Group and Hospital, with the Group's share serving as its sole compensation for its services provided under the Risk Pool Agreement.

8.    On April 3, 2019, Group and Debtors entered into and executed the Critical Vendor Agreement, a copy of which is attached as **Exhibit A** to the Memorandum and Points of Authorities. The Critical Vendor Agreement designated Group a "Critical Supplier" for Debtors, as Group was critical to patient care, and governed the terms by which Group provided continued services to the Hospital under the Risk Pool Agreement post-petition.

9.    Debtors and Group agreed that Debtors would make $150,000 monthly interim settlement payments to the Group for every month the Group provided services under the Critical Vendor Agreement. These payments are not conditional, and must be paid as long as Group provides services under the Critical Vendor Agreement and Risk Pool Agreement. This mandatory monthly payment was a material inducement to Group; Group would not have entered into the Critical Vendor Agreement without it. The Interim Settlement Payments are preliminary draws against what the Group is ultimately owed as its share of the Risk Pool surplus, and the payments are subject to a true up provision. This True Up occurs only after the monthly Interim Settlement Payments are made and does not relieve Debtors from making the monthly payments. Instead, it is designed to protect Debtors if those monthly payments ultimately result in an overpayment. After a Risk Pool year closes, Debtors and Group analyze the Hospital Risk Revenues and Hospital Risk Expenses for the Risk Pool year in order to determine the final Risk Pool surplus. This process is a lengthy and time consuming endeavor. The Interim Settlement Payments are then applied to Group's share of the Risk Pool surplus, followed by a "true up" of the Risk Pool surplus. If there is a resulting underpayment,

ST. VINCENT IPA'S NOTICE OF MOTION, MOTION TO ENFORCE CRITICAL VENDOR AGREEMENT,
MEMORANDUM AND POINTS OF AUTHORITY, AND DECLARATION OF DR. JEFFREY HENDEL
121009432.3

1  the Debtors pay that difference.  If there is an overpayment (rare), the Group pays that

2  difference.

3      10.    The Group fully performed under the Critical Vendor Agreement and Risk

4  Pool Agreement through January 2020.  There has been no closing of a sale of St.

5  Vincent Medical Center.  Consequently, the Debtors are obligated to make the January

6  2020 $150,000 Interim Settlement Payment.  The Debtors have stated that they will not

7  make the January 2020 Interim Settlement Payment.

8      11.    The parties' Critical Vendor Agreement obligations were designed to

9  continue until the contractual relationship between Group and Hospital terminated, either

10  when Hospital assigns the Risk Pool Agreement to a third party via a sale or when the

11  Risk Pool Agreement is rejected or otherwise terminated.  Otherwise, Group would be in

12  a position of having to provide post-petition services to the Debtors without any

13  guarantee or other assurance of payment, particularly in a rapid closure scenario as here.

14  The Group fully performed under its agreements to provide health safety services to the

15  Members.  The Debtors should not now be permitted to ignore their reciprocal and Court

16  ordered obligations under that same agreement.

17      12.    On January 6, 2020, the Debtors filed their *Emergency Motion for

18  Authorization to Close St. Vincent Medical Center; Memorandum of Points and

19  Authorities and Declarations in Support Thereof* (Doc. 3906. "Motion to Close"), seeking

20  approval to expeditiously close the Hospital.  On January 9, 2020, the Court approved the

21  Motion to Close (Doc. 3934), permitting a quick, staged cessation of all operations of the

22  Hospital.  The order did not extinguish Group's or Debtors' contractual duties under the

23  Critical Vendor Agreement.

24      13.    The Debtors seek to reject the Risk Pool Agreement as of January 31, 2020.

25  *Debtors' Notice of Motion and Motion to Reject, Pursuant to 11 U.S.C. § 365(a), Risk-*

26  *Sharing Agreement with SVIPA; Memorandum of Points and Authorities; Declaration of*

27  *Richard G. Adcock* (Doc. 4051, "Motion to Reject").  The Debtors state that the Group

28

11

1 | will not "be entitled to further compensation under the Critical Vendor Agreement on or

2 | after February 1, 2020."  Motion to Reject, p. 6.

3 |      14.    The Group provided services under the terms of the Critical Vendor

4 | Agreement through January 31, 2020 despite the Hospital eliminating services on-site,

5 | outsourcing services traditionally provided to Member patients at the Hospital to third-

6 | party providers at a substantially increased expense and to the detriment of Group.

7 |

8 |      I declare under the penalty of perjury under the laws of the United States that the

9 | foregoing is true and correct.

10 |      Executed on February **20**, 2020, at Los Angeles, California.

11 |

12 |

13 |

14 | _____

15 |      Jeffrey Hendel, M.D.

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

ST. VINCENT IPA'S NOTICE OF MOTION, MOTION TO ENFORCE CRITICAL VENDOR AGREEMENT,
MEMORANDUM AND POINTS OF AUTHORITY, AND DECLARATION OF DR. JEFFREY HENDEL
121009432.3

EXHIBIT A

 **Verity Health**

2040 E Mariposa Avenue
El Segundo, CA 90245

TO:    **St. Vincent IPA**
       **c/o Mark Neubauer**
       **Carlton Fields**

Dear Valued Supplier:

        As you are aware, on August 31, 2018 (the "Petition Date"), Verity Health Systems of
California, Inc. and its affiliated debtors (collectively, "Verity") filed voluntary petitions (the "Chapter
11 Cases") for relief under chapter 11 of the United States Bankruptcy Code.  The Chapter 11 Cases are
jointly administered in the United States Bankruptcy Court for the Central District of California
("Bankruptcy Court") under Bankruptcy Case No. 2:18-bk-20151-ER.  In recognition of the importance
of its relationship with physicians and its desire that the Chapter 11 Cases have as little effect on care
provided to patients as possible, Verity sought, and subsequently obtained, the Bankruptcy Court's
authority to pay certain prepetition claims, including physician claims  (collectively, the "Critical
Supplier") that are critical to patient care and to avoid immediate and irreparable harm to Verity's
operations.  The Bankruptcy Court authorized the Company, under certain conditions, to pay some
prepetition claims of Critical Suppliers in an aggregate amount up to $20 million.  A copy of the Court's
order (the "Order") authorizing the Critical Supplier protocol is enclosed for your reference.

        In order to receive payment of a prepetition claim, each selected Critical Supplier must agree to
continue to supply  services to Verity based on the customary trade terms, practices and programs in
existence between the Critical Supplier and Verity (including, but not limited to, credit limits, pricing,
cash discounts, timing of payments, allowances, rebates, normal availability and other applicable terms
and programs), which were in effect between such Critical Supplier and Verity on a historical basis for
the period within one-hundred eighty (180) days of the Petition Date and as set forth in the Health Care
Risk Pool Sharing Agreement (the "Customary Trade Terms").

        For purposes of administering this trade program, as authorized by the Bankruptcy Court and in
accordance with the terms of the Order, Verity and **St. Vincent IPA** agree as follows (the
"Agreement"):

        a)  For purposes of this Agreement, the balance of the prepetition claim (net of any setoffs,
            credits or discounts) (the "Prepetition Claim") that Verity deems payable for the year
            2017 to **St. Vincent IPA** is $596,816, which sum was paid on December 24, 2018.  **St.
            Vincent IPA** asserts it is owed at least this amount and expressly reserves the right to
            assert that the amount of the Prepetition Claim is understated and to seek a higher claim
            amount.  This Prepetition Claim is for the year 2017; **St. Vincent IPA** expressly reserves
            the right to assert an additional prepetition claim for 2016, 2017, and 2018.  **St. Vincent
            IPA** is not bound to this Prepetition Claim amount for any purposes other than for

EXHIBIT A                                    13

verity.org



**Verity Health**

2040 E Mariposa Avenue
El Segundo, CA 90245

purposes of this Agreement.  Thus, **St. Vincent IPA** is not bound to the Prepetition Claim amount for any cure determination, requirements, or otherwise under 11 U.S.C. § 365, any proof of claim amount, or otherwise.  Your Prepetition Claim does not constitute a claim allowed by the Bankruptcy Court in the Bankruptcy Cases, and signing this Agreement does not excuse you from any requirement of filing a proof of claim in the Bankruptcy Cases.

b) In consideration of the payment of the Prepetition Claim, St. Vincent IPA has agreed to withhold filing a motion for stay relief to deem the Risk Pool Agreement breached and from seeking to terminate such agreement.  The payment of the Prepetition Claim materially induced St. Vincent IPA to not file such a motion and to continue to provide services under the Risk Sharing Agreement.

c) Verity has wired **St. Vincent IPA** an additional $300,000 as post-petition compensation for services rendered in the months ending September 2018 and October 2018, as payable under the Health Care Risk Sharing Agreement, as amended ("Risk Pool Agreement"), it being understood that the September and October draws may be an overpayment or underpayment—i.e., further sums may be due or may be subject to refund following a true up (the "True Up"), as pursuant to the terms of the Risk Pool Agreement.  The True Up will be determined by Milliman (which is expected before March 31, 2019).  St. Vincent IPA specifically reserves the right to review and challenge this analysis by Milliman, as set forth in the Risk Pool Agreement.

d) For the months subsequent to October, 2018, until a sale of St. Vincent Medical Center has closed, Verity shall make $150,000 of interim monthly payments, on or about the third week of the month, to **St. Vincent IPA** for services rendered during those post-petition periods.  These payments represent draws against what may be owed to **St. Vincent IPA** for the current, post-petition Risk Pool year, and are subject to a True Up as well using Milliman's calculation for IBNR as agreed by both parties.  St. Vincent IPA specifically reserves the right to review and challenge this analysis by Milliman, as set forth in the Risk Pool Agreement.

e) The True-Up for 2016, 2017, and 2018 shall occur to determine whether **St. Vincent IPA** is owed additional amounts under the Risk Pool Agreement or whether **St. Vincent IPA** has received overpayments.  St. Vincent IPA specifically reserves the right to review and challenge this analysis by Milliman, as set forth in the Risk Pool Agreement.

f) **St. Vincent IPA** agrees to supply goods/services to Verity in accordance with the Customary Trade Terms, and Verity agrees to pay **St. Vincent IPA** in accordance with such Customary Trade Terms.

verity.org


**Verity Health**

2040 E Mariposa Avenue
El Segundo, CA 90245

    g)  Your execution of this Agreement and return of the same to Verity constitutes an agreement by **St. Vincent IPA** and Verity:

    1.  to be bound by the Customary Trade Terms and, subject to the reservations set forth in the Order, to the amount of the Prepetition Claim for the purposes of this Agreement only, as set forth under the terms and conditions above;

    2.  that **St. Vincent IPA** will continue to supply Verity with goods and/or services pursuant to the Customary Trade Terms and that Verity will timely pay for such goods and/or services in accordance with the Customary Trade Terms;

    3.  that **St. Vincent IPA** has reviewed the terms and provisions of the Order and that it consents to the bound by such terms, except as modified herein;

    4.  that, subject to paragraph 7 below, if your participation as a Critical Supplier pursuant to the Order is terminated by you for any reason prior to the closing of any sale of St. Vincent Medical Center, and absent showing of cause by St. Vincent IPA, any payments received by you on account of your Prepetition Claim may be deemed to be a voidable postpetition transfer pursuant to Bankruptcy Code § 549(a) and, if so determined, you will repay to the Debtors any payments made to you on account of your Prepetition Claim to the extent that the aggregate amount of such payments exceeds any postpetition obligations due by Verity to you.  However, Verity cannot offset against any postpetition payments or seek to clawback any payment made due to a postpetition claim or services, subject to the True Up described in paragraph c of this Agreement.

    5.  Payments required under the Risk Share Agreement are modified only to the extent set forth in this agreement, but not otherwise affected.

    6.  that if Verity shall be in default under this Agreement, **St. Vincent IPA** shall have no obligation to supply goods and/or services to Verity on Customary Trade Terms (as modified herein) until Verity cures such default and **St. Vincent IPA** shall have the right to terminate this Agreement upon written notice to Verity detailing Verity's defaults hereunder (which Verity shall have the right to dispute) and Verity's failure to cure such default within five (5) business days of such notice, in which event **St. Vincent IPA** may retain all sums paid to it hereunder on account of its Prepetition Claim.  No § 549(a) claim or action shall arise if such default occurs and is not timely cured by Verity, or if Verity or its assigns seek to terminates,  rejects, or does not assume this Agreement or the Risk Pool Agreement.

    Nothing herein waives Verity's or **St. Vincent IPA**'s rights under the Bankruptcy Code, including section 365 of the Bankruptcy Code, or any other rights and defenses, including those set forth in the Motion.

EXHIBIT A               15

verity.org



**Verity Health**

2040 E Mariposa Avenue
El Segundo, CA 90245

Verity and **St. Vincent IPA** also hereby agree that any dispute with respect to this Agreement, the Order and/or **St. Vincent IPA**'s participation as a Critical Supplier under the Order shall be determined by the Bankruptcy Court.

7. <u>Exclusion</u>. **St. Vincent IPA** shall conduct screenings of its officers, directors, shareholders, associates, employees, contractors or other agents (collectively, the "<u>St. Vincent IPA Personnel</u>") who furnish, order or prescribe items or services reimbursable under any federal health program to or for patients of Verity under this Agreement against the List of Excluded Individuals/Entities maintained by the Office of Inspector General ("<u>OIG</u>") of the Department of Health and Human Services, the System for Awards Management ("<u>SAM</u>"; formerly the Excluded Parties List System) and any successor list maintained by the U.S. General Services Administration, and the Medi-Cal Suspended and Ineligible Provider List maintained by the California Department of Health Care Services prior to hire and once a year thereafter. **St. Vincent IPA** will immediately notify Verity in the event **St. Vincent IPA** or one of **St. Vincent IPA** Personnel is excluded from participation in a federal health care program. **St. Vincent IPA** will indemnify Verity for any claims, judgments, overpayments or expenses arising from such exclusion.

8. <u>Anti-Referral Laws</u>. Nothing in this Agreement or in any other written or oral agreement between Verity and **St. Vincent IPA**, nor any consideration offered or paid in connection with this Agreement, contemplates or requires the admission or referral of any patient to Verity. Any consideration specified in this Agreement is consistent with what the parties reasonably believe to be fair market value for the services provided. **St. Vincent IPA** acknowledges and shall cause **St. Vincent IPA** Personnel to acknowledge that it/they are subject to and must comply with certain federal and state laws governing referral of patients, as may be in effect or amended from time to time, including but not limited to: (a) payments for referrals or to induce the referral of patients (Cal. Business and Professions Code Section 650; Cal. Labor Code Section 3215; and the Medicare/Medicaid Fraud and Abuse Law, Section 1128B of the Social Security Act; and all implementing regulations); and (b) the referrals of patients by a physician for certain designated health care services to an entity with which the physician (or his/her immediate family) has a financial relationship (Cal. Business and Professions Code Sections 650.01 and 650.02; Cal. Labor Code Sections 139.3 and 139.31; and Section 1877 of the Social Security Act; and all implementing regulations).

9. <u>Books and Records.</u>

a. <u>Access to Books, Documents and Records</u>. Until the expiration of four years after the furnishing of services under the Agreement, **St. Vincent IPA** agrees to make available to the Secretary of Health and Human Services, the U.S. Comptroller General, and their representatives the Agreement and all books, documents, and records necessary to certify the nature and extent of the costs of those services. If **St. Vincent IPA** carries out the duties of the contract through a subcontract worth $10,000 or more over a twelve-month period with a related organization, the subcontract will also contain an access clause to permit access by the Secretary, Comptroller General, and their representatives to the related organization's books and records.

EXHIBIT A                           16



2040 E Mariposa Avenue
El Segundo, CA 90245

b. **Master List.** The parties acknowledge that this agreement and any other agreements or arrangements between the parties shall be maintained by Verity as part of its master list of physician contracts.

10. Nothing in this Agreement shall be deemed a waiver of St. Vincent IPA's rights to challenge or contest the assumption of the Risk Pool Agreement by any purchaser of St. Vincent Medical Center, nor shall any action by St. Vincent IPA regarding such potential assumption and assignment be deemed a termination under paragraph 4 above. St. Vincent IPA shall not be subject to a potential § 549(a) action or claim if St. Vincent IPA continues to perform under the Risk Share Agreement until the earlier of (a) a sale of St. Vincent Medical Center or (b) a termination or rejection of this Agreement and/or the Risk Pool Agreement by Verity, its successors, or assigns.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call Peter Chadwick at (202) 329-0003.

Very truly yours,

Verity Health Systems of California, Inc.

By: _____

Name: Anthony A. Armada
Title: Chief Operating Officer

verity.org

potential § 549(a) action or claim if St. Vincent IPA chooses to pursue the same. The Share Agreement is the only agreement, as of the present date, except to (a) a termination or rejection of this Agreement and/or the Risk Pool Agreement by Verity or its successors or assigns.

        If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call Peter Chadwick at (202) 329-0003.

                                        Very truly yours,

                                        Verity Health Systems of California, Inc.


                                        By: _____
                                        Name: Anthony A. Armada
                                        Title: Chief Operating Officer

Agreed and Accepted by:

**St. Vincent IPA**


By: _____
Name:
Title:

Dated: 4/3 , 2019

verity.org

116133543.2
116133543.4
116874033.3


EXHIBIT A                        18

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Carlton Fields, LLP, 2029 Century Park East, Suite 1200, Los Angeles, CA 90067-2913

A true and correct copy of the foregoing document entitled     **ST. VINCENT IPA'S NOTICE OF MOTION,**
(*specify*):                                                    **MOTION TO ENFORCE CRITICAL VENDOR**
**AGREEMENT, MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF DR. JEFFREY HENDEL**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**02/24/20**          , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- **Alexandra Achamallah**    aachamallah@milbank.com, rliubicic@milbank.com
- **Melinda Alonzo**    ml7829@att.com
- **Robert N Amkraut**    ramkraut@foxrothschild.com
- **Kyra E Andrassy**    kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Simon Aron**    saron@wrslawyers.com
- **Lauren T Attard**    lattard@bakerlaw.com, agrosso@bakerlaw.com
- **Allison R Axenrod**    allison@claimsrecoveryllc.com
- **Richard T Baum**    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
- **Cristina E Bautista**    cristina.bautista@kattenlaw.com, ecf.lax.docket@kattenlaw.com
- **James Cornell Behrens**    jbehrens@milbank.com,
  gbray@milbank.com;mshinderman@milbank.com;dodonnell@milbank.com;jbrewster@milbank.com;JWeber@milbank.com
- **Ron Bender**    rb@lnbyb.com
- **Bruce Bennett**    bbennett@jonesday.com
- **Peter J Benvenutti**    pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- **Leslie A Berkoff**    lberkoff@moritthock.com, hmay@moritthock.com
- **Steven M Berman**    sberman@slk-law.com, mceriale@shumaker.com
- **Stephen F Biegenzahn**    efile@sfblaw.com
- **Karl E Block**    kblock@loeb.com, jvazquez@loeb.com;ladocket@loeb.com;kblock@ecf.courtdrive.com
- **Dustin P Branch**    branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com
- **Michael D Breslauer**    mbreslauer@swsslaw.com,
  wyones@swsslaw.com;mbreslauer@ecf.courtdrive.com;wyones@ecf.courtdrive.com
- **Chane Buck**    cbuck@jonesday.com
- **Lori A Butler**    butler.lori@pbgc.gov, efile@pbgc.gov
- **Howard Camhi**    hcamhi@ecjlaw.com, tcastelli@ecjlaw.com;amatsuoka@ecjlaw.com
- **Barry A Chatz**    barry.chatz@saul.com, jurate.medziak@saul.com
- **Shirley Cho**    scho@pszjlaw.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Louis J. Cisz**    lcisz@nixonpeabody.com, jzic@nixonpeabody.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;olivia@lesliecohenlaw.com
- **Marcus Colabianchi**    mcolabianchi@duanemorris.com
- **Kevin Collins**    kevin.collins@btlaw.com, Kathleen.lytle@btlaw.com
- **Joseph Corrigan**    Bankruptcy2@ironmountain.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

                                        **F 9013-3.1.PROOF.SERVICE**

- **David N Crapo**    dcrapo@gibbonslaw.com, elrosen@gibbonslaw.com
- **Mariam Danielyan**    md@danielyanlawoffice.com, danielyan.mar@gmail.com
- **Brian L Davidoff**    bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com
- **Aaron Davis**    aaron.davis@bryancave.com, kat.flaherty@bryancave.com
- **Lauren A Deeb**    lauren.deeb@nelsonmullins.com, maria.domingo@nelsonmullins.com
- **Daniel Denny**    ddenny@milbank.com
- **Anthony Dutra**    adutra@hansonbridgett.com
- **Kevin M Eckhardt**    kevin.eckhardt@gmail.com, keckhardt@hunton.com
- **Lei Lei Wang Ekvall**    lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **David K Eldan**    david.eldan@doj.ca.gov, cynthia.gomez@doj.ca.gov
- **Andy J Epstein**    taxcpaesq@gmail.com
- **Richard W Esterkin**    richard.esterkin@morganlewis.com
- **Christine R Etheridge**    christine.etheridge@ikonfin.com
- **M Douglas Flahaut**    flahaut.douglas@arentfox.com
- **Michael G Fletcher**    mfletcher@frandzel.com, sking@frandzel.com
- **Joseph D Frank**    jfrank@fgllp.com,
  mmatlock@fgllp.com;csmith@fgllp.com;jkleinman@fgllp.com;csucic@fgllp.com
- **William B Freeman**    bill.freeman@kattenlaw.com, nicole.jones@kattenlaw.com,ecf.lax.docket@kattenlaw.com
- **John-Patrick M Fritz**    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- **Eric J Fromme**    efromme@tocounsel.com, lchapman@tocounsel.com;sschuster@tocounsel.com
- **Amir Gamliel**    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Jeffrey K Garfinkle**    jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com
- **Thomas M Geher**    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- **Lawrence B Gill**    lgill@nelsonhardiman.com,
  rrange@nelsonhardiman.com;ksherry@nelsonhardiman.com;mmarkwell@nelsonhardiman.com
- **Paul R. Glassman**    pglassman@sycr.com
- **Matthew A Gold**    courts@argopartners.net
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Marshall F Goldberg**    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- **Richard H Golubow**    rgolubow@wcghlaw.com,
  pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com
- **David M. Guess**    guessd@gtlaw.com
- **Anna Gumport**    agumport@sidley.com
- **Melissa T Harris**    harris.melissa@pbgc.gov, efile@pbgc.gov
- **James A Hayes**    jhayes@zinserhayes.com, jhayes@jamesahayesaplc.com
- **Michael S Held**    mheld@jw.com
- **Lawrence J Hilton**    lhilton@onellp.com,
  lthomas@onellp.com,info@onellp.com,rgolder@onellp.com,lhyska@onellp.com,nlichtenberger@onellp.com
- **Robert M Hirsh**    rhirsh@lowenstein.com
- **Florice Hoffman**    fhoffman@socal.rr.com, floricehoffman@gmail.com
- **Lee F Hoffman**    leehoffmanjd@gmail.com, lee@fademlaw.com
- **Michael Hogue**    hoguem@gtlaw.com, SFOLitDock@gtlaw.com;navarrom@gtlaw.com
- **Matthew B Holbrook**    mholbrook@sheppardmullin.com,
  mmanns@sheppardmullin.com,amartin@sheppardmullin.com
- **David I Horowitz**    david.horowitz@kirkland.com,
  keith.catuara@kirkland.com;terry.ellis@kirkland.com;elsa.banuelos@kirkland.com;ivon.granados@kirkland.com
- **Virginia Hoyt**    scif.legal.bk@scif.com
- **Brian D Huben**    hubenb@ballardspahr.com, carolod@ballardspahr.com
- **Joan Huh**    joan.huh@cdtfa.ca.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

121263112.1

**F 9013-3.1.PROOF.SERVICE**

- **Benjamin Ikuta**    bikuta@hml.law
- **Lawrence A Jacobson**    laj@cohenandjacobson.com
- **John Mark Jennings**    johnmark.jennings@kutakrock.com, mary.clark@kutakrock.com
- **Monique D Jewett-Brewster**    mjb@hopkinscarley.com, eamaro@hopkinscarley.com
- **Crystal Johnson**    M46380@ATT.COM
- **Gregory R Jones**    gjones@mwe.com, rnhunter@mwe.com
- **Jeff D Kahane**    jkahane@duanemorris.com, dmartinez@duanemorris.com
- **Steven J Kahn**    skahn@pszyjw.com
- **Cameo M Kaisler**    salembier.cameo@pbgc.gov, efile@pbgc.gov
- **Ivan L Kallick**    ikallick@manatt.com, ihernandez@manatt.com
- **Ori Katz**    okatz@sheppardmullin.com,
  cshulman@sheppardmullin.com;ezisholtz@sheppardmullin.com;lsegura@sheppardmullin.com
- **Payam Khodadadi**    pkhodadadi@mcguirewoods.com, dkiker@mcguirewoods.com
- **Christian T Kim**    ckim@dumas-law.com, ckim@ecf.inforuptcy.com
- **Jane Kim**    jkim@kellerbenvenutti.com
- **Monica Y Kim**    myk@lnbrb.com, myk@ecf.inforuptcy.com
- **Gary E Klausner**    gek@lnbyb.com
- **David A Klein**    david.klein@kirkland.com
- **Nicholas A Koffroth**    nick.koffroth@dentons.com, chris.omeara@dentons.com
- **Joseph A Kohanski**    jkohanski@bushgottlieb.com, kprestegard@bushgottlieb.com
- **David S Kupetz**    dkupetz@sulmeyerlaw.com,
  dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com
- **Jeffrey S Kwong**    jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- **Darryl S Laddin**    bkrfilings@agg.com
- **Robert S Lampl**    advocate45@aol.com, rlisarobinsonr@aol.com
- **Richard A Lapping**    richard@lappinglegal.com
- **Paul J Laurin**    plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com
- **Nathaniel M Leeds**    nathaniel@mitchelllawsf.com, sam@mitchelllawsf.com
- **David E Lemke**    david.lemke@wallerlaw.com,
  chris.cronk@wallerlaw.com;Melissa.jones@wallerlaw.com;cathy.thomas@wallerlaw.com
- **Lisa Lenherr**    llenherr@wendel.com, bankruptcy@wendel.com
- **Elan S Levey**    elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov,louisa.lin@usdoj.gov
- **Kerri A Lyman**    klyman@mwe.com, lbates@mwe.com
- **Tracy L Mainguy**    bankruptcycourtnotices@unioncounsel.net, tmainguy@unioncounsel.net
- **Samuel R Maizel**    samuel.maizel@dentons.com,
  alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howard@
  dentons.com;joan.mack@dentons.com;derry.kalve@dentons.com
- **Alvin Mar**    alvin.mar@usdoj.gov, dare.law@usdoj.gov
- **Craig G Margulies**    Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- **Hutchison B Meltzer**    hutchison.meltzer@doj.ca.gov, Alicia.Berry@doj.ca.gov
- **John J Menchaca (TR)**    jmenchaca@menchacacpa.com, ca87@ecfcbis.com;igaeta@menchacacpa.com
- **Christopher Minier**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **John A Moe**    john.moe@dentons.com, glenda.spratt@dentons.com
- **Susan I Montgomery**    susan@simontgomerylaw.com,
  assistant@simontgomerylaw.com;simontgomerylawecf@gmail.com;montgomerysr71631@notify.bestcase.c
  om
- **Monserrat Morales**    Monsi@MarguliesFaithLaw.com,
  Vicky@MarguliesFaithLaw.com;Helen@marguliesfaithlaw.com;Angela@MarguliesFaithlaw.com
- **Kevin H Morse**    kmorse@clarkhill.com, blambert@clarkhill.com
- **Marianne S Mortimer**    mmartin@jmbm.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **Tania M Moyron**    tania.moyron@dentons.com,
  chris.omeara@dentons.com;nick.koffroth@dentons.com;Sonia.martin@dentons.com;Isabella.hsu@dentons.com;
  lee.whidden@dentons.com;Jacqueline.whipple@dentons.com
- **Alan I Nahmias**    anahmias@mbnlawyers.com, jdale@mbnlawyers.com
- **Akop J Nalbandyan**    jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- **Jennifer L Nassiri**    jennifernassiri@quinnemanuel.com
- **Charles E Nelson**    nelsonc@ballardspahr.com, wassweilerw@ballardspahr.com
- **Sheila Gropper Nelson**    shedoesbklaw@aol.com
- **Mark A Neubauer**    mneubauer@carltonfields.com,
  mlrodriguez@carltonfields.com;smcloughlin@carltonfields.com;schau@carltonfields.com;NDunn@carltonfields.com;ecfla@carltonfields.com
- **Fred Neufeld**    fneufeld@sycr.com, tingman@sycr.com
- **Nancy Newman**    nnewman@hansonbridgett.com,
  ajackson@hansonbridgett.com;calendarclerk@hansonbridgett.com
- **Bryan L Ngo**    bngo@fortislaw.com,
  BNgo@bluecapitallaw.com;SPicariello@fortislaw.com;JNguyen@fortislaw.com;JNguyen@bluecapitallaw.com
- **Abigail V O'Brient**    avobrient@mintz.com,
  docketing@mintz.com;DEHashimoto@mintz.com;nleali@mintz.com;ABLevin@mintz.com;GJLeon@mintz.com
- **John R OKeefe**    jokeefe@metzlewis.com, slohr@metzlewis.com
- **Scott H Olson**    solson@vedderprice.com, scott-olson-
  2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-
  law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Keith C Owens**    kowens@venable.com, khoang@venable.com
- **R Gibson Pagter**    gibson@ppilawyers.com, ecf@ppilawyers.com;pagterrr51779@notify.bestcase.com
- **Paul J Pascuzzi**    ppascuzzi@ffwplaw.com
- **Lisa M Peters**    lisa.peters@kutakrock.com, marybeth.brukner@kutakrock.com
- **Christopher J Petersen**    cjpetersen@blankrome.com, gsolis@blankrome.com
- **Mark D Plevin**    mplevin@crowell.com, cromo@crowell.com
- **Steven G. Polard**    spolard@ch-law.com, calendar-
  lao@rmkb.com;melissa.tamura@rmkb.com;anthony.arriola@rmkb.com
- **David M Powlen**    david.powlen@btlaw.com, pgroff@btlaw.com
- **Christopher E Prince**    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- **Lori L Purkey**    bareham@purkeyandassociates.com
- **William M Rathbone**    wrathbone@grsm.com, jmydlandevans@grsm.com;sdurazo@grsm.com
- **Jason M Reed**    Jason.Reed@Maslon.com
- **Michael B Reynolds**    mreynolds@swlaw.com, kcollins@swlaw.com
- **J. Alexandra Rhim**    arhim@hrhlaw.com
- **Emily P Rich**    erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net
- **Robert A Rich**    , candonian@huntonak.com
- **Lesley A Riis**    lriis@dpmclaw.com
- **Debra Riley**    driley@allenmatkins.com
- **Jason E Rios**    jrios@ffwplaw.com
- **Julie H Rome-Banks**    julie@bindermalter.com
- **Mary H Rose**    mrose@buchalter.com
- **Gregory A Rougeau**    grougeau@brlawsf.com
- **Megan A Rowe**    mrowe@dsrhealthlaw.com, lwestoby@dsrhealthlaw.com
- **Nathan A Schultz**    nschultz@goodwinlaw.com
- **Mark A Serlin**    ms@swllplaw.com, mor@swllplaw.com
- **Seth B Shapiro**    seth.shapiro@usdoj.gov
- **David B Shemano**    dshemano@shemanolaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

- **Joseph Shickich**    jshickich@riddellwilliams.com
- **Mark Shinderman**    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- **Kyrsten Skogstad**    kskogstad@calnurses.org, rcraven@calnurses.org
- **Michael St James**    ecf@stjames-law.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **Jason D Strabo**    jstrabo@mwe.com, cfuraha@mwe.com
- **Sabrina L Streusand**    Streusand@slollp.com
- **Ralph J Swanson**    ralph.swanson@berliner.com, sabina.hall@berliner.com
- **Michael A Sweet**    msweet@foxrothschild.com, swillis@foxrothschild.com;pbasa@foxrothschild.com
- **James M Toma**    james.toma@doj.ca.gov, teresa.depaz@doj.ca.gov
- **Gary F Torrell**    gtorrell@health-law.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Cecelia Valentine**    cecelia.valentine@nlrb.gov
- **Jason Wallach**    jwallach@ghplaw.com, g33404@notify.cincompass.com
- **Kenneth K Wang**    kenneth.wang@doj.ca.gov,
  Jennifer.Kim@doj.ca.gov;Stacy.McKellar@doj.ca.gov;yesenia.caro@doj.ca.gov
- **Phillip K Wang**    phillip.wang@rimonlaw.com, david.kline@rimonlaw.com
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com
- **Adam G Wentland**    awentland@tocounsel.com, lkwon@tocounsel.com
- **Latonia Williams**    lwilliams@goodwin.com, bankruptcy@goodwin.com
- **Michael S Winsten**    mike@winsten.com
- **Jeffrey C Wisler**    jwisler@connollygallagher.com, dperkins@connollygallagher.com
- **Neal L Wolf**    nwolf@hansonbridgett.com, calendarclerk@hansonbridgett.com,lchappell@hansonbridgett.com
- **Claire K Wu**    ckwu@sulmeyerlaw.com,
  mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- **Steven D Wyllie**    steven.wyllie@nlrb.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov
- **Andrew J Ziaja**    aziaja@leonardcarder.com,
  sgroff@leonardcarder.com;msimons@leonardcarder.com;lbadar@leonardcarder.com
- **Rose Zimmerman**    rzimmerman@dalycity.org

☐    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:

On (*date*) **02/24/20**          , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Sam J Alberts
on behalf of Debtor Verity Health System of California, Inc.
DENTONS US LLP
1900 K Street NW
Washington, DC 20006

Tanya M. Moyron, Esq.
Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Verity Health System of California, Inc.
2040 E. Mariposa Avenue
El Segundo, CA 90245

St. Vincent Medical Center
2131 West Third Street
Los Angeles, CA 90057

Hattie Yip
United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

James Cornell Behrens
Milbank, Tweed, Hadley & McCloy
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) **02/24/20**          , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.


Hon. Ernest M. Robles                        Via Federal Express
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/24/20 | Maria Rodriguez | /s/ Maria Rodriguez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                            **F 9013-3.1.PROOF.SERVICE**

121263112.1