

**FILED & ENTERED**

**AUG 07 2020**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re: Verity Health System of California, Inc., *et al.*,<br><br>      Debtors and Debtors in Possession.<br>☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Medical Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC<br><br>      Debtors and Debtors in Possession. | Lead Case No.:    2:18-bk-20151-ER<br>Chapter:            11<br><br>Jointly Administered With:<br>Case No. 2:18-bk-20162-ER;<br>Case No. 2:18-bk-20163-ER;<br>Case No. 2:18-bk-20164-ER;<br>Case No. 2:18-bk-20165-ER;<br>Case No. 2:18-bk-20167-ER;<br>Case No. 2:18-bk-20168-ER;<br>Case No. 2:18-bk-20169-ER;<br>Case No. 2:18-bk-20171-ER;<br>Case No. 2:18-bk-20172-ER;<br>Case No. 2:18-bk-20173-ER;<br>Case No. 2:18-bk-20175-ER;<br>Case No. 2:18-bk-20176-ER;<br>Case No. 2:18-bk-20178-ER;<br>Case No. 2:18-bk-20179-ER;<br>Case No. 2:18-bk-20180-ER;<br>Case No. 2:18-bk-20181-ER;<br>Chapter 11 Cases.<br><br>**MEMORANDUM OF DECISION FINDING THAT PROSPECT MEDICAL LACKS STANDING TO OPPOSE THE DEBTORS' EMERGENCY MOTION TO ENFORCE THE SALE ORDER**<br><br>**[RELATES TO DOC. NO. 5368]**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

The Court has reviewed *Prospect Medical's Response to Debtors' Emergency Motion for the Entry of an Order: (I) Enforcing the Order Authorizing the Sale to Prime Healthcare Services, Inc.; (II) Finding that the Sale is Free and Clear of Additional Conditions; (III) Finding that the Attorney General Abused His Discretion in Imposing Additional Conditions on the St. Francis Medical Center Sale; and (IV) Granting Related Relief* [Doc. No. 5368] (the "Opposition"). For the reasons set forth below, the Court finds that Prospect Medical Holdings, Inc. ("Prospect") lacks standing to oppose the *Debtors' Emergency Motion for the Entry of an Order (I) Enforcing the Order Authorizing the Sale to Prime Healthcare Services, Inc.; (II) Finding that the Sale is Free and Clear of Additional Conditions; (III) Finding that the Attorney General Abused His Discretion in Imposing Additional Conditions on the St. Francis Medical Center Sale; and (IV) Granting Related Relief* [Doc. No. 5199] (the "Motion"), and **STRIKES** the Opposition from the record.[1]

## I. Background

On February 26, 2020, the Court entered an order establishing bidding procedures for the sale of assets pertaining to St. Francis Medical Center ("St. Francis"). *See* Doc. No. 4165 (the "Bidding Procedures Order"). Parties interested in acquiring St. Francis were required to submit a bid by April 3, 2020, at 5:00 p.m. *See* Bidding Procedures Order at ¶ 8. Prospect received notice of the Bidding Procedures Order but did not timely submit a bid.

Other than the Stalking Horse Bid[2] submitted by Prime Healthcare Services, Inc. ("Prime"), the Debtors did not receive any Qualified Bids for the purchase of St. Francis. On April 9, 2020, the Court issued a ruling [Doc. No. 4507] (the "Ruling") finding that the Debtors had properly designated Prime as the Winning Bidder pursuant to the Bidding Procedures Order and that the Debtors were authorized to sell St. Francis to Prime. The Ruling found that St. Francis had been adequately marketed:

> In June 2018, prior to the Petition Date, the Debtors engaged Cain Brothers, a division of KeyBanc Capital Markets ("Cain") to market all of the Hospitals, including St. Francis. Beginning in July 2018, Cain prepared a Confidential Investment Memorandum (the "CIM"), created an online data room to share information with potential buyers, and contacted over 110 strategic and financial buyers. Subsequent to the Petition Date, Cain continued to market St. Francis.
> In connection with a prior sale to Strategic Global Management, Inc. ("SGM") that did not close (the "SGM Sale"), St. Francis was extensively marketed. Cain notified 90 parties of the sale process, provided access to a data room to sixteen parties who executed non-disclosure agreements ("NDAs"), and remained in contact with potential purchasers to respond to questions and provide information.
> After the SGM Sale failed to close, Cain commenced a new marketing process. In December 2019, Cain began making phone calls to parties who had previously expressed interest in acquiring St. Francis. On January 3, 2020, Cain e-mailed all parties who had previously executed NDAs and explained that the Debtors were initiating another

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3), this matter is suitable for disposition without oral argument.

[2] Unless otherwise indicated, capitalized terms not defined herein have the meaning set forth in the Bidding Procedures Order.

marketing process. Ultimately, 61 parties executed NDAs with respect to the renewed marketing process and were granted access to an online data room.

On January 31, 2020, the Debtors received seven Indications of Interest (the "IOIs") for the potential acquisition of St. Francis. Cain contacted the seven potential purchasers who submitted the IOIs and continued to work with the purchasers to respond to questions and provide information. In sum, Cain's marketing efforts have been thorough and have provided interested parties a sufficient opportunity to bid for St. Francis.

Ruling at 8.

On April 9, 2020, the Court entered an order memorializing the findings set forth in the Ruling. *See* Doc. No. 4511 (the "Sale Order"). Among other things, the Sale Order found that Prime's bid for St. Francis was the highest and best bid received, and that the transfer of St. Francis to Prime would "provide a greater recovery for the Debtors' estates than would be provided by any other available alternative." *See* Sale Order at ¶ M. The sale of St. Francis to Prime (the "Prime Sale") is projected to close on or before August 22, 2020. *See* Declaration of Peter C. Chadwick [Doc. No. 5385] at ¶ 22.

By the Motion, the Debtors seek authorization to sell St. Francis free and clear of regulatory conditions which the California Attorney General (the "Attorney General") claims authority to impose under Cal. Corp. Code § 5914 (the "AG Conditions"). Prospect opposes the Motion. Prospect states that it is prepared to purchase St. Francis on terms superior to the Prime Sale, and that it is willing to accept all of the AG Conditions. Prospect states that it did not submit a bid because of uncertainties arising from the COVID-19 pandemic. Prospect asserts that granting the Motion would sanction an inherently unfair sale transaction in the face of a higher and better alternative.

## II. Findings and Conclusions

Prospect was fully aware of the deadline to submit a bid for St. Francis, but made a business decision not to participate in the auction. *See* Opposition at ¶¶ 4–5 ("Prospect was preparing, like many bidders, to make a bid at the auction …. [T]he prevailing conditions at the time of the auction forced [Prospect] to back out and not present a qualifying offer at the auction …"). Having chosen not to submit a bid, Prospect lacks standing to oppose future matters pertaining to the approval of the Prime Sale, including the Motion.

"[T]he statutes governing the sale of assets of bankruptcy estates are intended to protect the creditors of such estates and not prospective purchasers." *In re HST Gathering Co.*, 125 B.R. 466, 468 (W.D. Tex. 1991). A disappointed prospective purchaser, such as Prospect, "is not within the 'zone of interests intended to be protected' under the bankruptcy statutes and regulations." *Id.* Applying this principle, the *HST Gathering* court upheld the bankruptcy court's refusal to accept a bid tendered in connection with an auction. The court held that the disappointed bidder lacked standing to appeal because he was "not a person whose interest was intended to be protected by the bankruptcy statutes or regulations." *Id.; see also Kabro Assocs. v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 273 (2d Cir. 1997) ("[A]n unsuccessful bidder—whose only pecuniary loss is the speculative profit it might have made had it succeeded in purchasing property at an auction—usually lacks standing to challenge a bankruptcy court's approval of a sale transaction."); *Stark v. Moran (In re Moran)*, 566 F.3d 676, 682 (6th Cir. 2009) ("A frustrated bidder lacks bankruptcy appellate standing when he merely alleges that he would have profited from his desired purchase, and does not allege, for instance,

that fraud or impropriety prevented the estate from accepting his higher bid such that creditors would not receive as great a recovery as they would have had the estate accepted the higher bid.").

Unlike the prospective purchasers in *HST Gathering*, *Colony Hill Assocs.*, and *Moran*, Prospect did not even submit a bid at the auction. Thus, the holdings of those cases—that Prospect lacks standing to object to the Prime Sale—apply with even greater force.

Prospect's reliance upon *In re Family Christian, LLC*, 533 B.R. 600, 621 (Bankr. W.D. Mich. 2015) for the proposition that it does have standing is unavailing. In *Family Christian*, the second highest bidder alleged that the sale process had been rigged for the benefit of the winning bidder. *Id.* at 604. The court held that the disappointed bidder had standing because (1) it was challenging the fairness of the sale process and (2) it had a pecuniary interest in the sale resulting from an administrative claim it had purchased. *Id.* at 605.

*Family Christian* is inapposite because, as stated previously, Prospect did not participate in the auction or the Bidding Procedures Motion. Prospect could have appeared at the hearing on the Bidding Procedures Motion and presented its argument that a delay in the auction was warranted given the COVID-19 pandemic. It chose not to do so. The instant Opposition—filed shortly before the Prime Sale is projected to close—is the first time that Prospect has appeared before the Court. To have standing to challenge the sale on fairness grounds, Prospect was required to, at the very minimum, actually participate in the auction or the Bidding Procedures Motion. Its failure to do so precludes it from objecting at this late date.

Further, Prospect's contention that the auction was unfair, because it took place in the midst of the COVID-19 pandemic, is entirely without merit. Prospect ignores the fact that the estates' financial position did not afford the Debtors the luxury of postponing the auction. Because the Prime Sale is subject to review by the Attorney General under Cal. Corp. Code § 5914 *et seq.*, the sale could not close until approximately four months after entry of the Sale Order. That meant that the Debtors were required to schedule the auction while they still had enough cash to sustain roughly four months of operations at St. Francis—a daunting task given that between April 26, 2020 and July 11, 2020, the Debtors' cash burn rate was $700,000 per day. *See* Supplemental Declaration of Peter C. Chadwick [Doc. No. 5214] at ¶ 5 n. 5.

Subsequent events have vindicated the Debtors' decision to proceed with the auction in early April. Current projections indicate that unsecured creditors will receive $8.1 million, or only approximately 0.5% of their claims. *See* Doc. No. 4994, Ex. A. Given the size of this case, the margin between a distribution to unsecured creditors and administrative insolvency is razor-thin. Had the auction been delayed, there is a substantial probability that the estates would become administratively insolvent. Therefore, the Debtors' decision to proceed with the auction when they did was in the best interest of creditors.

Based upon the foregoing, Prospect lacks standing to oppose the Motion, and the Court will strike Prospect's Opposition from the record. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: August 7, 2020

*Ernest M. Robles*
Ernest M. Robles
United States Bankruptcy Judge