**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

In re

VERITY HEALTH SYSTEM OF
CALIFORNIA, INC., *et al.*,

Debtors and Debtors In Possession.

☒ Affects All Debtors
☐ Affects Verity Health System of California, Inc.
☐ Affects O'Connor Hospital
☐ Affects Saint Louise Regional Hospital
☐ Affects St. Francis Medical Center
☐ Affects St. Vincent Medical Center
☐ Affects Seton Medical Center
☐ Affects O'Connor Hospital Foundation
☐ Affects Saint Louise Regional Hospital Foundation
☐ Affects St. Francis Medical Center of Lynwood Foundation
☐ Affects St. Vincent Foundation
☐ Affects St. Vincent Dialysis Center, Inc.
☐ Affects Seton Medical Center Foundation
☐ Affects Verity Business Services
☐ Affects Verity Medical Foundation
☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose ASC, LLC

Debtors and Debtors In Possession.

Lead Case No. 2:18-bk-20151-ER

Jointly Administered With:
CASE NO.: 2:18-bk-20162-ER
CASE NO.: 2:18-bk-20163-ER
CASE NO.: 2:18-bk-20164-ER
CASE NO.: 2:18-bk-20165-ER
CASE NO.: 2:18-bk-20167-ER
CASE NO.: 2:18-bk-20168-ER
CASE NO.: 2:18-bk-20169-ER
CASE NO.: 2:18-bk-20171-ER
CASE NO.: 2:18-bk-20172-ER
CASE NO.: 2:18-bk-20173-ER
CASE NO.: 2:18-bk-20175-ER
CASE NO.: 2:18-bk-20176-ER
CASE NO.: 2:18-bk-20178-ER
CASE NO.: 2:18-bk-20179-ER
CASE NO.: 2:18-bk-20180-ER
CASE NO.: 2:18-bk-20181-ER

Chapter 11 Cases

Hon. Judge Ernest M. Robles

**MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED JULY 2, 2020) OF THE DEBTORS, THE PREPETITION SECURED CREDITORS, AND THE COMMITTEE**

Plan Confirmation Hearing:
Date:   August 12, 2020
Time:   10:00 a.m. (Pacific Time)
Place:  Courtroom 1568
        255 E. Temple Street
        Los Angeles, CA 90012

SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
NICHOLAS A. KOFFROTH (Bar No. 287854)
nicholas.koffroth@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Attorneys for the Chapter 11 Debtors and
Debtors In Possession

PAUL J. RICOTTA (admitted *pro hac vice*)
pricotta@mintz.com
DANIEL S. BLECK (admitted *pro hac vice*)
dsbleck@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000 / Fax: (617) 542-2241

Attorneys for UMB Bank, N.A., as Master
Indenture Trustee and Wells Fargo Bank,
National Association, as Indenture Trustee

NATHAN F. COCO (admitted *pro hac vice*)
ncoco@mwe.com
MEGAN M. PREUSKER (admitted *pro hac vice*)
mpreusker@mwe.com
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, Illinois 60606-0029
Tel: (312) 372-2000 / Fax: (312) 948-7700

Attorneys for U.S. Bank National Association
solely in its capacity, as the note indenture trustee
and as the collateral agent under the note indenture
relating to the 2015 Working Capital Notes

CLARK T. WHITMORE (admitted *pro hac vice*)
clark.whitmore@maslon.com
JASON REED (admitted *pro hac vice*)
jason.reed@maslon.com
MASLON LLP
90 South Seventh Street
Minneapolis, Minnesota 55402-4140
Tel: (312) 372-2000 / Fax: (312) 948-7700

Attorneys for U.S. Bank National Association
solely in its capacity, as the note indenture trustee
and as the collateral agent under the note
indenture relating to the 2017 Working Capital
Notes

BRUCE S. BENNETT (Bar No. 105430)
bbennett@jonesday.com
BENJAMIN ROSENBLUM (admitted *pro hac vice*)
brosenblum@jonesday.com
PETER S. SABA (admitted *pro hac vice*)
psaba@jonesday.com
JONES DAY LLP
250 Vesey Street
New York, New York 10281
Tel: (212) 326-3939 / Fax: (212) 755-7306

Attorneys for Verity MOB Financing, LLC and
Verity MOB Financing II, LLC

GREGORY A. BRAY (Bar No. 115367)
gbray@milbank.com
MARK SHINDERMAN (Bar No. 136644)
mshinderman@milbank.com
JAMES C. BEHRENS (Bar No. 280365)
jbehrens@milbank.com
MILBANK LLP
2029 Century Park East
33rd Floor
Los Angeles, California 90067
Tel: (424) 386-4000 / Fax: (213) 629-5063

Attorneys for the Official Committee of
Unsecured Creditors

**Table of Contents**

SECTION 1.    DEFINITIONS AND INTERPRETATION ............................................... 2

    **A.**    **Definitions** .................................................................................... 2

    **B.**    **Interpretation and Rules of Construction** ............................... 21

    **C.**    **Controlling Document** .............................................................. 22

SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS. ....................... 22

    2.1    *Administrative Claims* .............................................................. 22

    2.2    *Professional Claims* ................................................................. 22

    2.3    *Statutory Fees* .......................................................................... 23

    2.4    *Priority Tax Claims* .................................................................. 23

SECTION 3.    CLASSIFICATION OF CLAIMS .................................................... 23

    3.1    *Classification in General* .......................................................... 23

    3.2    *Grouping of Debtors for Deemed Substantive Consolidation* ............... 23

    3.3    *Summary of Classification* ........................................................ 24

    3.4    *Special Provision Governing Unimpaired Claims* ...................... 24

    3.5    *Elimination of Vacant Classes* ................................................. 24

SECTION 4.    TREATMENT OF CLAIMS ......................................................... 25

    4.1    *Class 1A: Priority Non-Tax Claims* ........................................ 25

    4.2    *Class 1B: Secured PACE Tax Financing Claims* ..................... 25

    4.3    *Class 2: Secured 2017 Revenue Notes Claims* ........................ 25

    4.4    *Class 3: Secured 2015 Revenue Notes Claims* ........................ 26

    4.5    *Class 4: Secured 2005 Revenue Bond Claims* ......................... 26

    4.6    *Class 5: Secured MOB I Financing Claims* ............................. 27

    4.7    *Class 6: Secured MOB II Financing Claims* ............................ 28

    4.8    *Class 7: Secured Mechanics Lien Claims* ................................ 28

    4.9    *Class 8: General Unsecured Claims* ......................................... 28

    4.10    *Class 9: Insured Claims* ......................................................... 28

    4.11    *Class 10: 2016 Data Breach Claims* ...................................... 30

    4.12    *Class 11:  Subordinated General Unsecured Claims* ............. 30

    4.13    *Class 12: Interests* ................................................................. 30

SECTION 5.    POST-EFFECTIVE DATE GOVERNANCE ....................................... 30

i

5.1  *Dissolution of Certain Debtors* ................................................ 30

5.2  *Dissolution of Certain Non-Debtor Affiliates* ........................ 30

5.3  *Dissolution of Sale-Leaseback Debtor Foundations* .............. 31

5.4  *Dissolution of the SCC Debtor Foundations* .......................... 31

5.5  *Dissolution of St. Vincent Foundation* ................................... 31

5.6  *Dissolution of VMF* ................................................................. 31

5.7  *Disposition of Marillac* ........................................................... 31

5.8  *Continued Existence of Post-Effective Date Debtors After the Effective Date* ............................................................................ 32

5.9  *Post-Effective Date Board of Directors* ................................. 34

5.10 *Document Preservation* ............................................................ 35

SECTION 6.    THE LIQUIDATING TRUST ................................................... 35

6.1  *Creation* .................................................................................... 35

6.2  *Purposes of the Liquidating Trust* ......................................... 35

6.3  *The Liquidating Trust Agreement* ........................................... 36

6.4  *Operations of the Liquidating Trust* ...................................... 36

6.5  *Liquidating Trustee* ................................................................. 36

6.6  *Books and Records* ................................................................... 40

6.7  *Payment of Trust Expenses* ..................................................... 40

6.8  *Employment and Compensation of Professionals* .................. 40

6.9  *Limitation of Liability of the Liquidating Trustee and the Post-Effective Date Committee* ........................................................ 41

6.10 *Termination of the Trust* ......................................................... 41

SECTION 7.    MEANS FOR IMPLEMENTATION OF THE PLAN ....................... 42

7.1  *Creditor Settlement Agreements* ............................................. 42

7.2  *Deemed Substantive Consolidation* ........................................ 45

7.3  *Cancellation of Existing Indentures and Related Securities* ................. 46

7.4  *Funding for Distributions* ....................................................... 46

7.5  *No Further Court Authorization* ............................................. 46

7.6  *Operating Accounts for the Post-Effective Date Debtors* ..... 47

7.7  *Transfer of Certain Funds Into the Liquidating Trust* .......... 47

7.8  *Funding of the Liquidating Trust Administration Accounts* ................. 49

7.9  *Liquidating Trust Reserves* ..................................................... 49

ii

7.10  *Plan Fund* ................................................................................................... 50

7.11  *Post-Effective Date Committee* ................................................................ 51

7.12  *Coordination Between Post-Effective Date Debtors and the Liquidating Trust* ............................................................................................ 52

7.13  *Destruction and Abandonment of Books and Records* ...................... 52

7.14  *Preservation of Insurance* ........................................................................ 53

7.15  *Mutuality preserved* ................................................................................. 53

SECTION 8.    DISTRIBUTIONS .................................................................................... 53

8.1  *Party Responsible for Making Distributions* ......................................... 53

8.2  *Appointment of Disbursing Agent* ........................................................ 53

8.3  *Timing of Distributions* ............................................................................ 53

8.4  *Withholding of Distributions* .................................................................. 53

8.5  *Delivery of Distributions and Undeliverable Distributions* ................ 54

8.6  *Setoffs* .......................................................................................................... 54

8.7  *De Minimis Distributions* ......................................................................... 55

8.8  *Allocation of Plan Distribution Between Principal and Interest* ........... 55

8.9  *Entry of Final Decree in Chapter 11 Cases* ............................................ 55

SECTION 9.    TRUST BENEFICIARIES ........................................................................ 55

9.1  *Identification of Trust Beneficiaries* ....................................................... 55

9.2  *Beneficial Interests Only* ........................................................................... 55

9.3  *Ownership of Beneficial Interests Hereunder* ....................................... 56

9.4  *Evidence of Beneficial Interests* .............................................................. 56

9.5  *Conflicting Claims* ..................................................................................... 56

9.6  *Limitation on Transferability* ................................................................... 56

SECTION 10.    PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS ...................................................................................................... 56

10.1  *Objection to Claims* .................................................................................. 56

10.2  *Disallowed Claims* ................................................................................... 57

10.3  *No Distribution Pending Allowance* ...................................................... 57

10.4  *Distributions After Allowance* ............................................................... 57

10.5  *Disputed Claims* ....................................................................................... 57

10.6  *Cumulative Effect* ..................................................................................... 58

SECTION 11.    EXECUTORY AGREEMENTS ............................................................. 58

iii

| | 11.1 | *General Treatment* | 58 |
| | 11.2 | *Bar Date for Rejection Damages* | 59 |
| | 11.3 | *Insurance Policies* | 59 |
| SECTION 12. | | CONDITIONS PRECEDENT TO EFFECTIVE DATE | 60 |
| | 12.1 | *Conditions Precedent to Confirmation of Plan* | 60 |
| | 12.2 | *Conditions to Effective Date* | 60 |
| | 12.3 | *Waiver of Conditions* | 60 |
| SECTION 13. | | EFFECT OF CONFIRMATION | 60 |
| | 13.1 | *Vesting of Assets* | 60 |
| | 13.2 | *No Discharge* | 61 |
| | 13.3 | *Settlement of Causes of Action Relating to Claims* | 61 |
| | 13.4 | *Extension of Existing Injunctions and Stays* | 61 |
| | 13.5 | *Releases* | 61 |
| | 13.6 | **Injunctions** | 62 |
| | 13.7 | *Exculpation* | 63 |
| | 13.8 | *No Recourse* | 64 |
| | 13.9 | *Preservation of Causes of Action* | 64 |
| | 13.10 | *Termination of Responsibilities of the Patient Care Ombudsman* | 66 |
| | 13.11 | *SGM Action* | 66 |
| SECTION 14. | | RETENTION OF JURISDICTION | 66 |
| | 14.1 | *Bankruptcy Court Jurisdiction* | 66 |
| SECTION 15. | | MISCELLANEOUS PROVISIONS | 68 |
| | 15.1 | *Termination of All Employee, Retiree and Workers' Compensation Benefits* | 68 |
| | 15.2 | *Termination of Collective Bargaining Agreements* | 69 |
| | 15.3 | *Administrative Claims Bar Date* | 69 |
| | 15.4 | *Exemption from Transfer Taxes* | 69 |
| | 15.5 | *Amendments* | 69 |
| | 15.6 | *Revocation or Withdrawal of Plan* | 70 |
| | 15.7 | *Severability* | 70 |
| | 15.8 | *Request for Expedited Determination of Taxes* | 70 |
| | 15.9 | *U.S. Trustee Quarterly Fees and Post-Confirmation Status Reports* | 70 |

US_Active\114691962\V-7

15.10 *Courts of Competent Jurisdiction* .......................................................... 70

15.11 *Governing Law* .......................................................................................... 71

15.12 *Continuing Effect of the Bankruptcy Court Orders and Settlement Stipulations* ............................................................................................... 71

15.13 *Time* .......................................................................................................... 71

15.14 *Business Day Transactions* ....................................................................... 71

15.15 *Headings* .................................................................................................. 71

15.16 *Exhibits* .................................................................................................... 71

15.17 *Notices* ...................................................................................................... 71

15.18 *Post-Effective Date Notices* ..................................................................... 73

15.19 *Conflict of Terms* ..................................................................................... 73

v

# **INTRODUCTION**[1]

The Debtors, the Prepetition Secured Creditors, and the Committee propose the following amended chapter 11 plan (as further defined below, the "***Plan***"), pursuant to § 1121(a) of the Bankruptcy Code.[2]  Creditors should refer to the Disclosure Statement filed or to be filed in connection with this Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, results of operations, and future projections and risk factors, together with a summary and analysis of this Plan.

The Plan proposes to pay Allowed Secured Claims and Allowed Administrative Claims in full on the Effective Date except for the 2005 Bonds Diminution Claim, payment of which will be deferred post-Effective Date to allow for the payment of the foregoing Claims in exchange for, among other things, (i) the dismissal of certain litigation commenced by the Committee, and (ii) the waiver of challenge claims preserved against Verity MOB Financing LLC and Verity MOB Financing II LLC under the Final DIP Order and the Cash Collateral Orders.  The Plan also proposes the resolution of certain other Claims and the distribution of proceeds to Holders of Allowed Claims.  Claims against the Debtors—other than Unclassified Claims—are classified in Section 3 and treated in accordance with Section 4 hereof.[3]  The Plan provides that a Liquidating Trustee will continue the wind-down and liquidation of the Debtors after the Effective Date, and will oversee the operations of the Post-Effective Date Debtors during the Sale Leaseback Period in accordance with the Interim Agreements and the Transition Services Agreements.

The Plan requests the Bankruptcy Court approve and implement the terms of (i) the Creditor Settlement Agreements, including the Plan Settlement, and (ii) all documents necessary to effectuate the Plan.  To the extent that there are any inconsistencies between the terms of the Creditor Settlement Agreements, the Interim Agreements, the Transition Services Agreements and/or the Plan or Confirmation Order, unless otherwise expressly provided for in such Creditor Settlement Agreements, Interim Agreements, Transition Services Agreements and/or the Plan, the terms of this Plan shall govern.  In the event of a conflict between the Plan and Confirmation Order, the Confirmation Order shall govern.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE COURT, HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTION OF THIS PLAN.  ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

---

1   Capitalized terms not otherwise defined in this Introduction have the definitions set forth in Section 1 of this Plan.

2   All references to "§" herein are to the Bankruptcy Code, unless otherwise noted.

3   All references to "Article" and "Section" herein are to the articles and sections of this Plan unless otherwise noted.

1

# SECTION 1.        DEFINITIONS AND INTERPRETATION

**A.        Definitions.** The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.1    ***2005 Revenue Bonds Diminution Claim*** means that portion of the Secured 2005 Revenue Bonds Claim (as more fully described and calculated in accordance with Section 4.5(b) below) which remains unpaid after payment on the Effective Date of (i) an amount equal to the Initial Secured 2005 Revenue Bonds Claims Payment, plus (ii) the amounts applied by the 2005 Revenue Bonds Trustee to the Secured 2005 Revenue Bonds Claim which are held in a (1) principal or revenue account, (2) debt service or redemption reserve, or (3) an escrow or expense reserve account, plus (iii)(a) accrued, but unpaid postpetition interest, if any, at the rate specified in the 2005 Revenue Bond Indentures through and including the Effective Date, excluding any interest at the default rate or the Tax Rate, or any applicable redemption or other premium, and (b) any accrued, but unpaid reasonable, necessary out-of-pocket fees and expenses of the 2005 Revenue Bonds Trustee and the Master Trustee pursuant to the Final DIP Order and Cash Collateral Orders through and including the Effective Date.  The 2005 Revenue Bonds Diminution Claim shall be in an amount no greater than $135,245,000.00, plus interest, to be paid after the Effective Date, pursuant to Section 4.5 hereof and the Plan Settlement.

1.2    ***2005 Revenue Bonds Trustee*** means Wells Fargo Bank, National Association, as trustee for those certain bonds issued pursuant to the 2005 Revenue Bonds Indentures.

1.3    ***2005 Series A, G and H Revenue Bonds*** means those series of outstanding bonds issued by the CSCDA, pursuant to the terms of the 2005 Revenue Bonds Indentures.

1.4    ***2005 Revenue Bonds Indentures*** means those certain bond indentures, dated as of February 1, 2005, as amended and supplemented, between the CSCDA and the 2005 Revenue Bonds Trustee, supported by the Obligations arising in connection with those certain Loan Agreements, dated February 1, 2005, between the Daughters of Charity Health System and CSCDA, and secured by the collateral pledged to the Master Trustee for the benefit of the Series A, G and H Revenue Bonds.

1.5    ***2015 Notes Trustee*** means U.S. Bank, National Association, solely in its capacity as trustee for those certain notes issued pursuant to the 2015 Revenue Notes Indentures.

1.6    ***2015 Revenue Notes*** means those outstanding Series A, B, C and D notes issued by the CPFA, pursuant to the terms of the 2015 Revenue Notes Indentures.

1.7    ***2015 Revenue Notes Indentures*** means those certain note indentures, dated as of December 1, 2015, between the CPFA and the 2015 Notes Trustee, supported by the Obligations arising in connection with those certain Loan Agreements, dated as of December 1, 2015, between VHS and CPFA, and secured by the collateral pledged to the Master Trustee for the benefit of the 2015 Revenue Notes.

1.8    ***2016 Data Breach Claims*** means all timely filed Claims for damages asserted by any individual whose personally identifiable information was disclosed, in the data breach

2

occurring on April 27, 2016, and subject to the extended Bar Date set forth in the Bankruptcy Court's order [Docket No. 2434].

1.9     ***2017 Notes Trustee*** means U.S. Bank, National Association, solely in its capacity,\ as trustee for those certain notes issues pursuant to the 2017 Revenue Notes Indentures, dated as of December 1, 2017, pursuant to the 2017 Revenue Notes Indentures.

1.10     ***2017 Revenue Notes*** means those outstanding Series A, B, C and D notes issued by the CPFA, pursuant to the terms of the 2017 Revenue Notes Indentures.

1.11     ***2017 Revenue Notes Indenture*s** means those certain note indentures, dated as of December 1, 2017, between the CPFA and the 2017 Notes Trustee, supported by the Obligations arising in connection with those certain Loan Agreements, dated as of December 1, 2017, between VHS and CPFA and secured by the collateral pledged to the Master Trustee for the benefit of the 2017 Revenue Notes.

1.12     ***Adequate Protection Payments*** means any and all payments made by the Debtors prior to the Effective Date to or for the benefit of the Prepetition Secured Creditors pursuant to the section 5(b) of Final DIP Order and/or the Cash Collateral Orders.

1.13     ***Administrative Claim*** means a Request for Payment of an administrative expense of a kind specified in § 503(b) and entitled to priority pursuant to § 507(a)(2), including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, Section 503(b)(9) Claims, and Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court (under § 546(c)(2)(A) or otherwise), but excluding Professional Claims, and Statutory Fees, which are separately defined below.

1.14     ***Administrative Claims Bar Date*** means the deadline set by an order of the Bankruptcy Court by which holders of Administrative Claims, other than Administrative Claims arising in the ordinary course of business for the Debtors, must assert Administrative Claims or be forever barred, which shall be not less than 14 days prior to the date of the Confirmation Hearing.

1.15     ***Administrative Claims Reserve*** means Cash to be set aside by the Debtors on the Effective Date in an aggregate amount sufficient to fund a reserve for the payment of all unpaid Allowed Administrative Claims that will be paid after the Effective Date and all Administrative Claims that are not yet Allowed as of the Effective Date. The amount of such reserve shall be determined and approved by the Bankruptcy Court at the Confirmation Hearing in accordance with the procedures established in Section 15.3.

1.16     ***AHMC*** means AHMC Healthcare Inc., or its designee under the Seton Asset Purchase Agreement.

1.17     ***Allowed*** means for distribution purposes, a Claim, or any portion thereof, or a particular Class of Claims (a) that is Allowed by a Final Order of the Bankruptcy Court (or such other court as provided by the Plan or as the Liquidating Trustee and the Holder of such Claim agree may adjudicate such Claim and objections thereto), (b) that is Allowed by this Plan and/or

3

Confirmation Order, (c) which is not the subject of a Proof of Claim timely filed with the Bankruptcy Court and is Scheduled as liquidated and noncontingent (other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed), but only to the extent such Claim is Scheduled as liquidated and noncontingent, (d) for which a Proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code or deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or, (iii) following the Effective Date, with respect to General Unsecured Claims, as otherwise may be determined by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement, or (d) that is expressly allowed in a liquidated amount pursuant to this Plan.

1.18   ***Assets*** means all legal or equitable interests of the Estates in any and all (a) property of every kind, nature, character and description, whether real, personal, or mixed, whether tangible or intangible (including contract rights), wherever situated and by whomever possessed, and any goodwill related thereto, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash (including, but not limited to, cash of the Foundations that is not properly donor-restricted), deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action, securities, investments and any other general intangibles, and (b) the proceeds, products, offspring, rents or profits thereof, including all assets of any of the Debtors constituting "property of the estate" as described in § 541.

1.19   ***Avoidance Actions*** means any Causes of Action arising under any section of chapter 5 of the Bankruptcy Code, including, without limitation, §§ 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 or under similar or related state or federal statutes and common law, including state fraudulent transfer laws.

1.20   ***Ballot Deadline*** means the date all Ballots must be properly executed, completed and delivered by First Class Mail, overnight courier, or hand delivery, to KCC, at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245, so as to be actually received by KCC no later than 4:00 p.m. (Pacific Time), on the date set by the Bankruptcy Court in the Disclosure Statement Order.

1.21   ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

1.22   ***Bankruptcy Court*** means the United States Bankruptcy Court for the Central District of California, except to the extent the jurisdictional reference of the Bankruptcy Court has been withdrawn to the United States District Court for the Central District of California, pursuant to section 157(d) of title 28 of the United States Code.

1.23   ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as may be amended from time to time.

4

1.24    **Bar Date** means the applicable deadlines by which a Proof of Claim or Request for Payment must be, or must have been, filed in these Chapter 11 Cases, as established by either an order of the Bankruptcy Court or this Plan, including without limitation, (a) the April 1, 2019, deadline to file Proofs of Claim relating to prepetition Claims, (b) the September 30, 2019 extended deadline for 2016 Data Breach Claims, (c) the October 11, 2019 extended deadline for certain wage and hour claims pursuant to the *Order Approving Notice of Extended Bar Date re Certain Wage and Hour Claims* [Docket No. 2692], and (d) the Administrative Claims Bar Date..

1.25    **Bar Date Order** means any order of the Bankruptcy Court establishing Bar Dates for filing Proofs of Claim or Requests for Payment in these Chapter 11 Cases, as the same may be amended, modified or supplemented including, but not limited to, those orders at Docket Nos. 1528, 2434, 2435, 2436, 2537, and 2692.

1.26    **Bond and Notes Trustee(s)** means all or any of the 2005 Revenue Bonds Trustee, the 2015 Notes Trustee and the 2017 Revenue Notes Trustee, as the context requires.

1.27    **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in the State of California are required or authorized to close by law or executive order.

1.28    **Cash** means the legal tender of the United States of America and its equivalent.

1.29    **Cash Collateral Orders** means, collectively, the orders authorizing use of cash collateral entered under Docket Nos. 3022, 3883, 4028, 4187, and 4670, and any subsequent orders authorizing the use of cash collateral, the terms of which may be agreed to between the Debtors and the Prepetition Secured Creditors.

1.30    **Causes of Action** means any and all present or future claims, rights, legal and equitable defenses, offsets, recoupments, actions in law or equity or otherwise, choses in action, obligation, guaranty, controversy, demand, action suits, damages, judgments, third-party claims, counter-claims, cross-claims against any Person, whether known or unknown, liquidated or unliquidated, foreseen or unforeseen, existing or hereafter arising, whether based on legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity, whether or not the subject of a pending litigation or proceedings on the Effective Date or thereafter, including without limitation:  (a) all Avoidance Actions; (b) all other claims in avoidance, recovery, and/or subordination; (c) all SGM Claims; (d) all claims against Integrity Healthcare, LLC and BlueMountain Capital Management LLC; and (e) all other actions described in the Disclosure Statement, the Confirmation Order, the Schedules, or the Plan; provided, however, (x) any claims arising under the Interim Agreements and (y) any claims or other litigation compromised as part of a Creditor Settlement Agreement, are, in each case, excluded.

1.31    **CDPH** means the California Department of Public Health.

1.32    **Chapter 11 Cases** means the voluntary cases commenced by each of the Debtors under chapter 11 of the Bankruptcy Code on the Petition Date and administered jointly under caption, *In re Verity Health System of California, Inc., et al.*, Lead Case No. 2:18-bk-20151-ER, which are currently pending before the Bankruptcy Court.  Unless otherwise noted, all references to a docket or docket entry herein refer to the docket of the Lead Case.

5

1.33    *Claim* has the meaning set forth in § 101(5).

1.34    *Claims Objection Deadline* means the first Business Day that is the later of (a) two hundred ten (210) days after the Effective Date, or (b) such other later date as the Bankruptcy Court may establish upon a motion by the Liquidating Trustee in accordance with the Plan.

1.35    *Class* means a class of Claims established pursuant to Section 4 herein.

1.36    *CMS* means Centers for Medicare and Medicaid Services.

1.37    *Committee* means the Official Committee of Unsecured Creditors appointed on September 17, 2018, by the U.S. Trustee in these Chapter 11 Cases pursuant to § 1102 [Docket No. 197].

1.38    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Lead Case.

1.39    *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.40    *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to § 1129.

1.41    *Consent* means consent of a party that is not to be unreasonably withheld or delayed.

1.42    *CPFA* means the California Public Financing Authority.

1.43    *Creditor Settlement Agreements* mean, collectively, any settlements that the Debtors enter into with creditors to resolve Causes of Action, claims, and/or litigation in connection with or relating to the Plan, which shall be filed seven (7) days prior to the Ballot Deadline, if not earlier, as a Plan Supplement, unless such deadline shall otherwise be extended with the consent of the Plan Proponents, which shall not be unreasonably withheld or delayed.

1.44    *Creditor Settlement Parties* means, collectively, parties to Creditor Settlement Agreements.

1.45    *CSCDA* means the California Statewide Communities Development Authority.

1.46    *Debtors* means, collectively, VHS and its sixteen affiliates, listed on Schedule 1.41 hereto, in their capacity as debtors and debtors in possession in these Chapter 11 Cases.

1.47    *Defined Contribution Plans* means, collectively, the qualified and non-qualified 401(a), 401(k), 403(b), and 457(b) defined contribution plans maintained by certain Debtors.

1.48    *DePaul Ventures* means DePaul Ventures, LLC, a debtor and debtor in possession.

1.49    *DePaul - San Jose ASC* means De Paul Ventures - San Jose ASC, LLC, a Non-Debtor Affiliate.

6

1.50     *DePaul - San Jose Dialysis* means DePaul Ventures - San Jose Dialysis, LLC, a debtor and debtor in possession.

1.51     *DHC* means California Department of Health Care Service.

1.52     *DHHS* means the United States Department of Health and Human Services.

1.53     *Disallowed* means, with respect to any Claim or Interest, any Claim or Interest (i) proof of which was required to be filed by the Bankruptcy Code or an order of the Bankruptcy Court, but as to which no proof of Claim or Interest was timely or properly filed, (ii) which has been withdrawn in whole or in part, by an agreement between the Debtors or the Trust and the Holder thereof or unilaterally by the Holder thereof, or (iii) which has been disallowed, in whole or in part, by a Final Order or pursuant to this Plan.  In the event that a Claim is disallowed in part, then the Claim may be an Allowed Claim with respect to amounts asserted under the Claim which have not been disallowed.

1.54     *District Court* means the United States District Court for the Central District of California.

1.55     *Disclosure Statement* means the disclosure statement filed with the Bankruptcy Court by the Debtors, pursuant to § 1125, with respect to the Plan, including all exhibits and schedules thereto, which was approved by the Bankruptcy Court pursuant to § 1125, as it may be amended, modified or supplemented from time to time.

1.56     *Disbursing Agent* means KCC in its capacity as a disbursing agent under Section 8 hereof.

1.57     *Disputed* means, with respect to any Claim:

(a)     if no Proof of Claim has been filed by the applicable Bar Date, a Claim that is:

(i)     listed on the Schedules as either disputed, contingent, or unliquidated; or

(ii)     subject to an objection or a request for estimation that has been filed by the Claims Objection Deadline and has not been withdrawn or determined by a Final Order; or

(b)     if a Proof of Claim has been filed by the applicable Bar Date, a Claim as to which:

(i)     no corresponding Claim is listed on the Schedules;

(ii)     a corresponding Claim is listed on the Schedules as disputed, contingent, or unliquidated;

7

(iii)  a corresponding Claim is listed on the Schedules not as disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules; or

(iv)  an objection or a request for estimation has been interposed by the Claims Objection Deadline that, in either instance, has not been withdrawn or determined pursuant to a Final Order.

1.58   *Disputed Unclassified Claims* means Unclassified Claims that are Disputed.

1.59   *Disputed Unsecured Claims Reserve* means the reserve for Disputed General Unsecured Claims established under Section 7.9(c) hereof.

1.60   *Effective Date* means a day, as determined by the Plan Proponents, that is a Business Day as soon as reasonably practicable after all conditions to the Effective Date specified in Section 12.2 hereof have been satisfied or waived.

1.61   *Effective Date Professional Claim Reserves.*   Cash to be set aside by the Liquidating Trustee on the Effective Date sufficient in the aggregate to fund a reserve on account of Professional Claims not yet fixed and allowed by the Bankruptcy Court prior to or on the Effective Date.

1.62   *ERISA* means Title IV of the Employee Retirement Income Security Act of 1974, as amended.

1.63   *Estates* means, as to each Debtor, the estates created upon the Petition Date pursuant to § 541.

1.64   *Executory Agreement* means any executory contract or unexpired lease subject to § 365, excluding (a) the Debtors' collective bargaining agreements, and (b) any executory contract or unexpired lease entered into after the Petition Date and approved by an order of the Bankruptcy Court.

1.65   *Foundations* means collectively the following Debtor nonprofit public benefit corporations that are responsible for fundraising and grant-making programs for each of their respective Debtor hospitals: O'Connor Hospital Foundation, Saint Louise Regional Hospital Foundation, St. Francis Medical Center of Lynwood Foundation, St. Vincent Foundation, and Seton Medical Center Foundation.

1.66   *Final DIP Order* means the *Final Order (I) Authorizing Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 409] entered by the Bankruptcy Court on October 5, 2018.

1.67   *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, is in full force and effect, and as to which order or

judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek *certiorari*, or request reargument, further review, or rehearing has expired and no appeal, petition for *certiorari,* request for reargument or further review, or rehearing has been timely filed, or (b) any appeal that has been or may be taken, or any petition for *certiorari* or request for reargument or further review or rehearing that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which *certiorari* was sought, or to which the request was made, and no further appeal, petition for *certiorari*, request for reargument, or further review or rehearing has been or can be taken or granted; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order; provided, further, that the Debtors or Liquidating Trustee, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

1.68    ***First Priority Trust Beneficial Interests*** means the first priority Trust Beneficial Interest in the Plan Fund provided to the Holders of the Secured 2005 Revenue Bonds Claims which shall entitle such Holders to receive payment on the 2005 Revenue Bonds Diminution Claim until fully satisfied and before any payment on account of Second Priority Trust Beneficial Interests held by Holders of Allowed General Unsecured Claims.

1.69    ***General Unsecured Claim*** means (i) any unsecured claim that is not an Insured Claim, 2016 Data Breach Claim, or Subordinated General Unsecured Claim, (ii) any Claim for damages resulting from or based on the Debtors' rejection of an Executory Agreement, or (iii) any Claim that is determined by the Bankruptcy Court to be a prepetition general unsecured claim that is not entitled to priority or subject to subordination pursuant to this Plan.

1.70    ***Governmental Unit*** has the definition set forth in § 101(27).

1.71    ***Holder*** means a holder of a Claim against, or Interest in, the Debtors.

1.72    ***Holdings*** means Verity Holdings, LLC, as debtor and debtor in possession.

1.73    ***Hospital Licenses*** means licenses and permits issued by the CDPH and the California State Board of Pharmacy.

1.74    ***Hospital Premises*** means all locations where SFMC and Seton provide hospital services, including their primary locations at (i) 3630 East Imperial Highway, Lynwood, California 90262; (ii) 1900 Sullivan Avenue, Daly City, California 94015; (iii) 600 Marine Boulevard, Moss Beach, California 94038, respectively; and such other locations where SFMC and Seton provide hospital services*.*

1.75    ***Hospital Purchased Assets*** means the assets purchased by Prime and AHMC pursuant to the SFMC Asset Purchase Agreement and Seton Asset Purchase Agreement, respectively.  For the avoidance of doubt, the Hospital Purchased Assets relate only to the Hospitals subject to the SFMC Sale and Seton Sale.

1.76    ***Hospitals*** means the hospitals and related facilities operated by SFMC and Seton subject to the SFMC Sale and Seton Sale.

9

1.77    *Impaired* means, with respect to a Class of Claims, that such Class is "impaired" within the meaning of § 1124.

1.78    *Indenture Trustees* means, collectively, the Master Trustee, the 2005 Revenue Bonds Trustee, the 2015 Notes Trustee and the 2017 Notes Trustee.

1.79    *Indemnification Claim* means any Claim for indemnification, subrogation, contribution, or reimbursement for all liabilities, loss, damages, costs and expenses of whatever kind, including attorneys' fees.

1.80    *Initial Secured 2005 Revenue Bonds Claims Payment* means the Cash on hand of the Debtors as of the Effective Date, net of the Cash (i) necessary to satisfy all Unclassified Claims and Class 1A Claims that are Allowed on or prior to the Effective Date, (ii) necessary to satisfy all Allowed Claims payable on the Effective Date to Classes 2, 3, 5, 6 and 7, and (iii) reserved under the Liquidating Trust Agreement, but in no event shall such amount be less than $98,200,000.00.

1.81    *Insurance Policy* means any insurance policy maintained by or for the benefit of the Debtors, regardless of whether such Insurance Policy is set forth in a schedule to the Plan Supplement.

1.82    *Insured Claims* means a Claim against any of the Debtors, their respective Estates, Assets or properties arising from any incident or occurrence that is covered by an applicable and available Insurance Policy.

1.83    *Insured Deficiency Claim* has the definition set forth in Section 4.10 hereof.

1.84    *Insurer* means any entity that issued an Insurance Policy, including any successors.

1.85    *Intercompany Claims* means any Claims held by a Debtor or a Non-Debtor Affiliate against a Debtor or Non-Debtor Affiliate, including, without limitation, any Indemnification Claim between and/or among the Debtors.

1.86    *Intercreditor Agreement* means the Second Amended and Restated Intercreditor Agreement, dated as of December 1, 2017, by and among VHS, on behalf of itself, and each Obligated Group Member, the 2015 Notes Trustee, the 2017 Notes Trustee and the Master Trustee.

1.87    *Interests* means any ownership interest in any of the Debtors, including but not limited to, membership interests or other entitlement to participate in the organizational affairs of a nonprofit entity organized under the laws of the State of California or equity interests in any for-profit corporation, partnership or limited liability company organized under the laws of any jurisdiction, including common stock, preferred stock, stock options and restricted stock awards.

1.88    *Interim Agreements* means, collectively, the Seton Interim Management Agreement, the Seton Interim Leaseback Agreement, the SFMC Interim Management Agreement, and the SFMC Interim Leaseback Agreement.

1.89    *Interim Leaseback Agreements* means, collectively, the Seton Interim Leaseback Agreement and the SFMC Interim Leaseback Agreement.

10

1.90    ***Interim Management Agreements*** means, collectively, the Seton Interim Management Agreement and the SFMC Interim Management Agreement.

1.91    ***IRC*** means the Internal Revenue Code of 1986, as amended, and any applicable regulations (including temporary and proposed regulations) promulgated thereunder by the United States Treasury Department.

1.92    ***KCC*** means Kurtzman Carson Consultants LLC.

1.93    ***Lead Case*** means *In re Verity Health System of California, Inc.*, Lead Case No. 2:18-bk-20151-ER, under which the Chapter 11 Cases are jointly administered, pursuant to Bankruptcy Rule 1015(b), and the order entered by the Bankruptcy Court granting joint administration [Docket No. 17].

1.94    ***Liquidating Trust*** means the liquidating trust created pursuant to Section 6 herein.

1.95    ***Liquidating Trust Administration Accounts*** means one or more deposit accounts to be established pursuant to Section 7.8 of the Plan and maintained by the Liquidating Trustee to pay any and all reasonable costs and expenses incurred in implementing the terms of the Plan, as set forth in the Liquidating Trust Agreement.

1.96    ***Liquidating Trust Agreement*** means the Liquidating Trust Agreement, to be dated on or prior to the Effective Date, between the Debtors and the Liquidating Trustee, governing the disposition of the Liquidating Trust Assets, the distribution of the proceeds thereof in accordance with the Plan, and setting forth the duties and obligations of the Liquidating Trustee.

1.97    ***Liquidating Trust Assets*** means any and all Assets of the Estates (other than the Operating Assets, the Hospital Purchased Assets, the rights under the Interim Agreements and any claim, litigation or Cause of Action compromised as part of a Creditor Settlement Agreement) of every kind and character, wherever located, whether real or personal, tangible or intangible, transferred to the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement, including, without limitation, to the extent not otherwise excluded by this definition:

(a)    all Remaining Cash;

(b)    all Causes of Action and the proceeds from the prosecution and/or settlement thereof;

(c)    all rights, claims and/or assets under any and all contracts, agreements, and licenses (whether or not executory contracts, and whether or not rejected or assumed) of the Debtors, including all rights and/or assets retained by any of the Debtors, as the sellers under their respective asset sale agreements with third-party purchasers approved by the Bankruptcy Court prior to the Effective Date, including without limitation, Quality Assurance Payments retained by the Debtors, the accounts receivable arising out of the rendition of services or the sale of products in the ordinary course of business by such Debtors prior to the closing date of their respective sales and all other rights of the Debtors, as sellers, under such asset sale agreements;

(d)    any proceeds of the foregoing; and

11

(e)    all files, books and records relating to the Debtors' businesses or the administration of the Plan other than those required to be maintained by the Post-Effective Date Debtors for the administration of the Operating Assets.

1.98    **Liquidating Trust Reserves** means one or more accounts or reserves of Cash established by the Liquidating Trustee in accordance with Section 7.9.

1.99    **Liquidating Trustee** means such person selected pursuant to Section 6.5 of the Plan or any successor or replacement officer appointed under the terms of the Plan.

1.100    **Local Bankruptcy Rules** means the Local Rules of the United States Bankruptcy Court of the Central District of California, as amended from time to time.

1.101    **Marillac** means **Marillac Insurance Company, LTD.,** the wholly-owned subsidiary of VHS, incorporated in the Cayman Islands on December 9, 2003.

1.102    **Master Trustee** means UMB Bank, N.A., as trustee for Obligations issued under that certain Master Indenture of Trust, dated as of December 1, 2001, as amended and supplemented, among the Daughters of Charity Health System, as predecessor in interest to VHS.

1.103    **Medi-Cal** means the program administered by the State of California for medical assistance under title XIX of the Social Security Act.

1.104    **Medicare** means the federal health insurance program administered under title XVIII of the Social Security Act.

1.105    **Mechanics Lien Claims** means all Allowed Claims arising under California Civil Code §§ 8400, *et seq.*, with respect to any real property or personal property of a Debtor subject to a lien provided by such law.

1.106    **MOB I Loan Agreement** means that certain Term Loan Agreement, dated October 3, 2017, between Holdings and Verity MOB Financing LLC, in the amount of $ 46,363,096, and secured by those certain Los Angeles and San Mateo Deeds of Trust, each dated October 3, 2017, and the other security documents entered into in connection therewith.

1.107    **MOB II Loan Agreements** mean those certain Term Loan Agreements, dated June 1, 2018 and July 26, 2018, each between Holdings and Verity MOB Financing II LLC, in the amount of $20,000,000, and secured by those certain related Los Angeles, San Mateo, and Santa Clara Deeds of Trust, dated June 1, 2018, as thereafter modified, and the Los Angeles Deed of Trust, dated July 26, 2018, and the other security documents entered into in connection therewith.

1.108    **Non-Debtor Affiliates** means the following affiliates of the Debtors that did not file a Chapter 11 Case: DePaul - San Jose ASC, Marillac, O'Connor Health Center I, Sports Medical Management, Inc., St. Vincent De Paul Ethics Corporation, VHoldings, Robert F. Kennedy Medical Center, and Robert F. Kennedy Medical Center Foundation.

12

1.109  ***Nonprofit Laws*** means any and all federal, state, local and other laws and governmental regulations applicable to nonprofit corporations, including without limitation, any administrative and judicial interpretations thereof (as applicable).

1.110  ***Nonprofit Status*** means status as a nonprofit corporation under applicable Nonprofit Laws.

1.111  ***Obligated Group Member*** means each of the following Debtors: (i) VHS, (ii) O'Connor Hospital, (iii) Saint Louise Regional Hospital, (iv) Seton, (v) SFMC, and (vi) SVMC.

1.112  ***Obligations*** means those certain undertakings by Obligated Group Members arising from those certain Loan Agreements, dated December 1, 2001 and dated December 1, 2005, between CSCDA and the Daughters of Charity Health System as predecessor in interest to VHS, as amended and supplemented by those Loan Agreements dated December 1, 2015, and December 1, 2017, between CPFA and VHS.

1.113  ***Operate*** (and any such variations, such as "Operation") means to operate, oversee, manage, administer, coordinate, control, supervise and/or direct the business and operations of any and/or all of the Operating Assets, whether in the ordinary course of business or otherwise, and including undertaking or pursuing strategies, activities, or actions with the intent of furthering the objectives of, and otherwise to effectuate the Plan as contemplated by the provisions hereof, including any strategies, activities or actions aimed at retaining, renewing, amending, extending or Transferring any of the Operating Assets.

1.114  ***Operating Account*** means one or more deposit accounts of Cash established and/or maintained by the Liquidating Trustee as set forth in Section 7.6.

1.115  ***Operating Assets*** means, collectively,

> (a)     the Hospitals;

> (b)     the Hospital Purchased Assets; and

> (c)     the Post-Effective Date Debtors' right to Quality Assurance Payments.

1.116  ***Operating Budget*** means the budget (as the same may be amended or modified from time to time) setting forth the projected costs and expenses associated with the Operating Assets (including without limitation, the cost of Operating the Operating Assets).

1.117  ***Ordinary Course Professionals Order*** means the order [Docket No. 693] entered by the Bankruptcy Court granting the Debtors' motion to retain and compensate professionals utilized by the Debtors in the ordinary course of business [Docket No. 364].

1.118  ***Ordinary Course Professionals*** means the professionals retained by the Debtors in the ordinary course of their business operations, pursuant to the Ordinary Course Professionals Order.

13

1.119 **Patient Care Ombudsman** means Dr. Jacob Nathan Rubin, MD, FACC, appointed by the U.S. Trustee to serve as the patient care ombudsman in these Chapter 11 Cases, pursuant to § 333(a), in accordance with the order [Docket No. 430] entered by the Bankruptcy Court on October 9, 2018.

1.120 **PBGC** means the Pension Benefit Guaranty Corporation, a wholly owned United States corporation, and agency of the United States, that administers the defined benefit pension plan termination program under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2018).

1.121 **PBGC Claims** means the Claims that the PBGC has asserted, or is deemed to have asserted, against the Debtors in relation to Verity Health System Retirement Plan A and Verity Health System Retirement Plan B, including on account of alleged unfunded benefit liabilities, minimum funding contributions, fixed and variable rate premiums, and termination premiums, which are identified as (i) the Amended Proofs of Claim filed by PBGC in the Lead Case, denominated as Proofs of Claim No. 7754, 7759, 7760, 7761, 7762, and 7763, and (ii) deemed to have been filed in each of the Chapter 11 Cases identified in such Proofs of Claim, pursuant to that certain stipulation [Docket No. 1772] approved by order of the Bankruptcy Court [Docket No. 1782].

1.122 **PBGC Settlement** means that certain Creditor Settlement Agreement described in Section 7.1(b).

1.123 **Person** means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, Governmental Unit or other entity of whatever nature.

1.124 **Petition Date** means August 31, 2018, which is the date that each Debtor filed a voluntary chapter 11 petition.

1.125 **Pharmacy Assets** means the portions of the Hospital Purchased Assets constituting drugs, dangerous devices, pharmacy systems, or other pharmacy assets, which will be purchased by and transferred to Prime and AHMC, respectively, on the dates Prime and AHMC obtain their required licenses, in accordance with the SFMC Asset Purchase Agreement and the Seton Asset Purchase Agreement.

1.126 **Plan** means this plan of liquidation proposed by the Plan Proponents, including the Plan Supplement and the exhibits hereto and thereto, as the same may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and its terms.

1.127 **Plan Fund** means one or more accounts or reserves of Cash established by the Liquidating Trustee in accordance with Section 7.10 hereof for the payment of, on or after the Effective Date, (i) the 2005 Revenue Bonds Diminution Claim, and (ii) Allowed General Unsecured Claims.

14

1.128  **Plan Proponents** means the Debtors, the Master Trustee, the 2005 Revenue Bonds Trustee, the 2015 Notes Trustee, the 2017 Notes Trustee, Verity MOB Financing LLC, Verity MOB Financing II, LLC, and the Committee.

1.129  **Plan Settlement** means that certain Creditor Settlement Agreement described in Section 7.1(a).

1.130  **Plan Supplement** means a supplemental appendix to this Plan, as may be amended from time to time on or prior to the Effective Date, which will contain the following items:

(a)  the Schedule of Assumed Contracts;

(b)  the schedule of Insurance Policies;

(c)  the identity of the directors serving on the Post-Effective Date Board of Directors;

(d)  the Transition Services Agreement;

(e)  the initial Operating Budget;

(f)  the identity of the initial Liquidating Trustee;

(g)  the identity of the members of the Post-Effective Date Committee;

(h)  the form of Liquidating Trust Agreement; and

(i)  the Creditor Settlement Agreements, if any,

of which items (a) through (e) shall be filed prior to the Effective Date, items (f) through (h) shall be filed no later than fourteen (14) days before the Ballot Deadline, and item (i) shall be filed seven (7) days prior to the Ballot Deadline, if not earlier, in each case, unless otherwise extended with the consent of the Plan Proponents.  Each of the foregoing documents may be filed separately.  The Plan Supplement shall be in substance and form acceptable to the Plan Proponents.

1.131  **Post-Effective Date Board of Directors** means the three (3) member board of directors for VHS that shall be formed on the Effective Date in accordance with Section 5.9 hereof, which shall also serve as the members of the subsidiary boards and any other boards required to be in existence.

1.132  **Post-Effective Date Committee** means a committee that shall be formed on the Effective Date in accordance with Section 7.11 hereof, consisting of (i) three (3) members designated by the Committee, and (ii) until the First Priority Beneficial Trust Interests are paid in full, the Master Trustee, as ex officio and non-voting member.

1.133  **Post-Effective Date Debtors** means, collectively, the Sale-Leaseback Debtors, SVMC, St. Vincent Dialysis, the SCC Debtors, and VHS, which shall exist solely for the limited duration and purposes set forth in the Plan.

15

1.134  ***Prepetition Secured Creditors*** means, collectively, the Master Trustee, the 2005 Revenue Bonds Trustee, the 2015 Notes Trustee, the 2017 Notes Trustee, Verity MOB Financing LLC, and Verity MOB Financing II, LLC.

1.135  ***Prime*** means Prime Healthcare Services, Inc., or its designee under the SFMC Asset Purchase Agreement.

1.136  ***Priority Benefit Plan Claims*** means Claims entitled to priority under § 507(a)(5).

1.137  ***Priority Non-Tax Claim*** means any Claim entitled to priority in payment as specified in § 507(a)(4), (5), (6), (7) or (9) other than Administrative Claims and Priority Tax Claims.

1.138  ***Priority Tax Claims*** means Claims of any Governmental Unit entitled to priority under § 507(a)(8) and 507(c).

1.139  ***Pro Rata Share*** means, as applicable, the proportion that (i) an Allowed Claim in a particular Class bears to the aggregate amount of all Claims in such Class, or (ii) an Allowed Claim in a particular Class bears to the aggregate amount of all Claims in such Class and all Claims in any other Classes entitled to share in the same recovery.  Such ratios shall be calculated as if all Claims in the particular Class asserted against all Debtors are Allowed Claims as of the Effective Date, unless specifically provided otherwise in the Plan.

1.140  ***Professional*** means any Person (a) retained in the Chapter 11 Cases by Final Order, pursuant to §§ 327, 363, and 1103 or otherwise; or (b) awarded compensation and reimbursement by the Bankruptcy Court, pursuant to § 503(b)(4); provided, however, that Professional does not include any Ordinary Course Professional.

1.141  ***Professional Claim*** means an administrative claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

1.142  ***Proof of Claim*** means a proof of claim, or a request for payment of an Administrative Claim, filed in these Chapter 11 Cases.

1.143  ***Provider Agreements*** means (i) the Medicare Health Insurance Benefits Agreements between any of the Debtors and DHHS, and (ii) the Medi-Cal Provider Agreements between any of the Debtors and DHCS.

1.144  ***Quality Assurance Fees*** means the Hospital Quality Assurance Fee originally imposed by SB 239 (Chapter 657, Statutes of 2013) on certain general acute care hospitals by California state law in order to make supplemental and grant payments and increased capitation payments to hospitals up to the aggregate upper payment limit and made permanent by the passage of Proposition 52 in November 2016.

1.145  ***Quality Assurance Payments*** means the supplemental and grant payments and increased capitation payments, to be funded out of the Hospital Quality Assurance Fee, to certain

16

general acute care hospitals as contemplated by SB 239 (Chapter 657, Statutes of 2013) up to the aggregate upper payment limit and made permanent by the passage of Proposition 52 in November 2016.

1.146 **Records Retention Order** means one or more orders entered by the Bankruptcy Court related to the retention and/or destruction of records.

1.147 **Released Party** means, individually and collectively, the Estates, the Debtors, the Committee, the members of the Committee, the Indenture Trustees and their affiliates, and each current and/or former member, manager, officer, director, employee, counsel, advisor, professional, or agents of each of the foregoing who were employed or otherwise serving in such capacity before or after the Petition Date.

1.148 **Remaining Cash** means the actual sum of Cash that constitutes Liquidating Trust Assets after (i) the payment of Cash necessary to satisfy all Unclassified Claims and Class 1A Claims that are Allowed on or prior to the Effective Date, (ii) the payment of all Allowed Claims payable on the Effective Date as set forth in Classes 2, 3, 4, 5, 6, and 7, and (iii) the transfer into or maintenance of funds in the Operating Accounts for the Post Effective Date Debtors on the Effective Date in accordance with the Section 7.6.

1.149 **Request for Payment** means a request for payment of an Administrative Claim filed in these Chapter 11 Cases.

1.150 **Sale-Leaseback Debtors** means, collectively, SFMC and Seton.

1.151 **Sale Order** means any Final Order of the Court entered pursuant to a request of, or motion by, the Debtors for authority to sell assets of the Estates pursuant to § 363.

1.152 **SCC** means the County of Santa Clara, a political subdivision of the State of California.

1.153 **SCC Debtors** means Saint Louise Regional Hospital and O'Connor Hospital, collectively.

1.154 **SCC Sale** means the sale authorized by the order entered by the Bankruptcy Court on December 27, 2018 [Docket No. 1153].

1.155 **Schedule of Assumed Contracts** means the schedule listing the Executory Agreements to be assumed pursuant to the Plan.

1.156 **Scheduled** means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

1.157 **Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors in the Chapter 11 Cases pursuant to § 521 and Bankruptcy Rule 1007, which incorporate by reference the global notes and statement of limitations, methodology, and disclaimer regarding the Debtors' schedules and statements, as such schedules

17

or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or Final Orders of the Bankruptcy Court.

1.158 **Second Priority Trust Beneficial Interests** means the second priority Trust Beneficial Interests provided to the Holders of Allowed General Unsecured Claims in full and final satisfaction of such Holders' Allowed General Unsecured Claims, which Trust Beneficial Interests shall entitle such Holders, after payment in full to Holders of First Priority Trust Beneficial Interests held by the Holders of the 2005 Revenue Bonds Diminution Claim, to receive *pro rata* payment from all Funds in the Plan Fund until the Allowed General Unsecured Claims are fully satisfied.

1.159 **Secured 2005 Revenue Bond Claims** means all Allowed Secured Claims of the Master Trustee and the 2005 Revenue Bonds Trustee for, and on behalf of, the beneficial holders of Series 2005 A, G, and H Revenue Bonds issued by the CSCDA.

1.160 **Secured 2015 Revenue Notes Claims** means all Allowed Secured Claims of the Master Trustee and the 2015 Revenue Notes Trustee for, and on behalf of, the beneficial holders of the 2015 Revenue Notes issued by the CPFA.

1.161 **Secured 2017 Revenue Notes Claims** means all Allowed Secured Claims of the Master Trustee and the 2017 Notes Trustee for, and on behalf of, the beneficial holders of the 2017 Notes issued by the CPFA.

1.162 **Secured Claim** means a Claim that is (a) secured by a lien on any of the Assets, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, to the extent of the value of the claimant's interest in such Asset, or (b) entitled to setoff under § 553, to the extent of the amount subject to such setoff, as determined pursuant to § 506(a).

1.163 **Secured Mechanics Lien Claims** means all Allowed Secured Mechanics Lien Claims.

1.164 **Secured MOB I Financing Claims** means all Allowed Secured Claims of Verity MOB Financing LLC arising from the MOB I Loan Agreement.

1.165 **Secured MOB II Financing Claims** means all Allowed Secured Claims of Verity MOB Financing II LLC arising from the MOB II Loan Agreements.

1.166 **Secured PACE Tax Financing Claims** means those certain Agreements to Pay Assessment and Finance Improvements dated May 11, 2017 and May 18, 2017 under the CSCDA CaliforniaFirst Program, respectively the Clean Fund Agreement to Pay Assessment and Petros Agreement to Pay Assessment, each for the limited purpose of providing bond financing for certain renewable energy, energy efficiency, water efficiency and seismic improvements permanently affixed to real property owned by Seton Medical Center located in Daly City, California, the proceeds of which financings are being held as program funds for authorized improvements by Wilmington Trust N.A. as indenture trustee under two bond indentures with CSCDA also dated May 11, 2017 and May 18, 2017.

18

1.167  **Seton** means Seton Medical Center and Seton Medical Center Coastside, collectively, as debtors and debtors-in-possession.

1.168  **Seton Asset Purchase Agreement** means that certain *Asset Purchase Agreement*, as may be amended from time to time, by and among VHS, Holdings, and Seton, on the one hand, and AHMC, on the other hand, as approved by the Bankruptcy Court pursuant to the Seton Sale Order.

1.169  **Seton Closing Date** means the date that the transactions contemplated by the Seton Asset Purchase Agreement are consummated.

1.170  **Seton Interim Leaseback Agreement** means that certain Sale Leaseback Agreement by and between Seton, on the one hand, and AHMC and its affiliates, on the other hand.

1.171  **Seton Interim Management Agreement** means that certain Interim Management Agreement by and between Seton, on the one hand, and AHMC and its affiliates, on the other hand.

1.172  **Seton Sale** means the sale authorized by the Seton Sale Order.

1.173  **Seton Sale Order** means that certain order [Docket No. 4634] approving the sale of certain assets of Seton, Holdings, and VHS to AHMC.

1.174  **Settlement Released Parties** means, collectively, the parties to the Plan Settlement and the PBGC Settlement who are the beneficiaries of a limited or general release under the Plan Settlement and the PBGC Settlement, respectively, solely to the extent of such limited or general release, as provided in this Plan.

1.175  **SFMC** means St. Francis Medical Center, as debtor and debtor in possession.

1.176  **SFMC Asset Purchase Agreement** means that certain *Asset Purchase Agreement*, as may be amended from time to time, by and among VHS, Holdings, and SFMC, on the one hand, and Prime, on the other hand, as approved by the Bankruptcy Court pursuant to the SFMC Sale Order.

1.177  **SFMC Closing Date** means the date that the transactions contemplated by the SFMC Asset Purchase Agreement are consummated.

1.178  **SFMC Interim Leaseback Agreement** means that certain Sale Leaseback Agreement by and between SFMC, on the one hand, and Prime and its affiliates, on the other hand.

1.179  **SFMC Interim Management Agreement** means that certain Interim Management Agreement by and between SFMC, on the one hand, and Prime and its affiliates, on the other hand.

1.180  **SFMC Sale** means the sale authorized by the SFMC Sale Order.

1.181  **SFMC Sale Order** means that certain order [Docket No. 4511] approving the sale of certain assets of SFMC, Holdings, and VHS to Prime.

19

1.182   **SGM** means Strategic Global Management, Inc.

1.183   **SGM Asset Purchase Agreement** means that certain *Asset Purchase Agreement*, dated January 8, 2019, as amended from time to time, by and among VHS, Holdings, SFMC, SVMC, St. Vincent Dialysis, and Seton, on the one hand, and SGM, on the other hand, as approved by the Bankruptcy Court, in connection with the SGM Sale [Docket No. 2305-1].

1.184   **SGM Claims** means all claims held by the Estates against SGM, its affiliates, and any other Person related thereto, including those related to the SGM Asset Purchase Agreement and the SGM Sale, including, but not limited to, (i) those claims asserted by the Debtors in *Verity Health System of California, Inc., et al. v. Strategic Global Management, Inc., et al. (In re Verity Health System of California, Inc.)*, Case No. 2:20-cv-00613-DSF, currently pending before the District Court, (ii) the consolidated appeals related to the SGM Asset Purchase Agreement and the SGM Sale captioned *Strategic Global Management, Inc. v. Verity Health System of California, Inc. (In re Verity Health System of California, Inc.*, Consolidated Case No. 2:19-cv-10352-DSF, and currently pending before the District Court (the "**SGM Action**"), and (iii) any other claims which may be asserted against any Person by, among other parties, the Debtors, the Liquidating Trustee, the Committee, or any other Estate representative, arising from or related to the SGM Asset Purchase Agreement, the SGM Sale, or SGM's participation in the Bankruptcy Cases.

1.185   **SGM Sale** means the sale authorized by the *Order (A) Authorizing the Sale of Certain of the Debtors' Assets to Strategic Global Management, Inc. Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of an Unexpired Lease Relating Thereto; and (C) Granting Related Relief*, entered by the Bankruptcy Court on May 2, 2019 [Docket No. 2306].

1.186   **Section 503(b)(9) Claims** means Allowed Claims pursuant to § 503(b)(9).

1.187   **St. Vincent Dialysis** means St. Vincent Dialysis Center, Inc., as debtor and debtor in possession.

1.188   **Statutory Fees** means the fees payable pursuant to section 1930 of title 28 of the United States Code that were incurred in connection with these Chapter 11 Cases.

1.189   **Subordinated General Unsecured Claims** means Allowed Claims that have been found to be subject to subordination pursuant to § 510 (b) or (c) pursuant to a Final Order.

1.190   **SVMC** means St. Vincent Medical Center, as debtor and debtor in possession.

1.191   **Tax Rate** means, with respect to the 2005 Revenue Bonds, the rate of interest utilized to calculate any "Taxable Rate Adjustment," as that term is defined in the 2005 Revenue Bonds Indentures or the 2005 Revenue Bonds Obligated Bonds.

1.192   **Transfer** (and any variations such as "Transferring") means to, directly or indirectly, sell, convey, assign, pledge, encumber, hypothecate, gift, contribute, subject to a joint venture, partnership, or similar arrangement, abandon, convey, or transfer or otherwise dispose of, either voluntarily or involuntarily, any Asset or enter into any contract for any Asset that will effectuate the foregoing whether or not the foregoing is subject to approvals or conditions.

US_Active\114691962\V-7

1.193  *Transition Services Agreements* or *TSAs* means those certain transition services agreements entered into by and between (i) Prime, VHS, and the Liquidating Trust, and (ii) AHMC, VHS, and the Liquidating Trust, each relating to (a) the services, information systems, and vendor arrangements (if any) to be provided by VHS to Prime and AHMC, and (b) the services, personnel, information systems, and vendor arrangements (if any) to be provided by Prime (or an affiliate) and AHMC (or an affiliate) to VHS and/or the Liquidating Trust; provided, however, that the services, personnel, and intellectual property utilized under the Interim Agreements shall terminate pursuant to the terms of the Interim Agreements.

1.194  *Trust Beneficial Interests* mean, collectively, (i) the interests in the Liquidating Trust of the Holders of Allowed Claims in Class 4 and their concomitant entitlement to distributions to be made by the Liquidating Trust on account of the 2005 Revenue Bonds Diminution Claim as set forth in Sections 8, 9, and 10, and (ii) the pro rata interests in the Liquidating Trust of the Holders of Allowed Claims in Class 8 and their concomitant entitlement to distributions to be made by the Liquidating Trust on account of Allowed General Unsecured Claims as set forth in Sections 8, 9, and 10.  The Trust Beneficial Interests shall be evidenced as set forth in Section 9.4 and shall not be transferable, except to the limited extent provided in Section 9.6 and related provisions of the Liquidating Trust Agreement.

1.195  *Trust Beneficiaries* means the holders of Trust Beneficial Interests, as of any point in time.

1.196  *Unclassified Claims* means, collectively, Administrative Claims, Professional Claims, Statutory Fees, and Priority Tax Claims.

1.197  *Unimpaired Claim* means a Claim that is not impaired because the Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim, as set forth in § 1124(1).

1.198  *U.S. Trustee* means the Office of the United States Trustee for the Central District of California.

1.199  *VBS* means Verity Business Services, a nonprofit public benefit corporation, as debtor and debtor in possession.

1.200  *VHoldings* means VHoldings MOB, LLC, a Non-Debtor.

1.201  *VHS* means Verity Health System of California, Inc., as debtor and debtor in possession.

1.202  *VMF* means Verity Medical Foundation, as debtor and debtor in possession.

**B.    Interpretation and Rules of Construction**.

Unless otherwise specified, all Section or exhibit references in the Plan are to the respective Section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Section, subsection, or clause contained therein.

21

The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in § 102 shall apply; and (5) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.    Controlling Document.

The Plan (without reference to the Plan Supplement) shall govern and control in the event of an inconsistency between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing); provided that, notwithstanding anything herein to the contrary, the Confirmation Order shall govern and control in all respects in the event of a conflict between the Confirmation Order and any provision of the Plan or the Plan Supplement.

### SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

In accordance with § 1123(a)(1), the following Claims are not classified and are excluded from the Classes set forth in Section 3 hereof and shall receive the treatment discussed below:

2.1    *Administrative Claims.* Except to the extent that the Debtors (or the Liquidating Trust) and the Holder of an Allowed Administrative Claim agree to less favorable treatment, a Holder of an Allowed Administrative Claim (other than a Professional Claim, which shall be subject to Section 2.2) shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim either (a) on the Effective Date, (b) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their businesses after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim, (c) on such other date as agreed between the Debtors (or the Post-Effective Date Debtors) and such Holder of an Allowed Administrative Claim, or (d) to the extent the Allowed Administrative Claim had not yet been Allowed on the Effective Date, from the Administrative Claims Reserve pursuant to Sections 7.9(d) and 15.3 hereof.

2.2    *Professional Claims.* All Professionals seeking an award by the Bankruptcy Court of a Professional Claim (other than the Ordinary Course Professionals) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of

22

expenses incurred by the date that is sixty (60) days after the Effective Date, and shall receive, in full satisfaction of such Claim, Cash in an amount equal to 100% of such Allowed Professional Claim promptly after entry of an order of the Bankruptcy Court allowing such Claim or upon such other terms as may be mutually agreed-upon between the Holder of such Professional Claim and the Debtors, which Cash shall be paid out of the Effective Date Professional Claim Reserve. Objections to any final applications covering Professional Claims must be filed and served on the Post-Effective Date Debtors, the Liquidating Trustee, and the requesting Professional no later than ninety (90) days after the Effective Date (unless otherwise agreed by the requesting Professional).

2.3    ***Statutory Fees.***  All fees required to be paid by 28 U.S.C. § 1930(a)(6) and any interest thereon ("***U.S. Trustee Fees***") shall be paid by the Liquidating Trustee in the ordinary course of business until the closing, dismissal or conversion of these Chapter 11 Cases to another chapter of the Bankruptcy Code.  Any unpaid U.S. Trustee Fees that accrued before the Effective Date shall be paid no later than thirty (30) days after the Effective Date.

2.4    ***Priority Tax Claims.***  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the option of the Plan Proponents or the Liquidating Trustee, as applicable: (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Debtors and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time under this option at the discretion of the Plan Proponents and the Liquidating Trustee.

## SECTION 3.    CLASSIFICATION OF CLAIMS

### 3.1    *Classification in General*.

A Claim is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under §§ 1122 and 1123(a)(1); provided that a Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Allowed Claim has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2    *Grouping of Debtors for Deemed Substantive Consolidation*.

Consistent with the deemed substantive consolidation of the Debtors, as set forth more fully in Section 7.1, the Plan groups the Debtors together for purposes of describing treatment under the Plan, confirmation of the Plan, and making distributions in accordance with the Plan with respect to Claims against and Interests in the Debtors under the Plan.  Accordingly, pursuant to the Plan, the Assets of the Debtors and their Estates, and the Claims against and Interests in the Debtors, will be treated as if the Debtors and their Estates are substantively consolidated on the

23

Effective Date. Notwithstanding the foregoing, such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any Assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities after the Effective Date.

3.3    ***Summary of Classification***.

The following table designates the Classes of Claims against each of the Debtors and specifies which of those Classes are (a) Not Impaired by the Plan, (b) Impaired by the Plan, and (c) entitled to vote to accept or reject the Plan in accordance with § 1126. In accordance with § 1123(a)(1), Administrative Claims, Professional Claims, Statutory Fees, and Priority Tax Claims, have not been classified. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have holders of Claims in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.5.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| **All Debtors** | | | |
| 1A | Priority Non-Tax Claims | Not Impaired | No (deemed to accept) |
| 1B | Secured PACE Tax Financing Claims | Not Impaired | No (deemed to accept) |
| 2 | Secured 2017 Revenue Notes Claims | Impaired | Yes |
| 3 | Secured 2015 Revenue Notes Claims | Impaired | Yes |
| 4 | Secured 2005 Revenue Bond Claims | Impaired | Yes |
| 5 | Secured MOB I Financing Claims | Impaired | Yes |
| 6 | Secured MOB II Financing Claims | Impaired | Yes |
| 7 | Secured Mechanics Lien Claims | Impaired | Yes |
| 8 | General Unsecured Claims | Impaired | Yes |
| 9 | Insured Claims | Impaired | Yes |
| 10 | 2016 Data Breach Claims | Impaired | Yes |
| 11 | Subordinated General Unsecured Claims | Impaired | No (deemed to reject) |
| 12 | Interests | Impaired | No (deemed to reject) |

3.4    ***Special Provision Governing Unimpaired Claims***.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Liquidating Trust with respect to Unimpaired Claims, including all legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5    ***Elimination of Vacant Classes***.

Any Class of Claims, as of the commencement of the Confirmation Hearing, that does not have at least one (1) Holder of a Claim in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies § 1129(a)(8) with respect to that Class.

24

## SECTION 4.    TREATMENT OF CLAIMS

In full and final satisfaction of all of the Claims against the Debtors (except with respect to Unclassified Claims that are satisfied in accordance with Section 2 above), the Claims shall receive the treatment described below.  Except to the extent expressly provided in this Section 4, the timing of distributions is addressed in Section 8.3 hereof.

4.1    ***Class 1A: Priority Non-Tax Claims***.

(a)    *Classification*.  Class 1A consists of Priority Non-Tax Claims.

(b)    *Treatment*.  Except to the extent that a Holder of an Priority Non-Tax Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim, payable on the later of the Effective Date and the date that is fourteen (14) Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter in accordance with the priority scheme set forth in the Bankruptcy Code.

(c)    *Voting*.  Class 1A is Unimpaired.  Holders of Priority Non-Tax Claims are deemed to have accepted the Plan, pursuant to § 1126(f), and are not entitled to vote to accept or reject the Plan.

4.2    ***Class 1B: Secured PACE Tax Financing Claims***.

(a)    *Classification.* Class 1B consists of the Secured PACE Financing Claims.

(b)    *Treatment.* Each Allowed Secured PACE Tax Financing Claim shall be paid in accordance with the *Order Approving Stipulation Resolving California Statewide Communities Development Authority Lien Release Pursuant to the Proposed Sale of Certain of the Debtors' Assets Related to Seton Medical Center* [Docket No. 4613].

(c)    *Voting*.  Class 1B is Unimpaired. Holders of Secured PACE Tax Financing Claims are deemed to have accepted the Plan, pursuant to § 1126(f), and are not entitled to vote to accept or reject the Plan.

4.3    ***Class 2: Secured 2017 Revenue Notes Claims***.

(a)    *Classification.*  Class 2 consists of the Secured 2017 Revenue Notes Claims.

(b)    *Treatment.*  The Secured 2017 Revenue Notes Claims shall be paid in cash on the Effective Date by the Debtors to the 2017 Notes Trustee for distribution in accordance with the 2017 Revenue Notes Indentures in an amount equal to 100% of a single Allowed Claim in the aggregate amount of $42,000,000, plus (i) any accrued, but unpaid postpetition interest, if any, at the rate specified in the 2017 Revenue Note Indentures, excluding any interest at a default rate, any make whole premium, any applicable redemption or other premium, and (ii) any accrued but unpaid reasonable, necessary out-of-pocket fees and expenses of the 2017 Notes Trustee and the Master Trustee pursuant to the Final DIP Order and Cash Collateral Orders through and including the Effective Date, less any amounts held by the 2017 Notes Trustee in a (x) principal or revenue

25

account, (y) debt service or redemption reserve, or (z) an escrow or expense reserve account. No beneficial Holder of any Secured 2017 Revenue Notes Claims shall be entitled to receive any distribution pursuant to the Plan, except as may be remitted to such holder by the 2017 Notes Trustee in accordance with the 2017 Revenue Notes Indenture.

(c)     *Subordination:*  Following receipt of the distribution provided in Section 4.3(b), all rights held by 2017 Revenue Bond Trustee and/or the Master Trustee under the Intercreditor Agreement shall be deemed satisfied,  waived or released by the treatment provided in the Plan Settlement and the Plan.

(d)     *Voting*.  Class 2 is Impaired. The beneficial Holders of Secured 2017 Revenue Notes Claims are entitled to vote to accept or reject the Plan.

4.4     ***Class 3: Secured 2015 Revenue Notes Claims***.

(a)     *Classification.*  Class 3 consists of the Secured 2015 Revenue Notes Claims.

(b)     *Treatment.*  The Secured 2015 Revenue Notes Claims shall be paid in cash on the Effective Date by the Debtors to the 2015 Notes Trustee for distribution in accordance with the 2015 Revenue Notes Indentures in an amount equal to 100% of a single Allowed Claim in the aggregate amount of $160,000,000, plus (i) accrued, but unpaid postpetition interest, if any, at the rate specified in the 2015 Revenue Note Indentures for each of 2015 Revenue Notes Series A, B, C and D, excluding any interest at a default rate, or any applicable redemption or other premium, and (ii) any accrued, but unpaid reasonable, necessary out-of-pocket fees and expenses of the 2015 Notes Trustee and the Master Trustee, pursuant to the Final DIP Order and Cash Collateral Orders through and including the Effective Date, less any amounts held by the 2015 Notes Trustee on account of the 2015 Revenue Notes in a (x) principal or revenue account, (y) debt service or redemption reserve, or (z) an escrow or expense reserve account.  No beneficial Holder of any Secured 2015 Revenue Notes Claims shall be entitled to receive any distribution pursuant to the Plan, except as may be remitted to such holder by the 2015 Notes Trustee.

(c)     *Subordination:*  All rights held by 2015 Revenue Bond Trustee and/or the Master Trustee under the Intercreditor Agreement shall be deemed satisfied,  waived or released by the treatment provided in the Plan Settlement and the Plan.

(d)     *Voting*.  Class 3 is Impaired, and the beneficial Holders of Secured 2015 Revenue Notes Claims are entitled to vote to accept or reject the Plan.

4.5     ***Class 4: Secured 2005 Revenue Bond Claims***.

(a)     *Classification.* Class 4 consists of the Secured 2005 Revenue Bonds Claims.

(b)     *Treatment.*  The Secured 2005 Revenue Bonds Claims shall be treated as a single Allowed Claim in the aggregate amount of $259,445,000 plus (i) accrued, but unpaid postpetition interest, if any, at the rate specified in the 2005 Revenue Bond Indentures through and including the Effective Date, excluding any interest at the default rate or the Tax Rate, or any applicable redemption or other premium, and (ii) any accrued, but unpaid reasonable, necessary out-of-pocket fees and expenses of the 2005 Revenue Bonds Trustee and the Master Trustee

26

pursuant to the Final DIP Order and Cash Collateral Orders through and including the Effective Date. The 2005 Revenue Bonds Claims shall be paid and satisfied as follows: (i) an amount equal to the Initial Secured 2005 Revenue Bonds Claims Payment plus (a) accrued, but unpaid postpetition interest, if any, at the rate specified in the 2005 Revenue Bond Indentures through and including the Effective Date, excluding any interest at the default rate or the Tax Rate, or any applicable redemption or other premium, and (b) any accrued, but unpaid reasonable, necessary out-of-pocket fees and expenses of the 2005 Revenue Bonds Trustee and the Master Trustee pursuant to the Final DIP Order and Cash Collateral Orders through and including the Effective Date, shall be paid in cash by the Debtors to the 2005 Revenue Bond Trustee on the Effective Date. In addition, (x) any amounts held by the 2005 Revenue Bonds Trustee in a (1) principal or revenue account, (2) debt service or redemption reserve, or (3) an escrow or expense reserve account shall be applied against the Secured 2005 Revenue Bonds Claim, and (y) the 2005 Revenue Bonds Trustee shall become the sole Trust Beneficiary and holder of all of the First Priority Trust Beneficial Interests in the amount of the 2005 Revenue Bonds Diminution Claim, including interest accruing after the Effective Date at the non-default rate provided for in the 2005 Revenue Bond Indentures. The foregoing payments and distributions shall be in full and final satisfaction of the Secured 2005 Revenue Bonds Claims as a single Allowed Claim. Notwithstanding distribution of First Priority Trust Beneficial Interests on account of the 2005 Secured Revenue Bonds Diminution Claim, the 2005 Revenue Bonds Trustee or the Master Trustee shall be entitled to retain and apply Adequate Protection Payments received during the course of these Cases on or on behalf of the 2005 Secured Revenue Bonds in the manner provided by the relevant indenture. No beneficial Holder of any Secured Series A, G and H Revenue Bonds Claims shall be entitled to receive any distribution pursuant to the Plan, except as may be remitted to such Holder by the 2005 Revenue Bonds Trustee.

(c)      *Subordination:*  All rights held by 2005 Revenue Bond Trustee and/or the Master Trustee under the Intercreditor Agreement shall be deemed satisfied, waived or released by the treatment provided in the Plan Settlement and the Plan.

(d)      *Voting.*  Class 4 is Impaired. The beneficial Holders of the Secured 2005 Series 2005 A, G and H Revenue Bond Claims are entitled to vote to accept or reject the Plan.

4.6      **Class 5: Secured MOB I Financing Claims***.*

(a)      *Classification.*  Class 5 consists of the MOB I Financing Claims.

(b)      *Treatment.*  The Secured MOB I Financing Claims shall be paid in cash on the Effective Date by the Debtors in an amount equal to 100% of a single Allowed Claim in the aggregate amount of $46,363,095.90, plus (i) accrued but unpaid postpetition interest, if any, at the rate specified in the MOB I Loan Agreement, excluding any interest at the default rate, or make whole premium, and (ii) any accrued, but unpaid reasonable, necessary out-of-pocket fees and expenses of Verity MOB Financing LLC, pursuant to the Final DIP Order and Cash Collateral Orders through and including the Effective Date.

(c)      *Voting.*  Class 5 is Impaired.  Holders of MOB I Financing Claims are entitled to vote to accept or reject the Plan.

27

4.7    ***Class 6: Secured MOB II Financing Claims***.

(a)    *Classification*.  Class 6 consists of the Secured MOB II Financing Claims.

(b)    *Treatment*.  The Secured MOB II Financing Claims shall be paid in cash on the Effective Date by the Debtors in an amount equal to 100% of a single Allowed Claim in the aggregate amount of $20,061,919.48, plus (i) accrued, but unpaid postpetition interest, if any, at the rate specified in the MOB II Loan Agreements, excluding any interest at the default rate, or make whole premium, and (ii) any accrued but unpaid reasonable, necessary out-of-pocket fees and expenses of Verity MOB Financing II LLC, pursuant to the Final DIP Order and Cash Collateral Orders through and including the Effective Date.

(c)    *Voting*.  Class 6 is Impaired.  Holders of Secured MOB II Financing Claims are entitled to vote to accept or reject the Plan.

4.8    ***Class 7: Secured Mechanics Lien Claims***.

(a)    *Classification*.  Class 7 consists of the Secured Mechanics Lien Claims.

(b)    *Treatment*. Each Allowed Secured Mechanics Lien Claim shall be paid in cash on the Effective Date by the Debtors in an amount equal to 100% of the principal balance of such Allowed Secured Mechanics Lien Claim.

(c)    *Voting*.  Class 7 is Impaired.  Holders of Secured Mechanics Lien Claims are entitled to vote to accept or reject the Plan.

4.9    ***Class 8: General Unsecured Claims***.

(a)    *Classification*.  Class 8 consists of the General Unsecured Claims against all Debtors.

(b)    *Treatment*.  As soon as practicable after the Effective Date or as soon thereafter as the claim shall have become an Allowed Claim, each holder of an Allowed General Unsecured Claim shall receive a Second Priority Trust Beneficial Interest and become a Trust Beneficiary in full and final satisfaction of its Allowed Class 8 Claim, except to the extent that such Holder agrees (a) to a less favorable treatment of such Claim, or (b) such Claim has been paid before the Effective Date.

(c)    *Voting*.  Class 8 is Impaired.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.10    ***Class 9: Insured Claims.***

(a)    *Classification*.  Class 9 consists of Allowed Insured Claims.

(b)    *Treatment.*  Each Insured Claim shall be deemed objected to and disputed and shall be resolved in accordance with this Section, notwithstanding any other Plan provision.

28

Except to the extent that a Holder of an Insured Claim agrees to different treatment, or unless otherwise provided by an order of the Bankruptcy Court directing such Holder's participation in any alternative dispute resolution process, on the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of an Insured Claim will have received or shall receive on account of its Insured Claim relief from the automatic stay under § 362 and the injunctions provided under this Plan for the sole and limited purpose of permitting such Holder to seek recovery, if any, as determined and Allowed by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Insured Claim from the applicable and available Insurance Policies maintained by or for the benefit of any of the Debtors. A Holder's recovery of insurance proceeds under the applicable Insurance Policy(ies) shall be the sole and exclusive recovery on an Insured Claim, subject to recovery of an Insured Deficiency Claim, as described in the next paragraph. Any settlement of an Insured Claim within a self-insured retention or deductible must be approved by the Liquidating Trustee; provided, however, that the foregoing shall not apply to workers' compensation claims resolved by Old Republic Insurance Company under its applicable workers' compensation insurance policies.

In the event the applicable Insurer denies the tender of defense or there are no applicable or available insurance policies, or proceeds from applicable and available insurance policies have been exhausted or are otherwise insufficient to pay in full a Holder's recovery, if any, as determined by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Insured Claim, on account of its Insured Claim, then such Holder shall be entitled to an Allowed Claim equal to the amount of the Allowed Insured Claim less the amount of available proceeds paid such Allowed Insured Claim from the applicable and available Insurance Policies (the "***Insured Deficiency Claim***"). Such Holders' Insured Deficiency Claim shall be treated as an Allowed General Unsecured Claim in Class 8 of the Plan and shall be entitled to receive its Pro Rata Share of the distributions from the Liquidating Trust Distributions as set forth in the Plan in the same manner as other Holders of Allowed General Unsecured Claims in Class 8 of the Plan. In no event shall any Holder of an Allowed Insured Deficiency Claim be entitled to receive more than one hundred percent (100%) of the Allowed Amount of their respective Allowed Insured Deficiency Claim.

Any amount of an Allowed Insurance Claim within a deductible or self-insured retention shall be paid by the applicable insurance, in accordance with the applicable Insurance Policy, to the Claim Holder and such Insurer shall have a General Unsecured Claim (or Secured Claim, if it holds collateral) for the amount of the deductible or retention paid, provided that it has timely filed an otherwise not objectionable proof of claim encompassing such amounts. For purposes of retentions and deductibles in any Insurance Policy, including, but not limited to, an Insurance Policy insuring officers, directors, consultants or others against claims based upon prepetition occurrences, the Confirmation Order shall constitute a finding that the Debtors are insolvent and unable to advance or indemnify Insured Claims, from Estate or Debtor Funds, for any loss, claim, damage, settlement or judgment of Debtors within the applicable retention or deductible amount. However, the foregoing sentence does not modify the Insurer's right to a claim described in the first sentence of this paragraph or limit reimbursement due Old Republic Insurance Company for deductibles from proceeds of other insurance. Notwithstanding any other provision of this Section, Old Republic Insurance Company shall be entitled to all accommodations that it requested in connection with renewal of Debtors' workers' compensation policy, as approved by order of the Bankruptcy Court [Docket No. 2803].

29

(c)      *Voting*. Class 9 is Impaired. Holders of Insured Claims are entitled to vote to accept or reject the Plan. Unless otherwise ordered by the Bankruptcy Court, each Holder of a Class 9 Insured Claim shall have a $1.00 vote for each filed Insured Claim.

4.11    ***Class 10: 2016 Data Breach Claims***.

(a)      *Classification.* Class 10 consists of Allowed 2016 Data Breach Claims.

(b)      *Treatment.* Each holder of an Allowed 2016 Data Breach Claim shall receive access to credit monitoring services at the sole cost of the Debtors for a period of two (2) years following the Effective Date.

(c)      *Voting*. Class 10 is Impaired.  Holders of Allowed 2016 Data Breach Claims are entitled to vote to accept or reject the Plan.

4.12    ***Class 11:  Subordinated General Unsecured Claims***.

(a)      *Classification:*  Class 11 Claims consists of Subordinated General Unsecured Claims.

(b)      *Treatment:*  Holders of Allowed Subordinated General Unsecured Claims shall not receive any recovery from the Debtors on or after the Effective Date.

(c)      *Voting*. Class 11 is Impaired. Holders of Subordinated General Unsecured Claims are deemed to reject the Plan and are not entitled to vote.

4.13    ***Class 12: Interests***.

(a)      *Classification*: Class 12 consists of Allowed Interests against any Debtor.

(b)      *Treatment.* Holders of Allowed Interests shall not receive any recovery from the Debtors under the Plan.

(c)      *Voting*. Class 12 is Impaired.  The holders of Interests are deemed to reject the Plan and are not entitled to vote.

# SECTION 5.      POST-EFFECTIVE DATE GOVERNANCE

5.1      ***Dissolution of Certain Debtors.***  The following Debtors shall be dissolved, under applicable non-bankruptcy law on the Effective Date or shortly thereafter, as determined by the Liquidating Trustee, and each respective Debtor's interests and rights shall be vested, for all purposes in the Liquidating Trust, and all of the interests in such Debtors shall be cancelled and terminated without further order of the Bankruptcy Court: VBS; Holdings; De Paul Ventures; and De Paul - San Jose Dialysis.

5.2      ***Dissolution of Certain Non-Debtor Affiliates***. On the Effective Date, the following Non-Debtor Affiliates shall be dissolved, under applicable non-bankruptcy law: DePaul - San Jose

30

ASC; St. Vincent De Paul Ethics Corporation; VHoldings; Robert F. Kennedy Medical Center; Robert F. Kennedy Medical Center Foundation; and Sports Medical Management, Inc.

### 5.3    *Dissolution of Sale-Leaseback Debtor Foundations*.

(a)    <u>Dissolution of St. Francis Medical Center of Lynwood Foundation</u>.  Until the SFMC Closing Date, St. Francis Medical Center of Lynwood Foundation shall continue to make distributions to SFMC in the ordinary course of business, with any properly donor-restricted gifts distributed in accordance with the terms and conditions of such restricted gift.  After the SFMC Closing Date, the properly donor-restricted charitable assets of St. Francis Medical Center of Lynwood Foundation shall be transferred pursuant to approvals to be received from the Attorney General of California, pursuant to section 999.2(e) of title 11 of the California Code of Regulations and related statutes and regulations. Thereafter, St. Francis Medical Center of Lynwood Foundation shall be dissolved under applicable non-bankruptcy law.

(b)    <u>Dissolution of Seton Medical Center Foundation</u>.  Until the Seton Closing Date, Seton Medical Center Foundation shall continue to make distributions to Seton in the ordinary course of business, with any properly donor-restricted gifts distributed in accordance with the terms and conditions of such restricted gift.  After the Seton Closing Date, the properly donor-restricted charitable assets of the Seton Medical Center Foundation shall be transferred pursuant to approvals to be received from the Attorney General of California, pursuant to section 999.2(e) of title 11 of the California Code of Regulations and related statutes and regulations. Thereafter, Seton Medical Center Foundation shall be dissolved under applicable non-bankruptcy law.

### 5.4    *Dissolution of the SCC Debtor Foundations.*    On the Effective Date or shortly thereafter, the properly donor-restricted charitable assets of Saint Louise Regional Hospital Foundation and O'Connor Hospital Foundation shall be transferred pursuant to approvals to be received from the Attorney General of California, pursuant to section 999.2(e) of title 11 of the California Code of Regulations and related statutes and regulations. Thereafter, each respective Foundation shall be dissolved under applicable non-bankruptcy law.

### 5.5    *Dissolution of St. Vincent Foundation.*    On the Effective Date or shortly thereafter, the properly donor-restricted charitable assets of St. Vincent Foundation shall be transferred pursuant to approvals to be received from the Attorney General of California, pursuant to section 999.2(e) of title 11 of the California Code of Regulations and related statutes and regulations. Thereafter, St. Vincent Foundation shall be dissolved under applicable non-bankruptcy law.

### 5.6    *Dissolution of VMF.*    VMF shall be dissolved, under applicable non-bankruptcy law, as soon as practicable after completion of the claims process under VMF's capitation agreements.

### 5.7    *Disposition of Marillac*.    VHS, in its capacity as a Debtor and/or a Post-Effective Date Debtor, and/or the Liquidating Trustee shall take such action as reasonably necessary and advisable to effectuate the sale, disposition, or other administration of the issued and outstanding equity interests in, or assets of, Marillac.  The net Cash proceeds of such sale, disposition, or other administration, if any, shall be used to pay Holders of Claims as set forth in this Plan or as otherwise agreed pursuant to a Creditor Settlement Agreement.

31

5.8    ***Continued Existence of Post-Effective Date Debtors After the Effective Date***.

(a)    Continued Existence of Post-Effective Date Debtors.    On and after the Effective Date, the Post-Effective Date Debtors shall continue in existence for the purposes set forth herein, and retain their Nonprofit Status to the same extent as such status existed immediately prior to the Petition Date.    No party shall take any action to interfere with, alter, terminate or otherwise adversely affect the Nonprofit Status of the Post-Effective Date Debtors.

(b)    Responsibilities of the Sale-Leaseback Debtors.    The Sale-Leaseback Debtors shall continue in existence for the following limited purposes:

(i)    to maintain their corporate existence and full rights as the licensees under the Hospital Licenses so Prime and AHMC may obtain their general acute care hospital licenses from the CDPH and their hospital pharmacy permits from the California State Board of Pharmacy pursuant to their respective Interim Management Agreements;

(ii)    to retain statutory and regulatory authority and responsibility for the Hospitals and for oversight over Prime and AHMC, respectively;

(iii)    to maintain a possessory interest in the Hospitals, and to lease from Prime and AHMC the Hospital Premises and the Hospital Purchased Assets, pursuant to the Interim Leaseback Agreements and to take such actions as appropriate, necessary, advisable or convenient to further the objectives of, and effectuate, the Interim Management Agreements as contemplated by the provisions of this Plan;

(iv)    to maintain the Provider Agreements for Medi-Cal and Medicare, and participate in the Medi-Cal and Medicare programs, until the changes of ownership to Prime and AHMC, respectively, are approved, and collect or otherwise liquidate all amounts owing under the Provider Agreements until all payments due under such agreements have been received by the Post-Effective Date Debtors and, if appropriate, transferred to the Liquidating Trust;

(v)    to process claims from providers under capitation agreements, if applicable;

(vi)    in furtherance of implementation of the provisions of the Plan, to take any action necessary under applicable law that is consistent with the provisions of the Plan with respect to the Post-Effective Date Debtors and the Hospital Purchased Assets; and

(vii)    to take such other actions as may be necessary or appropriate with respect to the affairs, businesses and/or operations of any of the Debtors which are not permitted to be undertaken by the Liquidating Trust under applicable law;

32

provided, however, that, notwithstanding the foregoing, Seton shall continue in existence solely for the limited purposes set forth in Section 5.8(b) hereof in the event that (i) the transfer of the Seton Pharmacy Assets, (ii) the expiration of the Seton Interim Leaseback Agreement, and (iii) the expiration of the Seton Interim Management Agreement all occur prior to the Effective Date.

(c)    Responsibilities of SVMC and St. Vincent Dialysis.  SVMC and St. Vincent Dialysis shall continue in existence for the following limited purposes:

(i)    to maintain their corporate existence and full rights to receive any payments, including, but not limited to, payments related to Medi-Cal, Medicare, and the Quality Assurance Payments;

(ii)    in furtherance of implementation of the provisions of the Plan, to take any action necessary under applicable law that is consistent with the provisions of the Plan; and

(iii)    to take such other actions as may be necessary or appropriate with respect to the affairs, businesses and/or operations of any of SVMC and St. Vincent Dialysis which are not permitted to be undertaken by the Liquidating Trust under applicable law.

(d)    Responsibilities of the SCC Debtors.  The SCC Debtors shall continue in existence for the following limited purposes:

(i)    to maintain their corporate existence and full rights to receive any payments, including, but not limited to, payments related to Medi-Cal, Medicare, and the Quality Assurance Payments;

(ii)    in furtherance of implementation of the provisions of the Plan, to take any action necessary under applicable law that is consistent with the provisions of the Plan; and

(ii)    to take such other actions as may be necessary or appropriate with respect to the affairs, businesses and/or operations of any of the SCC Debtors which are not permitted to be undertaken by the Liquidating Trust under applicable law.

(e)    Responsibilities of VHS.  VHS shall continue in existence through the expiration of the Interim Agreements and Transition Services Agreement, or as otherwise determined by the Liquidating Trustee, for the following limited purposes: (i) perform support services in accordance with the Interim Agreements and Transition Services Agreement and take other actions as required under the Interim Agreements and Transition Services Agreement; (ii) facilitate the payment of the Liquidating Trustee and its associated professionals; (iii) effectuate the expeditious sale of the issued and outstanding equity interests in Marillac or provide such other disposition that may be appropriate, to the extent such sale or other disposition is not effectuated prior to the Effective Date; and (iv) perform all actions required of the Debtors under any Executory Agreements set forth in the Schedule of Assumed Contracts.

33

     (f)    <u>No Further Approvals Required</u>.  In performance of their duties hereunder, Post-Effective Date Debtors shall have the rights and powers of a debtor in possession under § 1107, and such other rights, powers, and duties necessary, appropriate, advisable or convenient to effectuate the provisions of the Plan.  On and after the Effective Date, the Post-Effective Date Debtors shall not be required to obtain any approvals from the Bankruptcy Court, any court or Governmental Unit and/or provide any notices under the Nonprofit Laws to implement the terms of the Plan.

     (g)    <u>Dissolution</u>.  The Liquidating Trustee will cause each Post-Effective Date Debtor to be dissolved for all purposes under applicable non-bankruptcy law, as follows:

     (i)    with respect to the Sale-Leaseback Debtors, after (x) the transfer of the Pharmacy Assets and the expiration of the Interim Agreements, (y) the filing of the final cost reports with CMS and DHCS, if the Sale-Leaseback Debtors are required to remain in existence to file such reports, and (z) after completion of the claims process under the capitation agreements, if required;

     (ii)    with respect to SVMC and St. Vincent Dialysis, after the receipt of all payments related to Medi-Cal and Medicare, including the Quality Assurance Payments;

     (iii)    with respect to the SCC Debtors, after the receipt of all payments related to Medi-Cal and Medicare, including the Quality Assurance Payments; and

     (iv)    with respect to VHS, after (x) the transfer of the Pharmacy Assets and the expiration of the Interim Agreements, and (y) performance of all actions required of the Debtors under any Executory Agreements under the Schedule of Assumed Contracts.

The Liquidating Trustee may dissolve a Post-Effective Date Debtor, earlier than as set forth above, if he or she determines that the continued existence of such Post-Effective Date Debtor is not necessary to satisfy the foregoing conditions.  Such dissolution shall occur without the necessity for any other or further actions to be taken by or on behalf of the Post-Effective Debtors, or payment of any fees, charges, penalties or other amounts required by applicable non-bankruptcy law; <u>provided</u>, <u>however</u>, that the Liquidating Trustee may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of the Post-Effective Date Debtors.

5.9    ***Post-Effective Date Board of Directors***.

     (a)    <u>Post-Effective Date Board of Directors of VHS</u>.  On the Effective Date, the board members of VHS shall resign and the Post-Effective Date Board of Directors of VHS will be appointed. The members that make up the Post-Effective Date Board of Directors of VHS shall also serve and remain as the members of the subsidiary boards and any other boards required to be in existence.

34

(b)    Duties.  The Post-Effective Date Board of Directors shall (i) fulfill its duties and obligations under the bylaws and state and federal law, and (ii) oversee the Liquidating Trustee in his/her capacity as president of the Post-Effective Date Debtors consistent with the terms of this Plan.

(c)    Resignation.  Any member of the Post-Effective Date Board of Directors may resign at any time upon not less than thirty (30) days' written notice to the Liquidating Trustee and the Post-Effective Date Committee; provided, that, the Liquidating Trustee may waive such notice period.

(d)    Replacement.  Notwithstanding anything in the bylaws to the contrary, in the event that a director serving on the Post-Effective Date Board of Directors resigns or is duly removed for cause, or in the event of the death of any such director or other occurrence rendering such director incapacitated or unavailable for a period of thirty (30) consecutive days, a replacement director shall be designated by the remaining members of the Post-Effective Date Board of Directors of VHS in consultation with the Liquidating Trustee.

(e)    Termination.  The terms of the Post-Effective Date Board of Directors shall expire upon the date they are no longer required under state law as to each Debtor, as applicable.

(f)    Limitation of Liability of the Post-Effective Date Board of Directors.  The liability of the Post-Effective Date Board of Directors shall be limited to the maximum extent permitted by law, including any exculpations under the articles of incorporation or bylaws of the Post-Effective Date Debtors.

5.10    **Document Preservation**.  The Liquidating Trust shall comply the Document Retention Policy attached as Exhibit A to Docket No. 3355.

**SECTION 6.    THE LIQUIDATING TRUST**

6.1    **Creation**.  On the Effective Date, the Liquidating Trust shall be created and all of the Liquidating Trust Assets shall be transferred to the Liquidating Trust, pursuant to the terms of the Liquidating Trust Agreement.  Nothing in this Plan, including the implementation of the Liquidating Trust, or actions or inactions by the Liquidating Trustee after the Effective Date, shall alter, terminate, or otherwise adversely affect the Nonprofit Status of the Post-Effective Date Debtors; provided, further, that the transfer of Causes of Action to the Liquidating Trust shall not impair any parties' rights, defenses, claims, or counterclaims that have been or could be asserted unless otherwise settled.

6.2    **Purposes of the Liquidating Trust.**  The primary purpose of the Liquidating Trust shall be the liquidation and distribution of its assets, in accordance with 26 C.F.R. § 301.7701-4(d).  The primary functions of the Liquidating Trust are as follows: (i) to liquidate, sell, or dispose of the Trust Assets; (ii) to cause all net proceeds of the Trust Assets, including proceeds of Causes of Action on behalf of the Liquidating Trust, to be deposited into the Liquidating Trust; (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims including, as necessary, initiation and/or participation in proceedings before the Court; (iv) to take such actions as are necessary or useful to maximize the value of the Liquidating Trust; (v) to effectuate the wind-down of the Debtors as set forth in the Plan; and (vi) to make the payments

35

and distributions to Holders of Allowed Claims, including Trust Beneficiaries, as required by the Plan.

6.3     ***The Liquidating Trust Agreement.*** The Liquidating Trust Agreement executed by the parties thereto shall be filed not less than fourteen (14) days prior to the Ballot Deadline, <u>provided</u>, that a copy of the Liquidating Trust Agreement in substantially final form shall be included in the Disclosure Statement. The Liquidating Trust Agreement, including the designation of the Liquidating Trustee thereunder, shall be approved by the Court, and the designated Liquidating Trustee shall accept their duties thereunder on or before the Confirmation Date. The Liquidating Trust Agreement shall, among other things, create the Liquidating Trust, identify the Liquidating Trustee, identify the compensation of the Liquidating Trustee, and specify the authorities and powers of the Liquidating Trustee and the Post-Effective Date Committee consistent with this Plan. The Liquidating Trust Agreement may only be amended, modified and/or supplemented by providing 5 business days written notice to the Plan Proponents, and if any of the Plan Proponents shall object to such amendment, modification and/or supplement in writing, subject to Bankruptcy Court approval, after notice and a hearing.

6.4     ***Operations of the Liquidating Trust.*** From and after the Effective Date, the Liquidating Trust may use and dispose of Liquidating Trust Assets, and take any of the actions consistent with this Plan and/or the Liquidating Trust Agreement without the approval of the Court and free of the restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, provided that the Liquidating Trust will be administered so that it qualifies as a liquidating trust under 26 C.F.R. § 301.7701-4(d). The actions of the Liquidating Trust and the Liquidating Trustee shall be governed by the provisions of the Liquidating Trust Agreement.

6.5     ***Liquidating Trustee***.

(a)     <u>Appointment</u>. The Liquidating Trustee shall be selected by the Committee with the consent of the Master Trustee, such consent not to be unreasonably withheld. The Liquidating Trustee shall be deemed appointed on the Effective Date, without further motion, application, notice, hearing, or other order of the Bankruptcy Court. The appointment, duties, and powers of the Liquidating Trustee are as set forth in Article 3 of the Liquidating Trust Agreement. The Liquidating Trustee shall also serve as the president of each Post-Effective Date Debtor in accordance with the articles of incorporation or bylaws of the Post-Effective Date Debtors.

(b)     <u>Duties</u>. After the Effective Date, without necessity of any further order of the Bankruptcy Court and/or any federal or state court, the Liquidating Trustee shall have the responsibilities set forth in (i) the Liquidating Trust Agreement, (ii) the articles of incorporation or bylaws of the Post-Effective Date Debtors, and (iii) this Plan, which include, but are not limited to, those set forth below:

(i)     implement this Plan and administer the Liquidating Trust;

(ii)     hold legal title to any and all rights of the Trust Beneficiaries in or arising from the Liquidating Trust Assets, including, but not limited to, collecting, receiving any and all money and other property belonging to the

36

Liquidating Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein;

(iii)    perform the duties, exercise the powers, and assert the rights of a trustee under §§ 704 and 1106, including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges and shall be deemed substituted as plaintiff therein without need for any further order of the Bankruptcy Court and shall have all of the standing, rights, powers and obligations of the Debtors and the Non-Debtor Affiliates for all purposes with respect to the Liquidating Trust Assets;

(iv)    be responsible for the following related to the Post-Effective Date Debtors:

(a)    oversee the management and operations of the Hospital Purchased Assets pursuant to the Interim Agreements, including, without limitation, the administration of all obligations and claims, and the Transfer or other disposition of the Hospital Purchased Assets;

(b)    oversee and implement the responsibilities and duties of the Sale-Leaseback Debtors;

(c)    ensure compliance with the Interim Agreements;

(d)    report to the respective board on a regular basis and provide such information and reports that may be reasonably requested by the Post-Effective Date Board of Directors;

(e)    oversee SVMC's, St. Vincent Dialysis's, and the SCC Debtors' collection of Quality Assurance Payments and other accounts; and

(f)    oversee and implement the responsibilities and duties of VHS, including, but not limited to, ensuring compliance with the Interim Agreements and the Transition Services Agreements;

(v)    protect and enforce the rights to the Liquidating Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(vi)    compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, or otherwise deal with and settle, in accordance with the terms of the Liquidating Trust Agreement, the Causes of Action in favor of or against the Liquidating Trust as the Liquidating Trustee shall deem advisable;

37

(vii)    avoid and recover transfers of the Debtors and Non-Debtor Affiliates' property as may be permitted by the Bankruptcy Code or applicable state law, including, without limitation, those identified in the Disclosure Statement;

(viii)    determine and satisfy any and all liabilities created, incurred or assumed by the Liquidating Trust;

(ix)    estimate, object to, defend against and otherwise administer Claims (except for Professional Claims, the 2005 Revenue Bonds Diminution Claim, and any Allowed Claims payable on or prior to the Effective Date) and Interests or requests for payment or allowance of an administrative expense;

(x)    file, if necessary, any and all tax and information returns with respect to the Liquidating Trust, including the Liquidating Trust Reserves, and pay taxes properly payable by the Liquidating Trust, if any;

(xi)    obtain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee under this Liquidating Trust Agreement (in the form of an errors and omissions policy or otherwise);

(xii)    continue to ensure compliance with the terms of the Transition Services Agreements related to the SFMC Sale and the Seton Sale;

(xiii)    serve as the president, or appoint an officer, of SVMC, St. Vincent Dialysis, and the SCC Debtors;

(xiv)    report to the Post-Effective Date Committee;

(xv)    enforce the terms of the Interim Agreements and the Transition Services Agreements;

(xvi)    perform tasks necessary to effectuate termination of the Defined Contribution Plans, if any; and

(xvii)    take any action required or permitted by the Plan.

(c)    Oversight.  The Liquidating Trustee shall keep the Master Trustee informed, from time to time, of the progress of the Liquating Trust in collecting and liquidating the Liquidating Trust Assets, including all offers of compromise and settlement with respect to such assets.  Unless and until the First Priority Trust Beneficial Interests are paid in full, any decisions of the Liquidating Trustee to settle, compromise, affect, waive or release any rights of the Liquidating Trust in any assets having a nominal value of $50,000 or more (or such other minimum amount as may be agreed to by the Liquidating Trustee and the Master Trustee) shall require the consent of the Master Trustee, which consent may be withheld in its sole discretion.  In the event that the Liquidating Trustee intends to decline an offer of compromise or settlement that would result in the payment in full of the First Priority Trust Beneficial Interests (any such offer, an "Exit

38

Offer"), such decision shall be made only if, in the reasonable determination of the Liquidating Trustee, there is a reasonable probability that a materially greater amount can be collected within a reasonable period of time.  If the Master Trustee disagrees with the decision of the Liquidating Trustee to decline an Exit Offer, the Master Trustee may commence an expedited, confidential arbitration against the Liquidating Trustee and the Post-Effective Date Committee seeking a determination that the Liquidating Trustee has not acted reasonably in declining to accept such Exit Offer, and compelling the Liquidating Trustee to accept such Exit Offer.

   (d) <u>Resignation as Liquidating Trustee</u>.  The Liquidating Trustee may resign at any time upon not less than sixty (60) days' written notice to the Post-Effective Date Committee and the Post-Effective Date Board of Directors (if in existence at that time); <u>provided</u>, <u>that</u> the Post-Effective Date Committee and the Post-Effective Date Board of Directors may waive such notice requirement.

   (e) <u>Term as President of Post-Effective Date Debtors</u>.   The term of the Liquidating Trustee as president of the Post-Effective Date Debtors expires on the earlier of (i) twelve (12) months following the Effective Date or (ii) the expiration of the Interim Agreements, unless the Liquidating Trustee, with the consent of the Post-Effective Date Board of Directors, requests that the Court extend such term.  Prior to the expiration of the term of the Liquidating Trustee as president of the Post-Effective Date Debtors, the Post-Effective Date Board of Directors may, in consultation with the Post-Effective Date Committee, terminate the Liquidating Trustee as president for cause.

   (f) <u>Replacement of the Liquidating Trustee</u>.  In the event that the Liquidating Trustee resigns, or in the event of the death of the Liquidating Trustee or other occurrence rendering the Liquidating Trustee incapacitated or unavailable for an extended period of thirty (30) consecutive days, a replacement Liquidating Trustee shall be appointed.  If such appointment occurs prior to full payment of the First Priority Trust Beneficial Interests, the Post-Effective Date Committee shall appoint a replacement Liquidating Trustee in consultation with the Post-Effective Date Board of Directors, if such Board has not been disbanded, and with the consent of the Master Trustee, such consent not to be unreasonably withheld.  If such appointment occurs after full payment of the First Priority Trust Beneficial Interests, the Post-Effective Date Committee shall appoint a replacement Liquidating Trustee in consultation with the Post-Effective Date Board of Directors, if such Board has not been disbanded.  A notice of the identity of the new Liquidating Trustee shall be filed with the Bankruptcy Court promptly after the new Liquidating Trustee is appointed.

   (g) <u>No Further Approvals Required/Transfer of Liquidating Trust Assets</u>.  In performance of its duties hereunder, the Liquidating Trustee shall have the rights and powers of a debtor in possession under § 1107, and such other rights, powers, and duties necessary, appropriate, advisable or convenient to effectuate the provisions of the Plan.  On and after the Effective Date, the Liquidating Trustee shall not be required to obtain any approvals from the Bankruptcy Court, any court or Governmental Unit and/or provide any notices under any applicable laws, including under the Nonprofit Laws, to implement the terms of the Plan, including, without limitation, the Transfer of any Liquidating Trust Assets retained by the Liquidating Trust.  As further set forth in the Liquidating Trust Agreement, without limitation of the foregoing, with the prior Consent of the Master Trustee (until the First Priority Beneficial Trust Interests are paid in full) and the Post-

Effective Date Committee, the Liquidating Trustee shall be authorized pursuant to this Plan to Transfer any or all of the Liquidating Trust Assets without necessity of any further notice or approval of the Bankruptcy Court and/or under any applicable state or federal law, including under the Nonprofit Laws. This provision shall be subject in its entirety to the Liquidating Trust Agreement.

(h)    Operation of Hospital Purchased Assets. The Liquidating Trustee shall be authorized (i) to continue to Operate the Hospital Purchased Assets pursuant to the Interim Agreements without necessity of any further notice or approval by the Bankruptcy Court, (ii) to execute any agreement or other instrument necessary to implement the terms of the SFMC Asset Purchase Agreement, the Seton Asset Purchase Agreement, the Transition Services Agreements, and the Interim Agreements, and (iii) to enforce the terms of the Interim Agreements and the Transition Services Agreements.

(i)    Compensation. The Liquidating Trustee shall be compensated and reimbursed for his/her out-of-pocket expenses incident to the performance of his/her duties under the Plan as set forth in the Liquidating Trust Agreement, without further motion, application, notice or other order of the Bankruptcy Court. The fees and expenses of the Liquidating Trustee shall be satisfied solely out of the Liquidating Trust Administration Accounts.

6.6    **Books and Records.** As more fully set forth in the Liquidating Trust Agreement, the Liquidating Trustee shall maintain, with respect to the Liquidating Trust and the Trust Beneficiaries, books and records relating to the Liquidating Trust Assets and income of the Liquidating Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Liquidating Trust. Except as provided in the Liquidating Trust Agreement and the Plan, nothing requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for managing any payment or distribution out of the Liquidating Trust Assets.

6.7    **Payment of Trust Expenses.** As set forth below, the Liquidating Trust expenses shall be paid, or adequate reserves created therefor, from the Liquidating Trust Administration Accounts.

6.8    **Employment and Compensation of Professionals.** In accordance with the Liquidating Trust Agreement, the Liquidating Trust may employ such counsel (which may be the same counsel employed by either the Post-Effective Date Committee or the Post-Effective Date Debtors), advisors and other professionals selected by the Liquidating Trustee that the Liquidating Trustee reasonably requires to perform its responsibilities under the Plan without further order from the Bankruptcy Court. The Liquidating Trust's professionals shall be compensated as agreed to by the Liquidating Trustee and paid upon five (5) Business Days' notice to the Post-Effective Date Committee, without further motion, application, notice or other order of the Bankruptcy Court. The fees and expenses of the Liquidating Trust's professionals shall be satisfied solely out of the Liquidating Trust Administrative Accounts.

40

6.9    ***Limitation of Liability of the Liquidating Trustee and the Post-Effective Date Committee.*** The Liquidating Trustee and the Post-Effective Date Committee, and the Liquidating Trustee's attorneys, accountants, consultants, employees, agents and assignees, shall have no liability for any error of judgment, actions, or omissions made in good faith other than as a result of gross negligence or willful misconduct. No provisions of this Plan shall require the Liquidating Trustee or any of the members of the Post-Effective Date Committee to expend or risk his/her own funds or otherwise incur personal financial liability in the performance of any of his/her duties under this Plan or in the exercise of any of the Liquidating Trustee's and the Post-Effective Date Committee's rights and powers. The Liquidating Trust shall indemnify and hold the Liquidating Trustee and Post-Effective Date Committee harmless, from and against any damages, costs, claims and other liabilities incurred by any of them in connection with their respective duties and responsibilities hereunder, other than those damages, costs, claims and other liabilities that result from such party's gross negligence or willful misconduct. Further, as provided in the Interim Agreements, Prime and AHMC shall indemnify and hold the Liquidating Trustee harmless, from and against any damages, costs, claims and other liabilities incurred by him/her in connection with the respective duties and responsibilities hereunder, other than those damages, costs, claims and other liabilities that result from the Liquidating Trustee's gross negligence or willful misconduct. The Liquidating Trustee may purchase or extend existing insurance to cover potential liabilities that may be incurred in the Chapter 11 Cases, and such cost shall be paid for by the Liquidating Trust from the Liquidating Trust Administration Accounts..

6.10    ***Termination of the Trust.*** The Liquidating Trust will terminate on the earlier of: (a) thirty (30) days after the final distribution of the Liquidating Trust Assets in accordance with the terms of this Liquidating Trust Agreement and the Plan; and (b) the fifth (5th) anniversary of the Effective Date. Notwithstanding the foregoing, multiple fixed term extensions can be obtained so long as Bankruptcy Court approval is obtained within three (3) months before the expiration of the term of the Liquidating Trust and each extended term. The aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of 26 C.F.R. § 301.7701-4(d) for federal income tax purposes. The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Liquidating Trust Assets and to effect the distribution of the Liquidating Trust Assets to the Trust Beneficiaries in accordance with the terms hereof and terminate the Liquidating Trust as soon as practicable. Prior to and upon termination of the Liquidating Trust, the Liquidating Trust Assets will be distributed no less frequently than quarterly as set forth herein first, to the holder of the First Priority Trust Beneficial Interests until such Trust Beneficial Interests are paid in full, and second, to the holders, *pro rata*, of the Second Priority Trust Beneficial Interests until paid in full. Such distributions shall otherwise be made pursuant to the provisions set forth herein and in the Liquidating Trust Agreement. If any Liquidating Trust Assets are not duly claimed, such Liquidating Trust Assets will be distributed pursuant to Section 8.5. If there are still any Liquidating Trust Assets after a final distribution and payment of all expenses associated with the Liquidating Trust, such Liquidating Trust Assets will be disposed of in accordance with applicable law.

41

# SECTION 7.    MEANS FOR IMPLEMENTATION OF THE PLAN

7.1    *Creditor Settlement Agreements*.

(a)    <u>Plan Settlement</u>.  Pursuant to Bankruptcy Rule 9019 and § 1123(b)(3)(A), the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the Plan Settlement by and between the Debtors, the Prepetition Secured Creditors, and the Committee.  The primary terms of the Plan Settlement are as follows:

(i)    the Holders of Secured 2005 Revenue Bond Claims shall receive the treatment set forth in Section 4.5, including, but not limited to, the receipt of the Initial Secured 2005 Revenue Bonds Claims Payment and the First Priority Trust Beneficial Interests in full and final satisfaction of the 2005 Revenue Bonds Diminution Claim;

(ii)    the Holders of Allowed General Unsecured Claims shall receive the treatment set forth in Section 4.9, including, but not limited to, the receipt of Second Priority Beneficial Trust Interests in full and final satisfaction of all Allowed General Unsecured Claims;

(iii)    on the Effective Date, or as soon thereafter is reasonably practicable, the following litigations and the claims asserted therein shall be dismissed with prejudice: (a) the adversary proceeding captioned *Official Committee of Unsecured Creditors of Verity Health System of California, Inc., et al. v. U.S. Bank National Association, as trustee*, Adv. Case No. 2:19-ap-01165-ER (Bankr. C.D. Cal.); and (b) the adversary proceeding captioned *Official Committee of Unsecured Creditors of Verity Health System of California, Inc., et al. v. UMB Bank, National Association, as trustee*, Adv. Case No. 2:19-ap-01166-ER (Bankr. C.D. Cal.);

(iv)    any outstanding stipulation or other agreement tolling the Committee's right to pursue claims against Verity MOB Financing, LLC and Verity MOB Financing II, LLC pursuant to the Final DIP Order and/or the Cash Collateral Orders shall be terminated and all further rights of the Committee with respect to such claims shall be waived, released, and terminated with prejudice;

(v)    the Confirmation Order shall include, without limitation, findings that: (a) the Prepetition Secured Creditors were oversecured as of the Petition Date and are entitled to retain Adequate Protection Payments as allowed postpetition interest and fees under § 506(a); (b) the amount of the Prepetition Replacement Lien (as defined in the Final DIP Order and the Cash Collateral Orders) that may be asserted by the Master Trustee and the 2005 Revenue Bonds Trustee

42

is equal to or greater than the 2005 Revenue Bonds Diminution Claim; (c) the 2005 Revenue Bonds Claim, including the 2005 Revenue Bonds Diminution Claim, constitutes an Allowed Secured Claim for all purposes under the Plan and the Liquidating Trust Agreement, and on and after the Effective Date shall not be subject to any defense, reduction, setoff or counterclaim, including without limitation, pursuant to any claims under §§ 506(c) and 552(b) of the Bankruptcy Code; and (d) the Master Trustee and the 2005 Bonds Trustee are authorized to enter into the Plan Settlement on behalf of the holders of the 2005 Bonds Claims and such Trustees have properly exercised their rights, powers and discretion pursuant to the 2005 Bonds Indenture and applicable law in entering into the Plan Settlement, which shall be bind the Master Trustee, the 2005 Revenue Bonds Trustee and all holders of the 2005 Revenue Bonds Claims;

(vi)    the Debtors and the Prepetition Secured Creditors shall waive any objection to the fees and expenses incurred by the Committee's advisors which exceed the limitations for investigating and prosecuting claims against the Prepetition Secured Creditors set forth in the Final DIP Order, the Cash Collateral Orders, the related budgets, and as set forth more fully in the Debtors' reservations of rights [Docket Nos. 3896, 4287]; provided, however, nothing herein shall be deemed a waiver of the rights of any party to object to the reasonableness of fees and/or expenses of the Committee;

(vii)    the Master Trustee and the 2005 Revenue Bonds Trustee shall agree that, on the Effective Date, the Debtors shall pay, or reserve for, all Allowed and allowable Administrative Claims not otherwise paid in the ordinary course of the Debtors' operations notwithstanding that, absent such agreement, such Administrative Claims would not otherwise be entitled to any payment absent full payment of the 2005 Revenue Bonds Claim;

(viii)    the Indenture Trustees and their affiliates shall be Released Parties under this Plan and shall be granted the benefit of the releases, injunctions, and exculpations set forth herein pursuant to § 1123(b)(3)(A) and the Plan Settlement; and

(ix)    the Plan Settlement shall be effective provided that (a) the Confirmation Order is not subject to a stay of effectiveness on the Effective Date, and (b) Effective Date occurs on or before September 5, 2020.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding that (i) entering into the Plan Settlement is in the best interests of the Debtors, their Estates, and their

43

creditors, (ii) the Plan Settlement is fair, equitable and reasonable, and (iii) the Plan Settlement meets all the standards set forth in Bankruptcy Rule 9019 and § 1123(b)(3)(A).

(b)    PBGC Settlement.  Pursuant to Bankruptcy Rule 9019 and § 1123(b)(3)(A), the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the PBGC Settlement by and between the Debtors and the PBGC.  The primary terms of the PBGC Settlement are as follows:

(i)    the PBGC is granted a single, Allowed Administrative Claim against the Debtors in the total amount of $3,000,000 to be paid on the Effective Date;

(ii)    the PBGC is granted a single, Allowed General Unsecured Claim against the Debtors in the total amount of $450,000,000;

(iii)    the PBGC shall support confirmation of the Plan and entry of the Confirmation Order;

(iv)    notwithstanding anything to the contrary in the Plan or Confirmation Order, any fiduciary breach claims held by the PBGC related to the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B, shall not be not released, waived, or discharged under this Plan or the Confirmation Order;

(v)    the PBGC Settlement shall be in full and final satisfaction of the PBGC Claims; and

(vi)    the PBGC Settlement shall be null and void in the event that (A) the Plan is not confirmed or does not go into effect, or (B) the SFMC Sale or Seton Sale do not close.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding that (i) entering into the PBGC Settlement is in the best interests of the Debtors, their Estates, and their creditors, (ii) the PBGC Settlement is fair, equitable and reasonable, and (iii) the PBGC Settlement meets all the standards set forth in Bankruptcy Rule 9019 and § 1123(b)(3)(A).  Notwithstanding any provision in the Plan (including Section 13 hereof) or the Confirmation Order to the contrary, neither the Plan nor the Confirmation Order shall in any way be construed to discharge, release, limit, or relieve any party for a fiduciary breach related to the Verity Health System Retirement Plan A or Verity Health System Retirement Plan B.  The PBGC, the Verity Health System Retirement Plan A, and the Verity Health System Retirement Plan B shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan or the Confirmation Order.

(c)    Other Creditor Settlement Agreements.  Pursuant to Bankruptcy Rule 9019 and § 1123(b)(3), the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each of the Creditor Settlement Agreements and the finding that (i) entering into each of the Creditor Settlement Agreements is in the best interests of the Debtors, their Estates, and their creditors, (ii) each of the Creditor Settlement Agreements is fair,

44

equitable and reasonable, and (iii) each of the Creditor Settlement Agreements meets all the standards set forth in Bankruptcy Rule 9019 and § 1123(b)(3). Notwithstanding anything to the contrary set forth herein, all distributions contemplated by each Creditor Settlement Agreement shall be made only in accordance with the terms of the respective Creditor Settlement Agreement.

7.2     ***Deemed Substantive Consolidation***.  The Plan contemplates, and is predicated on, the deemed substantive consolidation of the Debtors' Estates as follows:

(a)     Entry of the Confirmation Order shall constitute the approval, pursuant to §§ 105(a), 541, 1123, and 1129, of the deemed substantive consolidation of the Debtors in the manner set forth herein.  Notwithstanding such deemed substantive consolidation, however, fees payable, pursuant to 28 U.S.C. § 1930, shall be due and payable by each individual Debtor.

(b)     The deemed substantive consolidation effected pursuant to the Plan shall not affect, without limitation, (i) the Debtors', the Post-Effective Date Debtors', or the Liquidating Trust's defenses to any Claim or Cause of Action, including the ability to assert any counterclaim, provided, that, the Liquidating Trust shall neither assert nor preserve Intercompany Claims, except to the extent necessary to preserve claims and defenses against any third parties other than the Debtors; (ii) the Debtors', the Post-Effective Date Debtors', or the Liquidating Trust's setoff or recoupment rights; (iii) requirements for any third party to establish mutuality prior to deemed substantive consolidation in order to assert a right of setoff against the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust; (iv) distributions to the Debtors, the Estates, the Post-Effective Date Debtors, or the Liquidating Trust out of any Insurance Policies or proceeds of such policies; (v) distributions to the Debtors, the Estates, the Post-Effective Date Debtors, or the Liquidating Trust from any governmental programs, including, but not limited to, Medicare and Medi-Cal, including any fee for service payments and any Quality Assurance Payments; (vi) the applicability and enforceability of any government issued licenses, including, but not limited to, the Hospital Licenses, or (vii) any Avoidance Action or any other Cause of Action held by the Debtors arising under §§ 541 through 550, or state laws of similar effect, against any third party other than the other Debtors, except to the extent any such actions are expressly waived or settled pursuant to this Plan.

(c)     The Disclosure Statement and the Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the deemed substantive consolidation contemplated by the Plan.  Unless an objection to the proposed deemed substantive consolidation is made in writing by any creditor purportedly affected by such deemed substantive consolidation on or before the deadline to object to confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the deemed substantive consolidation contemplated by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing.  In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, be the Confirmation Hearing.

(d)     If the Bankruptcy Court determines that deemed substantive consolidation of any given Debtors is not appropriate, then the Plan Proponents may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis.  Furthermore, the Debtors reserve their rights, with the consent of the Plan Proponents: (i) to seek confirmation of the Plan without

45

implementing deemed consolidation of any given Debtor, and, in the Debtors' reasonable discretion, to request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (ii) to seek deemed consolidation of all Debtors whether or not all Impaired Classes entitled to vote on the Plan vote to accept the Plan.

7.3    ***Cancellation of Existing Indentures and Related Securities***.  On the Effective Date, and conditioned on the irrevocable receipt of all of the Plan payments to the respective Bond and Notes Trustees on behalf of Classes 2, 3, and 4 due upon the Effective Date, and the effectiveness of the releases and exculpations of each of the Indenture Trustees in accordance with Sections 13.5(d) and 13.7 of the Plan, the Master Indenture of Trust, dated as of December 1, 2001, as amended and supplemented, among the Daughters of Charity Health System, as predecessor in interest to VHS, the 2005 Revenue Bonds Indentures, the 2015 Revenue Notes Indentures and the 2017 Revenue Notes Indentures (collectively, the "***Indentures***"), together with the related Obligations of the Debtors, loan agreements and security documents to which the Debtors are party, including the Intercreditor Agreement, and the respective notes, bonds, and securities issued under each of the Indentures shall be deemed inoperative and unenforceable against the Debtors and the Debtors shall have no continuing obligations thereunder, and the Indenture Trustees shall each be discharged for all purposes, provided, however, that the foregoing Indentures shall continue in effect solely to the extent necessary to (i) allow the respective Bond and Notes Trustees to receive and make distributions under the Plan to their respective holders, and preserving the tax attributes of such distributions under such Indentures and (ii) allow the respective  Indenture Trustees to enforce any obligations owed to them under the Plan or their respective Indentures (including compensation and reimbursement for any reasonable and documented fees and expenses pursuant to their respective charging liens as provided in the Indentures, as applicable).  Without limiting the foregoing, the Bond and Notes Trustees, as applicable, shall receive all distributions made under the Plan on account of their respective Allowed Claims and shall distribute them in any manner permitted by the applicable Indentures, including on a date selected by the respective Bond and Notes Trustee on or after the Effective Date for surrender and cancellation of securities.  The Indenture Trustees shall be entitled to receive from the Liquidating Trust their reasonable fees and expenses incurred in releasing any liens and making distributions, as applicable, in accordance with the relevant Indentures, the Plan, and the Confirmation Order. Notwithstanding the foregoing, if any claim is ever made upon the Indenture Trustees or any Prepetition Secured Creditor subject to the Intercreditor Agreement, which results in the  rescission, repayment, recovery or restoration of any amounts received by the Indenture Trustees (or in the case of the Prepetition Secured Creditors, as distributed from the Indenture Trustees to such Prepetition Secured Creditor) pursuant to the Plan, the Intercreditor Agreement shall be reinstated in full force and effect, and the prior termination of the Intercreditor Agreement pursuant to this Section 7.3 shall not diminish, release, discharge, impair or otherwise affect the obligations of the parties to the Intercreditor Agreement from such date of reinstatement.

7.4    ***Funding for Distributions***.  The distributions to holders of Allowed Claims and Trust Beneficiaries contemplated under the Plan shall be funded as set forth herein.

7.5    ***No Further Court Authorization***.  Except as provided herein or the Confirmation Order, the Liquidating Trustee will continue the orderly administration of the Liquidating Trust Assets and otherwise implement the provisions of this Plan without necessity of any further order

46

US_Active\114691962\V-7

of the Bankruptcy Court or approval or consent of any Governmental Unit, including under the Nonprofit Laws.  Further, except as provided herein or the Confirmation Order, the Liquidating Trustee will continue his/her oversight and related responsibilities pursuant to the Plan and Interim Agreements without necessity of any further order of the Bankruptcy Court or other Governmental Unit, including under the Nonprofit Laws.

7.6    ***Operating Accounts for the Post-Effective Date Debtors***.  On the Effective Date, subject to the prior payment of the amounts required to be paid by the Debtors in cash on the Effective Date pursuant to this Plan,  Operating Accounts for Post-Effective Date Debtors shall be established and funded in accordance with, or, if previously established, continued in accordance with, the Operating Budget.  The Liquidating Trustee shall be authorized to use the funds in the Operating Accounts to preserve, administer, and continue the Operations of the Operating Assets, including paying all costs and expenses associated therewith, and collection of any amounts due under the Interim Agreements, each in accordance with the Operating Budget.  After the Effective Date, all Cash or other proceeds generated by the Operating Assets and required to fund the Operating Accounts and/or Operate the Operating Assets shall not be included within the definition of the Remaining Cash under this Plan.

7.7    ***Transfer of Certain Funds Into the Liquidating Trust***.  Post-Effective Date, the Liquidating Trustee, subject to the prior payment of all amounts required to be paid by the Debtors in cash on the Effective Date pursuant to this Plan, shall transfer funds received on account of any Post-Effective Date Debtors to the Liquidating Trust except for funds that (i) constitute Hospital Purchased Assets, or (ii) are to be retained by the Post-Effective Date Debtors under the Interim Agreements and the Operating Budget.  The aforementioned transfers to the Liquidating Trust shall be made as soon as practicable, but no less frequently than on a quarterly basis, with the first such transfer occurring as soon as practicable after the Effective Date.  Further, the Liquidating Trustee shall transfer all funds held or received by SVMC, St. Vincent Dialysis, and the SCC Debtors on or after the Effective Date to the Liquidating Trust as soon as practicable, but no less frequently than on a quarterly basis, with the first such transfer occurring as soon as practicable after the Effective Date.

(a)    Liquidating Trust Tax Matters.  For all federal and applicable state and local income tax purposes:

(i)    All parties must treat each transfer of Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement.

(ii)    All parties shall treat the Liquidating Trust as a grantor trust, of which the Trust Beneficiaries are the owners and grantors, and treat the Trust Beneficiaries as the direct owners of an undivided interest in Liquidating Trust Assets (other than any assets allocable to Liquidating Trust Reserves and the Liquidating Trust Administration Accounts), consistent with their economic interests therein.

(iii)    Each transfer of Liquidating Trust Assets (other than any assets allocable to Liquidating Trust Reserves and the Liquidating Trust

47

Administration Accounts) to the Liquidating Trust shall be treated as a transfer of such assets directly to the holders of Trust Beneficial Interests in partial satisfaction of their Claims (with each Trust Beneficiary receiving an undivided interest in such assets in accord with their economic interests in such assets), followed by the transfer by the Trust Beneficiaries to the Liquidating Trust of such assets in exchange for the Trust Beneficial Interests.

(iv)    The Liquidating Trustee will make a good faith valuation of the Liquidating Trust Assets. All parties must consistently use such valuation for all federal and applicable state and local income tax purposes.

(v)    Allocations of the Liquidating Trust's taxable income (other than income attributable to assets in the Liquidating Trust Reserves and the Liquidating Trust Administration Accounts) among the beneficiaries of the Liquidating Trust shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its other assets (valued at their tax book value and other than assets allocable to Disputed Claims) to the Trust Beneficiaries, in each case up to the tax book value of the assets treated as contributed by such Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the date such assets are transferred to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(vi)    The Liquidating Trustee shall file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to 26 C.F.R. § 1.671-4(a). The Liquidating Trustee also shall annually send to each Trust Beneficiary a separate statement setting forth the Trust Beneficiary's share of items of income, gain, loss, deduction, or credit and shall instruct all of the Trust Beneficiaries to report such items on their federal income tax returns or to forward the appropriate information to such Trust Beneficiary's underlying beneficial holders with instructions to report such items on their federal income tax returns.

(vii)    The Liquidating Trustee shall (x) treat the Liquidating Trust Reserves as "disputed ownership funds" governed by 26 C.F.R. § 1.468B-9 by timely making an election, and (y) to the extent permitted by applicable

48

law, report consistently with the foregoing for state and local income tax purposes.

(viii)    The Liquidating Trustee shall be responsible for the payment, out of the Liquidating Trust, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Liquidating Trust Reserves.

7.8    ***Funding of the Liquidating Trust Administration Accounts.***  On or prior to the Effective Date, the Liquidating Trustee shall have the authority, subject to the Liquidating Trust Agreement, to establish and maintain one or more Liquidating Trust Administration Accounts in the name of the Liquidating Trustee pursuant to the terms of this Plan and the Liquidating Trust Agreement.  On the Effective Date, an amount of the Debtors' Cash on hand equal to an aggregate of $3,500,000.00 shall be deposited in the Liquidating Trust Administration Accounts as designated by the Liquidating Trustee.  The Liquidating Trustee shall have the authority, subject to the Liquidating Trust Agreement, to utilize the funds in the Liquidating Trust Administration Account to pay any and all reasonable costs and expenses incurred in implementing the terms of this Plan and the Liquidating Trust Agreement, including, but not limited to, the costs of collection and liquidation of the Liquidating Trust Assets.  et.  As assets are collected by the Liquidating Trust, at least 95% of the gross amount of such collections shall be deposited into the Plan Fund, to be paid to the Master Trustee for application against the First Priority Trust Beneficial Interests until the 2005 Revenue Bonds Diminution Claim is paid in full, and the remainder of such gross collections may be retained by the Liquidating Trust and deposited into the Liquidating Trust Administration Account; provided, that, if and when the aggregate of the deposits into the Liquidating Trust Administration Account, including the initial $3,500,000.00 deposit, equals $7,500,000.00, 100% of all subsequent gross collections shall be deposited into the Plan Fund, to be paid to the Master Trustee for application to the First Priority Trust Beneficial Interests until paid in full, and then shall be used to make payments to the Holders of the Second Priority Trust Beneficial Interests.  Upon termination of the Liquidating Trust, if any of the 2005 Revenue Bonds Diminution Claim remains unpaid, any balance in the Liquidating Trust Administration Account shall be paid to the Master Trustee on account of the First Priority Trust Beneficial Interests until the 2005 Revenue Bonds Diminution Claim is paid in full, and any remaining balance in the Liquidating Trust Administration Account shall thereafter be paid to the Holders of the Second Priority Trust Beneficial Interests.

7.9    ***Liquidating Trust Reserves***.  The Liquidating Trustee shall have the authority to establish and maintain the Liquidating Trust Reserves, as follows:

(a)    Disputed Unclassified Claims and Disputed Class 1A Claims Reserves.

(i)    *Establishment.*  On the Effective Date, the Liquidating Trustee shall set aside Cash sufficient in the aggregate to fund a reserve on account of any Disputed Unclassified Claims and Disputed Class 1A Claims.  Once such Disputed Unclassified Claims and Disputed Class 1A Claims, if any, are resolved and become Allowed, Cash in such reserves shall be made available, on a quarterly basis, for distribution to the holders of such newly Allowed Claims in accordance with the Plan.  If all Disputed Unclassified Claims and Disputed Class 1A Claims are either Allowed and satisfied or

49

Disallowed, any remaining funds in such reserve, on a quarterly basis, shall be used to first fund the Trust Administration Account (if necessary) and the remainder shall be deposited into the Plan Fund.

(ii)     *Funding Amount.* The Liquidating Trustee may reserve on account of any Disputed Unclassified Claims and Disputed Class 1A Claims based on the face amount of the Disputed Claim Holder's Proof of Claim (or if no Proof of Claim was filed, the amount set forth in the Debtors' Schedules with respect to such Disputed Claim or application for payment, as applicable) or request that the Bankruptcy Court estimate the amount of any Disputed Claim pursuant to § 502(c), in which event the amount so estimated shall be deemed the amount of the Disputed Claim for purposes of funding the Disputed Claims Reserves.

(b)     Effective Date Professional Claim Reserves.  For the Professional Claims not yet fixed and Allowed by the Bankruptcy Court prior to or on the Effective Date, the Liquidating Trustee shall establish the Effective Date Professional Claim Reserve.  If all Professional Claims are Allowed and satisfied, any funds remaining in the Effective Date Professional Claim Reserve shall be used to first fund the Trust Administration Account (if necessary) and the remainder shall be deposited into the Plan Fund.

(c)     Disputed Unsecured Claims Reserve. As more fully set forth below in Section 7.10(b), and solely from the Plan Fund, the Liquidating Trustee shall reserve for Disputed General Unsecured Claims until such Claims are reconciled and either Allowed or Disallowed. Amounts held in the Disputed Unsecured Claims Reserve shall be transferred into the unreserved portion of the Plan Fund for distribution to Allowed General Unsecured Claims upon determination of the General Unsecured Claim's status as Allowed or Disallowed.

(d)     Administrative Claims Reserve.  As more fully set forth below in Section 15.3, on the Effective Date, the Debtors shall establish the Administrative Clams Reserve.  Upon satisfaction of all Allowed Administrative Claims and resolution of any disputed Administrative Claims for which amounts were included in the Administrative Claims Reserve, any funds remaining in the Administrative Claims Reserve shall be deposited into the Plan Fund.

7.10    ***Plan Fund***.

(a)     Establishment of the Plan Fund.  On the Effective Date or as soon as practicable thereafter, subject to the prior payment of all amounts required to be paid by the Debtors on the Effective Date pursuant to this Plan, the Liquidating Trustee shall fund the Plan Fund with the Remaining Cash after funding (i) the Liquidating Trust Reserves and (ii) Liquidating Trust Administration Accounts.  The proceeds of the Plan Fund shall be used to make distributions as follows: (i) first, to pay the 2005 Revenue Bonds Diminution Claim, which shall have a First Priority Trust Beneficial Interest in the Plan Fund; and (ii) second, to pay Allowed General Unsecured Claims, which shall have Second Priority Trust Beneficial Interest in the Plan Fund.  As Disputed General Unsecured Claims are resolved and become Allowed, Cash in the Disputed Unsecured Claims Reserve shall be transferred into the unreserved portion of the Plan Fund and

50

made available for distribution to the Holders of such newly Allowed General Unsecured Claims in an amount of their Pro Rata Share in accordance with the Plan.

(b)    Funding Amount. After full Payment of the First Priority Trust Beneficial Interests, the Liquidating Trustee may either (i) reserve on account of Disputed General Unsecured Claims an amount necessary to satisfy such claims once they are Allowed, which shall be based upon the estimated distribution percentage for all Allowed General Unsecured Claims (using either the face value of the Proofs of Claim, or if no Proof of Claim was required to be filed, the amount reflected in the Schedules), (ii) reserve an amount as estimated by agreement between the Debtors or the Liquidating Trustee and the Holder of such Disputed General Unsecured Claim, or (iii) in the absence of such an agreement, reserve the amount estimated by the Bankruptcy Court under § 502(c).

(c)    Restrictions on Use of Plan Fund. Funds in the Plan Fund shall be used solely to make payments to the Holders of Trust Beneficial Interests from time to time as required by the terms of the Plan and the Liquidating Trust Agreement, and no funds in the Plan Fund shall be used for the costs of administration of the Liquidating Trust or for any other purpose, including the costs of collection and liquidation of the Liquidating Trust Assets.

7.11    *Post-Effective Date Committee*.

(a)    Dissolution of the Committee. On the Effective Date, the Committee shall be dissolved (except with respect to any Professional compensation matters), and the members, employees, agents, advisors, affiliates, and representatives (including, without limitation, attorneys, financial advisors, and other professionals) of each thereof shall thereupon be released from and discharged of and from all further authority, duties, responsibilities, and obligations related to, arising from and in connection with or related to the Chapter 11 Cases; provided, however, that obligations arising under confidentiality agreements, joint interest agreements, and protective orders, if any, entered during the Chapter 11 Cases shall remain in full force and effect according to their terms. The Liquidating Trust shall continue to compensate the Post-Effective Date Committee's professionals, in the ordinary course of business and without the need for Bankruptcy Court approval, for reasonable services provided in connection with any of the foregoing post-Effective Date activities out of the Liquidating Trust Administration Accounts.

(b)    Formation of the Post-Effective Date Committee. On the Effective Date, the Post-Effective Date Committee shall be appointed. Other than the Master Trustee, which shall be an ex officio and non-voting member of the Post-Effective Date Committee, the initial members that shall serve on the Post-Effective Date Committee shall be selected by the Committee and shall be disclosed in a Plan Supplement.

(c)    Duties. The Post-Effective Date Committee shall have duties in accordance with the Plan and the Liquidating Trust Agreement: (i) consult and coordinate with the Liquidating Trustee as to the administration of the Liquidating Trust and the Liquidating Trust Assets, including without limitation, consulting on the Operating Budget; and (ii) consult and coordinate with the Liquidating Trustee as to the administration of the Post-Effective Date Debtors.

51

(d)    Resignation.  Any member of the Post-Effective Date Committee may resign at any time upon not less than thirty (30) days' written notice to the Post-Effective Date Committee with a copy of such notice to the Liquidating Trustee; provided, that, the Post-Effective Date Committee may waive such notice period.  Any member of the Post-Effective Date Committee may be removed in accordance with any by-laws governing the actions of the Post-Effective Date Committee.

(e)    Replacement.  In the event that a member of the Post-Effective Date Committee resigns or is duly terminated or unable to serve as a member thereof, then a successor member shall be selected by the remaining members of the Post-Effective Date Committee, in consultation with Post-Effective Date Debtors; provided, however, that if no agreement on the replacement member can be reached or if there are fewer than two (2) members remaining on the Post-Effective Date Committee, the parties shall request that the Bankruptcy Court resolve such dispute and/or appoint the replacement member(s).

(f)    Termination of the Post-Effective Date Committee.  The Post-Effective Date Committee shall continue in existence until such time as either the Post-Effective Date Committee deems it appropriate by a majority vote to dissolve itself or all members of the Post-Effective Date Committee resign; provided, however, that the Post-Effective Date Committee shall automatically dissolve upon the closing of the Chapter 11 Cases in accordance with the terms of Section 8.9.

7.12    ***Coordination Between Post-Effective Date Debtors and the Liquidating Trust***. Notwithstanding anything herein to the contrary, in furtherance of the purposes of the Liquidating Trust, at the request of the Liquidating Trustee, the Post-Effective Date Debtors (including, without limitation, the Post-Effective Date Debtors' employees, agents and/or professionals) shall be authorized to provide assistance and services to, or otherwise act on behalf of, the Liquidating Trustee in the performance of the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement.  Without limitation on the foregoing, the Post-Effective Date Debtors shall be authorized to assist in the reconciliation and administration of claims, and assist in the liquidation and/or collection of Liquidating Trust Assets (including, without limitation, litigation claims).  The Liquidating Trustee shall oversee all such services provided on behalf of the Liquidating Trustee.

7.13    ***Destruction and Abandonment of Books and Records***.  Subject to the terms of the Records Retention Order with respect to the records covered thereby, on or after the Effective Date, pursuant to § 554(a), the Liquidating Trustee is each authorized, from time to time, without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy documents and records (whether in electronic or paper format) that he or she determine, in his/her reasonable business judgment, are no longer necessary to the administration of either the Chapter 11 Cases or the Plan, notwithstanding any federal, state, or local law or requirement requiring the retention of the applicable documents or records; provided, that, 60 days prior to any abandonment or destruction, the Liquidating Trustee will give notice to any Insurer requesting notice prior to the Confirmation Date and a general description of the documents to be abandoned or destroyed, and the Insurer shall have 30 days thereafter to request, at its expense, copies of the documents relevant to the defense or indemnity claims covered by that Insurer.  The Insurer and the Liquidating Trustee shall cooperate in limiting the request to document relevant to defense or indemnity of claims covered by that Insurer.  The Liquidating Trustee shall comply with and shall not modify

52

the Records Retention Order without (i) the prior consent of the Post-Effective Date Committee or (ii) upon motion to the Bankruptcy Court with notice and an opportunity to be heard.

7.14    ***Preservation of Insurance.***    Nothing in this Plan shall diminish, impair or otherwise affect payments from the proceeds or the enforceability of any Insurance Policies that may cover (a) Claims by any Debtor, or (b) Claims against any Debtor or covered Persons thereunder.

7.15    ***Mutuality preserved.***    Unless specifically agreed in writing by the Debtors or the Liquidating Trustee, as applicable, nothing in the Plan constitutes a waiver of the mutuality requirement for setoff under § 553 and each Debtor shall be treated independently for mutuality and setoff purposes.

## SECTION 8.    DISTRIBUTIONS

8.1    ***Party Responsible for Making Distributions***.    Subject to the prior payment of the amounts required to be paid by the Debtors in Cash on the Effective Date pursuant to this Plan, the Liquidating Trustee shall be charged with making distributions under the Plan with respect to all Allowed Claims as set forth herein.

8.2    ***Appointment of Disbursing Agent***.    A Disbursing Agent may be identified in the Disclosure Statement or appointed pursuant to the Confirmation Order.

8.3    ***Timing of Distributions***.

(a)    Distributions on Account of All Claims Other Than the 2005 Revenue Bonds Dimination Claim and the General Unsecured Claims.    Subject to Section 8.1 of this Plan, the Liquidating Trust shall make all payments and distributions required to be made under the Plan on account of Allowed Claims, which may be made by the Liquidating Trustee, or by the Disbursing Agent, if a Disbursing Agent has been appointed under the Plan.    Unless otherwise provided herein, all distributions on account of Allowed Claims, other than the 2005 Revenue Bonds Dimination Claim and the General Unsecured Claims, shall be made as soon as practicable on or after the Effective Date.    In each case, such payments or distributions shall be made no later than the later of (i) ten (10) days after the Effective Date, or (ii) the date on which the Liquidating Trustee determines that the Liquidating Trust holds sufficient Cash; provided, however, that for any employee continuing to provide services to the Liquidating Trustee, solely with respect to any Allowed Unclassified Claims for paid time off and severance, the "Effective Date" for purposes of making such distributions shall be deemed to mean each individual employee's last date of employment with the Liquidating Trustee.

(b)    Distributions on Account of the 2005 Revenue Bonds Dimination Claim and the General Unsecured Claims.    Distributions on account of Allowed Claims in Class 4 and Class 8 shall be made exclusively on account of Trust Beneficial Interests at least quarterly, provided, however, that distributions need not be made to the extent there is no Cash in the Plan Fund to distribute.

8.4    ***Withholding of Distributions***.    Other than amounts paid to the Indenture Trustees, all distributions under the Plan and all related agreements shall be subject to any applicable

53

withholding and reporting requirements.   In addition to any other withholding authorized hereunder, in the case of a Cash distribution that is subject to withholding, the Liquidating Trustee may withhold from amounts distributable on account of Allowed Claims any and all amounts determined in the Liquidating Trustee's sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate Cash necessary to pay over the withholding tax.   Holders of Allowed Claims shall, as a condition to receiving distributions, provide such information and take such steps as the Liquidating Trustee may reasonably require to enable it to comply with the withholding and reporting requirements and to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law. Notwithstanding the foregoing, each holder of an Allowed Claim that receives a distribution under the Plan shall have the sole and exclusive responsibility for any taxes imposed by any Governmental Unit, including income, withholding, and other taxes, on account of such distribution.

     8.5    ***Delivery of Distributions and Undeliverable Distributions***.    Other than distributions made to the Indenture Trustees, which shall be by wire transfer in accordance with instructions provided to the Liquidating Trustee, subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on either the Schedules or the books and records of the Debtors, unless the Liquidating Trustee has otherwise been notified by the holder in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on either the Schedules or the books and records.   In the event that any distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Liquidating Trustee is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  At the option of the Liquidating Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.  Checks issued by the Liquidating Trustee in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  All demands for undeliverable distributions (including requests for re-issuance of any voided check) shall be made to the Liquidating Trustee on or before sixty (60) days after the expiration of the ninety (90) day period after the date such undeliverable distribution was initially made or the check was originally issued, as applicable. Thereafter, the amount represented by such undeliverable distribution (including a voided check) shall be deemed forfeited, and any Claim in respect of such undeliverable distribution (including a voided check) shall be Disallowed, discharged and forever barred from asserting any such Claim against each Released Party, the Post-Effective Date Debtors, the Liquidating Trustee, the Post-Effective Date Committee, and the Liquidating Trust. Any distributions that are forfeited or otherwise cancelled shall be made available for re-distribution to other Trust Beneficiaries (other than those whose distributions are deemed undeliverable hereunder) in accordance with the Plan, and shall not be subject to the unclaimed property or escheat laws of any Governmental Unit.

     8.6    ***Setoffs***.  For purposes of determining the Allowed amount of a Claim on which distribution shall be made, the Liquidating Trustee may, but shall not be required to, setoff against any respective Claim administered by it, any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any

54

Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such setoff claim(s); provided, however, that the Secured 2017 Revenue Notes Claims, the Secured 2015 Revenue Notes Claims, the Secured 2005 Revenue Bond Claims, the Secured MOB I Financing Claims, and the Secured MOB II Financing Claims shall be deemed to be Allowed Claims and shall not be subject to any setoff.

8.7     *De Minimis Distributions*.  No distribution is required to be made to a Holder of an Allowed Claim if the amount of Cash to be distributed on any distribution date under the Plan on account of such Claim is $50 or less.  Any Holder of an Allowed Claim on account of which the amount of Cash to be distributed is $50 or less will have its Claim for such distribution discharged and will be forever barred from asserting any such Claim against each Released Party, the Post-Effective Date Debtors, the Liquidating Trustee, the Post-Effective Date Committee, and the Liquidating Trust.  Any Cash not distributed pursuant to this Section will, in the Liquidating Trustee's discretion, be included in the Liquidating Trust Reserves and/or the Plan Fund, free of any restrictions thereon, and will be distributed in accordance with the Plan.

8.8     *Allocation of Plan Distribution Between Principal and Interest*.  All distributions by the Liquidating Trustee with respect to any Allowed Claim, with the exception of the Secured 2005 Revenue Bond Claim, shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim (including the interest portion of the Allowed Claim), if any.

8.9     *Entry of Final Decree in Chapter 11 Cases*.  Once all the Disputed Claims have become Allowed Claims or have been disallowed by Final Order, and all distributions in respect of Allowed Claims have been made in accordance with this Plan, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee (i) shall seek authority from the Bankruptcy Court for entry of final decrees closing the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules and (ii) shall be authorized under the Plan to take any necessary corporate action with respect to the Debtors' continued existence without the necessity for approvals or notices under any applicable state or other law, including under the Nonprofit Laws.  Notwithstanding the foregoing, actions with respect to the Post-Effective Date Debtors shall be taken by the Liquidating Trustee.  The entry of final decrees closing these Chapter 11 Cases shall not affect the Nonprofit Status of the Post-Effective Date Debtors to the extent they have not dissolved in accordance with the Plan.

**SECTION 9.     TRUST BENEFICIARIES**

9.1     *Identification of Trust Beneficiaries*.  Each of the Trust Beneficiaries shall be recorded and set forth in a schedule maintained by the Liquidating Trustee expressly for such purpose based upon its Allowed Claim in Class 4 or Class 8.

9.2     *Beneficial Interests Only*.  The ownership of Trust Beneficial Interests shall not entitle any Trust Beneficiary to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such Liquidating Trust Assets or to require an accounting, except as may be specifically provided herein.

9.3    ***Ownership of Beneficial Interests Hereunder***.  Subject to the requirements and limitations of this Plan, including the establishment of the Liquidating Trust Reserves and Liquidating Trust Administration Accounts: (i) the Holder of the First Priority Trust Beneficial Interest shall have an undivided first priority interest in the Liquidating Trust equal to the amount of the 2005 Revenue Bonds Diminution Claim as of the Effective Date, provided however that the amount of such First Priority Trust Beneficial Interest shall be limited, on any given measurement date, to the lesser of (a) the value of the Plan Fund or (b) the unpaid balance of the 2005 Revenue Bonds Diminution Claim, including accrued but unpaid interest thereon; and (ii) each Holder of a Second Priority Trust Beneficial Interest shall own an undivided interest in the Liquidating Trust equal in proportion to such Trust Beneficiary's Pro Rata Share of Allowed Claims in Class 8.

9.4    ***Evidence of Beneficial Interests***.  Ownership of a Trust Beneficial Interest (a) shall be noted in the books and records of the Liquidating Trust and (b) shall not be evidenced by any certificate, note, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee, including the Schedule.

9.5    ***Conflicting Claims***.  Except as otherwise provided in the Liquidating Trust Agreement, if any conflicting claims or demands are made or asserted with respect to a beneficial interest, the Liquidating Trustee shall be entitled, at its sole election, to refuse to comply with any such conflicting claims or demands.  In so refusing, the Liquidating Trustee may elect to make no payment or distribution with respect to the beneficial interest represented by the claims or demands involved, or any part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Liquidating Trustee shall not be or become liable to any party for his/her refusal to comply with any of such conflicting claims or demands.  The Liquidating Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order or (b) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trust and the Liquidating Trustee (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this Section 9).  Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Liquidating Trustee shall hold in a segregated interest-bearing account with a United States financial institution any payments or distributions from the Liquidating Trust to be made with respect to the Beneficial Interest at issue.  Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

9.6    ***Limitation on Transferability***.  As set forth in more detail in the Liquidating Trust Agreement, the Trust Beneficial Interests may not be transferred, sold, assigned, hypothecated, or pledged, except as they may be assigned or transferred by will, intestate succession, or operation of law.

**SECTION 10.    PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS**

10.1    ***Objection to Claims***.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise expressly provided herein, the Liquidating Trustee,

56

in consultation with the Post-Effective Date Committee, shall have the exclusive right to file, prosecute, resolve and otherwise deal with objections to Claims other than Allowed Claims pursuant to this Plan or a Final Order. The Liquidating Trustee shall serve a copy of each Claim objection upon the holder of the Claim to which the objection is made. Claims objections with respect to all Claims shall be made as soon as reasonably practical but in no event later than the Claims Objection Deadline. If the Liquidating Trustee wishes to extend the Claims Objection Deadline, it may do so pursuant to a motion, to be filed with the Bankruptcy Court, on notice to the Post-Effective Date Committee, which may be approved without a hearing.

10.2    *Disallowed Claims*. The following Claims shall be automatically Disallowed and expunged, without the need for filing any objections thereto, and shall not be entitled to any distributions under the Plan: (a) Claims for which no Proof of Claim was filed by the applicable Bar Date even though such Claims were listed on the Schedules as disputed, contingent, or unliquidated; and (b) Claims covered by § 502(d) to the extent that the holder of such Claim has not been paid the amount or turned over the property for which such holder is liable under §§ 522(i), 542, 543, 550, or 553, in accordance with § 502(d).

10.3    *No Distribution Pending Allowance*. Notwithstanding any other provision of this Plan, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

10.4    *Distributions After Allowance*. Any Claim (or portion thereof) that is Disputed and then subsequently Allowed, shall be an Allowed Claim, not a Disputed Claim, in such amount and to the extent it is subsequently Allowed. Except as otherwise provided herein, if, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall distribute to the Holder of such Allowed Claim, from the applicable fund or reserve in accordance with Sections 7.9, 7.10, and 8.3, the amount such holder would have received had its Claim been Allowed on the Effective Date as determined by distributions actually made to other holders of Allowed Claims.

10.5    *Disputed Claims*.

(a)    Resolution of the Disputed Claims.

(i)    From and after the Effective Date, the Liquidating Trust shall have the exclusive authority to compromise, resolve, and deem Allowed any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Liquidating Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim, except as set forth below in (ii) of this Section 10.5(a);

(ii)    The Liquidating Trustee shall notify the Post-Effective Date Committee prior to settling, compromising, or allowing any Disputed Claim in an liquidated amount in excess of $250,000 for a General Unsecured Claim and $100,000 for an Unclassified Claim, Secured Claim, or Priority

57

Non-Tax Claim.  The Post-Effective Date Committee shall have three (3) Business Days after receipt of such notice to review the proposed settlement or compromise of such Claim. If such objection is made, the Liquidating Trustee shall not move forward with the matter absent Court approval after at least ten (10) Business Days' notice and opportunity to object to the Post-Effective Date Committee; and

(iii)    If the Liquidating Trustee and the holder of a Disputed Claim are unable to reach settlement of the Disputed Claim, such Disputed Claim shall be submitted to the Bankruptcy Court for resolution.  If it is determined that the Bankruptcy Court does not have jurisdiction to resolve any Disputed Claim, then the Disputed Claim shall be submitted to the District Court for resolution.

(b)    Estimation of Disputed Claims.  The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) regardless of whether the Debtors or the Liquidating Trustee previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  On and after the Effective Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved, without further order of the Bankruptcy Court.

10.6  ***Cumulative Effect***.  All the objection, estimation, and resolution procedures set forth in this Section are intended to be cumulative (where possible) and not exclusive of one another.

## SECTION 11.    EXECUTORY AGREEMENTS

11.1  ***General Treatment***.  On the Effective Date, all Executory Agreements to which any Debtor is a party shall be deemed rejected as of the Effective Date, except for those Executory Agreements that (a) have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court (including pursuant to any Sale Order), (b) are the subject of a separate motion to assume, assume and assign, or reject filed under § 365 on or before the Effective Date, or (c) are specifically designated as a contract or lease to be assumed on the Schedule of Assumed Contracts and no timely objection to the proposed assumption has been filed, provided, however, that the Debtors shall, no later than five (5) business days prior to the Confirmation Hearing, provide Cigna (as that term is defined in Docket No. 4927) with written notice of its irrevocable decision as to whether or not the Debtors propose to assume or reject each of the Cigna Contracts (as that term is defined in Docket No. 4927) as part of the Plan.  If the party to an Executory Agreement listed to be assumed in the Schedule of Assumed Contracts wishes to object to the proposed assumption (including with respect to the cure amounts), it shall do so within thirty (30) days from the service of the Schedule of Assumed Contracts.

58

11.2    ***Bar Date for Rejection Damages.***    Claims arising out of the rejection of an Executory Agreement pursuant to the Plan must be filed with the Bankruptcy Court (or as otherwise provided for in the Debtors' notice of rejection) no later than thirty (30) days after the Effective Date.  Any Claims not filed within such time period will be forever barred from assertion against the Debtors and/or their property and/or their Estates.

11.3    ***Insurance Policies.***  For the avoidance of doubt, the Debtors' rights with respect to all Insurance Policies under which Debtors may be an insured beneficiary or assignee (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the Debtors after the Petition Date, and all Insurance Policies under which the Debtors hold rights to make, amend, prosecute, and benefit from claims) shall be transferred to the Liquidating Trust (including, without limitation, for the Liquidating Trustee to pursue and prosecute any Causes of Action) on the Effective Date, unless any such Insurance Policy is otherwise cancelled by the Liquidating Trustee in its discretion. Notwithstanding any provision providing for the rejection of Executory Agreements, any Insurance Policy that is deemed to be an Executory Agreement shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trust, which shall retain the right to assume or reject any such Executory Agreements pursuant to and subject to the provisions of § 365 following the Effective Date, with all rights of the Insurers to object or otherwise contest such assumption or rejection being expressly reserved provided, that, the Liquidating Trustee may not reject (a) any extended reporting period (tail) coverage purchased by the Debtors and (b) any Insurance Policies assumed by the Debtors pursuant to an order of the Bankruptcy Court.

The Confirmation Order shall constitute a determination that no default by the Debtors exists with respect to any of the Insurance Policies requiring a cure payment and that nothing in a Sale Order, any underlying agreements or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action. Notwithstanding any other provision of this Section, Old Republic Insurance Company is entitled to all accommodations that it requested in connection with renewal of the Debtors' workers' compensation policy as approved by the Bankruptcy Court [Docket No. 2803].

Notwithstanding anything to the contrary in the Confirmation Order or the Plan (including any other provision that purports to be preemptory or supervening), nothing shall in any way operate to impair, or have the effect of impairing the Insurers' legal, equitable or contractual rights, if any, in respect of any Claims (as defined by § 101(5)), and the rights of Insurers shall be determined under the Insurance Policies and under applicable nonbankruptcy law; provided that any Claim by an Insurer against a Debtor or the Liquidating Trust shall also be determined under applicable bankruptcy law, and Plan and Confirmation Order provisions.

Nothing in the Plan or in the Confirmation Order shall preclude any Person from asserting in any proceeding any and all Claims, defenses, rights or causes of action that it has or may have under or in connection with any Insurance Policy, and nothing in the Plan or the Confirmation Order shall be deemed to waive any claims, defenses, rights or causes of action that any Person (including any Insurer) has or may have under the provisions, terms, conditions, defenses and/or exclusions contained in the subject Insurance Policies; provided that any Claims by an Insurer

59

against a Debtor or the Liquidating Trust shall also be determined under applicable bankruptcy law, and Plan and Confirmation Order provisions.

## SECTION 12.    CONDITIONS PRECEDENT TO EFFECTIVE DATE

12.1    ***Conditions Precedent to Confirmation of Plan***.  The confirmation of the Plan shall be conditioned upon the Bankruptcy Court entering the Confirmation Order in form and substance satisfactory to the Plan Proponents.

12.2    ***Conditions to Effective Date***.    The following are conditions precedent to the Effective Date:

(a)    The Confirmation Order, including, without limitation, the approval of the Plan Settlement pursuant to Bankruptcy Rule 9019 and § 1123(b)(3)(A), shall have been entered by this Court in form and substance acceptable to the Plan Proponents, which Confirmation Order shall not have been terminated, suspended, vacated or stayed, and shall not have been amended except with the consent of the Plan Proponents;

(b)    The SFMC Sale shall have closed;

(c)    The Seton Sale shall have closed;

(d)    The Debtors have sufficient Cash to satisfy the Debtors' obligations under the Plan to pay or reserve for all Classes of Claims entitled to a Cash payment on, or as of, the Effective Date;

(e)    The Debtors have sufficient Cash to fund the Liquidating Trust Reserves; and

(f)    All documents, instruments and agreements provided for under or necessary to implement this Plan (including without limitation, the Interim Agreements, the Transition Services Agreements, the Plan Settlement, and the Liquidating Trust Agreement) shall have been executed and delivered by the parties thereto, unless such execution or delivery shall have been waived by the parties benefited thereby.

12.3    ***Waiver of Conditions***.    The Plan Proponents may waive the conditions to effectiveness of this Plan, set forth in Section 12.2 hereof, except the condition of paying the Secured Claims as set forth herein, without leave of the Bankruptcy Court and without any formal action other than proceeding with confirmation of this Plan and filing a notice of confirmation with the Bankruptcy Court.  To the extent that the Debtors believe that they are unable to comply with the conditions to the effectiveness of this Plan, set forth in Section 12.2 hereof, the Plan Proponents reserve the right to amend the Plan at such time (in accordance with the terms hereof) to address such inability.

## SECTION 13.    EFFECT OF CONFIRMATION

13.1    ***Vesting of Assets***.  Except as provided herein or in the Confirmation Order, upon the Effective Date, pursuant to § 1141(b) and (c), (a) the Liquidating Trust Assets shall vest in the

60

Liquidating Trust and (b) the Operating Assets shall vest in the Post-Effective Date Debtors, in each case free and clear of all Claims, liens, encumbrances, charges and other interests, subject to the rights and obligations of the parties under this Plan and the Liquidating Trust.

13.2    ***No Discharge.***    Pursuant to § 1141(d), the Debtors will not receive a discharge under this Plan.

13.3    ***Settlement of Causes of Action Relating to Claims***.    Unless otherwise authorized by another order of the Bankruptcy Court, pursuant to § 1123(b)(3) and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Causes of Actions relating to the rights that a holder of a Claim may have against the Debtors with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on account of any Allowed Claim.    Unless otherwise authorized, the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Causes of Action and the Bankruptcy Court's finding that all such Causes of Action are in the best interests of the Debtors, their Estates, their respective property and Claim holders and are fair, equitable and reasonable.

13.4    ***Extension of Existing Injunctions and Stays***.    Unless otherwise provided herein, all injunctions or stays arising under §§ 105 or 362, any order entered during the Chapter 11 Cases under §§ 105 or 362 or otherwise, and in existence on the Effective Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

13.5    ***Releases***.

(a)    <u>Releases Of Debtors</u>.    As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, each Holder of any Claim shall be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever, against the Debtors arising from or related to the Debtors' pre- and/or post-petition actions, omissions or liabilities, transaction, occurrence, or other activity of any nature except for as provided in this Plan or the Confirmation Order.

(b)    <u>Settlement Releases</u>.    Pursuant to § 1123(b)(3)(A) and the Plan Settlement, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, each Holder of any Claim shall be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever, against the Settlement Released Parties arising from or related to the Settlement Released Parties' pre- and/or post-petition actions, omissions or liabilities, transaction, occurrence, or other activity of any nature except for as provided in this Plan or the Confirmation Order.

(c)    <u>Limitation Of Claims Against the Liquidating Trust</u>.    As of the Effective Date, except as provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Liquidating Trust any other or further Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever, relating

61

to the Debtors or any Interest in the Debtors based upon any acts, omissions or liabilities, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.

(d)    <u>Debtors' Releases</u>.    Pursuant to § 1123(b), and except as otherwise specifically provided in this Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors and their Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen, or unforeseen, existing or herein after arising in law, equity, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the operation of the Debtors prior to or during the Chapter 11 Cases, the transactions or events giving rise to any Claim that is treated in this Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims before or during the Chapter 11 Cases, the marketing and the sale of Assets of the Debtors, the negotiation, formulation, or preparation of this Plan, the Disclosure Statement, or any related agreements, instruments, or other documents, other than a Claim against a Released Party arising out of the gross negligence or willful misconduct of any such person or entity.   Claims against any Released Party that are released pursuant to this Section 13.5(d) shall be deemed waived and relinquished by this Plan for purposes of Section 13.9.

(e)    ***<u>WAIVER OF LIMITATIONS ON RELEASES</u>.  THE LAWS OF SOME STATES (FOR EXAMPLE, CALIFORNIA CIVIL CODE § 1542) PROVIDE, IN WORDS OR SUBSTANCE, THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS/HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS/HER DECISION TO RELEASE. THE RELEASING PARTIES IN SECTIONS 13.5 (a)-(c) OF THE PLAN ARE DEEMED TO HAVE WAIVED ANY RIGHTS THEY MAY HAVE UNDER SUCH STATE LAWS AS WELL AS UNDER ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF SIMILAR EFFECT.***

13.6    **Injunctions**.

(a)    <u>General Injunction</u>.    Except as otherwise expressly provided herein, all Persons that have held, currently hold or may hold a Claim against the Debtors are permanently enjoined on and after the Effective Date from taking any action in furtherance of such Claim or any other Cause of Action released and discharged under the Plan, including, without limitation, the following actions against any Released Party:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding with respect to a Claim; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order with respect to a Claim; (c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind with respect to a Claim; (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtors, the

62

Post-Effective Date Debtors or the Liquidating Trust with respect to a Claim; or (e) commencing, conducting or continuing any proceeding that does not conform to or comply with or is contradictory to the provisions of this Plan; provided, however, that nothing in this injunction shall (i) limit the Holder of an Insured Claim from receiving the treatment set forth in Class 9; or (ii) preclude the Holders of Claims against the Debtors from enforcing any obligations of the Debtors, the Post-Effective Date Debtors, the Liquidating Trust, or the Liquidating Trustee under this Plan and the contracts, instruments, releases and other agreements delivered in connection herewith, including, without limitation, the Confirmation Order, or any other order of the Bankruptcy Court in the Chapter 11 Cases.  By accepting a distribution made pursuant to this Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in this Section.

(b)    *Other Injunctions*.  **The Post-Effective Date Debtors, the Liquidating Trustee, the Post-Effective Date Committee, the Post-Effective Date Board of Directors, or the Liquidating Trust and their respective members, directors, officers, agents, attorneys, advisors or employees shall not be liable for actions taken or omitted in its or their capacity as, or on behalf of, the Post-Effective Date Debtors, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Post-Effective Date Committee, or the Liquidating Trust (as applicable), except those acts found by Final Order to arise out of its or their willful misconduct, gross negligence, fraud, and/or criminal conduct, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of the Post-Effective Date Board of Directors, the Post-Effective Date Debtors, the Liquidating Trustee, the Post-Effective Date Committee, or the Liquidating Trust (as applicable), except for any actions or inactions found by Final Order to involve willful misconduct, gross negligence, fraud, and/or criminal conduct.    Any indemnification claim of the Post-Effective Date Debtors, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Post-Effective Date Committee and the other parties entitled to indemnification under this subsection shall be satisfied from either (i) the Liquidating Trust Assets (with respect to all claims, other than those claims related to the Operating Assets), or (ii) the Operating Assets (with respect to all claims related to the Operating Assets).  The parties subject to this Section shall be entitled to rely, in good faith, on the advice of retained professionals, if any.**

13.7    *Exculpation*.  To the maximum extent permitted by applicable law, each Released Party shall not have or incur any liability for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases (including, without limitation, the filing of the Chapter 11 Cases), the marketing and the sale of Assets of the Debtors, the Plan and any related documents (including, without limitation, the negotiation and consummation of the Plan, the pursuit of the Effective Date, the administration of the Plan, or the property to be distributed under the Plan), or each Released Party's exercise or discharge of any powers and duties set forth in the Plan, except with respect to the actions found by Final Order to constitute willful misconduct, gross negligence, fraud, or criminal conduct, and, in all respects, each Released Party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Without limitation of the foregoing, each such Released Party shall be released and exculpated from any and all Causes of Action that any Person is entitled to assert in its own right or on behalf of any other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence in any way relating to the subject matter of this Section.

US_Active\114691962\V-7

13.8    ***No Recourse***.  If a Claim is Allowed in an amount for which after application of the payment priorities established by this Plan (including, without limitation, in Sections 2 and 4 hereof) there is insufficient value to provide a recovery equal to that received by other Holders of Allowed Claims in the respective Class, no Claim Holder shall have recourse for any such deficiency against any of the Released Parties, the Post-Effective Date Debtors, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Post-Effective Date Committee, or the Liquidating Trust.  However, except as specifically stated otherwise in this Plan, nothing in this Plan shall modify any right of a Holder of a Claim under § 502(j).  The obligations under this Plan of the Debtors' Estates shall (i) be contractual only and shall not create any fiduciary relationship and (ii) be obligations of the Debtors' Estates only and no individual acting on behalf of the Debtors, the Committee, the Post-Effective Date Debtors, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Post-Effective Date Committee, or otherwise, shall have any personal or direct liability for these obligations.  Approval of the Plan by the Confirmation Order shall not in any way limit the foregoing.

13.9    ***Preservation of Causes of Action***.

(a)    Except as provided in Section 7.1 hereof, nothing contained in this Plan shall be deemed a waiver or relinquishment of any claims or Causes of Action of the Debtors that are not settled with respect to Allowed Claims or specifically waived or relinquished by this Plan, which shall vest in the Liquidating Trust, subject to any existing valid and perfected security interest or lien in such Causes of Action.  The Causes of Action preserved hereunder include, without limitation, claims, rights or other causes of action:

(i)    against vendors, suppliers of goods or services (including attorneys, accountants, consultants or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors; (D) wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (E) indemnification and/or warranty claims; or (F) turnover causes of action arising under §§ 542 or 543;

(ii)    against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;

(iii)    arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings;

(iv)    arising from damage to Debtors' property;

64

(v)     relating to claims, rights, or other causes of action the Debtors may have to interplead third parties in actions commenced against any of the Debtors;

(vi)    for collection of a debt owed to any of the Debtors;

(vii)   against insurance carriers, reinsurance carriers, underwriters or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or other matters;

(viii)  relating to pending litigation, including, without limitation, litigation related to the SGM Claims and any other claims or causes of action related thereto, and the suits, administrative proceedings, executions, garnishments, and attachments listed in Attachment 4a to each of the Debtors' Statements of Financial Affairs;

(ix)    arising from claims against health plans;

(x)     that constitute Avoidance Actions;

(xi)    arising under or relating to any and/or all asset purchase agreements and related sale documents (including, without limitation, any leases) entered into during these Chapter 11 Cases, including, but not limited to, enforcement of such agreements by the Debtors' Estates and/or breaches of any and/or all such agreements by the applicable non-Debtor parties (including, without limitation, the purchasers of the Debtors' assets under such agreements and any and all principals and/or guarantors of the obligations under or relating to such agreements);

(xii)   all claims against Integrity Healthcare, LLC and BlueMountain Capital Management LLC; and

(xiii)  relating to the Operating Assets.

The Liquidating Trustee, the Post-Effective Date Committee, and the Post-Effective Date Debtors shall have, retain, reserve and be entitled to assert all such claims, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any claim that is not specifically waived or relinquished by this Plan may be asserted by the Liquidating Trustee and the Post-Effective Date Committee on their behalf after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

(b)     On and after the Effective Date, in accordance with § 1123(b) and the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall retain and have the exclusive right to prosecute, abandon, settle or release any or all Causes of Action without the need to obtain approval or further relief from the Bankruptcy Court.

65

13.10    *Termination of Responsibilities of the Patient Care Ombudsman*.  On the latter of the SFMC Sale Closing Date or the Seton Sale Closing Date, the duties and responsibilities of the Patient Care Ombudsman shall be terminated and the Patient Care Ombudsman shall be discharged from his duties as Patient Care Ombudsman and shall not be required to file any further reports or perform any additional duties as Patient Care Ombudsman.    No person or entity may seek discovery in any form, including but not limited to by motion, subpoena, notice of deposition or request or demand for production of documents, from the Patient Care Ombudsman or his agents, professionals, employees, other representatives, designees or assigns (collectively, with the Patient Care Ombudsman, the "***Ombudsman Parties***") with respect to any matters arising from or relating in any way to the performance of the duties of the Patient Care Ombudsman in these Chapter 11 Cases, including, but not limited to, pleadings, reports or other writings filed by the Patient Care Ombudsman in connection with these Chapter 11 Cases.    Nothing herein shall in any way limit or otherwise affect the obligations of the Patient Care Ombudsman under confidentiality agreements, if any, between the Patient Care Ombudsman and any other person or entity or shall in any way limit or otherwise affect the Patient Care Ombudsman's obligation, under §§ 332(c) and 333(c)(1) or other applicable law or Bankruptcy Court Orders, to maintain patient information, including patient records, as confidential, and no such information shall be released by the Patient Care Ombudsman without further order of the Bankruptcy Court.

13.11    *SGM Action*.  In the SGM Action, SGM disputes the Debtors' claim to the deposit set forth in the SGM Asset Purchase Agreement (the "***Nonrefundable Deposit***"), and SGM contends that the Nonrefundable Deposit must be returned to SGM.    The Debtors and the Plan Proponents dispute the contentions and claims of SGM to the Nonrefundable Deposit, and contend that the Nonrefundable Deposit is an asset of the Debtors' estates, free and clear of any rights or claims of SGM, and should be distributed in accordance with the Plan.    On the Effective Date, in accordance with Section 13.1 hereof, all rights of the Debtors against SGM, including, without limitation, all rights to recover the Nonrefundable Deposit, are being transferred to the Liquidating Trust.    The Liquidating Trust shall not distribute the Nonrefundable Deposit to creditors in accordance with the Plan or take any other action which would reduce or dissipate the Nonrefundable Deposit, unless permitted by a judgment or an order entered by the District Court having jurisdiction over the SGM Action, and such judgment or order has not been stayed.    In the event an appeal is taken from any such judgment or order, the party taking the appeal shall have the right to seek a stay pursuant to the applicable Federal Rules of Civil Procedure and Federal Rules of Appellate Procedure.    Nothing contained herein or the Disclosure Statement shall modify, alter or change the rights of the Debtors and the Liquidating Trust, on the one hand, and SGM, on the other hand, to any claim or rights to the Nonrefundable Deposit.    All such claims and rights are expressly reserved and preserved.

## SECTION 14.    RETENTION OF JURISDICTION

14.1    *Bankruptcy Court Jurisdiction*.  Unless otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases.    Without limiting the foregoing, the Bankruptcy Court shall retain jurisdiction to:

(a)    allow, disallow determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for

66

US_Active\114691962\V-7

payment of any Administrative Claim or Professional Claim and the resolution of any objections to the allowance or priority of Claims, and the resolution of any claim objections brought by the Debtors or by the Liquidating Trustee on behalf of the Liquidating Trust;

(b)    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Agreement to which a Debtor(s) is a party and to hear, determine and, if necessary, liquidate, any Claims arising from, or cure amounts related to, such assumption or rejection;

(c)    determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Effective Date, including, without limitation, any and all Causes of Action preserved under the Plan commenced prior to, on, or after the Effective Date;

(d)    ensure that distributions to holders of Allowed Claims are accomplished in accordance with the Plan;

(e)    hear and determine matters relating to claims with respect to the Debtors' director and officer insurance;

(f)    enter, implement or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court, including, without limitation, any actions relating to the Nonprofit Status of the Post-Effective Date Debtors;

(h)    resolve a dispute with respect to and/or otherwise appoint a replacement of the Liquidating Trustee, or replacement members of the Post-Effective Date Committee;

(i)    hear and determine any application to modify this Plan in accordance with § 1127, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created in connection therewith, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)    hear and determine all applications under §§ 330, 331, and 503(b) for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(k)    hear and determine disputes arising in connection with the interpretation, implementation, obligation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated in the Plan, or any agreement, instrument, or other document governing or relating to any of the foregoing;

67

1

2

(l)    take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan, including all contracts, instruments, releases, and other agreements or documents created in connection therewith, or to maintain the integrity of this Plan following consummation;

3

4

(m)    determine such other matters and for such other purposes as may be provided in the Plan and/or the Confirmation Order;

5

6

7

8

(n)    hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146, including without limitation, (i) any requests for expedited determinations under § 505(b) filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the date of final distribution under the Plan, and (ii) any other matters relating to the Nonprofit Status of the Post-Effective Date Debtors;

9

10

(o)    hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code;

11

12

(p)    authorize recovery of all assets of any of the Debtors and property of the applicable Debtor's Estate, wherever located;

13

14

15

16

17

18

19

(q)    consider any and all claims against each Released Party involving or relating to the administration of the Chapter 11 Cases, any rulings, orders, or decisions in the Chapter 11 Cases or any aspects of the Debtors' Chapter 11 Cases and the events leading up to the commencement of the Chapter 11 Cases, including the decision to commence the Chapter 11 Cases, the development and implementation of the Plan, the decisions and actions taken prior to or during the Chapter 11 Cases and any asserted claims based upon or related to prepetition obligations of the Debtors for the purpose of determining whether such claims belong to the Estates or third parties.  In the event it is determined that any such claims belong to third parties, then, subject to any applicable subject matter jurisdiction limitations, the Bankruptcy Court shall have exclusive jurisdiction with respect to any such litigation, subject to any determination by the Bankruptcy Court to abstain and consider whether such litigation should more appropriately proceed in another forum;

20

21

(r)    hear and resolve any disputes regarding the reserves required hereunder, including without limitation, disputes regarding the amounts of such reserves or the amount, allocation and timing of any releases of such reserved funds; and

22

23

(s)    enter final decrees closing the Chapter 11 Cases.

**SECTION 15.    MISCELLANEOUS PROVISIONS**

24

25

26

27

15.1    ***Termination of All Employee, Retiree and Workers' Compensation Benefits***.  All existing employee benefits (including, without limitation, workers' compensation benefits, health care plans, disability plans, severance benefit plans, incentive plans, and life insurance plans) and retiree benefits (as such term is defined under § 1114(a)) not previously terminated by the Debtors, or assumed by the Debtors in the Schedule of Assumed Contracts, shall be terminated on or before the Effective Date.

28

68

15.2    ***Termination of Collective Bargaining Agreements***.  Prior to the Effective Date, the Debtors expect to receive approval for either the consensual or, pursuant to § 1113, the nonconsensual modification, assignment and/or termination of collective bargaining agreements.

15.3    ***Administrative Claims Bar Date.*** All Requests for Payment of an Administrative Claim must be filed with the Bankruptcy Court and served on the Debtors no later than the Administrative Claims Bar Date.  Such Requests for Payment may include estimates of amounts through the Effective Date.   The Administrative Claims Reserve shall be established on the Effective Date in an amount determined by the Bankruptcy Court in order to satisfy all Administrative Claims that have not been Allowed as of the Effective Date and all Allowed Administrative Claims that will be paid after the Effective Date.  In the event that the Debtors, the Liquidating Trustee or the Master Trustee objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing: (a) no Request for Payment need be filed with respect to an undisputed postpetition obligation which was paid or is payable by the Debtors in the ordinary course of business; provided, however, that in no event shall a postpetition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business; (b) no Request for Payment need be filed with respect to a cure amount owing under an Executory Agreement if (i) the amount of the cure is fixed or proposed to be fixed by the Confirmation Order or other order of the Bankruptcy Court either pursuant to the Plan or pursuant to a motion to assume and fix the amount of Cure filed by the Debtors, and (ii) a timely objection asserting an increased amount of the cure has been filed by the non-Debtors party to the subject contract or lease; and (c) no Request for Payment need be filed with respect to fees payable pursuant to 28 U.S.C. § 1930. All Administrative Claims that become Allowed after the Effective Date shall be paid solely from the Administrative Claims Reserve , and shall not constitute a claim against the Liquidating Trust, the Liquidating Trustee, or any of the Liquidating Trust Assets.   No Holder of an Administrative Claim shall have recourse for any deficiency in the payment of its Administrative Claim against any of the Released Parties, the Post-Effective Date Debtors, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Post-Effective Date Committee, or the Liquidating Trust..

15.4    ***Exemption from Transfer Taxes***.  Pursuant to § 1146(c), the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan, whether real or personal property, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

15.5    ***Amendments***.  The Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Plan Proponents may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1127(b), or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A holder of an Allowed Claim

69

that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

15.6    ***Revocation or Withdrawal of Plan***.  The Plan Proponents may withdraw or revoke this Plan at any time prior to the Effective Date.  If the Plan Proponents revoke or withdraw this Plan prior to the Effective Date, or if the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the respective Debtor or any other Person or to prejudice in any manner the rights of the respective Debtor or any other Person in any further proceedings involving the respective Debtor.

15.7    ***Severability***.  In the event that the Bankruptcy Court determines, prior to the Effective Date, that any provision of this Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the Consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.8    ***Request for Expedited Determination of Taxes***.  The Plan Proponents or the Liquidating Trustee, as applicable, shall have the right to request an expedited determination under § 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through and including the date of final distribution under the Plan.

15.9    ***U.S. Trustee Quarterly Fees and Post-Confirmation Status Reports.***  All fees payable under 28 U.S.C. § 1930(a)(6) shall be paid by each Debtor in the amounts and at the times such fees may become due up to and including the Effective Date.  The Liquidating Trust shall pay all fees payable by each Debtor under 28 U.S.C. § 1930(a)(6) until the Chapter 11 Cases are closed, dismissed or converted; provided, however, that the Sale-Leaseback Debtors shall pay all fees payable under 28 U.S.C. § 1930(a)(6) in their respective Chapter 11 Cases until the expiration of their respective Interim Management Agreements and Interim Leaseback Agreements.  Upon the Effective Date, the Liquidating Trust and the Post-Effective Date Debtors shall be relieved from the duty to make the reports and summaries required under Bankruptcy Rule 2015(a).  Notwithstanding the foregoing, the Liquidating Trust and Post-Effective Date Debtors shall File and serve the status reports required by Local Bankruptcy Rule 3020-1(b) at such times and for such period as may be set forth in the Confirmation Order.

15.10    ***Courts of Competent Jurisdiction***.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon

70

and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.11   **Governing Law**.   Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

15.12   ***Continuing Effect of the Bankruptcy Court Orders and Settlement Stipulations***. Unless otherwise set forth in the Plan or the Confirmation Order or otherwise ordered by the Bankruptcy Court, the orders of the Bankruptcy Court and any other settlement stipulations entered into by the Debtors (including without limitation, agreements to lift the automatic stay, resolve litigation claims and limit recoveries to available insurance proceeds) shall not be modified, limited or amended by the Plan and shall remain in full force and effect.   To the extent of any direct conflict between the terms of this Plan and any settlement agreements, the conflicting provisions of such settlement agreements shall govern with respect to the treatment of Allowed Claims as provided for therein.

15.13   **Time**.   In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.   Any reference to "day" or "days" shall mean calendar days, unless otherwise specified herein.

15.14   **Business Day Transactions**.   In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable on the next succeeding Business Day, but shall be deemed to have been completed as of the initial due date.

15.15   **Headings**.   Headings are used in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

15.16   **Exhibits**.   All Exhibits and schedules to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

15.17   **Notices**.   Any notices to or requests by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

<u>If to the Debtors:</u>

Verity Health System of California, Inc.
601 South Figueroa Street
Suite 4050
Los Angeles, California 90017
Attn:   Peter C. Chadwick

71

US_Active\114691962\V-7

with copies to:

Dentons US LLP
*Attorneys for the Debtors and Debtors-In-Possession*
601 South Figueroa Street
Suite 2500
Los Angeles, California 90017
(213) 623-9300
Attn:   Samuel R. Maizel
       Tania M. Moyron
       Nicholas A. Koffroth

If to the Liquidating Trustee:

[_____]

If to the Master Trustee:

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
Attn:   Daniel S. Bleck
       Paul J. Ricotta

If to the Committee:

Milbank LLP
2029 Century Park East
33rd Floor
Los Angeles, California 90067
(424) 386-4000
Attn:   Mark Shinderman

If to Verity MOB Financing LLC and
Verity MOB Financing II LLC:

Jones Day
250 Vesey Street
New York, New York 10281
(212) 326-3939
Attn:   Bruce Bennett
      Benjamin Rosenblum
      Peter Saba

72

15.18  **_Post-Effective Date Notices_**.  Following the Effective Date, except as otherwise provided herein, notices shall only be served on the Post-Effective Date Debtors, the Liquidating Trustee, the U.S. Trustee, and those Persons who File with the Court and serve upon the Liquidating Trust a request, which includes such Person's name, contact person, address, telephone number, facsimile number, and email, that such Person receive notice of post-Effective Date matters.  Persons who had previously filed with the Court requests for special notice of the proceedings and other filings in the Chapter 11 Case shall not receive notice of post-Effective Date matters unless such Persons File a new request in accordance with this Section.

15.19  **_Conflict of Terms._**  In the event of a conflict between the terms of this Plan and the Disclosure Statement, the terms of this Plan shall control.


Dated:  Los Angeles, California
          As of July 2, 2020

73